# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

THE HONORABLE BARBARA J.
HOUSER (RET.), IN HER CAPACITY AS
TRUSTEE OF THE BSA SETTLEMENT
TRUST,

                              Plaintiff,

v.

ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY; ALLIED
WORLD ASSURANCE COMPANY, LTD.;
ALLIED WORLD ASSURANCE
COMPANY (U.S.) INC.; ALLSTATE
INSURANCE COMPANY; AMERICAN
CASUALTY COMPANY OF READING,
PENNSYLVANIA; AMERICAN
ECONOMY INSURANCE COMPANY;
AMERICAN EXCESS INSURANCE
ASSOCIATION; AMERICAN HOME
ASSURANCE COMPANY; AMERICAN
STATES INSURANCE COMPANY;
AMERISURE INSURANCE COMPANY;
ARCH INSURANCE COMPANY;
ARGONAUT INSURANCE COMPANY;
ARROWOOD INDEMNITY COMPANY;
ASPEN SPECIALTY INSURANCE
COMPANY; ATEGRITY SPECIALTY
INSURANCE COMPANY; AVIVA PLC;
AXIS SPECIALTY INSURANCE
COMPANY; AXIS SURPLUS
INSURANCE COMPANY;
BRIGHTHOUSE LIFE INSURANCE
COMPANY; CATLIN SPECIALTY
INSURANCE COMPANY; CHARTER
OAK FIRE INSURANCE COMPANY;
THE CINCINNATI INSURANCE
COMPANY; CNA FINANCIAL
CORPORATION; COLONY INSURANCE
COMPANY; COLUMBIA CASUALTY
COMPANY; COLUMBIA INSURANCE

Case No. _____

COMPANY; CONSOLIDATED
NATIONAL INSURANCE COMPANY;
CONTINENTAL CASUALTY COMPANY;
THE CONTINENTAL INSURANCE
COMPANY; CRUM & FORSTER
INDEMNITY COMPANY; ENDURANCE
AMERICAN INSURANCE COMPANY;
ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY; ERIE AND
NIAGARA INSURANCE ASSOCIATION;
ERIE FAMILY LIFE INSURANCE
COMPANY; ERIE INSURANCE
EXCHANGE; EVANSTON INSURANCE
COMPANY; EVEREST NATIONAL
INSURANCE COMPANY; FIREMAN'S
FUND INSURANCE COMPANY; FIRST
INSURANCE COMPANY OF HAWAII,
LTD.; GEMINI INSURANCE COMPANY;
GENERAL INSURANCE COMPANY OF
AMERICA; GENERAL STAR
INDEMNITY COMPANY; GREAT
AMERICAN ASSURANCE COMPANY;
GREAT AMERICAN E & S INSURANCE
COMPANY; GREAT AMERICAN
INSURANCE COMPANY; INDIAN
HARBOR INSURANCE COMPANY; THE
INSURANCE COMPANY OF THE STATE
OF PENNSYLVANIA; INTERSTATE
FIRE & CASUALTY COMPANY;
JEFFERSON INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY;
LIBERTY INSURANCE
UNDERWRITERS, INC.; LIBERTY
MUTUAL INSURANCE COMPANY;
LIBERTY SURPLUS INSURANCE
CORPORATION; LONDON AND
EDINBURGH INSURANCE COMPANY
LIMITED; MUNICH REINSURANCE
AMERICA, INC.; NATIONAL
CASUALTY COMPANY; NATIONAL
FIRE INSURANCE COMPANY OF
HARTFORD; NATIONAL SURETY
CORPORATION; NATIONAL UNION
FIRE INSURANCE COMPANY OF

PITTSBURGH, PA; NATIONWIDE
AFFINITY INSURANCE COMPANY OF
AMERICA; NATIONWIDE MUTUAL
INSURANCE COMPANY; NEW
HAMPSHIRE INSURANCE COMPANY;
NORMANDY REINSURANCE
COMPANY LIMITED; THE NORTH
RIVER INSURANCE COMPANY; THE
OHIO CASUALTY INSURANCE
COMPANY; OLD REPUBLIC
INSURANCE COMPANY; PEERLESS
INDEMNITY INSURANCE COMPANY;
PHOENIX INSURANCE COMPANY; QBE
INSURANCE CORPORATION; SAFECO
INSURANCE COMPANY OF AMERICA;
SCOTTSDALE INSURANCE COMPANY;
SECURITY MUTUAL INSURANCE
COMPANY; SPARTA INSURANCE
COMPANY; ST. PAUL FIRE AND
MARINE INSURANCE COMPANY; ST.
PAUL MERCURY INSURANCE
COMPANY; ST. PAUL SURPLUS LINES
INSURANCE COMPANY; SWISS RE
CORPORATE SOLUTIONS CAPACITY
INSURANCE CORPORATION;
TENECOM LIMITED; TIG INSURANCE
COMPANY; TRAVELERS (BERMUDA)
LIMITED; TRAVELERS CASUALTY
AND SURETY COMPANY; THE
TRAVELERS COMPANIES, INC.; THE
TRAVELERS INDEMNITY COMPANY;
UNITED STATES FIDELITY AND
GUARANTY COMPANY; UNITED
STATES FIRE INSURANCE COMPANY;
UNIVERSAL RE-INSURANCE
COMPANY LIMITED; UTICA MUTUAL
INSURANCE COMPANY; WAUSAU
GENERAL INSURANCE COMPANY;
WESTPORT INSURANCE
CORPORATION; XL BERMUDA
LIMITED; XL INSURANCE COMPANY
SE; and DOE DEFENDANTS 1-100,

Defendants.

## COMPLAINT

Plaintiff, the Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as

trustee of the BSA Settlement Trust (the "Trust"), hereby files this complaint (the "Complaint")

against the above-captioned defendants (the "Defendants"), and in support thereof respectfully

states and alleges as follows:

### I.    NATURE OF THE ACTION

1.    This is a civil action for a declaratory judgment, breach of contract, and bad faith.

The action arises out of an insurance coverage dispute between the Trust, as the assignee to

certain insurance policy rights originally issued to the Boy Scouts of America ("BSA") and its

Local Councils (defined below) and exclusive holder, pursuant to the Third Modified Fifth

Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of

America and Delaware BSA, LLC (the "Plan"),[1] of all rights under such insurance policies, and

Defendants, which are liability insurers that issued or subscribed to insurance policies

(collectively, the "Insurance Policies," and each an "Insurance Policy") sold to BSA and Local

Councils.

2.    The Defendants have disputed and/or will dispute their obligations to the Trustee

under the Insurance Policies to cover claims for personal injuries arising from sexual or other

abuse in BSA's Scouting programs (the "Abuse Claims").

---

[1] Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC, *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del. Sept. 6, 2022), ECF No. 10296, *available at* https://casedocs.omniagentsolutions.com/cmsvol2/pub_47373/aeeb7dbb-0270-4442-8db6-f657d052676f_10296.pdf.  Descriptions of the Plan herein are subject in all respects to the actual terms of the Plan.  Capitalized terms not defined herein have the meaning ascribed to them in the Plan.

3.      Accordingly, in order to effectuate the Trust's purposes, fulfill the Trust's obligations under the Plan, and obtain clarity and finality regarding the Defendants' coverage obligations, the Trustee seeks a declaration that Defendants have breached or will breach the Insurance Policies by refusing to provide coverage under the Insurance Policies for the Abuse Claims.  Additionally, the Trustee seeks compensatory damages, interest, attorneys' fees, and such other relief as this Court deems just and proper.

## II.     PARTIES

4.      The Trustee is the sole trustee for the Trust and is a citizen of New Mexico.  The Trust is a trust organized under Delaware law that is administered in New Mexico.

5.      Defendant Allianz Global Risks US Insurance Company (formerly known as, or otherwise responsible for the liability of, Allianz Insurance Company) is an Illinois corporation with its principal place of business in Illinois.

6.      Defendant Allied World Assurance Company, Ltd. is a Bermuda corporation with its principal place of business in Bermuda.

7.      Defendant Allied World Assurance Company (U.S.) Inc. is a Delaware corporation with its principal place of business in New York.

8.      Defendant Allstate Insurance Company is an Illinois corporation with its principal place of business in Illinois.

9.      Defendant American Casualty Company of Reading, Pennsylvania is a Pennsylvania corporation with its principal place of business in Illinois.

10.      Defendant American Economy Insurance Company is an Indiana corporation with its principal place of business in Massachusetts.

11.    Defendant American Excess Insurance Association is a Connecticut corporation with its principal place of business in Connecticut.

12.    Defendant American Home Assurance Company (formerly known as, or otherwise responsible for the liability of, American Home Fire Assurance Company) is a New York corporation with its principal place of business in New York.

13.    Defendant American States Insurance Company is an Indiana Corporation with its principal place of business in Massachusetts.

14.    Defendant Amerisure Insurance Company is a Michigan corporation with its principal place of business in Michigan.

15.    Defendant Arch Insurance Company is a Missouri corporation with its principal place of business in New Jersey.

16.    Defendant Argonaut Insurance Company is an Illinois corporation with its principal place of business in Illinois.

17.    Defendant Arrowood Indemnity Company (formerly known as, or otherwise responsible for the liability of, Royal Indemnity Company, Globe Indemnity Company, Royal Globe Insurance Company, and Royal Insurance Co. of America) is a Delaware corporation with its principal place of business in North Carolina.

18.    Defendant Aspen Specialty Insurance Company is a North Dakota Corporation with its principal place of business in Connecticut.

19.    Defendant Ategrity Specialty Insurance Company is a Delaware corporation with its principal place of business in Arizona.

20.     Defendant Aviva plc (formerly known as, or otherwise responsible for the liability of, Commercial Union Assurance Company) is a U.K. corporation with its principal place of business in the U.K.

21.     Defendant Axis Specialty Insurance Company is a Connecticut corporation with its principal place of business in Georgia.

22.     Defendant Axis Surplus Insurance Company is an Illinois corporation with its principal place of business in Georgia.

23.     Defendant Brighthouse Life Insurance Company (formerly known as, or otherwise responsible for the liability of, Travelers Insurance Company) is a Delaware corporation with its principal place of business in North Carolina.

24.     Defendant Catlin Specialty Insurance Company is a Delaware corporation with its principal place of business in Georgia.

25.     Defendant Charter Oak Fire Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.

26.     Defendant The Cincinnati Insurance Company is an Ohio corporation with its principal place of business in Ohio.

27.     Defendant CNA Financial Corporation (formerly known as, or otherwise responsible for the liability of, CNA) is a Delaware corporation with its principal place of business in Illinois.

28.     Defendant Colony Insurance Company is a Virginia corporation with its principal place of business in Illinois.

29.     Defendant Columbia Casualty Company is an Illinois corporation with its principal place of business in Illinois.

30.     Defendant Columbia Insurance Company is a Nebraska corporation with its principal place of business in Nebraska.

31.     Defendant Consolidated National Insurance Company (formerly known as, or otherwise responsible for the liability of, American Fidelity Company) is a Colorado corporation with its principal place of business in New York.

32.     Defendant Continental Casualty Company is an Illinois corporation with its principal place of business in Illinois.

33.     Defendant The Continental Insurance Company (formerly known as, or otherwise responsible for the liability of, Buckeye Union Insurance Company; Fidelity and Casualty Co. of NY; Fireman's Insurance Company of Newark, NJ; Pacific Insurance Company; Niagara Fire Insurance Company; and Harbor Insurance Company) is a Pennsylvania corporation with its principal place of business in Illinois.

34.     Defendant Crum & Forster Indemnity Company (formerly known as, or otherwise responsible for the liability of, Crum & Forster) is a Delaware corporation with its principal place of business in New Jersey.

35.     Defendant Endurance American Insurance Company is a Delaware corporation with its principal place of business in New York.

36.     Defendant Endurance American Specialty Insurance Company (formerly known as, or otherwise responsible for the liability of, Traders and Pacific Insurance Company) is a Delaware corporation with its principal place of business in New York.

37.     Defendant Erie and Niagara Insurance Association is a New York corporation with its principal place of business in New York.

38.     Defendant Erie Family Life Insurance Company is a Pennsylvania corporation with its principal place of business in Pennsylvania.

39.     Defendant Erie Insurance Exchange is a Pennsylvania corporation with its principal place of business in Pennsylvania.

40.     Defendant Evanston Insurance Company (formerly known as, or otherwise responsible for the liability of, Alterra Excess & Surplus Insurance Company) is an Illinois corporation with its principal place of business in Illinois.

41.     Defendant Everest National Insurance Company is a Delaware corporation with its principal place of business in New Jersey.

42.     Defendant Fireman's Fund Insurance Company is an Illinois corporation with its principal place of business in Illinois.

43.     Defendant First Insurance Company of Hawaii, Ltd. is a Hawaii corporation with its principal place of business in Hawaii.

44.     Defendant Gemini Insurance Company is a Delaware corporation with its principal place of business in Arizona.

45.     Defendant General Insurance Company of America (formerly known as, or otherwise responsible for the liability of, General Casualty Company of America) is a New Hampshire corporation with its principal place of business in Massachusetts.

46.     Defendant General Star Indemnity Company is a Delaware corporation with its principal place of business in Connecticut.

47.     Defendant Great American Assurance Company (formerly known as, or otherwise responsible for the liability of, Agricultural Insurance Company and Anchor Casualty Company) is an Ohio corporation with its principal place of business in Ohio.

48.     Defendant Great American E & S Insurance Company (formerly known as, or otherwise responsible for the liability of, Agricultural Excess & Surplus Insurance Company) is an Ohio corporation with its principal place of business in Ohio.

49.     Defendant Great American Insurance Company is an Ohio corporation with its principal place of business in Ohio.

50.     Defendant Indian Harbor Insurance Company is a Delaware corporation with its principal place of business in Connecticut.

51.     Defendant The Insurance Company of the State of Pennsylvania is an Illinois corporation with its principal place of business in New York.

52.     Defendant Interstate Fire & Casualty Company is an Illinois corporation with its principal place of business in Illinois.

53.     Defendant Jefferson Insurance Company (formerly known as, or otherwise responsible for the liability of, Jefferson Insurance Company of New York) is a New York corporation with its principal place of business in Virginia.

54.     Defendant Lexington Insurance Company is a Delaware corporation with its principal place of business in Massachusetts.

55.     Defendant Liberty Insurance Underwriters Inc. is an Illinois corporation with its principal place of business in Massachusetts.

56.     Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Massachusetts.

57.     Defendant Liberty Surplus Insurance Corporation is a New Hampshire corporation with its principal place of business in Massachusetts.

58.     Defendant London and Edinburgh Insurance Company Limited (formerly known as, or otherwise responsible for the liability of, London and Edinburgh General Insurance Company Limited) is a United Kingdom corporation with its principal place of business in the United Kingdom.

59.     Defendant Munich Reinsurance America, Inc. (formerly known as, or otherwise responsible for the liability of, American Re-Insurance Company) is a Delaware corporation with its principal place of business in New Jersey.

60.     Defendant National Casualty Company is an Ohio corporation with its principal place of business in Ohio.

61.     Defendant National Fire Insurance Company of Hartford (formerly known as, or otherwise responsible for the liability of, National Fire Insurance of Hartford) is an Illinois corporation with its principal place of business in Illinois.

62.     Defendant National Surety Corporation is an Illinois corporation with its principal place of business in Illinois.

63.     Defendant National Union Fire Insurance Company of Pittsburgh, PA (formerly known as, or otherwise responsible for the liability of, Landmark Insurance Company) is a Pennsylvania corporation with its principal place of business in New York.

64.     Defendant Nationwide Affinity Insurance Company of America (formerly known as, or otherwise responsible for the liability of, Western Casualty & Surety Company) is an Ohio corporation with its principal place of business in Ohio.

65.     Defendant Nationwide Mutual Insurance Company is an Ohio corporation with its principal place of business in Ohio.

66.     Defendant New Hampshire Insurance Company (formerly known as, or otherwise responsible for the liability of, New Hampshire Life) is an Illinois corporation with its principal place of business in New York.

67.     Defendant Normandy Reinsurance Company Limited is a Bermuda corporation with its principal place of business in Bermuda.

68.     Defendant The North River Insurance Company (formerly known as, or otherwise responsible for the liability of, North River Insurance Company) is a New Jersey corporation with its principal place of business in New Jersey.

69.     Defendant The Ohio Casualty Insurance Company is a New Hampshire corporation with its principal place of business in Massachusetts.

70.     Defendant Old Republic Insurance Company is a Pennsylvania corporation with its principal place of business in Pennsylvania.

71.     Defendant Peerless Indemnity Insurance Company (formerly known as, or otherwise responsible for the liability of, Ambassador Insurance Company) is an Illinois corporation with its principal place of business in Massachusetts.

72.     Defendant Phoenix Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.

73.     Defendant QBE Insurance Corporation (formerly known as, or otherwise responsible for the liability of, Jamestown Mutual Insurance Company) is a Pennsylvania corporation with its principal place of business in Wisconsin.

74.     Defendant SAFECO Insurance Company of America (formerly known as, or otherwise responsible for the liability of, SAFECO Ins. Co. of America) is a New Hampshire corporation with its principal place of business in Massachusetts.

75.     Defendant Scottsdale Insurance Company is an Ohio corporation with its principal place of business in Ohio.

76.     Defendant Security Mutual Insurance Company is a New York corporation with its principal place of business in New York.

77.     Defendant SPARTA Insurance Company (formerly known as, or otherwise responsible for the liability of, American Employers' Insurance Company and American Employers' Insurance Company of Boston, Massachusetts) is a Connecticut corporation with its principal place of business in Connecticut.

78.     Defendant St. Paul Fire and Marine Insurance Company (formerly known as, or otherwise responsible for the liability of, St. Paul Insurance Company of Illinois) is a Connecticut corporation with its principal place of business in Connecticut.

79.     Defendant St. Paul Mercury Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.

80.     Defendant St. Paul Surplus Lines Insurance Company is a Delaware corporation with its principal place of business in Connecticut.

81.     Defendant Swiss Re Corporate Solutions Capacity Insurance Corporation (formerly known as, or otherwise responsible for the liability of, First Specialty Insurance Corporation) is a Missouri corporation with its principal place of business in Missouri.

82.     Defendant Tenecom Limited (formerly known as, or otherwise responsible for the liability of, Winterthur Swiss Insurance Company and Yasuda Fire & Marine Ins. Co. (U.K.) Ltd.) is a United Kingdom corporation with its principal place of business in the United Kingdom.

83. Defendant TIG Insurance Company (formerly known as, or otherwise responsible for the liability of, Transamerica Insurance Company) is a California corporation with its principal place of business in New Hampshire.

84. Defendant Travelers (Bermuda) Limited is a Bermuda corporation with its principal place of business in Bermuda.

85. Defendant Travelers Casualty and Surety Company (formerly known as, or otherwise responsible for the liability of, Aetna Casualty and Surety Company) is a Connecticut corporation with its principal place of business in Connecticut.

86. Defendant The Travelers Companies, Inc. (formerly known as, or otherwise responsible for the liability of, Travelers and Phoenix of Hartford Insurance Companies) is a Minnesota corporation with its principal place of business in New York.

87. Defendant The Travelers Indemnity Company (formerly known as, or otherwise responsible for the liability of, Gulf Insurance Company) is a Connecticut corporation with its principal place of business in Connecticut.

88. Defendant United States Fidelity and Guaranty Company (formerly known as, or otherwise responsible for the liability of, United States Fidelity & Warranty Company) is a Connecticut corporation with its principal place of business in Connecticut.

89. Defendant United States Fire Insurance Company (formerly known as, or otherwise responsible for the liability of, U.S. Fire Insurance Company) is a Delaware corporation with its principal place of business in New Jersey.

90. Defendant Universal Re-Insurance Company Limited is a Bermuda corporation with its principal place of business in Bermuda.

91.     Defendant Utica Mutual Insurance Company is a New York corporation with its principal place of business in New York.

92.     Defendant Wausau General Insurance Company (formerly known as, or otherwise responsible for the liability of, Illinois Employers Insurance of Wausau) is a Wisconsin corporation with its principal place of business in Massachusetts.

93.     Defendant Westport Insurance Corporation (formerly known as, or otherwise responsible for the liability of, The Manhattan Fire & Marine Insurance Company) is a Missouri corporation with its principal place of business in Missouri.

94.     Defendant XL Bermuda Limited (formerly known as, or otherwise responsible for the liability of, XL Insurance (Dublin) Ltd. and XL Insurance (Bermuda) Ltd.) is a Bermuda corporation with its principal place of business in Bermuda.

95.     Defendant XL Insurance Company SE (formerly known as, or otherwise responsible for the liability of, XL Europe Limited) is an Irish corporation with its principal place of business in the Republic of Ireland.

96.     Doe Defendants 1-100 are liability insurers that issued or subscribed to Insurance Policy(ies) sold to BSA and/or Local Councils which provide coverage for Abuse Claims, including but not limited to those listed in the attached exhibits as issued by Doe Defendants.

### III.     JURISDICTION AND VENUE

97.     The foregoing allegations are incorporated herein by reference.

98.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

99.     This Court has personal jurisdiction over each Defendant because each of them is now, or within the time period relevant to the claims asserted herein, or within the time period

relevant to the issuance of the Insurance Policies by the Defendants to BSA and/or Local Councils is or has been licensed to do business in Texas; is transacting or has transacted business in Texas; has contracted to insure persons, property, or risks located in Texas; has contractually or otherwise consented to submit to personal jurisdiction in Texas; and/or has other significant contacts with Texas.  Each Defendant therefore has sufficient contacts with Texas that give rise to the present action, has continuous and systematic contacts with Texas, and/or has consented either explicitly or implicitly to the jurisdiction of this Court.

100.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this judicial district.

101.     Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, as there is a ripe and justiciable controversy between the parties.

### IV.     FACTUAL BACKGROUND

**A.     The Boy Scouts' Abuse Claims**

102.     BSA is a non-profit corporation founded in 1910 and chartered by an act of Congress on June 15, 1916.  BSA's mission is to prepare young people for life by instilling in them the values of BSA's Scout Oath and Law and encouraging them to be trustworthy, kind, friendly, and helpful.  Since its inception, more than 130 million Americans have participated in BSA's youth programs, assisted by more than 25 million volunteers.  BSA's national headquarters has been located in Irving, Texas since 1978.

103.     BSA carries out its Scouting programs through charters granted to local councils assigned to specific geographic areas across the United States (collectively, "Local Councils"). These Local Councils recruit and oversee the local organizations that administer BSA's Scouting programs—typically faith-based institutions, clubs, civic associations, educational institutions,

businesses, and groups of citizens (collectively, "Chartered Organizations"). BSA, Local Councils, and Chartered Organizations together form an interconnected organizational structure that carries out BSA's mission.

104.    In recent years, BSA, along with its Local Councils and Chartered Organizations, has been named as a defendant in numerous lawsuits alleging injury from sexual abuse in Scouting. The allegations in these claims and complaints range in severity, but all paint a horrific picture of abuse suffered by thousands of children over the course of many decades. These victims assert various legal theories, generally claiming that BSA, Local Councils, and Chartered Organizations were liable for negligence, gross negligence, negligent retention, negligent supervision, fraudulent concealment, willful and wanton misconduct, constructive fraud, and breach of fiduciary duty.

105.    In 2020, approximately 275 lawsuits asserting Abuse Claims were pending in state and federal courts across the country. Facing mounting litigation costs and seeking to achieve a global resolution of the Abuse Claims, BSA filed a petition for chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on February 18, 2020.

**B.    The Bankruptcy Proceedings and Formation of the Trust**

106.    After years of negotiations among BSA, its creditors, its insurers, Local Councils, and Chartered Organizations, the Bankruptcy Court issued an order approving the Plan (the "Confirmation Order") on September 8, 2022. The United States District Court for the District of Delaware (the "District Court") affirmed the Confirmation Order on March 28, 2023. The Plan became effective on April 19, 2023 (the "Effective Date").

107.     During the bankruptcy, 82,209 unique and timely claims were filed alleging injury from sexual abuse in Scouting programs.  The "staggering and apparently unprecedented" number and nature of these claims, as described by the District Court, required sophisticated resolution.

108.     The Plan achieved this resolution through a structure that created the Trust, which assumed liability for the Abuse Claims, as well as certain assets to pay Abuse Claims.  Under the Plan, the Trust is responsible for processing, liquidating, and paying compensable Abuse Claims. Specifically, the Plan provides that "the sole recourse of any holder of an Abuse Claim against a Protected Party"—which term includes, as relevant here, BSA, Local Councils, and certain insurance companies that settled with BSA prior to confirmation of the Plan (the "Settling Insurance Companies")—"on account of such Abuse Claim shall be to and against the Settlement Trust[.]"  Plan, Art. X.F.1.  In other words, "[a]ll Abuse Claims shall be channeled to and resolved by the Settlement Trust[.]"  *Id.* Art. V.N.

109.     Pursuant to the releases set forth in the Plan, "all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release . . . each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims[.]"  Plan, Art. X.J.3.  As a result, the Trust is the only entity with liability for Abuse Claims asserted against BSA or Local Councils.

110.     In order to resolve the Abuse Claims and compensate BSA's victims, the Plan transferred certain asserts to the Trust—most importantly, the rights under the Insurance Policies as well as proceeds payable under certain settlements reached with insurers during the pendency of the Bankruptcy Case.  The Plan transferred to the Trust any claims, causes of action, or rights

of BSA and Local Councils against the Defendants arising from or related to the Insurance

Policies; the right to receive any proceeds or benefits from these claims, causes of action, or

rights; and all other rights, claims, benefits, or causes of action of BSA and Local Councils under

or with respect to the Insurance Policies (the "Insurance Rights Transfer").[2]  A list of the

Insurance Policies issued to BSA and currently known to the Trust (the "BSA Insurance

Policies") is attached hereto as **Exhibit A**.  A list of the Insurance Policies issued to Local

Councils and currently known to the Trust (the "Local Council Insurance Policies") is attached

hereto as **Exhibit B**.

111.    The Plan further provides that the Trust is the sole entity with the right to pursue

claims against and seek coverage from the Defendants arising out of or related to the Insurance

Policies.  In order to facilitate the Insurance Rights Transfer set forth above, the Plan enjoins "all

[p]ersons that have held or asserted, that hold or assert, or that may in the future hold or assert

any claim or caused of action . . . against any [i]nsurance [c]ompany based upon, attributable to,

arising out of, or in any way connected with any [Insurance Policy]" from "taking any action for

the purpose or directly or indirectly collecting, recovering, or receiving payments, satisfaction, or

recovery with respect to any such claim or cause of action[.]"  Plan, Art. X.H.2.

112.    The BSA Settlement Trust Agreement (the "Trust Agreement") and the Trust

Distribution Procedures (the "TDPs," and with the Trust Agreement, the "Trust Documents"),

which are attached to and considered part of the Plan, govern the Trust.  The TDPs make clear

that the Trustee is obligated to "determine . . . whether any [Defendant] issued coverage that is

---

[2] *See* Plan, § I.A.157 (setting forth the "Insurance Assignment," which includes but is not limited to, "the assignment and transfer to the Settlement Trust of (a) the Insurance Actions, (b) the Insurance Action Recoveries, . . . and (d) all other rights, claims, or Causes of Action of [BSA], [or] Local Councils . . . under or with respect to the Abuse Insurance Policies (but not the policies themselves)"); *see also id.* § IX.A.3.j (declaring that the "Plan's transfer of rights under BSA Insurance Policies . . . is authorized and permissible notwithstanding the terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights").

19

available to respond" to an Abuse Claim and, if so, she "shall seek reimbursement for" such

Abuse Claim."  TDPs, Art. X.  The Trustee has a "duty to preserve and maximize the assets of

the . . . Trust" for the benefit of holders of Abuse Claims.  *Id.*

**C.     The Boy Scouts' Insurance Program**

  1.  <u>Overview</u>

113.    The Insurance Policies issued to BSA provide general liability coverage for policy

periods between 1972 and 2020.  From 1978 onward, the Named Insured in all of these policies,

BSA, was headquartered in and a citizen of Texas.  From January 1, 1975 onward, Local

Councils were generally listed as additional insureds under these policies.

114.    The Local Council Insurance Policies provide general liability coverage from

1942 until 2019.  Many of the Local Council Insurance Policies list BSA as an additional

insured.

115.    Based on the evidence the Trust has been able to obtain to date, the Insurance

Policies promise in their affirmative grants of coverage, without limitation and with varying

wording, to indemnify the insured for, or to pay on the insured's behalf, all damages and defense

costs that the insured becomes legally obligated to pay:

  a.     because of personal injury caused by an occurrence during the policy
         period;

  b.     on account of personal injuries caused by or arising out of an occurrence;

  c.     by reason of bodily injury which occurs after the retroactive date and
         before the end of the policy period and is caused by an occurrence; or

  d.     pursuant to similar wording.

116.    As a result of the Insurance Rights Transfer, the Trustee is entitled to enforce these promises and to receive the proceeds of the Insurance Policies pursuant to the policies' affirmative grants of coverage.

117.    Under the terms of the Insurance Policies and applicable law, the Insurance Policies provide insurance coverage for BSA's and/or Local Councils' liability and defense costs for or in connection with the Abuse Claims.  Pursuant to the Insurance Rights Transfer, the Trustee is entitled to enforce BSA's and Local Councils' rights to such coverage and to receive the proceeds of the Insurance Policies with respect to BSA's and Local Councils' liability and defense costs for or with respect to the Abuse Claims.

118.    The Abuse Claims trigger the Defendants' coverage obligations under the terms and conditions of the Insurance Policies and applicable law, and the damages and defense costs incurred for or in connection with the Abuse Claims are within the coverage grants of the Insurance Policies because, without limitation, the Abuse Claims seek damages and defense costs that the insured becomes obligated to pay:

   a.    because of personal injury caused by an occurrence during the policy period;

   b.    on account of personal injuries caused by or arising out of an occurrence;

   c.    by reason of bodily injury which occurs after the retroactive date and before the end of the policy period and is caused by an occurrence; or

   d.    pursuant to similar wording.

119.    Based on the evidence available to the Trust to date, under the terms of the Insurance Policies and applicable law, each of the Defendants is jointly and severally liable to BSA and/or Local Councils for the full amount of BSA's and/or Local Councils' liability and

defense costs for or in connection with the Abuse Claims that trigger their policy periods, subject only to any applicable attachment points and any applicable limits of liability of the Insurance Policies.  Pursuant to the Insurance Rights Transfer, the Trustee is entitled to enforce BSA's and Local Councils' rights to such coverage and to receive the proceeds of the Insurance Policies with respect to BSA's and/or Local Councils' liability and defense costs for or with respect to the Abuse Claims.

120.    Throughout the policy periods of the Insurance Policies, the insured risk was located primarily in Texas because, among other reasons, BSA's headquarters was located in Texas.  Texas, with 5,369 Abuse claimants, is second only to California in the number of victims asserting Abuse Claims.

121.    All applicable conditions precedent to coverage or recovery under the Insurance Policies, if any, have been satisfied, compliance with such conditions precedent is excused, such conditions precedent do not apply, or Defendants have waived or are estopped or otherwise precluded from relying on such conditions precedent.

122.    Defendants sold the Insurance Policies to BSA and Local Councils in consideration of substantial premiums.  BSA and Local Councils have paid any and all necessary premiums for the Insurance Policies.

123.    Each of the Insurance Policies has been in full force and effect since it was sold to BSA or Local Councils, including at all times material to this Complaint.

124.    No exclusions or limitations in the Insurance Policies (other than any applicable attachment points and limits of liability) apply to coverage for the Abuse Claims.

2.  Defendants' Pre-Petition Refusals to Provide Coverage

125.    BSA and Local Councils incurred significant defense fees and costs in defending

against the pre-petition Abuse Claims.  Many Defendants have disputed their obligations

regarding these costs, and have failed to promptly pay BSA's and Local Councils' defense costs

and settlements, including costs of BSA's retained national coordinating counsel.

126.    For several years prior to BSA's bankruptcy, BSA and certain Local Councils

were engaged in litigation in multiple forums in multiple cases regarding coverage disputes

arising from Abuse Claims under certain Defendants' policies.  These coverage actions were

limited in scope, involved a small number of Defendants, and concerned coverage for less than

one percent of the Abuse Claims that have been asserted and channeled to the Trust for

evaluation, processing, and, where appropriate, payment.  The Trust was not a party to any of

these actions.

127.    In 2017, Defendant National Surety initiated litigation against BSA and one of the

Local Councils in Cook County Circuit Court in Illinois, in the case captioned *National Surety*

*Corporation v. Boy Scouts of America, et al.*, No. 2017-CH-14975 (the "Illinois Action").

National Surety sought declaratory relief regarding its obligations to provide coverage under two

of its policies, for Abuse Claims asserted by 18 victims (the "Hacker Victims," so named for the

perpetrator who abused them).  National Surety also named several other defendants, including

Defendant Allianz, certain other insurers,[3] and the Hacker Victims themselves.

128.    In 2018, BSA filed a complaint against National Surety, Allianz, and the Settling

Insurance Companies in Dallas County, Texas, in the case captioned *Boy Scouts of America v.*

*Insurance Company of North America, et al.*, No. DC-18-11896 (the "Texas Action").  BSA

---

[3] These insurers included several Settling Insurance Companies, in addition to other insurers named as defendants in this Complaint.

sought declaratory and other relief regarding coverage for Abuse Claims asserted by the Hacker Victims and one other victim.[4]

129.    For years, BSA, National Surety, and Allianz were involved in forum-related disputes in both the Illinois Action and the Texas Action.  No rulings on the merits were made in either action before the actions were automatically stayed by the filing of BSA's bankruptcy petition on February 18, 2020.

130.    Given the piecemeal nature and limited scope of the Illinois Action and the Texas Action as compared to the comprehensive relief sought in this Complaint, the Trustee has moved, contemporaneously with the filing of this Complaint, to dismiss both the Illinois Action and the Texas Action.

3.    Defendants' Involvement in the Bankruptcy Proceedings

131.    During BSA's bankruptcy proceedings, many Defendants filed objections to the Plan.  Among other things, these Defendants argued that the Plan impermissibly impaired their rights to assert coverage defenses following confirmation of the Plan.  The Defendants who opposed the Plan further asserted that they had no obligation to cover Abuse Claims because of the terms of their Insurance Policies, the manner in which Abuse Claims will be evaluated and potentially paid by the Trust, or both, among other defenses.  Both the Bankruptcy Court and the District Court rejected Defendants' arguments that the Plan unlawfully impaired their rights under the Insurance Policies and confirmed the plan over the insurers' objections.  Nonetheless,

---

[4] BSA sought declaratory relief regarding coverage for Abuse Claims generally—in other words, not tied to a specific Abuse Claim—only with respect to policies issued by Insurance Company of North America and Century Indemnity Company.  Both insurers are Settling Insurers and BSA's claims against both entities will be resolved in accordance with the terms of the settlement agreement.  BSA was also engaged in separate pre-petition coverage litigation with other Settling Insurers regarding coverage obligations for Abuse Claims generally; those actions will similarly be resolved in accordance with the terms of the settlement agreement.

these Defendants continue to challenge the Plan, and have appealed the District Court's decision to the Third Circuit.

132.    Despite these Defendants' refusal to acknowledge their coverage obligations under the Insurance Policies, BSA and Local Councils were able to reach agreement with some of their insurers prior to confirmation of the Plan.  Twenty-nine of BSA's and Local Councils' insurers paid more than $1.6 billion to resolve their liabilities for Abuse Claims.

133.    The Trustee now seeks to resolve the remainder of BSA's and Local Councils' insurance coverage.

## V.    CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment (All Defendants)

134.    The preceding paragraphs are set forth herein by reference.

135.    Defendants have disputed, declined, or failed to perform fully their coverage obligations with respect to the Abuse Claims or, upon information and belief, will dispute, decline, or fail to perform fully these obligations.  Among other things, many of the Defendants filed objections to the Plan and Confirmation Order.  Despite that the District Court affirmed the Bankruptcy Court's ruling in all respects, most of the Defendants have appealed that ruling and continue to maintain their objections to the Plan to avoid payment of Abuse Claims under their policies.

136.    Accordingly, and in light of the continuing dispute regarding the Defendants' obligations to make such payments, an actual, justiciable, and ripe controversy exists among the parties regarding the nature and extent of the Defendants' payment obligations under the Insurance Policies.

137.     The Trustee asserts and seeks a declaratory judgment that each of the Defendants is obligated under each of the Insurance Policies it issued or subscribed to, including each policy period of each such Insurance Policy, to provide coverage in full for BSA's and/or Local Councils' liability for Abuse Claims that trigger the coverage obligations of the policy in question as set forth above, subject only to any applicable attachment points and any applicable limits of liability of the Insurance Policies in question.

138.     Because the Effective Date has occurred, among other things:

    a.    BSA's and Local Councils' liability for Abuse Claims has been channeled exclusively to and assumed by the Trust;

    b.    BSA has been discharged and released from liability for Abuse Claims, except as expressly provided in the Plan and the Confirmation Order;

    c.    BSA's and Local Councils' rights to insurance coverage for Abuse Claims, among other assets, have been transferred to the Trust pursuant to the Insurance Rights Transfer;

    d.    The Trustee is required to "determine . . . whether any [Defendant] issued coverage that is available to respond to [the] Claim . . . [and] shall seek reimbursement";

    e.    The Trust is solely responsible for holding, preserving, and maximizing the Insurance Policies, and directing the payment of all compensable Abuse Claims in accordance with the Trust Documents.

139.     The Trustee is entitled to a declaration of the rights and obligations of the parties, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, regarding the nature and

extent of the Defendants' obligations under the Insurance Policies to pay insurance proceeds in connection with Abuse Claims.

140.     The Trustee does not have another adequate available remedy at law, including because non-declaratory relief would not resolve coverage for future Abuse Claims.

141.     The requested declaratory relief will terminate some or all of the controversy between the Trustee and the Defendants.

## COUNT TWO
## Breach of Contract (All Defendants)

142.     The preceding paragraphs are set forth herein by reference.

143.     The Insurance Policies are each valid and enforceable contracts that remain in effect.

144.     As the holder of all rights under the Insurance Policies under the Insurance Transfer, the Trustee has standing to pursue claims under the Insurance Policies.

145.     BSA, Local Councils, and the Trust have satisfied all conditions precedent under the Insurance Policies, including the payment of all premiums required by the Insurance Policies

146.     The Abuse Claims allege bodily injury, personal injury, and/or mental anguish occurring in whole or in part during the policy period of the Abuse Insurance Policies.

147.     The terms of the Insurance Policies unambiguously require Defendants to defend or reimburse the insured for any defense costs incurred in connection with the Abuse Claims, and to indemnify the insured for any amounts the insured becomes legally obligated to pay for the Abuse Claims.

148.     Alternatively, the terms of the Insurance Policies are ambiguous and must be construed in favor of coverage for the insured.

149.     Although the plain terms of the Insurance Policies obligate Defendants to pay in full for certain Abuse Claims, upon information and belief, the Defendants thus far have refused or will refuse requests that they pay claims billed to them prior to BSA's bankruptcy and/or have stated or will state definitively and finally that they will not pay any amount for any Abuse Claim for which BSA or Local Councils and/or the Trust become legally obligated to pay.

150.     Defendants have breached or will breach their contractual obligations under the Insurance Policies by, among other things, refusing and failing to defend and/or delaying payment and/or refusing to fully pay defense and indemnity costs, in connection with the Abuse Claims in accordance with the express terms of the Insurance Policies.

151.     In breaching and/or anticipatorily breaching their contractual obligations as set forth above, the Defendants have deprived BSA and Local Councils (and now the Trust), or threaten to deprive the Trust, of the insurance protection for which BSA and Local Councils paid substantial premiums.

152.     As a direct and proximate result of the Defendants' breaches and/or anticipatory breaches of the Insurance Policies, the Trust has suffered or will suffer substantial monetary damages and may continue to incur such damages in the future.

## COUNT THREE
### Bad Faith (All Defendants)

153.     The preceding paragraphs are set forth herein by reference.

154.     The Trust, and previously BSA and the Local Councils, presented evidence that policies that provide coverage for Abuse Claims were issued to BSA from at least 1972 through February 18, 2020, and were issued to Local Councils from at least 1942 through 2019. Defendants have not disputed that coverage since 1942 extends to Abuse Claims for which BSA, Local Councils, and/or the Trust, is legally obligated to pay.

155.    Notwithstanding the credible evidence of the policies' existence and the lack of any dispute by Defendants that coverage extends to Abuse Claims, the Defendants thus far have failed to effectuate prompt, fair, and equitable settlements of claims billed to them prior to BSA's bankruptcy and/or Abuse Claims for which BSA, Local Councils, and/or the Trust will become legally obligated to pay, or will fail to effectuate prompt, fair, and equitable settlements of claims billed to them by the Trust for Abuse Claims for which the Trust will become legally obligated to pay.

156.    In refusing to effectuate settlements as set forth above, the Defendants have failed to deal with BSA, Local Councils, and/or the Trust fairly and in good faith, or will fail to deal with the Trust fairly and in good faith.

157.    As a direct and proximate result of the Defendants' bad faith dealings and/or anticipatory bad faith dealings, the BSA and Local Councils (and now the Trust) have suffered monetary damages and the Trust is likely to continue to incur such damages in the future.

### Notice Regarding Additional Claims

158.    Given the Defendants' history in avoiding their obligations under the Insurance Policies, as set forth above, the Trustee reasonably anticipates that the Defendants will refuse to pay claims submitted by the Trust.  The Trustee expressly reserves the right to amend this complaint to set forth additional claims, including, but not limited to, statutory claims under Chapters 541 and 542 of the Texas Insurance Code, in the event of such refusals.

### VI.    JURY DEMAND

159.    The Trustee hereby requests a trial by jury.

### VII.    PRAYER FOR RELIEF

WHEREFORE, the Trustee respectfully prays that this Court grant the following relief:

a.      Declaratory judgment setting forth the rights and obligations of the Trustee and the Defendants under the Insurance Policies with respect to Abuse Claims;

b.      Judgment awarding Plaintiff all damages sustained as a result of Defendants' breaches of contract;

c.      Judgment awarding Plaintiff all damages sustained as a result of Defendants' bad faith;

d.      Judgment awarding Plaintiff pre-judgment and post-judgment interest as allowed by law;

e.      Judgment awarding Plaintiff all costs of court;

f.      Judgment awarding Plaintiff reasonable attorneys' fees incurred in prosecuting this action; and

g.      Any and all other relief to which Plaintiff may be entitled.

Dated:  July 18, 2023                      Respectfully submitted,

                                           */s/Jeffrey M. Tillotson*

                                           Jeffrey M. Tillotson
                                           Texas Bar No. 20039200
                                           Email: jtillotson@tillotsonlaw.com
                                           **TILLOTSON JOHNSON & PATTON**
                                           1201 Main St., Suite 1300
                                           Dallas, TX 75202
                                           Telephone: (214) 382-3041
                                           Facsimile: (214) 292-6564

                                           Kami E. Quinn (*pro hac vice* application
                                           forthcoming)
                                           W. Hunter Winstead (*pro hac vice* application
                                           forthcoming)
                                           Emily P. Grim (*pro hac vice* application
                                           forthcoming)
                                           Sarah A. Sraders (*pro hac vice* application
                                           forthcoming)
                                           Rachel H. Jennings (*pro hac vice* application
                                           forthcoming)
                                           **GILBERT LLP**
                                           700 Pennsylvania Avenue, SE
                                           Suite 400
                                           Washington, DC 20003
                                           Telephone:  (202) 772-2200
                                           Facsimile:  (202) 772-3333

                                           ***Attorneys for the Honorable Barbara J. Houser
                                           (Ret.), in her capacity as Trustee of the BSA
                                           Settlement Trust***