UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY, LTD, *et al.*,<br><br>    Defendants. | Civ. Action No. 3:23-cv-01592-S |

**MEMORANDUM IN SUPPORT OF UNDERSIGNED DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

Betty X. Yang
Texas Bar No. 24088690
Michael A. Rosenthal
Texas Bar No. 17281490
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, Texas 75201
(214) 698-3100
(214) 571-2900 (fax)
BYang@gibsondunn.com
MRosenthal@gibsondunn.com

*Counsel for American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and Consolidated National Insurance Company*

Christopher J. St. Jeanos (*pro hac vice*)
New York Bar No. 2805729
Ciara A. Sisco (*pro hac vice*)
New York Bar No. 5583471
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
(212) 728-8111 (fax)
CStjeanos@willkie.com
CSisco@willkie.com

Joseph G. Davis (*pro hac vice*)
D.C. Bar No. 441479
Zainab A. Ali (*pro hac vice*)
D.C. Bar No. 90014285
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
(202) 303-2000 (fax)
JDavis@willkie.com
ZAli@willkie.com

James Hallowell (*pro hac vice*)
New York Bar No. 2688869
Amanda A. George (*pro hac vice*)
New York Bar No. 5645817
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
(212) 351 4035 (fax)
JHallowell@gibsondunn.com
AGeorge@gibsondunn.com
(212) 351-4000
(212) 351 4035 (fax)
JHallowell@gibsondunn.com
AGeorge@gibsondunn.com

*Additional Counsel for American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and Consolidated National Insurance Company*

Richard D. Salgado
Texas Bar No. 24060548
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: 214.210.2797
Facsimile: 972.232.3098
Email: richard.salgado@mwe.com

Ryan S. Smethurst (*pro hac vice*)
D.C. Bar No. 469824
Alex M. Spisak (*pro hac vice*)
D.C. Bar No. 1028451
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228

Thomas B. Alleman
Texas Bar No. 01017485
DYKEMA GOSSETT PLLC
1717 Main, Suite 4200
Dallas, Texas 75201
Phone: 214-698-7830
talleman@dykema.com

*Counsel for Allied World Assurance Company (U.S.) Inc.*

Facsimile: 202.756.8087
Email: rsmethurst@mwe.com
Email: aspisak@mwe.com

*Counsel for Jefferson Insurance Company*

Brian S. Martin
Texas Bar No. 13055350
bmartin@thompsoncoe.com
Christina A. Culver
Texas Bar No. 24078388
cculver@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS,
L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056-1988
(713) 403-8210 Telephone
(713) 403-8299 Facsimile

*Counsel for Allstate Insurance Company*

David Schubert
Texas Bar No. 17820800
E-Mail: dschubert@schubertevans.com
Blake S. Evans
Texas Bar No. 06706950
E-Mail: bevans@schubertevans.com
Stephen Burnett
Texas Bar No. 24006931
E-Mail: sburnett@schubertevans.com
SCHUBERT & EVANS
900 Jackson, Suite 630
Dallas, Texas 75202
Telephone: (214) 744-4400
Facsimile: (214) 744-4403

Ronald P. Schiller (*pro hac vice*)
Pennsylvania Bar No. 41357
Matthew A. Hamermesh (*pro hac vice*)
Pennsylvania Bar No. 82313
Elizabeth C. Dolce (*pro hac vice*)
Pennsylvania Bar No. 324448
HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
One Logan Square| 27th Floor
Philadelphia, PA 19103
Telephone: (215) 468-6200
Facsimile: (215) 468-0300
rschiller@hangley.com
mhamermesh@hangley.com
edolce@hangley.com

*Counsel for Arch Insurance Company*

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matt Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com

Michael T. Cooke
Texas Bar No. 04759650
FRIEDMAN SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
mtc@fsclaw.com

TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204

Kathleen Kerns (*pro hac vice*)
kkerns@postschell.com
POST & SCHELL, P.C.
1600 John F. Kennedy Blvd.
13th Floor
Philadelphia, PA 19103

*Counsel for Argonaut Insurance Company
and Colony Insurance Company*

David Clay Wilkerson
BROWN SIMS, P.C.
Texas Bar No. 24010480
cwilkerson@brownsims.com
1990 Post Oak Blvd.,
Suite 1800
Houston, Texas 77056
713.629.1580
713.629.5027 (facsimile)

*Counsel for Aspen Specialty Insurance
Company*

S. Jan Hueber
Texas Bar No. 20331150
hueber@litchfieldcavo.com LITCHFIELD
CAVO, LLP
100 Throckmorton Street, Ste. 500
Fort Worth, Texas 76102
Telephone: 817.945.8025
Facsimile: 817.753.3232

Daniel G. Litchfield (*pro hac vice*)
IL Bar No. 6185695
litchfield@litchfieldcavo.com
LITCHFIELD CAVO, LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
Telephone: 312.781.6660

*Counsel for The Cincinnati Insurance
Company*

*Counsel for Arrowood Indemnity Company*

Aaron L. Mitchell
Texas Bar No. 14205590
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Ave., Suite 250
Dallas, Texas 75204
Direct: (214) 665-0110
Fax: (214) 665-0199
aaronm@tbmmlaw.com

*Counsel for Ategrity Specialty Insurance
Company*

Pamela Dunlop Gates
Texas Bar No. 06239800
CORPORATE LITIGATION
CNA
Apex at Legacy
5801 Headquarters Drive, Suite 750A
Plano, Texas 75024-6189
(214) 220-5921 – Direct Dial
pamela.dunlopgates@cna.com

Laura McNally, Esq. (*pro hac vice*)
Illinois Bar No. 6226965
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155

*Counsel for American Casualty Company of
Reading, Pennsylvania, CNA Financial*

- 4 -

*Corporation, Columbia Casualty Company,*
*Continental Casualty Company, The*
*Continental Insurance Company, National*
*Fire Insurance Company of Hartford*

Charles R. "Skip" Watson
Texas Bar No. 20967500
watsons@gtlaw.com
Nicole Leonard Cordoba
Texas Bar No. 24106197
cordoban@gtlaw.com
Joseph W. Shaneyfelt
Texas Bar No. 24105406
joe.shaneyfelt@gtlaw.com
GREENBERG TRAURIG LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
T: (512) 320-7200
F: (512) 320-7210

*Counsel for Columbia Insurance Company*

Scott L. Davis
Texas Bar No. 055437030
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170
Scott.Davis@huschblackwell.com

Tyler Scott (*pro hac vice*)
Missouri Bar No. 63231
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Phone: (816) 983-8274
Fax: (816) 983-8080
Tyler.Scott@huschblackwell.com

*Counsel for Crum & Forster Indemnity*
*Company, TIG Insurance Company, The*
*North River Insurance Company, and United*
*States Fire Insurance Company*

David M. Hymer
Texas Bar No. 10380250
david.hymer@qpwblaw.com
Steven Wood
Texas Bar No. 24033355
Steven.wood@qpwblaw.com
QUINTAIROS, PRIETO, WOOD &
BOYER, PA.
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755
(214) 754-8744 (Fax)

*Counsel for Erie Family Life Insurance*
*Company and Erie Insurance Exchange*

Roy A. Mura, Esq. (pro hac vice)
New York Bar No. 2112035
MURA LAW GROUP, PLLC
14 Lafayette Square, Suite 930
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com

Kieran W. Leary, Esq.
Texas Bar No. 24108517
TOLLEFSON BRADLEY MITCHELL
& MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
(214) 665-0119
kieranl@tbmmlaw.com

*Counsel for Erie and Niagara Insurance Association*

Jeremy T. Brown
Texas Bar No. 24055221
jbrown@keatingbrown.com
KEATING BROWN PLLC
18383 Preston Road, Ste. 300
Dallas, Texas 75252
Telephone: (214) 390-7701

*Counsel for Everest National Insurance Company*

Ivan M. Rodriguez
Texas Bar No. 24058977
Clinton J. Wolbert
Texas Bar No. 24103020
Katherine B. Wilson
Texas Bar No. 24096034
PHELPS DUNBAR, L.L.P.
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 877-5504
Facsimile: (713) 626-1388
E-mail: ivan.rodriguez@phelps.com
E-mail: clinton.wolbert@phelps.com
E-mail: katherine.wilson@phelps.com

William R. de los Santos
Texas Bar No. 24125762
PHELPS DUNBAR, L.L.P.
2102 E. State Highway 114, Suite 207
Southlake, Texas 76092
Telephone: (817) 488-3134
E-mail: william.delossantos@phelps.com

*Counsel for Evanston Insurance Company*

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Frank Kennedy
Texas Bar No. 00787820
frankk@tbmmlaw.com
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199

*Counsel for First Insurance Company of Hawaii, LTD*

Shannon M. O'Malley
Texas Bar No. 24037200
somalley@zellelaw.com
Megan E. Zeller
Texas Bar No. 24082187
mzeller@zellelaw.com
ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX 75202-3975
Telephone:    214-742-3000
Facsimile:    214-760-8994

Gary P. Seligman (*pro hac vice*)
D.C. Bar No. 468046
Ashley L. Criss (*pro hac vice*)
D.C. Bar No. 1048326
Wiley Rein LLP
2050 M Street NW

Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049
E-mail:  gseligman@wiley.law,
acriss@wiley.law

*Counsel for General Star Indemnity Company*

Aaron L. Mitchell
Texas Bar No. 14205590
Beth Bradley
Texas Bar No. 06243900
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Ave., Suite 250
Dallas, Texas 75204
Direct: (214) 665-0110
Fax: (214) 665-0199
aaronm@tbmmlaw.com
bethb@tbmmlaw.com

Lloyd A. Gura (*pro hac vice*)
NY Bar – 2380277
Pamela J. Minetto (*pro hac vice*)
NY Bar - 2241685
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
Fax: (973) 242-4244
lgura@moundcotton.com
pminetto@moundcotton.com

*Counsel for Indian Harbor Insurance
Company, on behalf of itself and as successor
in interest to Catlin Specialty Insurance
Company*

Aaron Z. Tobin
Texas Bar No. 24028045
William G. Whitehill
Texas Bar No. 21356550
Justin D. Hanna
Texas Bar No. 24095726
CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone: 214.691.6300
Facsimile: 214.691.6311
atobin@condontobin.com
bwhitehill@condontobin.com
jhanna@condontobin.com

Kim V. Marrkand
Massachusetts Bar No. 543823
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com

Douglas R. Gooding
Massachusetts Bar No. 558976
Bryana T. McGillycuddy
Massachusetts Bar No. 684990
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
bmcgillycuddy@gmail.com

*Counsel for Liberty Insurance Underwriters
Inc., Liberty Mutual Insurance Company,*

- 7 -

*Liberty Surplus Insurance Corporation, The Ohio Casualty Insurance Company, Peerless Indemnity Insurance Company, Safeco Insurance Company of America & Wausau General Insurance Company*

Gary S. Kessler
Texas Bar No. 11358200
Anne-Alise "Ali" Hinckley
Texas Bar No. 24090786
ahinckley@kesslercollins.com
Samuel C. Kessler
Texas Bar No. 24118431
skessler@kesslercollins.com
KESSLER COLLINS
500 N. Akard St., Ste. 3700
Dallas, TX 75201
214.379.0722 Telephone
214.373.4714 Facsimile

Thaddeus J. Weaver (*pro hac vice*)
Delaware Bar Id. No. 2790
tweaver@dilworthlaw.com
DILWORTH PAXSON LLP
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899-1031
(302) 571-8867 (telephone)
(302) 351-8735 (facsimile)

*Counsel for Munich Reinsurance America Inc., formerly known as American Re-Insurance Company*

Ron H. Burnovski
Texas Bar No. 24109409
CLAUSEN MILLER P.C.
325 N. Saint Paul Street
Suite 3100 | Dallas, Texas 75201
469.942.8633

*Counsel for Old Republic Insurance Company*

Richard A. Galbo (*pro hac vice*)
New York Bar No.: 1970888
GOLDBERG SEGALLA LLP
665 Main Street
Buffalo, NY 14203
Telephone: 716.710.5810
rgalbo@goldbergsegalla.com

Ashlyn Capote (*pro hac vice*)
New York Bar No. 5200969
Michigan Bar No. P76342
665 Main Street
Buffalo, NY 14203
Telephone: 716.510.5899
acapote@goldbergsegalla.com

Alissa K. Christopher
Texas Bar No. 11531020
COZEN O'CONNOR
1717 Main Street
Suite 3100
Dallas, TX 75201
Telephone: 214.462.3299
akchristopher@cozen.com

*Counsel for National Casualty Company, Nationwide Affinity Insurance Company of America, Nationwide Mutual Insurance Company, Scottsdale Insurance Company and Wausau General Insurance Company*

J. Richard Harmon
Texas Bar No. 09020700
Jo Allison Stasney
Texas Bar No. 19080280
John M. Wiggins
Texas Bar No. 24115950
THOMPSON, COE, COUSINS & IRONS, L.L.P.
Plaza of the Americas

- 8 -

700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
Telephone:  214-871-8200
Telecopy:  214-871-8209
rharmon@thompsoncoe.com
jstasney@thompsoncoe.com
jwiggins@thompsoncoe.com

*Counsel for QBE Insurance Corporation*

Joseph A Ziemianski
Texas Bar No. 00797732
COZEN O'CONNOR
1221 McKinney
Suite 2900
Houston, TX 77010
Telephone: (832) 214-3900
Facsimile: (832) 214-3905
jziemianski@cozen.com

Alicia G. Curran
Texas Bar No. 12587500
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Telecopier: (214) 462-3299
acurran@cozen.com

Kristie M. Abel (*pro hac vice*)
PA Bar No. 311481
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Tel: 215-665-2715
kabel@cozen.com

*Counsel for Endurance American Insurance*
*Company and Endurance American Specialty*
*Insurance Company*

Lance V. Clack
Texas State Bar No. 24040694
lance.clack@figdav.com
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000
(214) 939-2090 (Fax)

Laura S. McKay (*pro hac vice to be filed*)
llinois State Bar No. 6207837
lmckay@hww-law.com
Douglas M. DeWitt (*pro hac vice to be filed*)
Illinois State Bar No. 6274805
ddewitt@hww-law.com
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, IL 60601
(312) 784-5415
(312) 784-5499 (fax)

*Counsel for Sparta Insurance Company, as*
*successor for certain limited purposes to*
*American Employers' Insurance Company*

Shannon M. O'Malley
Texas Bar No. 24037200
somalley@zellelaw.com
Kerry K. Brown

W. Edward Carlton
Texas Bar No. 03820050
ecarlton@qslwm.com

Texas Bar No. 03149880
kbrown@zellelaw.com
Megan E. Zeller
Texas Bar No. 24082187
mzeller@zellelaw.com
ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX 75202
Telephone: 214-742-3000
Facsimile: 214-760-8994

*Counsel for Swiss Re. Corporate Solutions
Capacity Insurance Corporation (formerly
known as, or otherwise responsible for the
liability of, First Specialty Insurance
Corporation) and Westport Insurance
Corporation*

Quilling, Selander, Lownds, Winslet &
Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 781-2100
Facsimile: (214) 871-2111

Catalina J. Sugayan (*pro hac vice*)
Illinois Bar No. 6191764
Bradley E. Puklin (*pro hac vice*)
Illinois Bar No. 6309950
Clyde & Co US LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: (312) 635-7000
Facsimile:  (312) 635-6950
Email: catalina.sugayan@clydeco.us
Email: Bradley.puklin@clyde.co.us

*Counsel for Tenecom Limited (formerly
known as Winterthur Swiss Insurance
Company) and Catalina Worthing Insurance
Ltd (CWIL) (formerly known as Hartford
Financial Products International as Part VII
Transferee of Excess Insurance Co Ltd and
London & Edinburgh Insurance Co Ltd, as
successor to London & Edinburgh General
Insurance Co Ltd.)*

Steven T. Ramos
Texas Bar No. 00784812
AYIK & ASSOCIATES
1301 E. Collins Blvd., Suite 290
Richardson, Texas 75081
Phone:  (214) 570-6596
Facsimile: (214) 570-6262
Email:  stramos@travelers.com

Kathleen D. Monnes (*pro hac vice* application
forthcoming)
Connecticut Bar No. 407246
DAY PITNEY LLP
225 Asylum Street
Hartford, CT 06103
Phone: (860) 275-0103
Facsimile: (860) 881-2482
Email: kdmonnes@daypitney.com

Candace J. Hensley (*pro hac vice*)
Massachusetts Bar No. 706150
DAY PITNEY LLP
One Federal Street
Boston, MA 02110
Phone: (617) 345-4676
Facsimile: (617) 716-2136
Email: chensley@daypitney.com

*Counsel for Charter Oak Fire Insurance
Company; Phoenix Insurance Company; St.
Paul Fire and Marine Insurance Company;
St. Paul Mercury Insurance Company; St.
Paul Surplus Lines Insurance Company; The
Travelers Companies, Inc.; The Travelers
Indemnity Company; Travelers Casualty and
Surety Company; and United States Fidelity
and Guaranty Company*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT SUMMARY .....................................................................................1

BACKGROUND ....................................................................................................5

    A.    BSA, the Local Councils, and the Chartered Organizations ..................................5

    B.    BSA and Local Council Insurance Policies ........................................5

    C.    Abuse Claims and the Illinois Action ..................................................6

    D.    BSA's Chapter 11 Proceedings and Plan of Reorganization ................................7

    E.    The Trust Distribution Process ...........................................................9

    F.    Challenge to the Plan's Treatment of Non-Settling Insurers ..............................11

    G.    The Trustee's Complaint ...................................................................11

ARGUMENT ........................................................................................................12

I.    The Court Lacks Subject Matter Jurisdiction Over the Trustee's Claims for Coverage for the Abuse Claims, Which Are Unripe. .....................................12

    A.    The Trustee's Declaratory Judgment Cause of Action Is Unripe. ......................14

    B.    The Trustee's Breach of Contract and Bad Faith Causes of Action Are Unripe. ..........................................................................................16

II.    The Complaint Fails to State Cognizable Causes of Action for Breach of Contract, Bad Faith or Declaratory Judgment Concerning the Abuse Claims. ...............................18

    A.    The Complaint Fails to State a Cause of Action for Breach of Contract..............19

    B.    The Complaint Fails to State a Cause of Action for Anticipatory Breach of Contract. ...........................................................................................22

    C.    The Complaint Fails to State a Cause of Action for Bad Faith............................23

    D.    The Complaint Fails to State a Cause of Action for Declaratory Judgment.........25

III.    The Court Lacks Personal Jurisdiction Over the PJ Moving Defendants for Claims Made Under Non-Texas Policies. ...................................................................25

A.     The Court Lacks General Jurisdiction Over the PJ Moving Defendants..............26

B.     The Court Lacks Specific Jurisdiction Over the PJ Moving Defendants to Adjudicate Claims Under Non-Texas Policies. ...................................................28

IV.   The Illinois Claims Should Be Dismissed In Favor Of the Illinois Action......................30

A.     This Action and the Illinois Action Are Parallel Proceedings With Respect To the Illinois Claims. .......................................................................................31

B.     Exceptional Circumstances Warrant Abstention. .................................................32

CONCLUSION....................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                         **Page(s)**

*Accardo v. Am. First Lloyds Ins. Co.*,
   No. H-11-0008, 2012 WL 1576022 (S.D. Tex. May 3, 2012)...............................................16

*Am. Constr. Benefits Grp., LLC v. Zurich Am. Ins. Co.*,
   No. 3:12-CV-2726-D, 2014 WL 144974 (N.D. Tex. Jan. 15, 2014) .............................. 14, 16

*Anderson v. Sch. Bd. of Madison Cnty.*,
   517 F.3d 292 (5th Cir. 2008)............................................................................................13

*Arena v. Graybar Elec. Co.*,
   669 F.3d 214 (5th Cir. 2012)............................................................................................16

*ASI Lloyds v. Newman*,
   *No*. CV H-12-1451, 2012 WL 13042502 (S.D. Tex. Nov. 27, 2012) ....................................18

*Baird v. Shagdarsuren*,
   426 F. Supp. 3d 284 (N.D. Tex. 2019) ........................................................................ 28, 29

*In re Base Holdings, LLC*,
   No. 9-34269, 2014 WL 895403 (N.D. Tex. Mar. 5, 2014)....................................................5

*BBX Operating, LLC v. Bank of Am., N.A. (In re Connect Transp., LLC)*,
   No. 3:17-CV-3219-S, 2019 U.S. Dist. LEXIS 232863 (N.D. Tex. Aug. 23, 2019)...............14

*In re Boy Scouts of Am. & Del. BSA, LLC*,
   650 B.R. 87 (D. Del. 2023).........................................................................................2, 11

*Boy Scouts of Am. v. Nat'l. Union Fire Ins. Co. of Pitt., Pa*,
   *No*. 3:15-CV-2420-B, 2016 WL 495599 (N.D. Tex. Feb. 8, 2016) ......................3, 14, 15, 16

*In re: Boy Scouts of America and Delaware BSA LLC*,
   Docket No. 23-01668 (3d Cir. Apr 10, 2023) ...................................................................11

*Brainard v. Trinity Universal Ins. Co.*,
   216 S.W.3d 809 (Tex. 2006).............................................................................................17

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal, S.F. Cnty.*,
   582 U.S. 255 (2017) ........................................................................................................30

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*,
   615 F.3d 364 (5th Cir. 2010)..................................................................................... 28, 29

*Colony Ins. Co. v. Adsil, Inc.*,
   No. 4:16-CV-408, 2018 WL 2562555 (S.D. Tex. June 4, 2018)..........................................12

*Columbare v. Sw. Airlines, Co.*,
No. 3:21-CV-297-B-BK, 2023 WL 406439 (N.D. Tex. Jan. 25, 2023) ...............................10

*Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*,
542 F.3d 106 (5th Cir. 2008) ...........................................................................................15

*Cycles, Ltd. v. W.J. Digby, Inc.*,
889 F.2d 612 (5th Cir. 1989) ...........................................................................................26

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..............................................................................................26, 27

*Dawkins v. Chase Bank, N.A.*,
No. 3:13-CV-1308-M-BN, 2013 WL 4494527 (N.D. Tex. Aug. 22, 2013)...................22, 23

*Dorsett v. Cross*,
106 S.W.3d 213 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) .................................17

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
948 F.3d 289 (5th Cir. 2020)............................................................................................29

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*,
668 F.3d 281 (5th Cir. 2012) ...........................................................................................12

*Flores v. Wells Fargo Bank, N.A.*,
No. CV M-09-225, 2009 WL 10693450, at *3 (S.D. Tex. Oct. 30, 2009) ..........................33

*Hoffman v. L&M Arts*,
774 F. Supp. 2d 826 (N.D. Tex. 2011) .............................................................................21

*Howley v. Bankers Standard Ins. Co.*,
No. 3:19-CV-2477-L, 2020 WL 4731968 (N.D. Tex. Aug. 14, 2020)...........................19, 20

*Howley v. Bankers Standard Ins. Co.*,
No. 20-10940, 2022 WL 576403 (5th Cir. Feb. 25, 2022)...............................19, 20, 21, 22

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
995 F. Supp. 2d 587 (N.D. Tex. 2014) ..............................................................................19

*Kim v. Nationwide Mut. Ins. Co.*,
614 F. Supp. 3d 475 (N.D. Tex. 2022) ..............................................................................20

*Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, LLC*,
2005 No. 3:04CV2518–D .................................................................................................25

*Kucel v. Walter E. Heller & Co.*,
813 F.2d 67 (5th Cir. 1987)..............................................................................................12

-iv-

*LAC Real Est. Holdings, LLC v. Biloxi Marsh Lands Corp.*,
320 F. App'x 267 (5th Cir. 2009) ................................................................. 31, 32

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010) .............................................................................. 13

*Lowe v. Connect Inv. Corp.*,
No. 1:20-CV-174-LY, 2020 WL 10355788 (W.D. Tex. Sept. 25, 2020) ............................. 30

*Martin Res. Mgmt. Corp. v. Fed. Ins.*
Co., No. 20-40571, 2021 WL 4269565 (5th Cir. Sept. 20, 2021) ................................. 24, 25

*Matthews v. United HealthCare Servs. Inc.*,
No. 3:19-CV-01212-E, 2020 WL 5411698 (N.D. Tex. Sept. 9, 2020) ................................ 28

*May v. City of Arlington, Texas*,
398 F. Supp. 3d 68 (N.D. Tex. 2019) ....................................................................... 8

*Microsource, Inc. v. Super. Signs, Inc.*,
No. CIV.A.3:97-CV-2733-G, 1998 WL 119537 (N.D. Tex. Mar. 9, 1998) ......................... 34

*MidTexas Int'l Ctr., Inc. v. Myronowicz*,
No. 3:05-CV-1957-R, 2006 WL 2285581 (N.D. Tex. Aug. 9, 2006) ............................. 32, 33

*Monk v. Huston*,
340 F.3d 279 (5th Cir. 2003) .............................................................................. 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .............................................................................. 26

*Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*,
No. 4:17-CV-3164, 2018 WL 8755785 (S.D. Tex. Jan. 25, 2018) ................................. 24

*Murphy Indus., Inc. v. Essex Ins. Co.*,
No. 4:16-CV-03618, 2017 WL 5127220 (S.D. Tex. Sept. 20, 2017) ............................... 24

*My Fabric Designs, Inc. v. F+W Media, Inc.*,
No. 3:17-CV-2112-L, 2018 WL 1138436 (N.D. Tex. Mar. 2, 2018) ............................... 27

*Narvaez v. Wilshire Credit Corp.*,
757 F. Supp. 2d 621 (N.D. Tex. 2010) ............................................................... 22, 23

*Nat'l Cas. Co. v. KT2 LLC*,
No. 3:19-CV-1926-E, 2020 WL 5544152 (N.D. Tex. Sept. 16, 2020) ............................. 29

*Nat'l Surety Corp. v. Boy Scouts of Am.*,
Docket No. 2017-CH-14975 .......................................................................... 7, 34

*Nationstar Mortg. LLC v. Knox*,
    351 F. App'x 844 (5th Cir. 2009) ................................................................. 33, 34

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    911 F.2d 993 (5th Cir. 1990)...................................................................... 32, 33

*New World Int'l., Inc. v. Ford Glob. Techs., LLC*,
    No. 3:15-CV-01121-M, 2016 WL 1069675 (N.D. Tex. Mar. 16, 2016)............................26

*Orix Credit Alliance v. Wolfe*,
    212 F.3d 891 (5th Cit. 2000)...............................................................................14

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005)...............................................................................19

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)...............................................................................13

*Reneker v. Offill*,
    2010 WL 1541350 (N.D. Tex. Apr.19, 2010) ....................................................5

*Safe Home Sec., Inc. v. Philadelphia Indem. Ins. Co.*,
    581 F. Supp. 3d 794 (N.D. Tex. 2021) ...............................................................14

*Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018).................................................................................27

*Schlumberger Tech. Corp. v. Carolina Cas. Ins. Co.*,
    No. 22-40271, 2023 WL 2240461 (5th Cir. Feb. 27, 2023) .................................18

*Schober v. State Farm Mut. Auto. Ins. Co.*,
    No. 3:06-CV-1921-M, 2007 WL 2089435 (N.D. Tex. July 18, 2007).................16

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006)........................................................................28, 30

*Stanford Trading Co. v. Nationwide Mut. Ins. Co.*,
    237 F.3d 631 (5th Cir. 2000)...............................................................................17

*Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*,
    No. 3:21-CV-1783-G, 2023 WL 5945856 (N.D. Tex. Sept. 11, 2023).........................19, 21

*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000)...............................................................................13

*Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*,
    No. 3:20-CV-1348-D, 2020 WL 5946863 (N.D. Tex. Oct. 7, 2020)....................25

*Walker Centrifuge Servs.,LLC . v. D & D Power, LLC,*
   550 F. Supp. 2d 620 (N.D. Tex. 2008) ....................................................... 31, 32, 33, 34, 35

*Westinde v. JPMorgan Chase Bank, N.A.,*
   No. 3:13-CV-3576-O, 2014 WL 4631405 (N.D. Tex. Sept. 16, 2014)................................23

*Wilmington Sav. Fund v. Purifoy,*
   No. CV H-21-3963, 2022 WL 861509 (S.D. Tex. Mar. 23, 2022)......................................16

**Statutes**

28 U.S.C. § 2201(a) ..............................................................................................................14

Texas Ins. Code § 541.060(a)(2).........................................................................................24

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1351 n.30 ......................... 30

The undersigned Defendants respectfully submit this memorandum in support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), and Local Rules 7.2 and 56.5, and on the basis of *Colorado River* abstention.

## PRELIMINARY STATEMENT

In this action, the Trustee of a Settlement Trust ("**Trust**") established in the chapter 11 reorganization of Boy Scouts of America ("**BSA**") seeks liability insurance coverage from 91 insurers under about 2,300 insurance policies allegedly issued over more than seven decades to BSA and non-debtor "Local Councils" in all 50 states and beyond. The Trustee demands coverage for tens of thousands of individual sexual or other abuse claims that someday might be paid by the Settlement Trust, but have yet to be fully submitted to the Trust, much less tendered to any Defendant insurer for indemnification. The Trustee not only seeks declaratory relief for insurance claims she has not made yet, but also asks for damages for breach of contract and bad faith for the purported failure to indemnify these not-yet-made insurance claims—even as the Complaint admits that "non-declaratory relief would not resolve coverage for future Abuse Claims." Compl. ¶ 140. The Trustee bases her Complaint on allegations "upon information and belief" that Defendants "will fail to effectuate prompt, fair, and equitable settlements of claims billed to them by the Trust for Abuse Claims for which the Trust will become legally obligated to pay [sic]." Compl. ¶ 155; *see also id.* ¶¶ 2, 135, 149. The Trustee's inchoate insurance claims are unripe and non-justiciable, and fail to state claims this Court can or should adjudicate now.

## ARGUMENT SUMMARY

BSA filed for chapter 11 bankruptcy protection in February 2020, prompted by mounting lawsuits alleging sexual and other abuse in BSA's Scouting programs ("**Abuse Claims**"). BSA's chapter 11 proceedings were "an extraordinary case by any measure," in that they sought to resolve all "Scouting-related" Abuse Claims, not just against BSA, but also against hundreds of "Local

Councils" and other organizations that were not debtors in BSA's bankruptcy. *See In re Boy Scouts of Am. & Del. BSA, LLC*, 650 B.R. 87, 105 (D. Del. 2023). BSA's chapter 11 plan ("**Plan**") channels all such Abuse Claims to the Trust to process, evaluate, and pay in accordance with a set of Trust Distribution Procedures ("**TDP**s"). As relevant here, the Plan purported to transfer not just BSA's rights to insurance for Abuse Claims, but the insurance rights of non-debtor Local Councils.

Recognizing that the Trust succeeded to a "complex array of overlapping liabilities and insurance rights," *id*. at 104, the TDPs contemplate that the Trustee will assess whether Abuse Claims are eligible for insurance coverage, and seek such coverage from the relevant insurers, on a claim-by-claim basis. For example, the TDPs empower the Trustee to request additional documents from claimants to assess insurance eligibility, and require the Trustee to provide insurers with notice in certain claims-specific circumstances, such as when a claimant elects to bring their Abuse Claim against the Trust in the tort system. As the District Court held: "The Settlement Trust's rights under any insurance policies issued by Non-Settling Insurance Companies . . . shall be determined under the law applicable to each such policy in subsequent litigation." *Id*. at 180.

The Complaint ignores the necessity of determining insurance coverage for each Abuse Claim under the applicable insurance policies and applicable governing law. Instead, the Trustee asks this Court to make an ex-ante, mass proclamation of coverage for all Abuse Claims against BSA and the Local Councils, before even giving the Defendant insurers any chance to evaluate coverage for any specific Abuse Claim. In addition to being at odds with the TDPs, the Plan and the Plan confirmation order, the Trustee's Complaint is unsustainable as a matter of law.

*First*, this Court lacks subject matter jurisdiction over the Trustee's causes of action for coverage for Abuse Claims it has not yet processed under the TDPs, requiring dismissal under Federal Rule of Civil Procedure 12(b)(1). Federal courts have subject matter jurisdiction only over ripe claims, and that includes claims for declaratory relief. In the insurance context, there is no justiciable claim for coverage until a claim has been made in the form of a lawsuit or judgment, such that it can be determined whether the claim asserted or the judgment rendered gives rise to a coverage obligation. *See, e.g.*, *Boy Scouts of Am. v. Nat'l. Union Fire Ins. Co. of Pitt., Pa*, *No.* 3:15-CV-2420-B, 2016 WL 495599, at *2-*3 (N.D. Tex. Feb. 8, 2016) (dismissing declaratory judgment claim as unripe where no lawsuit was pending). Because the Trustee has not processed any of the 82,209 "unique" Abuse Claims, Compl. ¶ 107, for which she might have to make a monetary award under the TDPs, and thus necessarily cannot have presented any Defendant with a coverage demand for any such claim, her requests for declaratory relief and her claims of breach of contract and bad faith are premature.

*Second*, if the Court does not dismiss the Trustee's unripe claims under Rule 12(b)(1), it should dismiss them under Rule 12(b)(6). In attempting to litigate prospectively the Defendants' liability *en masse*, the Complaint relies on sweeping conclusions and generalizations rather than the concrete factual allegations required to plead the elements of breach of contract or bad faith adequately. No amount of hyperbole about some Defendants' objections to the proposed Plan during the bankruptcy process can mask the fact that the Trustee has failed to plead the facts necessary to sustain a cause of action for breach of contract, including anticipatory breach of contract, or bad faith. The Complaint does not identify which future Abuse Claims the Trustee asserts will be covered by which insurance policies, or explain how the terms of those policies could possibly have been breached, much less breached in bad faith.

*Third*, if the Court does not dismiss the Trustee's claims under Rules 12(b)(1) or 12(b)(6), it should dismiss the Trustee's claims under non-Texas insurance policies for lack of personal jurisdiction, pursuant to Rule 12(b)(2).  The Trustee's three causes of action cover thousands of separate insurance claims, as to each of which the Trustee must establish the Court's personal jurisdiction.  The Trustee asserts the right to insurance coverage under policies issued to Local Councils in all 50 states, Puerto Rico and three non-U.S. jurisdictions, and under policies issued to BSA before it moved to Texas in 1978.  This Court lacks personal jurisdiction to adjudicate insurance claims arising out of policies issued to entities outside of Texas by the 25 moving Defendants that issued such non-Texas policies ("**PJ Moving Defendants**").  No PJ Moving Defendant is incorporated or has its principal place of business in Texas, and therefore, the Court lacks general personal jurisdiction over them.  And because the PJ Moving Defendants did not purposefully avail themselves of doing business in Texas when they issued a non-Texas policy— for example, a policy to a Local Council in California, or a policy to BSA when it was headquartered in New Jersey—this Court lacks specific jurisdiction over them with respect to claims under such policies.

Finally, a small subset of the claims the Trustee attempts to bring here—the only subset that is arguably ripe for adjudication—is already subject to a proceeding in Illinois that has been ongoing for over five years.  That Illinois action was filed in Cook County by a Defendant insurer against BSA and a Chicago-based Local Council concerning BSA's pre-bankruptcy settlement of multiple abuse claims related to a single perpetrator.  It was stayed by BSA's bankruptcy, but now has resumed in Illinois.  Under the doctrine of *Colorado River* abstention, those Illinois claims should be dismissed from this lawsuit and allowed to proceed in Illinois.

## BACKGROUND[1]

### A.    BSA, the Local Councils, and the Chartered Organizations

Boy Scouts of America ("**BSA**") is a non-profit corporation founded in 1910 and chartered by an act of Congress on June 15, 1916.  Compl. ¶ 102.  The Complaint alleges that "BSA's national headquarters has been located in Irving, Texas since 1978."  *Id*.  Defendants understand that from 1954–1978 BSA's headquarters were in New Jersey.[2]  *See* MTD App. Ex. 4 at 237-38.[3] BSA carries out its "Scouting" programs through charters granted to local councils assigned to specific geographic areas across the United States ("**Local Councils**").  Compl. ¶ 103.  These Local Councils recruit and oversee local organizations, including faith-based institutions and clubs ("**Chartered Organizations**"), which, together with BSA and the Local Councils, administer BSA's Scouting programs.  *Id*.

### B.    BSA and Local Council Insurance Policies

The Trustee brings this action under liability insurance policies allegedly issued to BSA from 1972–2020, and liability insurance policies allegedly issued to Local Councils between 1942 and 2019.  Compl. ¶¶ 113-14.  The Complaint lists about 332 policies allegedly issued to BSA

---

[1] For purposes of the undersigned Defendants' arguments for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) only, and except where indicated, Defendants assume the truth of well-pleaded allegations.

[2] Where the undersigned Defendants reference facts outside the pleading, they do so in support of their arguments made under Rules 12(b)(1), 12(b)(2), and the *Colorado River* abstention doctrine, not their argument for dismissal under Rule 12(b)(6).  However, even when considering the undersigned Defendants' dismissal arguments under Rule 12(b)(6), the Court may consider matters of public record, including BSA's public bankruptcy filings.  *See Reneker v. Offill*, 2010 WL 1541350, at *5 (N.D. Tex. Apr.19, 2010) (Fitzwater, C.J.) ("Courts may take notice of the juridical record in prior related proceedings."); *In re Base Holdings, LLC*, No. 9-34269, 2014 WL 895403, at *1 n.5 (N.D. Tex. Mar. 5, 2014) (taking judicial notice of bankruptcy filings as matters of public record).

[3] Citations in the form "MTD App. Ex. [ ] at [ ]" refer to the Exhibits in the Appendix filed contemporaneously with and in support of this Motion to Dismiss (the "**MTD Appendix**").

over nearly five decades ("**BSA Insurance Policies**"), and about 2,000 policies allegedly issued to Local Councils beginning in the 1940s ("**Local Council Insurance Polices**" and, together with the BSA Insurance Policies, "**Subject Insurance Policies**").[4]  *Id.* at Exs. A, B.

The alleged Subject Insurance Policies differ from one another in a number of ways, including the period of time they cover and the entity or entities they insure.  *See id.* ¶¶ 113-15. Some BSA Insurance Policies were issued to BSA before 1978, when BSA was based in New Jersey or elsewhere outside of Texas.  *See id*. ¶¶ 102, 113; MTD App. Ex. 4 at 237-38.  Most of the Local Council Policies were issued to Local Councils located outside of Texas.  *See id*. ¶¶ 103, 114, Ex. B.  Some Local Council Policies allegedly include BSA as an additional insured; others do not.  *See id.* ¶ 114.  According to the Complaint, some of the Subject Insurance Policies were issued to insureds residing in Texas, but many were issued to insureds residing outside of Texas ("**Non-Texas Policies**").  *See id.* ¶¶ 102-03, 113-14.

C.    **Abuse Claims and the Illinois Action**

Leading up to its chapter 11 bankruptcy petition in 2020, BSA, along with its Local Councils and Chartered Organizations, were named as defendants in numerous lawsuits alleging Abuse Claims.  *Id*. ¶¶ 104-05.  BSA called upon certain of its insurers in connection with some of those pre-bankruptcy Abuse Claims, and as a result its insurers sometimes funded costs associated with defense and settlement.  *See* MTD App. Exs. 5, 6 at 252, 254, 267-68.  Thus, prior to BSA's filing for bankruptcy, the limits of some of BSA's insurance policies were eroded in connection with payment of Abuse Claims.  *See id*.

---

[4]  The undersigned Defendants have been unable to confirm the existence of or locate a number of the alleged policies listed in Exhibits A and B to the Complaint (over 800 of which do not include a policy number).  The undersigned Defendants reserve all rights to bring separate motions related to unidentified or missing policies.

In 2017, Defendant National Surety initiated litigation against BSA and the Chicago Area Local Council in Cook County Circuit Court ("**Illinois Court**"). *See Nat'l Surety Corp. v. Boy Scouts of Am., et al.*, No. 2017-CH-14975 ("**Illinois Action**"); MTD App. Ex. 7 at 306-08.[5] National Surety sought a declaration that it had no obligation to provide coverage for certain Abuse Claims asserted by 18 victims against Chicago-area Scout leader Thomas Hacker. Compl. ¶ 127. In addition to BSA, National Surety named 20 of BSA's other insurers (including many Defendants in this action), whose rights and obligations under certain of their own policies would be potentially impacted by the coverage rulings concerning the Hacker claims. *See id*. The Illinois Action was automatically stayed by the filing of BSA's bankruptcy petition (*id.* ¶ 129), but has since resumed, with the Trustee now substituted as defendant in place of BSA and the Chicago-area Local Council. MTD App. Ex. 8 at 323.[6]

### D.     BSA's Chapter 11 Proceedings and Plan of Reorganization

"In 2020, approximately 275 lawsuits asserting Abuse Claims were pending in state and federal courts across the country." Compl. ¶ 105. On February 18, 2020, in order to shield itself from the growing number of Abuse Claims, BSA and a wholly-owned subsidiary commenced a voluntary bankruptcy proceeding in Delaware under Chapter 11 of the Bankruptcy Code. *See id.* ¶¶ 104-05; MTD App. Ex. 11 at 334-50. The Local Councils and Chartered Organizations are not debtors in BSA's bankruptcy. *See id*.

[5] The Complaint references a competing Texas Action that BSA initiated in 2018 to adjudicate insurance coverage for the Hacker claims. Compl. ¶ 129. Shortly after the filing of the Complaint, that lawsuit was dismissed for want of prosecution. *See* MTD App. Ex. 9 at 325.

[6] On July 27, 2023, National Surety filed a motion for leave to file an amended complaint. *See* MTD App. Ex. 10 at 327. As of the date of this filing, that motion is still pending. Undersigned Defendants' motion here addresses the Illinois Action as it is presently constituted.

On September 8, 2022, the United States Bankruptcy Court for the District of Delaware issued an order approving BSA's Plan, which was affirmed by the United States District Court for the District of Delaware on March 28, 2023, and became effective on April 19, 2023. Compl. ¶ 106. A core feature of the Plan is its "Channeling Injunction," which provides that the Trust assumes liability for pre-petition Abuse Claims, and the "sole recourse" of any holder of such Abuse Claims "shall be to and against the [Trust]." *Id.* at 108; MTD App. Ex. 2 (the Plan), Art. X.F.1 at 130-38.[7] The Trustee administers those claims in accordance with the Settlement Trust Agreement and the TDPs. Compl. ¶ 112. The purpose of the TDPs is, among other things, to "hold, preserve, maximize and administer the Settlement Trust Assets," and to "obtain insurance coverage" for allowed Insured Abuse Claims. MTD App. Ex. 3 (the TDPs), Art. I.A at 161.

The Plan also provides for an "Insurance Assignment," which purports to transfer to the Trust all rights that BSA, the Local Councils, and certain chartered organizations may have against insurers who did not settle in the bankruptcy ("**Non-Settling Insurers**") in any of the Subject Insurance Policies. Plan, Art. I.A.155-57 at 040-41; *see* Compl. ¶ 110. Under the Plan:

> All Abuse Claims shall be channeled to and resolved by the [Trust] in accordance with the Trust Distribution Procedures; ***provided***, that any Non-Settling Insurance Company may, subject to Article X.M, raise any valid Insurance Coverage Defense in response to a demand by the [Trust], including any right of such Non-Settling Insurance Company to assert any defense that could [] have been raised by [BSA or a Local Council] with respect to such Claim.

Plan, Art. V.N at 092. (emphasis added).

The TDPs provide that the Trustee "shall seek reimbursement for each Insured Abuse Claim . . . from the applicable Non-Settling Insurance Company(ies) pursuant to the Insurance

---

[7] Because the Plan and the TDPs are referred to in the Complaint, and are central to the Trustee's claims, they should be considered part of the pleadings. *See May v. City of Arlington, Texas*, 398 F. Supp. 3d 68, 77 (N.D. Tex. 2019).

Policies and applicable law." TPDs, Art. X at 184. They further provide that "[n]othing in these TDP shall modify, amend, or supplement . . . the terms of any Insurance Policy or rights and obligations under any Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order." *Id.*, Art. V.C at 168. For Abuse Claims that proceed to formal litigation or independent review, the Trustee must provide notice to the relevant Non-Settling Insurer and allow their participation in the Claim's resolution. *Id.*, Arts. XII-XIII at 185-94.

### E.    The Trust Distribution Process

The TDPs create three processes for the evaluation and liquidation of Abuse Claims: (1) an expedited alternative ("**Expedited Distribution**"); (2) evaluation under a claims matrix ("**Matrix Evaluation**"); and (3) an Independent Review Option ("**IRO**"). *Id.*, Arts. VI-IX, XIII at 168-83, 188-94. Expedited Distribution permits Abuse Claimants to obtain an expedited distribution of $3,500 after the Claimant submits a signed proof of claim attesting to the truth of its contents and signs a release. *Id.*, Art. VI at 168-69. Abuse Claims arising from Claimants who elect Expedited Distribution are not eligible for insurance coverage. *Id.*

Matrix Evaluation permits Abuse Claimants to obtain payments of anywhere between $3,500 and $2,700,000, but imposes additional requirements, including that Claimants must submit all records in their possession regarding their Claim, sign a questionnaire under oath, and participate in any requested evaluations. *Id.*, Arts. VII-VIII at 169-81. If the Abuse Claim is potentially covered by an Insurance Policy, the Trustee can request additional information in connection with seeking insurance reimbursement. *Id.*, Art. X at 184. The Trustee then must evaluate each submitted Abuse Claim in accordance with proscribed criteria and procedures, and determine whether the evidence submitted by the Claimant "is credible and demonstrates, by a preponderance of the evidence, that the Submitted Abuse Claim is entitled to recovery and should

be allowed." *Id.*, Art. VII.C.2 at 171. Allowed claims are then valued pursuant to a claim Matrix based on the type of abuse and certain scaling factors, resulting in a "Proposed Allowed Claim Amount." *Id.*, Art. VIII at 174-81. If the Abuse Claimant disputes their Proposed Allowed Claim Amount, and they request but are denied reconsideration, they can then pursue their Abuse Claim against the Trust in state or federal court. *Id.*, Art. XII at 185-88. If the Trustee wishes to seek defense of an Abuse Claim brought against the Trust in court, she must first provide notice to "each Non-Settling Insurance Company from whom the Settlement Trust determines insurance coverage may be available." *Id.*, Art. XII.D at 186.

Under the IRO, a third-party neutral is selected by the Trustee to review Abuse Claims and make a payment recommendation intended to replicate what a jury would award in the tort system. *Id.*, Art. XIII.A at 188-89. If an Abuse Claimant elects IRO, the Trustee is required to give "prompt notice" to any potentially responsible Non-Settling Insurers. *Id.*, Art. XIII.K at 191-92. The original deadline for the submission of IRO claims was October 19, 2023; however, on October 2, 2023, the Trustee moved in the Bankruptcy Court to extend that deadline to December 18, 2023. MTD App. Ex. 12 at 352-53. The Complaint does not state that any Abuse Claim has been processed or settled under the Matrix Evaluation or IRO process. According to the Trust's official website, the Trustee's processing of Abuse Claims is just starting to get underway, beginning with applications for Expedited Distribution (which are not eligible for insurance reimbursement). *See* scoutingsettlementtrust.com (Aug. 17, 2023) (last accessed Oct 6, 2023).[8]

---

[8] Courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Columbare v. Sw. Airlines, Co.*, No. 3:21-CV-297-B-BK, 2023 WL 406439, at *4 (N.D. Tex. Jan. 25, 2023). This rule applies to the contents of publically available websites – particularly where, as here, a party to the case published the website. *See id.* (taking judicial notice of the contents of party's website in granting dismissal under Rule 12(b)(6)).

F.    **Challenge to the Plan's Treatment of Non-Settling Insurers**

Before the Plan became effective, a number of BSA's Non-Settling Insurers—including some of the Defendants here—challenged the Plan's confirmation.  *See In re Boy Scouts of Am.*, 650 B.R. 87 at 105, 180.  In affirming the Bankruptcy Court's confirmation of the Plan over those objections, the District Court held that "the awards issued by the Settlement Trust . . . [would] not necessarily correlate to what an insurer is 'obligated to pay' or what 'a loss' is under [an Non-Settling Insurer's] policy[,]" and that "a coverage court will determine whether awards are covered *by any particular insurance policy* to the extent that there is a dispute[.]"  *Id.*  (emphasis added).  Clarifying further, the District Court held that "[t]he Settlement Trust's rights under any insurance policies issued by Non-Settling Insurance Companies . . . shall be determined under the law applicable *to each such policy* in subsequent litigation."[9] *Id.* (emphasis added).

G.    **The Trustee's Complaint**

The Trustee filed the Complaint on July 17, 2023.  It names 91 insurer Defendants, as well as Doe Defendants.  Compl. ¶¶ 4-96.  It asserts claims for declaratory judgment, breach of contract, and bad faith—all predicated on Defendants' alleged obligations to cover "82,209 unique" Abuse Claims under the Subject Insurance Policies identified in the Complaint.  *Id.* ¶¶ 1-2, 107, 110, 134-57, Exs. A, B.[10]  The Abuse Claims described in the Complaint by definition have been channeled to the Trust for processing pursuant to the TDPs.  *Id.* ¶¶ 108, 138.  A small subset of these claims, which make up "less than one percent" of Abuse Claims, stem from the conduct of Chicago-area

---

[9] The Non-Settling Insurers who challenged the Plan's confirmation filed an appeal of the District Court's order, which is currently pending in the Third Circuit.  *See In re: Boy Scouts of America and Delaware BSA LLC*, Docket No. 23-01668 (3d Cir. Apr 10, 2023).

[10] Exhibits A and B of the Complaint list "unknown" as the policy number for over 800 of the Subject Insurance Policies, scores of entries for which the insurer is identified as "Doe Defendant." *See id.*, Exs. A, B.

Scout leader Thomas Hacker, and are already subject to coverage litigation in the Illinois Action (the "**Illinois Claims**").  *See id*. ¶¶ 126-27.

The Complaint alleges that the Subject Insurance Policies "promise in their affirmative grants of coverage, without limitation and with varying wording, to indemnify the insured for, or to pay on the insured's behalf, all damages and defense costs that the insured becomes legally obligated to pay (a) because of personal injury caused by an occurrence during the policy period" or "pursuant to similar wording."  *Id*. ¶ 115.  The Complaint is silent as to what constitutes an "occurrence" under any of the Subject Insurance Policies.  The Complaint also does not identify a single Abuse Claim or specify which of the Subject Insurance Policies the Trustee alleges must respond to any particular Abuse Claim.  The Trustee alleges without specificity that "[m]any Defendants" disputed their obligation to provide coverage for Abuse Claims prior to BSA's bankruptcy (*id*. ¶ 125), and objected to the Plan.  *Id*. ¶ 131.  The Complaint further alleges that, "upon information and belief," Defendants "will dispute, decline, or fail to perform fully" their obligations under the Subject Insurance Policies.  *Id*. ¶ 135.

## **ARGUMENT**[11]

I.    **The Court Lacks Subject Matter Jurisdiction Over the Trustee's Claims for Coverage for the Abuse Claims, Which Are Unripe.**

"[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."  *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotations omitted).

---

[11] For the purposes of this motion, Defendants rely primarily on federal law regarding justiciability, pleading standards, and personal jurisdiction.  In some instances, Defendants also cite Texas law, or federal cases applying Texas law.  In doing so, Defendants do not concede that Texas law governs all of the Trustee's claims.  Defendants reserve the right to raise the applicability of other states' laws in the event that this proceeding is not dismissed in its entirety.  *Cf. Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987); *Colony Ins. Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2018 WL 2562555, at *4 (S.D. Tex. June 4, 2018).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). "Generally, issues are not ripe if 'further factual development is required.'" *Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 296 (5th Cir. 2008).

The Complaint alleges three causes of action: declaratory judgment (¶¶ 134-41); breach of contract (¶¶ 142-52); and bad faith (¶¶ 153-57). Under the logic of the Complaint, each of these causes of action applies to some as-yet-unknown number of the over 82,000 Abuse Claims[12] filed during the bankruptcy,[13] and implicates some unknown and unstated combination of over 2,300 Subject Insurance Policies. As a result, the Trustee actually brings many thousands of coverage claims, each based on Abuse Claims that have not yet been resolved, much less presented to any individual Defendant for coverage. The Trustee's claims are not ripe and therefore not justiciable.

---

[12] For the purposes of Argument Sections I, II, and III, Defendants use "Abuse Claims" to refer to Abuse Claims that are subject to resolution by the Trust pursuant to the TDPs and that are not currently subject to coverage litigation in the Illinois Action. The Illinois Claims are addressed separately in Argument Section IV.

[13] The exact number of coverage claims is uncertain for a number of reasons, including that the Complaint provides neither (i) a definite number of Abuse Claims for which the Trustee seeks coverage nor (ii) a complete list of Subject Insurance Policies that are allegedly implicated. *See* Compl. ¶¶ 2, 110.

A.    **The Trustee's Declaratory Judgment Cause of Action Is Unripe.**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory judgment is available only in circumstances where an "actual controversy" makes the action ripe. *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 896 (5th Cit. 2000); *see also BBX Operating, LLC v. Bank of Am., N.A. (In re Connect Transp., LLC)*, No. 3:17-CV-3219-S, 2019 U.S. Dist. LEXIS 232863, at *9 (N.D. Tex. Aug. 23, 2019). If the action is not ripe, it is not justiciable and must be dismissed. *See id.*

Liability insurance policies like those at issue here often impose two sets of duties on an insurer—the duty to defend a potentially-covered claim, and the duty to indemnify a covered claim. *See Safe Home Sec., Inc. v. Philadelphia Indem. Ins. Co.*, 581 F. Supp. 3d 794, 797 (N.D. Tex. 2021). The Trustee's claim for declaratory relief seeks a declaration of "coverage in full," Compl. ¶ 137, without specifying whether that includes both defense and indemnity. Nor does the Trustee plead which Subject Insurance Policies, if any, include a duty to defend that she asserts is triggered. In any event, neither claim is ripe.

As litigation in this district involving BSA confirms, an insurer's duty to defend is not triggered until "the insured faces a pending lawsuit." *Boy Scouts of Am.*, 2016 WL 495599, at *2 (dismissing insured's declaratory judgment claim as unripe where no lawsuit was pending against insured). This is because the duty to defend can only be assessed in light of the specific allegations in an actual lawsuit that the insured seeks to have defended, and, "without an underlying lawsuit, there is no third-party pleading on which the court can predicate its judgment." *Am. Constr. Benefits Grp., LLC v. Zurich Am. Ins. Co.*, No. 3:12-CV-2726-D, 2014 WL 144974, at *3 (N.D. Tex. Jan. 15, 2014) (noting that Texas follows the "eight-corners" rule to assess the duty to defend,

comparing the policy against the complaint).  "[W]ithout pleadings, the Court cannot determine whether an insurer has a duty to defend." *Boy Scouts of Am.*, 2016 WL 495599, at *3.

Here, the Trustee does not—and cannot—plead the existence of any pending lawsuit that could give rise to a duty to defend.  BSA's bankruptcy stayed Abuse Claims against BSA and the Local Councils (Compl. ¶ 129), which in any event have now been channeled to the Trust for resolution by the Trustee in accordance with the TDPs.  Compl. ¶ 108; Plan, Art. V.N at 092.  The TDPs only permit lawsuits against the Trust where an Abuse Claimant elects Matrix Evaluation, and only after the Trust has (i) issued a Proposed Allowed Claim Amount, and (ii) the Abuse Claimant has unsuccessfully sought reconsideration of the Proposed Allowed Claim Amount by the Trust.  *See* TDPs, Arts. VIII, XII at 174-81, 185-88.  Further, if the Trustee believes that she might be entitled to a defense for such a lawsuit under a particular Subject Insurance Policy, she must first give notice to any potentially responsible Non-Settling Insurer.  *See id*. Art. XII.D at 186.  The Trustee does not and cannot yet allege that any of these preconditions has been satisfied.  Thus, there are no pending lawsuits involving Abuse Claims that might give rise to a duty to defend under the Subject Insurance Policies, and any request by the Trustee for a declaration concerning Defendants' duty to defend is not ripe.

The Trustee's request for declarations of coverage relating to the duty to indemnify is equally unripe.  In the Fifth Circuit, as a general rule in a suit by an insured, "an insurer's duty to indemnify cannot be determined until after the underlying suit has been resolved." *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008); *see also Boy Scouts of Am.*, 2016 WL 495599, at *3 ("[a] complaint seeking a declaration of an insurer's duty to indemnify may present an actual controversy only 'after the underlying suit has been resolved." (internal quotation marks omitted)).  This is because the "duty to indemnify is determined based on the facts

-15-

actually established in the underlying suit." *Am. Constr. Benefits Grp, LLC*, 2014 WL 144974, at

*3 ("[a] suit for indemnity does not arise until some liability is established and made fixed and

certain. This does not occur until judgment is rendered or until the lawsuit is settled.").  Thus,

without an adjudicated dispute, courts cannot determine that an insurer has a duty to indemnify.

Applying this principle, this Court has dismissed declaratory judgment claims for indemnity where

such claims are filed by insureds prior to the underlying lawsuit's complete resolution.  *See, e.g.*,

*Zurich*, 2014 WL 144974, at *3; *Boy Scouts of Am.*, 2016 WL 495599, at *2-3.

Here, the Trustee does not—and cannot—plead that any Abuse Claim allegedly subject to

insurance coverage has been resolved.  Rather, the Trustee is just beginning to process Abuse

Claims.  *See* scoutingsettlementtrust.com.[14]  Accordingly, the determination of any Defendant's

duty to indemnify any particular Abuse Claim is premature.  *See Boy Scouts of Am*., 2016 WL

495599, at *3.

### B.    The Trustee's Breach of Contract and Bad Faith Causes of Action Are Unripe.

The doctrine of ripeness also precludes an insured from suing its insurer for breach of

contract prior to resolution of the underlying liability claims.  *See Accardo v. Am. First Lloyds Ins.

Co.*, No. H-11-0008, 2012 WL 1576022, at *3 (S.D. Tex. May 3, 2012) (dismissing insured's

breach of contract claim as unripe where liability determination had not yet been made); *see also

Schober v. State Farm Mut. Auto. Ins. Co*., No. 3:06-CV-1921-M, 2007 WL 2089435, at *2 (N.D.

Tex. July 18, 2007) (dismissing breach of contract claim where the insured "ha[d] not established

---

[14] For purposes of a Rule 12(b)(1) motion, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012).  "The court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment."  *Wilmington Sav. Fund v. Purifoy*, No. CV H-21-3963, 2022 WL 861509, at *1 (S.D. Tex. Mar. 23, 2022).

. . . by judgment or settlement[,]" the underlying liability for which it sought indemnification, which is a "condition precedent" to establishing breach of a liability policy); *Cf. Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (where a coverage determination implicates tort law, "the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined."); *Stanford Trading Co. v. Nationwide Mut. Ins. Co.*, 237 F.3d 631 (5th Cir. 2000) ("Texas courts have interpreted the policy language 'legally obligated to pay as damages' to mean that the insured is required by a settlement or a judgment in a filed suit to pay a third party.")

The same principle applies here. The Complaint alleges that Defendants contracted to pay costs that "the insured [i.e. the Trust *becomes legally obligated to pay*" on account of personal injuries caused by or arising out of a contractually defined "occurrence" during the relevant policy period. Compl. ¶ 115 (emphasis added). The Trustee does not—and cannot—allege that it has "become legally obligated to pay" any insurable Abuse Claim, because none has been resolved.

Moreover, "[a] cause of action for breach of a promise to pay arises when a demand for payment has been made and refused." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.— Houston [1st Dist.] 2003, pet. denied); *see also* TDPs, Arts. X, XII-XIII at 184-94 (preserving insurer rights and specifically requiring notice to insurers). The Trustee does not—and cannot— allege that Defendants have refused any demand by the Trustee to pay Abuse Claims when none have been settled by the Trust. The Trustee's claims for breach of contract—brought before the Trustee has made demands for payment from specific Defendants for specific Abuse Claims, and therefore before Defendants have had an opportunity to assess the Trustee's demands for coverage—are unripe.

Because the Trustee cannot yet establish that any Defendant has a duty to defend or indemnify any Abuse Claims, she likewise cannot establish a cause of action for bad faith, under either common law or statute. *See Schlumberger Tech. Corp. v. Carolina Cas. Ins. Co.*, No. 22-40271, 2023 WL 2240461, at *5 (5th Cir. Feb. 27, 2023) ("[A]bsent a duty of defense and/or indemnity, [insured's] claims alleging a breach of [insurer's] duty of good faith and fair dealing, and seeking awards of damages, interest, penalties, attorney fees, and costs under the Texas Insurance Code, likewise fail."). Moreover, to the extent the Trustee asserts a statutory bad faith cause of action predicated on Section 541 of the Texas Insurance Code, such a cause of action "is not ripe until there has been a denial of a claim or compromise settlement offer." *ASI Lloyds v. Newman,* No. CV H-12-1451, 2012 WL 13042502, at *8 (S.D. Tex. Nov. 27, 2012) (citing Texas Insurance Code § 541). The Trustee does not—and cannot—allege that any Defendant has denied or refused to settle any Abuse Claims. Thus, any bad faith claim is premature.

In short, Defendants cannot have breached obligations that undisputedly have not yet arisen, much less breached in bad faith. Indeed, the Trustee herself admits that her breach of contract and bad faith causes of action are inapplicable to Abuse Claims which have not yet been processed by the Trust. Compl. ¶ 140 ("non-declaratory relief would not resolve coverage for future Abuse Claims").

## II.    The Complaint Fails to State Cognizable Causes of Action for Breach of Contract, Bad Faith or Declaratory Judgment Concerning the Abuse Claims.

Even if the Court were to determine it could exercise subject matter jurisdiction over the Trustee's demands for coverage for the Abuse Claims, the Complaint fails to state cognizable causes of action, requiring dismissal under Fed. R. Civ. P. 12(b)(6). The Complaint represents an effort to litigate, preemptively, coverage for thousands of Abuse Claims *en masse*, rather than litigate any such claims that might be denied on a claim-by-claim and policy-by-policy basis, as

-18-

the TDPs contemplate and as the Policies and law require. Consequently, the Complaint relies on rhetoric and generalized, conclusory statements, which are no substitute for the well-pleaded factual allegations required to plead the necessary elements of a claim for breach of contract. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (while under Rule 12(b)(6) well-pleaded facts of a complaint are to be accepted as true, a court should not accept "conclusory allegations, unwarranted deductions, or legal conclusions"). As a result, the Trustee's claims for bad faith and declaratory relief, which overlap with her breach of contract claims, fail as well.

### A.    The Complaint Fails to State a Cause of Action for Breach of Contract.

To survive a 12(b)(6) motion, a complaint alleging breach of contract must set forth sufficient allegations to demonstrate: (1) the existence of a valid contract; (2) performance or tendered performance; (3) breach of the contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach. *Howley v. Bankers Standard Ins. Co.*, No. 3:19-CV-2477-L, 2020 WL 4731968, at *3 (N.D. Tex. Aug. 14, 2020) (applying Texas contract law). In particular, a plaintiff "must identify a specific contractual provision that the defendant allegedly breached[.]" *Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*, No. 3:21-CV-1783-G, 2023 WL 5945856, at *6 (N.D. Tex. Sept. 11, 2023); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014). With respect to alleged breach of insurance policies, a plaintiff's allegations must at least: (1) specify which underlying claims triggered the defendant's obligation to provide coverage and (2) "spell out how" the insurer's conduct with respect to that claim amounts to breach. *Howley v. Bankers Standard Ins. Co.*, No. 20-10940, 2022 WL 576403, at *2 (5th Cir. Feb. 25, 2022) (affirming dismissal where plaintiff's assertion of breach was too "general" and "conclusory"). It is not sufficient to allege that an underlying claim was "covered"—the plaintiff must allege enough factual detail about the

underlying claim and the relevant policy provision for the court to conclude that the policy was breached. *See Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 493 (N.D. Tex. 2022).

The Trustee's conclusory allegations fail to state a plausible causes of action for breach of contract as to Abuse Claims for three reasons. *First*, the Trustee does not—and cannot—adequately plead tender of any resolved insurance-eligible Abuse Claims to Defendants for reimbursement. *Howley*, 2020 WL 4731968, at *3 (tender or performance is a necessary prerequisite to a breach of contract claim). The Trustee has not processed any Abuse Claim, and therefore cannot have tendered any Abuse Claim to any Defendant.

*Second*, the Complaint asserts that the Subject Insurance Policies "obligate Defendants to pay in full for certain Abuse Claims," (Compl. ¶ 149) but it does not specify which Abuse Claims. *See Howley*, 2022 WL 576403, at *2 (insured must specify which underlying claim the defendant is responsible for covering). The Complaint refers to Abuse Claims only in generic terms, and does not identify which Abuse Claim or Claims any Defendant is supposedly liable for, much less identify the specific Subject Insurance Policy allegedly implicated by each Abuse Claim. "That kind of ambiguous boilerplate leaves [each] [D]efendant[] without fair notice" of what the claim is against them, and "the grounds upon which it rests." *Id.* at *3. And while the Trustee asserts in conclusory fashion that "Abuse Claims trigger the Defendants' coverage obligations" (Compl. ¶ 118), she does not actually plead any specific factual allegations from which the Court could come to that conclusion. Indeed, the Complaint does not even assert facts as basic as when each Abuse Claim is alleged to have occurred, which would be required for even a threshold assessment of whether an individual Abuse Claim might fall within the ambit of any particular Subject Insurance Policy. In short, "there is no allegation, beyond conclusory statements, that a covered event occurred." *See Kim*, 614 F. Supp. 3d at 493.

*Third*, the Complaint fails to explain *how* any Defendant breached any of the Subject Insurance Policies. While the Complaint asserts that Defendants have breached the Insurance Policies, it does so only in conclusory fashion, failing to meet the Trustee's pleading burden. *Compare* Compl. ¶ 150 (asserting that "Defendants have breached or will breach their contractual obligations under the Insurance Policies by, among other things, refusing and failing to defend and/or delaying payment and/or refusing to fully pay defense and indemnity costs") *with Howley*, 2022 WL 576403, at *2 (plaintiff's bare assertion that defendant had "breached the contract by denying or underpaying the claims" disregarded as conclusory). Moreover, the Complaint's indiscriminate allegations regarding "[m]any Defendants" do not sufficiently identify the "specific act or omission" by each Defendant that amounted to an alleged breach. *See* Compl. ¶¶ 125, 131; *Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 837 (N.D. Tex. 2011) (alleged conduct of other defendants cannot serve as basis for breach).

Nor does the Complaint identify which provisions of the Subject Insurance Policies allegedly were breached. The Trustee broadly summarizes the Defendants' purported obligations, without identifying the specific provisions on which she is relying to assert each Defendant's breach(es). Compl. ¶ 115. The Complaint in fact affirmatively obscures that information, asserting that under "varying wording," the Defendants are collectively obligated to cover "all damages and defense costs that the insured becomes legally obligated to pay . . . because of personal injury caused by an occurrence during the policy period[,]" or "pursuant to similar wording." *See id.* It does not "identify what provision[s] in the . . . [Insurance Policies] support[]" this conclusory assertion regarding the Defendants' alleged obligations. *Thomas Mushroom*, 2023 WL 5945856, at *6-8 (plaintiff's generic summary of alleged contract obligations disregarded as conclusory).

To the extent the Complaint even generically purports to identify terms of coverage, it fails to plead that the Abuse Claims satisfy those terms. Most notably, the Complaint alleges that an Abuse Claim must constitute an "occurrence" to be covered. Compl. ¶ 115. But the Complaint does not allege how an "occurrence" is defined by any Subject Insurance Policy or plead facts sufficient to show that any Abuse Claim meets any such definition of "occurrence," such that it might be covered. *See id.* at ¶¶ 142-52. As a result, there is no way for the Court to conclude, even assuming the allegations of the Complaint are true, that any Defendant breached the terms of any Subject Insurance Policy with respect to any Abuse Claim.

The Trustee's vague assertion that, in some unspecified way Defendants have breached or will breach their obligations, does not "spell out" how a breach allegedly occurred. *See Howley*, 2022 WL 576403, at *2. This alone is fatal to the Trustee's breach of contract cause of action. *See id.*

### B.     The Complaint Fails to State a Cause of Action for Anticipatory Breach of Contract.

To plead an anticipatory breach claim, a plaintiff must set forth sufficient allegations to demonstrate: (1) absolute repudiation of a contractual obligation; (2) lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. *Dawkins v. Chase Bank, N.A.*, No. 3:13-CV-1308-M-BN, 2013 WL 4494527, at *2-*3 (N.D. Tex. Aug. 22, 2013). "To absolutely repudiate, a party must, through words or actions, declare an unconditional intent not to perform the contract according to its terms." *Id.* "The declaration of intent to abandon the obligation must be in positive and unconditional terms." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010). Where a party does not comply with an obligation out of a belief that their obligation has not in fact been triggered, there is no absolute repudiation. *Id.* "Rather, the party must recognize its duties but refuse to perform them." *Id.*

To meet the requirement for "absolute repudiation," a complaint must include allegations tending to show that "Defendant's words or actions positively and unconditionally demonstrated an intent to abandon its obligations[.]" *Dawkins*, 2013 WL 4494527, at *2-*3. An allegation that the insurer denied or will deny a claim, without more, is insufficient. *See Westinde v. JPMorgan Chase Bank, N.A.*, No. 3:13-CV-3576-O, 2014 WL 4631405, at *6 (N.D. Tex. Sept. 16, 2014). The plaintiff must identify which obligation was absolutely repudiated, and by what overt words or actions. *See id.*

The Trustee does not allege any actions or words by any Defendant supporting an "unconditional intent" to abandon their obligations, or identify which obligation was allegedly repudiated, or by which Defendant. The Complaint's assertion that "[m]any Defendants [] disputed their obligations" is insufficient. Compl. ¶ 125; *Westinde*, 2014 WL 4631405, at *6. So too is its allegation that "[m]any Defendants filed objections to the Plan," which does not tend to show an "unconditional intent not to perform the contact according to its terms." *See Dawkins*, 2013 WL 4494527, at *2. Indeed, the Complaint concedes that certain Defendants' Plan objections were based not on an outright repudiation of their obligations under the Subject Insurance Policies, but instead on concerns that the Plan sought to modify their respective insurance policies and strip them of defenses that the objectors believed might affect their obligations. Compl. ¶ 131 ("The Defendants who opposed the Plan further asserted that they had no obligation to cover Abuse Claims *because of the terms of their Insurance Policies . . . among other defenses*.") (emphasis added); *see Narvaez*, 757 F. Supp. 2d at 630 (no absolute repudiation where party believes they have no obligation). The Trustee does not state a claim for anticipatory breach.

### C.    The Complaint Fails to State a Cause of Action for Bad Faith.

The Complaint likewise fails to plausibly allege a cause of action for bad faith. A plaintiff cannot state a claim for bad faith—whether under common law or statute—by relying on

conclusory assertions or formulaic recitations of elements rather than concrete factual allegations that support an inference of bad faith. *See Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *5 (5th Cir. Sept. 20, 2021) (affirming dismissal of both common law and statutory bad faith claims where plaintiff's allegations regarding bad faith were "conclusory and devoid of specific factual allegations").

The Trustee formulaically recites the provisions of Texas Insurance Code § 541.060. *Compare* Compl. ¶¶ 155-56 ("Defendants thus far have failed to effectuate prompt, fair, and equitable settlements of claims" and "have failed to deal with BSA, Local Councils, and/or the Trust fairly and in good faith, or will fail to deal with the Trust fairly and in good faith.") *with* Texas Ins. Code § 541.060(a)(2) (imposing liability where insurer "fail[s] to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of claims). But she offers no specific facts explaining how any particular Defendant acted in bad faith in settling any particular Abuse Claim, much less how all of them did with respect to all Abuse Claims. Nor could she. The Trustee does not even allege—because she cannot—that any insurance-eligible Abuse Claims have been resolved yet, or tendered to any Non-Settling Insurer for coverage. The Trustee's conclusory assertion of bad faith without any factual detail does not state a plausible cause of action. *See Martin*, 2021 WL 4269565, at *5; *Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*, No. 4:17-CV-3164, 2018 WL 8755785, at *5 (S.D. Tex. Jan. 25, 2018) (assertions that "merely parrot the language of the applicable sections of the Code" and do not attribute conduct to a particular defendant are "legal conclusion[s] couched as factual allegation[s]").

Moreover, to the extent the Trustee asserts a common law cause of action for bad faith, Texas does not recognize such cause of action in the context of third-party claims. *See Murphy Indus., Inc. v. Essex Ins. Co.*, No. 4:16-CV-03618, 2017 WL 5127220, at *5 (S.D. Tex. Sept. 20,

2017) (dismissing common law bad faith claim and citing *Mid-Continent Casualty Co. v. Eland Energy, Inc*., 709 F.3d 515, 521 (5th Cir. 2013)). And in any event, the Trustee cannot state a cause of action for common law bad faith because she has not stated a claim for breach of contract. *Martin*, 2021 WL 4269565, at *6. ("A claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of contract.")

> ### D.    The Complaint Fails to State a Cause of Action for Declaratory Judgment.

Because the declaratory judgment that the Trustee seeks overlaps with the allegations underlying her contract claim, and because the Trustee fails to state a cause of action for breach of contract, the Trustee's declaratory judgment cause of action is subject to dismissal as well. *See Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *3 (N.D. Tex. Oct. 7, 2020) (dismissing declaratory judgment claim that overlapped with breach of contract claim where plaintiff failed to state a claim for breach of contract); *Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, LLC,* 2005 No. 3:04CV2518–D, WL 1421446, at *4 (N.D. Tex. June 1, 2005) (dismissing cause of action for declaratory relief as "redundant" in light of breach of contract causes of action where "core issue" was whether contracts had been breached).

## III.    The Court Lacks Personal Jurisdiction Over the PJ Moving Defendants for Claims Made Under Non-Texas Policies.

In the event that this proceeding is not dismissed either on the bases enumerated in Section I or II above, the PJ Moving Defendants[15] move the Court to dismiss for lack of personal

---

[15] The PJ Moving Defendants are: Allstate Insurance Company, American Home Assurance Company, Arrowood Indemnity Company, Charter Oak Fire Insurance Company, Cincinnati Insurance Company, Columbia Insurance Company, Consolidated National Insurance Company, Erie and Niagara Insurance Association, Erie Family Life, Erie Insurance Exchange, Jefferson Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Mutual Insurance Company, National Casualty Company, National Union Fire Insurance Company of Pittsburgh, Pa, New Hampshire Insurance Company, The Phoenix Insurance Company, Scottsdale Insurance Company, SPARTA Insurance Company, St. Paul Fire & Marine Insurance Company,

jurisdiction the Trustee's causes of action against them to the extent that they assert coverage under Non-Texas Policies.

A federal court may assert jurisdiction over a nonresident defendant in a diversity suit only if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). "Because '[t]he Texas long-arm statute extends to the limits of the Constitution' only the due process prong of the test is at issue." *New World Int'l., Inc. v. Ford Glob. Techs., LLC*, No. 3:15-CV-01121-M, 2016 WL 1069675, at *2 (N.D. Tex. Mar. 16, 2016).

A nonresident defendant's contacts may support an assertion of general or specific personal jurisdiction. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). A court is said to have "general jurisdiction" when a defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 432. Alternatively, a court may exercise "specific" jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Id.* at 433. The party seeking to invoke the court's jurisdiction bears the burden of establishing the requisite contacts. *Id.* at 431. There is no basis for this Court to assert either general or specific jurisdiction over the PJ Moving Defendants with respect to claims for coverage under Non-Texas Policies.

A. **The Court Lacks General Jurisdiction Over the PJ Moving Defendants.**

General jurisdiction over a nonresident defendant exists only when the defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The corporate defendant's

---

St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, The Travelers Companies, Inc., The Travelers Indemnity Company, and Wausau General Insurance Company.

place of incorporation and principal place of business are the paradigm forums where it is "at home." *My Fabric Designs, Inc. v. F+W Media, Inc.*, No. 3:17-CV-2112-L, 2018 WL 1138436, at *4 (N.D. Tex. Mar. 2, 2018). It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *Id.* (citations omitted); *Daimler*, 571 U.S. at 139 n.19 (only in "an exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" establish general jurisdiction).

No PJ Moving Defendant is headquartered or incorporated in Texas, as the Complaint concedes. Compl. ¶¶ 5-95; *See* MTD App. Ex. 13. The Trustee makes no allegation of conduct by any PJ Moving Defendant that would constitute an "exceptional case" rendering that Defendant "essentially at home" in Texas. Indeed, the Complaint makes no Defendant-specific jurisdictional allegations whatsoever, and alleges only that "each Defendant . . . is or has been licensed to do business in Texas, is transacting or has transacted business in Texas; has contracted to insurer persons, property, or risk located in Texas; has contractually or otherwise consented to submit to personal jurisdiction in Texas; and/or has other significant contacts with Texas." Compl. ¶ 99. Vague generalizations of this sort "are insufficient to support general jurisdiction." *See Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) ("[Plaintiff's] allegations that [Defendant] 'conducted business routinely' and does 'substantial business' in Texas, without more, merely amount to 'vague and overgeneralized assertions' of contacts 'that give no indication as to the extent, duration or frequency' of [Defendant's] contacts."). The Court does not have general personal jurisdiction over any PJ Moving Defendant.

**B.    The Court Lacks Specific Jurisdiction Over the PJ Moving Defendants to Adjudicate Claims Under Non-Texas Policies.**

A court may exercise specific jurisdiction only when: (1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely because of random, fortuitous, or attenuated contacts, or the unilateral activity of another person or third party. *Id.* Specific jurisdiction is "claim-specific," meaning "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

In the context of insurance, an insurer does not "purposefully avail" itself of the privileges of a forum state by contracting to provide insurance to a non-resident insured who later travels to and incurs covered costs in the forum state. *Kaiser*, 615 F.3d at 370-74; *Matthews v. United HealthCare Servs. Inc.*, No. 3:19-CV-01212-E, 2020 WL 5411698, at *4 (N.D. Tex. Sept. 9, 2020). This is true even where the policy at issue provides "worldwide coverage," and where the underlying insurable event occurs in the forum. *See Kaiser*, 615 F.3d at 370-74; *Baird v. Shagdarsuren*, 426 F. Supp. 3d 284, 290 (N.D. Tex. 2019) (finding no personal jurisdiction in Texas despite "wide-reaching insurance coverage" and insured event that occurred in Texas, where policy was issued in California). Thus, when a non-resident insurer issues policies to an insured *outside* of Texas, the insurer is not subject to personal jurisdiction in Texas for claims arising out of the policies, even if the claims made under them relate to Texas-based conduct, because the relevant contacts relate to contract formation. *See id.* The relevant contacts are those related to

the contractual relationship. *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020) (relevant contacts in an insurance coverage dispute are those "linked to the procurement and enforcement" of the policy, not contacts related to the claim for which the insurer seeks coverage); *Nat'l Cas. Co. v. KT2 LLC*, No. 3:19-CV-1926-E, 2020 WL 5544152, at *4 (N.D. Tex. Sept. 16, 2020).

The PJ Moving Defendants are alleged to have issued the following categories of Non-Texas Policies: (1) Local Council Insurance Policies issued to Local Councils located outside of Texas and (2) BSA Insurance Policies issued to BSA prior to 1978, while BSA was domiciled outside of Texas. Compl. ¶¶ 102-03, 113-14, Ex. B. In issuing Non-Texas Policies to say, a Local Council in California, the PJ Moving Defendants did not purposefully avail themselves of Texas's privileges, regardless of whether the policies they issued provided nationwide coverage, or required BSA to defend lawsuits in other states including Texas. *See Kaiser*, 615 F.3d at 370-74; *Baird*, 426 F. Supp. 3d at 291. Nor did the PJ Moving Defendants avail themselves of Texas's privileges when they issued policies to BSA before 1978, when BSA was domiciled in New Jersey or elsewhere outside of Texas.

While the Complaint alleges that some Subject Insurance Policies were issued to BSA after it moved to Texas in 1978, that does not somehow create jurisdiction for the Trustee's claims arising out of pre-1978 BSA Insurance Policies. BSA's relocation to Texas in 1978 was BSA's unilateral act, and does not retroactively subject the PJ Moving Defendants to specific jurisdiction in Texas for claims made under pre-1978 Non-Texas Policies issued to BSA. *See Kaiser*, 615 F.3d at 370. Moreover, the fact that a PJ Moving Defendant who allegedly issued Non-Texas Policies may have also issued separate policies to BSA while BSA was domiciled in Texas does not provide a basis for imposing specific jurisdiction on the PJ Moving Defendant with respect to any coverage

-29-

claim the Trustee makes under the Non-Texas Policies, because specific jurisdiction must be established separately for different coverage claims made under different Subject Insurance Policies. *See Seiferth*, 472 F.3d at 274 (personal jurisdiction must be established for each of plaintiff's claims); *Lowe v. Connect Inv. Corp.*, No. 1:20-CV-174-LY, 2020 WL 10355788, at *3 (W.D. Tex. Sept. 25, 2020) (personal jurisdiction must be established separately for claims "predicated on separate contractual agreements"); 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1351 n.30 ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."). In other words, even if this Court has personal jurisdiction over the PJ Moving Defendants with respect to claims made under Texas policies, that is not a basis for asserting personal jurisdiction over claims that the Trustee brings under Non-Texas Policies. *See id.*

The Trustee broadly asserts that Defendants have had "significant contacts" with Texas. Compl. ¶ 99. That allegation is purely conclusory, but also irrelevant because it does not provide a basis for asserting jurisdiction over Defendants for claims arising under Non-Texas Policies, which do not "arise out of" those alleged "significant contacts." *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal, S.F. Cnty.*, 582 U.S. 255, 264 (2017) (where the claims made in the lawsuit are unrelated to the defendant's alleged contacts with the state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate"). The Trustee has not met its burden of pleading contacts by the PJ Moving Defendants with Texas that establish personal jurisdiction over them with respect to claims made under Non-Texas Policies.

## IV. The Illinois Claims Should Be Dismissed In Favor Of the Illinois Action.

A small subset of the Abuse Claims for which the Trustee seeks coverage—the Illinois Claims—are already subject to coverage litigation in the Illinois Action. Compl. ¶¶ 126-27. As

to the Illinois Claims, certain Defendants in this action that are also defendants in the Illinois Action (the "**Abstention Moving Defendants**")[16] separately move this Court to dismiss the Trustee's causes of action regarding those claims in favor of the Illinois Action.

This Court's abstention with respect to coverage for the Illinois Claims is warranted under the *Colorado River* doctrine, which provides that an action should be dismissed (or in the alternative, stayed) in favor of a preexisting state court proceeding where (1) the preexisting state court proceeding is "parallel" to the instant proceeding and (2) "exceptional circumstances" exist. *LAC Real Est. Holdings, LLC v. Biloxi Marsh Lands Corp.*, 320 F. App'x 267, 270 (5th Cir. 2009). Both requirements are met here.

### A. This Action and the Illinois Action Are Parallel Proceedings With Respect To the Illinois Claims.

For the purposes of *Colorado River* abstention, two actions are parallel when they involve "substantially the same parties" and "substantially the same issues." *Walker Centrifuge Servs.,LLC . v. D & D Power, LLC*, 550 F. Supp. 2d 620, 625 (N.D. Tex. 2008). Issues in two actions are substantially the same when they "aris[e] from or connect[] with" the same underlying transaction, even where there is not a the same "precise identity of parties and issues[.]" *See id.*

The Illinois Action includes as parties (i) the Trustee (who recently substituted herself as a party in place of BSA) and (ii) a subset of the Defendants named in this action. *Compare* Compl. ¶¶ 4-96 *with* MTD App. Ex. 7 at 306-13; MTD App. Ex. 8 at 323. Setting aside the remainder of

---

[16] The Abstention Moving Defendants are: American Casualty Company of Reading, Pennsylvania, American Home Assurance Company, CNA Financial Corporation, Columbia Casualty Company, Consolidated National Insurance Company, Continental Casualty Company, Insurance Company of the State of Pennsylvania, Jefferson Insurance Company, Lexington Insurance Company, Munich Reinsurance America Inc., National Fire Insurance Company of Hartford, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and The Continental Insurance Company.

Abuse Claim (which should be dismissed for the reasons outlined above), this action involves exactly the same parties, i.e., the Trustee and the Abstention Moving Defendants that also are parties to the Illinois Action. And in any event, the "precise identity of parties and issues" is not required for two proceedings to be considered parallel. *See Walker*, 550 F. Supp. 2d at 625; *LAC Real Est.*, 320 F. App'x at 270. This action and the Illinois Action also involve the same core issue with respect to Illinois Claims, i.e., whether those claims are covered by insurance. *See* MTD App. Ex. 7 ¶¶ 1-7 at 307-08.

### B.    Exceptional Circumstances Warrant Abstention.

In deciding whether "exceptional circumstances" warrant abstention, courts in this Circuit consider six factors:

> (1) assumption by either court of jurisdiction over a *res*,
> (2) relative inconvenience of the forums,
> (3) avoidance of piecemeal litigation,
> (4) the order in which jurisdiction was obtained by the concurrent forums,
> (5) to what extent federal law provides the rules of decision on the merits, and
> (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*LAC Real Est.*, 320 F. App'x at 260. Courts do not consider these factors as a "mechanical checklist," but rather on balance with an eye towards "wise judicial administration—in particular the need to conserve judicial resources and promote comprehensive disposition of litigation." *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 911 F.2d 993, 1003 (5th Cir. 1990). Not all of the factors set out in *Colorado River* are important in every case, and abstention can be warranted even when multiple factors are neutral or weigh against abstention. *See id.* (affirming district court's decision to abstain based on three factors that were most relevant).

Here, there is no *res* over which the Illinois Court has taken jurisdiction, which weighs against abstention. *See, e.g.*, *Walker Centrifuge*, 550 F. Supp. 2d at 625-26. However, this is not determinative. *See id.* (abstaining in favor of state proceeding despite the fact that there was no

*res* over which the state court had assumed jurisdiction). As detailed below, factors two through five strongly favor abstention, and factor six is neutral. Considered on balance, the circumstances here warrant abstention. *See, e.g.*, *New Orleans*, 911 F.2d at 1003, 1005 (abstaining where three factors strongly favored abstention); *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) (affirming abstention where only two factors favored abstention).

*Relative Inconvenience of the Forums*. The Illinois Court is a more convenient forum for litigating insurance coverage for the Illinois Claims, which favors abstention. *See MidTexas Int'l Ctr., Inc. v. Myronowicz*, No. 3:05-CV-1957-R, 2006 WL 2285581, at *5 (N.D. Tex. Aug. 9, 2006). The underlying Illinois Claims involve the conduct of Thomas Hacker alleged to have taken place in Illinois. *See* Compl. ¶ 127. The insurance policies at issue were issued principally to "insure persons, property, or risks located in the State of Illinois." *See* MTD App. Ex. 7 ¶ 37 at 313. And one of the core coverage issues in the Illinois Action is whether the alleged conduct of BSA and its Illinois-based Local Council—who oversaw Chicago-area Scout leader Thomas Hacker—was expected or intended. *See id*. ¶¶ 49-58 at 317-18. Relevant documents, witnesses, and other evidence are located in Illinois, making the Illinois Court a more convenient forum. *See Myronowicz*, 2006 WL 2285581, at *5 (location of evidence in state forum favors abstention).

*Avoidance of Piecemeal Litigation*. Federal courts favor abstention where retaining jurisdiction would result in "piecemeal litigation," i.e., concurrent lawsuits that pose a "concomitant danger of inconsistent rulings" with respect to the parties' claims and defenses. *See Walker Centrifuge*, 550 F. Supp. 2d at 626; *Flores v. Wells Fargo Bank, N.A.*, No. CV M-09-225, 2009 WL 10693450, at *3 (S.D. Tex. Oct. 30, 2009) ("[P]iecemeal litigation would certainly occur [where] the decisions of this Court would affect the litigation in state court and vice versa."). Here, retaining jurisdiction over the Illinois Claims would pose a significant risk of inconsistent rulings

regarding the Illinois Claims. Critically, this Court might issue a ruling regarding coverage that is inconsistent with a ruling from the Illinois Court. This risk of inconsistent rulings favors abstention, especially because (as discussed below) the Illinois Action is substantially more progressed than this one. *See Walker Centrifuge*, 550 F. Supp. 2d at 626. ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

**The Order in Which Jurisdiction Was Obtained**. Abstention is favored when the state court proceeding was filed first. *See id.* at 627-29. The grounds for abstention are even stronger where the state court proceeding was not only filed first, but when the state court has made "more progress" than the federal proceeding. *See id.*; *Microsource, Inc. v. Super. Signs, Inc.*, No. CIV.A.3:97-CV-2733-G, 1998 WL 119537, at *3 (N.D. Tex. Mar. 9, 1998); *Flores*, 2009 WL 10693450, at *3. Here, the Illinois Action was not just filed first—it has been ongoing for over five years (Compl. ¶ 127), and has made substantially more progress at addressing the parties' claims and defenses. *See National Surety Corporation v. Boy Scouts of America, et al.*, Docket No. 2017-CH-14975. This factor strongly favors abstention.

**To What Extent Federal Law Provides the Rules of Decision on the Merits**. Abstention is favored where the underlying claims will be determined under state law. *See Microsource, Inc.*, 1998 WL 119537, at *3 (applicability of state law favored abstention). At their core, the parties' claims and defenses regarding coverage for the Illinois Claims sound in contract, and thus will be decided under applicable state law. There are no federal law issues in the Illinois Action. This factor thus weighs in favor of abstention. *See id*.

**The Adequacy of the State Proceedings in Protecting the Trustee's Rights**. Where there is "no reason to doubt the adequacy" of the state court's ability to resolve the claims at issue, courts have treated this factor as favoring abstention or as neutral. *See Knox*, 351 F. App'x at 852 (finding

-34-

that adequacy of state court proceeding favored abstention); *Walker Centrifuge*, 550 F. Supp. 2d at 628 (finding that factor should be considered neutral where there is no showing that state proceeding is inadequate). Here, the Trustee can point to no reason why the Illinois Court would not adequately protect its rights. Accordingly, this factor is, at worst, neutral. *See id*.

In sum, with respect to the Illinois Claims, this suit represents an attempt by the Trustee to circumvent the Illinois Action—a preexisting, parallel proceeding that (i) was initiated over five years ago, (ii) is substantially progressed, (iii) involves Illinois-based facts and evidence, (iv) is based on state-law claims and (v) is more than adequate to protect all parties' rights. On balance, the *Colorado River* considerations weigh strongly in favor of abstention, especially because retaining jurisdiction over the Illinois Claims poses a serious risk of piecemeal, inconsistent rulings, and a waste of judicial resources. The Trustee's causes of action regarding coverage for the Illinois Claims should be dismissed in favor of the Illinois Action.

## CONCLUSION

For the reasons outlined above, the Court should dismiss under Federal Rule of Civil Procedure 12(b)(1) all of the Trustee's causes of action regarding coverage for Abuse Claims because they are unripe. In the alternative, the Court should dismiss under Federal Rule of Civil Procedure 12(b)(6) all of the Trustee's causes of action regarding coverage for Abuse Claims, because the Complaint fails to state claims upon which relief can be granted. If not mooted by the foregoing requested relief, this Court should dismiss under Federal Rule of Civil Procedure 12(b)(2) the Trustee's causes of action against the PJ Moving Defendants to the extent they seek damages or coverage arising out of Non-Texas Policies, as this Court lacks personal jurisdiction over such claims. This Court should also dismiss the Trustee's causes of action regarding the Illinois Claims in favor of the Illinois Action under the doctrine of *Colorado River* abstention.

Dated: October 6, 2023

Respectfully submitted,

_/s/Betty X. Yang_

Christopher J. St. Jeanos (*pro hac vice*)
New York Bar No. 2805729
Ciara A. Sisco (*pro hac vice*)
New York Bar No. 5583471
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
(212) 728-8111 (fax)
CStjeanos@willkie.com
CSisco@willkie.com

Betty X. Yang
Texas Bar No. 24088690
Michael A. Rosenthal
Texas Bar No. 17281490
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, Texas 75201
(214) 698-3100
(214) 571-2900 (fax)
BYang@gibsondunn.com
MRosenthal@gibsondunn.com

Joseph G. Davis (*pro hac vice*)
D.C. Bar No. 441479
Zainab A. Ali (*pro hac vice*)
D.C. Bar No. 90014285
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
(202) 303-2000 (fax)
JDavis@willkie.com
ZAli@willkie.com

James Hallowell (*pro hac vice*)
New York Bar No. 2688869
Amanda A. George (*pro hac vice*)
New York Bar No. 5645817
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
(212) 351 4035 (fax)
JHallowell@gibsondunn.com
AGeorge@gibsondunn.com
(212) 351-4000
(212) 351 4035 (fax)
JHallowell@gibsondunn.com
AGeorge@gibsondunn.com

*Counsel for American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and Consolidated National Insurance Company*

_/s/ Richard D. Salgado_

Richard D. Salgado
Texas Bar No. 24060548
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: 214.210.2797
Facsimile: 972.232.3098
Email: richard.salgado@mwe.com

_/s/ Thomas B. Alleman_

Thomas B. Alleman
Texas Bar No. 01017485
DYKEMA GOSSETT PLLC
1717 Main, Suite 4200
Dallas, Texas 75201
Phone: 214-698-7830
talleman@dykema.com

Ryan S. Smethurst (*pro hac vice*)
D.C. Bar No. 469824
Alex M. Spisak (*pro hac vice*)
D.C. Bar No. 1028451
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: 202.756.8228
Facsimile: 202.756.8087
Email: rsmethurst@mwe.com
Email: aspisak@mwe.com

*Counsel for Jefferson Insurance Company*

*/s/ Christina A. Culver*
Brian S. Martin
Texas Bar No. 13055350
bmartin@thompsoncoe.com
Christina A. Culver
Texas Bar No. 24078388
cculver@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS,
L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056-1988
(713) 403-8210 Telephone
(713) 403-8299 Facsimile

*Counsel for Allstate Insurance Company*

*Counsel for Allied World Assurance Company (U.S.) Inc.*

*/s/ David J. Schubert*
David Schubert
Texas Bar No. 17820800
E-Mail: dschubert@schubertevans.com
Blake S. Evans
Texas Bar No. 06706950
E-Mail: bevans@schubertevans.com
Stephen Burnett
Texas Bar No. 24006931
E-Mail: sburnett@schubertevans.com
SCHUBERT & EVANS
900 Jackson, Suite 630
Dallas, Texas 75202
Telephone: (214) 744-4400
Facsimile: (214) 744-4403

Ronald P. Schiller (*pro hac vice*)
Pennsylvania Bar No. 41357
Matthew A. Hamermesh (*pro hac vice*)
Pennsylvania Bar No. 82313
Elizabeth C. Dolce (*pro hac vice*)
Pennsylvania Bar No. 324448
HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER
One Logan Square| 27th Floor
Philadelphia, PA 19103
Telephone: (215) 468-6200
Facsimile: (215) 468-0300
rschiller@hangley.com
mhamermesh@hangley.com
edolce@hangley.com

*Counsel for Arch Insurance Company*

/s/ Stephen A. Melendi
Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matt Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204

Kathleen Kerns (*pro hac vice*)
kkerns@postschell.com
POST & SCHELL, P.C.
1600 John F. Kennedy Blvd.
13th Floor
Philadelphia, PA 19103

*Counsel for Argonaut Insurance Company
and Colony Insurance Company*

/s/ David Clay Wilkerson
David Clay Wilkerson
BROWN SIMS, P.C.
Texas Bar No. 24010480
cwilkerson@brownsims.com
1990 Post Oak Blvd.,
Suite 1800
Houston, Texas 77056
713.629.1580
713.629.5027 (facsimile)

*Counsel for Aspen Specialty Insurance
Company*

/s/ S. Jan Hueber
S. Jan Hueber
Texas Bar No. 20331150
hueber@litchfieldcavo.com
LITCHFIELD CAVO, LLP
100 Throckmorton Street, Ste. 500
Fort Worth, Texas 76102

/s/ Michael T. Cooke
Michael T. Cooke
Texas Bar No. 04759650
FRIEDMAN SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
mtc@fsclaw.com

*Counsel for Arrowood Indemnity Company*

/s/ Aaron L. Mitchell
Aaron L. Mitchell
Texas Bar No. 14205590
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Ave., Suite 250
Dallas, Texas 75204
Direct: (214) 665-0110
Fax: (214) 665-0199
aaronm@tbmmlaw.com

*Counsel for Ategrity Specialty Insurance
Company*

/s/ Pamela Dunlop Gates
Pamela Dunlop Gates
Texas Bar No. 06239800
CORPORATE LITIGATION
CNA
Apex at Legacy
5801 Headquarters Drive, Suite 750A

Telephone: 817.945.8025
Facsimile: 817.753.3232

Daniel G. Litchfield (*pro hac vice*)
IL Bar No. 6185695
litchfield@litchfieldcavo.com
LITCHFIELD CAVO, LLP
303 W. Madison Street, Suite 300
Chicago, IL 60606
Telephone: 312.781.6660

*Counsel for The Cincinnati Insurance Company*

Plano, Texas 75024-6189
(214) 220-5921 – Direct Dial
pamela.dunlopgates@cna.com

Laura McNally, Esq. (*pro hac vice*)
Illinois Bar No. 6226965
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155

*Counsel for American Casualty Company of Reading, Pennsylvania, CNA Financial Corporation, Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, National Fire Insurance Company of Hartford*

/s/ *Charles R. "Skip" Watson*
Charles R. "Skip" Watson
Texas Bar No. 20967500
watsons@gtlaw.com
Nicole Leonard Cordoba
Texas Bar No. 24106197
cordoban@gtlaw.com
Joseph W. Shaneyfelt
Texas Bar No. 24105406
joe.shaneyfelt@gtlaw.com
GREENBERG TRAURIG LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
T: (512) 320-7200
F: (512) 320-7210

*Counsel for Columbia Insurance Company*

/s/ *Scott L. Davis*
Scott L. Davis
Texas Bar No. 055437030
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Phone: (214) 999-6100
Fax: (214) 999-6170
Scott.Davis@huschblackwell.com

Tyler Scott (*pro hac vice*)
Missouri Bar No. 63231
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Phone: (816) 983-8274
Fax: (816) 983-8080
Tyler.Scott@huschblackwell.com

*Counsel for Crum & Forster Indemnity Company, TIG Insurance Company, The North River Insurance Company, and United States Fire Insurance Company*

/s/ *David M. Hymer*
David M. Hymer
Texas Bar No. 10380250
david.hymer@qpwblaw.com

/s/ *Roy A. Mura*
Roy A. Mura, Esq. (pro hac vice)
New York Bar No. 2112035
MURA LAW GROUP, PLLC

Steven Wood
Texas Bar No. 24033355
Steven.wood@qpwblaw.com
QUINTAIROS, PRIETO, WOOD &
BOYER, PA.
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755
(214) 754-8744 (Fax)

*Counsel for Erie Family Life Insurance
Company and Erie Insurance Exchange*

14 Lafayette Square, Suite 930
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com

Kieran W. Leary, Esq.
Texas Bar No. 24108517
TOLLEFSON BRADLEY MITCHELL
& MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
(214) 665-0119
kieranl@tbmmlaw.com

*Counsel for Erie and Niagara Insurance
Association*

*/s/ Jeremy T. Brown*
Jeremy T. Brown
Texas Bar No. 24055221
jbrown@keatingbrown.com
KEATING BROWN PLLC
18383 Preston Road, Ste. 300
Dallas, Texas 75252
Telephone: (214) 390-7701

*Counsel for Everest National Insurance
Company*

*/s/ Ivan M. Rodriguez*
Ivan M. Rodriguez
Texas Bar No. 24058977
Clinton J. Wolbert
Texas Bar No. 24103020
Katherine B. Wilson
Texas Bar No. 24096034
PHELPS DUNBAR, L.L.P.
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 877-5504
Facsimile: (713) 626-1388
E-mail: ivan.rodriguez@phelps.com
E-mail: clinton.wolbert@phelps.com
E-mail: katherine.wilson@phelps.com

William R. de los Santos
Texas Bar No. 24125762
PHELPS DUNBAR, L.L.P.
2102 E. State Highway 114, Suite 207
Southlake, Texas 76092
Telephone: (817) 488-3134
E-mail: william.delossantos@phelps.com

*Counsel for Evanston Insurance Company*

*/s/ Stephen A. Melendi*
Stephen A. Melendi
Texas Bar No. 24041468

*/s/ Shannon M. O'Malley*
Shannon M. O'Malley
Texas Bar No. 24037200

stephenm@tbmmlaw.com
Frank Kennedy
Texas Bar No. 00787820
frankk@tbmmlaw.com
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199

*Counsel for First Insurance Company of
Hawaii, LTD*

somalley@zellelaw.com
Megan E. Zeller
Texas Bar No. 24082187
mzeller@zellelaw.com
ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX 75202-3975
Telephone:      214-742-3000
Facsimile:      214-760-8994

Gary P. Seligman (*pro hac vice*)
D.C. Bar No. 468046
Ashley L. Criss (*pro hac vice*)
D.C. Bar No. 1048326
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049
E-mail:  gseligman@wiley.law,
acriss@wiley.law

*Counsel for General Star Indemnity Company*

*/s/ Aaron L. Mitchell*
Aaron L. Mitchell
Texas Bar No. 14205590
Beth Bradley
Texas Bar No. 06243900
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Ave., Suite 250
Dallas, Texas 75204
Direct: (214) 665-0110
Fax: (214) 665-0199
aaronm@tbmmlaw.com
bethb@tbmmlaw.com

Lloyd A. Gura (*pro hac vice*)
NY Bar – 2380277
Pamela J. Minetto (*pro hac vice*)
NY Bar - 2241685
One New York Plaza 44th Floor
New York, NY 10004
Tel: (212) 804-4282
Fax: (973) 242-4244

*s/ Aaron Z. Tobin*
Aaron Z. Tobin
Texas Bar No. 24028045
William G. Whitehill
Texas Bar No. 21356550
Justin D. Hanna
Texas Bar No. 24095726
CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone: 214.691.6300
Facsimile: 214.691.6311
atobin@condontobin.com
bwhitehill@condontobin.com
jhanna@condontobin.com

Kim V. Marrkand
Massachusetts Bar No. 543823
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
One Financial Center

lgura@moundcotton.com
pminetto@moundcotton.com

*Counsel for Indian Harbor Insurance
Company, on behalf of itself and as successor
in interest to Catlin Specialty Insurance
Company*

Boston, MA 02111
Telephone: (617) 542-6000
kvmarrkand@mintz.com

Douglas R. Gooding
Massachusetts Bar No. 558976
Bryana T. McGillycuddy
Massachusetts Bar No. 684990
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
bmcgillycuddy@gmail.com

*Counsel for Liberty Insurance Underwriters
Inc., Liberty Mutual Insurance Company,
Liberty Surplus Insurance Corporation, The
Ohio Casualty Insurance Company, Peerless
Indemnity Insurance Company, Safeco
Insurance Company of America & Wausau
General Insurance Company*

/s/ Gary S. Kessler
Gary S. Kessler
Texas Bar No. 11358200
Anne-Alise "Ali" Hinckley
Texas Bar No. 24090786
ahinckley@kesslercollins.com
Samuel C. Kessler
Texas Bar No. 24118431
skessler@kesslercollins.com
KESSLER COLLINS
500 N. Akard St., Ste. 3700
Dallas, TX 75201
214.379.0722 Telephone
214.373.4714 Facsimile

Thaddeus J. Weaver (*pro hac vice*)
Delaware Bar Id. No. 2790
tweaver@dilworthlaw.com
DILWORTH PAXSON LLP
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899-1031
(302) 571-8867 (telephone)

/s/ Richard A. Galbo
Richard A. Galbo (*pro hac vice*)
New York Bar No.: 1970888
GOLDBERG SEGALLA LLP
665 Main Street
Buffalo, NY 14203
Telephone: 716.710.5810
rgalbo@goldbergsegalla.com

Ashlyn Capote (*pro hac vice*)
New York Bar No. 5200969
Michigan Bar No. P76342
665 Main Street
Buffalo, NY 14203
Telephone: 716.510.5899
acapote@goldbergsegalla.com

Alissa K. Christopher
Texas Bar No. 11531020
COZEN O'CONNOR
1717 Main Street
Suite 3100
Dallas, TX 75201

(302) 351-8735 (facsimile)

*Counsel for Munich Reinsurance America Inc., formerly known as American Re-Insurance Company*

/s/ Ron H. Burnovski
Ron H. Burnovski
Texas Bar No. 24109409
CLAUSEN MILLER P.C.
325 N. Saint Paul Street
Suite 3100 | Dallas, Texas 75201
469.942.8633

*Counsel for Old Republic Insurance Company*

/s/ Joseph A Ziemianski
Joseph A Ziemianski
Texas Bar No. 00797732
COZEN O'CONNOR
1221 McKinney
Suite 2900
Houston, TX 77010
Telephone: (832) 214-3900
Facsimile: (832) 214-3905
jziemianski@cozen.com

Alicia G. Curran
Texas Bar No. 12587500
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Telephone: (214) 462-3000

Telephone: 214.462.3299
akchristopher@cozen.com

*Counsel for National Casualty Company, Nationwide Affinity Insurance Company of America, Nationwide Mutual Insurance Company, Scottsdale Insurance Company and Wausau General Insurance Company*

/s/ J. Richard Harmon
J. Richard Harmon
Texas Bar No.  09020700
Jo Allison Stasney
Texas Bar No.  19080280
John M. Wiggins
Texas Bar No.  24115950
THOMPSON, COE, COUSINS & IRONS, L.L.P.
Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
Telephone:  214-871-8200
Telecopy:  214-871-8209
rharmon@thompsoncoe.com
jstasney@thompsoncoe.com
jwiggins@thompsoncoe.com

*Counsel for QBE Insurance Corporation*

/s/ Lance V. Clack
Lance V. Clack
Texas State Bar No. 24040694
lance.clack@figdav.com
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
(214) 939-2000
(214) 939-2090 (Fax)

Laura S. McKay (*pro hac vice to be filed*)
llinois State Bar No. 6207837
lmckay@hww-law.com
Douglas M. DeWitt (*pro hac vice to be filed*)
Illinois State Bar No. 6274805
ddewitt@hww-law.com
HINKHOUSE WILLIAMS WALSH LLP

Telecopier: (214) 462-3299
acurran@cozen.com

Kristie M. Abel (*pro hac vice*)
PA Bar No. 311481
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Tel: 215-665-2715
kabel@cozen.com

*Counsel for Endurance American Insurance
Company and Endurance American Specialty
Insurance Company*

/s/ Shannon M. O'Malley
Shannon M. O'Malley
Texas Bar No. 24037200
somalley@zellelaw.com
Kerry K. Brown
Texas Bar No. 03149880
kbrown@zellelaw.com
Megan E. Zeller
Texas Bar No. 24082187
mzeller@zellelaw.com
ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX 75202
Telephone: 214-742-3000
Facsimile: 214-760-8994

*Counsel for Swiss Re. Corporate Solutions
Capacity Insurance Corporation (formerly
known as, or otherwise responsible for the
liability of, First Specialty Insurance
Corporation) and Westport Insurance
Corporation*

180 N. Stetson Avenue, Suite 3400
Chicago, IL 60601
(312) 784-5415
(312) 784-5499 (fax)

*Counsel for Sparta Insurance Company, as
successor for certain limited purposes to
American Employers' Insurance Company*

/s/ W. Edward Carlton
W. Edward Carlton
Texas Bar No. 03820050
ecarlton@qslwm.com
Quilling, Selander, Lownds, Winslet &
Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 781-2100
Facsimile: (214) 871-2111

Catalina J. Sugayan (*pro hac vice*)
Illinois Bar No. 6191764
Bradley E. Puklin (*pro hac vice*)
Illinois Bar No. 6309950
Clyde & Co US LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: (312) 635-7000
Facsimile:  (312) 635-6950
Email: catalina.sugayan@clydeco.us
Email: Bradley.puklin@clyde.co.us

*Counsel for Tenecom Limited (formerly
known as Winterthur Swiss Insurance
Company) and Catalina Worthing Insurance
Ltd (CWIL) (formerly known as Hartford
Financial Products International as Part VII
Transferee of Excess Insurance Co Ltd and
London & Edinburgh Insurance Co Ltd, as*

-44-

*successor to London & Edinburgh General Insurance Co Ltd.)*

/s/ Steven T. Ramos
Steven T. Ramos
Texas Bar No. 00784812
AYIK & ASSOCIATES
1301 E. Collins Blvd., Suite 290
Richardson, Texas 75081
Phone:  (214) 570-6596
Facsimile: (214) 570-6262
Email:  stramos@travelers.com

Kathleen D. Monnes (*pro hac vice* application forthcoming)
Connecticut Bar No. 407246
DAY PITNEY LLP
225 Asylum Street
Hartford, CT 06103
Phone: (860) 275-0103
Facsimile: (860) 881-2482
Email: kdmonnes@daypitney.com

Candace J. Hensley (*pro hac vice*)
Massachusetts Bar No. 706150
DAY PITNEY LLP
One Federal Street
Boston, MA 02110
Phone: (617) 345-4676
Facsimile: (617) 716-2136
Email: chensley@daypitney.com

*Counsel for Charter Oak Fire Insurance Company; Phoenix Insurance Company; St. Paul Fire and Marine Insurance Company; St. Paul Mercury Insurance Company; St. Paul Surplus Lines Insurance Company; The Travelers Companies, Inc.; The Travelers Indemnity Company; Travelers Casualty and Surety Company; and United States Fidelity and Guaranty Company*