UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, *et al.*<br><br>    Defendants. | Case No. 3:23-cv-01592-S |

**PLAINTIFF'S OPPOSITION TO DEFENDANT COLUMBIA INSURANCE COMPANY'S MOTION TO DISMISS**

Respectfully,

**GILBERT LLP**

Kami E. Quinn (admitted *pro hac vice*)
quinnk@gilbertlegal.com
W. Hunter Winstead (admitted *pro hac vice*)
winsteadh@gilbertlegal.com
Emily P. Grim (admitted *pro hac vice*)
grime@gilbertlegal.com
Michael B. Rush (admitted *pro hac vice*)
rushm@gilbertlegal.com
Sarah A. Sraders (admitted *pro hac vice*)
sraderss@gilbertlegal.com
Rachel H. Jennings (admitted *pro hac vice*)
jenningsr@gilbertlegal.com
Brandon A. Levey (admitted *pro hac vice*)
leveyb@gilbertlegal.com

700 Pennsylvania Avenue SE, Suite 400
Washington, DC 20003
Telephone: (202) 772-3333

**TILLOTSON JOHNSON & PATTON**

Jeffrey M. Tillotson
jtillotson@tillotsonlaw.com
1201 Main Street, Suite 1300
Dallas, Texas 75202
Telephone: (214) 382-3041
Facsimile: (214) 292-6564

**Attorneys for Plaintiff, The Honorable Barbara J. Houser (Ret.), in Her Capacity as Trustee of The BSA Settlement Trust**

## TABLE OF CONTENTS

                                                              **Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND .......................................................................................................................... 2

    I.       The Underlying Bankruptcy Proceedings and the Formation of the Trust. .................... 2

    II.      The Coverage Action and the Motion. ........................................................................... 3

ARGUMENT ................................................................................................................................ 4

    I.       The Trustee's Complaint Alleges the Existence of Coverage Issued by Columbia That Is Supported by Documentary Evidence. ............................................................... 4

    II.      Columbia's Contentions That It Did Not Issue the Columbia Policy and That It Did Not Exist at the Time the Columbia Policy Was Issued Are Improper at the Motion to Dismiss Stage. ................................................................................................ 6

    III.     The Court Should Exercise Its Discretion and Reject the Materials Outside the Pleadings That Columbia Attaches to the Motion. ......................................................... 6

    IV.     Alternatively, the Trustee Should Be Given the Opportunity to Take Discovery to Test Columbia's Contentions. ........................................................................................ 10

CONCLUSION ........................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Tropiques, Sprl v. N. & W. Ins. Co. Ltd.*,
　No. H-13-1438, 2014 WL 1323046 (S.D. Tex. Mar. 31, 2014) ................................................6

*Barnes v. Sea Hawai'i Rafting, LLC*,
　493 F. Supp. 3d 972 (D. Haw. 2020) ......................................................................................9

*In re Boy Scouts of America and Delaware BSA LLC*,
　642 B.R. 504 (Bankr. D. Del. 2022) ........................................................................................2

*In re Boy Scouts of America*,
　No. 20-10343 (LSS) (Bankr. D. Del. Sept. 6, 2022) ................................................................2

*Burgess v. Protective Life Ins. Co.*,
　No. 2:13-cv-5372-ODW(Ex), 2013 WL 6239371 (C.D. Cal. Dec. 3, 2013) ...........................4

*Callier v. MultiPlan, Inc.*,
　No. EP-20-CV-00318-FM, 2021 WL 8053527 (W.D. Tex. Aug. 26, 2021) ............................9

*Center for Juvenile Mgmt., Inc. v. Williams*,
　No. 5:15-cv-640 RP, 2015 WL 13298391 (W.D. Tex. Dec. 22, 2015) ....................................6

*Chickasha Cotton Oil Co. v. Houston Gen. Ins. Co.*,
　No. 05-00-01789-CV, 2002 WL 1792467 (Tex. App. Aug. 6, 2002) ......................................4

*CQ, Inc. v. TXU Mining Co., L.P.*,
　No, 3:06-cv-0322-B ECF, 2007 WL 9711567 (N.D. Tex. June 29, 2007) ..............................5

*Daniels v. AETC II Privatized Housing, LLC*,
　No. SA-19-CA-1280-FB, 2020 WL 6789336 (W.D. Tex. Jan. 6, 2020) .................................9

*EP Operating Co. v. MJC Energy Co.*,
　883 S.W.2d 263 (Tex. App. 1994) ...........................................................................................5

*Maxus Liquidating Trust v. Greenstone Assurance, Ltd.*,
　No. 2:19-cv-00401-JRG, 2020 WL 3447685 (E.D. Tex. June 24, 2020) ................................4

*Pickett v. Mobile County Sheriff Department*,
　No. 06-0821-WS-B, 2007 WL 2023488 (S.D. Ala. July 9, 2007) ...........................................9

*Torres v. Lucio*,
　No. 10711830, 2009 WL 10711830 (S.D. Tex. July 1, 2009) ............................................7, 9

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................6, 7

Fed. R. Civ. P. 12(d) .............................................................................................1, 7, 9, 10, 11

Fed. R. Civ. P. 56................................................................................................................7, 11

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1366 (3d ed. 2004) ........................................................................................................7

Plaintiff, the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee (the "Trustee") of the BSA Settlement Trust (the "Settlement Trust"), by and through her undersigned counsel, submits this opposition to Defendant Columbia Insurance Company's ("Columbia") Motion to Dismiss (the "Motion").

In its Brief in Support of its Motion ("Brief"), Columbia seeks to litigate on the merits by arguing that the Trustee's claims against it must be dismissed because Columbia allegedly never issued a policy covered by this litigation. Brief at 1. Ultimately, Columbia argues that it could not have issued the policy in question because it allegedly did not exist at the time the policy in question was issued. Brief at 2–3, 8–11. Apparently recognizing that it cannot prevail on the Motion without the Court relying on materials outside the pleadings, Columbia requests that the Court convert the Motion into a motion for summary judgment through application of Federal Rule of Civil Procedure 12(d). Brief at 8–9. Columbia brazenly asks that the Court do so without providing the Trust any opportunity for discovery, as is required by the Federal Rules, because "discovery would be futile" and would "accomplish[] nothing." Brief at 12–13.

The Motion should be denied. First, the Trustee's reliance on secondary evidence to assert claims against Columbia is proper, especially at this stage of the litigation, and cannot form the basis for dismissing the claims against Columbia. Second, Columbia's contentions that it neither issued the policy in question, nor could it have, because it allegedly did not exist at the time the policy in question was issued, are improper at the motion to dismiss stage because they rely on materials outside the pleadings. Third, the Court should reject Columbia's request that the Court convert the motion into one for summary judgment so that it can consider the extraneous materials as the materials Columbia relies on are incomplete and inconclusive. Fourth, in the event the Court is inclined to consider these materials at the present time and convert the motion to a summary

1

judgment motion, it should defer ruling on the motion until such time that the Trustee is given a full and fair opportunity to take discovery into the issues raised by the Motion.

## BACKGROUND

### I. The Underlying Bankruptcy Proceedings and the Formation of the Trust.

As set forth in the Trustee's complaint (the "Complaint"), the Boy Scouts of America ("BSA") declared bankruptcy in February 2020 in order to resolve its mounting defense costs and liabilities for claims alleging sexual abuse in its scouting programs (the "Abuse Claims"). Compl. ¶ 105; *see also In re Boy Scouts of America and Delaware BSA LLC*, 642 B.R. 504 (Bankr. D. Del. 2022). To resolve the 82,209 Abuse Claims filed against BSA during the bankruptcy, BSA's plan of reorganization (the "Plan")[1] created the Settlement Trust, which assumed the liability for Abuse Claims asserted against BSA and its Local Councils. Compl. ¶¶ 108–109; *see also* Plan at Art. IV.C.1 ("[T]he Settlement Trust shall assume the liabilities, obligations, and responsibilities, financial or otherwise, of (a) the Protected Parties[2] for all Abuse Claims . . . .").

To be able to pay these tens of thousands of Abuse Claims, the Trust received the "Settlement Trust Assets," which included, among other assets from BSA and its local councils ("Local Councils")[3], the rights under BSA's and Local Councils' insurance policies. Compl. ¶ 110; Plan at Art. IV.D.1. The Plan transferred to the Settlement Trust any claims, causes of action, or rights of BSA and Local Councils against the Defendants arising from or related to the Insurance

---

[1] Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC, *In re Boy Scouts of America*, No. 20-10343 (LSS) (Bankr. D. Del. Sept. 6, 2022), ECF No. 10296, *available at* https://casedocs.omniagentsolutions.com/cmsvol2/pub_47373/aeeb7dbb-0270-4442-8db6-f657d052676f_10296.pdf. Descriptions of the Plan herein are subject in all respects to the actual terms of the Plan. Capitalized terms not defined herein have the meaning ascribed to them in the Plan.
[2] "Protected Parties means the following Persons: (a) the Debtors; . . . (d) the Local Councils. . . . " Plan, Art. I.236.
[3] BSA carries out its scouting programs through charters granted to Local Councils that are assigned to specific geographic areas across the United States. Compl. ¶ 103. These Local Councils recruit and oversee the local organizations that administer BSA's scouting programs. *Id.*

2

Policies; the right to receive any proceeds or benefits from these claims, causes of action, or rights; and all other rights, claims, benefits, or causes of action of BSA and Local Councils under or with respect to the Insurance Policies. Compl. ¶ 110.

Included among the policies the Trust received rights under was a policy (or policies) issued by Columbia to the Missouri Great Rivers Local Council ("Great Rivers Local Council") for 1970, 1971, and 1972. (the "Columbia Policy"). *See* Compl. at Exh. B, p. 2.

## II.   The Coverage Action and the Motion.

On July 17, 2023, the Trustee commenced the instant coverage action when she filed a Complaint against Columbia and other of BSA's and its Local Councils' insurers. Through the Complaint, the Trustee seeks a declaratory judgment(s) concerning the Trust's rights under the relevant insurance policies, including the one issued by Columbia. The Trustee's Complaint also includes counts of breach of contract and bad faith.

The claims asserted in the lawsuit are based on an extensive and good-faith investigation by the Trustee. In this specific instance, the Trustee relied in good faith on secondary evidence to support her claim of coverage issued by Columbia to the Great Rivers Local Council. Specifically, this evidence included the Great River Local Council's application for renewal of its local council charter. App.0005–0012.[4] In response to a section of the application requiring the Great River Local Counsel to identify whether it has liability insurance coverage and, if so, the identity of its insurer, the Great River Local Counsel indicated that Columbia Insurance Company issued a policy to it for the periods identified in the Complaint. *Id*. at App.0008.

---

[4] All cites to "App.___" are to Columbia's Appendix in Support of its Motion to Dismiss, ECF No. 221.

On October 6, 2023, in response to the Complaint, Columbia and other defendant insurers filed a series of motions to dismiss (and separately a motion to stay) that raised a number of legal arguments. Columbia's sole contention in the Motion is that the Complaint should be dismissed as to Columbia because: (1) it did not issue a policy to the Great Rivers Local Council; and (2) Columbia could not have issued a policy to the Great Rivers Local Council because it allegedly did not exist until December 1972—after the Columbia Policy had been issued to the Great Rivers Local Council.

## ARGUMENT

### I. The Trustee's Complaint Alleges the Existence of Coverage Issued by Columbia That Is Supported by Documentary Evidence.

Columbia contends that the Trustee's reliance upon documentary evidence in support of her claim against Columbia other than the Columbia Policy is impermissible and argues "[w]ithout a written policy, the Trustee cannot state a claim." Brief at 8. As a general proposition and particularly at this stage of the litigation, this is simply incorrect. Courts regularly hold that a claimant "does not fail to state a claim for breach of contract due to its present inability to attach every Policy to the Complaint or prove their contents beyond dispute." *Maxus Liquidating Trust v. Greenstone Assurance, Ltd.*, No. 2:19-cv-00401-JRG, 2020 WL 3447685, at *4 (E.D. Tex. June 24, 2020) (holding that claimant was not required to produce policies or establish all policy provisions at pleadings stage); *see also Burgess v. Protective Life Ins. Co.*, No. 2:13-cv-5372-ODW(Ex), 2013 WL 6239371, at *4 (C.D. Cal. Dec. 3, 2013) (denying motion to dismiss and noting that, "[a]bsent a contract, the [insureds] are permitted to introduce secondary evidence as to the contents of the policy"); *Chickasha Cotton Oil Co. v. Houston Gen. Ins. Co.*, No. 05-00-01789-CV, 2002 WL 1792467, at *4 (Tex. App. Aug. 6, 2002) ("When insurance policies are unavailable, the terms of the policies may be proven through secondary evidence.").

In this case, the Trustee relied in good faith on secondary evidence to support her claim of coverage issued by Columbia to the Great Rivers Local Council. As noted above, this evidence included the Great River Local Council's application for renewal of its local council charter. App.0005–0012.[5] In a section of the application requiring the Great River Local Counsel to identify whether it has liability insurance coverage and, if so, the identity of its insurer, the Great River Local Counsel indicated that Columbia Insurance Company issued a policy to it for the periods identified in the Complaint. *Id*. at App.0008. The Trustee's good faith allegation that the Columbia Policy was in fact issued—based upon a document authored by the Great River Local Council saying that it was—is sufficient at this stage of the litigation to state a claim. *See Maxus*, 2020 WL 3447685, at *4.

Columbia argues that this secondary evidence is insufficient to satisfy the statute of frauds and cites to two cases to support its contention. Brief at 11. However, both cases are readily distinguishable as they involve litigation much further along in their proceedings than the present action. *See EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 266–68 (Tex. App. 1994) (addressing whether evidence *presented at trial* was sufficient to satisfy statute of frauds); *CQ, Inc. v. TXU Mining Co., L.P.*, No, 3:06-cv-0322-B ECF, 2007 WL 9711567 (N.D. Tex. June 29, 2007) (addressing statute of frauds issue following discovery *at the summary judgment stage*). At the present pleading stage, the Trustee is not required to prove the terms and conditions of the Columbia Policy. The Trustee's well-pled allegations are sufficient and foreclose dismissal of her claims under the Columbia Policy.

---

[5] All cites to "App.___" are to Columbia's Appendix in Support of its Motion to Dismiss, ECF No. 221.

## II. Columbia's Contentions That It Did Not Issue the Columbia Policy and That It Did Not Exist at the Time the Columbia Policy Was Issued Are Improper at the Motion to Dismiss Stage.

Columbia devotes the majority of the Brief arguing that: (1) it did not issue the Columbia Policy; and (2) it could not have issued the Columbia Policy because it allegedly did not exist until after the Columbia Policy was issued. *See* Brief, generally. With respect to this latter contention, Columbia asserts that prior to December 1972, its name was Reinsurance Corporation of Nebraska. In support of its arguments, Columbia relies on various materials that it acknowledges are outside of the pleadings. *See* Brief at 8–9; *see* also Appendix, generally.

However, factual disputes such as whether Columbia issued the policy in question or whether it was in existence (or existed under a prior name or pursuant to a predecessor's corporate transaction) are issues that cannot be resolved through a motion brought under Federal Rule of Civil Procedure 12(b)(6). *See Center for Juvenile Mgmt., Inc. v. Williams*, No. 5:15-cv-640 RP, 2015 WL 13298391, at *4 (W.D. Tex. Dec. 22, 2015) ("It would be improper for the Court to resolve these factual disputes now, prior to the development of a full evidentiary record."); *Air Tropiques, Sprl v. N. & W. Ins. Co. Ltd.*, No. H-13-1438, 2014 WL 1323046, at *1 (S.D. Tex. Mar. 31, 2014) ("At this preliminary stage [i.e., on a motion to dismiss for lack of personal jurisdiction], 'the court must accept as true all uncontroverted allegations in the complaint and resolve any factual disputes in favor of the plaintiff.'" (quoting *ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)). Thus, this is simply not an issue that can be resolved at the Rule 12(b)(6) stage because it would require the Court to adjudicate fact issues at the initial pleading stage.

## III. The Court Should Exercise Its Discretion and Reject the Materials Outside the Pleadings That Columbia Attaches to the Motion.

Recognizing that its reliance on materials outside of the pleadings means the Court cannot resolve the Motion under Rule 12(b)(6), Columbia asks the Court to convert the Motion to one for

6

summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court should decline to do so.

First, "[a]s the language of [Rule 12(d)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . . ." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004); *see also Torres v. Lucio*, No. 10711830, 2009 WL 10711830, at *3 (S.D. Tex. July 1, 2009) ("Rule 12(d) grants courts discretion to consider those materials, but it does not require them to do so."). In determining whether to exercise its discretion, courts will consider whether the materials are likely to facilitate the disposition of the action. *Torres*, 2009 WL 10711830, at *6. Courts are less likely to exercise this discretion and consider materials outside the pleadings when the materials are "scanty, incomplete, or inconclusive." *Id.* (declining to consider extraneous materials where they did not conclusively establish defendant's position).

Second, the materials Columbia asks this Court to consider are inconsistent with Columbia's positions and, at best, are inconclusive. For instance, a central theme of the Motion is Columbia's contention that it did not exist prior to 1972. In its attempt to support this contention, Columbia relies on materials outside of the pleadings such as the declaration of Brian Snover ("Snover Declaration"), a senior vice president of the Berkshire Hathaway Group, as well as numerous corporate documents. *See* App.0003, 0014, 0019. However, other materials, included within Columbia's Appendix, contradict this contention and suggest Columbia existed in 1970 when the Columbia Policy was issued. Specifically, Columbia attaches a "Company History Report" issued by the Nebraska Department of Insurance. App.0045. While this document supports Columbia's contention that Reinsurance Corporation of Nebraska was an entity in existence between May 1970

7

and December 1972, the document also indicates that prior to May 1970 (i.e., when the Columbia Policy could have issued), Reinsurance Corporation of Nebraska was known as Columbia. *Id.* at "Name Change History" (indicating that Columbia changed its name to Reinsurance Corporation of Nebraska on May 4, 1970, and then reverted to Columbia on December 29, 1972). Thus, in contrast to Columbia's contentions, it is entirely possible that Columbia itself could have issued the Columbia Policy in 1970.

While Columbia also contends that prior to 1973, neither it nor its purported predecessor, Reinsurance Corporation of Nebraska, sold anything but reinsurance policies and, thus, could not have sold a general liability policy to the Great Rivers Local Council, this too is contradicted by Columbia's own evidence. Brief at 9–10. In support of its contention, Columbia relies on materials outside of the pleadings, such as the Snover Declaration and Columbia's annual statements ("Annual Statements"). *See* App.003, 0024–25, 0028–29, 0032–33. However, once again, far from conclusively supporting Columbia's positions, these annual statements reflect that Columbia (in the form of Reinsurance Corporation of Nebraska) collected hundreds of thousands of premiums for categories of insurance other than reinsurance. *See* App.0024, 0028, 0032. For instance, in its 1971 Annual Statement, the Reinsurance Corporation of Nebraska indicates that it collected $114,230.49 in premiums from policies that related to "liability other than auto." App.0028. In fact, the 1971 Annual Statement includes a category for "Reinsurance" for which there is no dollar amount provided. *See id.*

Far from conclusively establishing that Columbia did not exist or that it, or its purported predecessor, did not issue liability policies at the time the Columbia Policy was issued, the materials outside the pleadings that Columbia asks this Court to consider are inconclusive and inconsistent. Given that these materials are unlikely to facilitate the disposition of this action as to Columbia, the

8

Court should decline to exercise its discretion to consider these materials and convert the Motion into a motion for summary judgment.

Additionally, courts typically do not exercise their discretion under Rule 12(d) to consider materials beyond the pleadings in situations, similar to the present, where the litigation is in its early stages and no discovery has occurred. *See, e.g.*, *Daniels v. AETC II Privatized Housing, LLC*, No. SA-19-CA-1280-FB, 2020 WL 6789336, at *1 (W.D. Tex. Jan. 6, 2020) (declining to consider materials outside the pleadings, in part, due to the "early stage of these proceedings"); *see also*, *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *16 (W.D. Tex. Aug. 26, 2021) ("Conversion of a motion to dismiss is disfavored because it risks denying parties 'full, fair, and wholly adequate opportunity for discovery.'") (citation omitted); *Barnes v. Sea Hawai'i Rafting, LLC*, 493 F. Supp. 3d 972, 976–77 (D. Haw. 2020) (declining to convert motion where no discovery had been conducted involving moving defendants); *Pickett v. Mobile County Sheriff Department*, No. 06-0821-WS-B, 2007 WL 2023488, at *2 (S.D. Ala. July 9, 2007) ("At this time, it would be inappropriate to perform such a conversion, inasmuch as this action is in its infancy and the parties are ill-equipped at this early stage of the proceedings to present all the evidence that would be required for a proper Rule 56 review."); *Torres*, 2009 WL 10711830, at *6 (declining to exercise discretion under Rule 12(d) where "Plaintiffs have not had adequate time for discovery of evidence that can substantiate their claims").

Discovery has not yet commenced in this case. The parties have not begun discussions concerning a confidentiality agreement governing discovery, which will almost certainly be required. In accordance with the cases described in the preceding paragraph, the Court should decline to exercise its discretion to consider the materials outside the pleadings and convert the Motion into one for summary judgment.

## IV. Alternatively, the Trustee Should Be Given the Opportunity to Take Discovery to Test Columbia's Contentions.

In the event the Court is inclined to consider the materials outside the pleadings that Columbia attaches to the Motion, the Court should still decline to rule on the converted motion until the Trustee is given adequate time and opportunity to take discovery into Columbia's contentions. In the Motion, Columbia not only asks this Court to consider materials outside the pleadings, but also to deny the Trustee the opportunity to take discovery because any discovery would be "futile." Brief at 12–13. Columbia's position is not supported by the Federal Rules of Civil Procedure or applicable case law.

Where a court exercises its discretion to convert a motion to dismiss into one for summary judgment, Rule 12(d) requires that all parties be "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As discovery has not even begun in this action, the Trustee has not been given any opportunity to investigate Columbia's contentions. Such an opportunity is a necessary prerequisite to being able to present material that is pertinent to the motion. As noted above, the fact that discovery has not yet begun is an oft-cited reason that courts will decline to convert motions at this early stage. *See supra* at 8–9.

Among other things, the Trustee should be permitted to depose Mr. Snover, who submitted a declaration in support of the Motion. The Trustee should not be forced to take Mr. Snover's assertions at face value, and, instead, should be permitted to test his contentions. Additionally, in light of Columbia's assertions that it could not locate the Columbia Policy, the Trustee should be permitted to take discovery into other general liability policies that Columbia, or Reinsurance Corporation of Nebraska, issued in the early 1970's timeframe. Because insurers often use standard

10

form policies, policies that Columbia issued to other insureds in this timeframe might fill in the gaps as to the terms and conditions of the Columbia Policy.[6]

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant Columbia Insurance Company's Motion to Dismiss.

---

[6] If required, the Trustee will file a motion under Federal Rule of Civil Procedure 56(d) seeking discovery. As the Court has not given notice that it will convert the Motion pursuant to Rule 12(d), the Trustee believes that a Rule 56(d) motion would be premature at this time.

DATED:  November 2, 2023

Respectfully submitted,

 /s/ Jeffrey M. Tillotson
Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3041
Facsimile: (214) 295-6564

Kami E. Quinn (admitted *pro hac vice*)
Washington DC Bar No. 500295
Quinnk@gilbertlegal.com
W. Hunter Winstead (admitted *pro hac vice*)
Washington DC Bar No. 496430
winsteadh@gilbertlegal.com
Emily P. Grim (admitted *pro hac vice*)
Washington DC Bar No. 1006597
grime@gilbertlegal.com
Michael B. Rush (admitted *pro hac*)
Washington DC Bar No. 496430
rushm@gilbertlegal.com
Sarah A. Sraders (admitted *pro hac*)
Washington DC Bar No. 1049001
Sraderss@gilbertlegal.com
Rachel H. Jennings (admitted *pro hac vice*)
Washington DC Bar No. 241370
Jenningsr@gilbertlegal.com
Brandon A. Levey (admitted *pro hac vice)*
Washington DC Bar No. 888314549
leveyb@gilbertlegal.com
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333

***ATTORNEYS FOR THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing instrument was electronically served upon the attorneys of record of all parties to the above cause in accordance with the Texas Rules of Civil Procedure on this 2nd day of November 2023.

                                           */s/ Jeffrey M. Tillotson*
                                           Jeffrey M. Tillotson