# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST,<br><br>       Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; *et al.*,<br><br>       Defendants. | Case No. 3:23-cv-01592-S |

## PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO UNDERSIGNED DEFENDANTS', GREAT AMERICAN INSURERS', AND GEMINI'S MOTIONS TO DISMISS THE COMPLAINT

Respectfully,

**GILBERT LLP**

Kami E. Quinn (admitted *pro hac vice*)
quinnk@gilbertlegal.com
W. Hunter Winstead (admitted *pro hac vice*)
winsteadh@gilbertlegal.com
Emily P. Grim (admitted *pro hac vice*)
grime@gilbertlegal.com
Michael B. Rush (admitted *pro hac vice*)
rushm@gilbertlegal.com
Sarah A. Sraders (admitted *pro hac vice*)
sraderss@gilbertlegal.com
Rachel H. Jennings (admitted *pro hac vice*)
jenningsr@gilbertlegal.com
Brandon A. Levey (admitted *pro hac vice*)
leveyb@gilbertlegal.com

700 Pennsylvania Avenue SE, Suite 400
Washington, DC 20003
Telephone: (202) 772-3333

**TILLOTSON JOHNSON & PATTON**

Jeffrey M. Tillotson
jtillotson@tillotsonlaw.com
1201 Main Street, Suite 1300
Dallas, Texas 75202
Telephone: (214) 382-3041
Facsimile: (214) 292-6564

**Attorneys for Plaintiff, The Honorable Barbara J. Houser (Ret.), in Her Capacity as Trustee of The BSA Settlement Trust**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... 1

TABLE OF AUTHORITIES .............................................................................................. ii

SUMMARY OF ARGUMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

   I.    BSA's Bankruptcy and Reorganization ............................................................. 2

   II.   Insurers Dispute the Plan and Coverage ............................................................ 6

   III.  The Trustee's Processing and Payment of Claims ............................................ 8

ARGUMENT ...................................................................................................................... 9

   I.    This Court Has Subject Matter Jurisdiction over All of the Trustee's Claims ................. 9

      A.   The Declaratory Judgment Claim Is Ripe. ................................................ 11

      B.   The Breach of Contract and Bad Faith Claims Are Ripe. ......................... 16

   II.   The Complaint Sufficiently Alleges Claims for Declaratory Judgment, Breach of Contract, and Bad Faith ...................................................................... 18

      A.   Breach of Contract .................................................................................... 19

      B.   Anticipatory Breach of Contract .............................................................. 22

      C.   Bad Faith ................................................................................................... 23

      D.   Declaratory Judgment ............................................................................... 26

   III.  This Court Can Exercise Personal Jurisdiction over the PJ Moving Defendants .......... 26

   IV.  This Court Should Not Abstain from Exercising Jurisdiction over a Small Subset of Claims in This Action ............................................................ 32

CONCLUSION ................................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardo v. America First Lloyds Ins. Co.*,
No. H-11-0008, 2012 WL 1576022 (S.D. Tex. May 3, 2012)................................18

*Air Vent Inc. v. Powermax Elec. Co. Ltd. Guangdong*,
No. 3:21-CV-0229-X, 2023 WL 4987598 (N.D. Tex. May 17, 2023) (Starr, J.)...................30

*also In re Boy Scouts of Am.*,
642 B.R. 504 (Bankr. D. Del. 2022) .........................................................2, 5, 13, 22

*American Construction Benefits Group, LLC v. Zurich American Insurance Company*,
No. 3:12-CV-2726-D, 2014 WL 144974 (N.D. Tex. Jan. 15, 2014).....................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................18

*Borg v. Metro. Lloyd's of Texas*,
No. 12-cv-256, 2013 WL 12091651 (W.D. Tex. Feb. 21, 2013) ...........................................18

*In re Boy Scouts of Am. & Del. BSA, LLC*,
650 B.R. 87 (D. Del. 2023)..........................................................................3, 4

*Boy Scouts of America v. National Union Fire Insurance Company of Pittsburgh, PA*
2016 WL 495599. .....................................................................................14

*Brillhart v. Excess Insurance Co. of America*,
316 U.S. 491 (1942)................................................................................32

*Callier v. Nat'l United Grp., LLC*,
No. EP-21-CV-71-DB, 2022 WL 20046134 (W.D. Tex. Jan. 26, 2022) ...............................30

*Carmona v. Leo Ship Mgmt., Inc.*,
924 F.3d 190 (5th Cir. 2019) ......................................................................28, 29

*Century Indem. Co. v. Marine Grp., LLC*,
848 F. Supp. 2d 1229 (D. Or. 2012) ...............................................................12

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
987 F.2d 1138 (5th Cir. 1993) .......................................................................10

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)..............................................................................2, 32, 33

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................................................27

*Danaher Corp. v. Travelers Indem. Co.*,
   414 F. Supp. 3d 436 (S.D.N.Y. 2019) ...........................................................................11

*Embry v. Hibbard Inshore, LLC*,
   803 F. App'x 746 (5th Cir. 2020) ...................................................................................30

*Emscor Manufacturing, Inc. v. Alliance Insurance Group*,
   879 S.W.2d 894 (Tex. App. 1994) ..................................................................................25

*Evanston Ins. Co. v. Jimco, Inc.*,
   844 F.2d 1185 (5th Cir. 1988) .......................................................................................34

*Farani v. File*,
   565 F. Supp. 3d 804 (S.D. Miss. 2021) ........................................................................27

*Frye v. Anadarko Petroleum Corp.*,
   953 F.3d 285 (5th Cir. 2019) ...................................................................................11, 12

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) .........................................................................................9

*Howley v. Bankers Standard Insurance Company*,
   No. 3:19-cv-2477-L, 2020 WL 4731968 (N.D. Tex. Aug. 14, 2020)..............................20

*Innova Hospital San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*,
   995 F. Supp. 2d 587 (N.D. Tex. 2014) .................................................................3, 21, 26

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
   315 F.3d 494 (5th Cir. 2002) .........................................................................................34

*Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, LLC*,
   No. 3:04CV2518-D, 2005 WL 1421446 (N.D. Tex. June 1, 2005)..................................26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).............................................................................................................33

*Murphy v. Uncle Ben's, Inc.*,
   168 F.3d 734 (5th Cir. 1999) .........................................................................................34

*Narvaez v. Wilshire Credit Corp.*,
   757 F. Supp. 2d 621 (N.D. Tex. 2010) ..........................................................................23

*National Surety Corp. v. Houser*,
   No. 2017-CH-14975 (Cook Cty., Ill. Cir. Ct.) ............................................................6, 8

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  833 F.2d 583 (5th Cir. 1987) ....................................................................10, 14

*NextEra Energy Capital Holdings, Inc. v. Lake*,
  48 F.4th 306 (5th Cir. 2022) ........................................................................9, 10

*Norris v. Hearst Tr.*,
  500 F.3d 454 (5th Cir. 2007) ..............................................................................19

*Orix Credit Alliance, Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ...........................................................................9, 11

*Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*,
  No. 3:11-cv-2205-D, 2012 WL 5868249 (N.D. Tex. Nov. 20, 2012) ....................................21

*Phillips v. Collin Cmty. Coll. Dist.*,
  630 F. Supp. 3d 828 (E.D. Tex. 2022) .....................................................................18

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
  No. 3:19-CV-2682-BH, 2022 WL 209276 (N.D. Tex. Jan. 24, 2022) ..............................19, 24

*Pulse Supply Chain Sols., Inc. v. Tagliamonte*,
  No. 3:21-CV-2706-B, 2022 WL 1457972 (N.D. Tex. May 9, 2022) ...................................33

*Roman Catholic Diocese of Dallas v. Sebelius*,
  927 F. Supp. 2d 406 (N.D. Tex. 2013) .....................................................................10

*RSUI Indem. Co. v. Enbridge (U.S.) Inc.*,
  No. H-08-1807, 2008 WL 5158179 (S.D. Tex. Dec. 9, 2008) ...............................................11

*Smith v. Nicholson*,
  516 F. Supp. 2d 832 (S.D. Tex. 2007) ......................................................................9

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
  509 F.3d 673 (5th Cir. 2007) ..............................................................................18

*Stanford Trading Co. v. Nationwide Mut. Ins. Co.*,
  237 F.3d 631, 2000 WL 1701741 (5th Cir. 2000) .................................................................17

*State Farm Lloyds v. Richards*,
  966 F.3d 389, 397 (5th Cir. 2020) ........................................................................18

*Tex. Prop. & Cas. Ins. Guar. Ass'n v. Boy Scouts of Am.*,
  947 S.W.2d 682 (Tex. App. 1997) .........................................................................17

*Triyar Cos., LLC v. Lexington Ins. Co.*,
  No. 3:12-CV-294, 2013 WL 3280033 (S.D. Tex. June 27, 2013) ....................................13, 18

*United States Fire Insurance Company v. A-Port, LLC*,
   No. 14-441, 2015 WL 1416490 (E.D. La. Mar. 26, 2015) ....................................................16

*In re USA Gymnastics*,
   624 B.R. 443 (Bankr. S.D. Ind. 2021) ...............................................................................15, 16

*Watson v. Citimortgage, Inc.*,
   814 F. Supp. 2d 726 (E.D. Tex. 2011) ...................................................................................22

**Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................................1, 2, 9

Fed. R. Civ. P. 12(b)(2)........................................................................................................2

Fed. R. Civ. P. 12(b)(6)....................................................................................................2, 18

The Honorable Barbara J. Houser (Ret.), in her capacity as trustee (the "Trustee") of the BSA Settlement Trust (the "Trust"), respectfully submits this consolidated response in opposition to (1) the Undersigned Defendants'[1] Motion to Dismiss the Complaint (the "UD Motion"); (2) Defendants Great American Assurance Company, Great American E&S Insurance Company, Great American Insurance Company, Arch Insurance Company, Arrowood Indemnity Company, Axis Specialty Insurance Company, Axis Surplus Insurance Company, Continental Insurance Company, Endurance American Specialty Company, Endurance American Insurance Company, Everest National Insurance Company, General Star Indemnity Company, Swiss Re Corporate Solutions Capacity Insurance Corporation, and Westport Insurance Corporation's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (the "Great American Motion," and the insurers, the "Great American Insurers"); and (3) Defendant Gemini Insurance Company's ("Gemini") Motion to Dismiss (the "Gemini Motion") (all three motions together, the "Motions").

## SUMMARY OF ARGUMENT

Throughout the Motions, the Defendants try anything they can in order to further delay these proceedings and put off the day that they will have to fulfill their obligations under their insurance policies to pay the Trust the money it is owed.  Their arguments for dismissal of this action, whether in whole or in part, must be rejected.[2]  First, the Trustee's claims for declaratory

---

[1] The Undersigned Defendants are those who submitted the "Undersigned Defendants' Motion to Dismiss the Complaint," ECF No. 225.

[2] In light of the duplicative nature of many of the insurers' arguments, the Trustee has consolidated her response to all three of the Motions into this brief.  Many of the Defendants have failed to extend the Trustee or the Court this same courtesy.  Nine of the fourteen Defendants who filed the Great American Motion *also* filed the UD Motion, meaning that Arch Insurance Company, Arrowood Indemnity Company, The Continental Insurance Company, Everest National Insurance Company, General Star Indemnity Company, Endurance American Insurance Company, Endurance American Specialty Insurance Company, Swiss Re Corporate Solutions Capacity Insurance Corporation, and Westport Insurance Corporation have essentially taken more than *sixty* pages to respond to the Trustee's complaint—well beyond the 25 allowed by the Local Rules or even the 35 allowed by this Court's September 27, 2023 Order.

judgment, breach of contract, and bad faith are ripe, such that the Defendants' arguments for dismissal under Federal Rule of Civil Procedure 12(b)(1) must be denied.  This Court need not wait for the Trust to process all of the Abuse Claims before proceeding with this litigation, particularly as the Defendants have denied any obligations whatsoever to pay claims processed under the court-approved procedures for years.  Second, the Trustee has sufficiently alleged all of her claims, and has no obligation to plead legal questions that will be resolved during the course of these proceedings.  The Defendants' arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6) must be rejected.  Third, the PJ Moving Insurers are subject to personal jurisdiction in Texas based on their significant contacts with the state.  The insurers' arguments for dismissal based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) fail.  Finally, the Defendants have not shown any basis for this Court to abstain from adjudicating this action.  The arguments for dismissal under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), should be denied.

The claims asserted by the Trustee are ripe for adjudication and have been sufficiently pled. For the benefit of the tens of thousands of sexual abuse survivors who asserted claims against the Boy Scouts of America ("BSA"), these claims should be resolved now, in this Court, in the comprehensive manner pled by the Trustee.

## **FACTUAL BACKGROUND**

### I.   **BSA's Bankruptcy and Reorganization**

As set forth in the Trustee's complaint (the "Complaint"), BSA declared bankruptcy in February 2020 in order to resolve its mounting defense costs and liabilities for claims alleging sexual abuse in its scouting programs (the "Abuse Claims").  Compl. ¶ 105; *see also In re Boy Scouts of Am.*, 642 B.R. 504 (Bankr. D. Del. 2022) ("*BSA I*").  To resolve the 82,209 Abuse Claims

2

filed against BSA during the bankruptcy, BSA's plan of reorganization (the "Plan") [3] created the Trust, which assumed the liability for Abuse Claims asserted against BSA and its Local Councils. *Id.* ¶¶ 108–109; *see also* UD App.081 ("[T]he Settlement Trust shall assume the liabilities, obligations, and responsibilities, financial or otherwise of (a) the Protected Parties[4] for all Abuse Claims."). The Plan further prohibited claimants from asserting any Abuse Claims against BSA or the Local Councils. Compl. ¶ 109; UD App.142–143. Accordingly, as a result of the bankruptcy, any Abuse Claim "shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents." UD App.077.

The "Settlement Trust Documents" include the Trust Distributions Procedures ("TDP")[5], which, as its name suggests, sets forth the procedures by which the Trust must evaluate and then distribute funds to holders of allowable Abuse Claims. *See In re Boy Scouts of Am. & Del. BSA, LLC*, 650 B.R. 87, 170 (D. Del. 2023) ("*BSA II*") ("The TDPs . . . permit[] Abuse Claims to be resolved in an effective, fair, and cost-efficient manner, maximizing overall distributions to Survivors."). Generally speaking, the TDP sets forth three manners of paying claimants. First, a claimant may select an "Expedited Distribution," where they receive a one-time payment of $3,500 in exchange for a full release of, among other entities, the Trust, BSA, and Local Councils. *See* UD App.170. Under the terms of the Plan, the Trustee cannot seek reimbursement for these claims from the insurers. UD App.170. More than 7,300 claimants have selected the Expedited

---

[3] App. in Supp. of Undersigned Defs.' Mot. to Stay Pending Ruling in *Harrington v. Purdue Pharma, L.P.* (hereinafter referred to as "UD App.___") UD App.006–159. Descriptions of the Plan herein are subject in all respects to the actual terms of the Plan. Capitalized terms not defined herein have the meaning ascribed to them in the Plan.

[4] "Protected Parties means the following Persons: (a) the Debtors; . . . (d) the Local Councils." UD App.054.

[5] *See* UD App.160–235.

Distribution option.  *See* Plaintiff's Consolidated Appendix, filed contemporaneously herewith, at TrustApp616.

Second, a claimant may select the "standard" or "Matrix" review of his or her Abuse Claim, referred to in the TDP as a "Trust Claim Submission."  UD App.170–171.  A claimant seeking to recover under the Matrix review must submit, under oath, a questionnaire developed by the Trustee; must submit documents relating to the Abuse Claim; and must agree to cooperate in a written and/or oral examination, under oath, if requested.  UD App.170–171.  The TDP sets forth uniform guidelines for the Trustee to utilize to determine whether to allow recovery for a Trust Claim Submission and, if so, how much the claimant should recover.  UD App.171.[6]  The submitted claims are valued pursuant to a "Claims Matrix," which awards compensation depending on the type of abuse and certain aggravating or mitigating scaling factors.[7]  *See generally* UD App.175–182.  If the Trustee deems a claim compensable, recoverable amounts under the Claims Matrix range from a "Base Matrix Value" of $3,500 to $600,000, with "Maximum Matrix Values" ranging from $8,500 to $2,700,000.  UD App.175–177.  BSA's lawyers "drafted the TDP, including criteria for claims and mitigating and aggravating factors, based on BSA's prepetition practices and experiences."  *BSA II*, 650 B.R. at 178.

Third, the TDP allows a holder of an Abuse Claim to select an "Independent Review Option" (or "IRO"), whereby he or she would have an independent, neutral third party evaluate the Claim and recommend a settlement amount to the Trustee.  UD App.189–190.  The TDP requires the Trust to provide notice to any "potentially responsible" insurer of any Abuse Claim

---

[6] The TDP allows a claimant, after going through certain processes set forth in the TDP, to submit the Abuse Claim to a court for resolution.  UD App.186–189.  In the event that this occurs, the Trustee is required to provide notice of this lawsuit to the Trust's insurers.  UD App.187.

[7] Examples of aggravating scaling factors include the nature of the abuse, including duration and frequency, exploitation of the victim, and coercion and threat of force or violence, and the abuser profile.  UD App.177–179.  Examples of mitigating factors include the involvement of a non-BSA related party, such as a school or religious organization, and application of relevant statutes of limitations.  UD App.179–181.

for which the claimant has selected the Independent Review Option.  UD App.193.  The insurers are given a "reasonable opportunity" to participate in the IRO process, and the Trustee "shall provide notice and seek consent" from the insurers for any settlement recommendation.  UD App.193.

The Independent Review Option "contemplates recoveries above the values stated in the Claims Matrix," *BSA I*, 642 B.R. at 544, and is designed to produce a result that might be achieved if the claim proceeded in the tort system.  A claimant must pay an initial $10,000 administrative fee in order to select the Independent Review Option, and must file a complaint (setting forth the basis of the claim) within 7 days of this payment.[8]  Within 28 days of a claimant's filing of the complaint, the Trustee must provide notice to potentially responsible insurers based upon the allegations set forth in the complaint.  *Id.* § V.  The potentially responsible insurer(s) then has 21 days to file a responsive pleading, if it elects to participate in the IRO process.  *Id.* § VIII.

On the Effective Date of the Plan, and in order to be able to pay these tens of thousands of Abuse Claims, the Trust also received the "Settlement Trust Assets," which included, among other assets from BSA and Local Councils, the rights under BSA's and Local Councils' insurance policies.  Compl. ¶ 110;  UD App.082.  "The Plan transferred to the Trust any claims, causes of action, or rights of BSA and Local Councils against the Defendants arising from or related to the Insurance Policies; the right to receive any proceeds or benefits from these claims, causes of action, or rights; and all other rights, claims, benefits, or causes of action of BSA and Local Councils under or with respect to the Insurance Policies."  Compl. ¶ 110.

On July 14, 2023, the Trust provided notice to all insurers of all Abuse Claims and of its intent to seek coverage for such claims under the insurance policies issued to BSA and its Local

---

[8] *See* "Attorney's Guide to Independent Review Option ('IRO'), Version 2, Effective Date: October 18, 2023" § IV, *available at* scoutingsettlementtrust.com/s/news-and-key-links.

Councils.  TrustApp618.  No one, including any insurer, has suggested that the claims process as outlined above, with over 82,000 individual claimants, will result in *no* liabilities incurred by the Trust.  To the contrary, the Trust expects significant liabilities from the Abuse Claims.

## II.   Insurers Dispute the Plan and Coverage

During BSA's bankruptcy proceedings, its insurers objected to confirmation of the Plan at every turn.  Twenty-six of the defendants in this litigation objected to confirmation of the Plan before the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  *See* TrustApp039–53 (setting forth the list of defendant insurers that objected to confirmation of the Plan).  Twenty-eight appealed confirmation of the Plan to the District Court for the District of Delaware (the "District Court"), and twenty-seven to the U.S. Court of Appeals for the Third Circuit.  *See id.*  Additionally, twenty-seven insurers have sought to stay implementation of the Plan, either in front of the District Court or the Third Circuit, or both.  *See id.*  In total, thirty different defendants in this action have objected to the Plan in front of the Bankruptcy Court, the District Court, or the Third Circuit, and often all three.

The insurers generally based their objections on the Plan's treatment of Abuse Claims under the TDP and their views that the Plan impermissibly impaired their rights to assert coverage defenses.  Among other things, they argued, and continue to argue, that the TDP inflates the value of Abuse Claims, and allows for payments to claimants that would not be permitted in the tort system.  *See, e.g.*, TrustApp137–42 (raising arguments against the procedures set forth in the TDP).

That the insurers dispute coverage and the controversy is ripe was shown when, more than a week after the Trustee initiated the instant litigation, Defendant National Surety Corporation ("National Surety") sought leave to amend its complaint in one of the pre-petition coverage litigations involving BSA and a limited subset of its insurers, *National Surety Corp. v. Houser*,

No. 2017-CH-14975 (Cook Cty., Ill. Cir. Ct.).   In its proposed amended complaint, National Surety, along with Defendants Interstate Fire and Casualty Company ("Interstate Fire") and Fireman's Fund Insurance Company ("Fireman's Fund"), asserts twenty-five causes of action; thirteen of which seek declarations of "no coverage" or "no duty" to provide coverage based on certain alleged policy exclusions or limitations; five of which seek declarations that its policies "only respond" to certain liabilities and/or liabilities must be allocated to other coverage; and four of which seek declarations that National Surety has no obligations to provide coverage for Abuse Claims based upon alleged violations of policy terms by BSA and/or the Trust.

At least four of National Surety's counts in its proposed amended complaint in Illinois allege that its coverage obligations were discharged in full based upon terms of the Plan that National Surety opposed during the BSA bankruptcy case, or based on BSA's conduct during the bankruptcy case that it (along with other insurers) contends violate the terms of its policies.  These include National Surety's contentions that, among other things:  (a) National Surety "did not agree to the claims values contemplated by the TDPs and Claims Matrix under which the Settlement Trustee will pay Abuse Claims" and, accordingly, National Surety has "no obligation under [their] Policies to indemnify BSA or the Settlement Trust for unreasonable settlements or other payments made without [their] consent;" and (b) "as a condition of coverage thereunder, the Policies require BSA to cooperate with and assist the National Surety Insurers in the defense and settlement of claims," and there is no coverage under the policies because "BSA violated obligations it owed to the National Surety Insurers under the Policies by, among other things . . . agreeing to procedures, including the Matrix Evaluation, the IRO, and the Document Appendix, for resolving claims that deprive the National Surety Insurers of its right to associate with the defense of claims . . . [and] agreeing to procedures for paying Abuse Claims that were intended and designed to increase the

National Surety Insurers and Other Insurer Parties' potential coverage liability."  TrustApp215–16, 218–19.

Defendant Allianz Global Risks US Insurance Company ("Allianz") has also sought to amend its counterclaims against the Trustee in the *National Surety* action, asserting claims against the Trust virtually identical to those asserted by National Surety.  *See* TrustApp218–364.  Allianz's proposed amended counterclaims in the Illinois state court action assert twenty-three counts seeking declaratory relief based upon its various alleged coverage defenses to paying Abuse Claims.  Allianz's proposed counterclaims seek the same declarations of "no coverage" based upon the terms of the confirmed Plan and/or actions taken in the BSA bankruptcy case that National Surety has asserted described above.  Ironically, notwithstanding the fact that National Surety, Interstate Fire, Fireman's Fund, and Allianz seek declaratory relief in Illinois regarding their obligations to pay Abuse Claims, each of them simultaneously argues that *this* action must be dismissed as unripe.  *See* Br. in Supp. of Nat'l Surety Insurers' and Allianz's Mot. to Dismiss on *Forum Non Conveniens* Grounds or Dismiss or Stay on Abstention Grounds at 3 n.1, ECF No. 200-1 (joining in the Undersigned Defendants' arguments regarding lack of subject matter jurisdiction).

## III.    The Trustee's Processing and Payment of Claims

Since its creation in April of this year, the Trust has taken swift action to resolve the Abuse Claims asserted against it and recover the insurance proceeds to which it is entitled in order to pay survivors with allowable claims.  On July 14, 2023, the Trust provided notice of all 82,209 Abuse Claims to every insurer of which the Trust was aware and which could potentially provide coverage.  *See* TrustApp618.

The Trust has also begun to receive claims from those survivors who selected the Independent Review Option.  On October 20, 2023, the Trust provided notice of its first IRO claim

to insurers; since that date, the Trust has provided notice of an additional five IRO claims to a total of fifty insurers, with more claims being filed each day.  *See* TrustApp618.

The Trust has also begun to review claims questionnaires from survivors who have chosen to proceed under the Matrix claims review process.  TrustApp616–18.  To date, approximately 1,500 survivors have submitted their questionnaires to the Trust so that it can begin to determine whether, and at what value, those claims should be allowed.  *Id.*

## ARGUMENT

### I.    This Court Has Subject Matter Jurisdiction over All of the Trustee's Claims

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "Ripeness is a constitutional prerequisite to the exercise of jurisdiction."  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (citation omitted).  A motion to dismiss based on lack of subject matter jurisdiction under Federal Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  *Home Builders Ass'n*, 143 F.3d at 1010.  Because the Trustee's claims for declaratory judgment, breach of contract, and bad faith are ripe and, therefore, fall within this Court's subject matter jurisdiction, the Motions must be denied on this ground.[9]

A court must dismiss a case for lack of ripeness "when a 'case is abstract or hypothetical.'"  *NextEra Energy Capital Holdings, Inc. v. Lake*, 48 F.4th 306, 316 (5th Cir. 2022) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

---

[9] In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court is permitted to rely on matters outside of the pleadings.  *See Smith v. Nicholson*, 516 F. Supp. 2d 832, 836 (S.D. Tex. 2007) ("When examining a factual (as opposed to a facial) challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court may consider matters outside the pleadings, such as testimony and affidavits.").

"A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv.*, 833 F.2d at 586 (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). To determine whether a case is ripe, the court examines "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *NextEra Energy Capital Holdings*, 48 F.4th at 316 (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "Thus, the ripeness inquiry focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993). "In determining ripeness, a court may consider events that occurred after the filing of the complaint." *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 424 (N.D. Tex. 2013) (collecting cases).

This case is ripe. First, the Trustee's claims are anything but hypothetical. The Trustee does not ask this Court to decide these issues based on some speculative future event. As set forth in the Complaint, the Trust has assumed liability for all of the Abuse Claims asserted against BSA and its Local Councils. Compl. ¶¶ 108–09. The Trustee must pay those claims pursuant to the procedures set forth in the TDP and, in fact, has already started the process of paying submitted claims. TrustApp616; UD App.077. Notably, the insurers do not contest that the Trustee will inevitably have to pay out compensable Abuse Claims—instead, they argue that the parties must put everything on hold until the process of actually valuing each individual Abuse Claim has taken place. That is neither necessary nor appropriate.

Second, there is no reason for such a delay. These insurance coverage issues will need to be decided, and they *can* be decided now. The issue of whether the Undersigned Defendants are obligated to provide coverage in connection with these claims—and the repercussions for their

10

failures to agree to do so—is fit for judicial decision.  Further, if this Court delays in considering the Trustee's claims, the Trust will face severe hardship.  The Undersigned Defendants are withholding funds that properly belong to the Trust and must be distributed to the Trust's beneficiaries—childhood sexual abuse survivors with allowable abuse claims—many of whom are advanced in age.

Third, the insurers undisputedly contest their obligation to provide coverage for the Abuse Claims.  The fact that the Abuse Claims have been filed and will result in liability and the insurers reject that they have any coverage responsibility for those claims means this dispute is ripe.  Each of the Trustee's claims is discussed below.

### A.      The Declaratory Judgment Claim Is Ripe.

"A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists."  *Orix*, 212 F.3d at 896 (citing 28 U.S.C. § 2201(a)).  "To show an actual controversy, the dispute at issue 'must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character.'"  *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (quoting *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009)).  "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

In the mass tort context, federal courts throughout the country have held that the fact that an insured's underlying liabilities may be contingent does not defeat jurisdiction of a declaratory judgment action; an actual controversy is ripe and warrants declaratory relief where there is a practical likelihood that underlying liabilities may impact excess insurers' obligations.  *See Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 467 (S.D.N.Y. 2019); *see also RSUI*

*Indem. Co. v. Enbridge (U.S.) Inc.*, No. H-08-1807, 2008 WL 5158179, at *2 (S.D. Tex. Dec. 9, 2008) (finding declaratory judgment request ripe where "there is a significant possibility that [the insureds'] liability will exceed [the underlying] policy limits," such that the "coverage dispute is neither speculative nor theoretical"); *Century Indem. Co. v. Marine Grp., LLC*, 848 F. Supp. 2d 1229, 1235 (D. Or. 2012) (noting agreement among courts "that a claim is ripe where there is a substantial likelihood that the dispute will reach the excess policies").

Here, the Trustee's claims for a declaratory judgment regarding the duty to defend and the duty to indemnify present actual controversies.  The dispute is real and concrete:  the Trustee believes that each of the insurer defendants must provide coverage for the Abuse Claims, and the insurers disagree.  The Defendants do not argue that there is no controversy.  *See Frye,* 953 F.3d at 294 (noting that a controversy was "definite and concrete" where "[p]rior to this suit, the parties had taken adverse positions with respect to their existing obligations") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)).  As detailed *supra*, the Defendants have already raised arguments as to why they should not have to pay Abuse Claims—arguments which National Surety, Interstate Fire, Fireman's Fund, and Allianz have asserted in their proposed amended pleadings in the Illinois state court action.

With respect to the insurers' obligations, the Trustee has demonstrated, through her declaration, that there are currently six complaints pending against the Trust under the IRO process, as well as over 1,500 returned questionnaires from claimants who are seeking payment under the Plan's Matrix.  TrustApp616–17.  These numbers increase daily, and will continue to increase as more and more survivors submit questionnaires to the Trust electing the IRO or Matrix claims processes.  TrustApp616–18.  Stated simply, the Trustee is entitled to a determination of

whether the costs incurred by the Trust in resolving these claims and paying the claims are covered under the insurers' policies.

The underlying suits against BSA have been channeled to the Trust under the Plan. As a result, the Trust is legally obligated pay allowable Abuse Claims, even if the Trust has not yet processed all 82,209 claims. Although the Trustee has not yet determined which claimants have an allowable claim and the precise amount each such claimant is owed, these claims have been asserted, and will be resolved under the Plan. The actual liquidation and payment of all or even any of these claims is not a prerequisite for determining how the applicable insurance must respond to these Abuse Claims.

The notion that excess insurers' coverage will not be reached, as Gemini asserts, is simply at odds with the reality of the Trust's likely liability. Experts who offered testimony for purposes of Plan confirmation opined that the ultimate liability for all Abuse Claims will range between $2.4 billion and $3.6 billion. *BSA I*, 642 B.R. at 557. While the Bankruptcy Court made clear that such liability could be determined only when the Trustee liquidates the claims pursuant to the TDP, such testimony—particularly in light of the volume of IRO claims already submitted—affirms that there is a practical likelihood that all of the insurance at issue in this litigation will be impacted and, accordingly, any and all questions as to the coverage under the relevant policies is ripe for determination. "Declaratory judgment actions are often used to determine whether insurance coverage exists for damage caused by a past event, even in cases in which the plaintiff's damages have not yet been determined." *Triyar Cos., LLC v. Lexington Ins. Co.*, No. 3:12-CV-294, 2013 WL 3280033, at *3 (S.D. Tex. June 27, 2013). The Defendants cite no authority stating that a post-bankruptcy trust must *process* all claims before seeking coverage, when the claims have been filed and the trust has assumed the liability for the claims.

To the contrary, it is common for insureds facing mass tort liability to engage in coverage litigation with its insurers to address its entire insurance portfolio even if not all underlying claims have been liquidated to a dollar sum by the insured (or, in some cases, even asserted against the insured).   Questions regarding which insurer must pay for which Abuse Claims depend on resolution of a number of legal, not factual, issues, that must be resolved in the course of this litigation.   For example, this Court's determination of whether to apply a *pro rata* or "all sums" allocation may drastically affect the amounts that insurers are required to pay under their policies.[10] Further, a determination as to which policies are "triggered" by an Abuse Claim will also impact which insurers are liable for a given Abuse Claim.   And even further, the application of various policy exclusions and other alleged coverage limitations will impact how liabilities can be assigned to insurance for coverage and payment.   Even the recoverable amount of insurance as to each allowed Abuse Claim may require judicial determination, as insurers in post-bankruptcy cases have argued that they are not liable for the allowed amount of each claim, but instead for the amounts *actually paid* on each allowed claim by a trust.[11]   It benefits both the insured and the insurers to receive clarity from this Court as to the framework for applying an insurance portfolio that spans several decades to thousands of Abuse Claims.   Because "any remaining questions are purely legal ones," *New Orleans Pub. Serv.*, 833 F.2d at 587, the Trustee's claims are ripe.

The cases cited by the Undersigned Defendants in support of their argument that the claims are unripe bear no resemblance to the facts of this case.   In *Boy Scouts of America v. National Union Fire Insurance Company of Pittsburgh, PA*, for example, the insured sought a declaratory judgment regarding coverage for claims that had not yet been filed, let alone reached a final

---

[10] Even the question of whether a policy provides a duty to defend as well as to indemnify may be a legal issue that requires interpretation of the policy language, rather than a factual determination.

[11] Of course, this argument is both circular and misplaced.   Reducing the amount insurers are liable for is what causes post-bankruptcy trusts to be unable to pay a higher percentage recovery to holders of allowed claims.

14

judgment or settlement.  2016 WL 495599, at *3.  Similarly, in *American Construction Benefits Group, LLC v. Zurich American Insurance Company*, the court found that a declaratory judgment claim was unripe where the insured sought a declaration "regarding Zurich's duty to indemnify it in a still-unfiled derivative suit."  No. 3:12–CV–2726–D, 2014 WL 144974, at *4 (N.D. Tex. Jan. 15, 2014).  Here, the Trustee seeks coverage for claims that have already been filed, for which the Trustee has already assumed liability, and which the Trust must pay pursuant to court-approved procedures.  Compl. ¶¶ 108–09.

In their brief, the Great American Insurers erroneously assert that "the filing of claims in the bankruptcy, and the entry of a confirmation order do not give rise to coverage obligations under general liability policies."  Brief in Support of Great American Motion ("Great Am. Br.") at 13.  The case they cite in support, *In re USA Gymnastics*, 624 B.R. 443 (Bankr. S.D. Ind. 2021), in addition to being a non-binding case from outside of this Circuit, in no way resembles this case, or even the Great American Insurers' assertions.  In *USA Gymnastics*, the bankrupt insured sought defense costs from its insurers for the costs that it incurred *during* its bankruptcy proceeding.  *Id.* at 447.  The court reasoned that, under the language of the policies at issue, the insurer was not obligated under the policy to cover the costs incurred by the insured in initiating its bankruptcy proceeding.  *See generally id.*  Great American fails to explain why this case is even remotely relevant to a determination of insurance coverage rights for a post-bankruptcy Trust that is responsible for determining and paying for Abuse Claims.

Moreover, the Trustee is not seeking defense costs for the costs that BSA incurred during its bankruptcy.  She is seeking costs for the amounts required to pay claims, as well as the costs of evaluating and determining allowable claims under the Plan.  Whether these costs fall within the

15

scope of the Great American Insurers' policies is an issue that will be determined in the course of this litigation, but it is not an issue barred in any way by *USA Gymnastics*.

The Great American Insurers also rely on *United States Fire Insurance Company v. A-Port, LLC*, where the court found that a declaration regarding the duty to indemnify was not ripe when the court in the underlying lawsuit had *dismissed* the suit against the insured, and the decision was on appeal. No. 14-441, 2015 WL 1416490, at *2 (E.D. La. Mar. 26, 2015). "Unless and until summary judgment is reversed, the case is remanded, and [the insured] is found liable," the claim was not ripe. *Id.* This case, like the others relied upon by the Great American Insurers, did not involve either mass tort claims or a bankruptcy, and their holdings are inapplicable here, where all Abuse Claims that have been or will be asserted have been channeled to the Trust for determination and payment in accordance with the Plan. Compl. ¶¶ 108–09; *see also* UD App.081.[12] None of the insurers have identified a single case in which questions of insurance coverage in mass tort cases had to be put on hold for months or possibly years until a post-bankruptcy trust had completed its review, determination, and payment of tens of thousands of claims. As a practical matter, this simply makes no sense, and the authorities relied upon by the Defendants involving one-off or more limited scope underlying losses do not have any application here.

**B.    The Breach of Contract and Bad Faith Claims Are Ripe.**

The Defendants' arguments that the breach of contract and bad faith claims are unripe fail for similar reasons:  the existence of the Trust's liability *has* been established, such that the insurers are obligated to provide coverage. The Undersigned Defendants stress that "before an insurer's responsibility to honor the terms of its CGI [sic] policy is triggered, an insured must be legally

---

[12] To the extent that the Great American Insurers are arguing that the Trustee's claims are unripe because BSA's bankruptcy is on appeal, *A-Port* does not help their argument. In *A-Port*, the underlying court held that there was *no* liability for the insured, and this decision was on appeal. 2015 WL 1416490, at *2. Here, in contrast, the Trust *is* liable for compensable Abuse Claims, and the Trustee has already begun paying those claims, *see* TrustApp616.

obligated to pay a settlement or a judgment resulting from a third party suit against it." *Stanford Trading Co. v. Nationwide Mut. Ins. Co.*, 237 F.3d 631 (Table), 2000 WL 1701741, at *2 (5th Cir. 2000). But the Trust *is* legally required to pay allowable Abuse Claims, pursuant to the Plan and in accordance with the procedures set forth in the TDP. Compl. ¶ 108; UD App.081. That this obligation is set forth in a bankruptcy plan of reorganization rather than a traditional court judgment does not make the Trust's liability any less valid or enforceable. *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Boy Scouts of Am.,* 947 S.W.2d 682, 691 (Tex. App. 1997) ("[A] court judgment is not the only manner by which the Boy Scouts could become legally obligated to pay the Post claim. A legal obligation can also arise out of a contract, such as a settlement.").

The Trust provided notice of *all* Abuse Claims to its insurers in July, TrustApp618, and continues to provide notice of specific IRO claims as they are submitted, *id*. The Undersigned Defendants have already refused to pay those claims, in violation of their policies and bad faith, regardless of the ultimate value of that liability. Four insurers have filed pleadings in another case (the Illinois state court action) in which they definitively state that they have "no obligation" to pay any Abuse Claims because of BSA's past conduct and/or because of the terms of the Plan. Dozens of other insurer defendants asserted defenses to coverage and alleged breaches of their policies during the BSA bankruptcy case in opposing confirmation of the Plan. To suggest there is no ripe dispute here under the insurers' contracts is simply disingenuous.

The arguments raised by the Great American Insurers are similarly unconvincing, as they baselessly assert that, "[i]n Texas, a breach of contract claim arising out of an insurance contract with respect to indemnification obligations is not ripe until the amount of the insured's liability is determined." Great Am. Br. at 15. Not one of the cases they cite states that the specific amount of the insured's liability must be determined before an insurer can have breached its obligations

17

under the policy. *State Farm Lloyds v. Richards* does not even involve a breach of contract claim, and the court simply states the unremarkable proposition that a claim for declaratory relief regarding the duty to indemnify is not ripe when the underlying lawsuit is still pending. 966 F.3d 389, 397 (5th Cir. 2020). In *Triyar Companies*, the court held that claims for a declaration regarding a breach of contract and for breach of the duty of good faith were unripe not because the amount of damages was yet to be determined, but because the insurer had not yet wrongfully denied the claim for coverage. 2013 WL 3280033, at *5. Here, as set forth *infra* Sections II.A and B, the insurers have breached and/or anticipatorily breached their obligations under their policies, such that the Trustee's claims are ripe. The other cases relied upon by the Great American Insurers are similarly inapplicable.[13]

## II.    The Complaint Sufficiently Alleges Claims for Declaratory Judgment, Breach of Contract, and Bad Faith

The Defendants' arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim must also be rejected. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). "The Court may consider the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Phillips v. Collin Cmty. Coll. Dist.*, 630 F. Supp. 3d 828, 833 (E.D. Tex. 2022)

---

[13] *Borg v. Metro. Lloyd's of Texas*, No. 12-cv-256, 2013 WL 12091651, at *2 (W.D. Tex. Feb. 21, 2013) (noting that in the context of underinsured/uninsured motorist coverage, "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a *judgment* establishing the liability and underinsured status of the other motorist") (quoting *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006)); *Accardo v. America First Lloyds Ins. Co.*, No. H-11-0008, 2012 WL 1576022, at *3 (S.D. Tex. May 3, 2012) ("Until the [insureds] litigate the unknown driver's liability in this action, their breach of contract claim is unripe.").

(quotation omitted).  Further, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The Complaint sufficiently pleads a claim for declaratory judgment, breach of contract, and bad faith.  Compl. ¶¶ 134–57.

### A.      Breach of Contract

To assert a claim for breach of contract under Texas law, a plaintiff must allege:  "(1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach."  *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-CV-2682-BH, 2022 WL 209276, at *9 (N.D. Tex. Jan. 24, 2022) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

The Complaint satisfies each of these elements.  It alleges the existence of several thousand insurance policies, and details in Exhibits A and B the identity of the issuing insurer, the liable defendant, the policy period, and the policy number (and, in the case of policies issued to Local Councils, the Local Council insured under each policy).  Compl. ¶ 110, Ex. A., Ex. B.  It asserts that the Defendants, including the Undersigned Defendants, have breached the policies by refusing to provide coverage and asserting that they have no obligation to cover Abuse Claims.  *Id.* ¶ 131. It describes the policy provisions that provide coverage for the Abuse Claims, which the defendants have violated, and the nature of the Abuse Claims that fall within the coverage grant of the insurers' policies.  *Id.* ¶¶ 104, 117–18.  It alleges that BSA and Local Councils, as predecessors to the Trustee's rights under the policies, have satisfied all of the insured's obligations under the policies, including payment of premiums.  *Id.* ¶¶ 121–22.  Finally, it alleges that the Trust has suffered damages as a result of the Defendants' breaches.  *Id.* ¶ 152.

The Defendants raise a variety of arguments that these allegations are insufficient, but they all fail.  First, they claim that the Trustee does not plead any tender of claims to the insurers.  Mem. in Support of UD Motion ("UD Br.") at 20; Great Am. Br. at 17–19.  But this is not a requirement for a breach of contract claim; the case that the Undersigned Defendants cite in support, *Howley v. Bankers Standard Insurance Company*, refers to tender of *performance*, not the claim.  No. 3:19-cv-2477-L, 2020 WL 4731968, at *3 (N.D. Tex. Aug. 14, 2020) (noting that the second element of the breach of contract claim was satisfied because "Plaintiff performed his duties under the contract by paying his premiums").  As noted above, the Trustee has alleged that all of the insureds' necessary obligations, including payment of premiums, have been satisfied.  Compl. ¶¶ 121–22.  Further, to the extent that any of the Trustee's obligations have not been satisfied, the Complaint alleges that "compliance with such conditions precedent is excused, such conditions precedent do not apply, or Defendants have waived or are estopped or otherwise precluded from relying on such conditions precedent."  *Id.* ¶ 121.

The Great American Insurers also claim that the Trustee has not alleged that the underlying coverage is exhausted, such that their policies are required to pay claims.  Great Am. Br. at 18.  The amount of liability at issue here, for tens of thousands of claims, is virtually guaranteed to exhaust any of the policies underlying those issued by the Great American Insurers.  Arguing that the underlying coverage is not exhausted ignores the reality of the Abuse Claims for which the Trust has assumed liability.

Next, the Undersigned Defendants insist that the Trustee must allege, at the pleading stage, legal conclusions that will not be determined until later in these proceedings.  They fault the Trustee for failing to specify which of the 82,209 claims are covered by each insurer's policy.  UD Br. at 20.  They also claim that the Trustee must explain how an "occurrence" is defined under the

20

policies and explain why an Abuse Claim satisfies this definition.  *Id.* at 22.  For the reasons set forth *supra*, this is not necessary at this stage of the proceedings.  The Complaint clearly and sufficiently sets forth the reasons why the Abuse Claims are covered under the insurers' policies.

The Defendants next fault the Trustee for purportedly failing to explain how they breached the policies.  *Id.* at 21; Great Am. Br. at 19; Mem. of P. & A. in Support of Gemini's Motion ("Gemini Br.") at 7.  However, the Complaint details the actions that certain of the defendants have taken, including litigating coverage for Abuse Claims with BSA and Local Councils, Compl. ¶¶ 126–30, and asserting in BSA's bankruptcy proceedings that they have no obligation to cover Abuse Claims paid in accordance with the Plan and TDP, *id.* ¶ 131, which demonstrate their refusals to pay the claims that they are contractually obligated to cover.  The Defendants focus only on the legal arguments asserted by the Trustee, ignoring the factual allegations pled earlier in the Complaint which support them.

The Great American Insurers rely on *Innova Hospital San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014), to argue that the Trustee has failed to adequately plead a claim for breach of contract, but their reliance is misplaced.  Great Am. Br. at 19.  In *Innova*, the plaintiffs filed a breach of contract claim against thirty-three "plan administrators . . . who insured patients that received medical services from [p]laintiffs."  *Innova*, 995 F. Supp. 2d at 596.  The court stated that "a plaintiff must identify a specific provision of the contract that was allegedly breached," and held that the plaintiffs had not done so because they "[did] not identify what provisions were breached or provide factual allegations about the terms of the plans."  *Id.* at 603.  Gemini, in turn, cites *Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*, No. 3:11-cv-2205-D, 2012 WL 5868249, at *3 (N.D. Tex. Nov. 20, 2012), where the court similarly dismissed a breach of contract claim where the plaintiff did not "specify the

plan terms that allegedly entitle them to payments that United underpaid or failed to pay." Gemini Br. at 8.

Here, in contrast, the Trustee has set forth the material terms of the insurance policies at issue, describing the coverage grants that cover Abuse Claims. Compl. ¶¶ 115, 118; *see also BSA I*, 642 B.R. at 526 ("BSA has had some form of primary and/or excess comprehensive general liability insurance in place covering Abuse claims since at least 1935."). The Trustee alleged that the insurers breached the policies by refuting their obligations to pay for *any* Abuse Claims, which fall within the provisions of the coverage grant—regardless of their ultimate value. Compl. ¶¶ 146–50. The Complaint sufficiently states a claim for breach of contract.

### B.    Anticipatory Breach of Contract

In the alternative, if this Court nonetheless finds that the Trustee has not sufficiently pled a claim for breach of contract, the Court should find that the Complaint states a claim for anticipatory breach of contract. To plead a claim for anticipatory breach of contract, a plaintiff must allege "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 733 (E.D. Tex. 2011) (citing *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)). "An absolute repudiation of the obligation 'may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms.'" *Id.* (quoting *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010)).

The Trustee has pled sufficient facts to show that each of the elements above has been satisfied. The Defendants have indicated their intention not to perform their obligations under the insurance policies by arguing in the bankruptcy proceedings that they would not pay claims processed under the TDP and, in the case of the insurers involved in pre-petition litigation with

BSA, by denying their coverage obligations.  Compl. ¶¶ 125–29, 131; *see also* TrustApp039–53 (listing insurers that filed objections during BSA's bankruptcy).  There is no excuse for this repudiation; as alleged in the Complaint, the Abuse Claims are covered under the insurance policies, and many other insurers acknowledged their coverage obligations during the bankruptcy.  Compl. ¶¶ 117–19, 132.  Finally, the Trustee has alleged damages incurred as a result of these defendants' repudiations.  *Id.* ¶ 152.

The Undersigned Defendants and Gemini argue that their filings in the bankruptcy proceedings are insufficient to constitute an absolute repudiation of their obligations.  UD Br. at 23; Gemini Br. at 8–9.  The insurers objecting to confirmation of the Plan—which group includes Gemini and more than two dozen other insurers—made clear their views that the Plan and TDP violated the terms of their policies.  *See, e.g.*, TrustApp416 (attaching "examples of key policy provisions that are modified and/or breached by the Plan and TDPs"); TrustApp453 (arguing that "[t]he proposed TDPs fail to satisfy these insurance policy provisions"); TrustApp455 ("The TDP procedures constitute a direct violation of the Certain Insurers' bargained-for 'no action' clauses."); TrustApp548 (quoting insurers' proposed expert as saying that under the Plan "'the claim amounts will be determined by another party without the insurers' assistance—or the insureds' assistance and cooperation with insurers'").  The insurers have repeatedly maintained that the Plan and TDP violate the terms of their policies.  These words make clear that the insurers will not cover the Abuse Claims, "indicat[ing] an intention that [the insurers] [are] not going to perform the contract according to its terms."  *Narvaez*, 757 F. Supp. 2d at 631 (citation omitted).  The Trustee has sufficiently stated a claim for anticipatory breach of contract.

### C.    Bad Faith

Under Texas law, an insurer "breaches its common-law duty of good faith and fair dealing when 'there is no reasonable basis for [its] denial of a claim or delay in payment or a failure on the

part of the insurer to determine whether there is any reasonable basis for the denial or delay.'" *Pogo Res.*, 2022 WL 209276, at *16 (quoting *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).  The Trustee has alleged exactly this in the Complaint.  *See* Compl. ¶ 118 (describing the coverage grants under the policies and how the Abuse Claims fall within these coverage grants), ¶ 121 (alleging that all of the insured's conditions precedent to coverage have been satisfied), ¶ 124 (alleging that no exclusions or limitations in the policies bar coverage), ¶¶ 125–131 (describing various defendants' efforts to refuse coverage).

The Undersigned Defendants argue that the Complaint merely sets forth conclusory allegations without setting forth specific factual allegations to support the bad faith claim.  UD Br. at 23–24.  Gemini also argues that the Trustee has not alleged that Gemini failed to pay a claim that Gemini knew or should have known was covered.  Gemini Br. at 11–12.  Not so.  The Complaint describes how more than two dozen of BSA's and Local Councils' insurers paid over a billion dollars to resolve their liabilities for Abuse Claims, in stark contrast to these insurers' repeated refusals, both prior to and during the bankruptcy proceedings, to acknowledge their obligations to provide coverage.  Compl. ¶¶ 125–132.  Here again, the Defendants ignore the facts pled in the Complaint and focus only on the legal arguments.

The Undersigned Defendants also argue that the Trustee cannot allege a common law claim for bad faith because Texas does not recognize such cause of action for third-party claims.  UD Br. at 24.  The Undersigned Defendants are wrong.  As the assignee of BSA's and Local Councils' insurance rights under their policies, the Trust is permitted to bring a bad faith claim in connection with the insurers' treatment of the Trust's claims under the policies.  *See Pogo Res.*, 2022 WL 209276, at *17 (concluding that "Plaintiff's common law bad faith claims under the Paladin Policies . . . are based on Plaintiff's 'special relationship' with Defendant that formed when

24

Paladin assigned its interests in the policies to Plaintiff" and collecting cases).  Lastly, the Undersigned Defendants argue that the bad faith claim must be dismissed because the Trustee has not stated a claim for breach of contract.  Because the Trustee has sufficiently pled a claim for breach of contract, *see supra*, this argument also fails.

The Great American Insurers and Gemini claim that, as excess insurers, the Trustee cannot assert a claim for bad faith against them, relying on *Emscor Manufacturing, Inc. v. Alliance Insurance Group*, 879 S.W.2d 894 (Tex. App. 1994).  Great Am. Br. at 23–25; Gemini Br. at 10. In *Emscor*, the insured, Emscor, alleged that the insurer, Alliance, breached its duty of good faith when it would not assume the defense for its insured and settle the underlying case.  879 S.W.2d at 901.  Alliance, in turn, argued that it had no obligations under its policy until the underlying limits had been paid.  *See id.*  The court agreed that Alliance's policy obligations were subject to conditions precedent that had not been satisfied, and held that Emscor could not state a claim for bad faith:  "Having no duty to 'handle' the [underlying] plaintiffs' claim for Emscor, Alliance could not have breached a duty."  *Id.* at 910.

Here, however, the Trustee does not base her claim on the insurers' failures to defend or agree to settlement, but rather on their bad faith refusals to pay Abuse Claims when a practical, common sense view of the Trust's liability for Abuse Claims demonstrates that the underlying coverage will be exhausted, and the excess insurers will be required to pay pursuant to their policies.  As alleged in the Complaint and stated in the Plan, dozens of other insurers, including those that issued excess policies, have recognized their coverage obligations and have resolved their liability for Abuse Claims.  Compl. ¶ 132; TrustApp619–21 (describing settlement agreements with settling insurers).  These insurers' failure to do so is in bad faith.

25

### D.     Declaratory Judgment

The Undersigned Defendants alone assert that the Trustee cannot state a claim for declaratory judgment because the Complaint fails to state claims for breach of contract and bad faith.  As an initial matter, the Undersigned Defendants' argument must be rejected because these claims can proceed, as discussed *supra*.  But even if the breach of contract and bad faith claims are dismissed, this has no bearing on the declaratory judgment claim.  The declaratory judgment claim seeks a determination as to whether coverage exists for the Abuse Claims channeled to the Trust under the Defendants' policies.  The breach of contract claim addresses whether the Defendants violated their policies by denying coverage, and the bad faith claim addresses whether they did so in bad faith.  The relief sought under each of these claims does not overlap, and there is no reason that the declaratory judgment claim must rise and fall with the other two.  *Cf. Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, LLC*, No. 3:04CV2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (dismissing claim for declaratory judgment regarding "whether the parties entered into enforceable contracts and, if so, whether defendants breached the contracts," as this would be resolved in the context of the breach of contract claim).

## III.    This Court Can Exercise Personal Jurisdiction over the PJ Moving Defendants

The PJ Moving Defendants'[14] contention that the Court lacks personal jurisdiction over them fares no better.  "A plaintiff need only make a *prima facie* case that personal jurisdiction exists when the court considers a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing or in the absence of jurisdictional discovery," considering "the contents of the record at the time of the motion, including affidavits."  *Innova*, 995 F. Supp. 2d at 615 (internal quotation marks omitted).

---

[14] The PJ Moving Defendants are those identified on page 25–26 n.15 of the UD Motion.

Even the information already known to the Trustee establishes that the Court has general jurisdiction or, in some cases, specific jurisdiction over each of the PJ Defendants.  And if the Court harbors any doubts about whether it has jurisdiction then it should, at the very least, grant the Trustee leave to conduct targeted jurisdictional discovery before dismissing her claims against these Defendants outright.

First, the evidence already known to the Trustee establishes that the Court has general jurisdiction over the PJ Moving Defendants.  To be subject to general jurisdiction, a defendant's contacts with the forum state need only be "'so continuous and systematic as to render them essentially at home'" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)).  The law does "not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," even if those are the paradigmatic and most "easily ascertainable" such locations.  *Bauman*, 571 U.S. at 137 (emphasis in original).  Rather, the standard considers the entirety of the corporation's "affiliations with the State."  *Id.* at 139 (internal quotation marks omitted).  Among the affiliations that courts consider for an insurance company is whether that company operates in the forum state, issues policies to citizens of the forum state, and has invoked and/or consented to jurisdiction in the forum state in other cases.  *See*, *e.g.*, *Farani v. File*, 565 F. Supp. 3d 804, 812 (S.D. Miss. 2021).  Simply put, a party cannot avail itself of jurisdiction only in cases in which that appears to be to the party's benefit, while disavowing jurisdiction in others.  *See id.* (finding defendant insurance company was subject to general jurisdiction in Mississippi because, *inter alia*, it filed suit and consented to jurisdiction in Mississippi federal court in prior cases).

The PJ Moving Defendants have extensive, continuous, and systematic contacts with Texas rendering them essentially at home here, and most of them have already invoked and/or consented to Texas courts' jurisdiction themselves.  They cannot now escape that same jurisdiction in this case.  The chart attached at TrustApp057–59 summarizes each of the 25 PJ Moving Defendants' most telling known contacts with Texas.

The chart establishes clearly that virtually all of the PJ Moving Defendants have made themselves at home in Texas when doing so appears to benefit them, whether by selling policies in Texas, selling policies to Texans, insuring persons and property in Texas, targeting Texas customers, entering into consent orders regulating their Texas conduct, suing in Texas courts themselves, or some combination thereof.  Accordingly, they are subject to general jurisdiction, including in this case.

Second, even if that were not true of any PJ Moving Defendant, each of them is also subject to specific jurisdiction.  To establish specific jurisdiction, the Trustee need only show that (1) each Defendant "has minimum contacts with the forum state, i.e., . . . it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there," and (2) she asserts a claim that "arises out of or results from the defendant's forum-related contacts." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).  Once that is established, "the burden shifts to the defendant to make a compelling case that the assertion of jurisdiction is not fair or reasonable."  *Id.* (internal quotation marks omitted).

The same facts that the Trustee contends subject each PJ Moving Defendant to general jurisdiction certainly at least establish each Defendant's "minimum contacts" with Texas.  Even if their acts did not make them "essentially at home" in Texas for jurisdictional purposes, they

certainly have purposely directed their activities toward Texas and availed themselves of the privileges of conducting business here by selling insurance policies to Texans, covering Texas persons and property, subject to Texas regulations on insurers, resulting in consent orders and litigation in Texas. *See* TrustApp057–59. No one forced any PJ Moving Defendant to do business in Texas, and having sought the benefits of that, it cannot now avoid the other consequences.

And this lawsuit arises out of the PJ Moving Defendants' contacts with Texas because it is brought by the Trustee, as the assignee of Texas-resident BSA, based on insurance policies to which BSA is a named insured. Defendants' argument to the contrary recasts the Trustee's claims into something they are not. Defendants—citing cases in which an insured driver who was not from Texas just happened to be in Texas when a car accident occurred—urge that no specific jurisdiction arises where a named insured simply happens to "travel[] to and incur[] covered costs in the forum state" under a policy that provides "worldwide coverage." UD Br. at 28–29. That is not this case at all. The most frequent named insured on the insurance policies in this case is BSA, which has been headquartered in Texas since 1978. So, this lawsuit arises out of insurance policies in which the named insured was a Texas resident for *45 years*, and of course, each of those policies has been renewed/reissued by the PJ Moving Defendants to BSA time and again throughout those decades. Moreover, the harm the Trustee seeks to redress is in Texas, with BSA, which is the organization that was forced to file its chapter 11 bankruptcy case in order to deal with all of the childhood sexual abuse claims that were asserted against it, and that resulted in the Abuse Claims being channeled to the Trust for resolution.

All of this establishes, at a minimum, that this Court has jurisdiction unless the PJ Moving Defendants "make a compelling case that the assertion of jurisdiction is not fair or reasonable," *Carmona*, 924 F.3d at 193 (internal quotation marks omitted). The UD Motion does not even

mention that standard, let alone attempt to satisfy it.  That is because they cannot satisfy it.  The PJ Moving Defendants have known for 45 years that these very Insurance Policies were issued to a named insured that resided in Texas, and they have been accepting premiums on the policies that entire time.  It is neither unfair nor unreasonable to require that they at least show up in court when a dispute over the policies arises.  *See*, *e.g.*, *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 20046134, at *7 (W.D. Tex. Jan. 26, 2022) (finding it neither unfair nor unreasonable to subject defendant to personal jurisdiction in Texas where he is licensed to and does sell insurance in Texas, to Texans).

Third, if the Court remains unconvinced that it has personal jurisdiction over any of the PJ Moving Defendants, it should grant the Trustee leave to conduct limited jurisdictional discovery, rather than dismissing the claims outright.   "[A] plaintiff should be permitted to conduct jurisdictional discovery if he has alleged with reasonable particularity the possible existence of the requisite contacts with the forum state."  *Embry v. Hibbard Inshore, LLC*, 803 F. App'x 746, 749 (5th Cir. 2020); *see also*, *e.g.*, *Air Vent Inc. v. Powermax Elec. Co. Ltd. Guangdong*, No. 3:21-CV-0229-X, 2023 WL 4987598, at *1 (N.D. Tex. May 17, 2023) (Starr, J.) (granting jurisdictional discovery where plaintiff met that standard).

The Trustee is on the outside looking in when it comes to the PJ Moving Defendants' contacts with and operations in Texas, including even those that are specific to this case.  For example, to identify the PJ Moving Defendants' general contacts with Texas, the Trustee is limited to running unwieldy searches on public search engines and databases like Google, PACER, and Westlaw.  None of those sources even offers a complete and comprehensive data set to search through.  Google only includes information that someone has made publicly available, in the form in which it was made publicly available, PACER only includes federal cases, and Westlaw does

not include the vast majority of state-court cases that did not result in an appeal.  Moreover, searching Google, PACER, and Westlaw is inefficient, costly, and inadequate to reveal all material information to an outsider like the Trustee.  For example, even in the cases that show up in PACER and Westlaw, it is virtually impossible to determine whether a PJ Moving Defendant who was named as a defendant in another Texas lawsuit consented to jurisdiction (as opposed to affirmatively invoking it by filing suit itself), except perhaps by trolling through every filing in every lawsuit.

That is a problem because, as previously discussed, such consent could subject a defendant to general jurisdiction.  The only—and certainly the most efficient—way to learn such material information is to obtain it directly from each PJ Moving Defendant, which should have both records and knowledge of its own litigation that would reveal the extent to which it has raised jurisdictional objections in Texas lawsuits.  The same is true of each PJ Moving Defendant's locations/agents in Texas, and policies issued to Texans.  The Trustee can only click through websites that might or might not provide the necessary information on locations/agents, and she has no real insight at all into the types and number of policies each PJ Moving Defendant issues to Texans.  Conversely, each PJ Moving Defendant has that information (and it is likely very easily collected and provided).

To that end, the Trustee respectfully requests leave to serve narrowly tailored jurisdictional discovery on any PJ Moving Defendant that the Court is not yet inclined to find subject to personal jurisdiction in Texas, consisting of interrogatories, requests for admission, and requests for production seeking the following information from each PJ Moving Defendant:

- Number and type of insurance policies issued in Texas since January 1, 2012;

31

- Number and type of insurance policies issued to Texans since January 1, 2012 (if different from the foregoing);

- All physical locations in Texas, including of agents and other affiliates;

- All consent and other disciplinary orders entered by Texas Department of Insurance naming the Defendant;

- All lawsuits in which each Defendant appeared in any Texas court (including state and federal), and documents sufficient to establish the assertion and resolution of any objection to personal jurisdiction over the Defendant therein;

- Documents and communications referencing both the Insurance Policies and the State of Texas, in the same document/communication;

- Documents and Communications discussing or referencing BSA's location in Texas; and

- All travel to and contacts with Texas relating to the Insurance Policies (e.g., travel to Texas to meet with and maintain BSA as a policyholder).

## IV. This Court Should Not Abstain from Exercising Jurisdiction over a Small Subset of Claims in This Action

The Undersigned Defendants argue that this Court should abstain from exercising jurisdiction over "a small subset of the Abuse Claims" in this action given the pending case with respect to this subset of claims in Illinois state court. UD Br. at 30. The Undersigned Defendants acknowledge, and the Trustee agrees, that *Colorado River* is the appropriate standard to apply in making this determination.[15] However, the Undersigned Defendants then state that "'exceptional circumstances' warrant abstention." *Id.* at 32 (citation omitted). On this point the Undersigned Defendants are wrong. It would make little sense for this Court to dismiss a few of the claims at issue in a comprehensive action in favor of the other claims, and this would also not be an

---

[15] Notably, this runs contrary to four other Defendants in this case, who wrongly argued in a different brief that a different standard under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) is the appropriate standard. *See* Nat'l Surety Insurers' and Allianz's Mot. to Dismiss on *Forum Non Conveniens* Grounds or Dismiss or Stay on Abstention Grounds, ECF No. 200.

appropriate use of the *Colorado River* doctrine.  And, even if this was an appropriate use of the *Colorado River* doctrine, the Undersigned Defendants do not meet the extremely high standard.

First, for *Colorado River* abstention to be considered, the cases must be "parallel" with respect to all claims against all defendants.  *Pulse Supply Chain Sols., Inc. v. Tagliamonte*, No. 3:21-CV-2706-B, 2022 WL 1457972, at *3 (N.D. Tex. May 9, 2022) ("[T]he Court finds that *Colorado River* abstention is not warranted because the cases are not parallel," as "at this point the state action will not necessarily resolve all claims against Defendants, individually").  This case (involving over 90 insurer Defendants, tens of thousands of underlying claims, thousands of insurer policies) is not parallel to the Illinois state court action (two insurer policies, 18 underlying claims, far fewer parties) with respect to any determinative metric.  So, the Undersigned Defendants invent a new standard, asking this Court to somehow apply *Colorado River* only with respect to "a small subset of Abuse Claims."  UD Br. at 30.  They cite no support for the novel proposition that this Court should somehow abstain from just a few of the claims at issue.  Because *Colorado River* cannot apply to the entire case, *Colorado River* does not apply to any of it, and the Undersigned Defendants lose on this ground alone.

And even if *Colorado River* did apply, the "extraordinary and narrow" doctrine for abstention—one where abstention is the "exception, not the rule"—is not met.[16]  *See Colorado River*, 424 U.S. at 813.  As the Undersigned Defendants note, the Supreme Court has outlined six factors that can be considered in determining whether a case is sufficiently "exceptional," noting that the "balance [is] heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).   The Trustee agrees with Defendants that the first factor—"assumption by either court of jurisdiction over a *res*"—is not

---

[16] This issue is dealt with extensively in the Trustee's Opposition to National Surety and Allianz's Motion to Dismiss.  *See* pages 19-23.  The Trustee hereby incorporates each of the arguments there.

met here and, thus, "weighs against abstention." UD Br. at 32. For the reasons discussed extensively in the Trustee's response to Allianz and National Surety's brief, and incorporated herein, the other factors are similarly not met here. In short summary:

- *Relative Inconvenience of the Forums*: Even if Illinois was "a more convenient forum," *see* UD Br. at 33, this is not enough, as the Undersigned Defendants have not shown, as they must, that "the inconvenience of the federal forum is so great that this factor points towards abstention." *See Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988).

- *Avoidance of Piecemeal Litigation*: Like their Allianz and National Surety counterparts, the Undersigned Defendants selectively quote the standard for the factor that seeks an "avoidance of piecemeal litigation." Because these cases do not deal with "a piece of property," this factor is not present here. *See Evanston Ins. Co.*, 844 F.2d at 1192.

- *The Order in Which Jurisdiction Was Obtained by the Concurrent Forums*: This requires a "pragmatic" and "flexible" approach. Here, jurisdiction over most of the parties was obtained first. *See Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 499 (5th Cir. 2002) (even though the state action was technically filed first, a party was added much later to that action, and certain issues arose in the federal forum first).

- *To What Extent Federal Law Provides the Rules of Decisions On the Merits*: The general rule is that "[t]he absence of a federal-law issue does not counsel in favor of abstention." *Evanston Ins. Co.*, 844 F.2d at 1193. This is because the strong default presumption is in favor of a federal court exercising jurisdiction and, thus, "the presence of state law issues weighs in favor of surrender only in rare circumstances." *Id.* (citation omitted). These rare circumstances are not present here.

- *The Adequacy of the State Proceedings*: This "can only be a 'neutral factor or one that weighs against, not for, abstention." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 739 (5th Cir. 1999).

## <u>CONCLUSION</u>

For the reasons set forth above, the Trustee respectfully requests that this Court deny the Motions in their entirety.

DATED:  November 2, 2023                 Respectfully submitted,

                                         _/s/ Jeffrey M. Tillotson_
                                         Jeffrey M. Tillotson
                                         State Bar No. 20039200
                                         jtillotson@tillotsonlaw.com
                                         **TILLOTSON JOHNSON & PATTON**
                                         1201 Main St., Suite 1300
                                         Dallas, TX 75202
                                         Telephone: (214) 382-3041
                                         Facsimile: (214) 295-6564

                                         Kami E. Quinn (admitted *pro hac vice*)
                                         Washington DC Bar No. 500295
                                         Quinnk@gilbertlegal.com
                                         W. Hunter Winstead (admitted *pro hac vice*)
                                         Washington DC Bar No. 496430
                                         winsteadh@gilbertlegal.com
                                         Emily P. Grim (admitted *pro hac vice*)
                                         Washington DC Bar No. 1006597
                                         grime@gilbertlegal.com
                                         Michael B. Rush (admitted *pro hac*)
                                         Washington DC Bar No. 496430
                                         rushm@gilbertlegal.com
                                         Sarah A. Sraders (admitted *pro hac*)
                                         Washington DC Bar No. 1049001
                                         Sraderss@gilbertlegal.com
                                         Rachel H. Jennings (admitted *pro hac vice*)
                                         Washington DC Bar No. 241370
                                         Jenningsr@gilbertlegal.com
                                         Brandon A. Levey (admitted *pro hac vice)*
                                         Washington DC Bar No. 888314549
                                         leveyb@gilbertlegal.com
                                         **GILBERT LLP**
                                         700 Pennsylvania Avenue, SE, Suite 400
                                         Washington, DC 20003
                                         Telephone:  (202) 772-2200
                                         Facsimile:  (202) 772-3333

                                         *ATTORNEYS FOR THE HONORABLE BARBARA J.
                                         HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF
                                         THE BSA SETTLEMENT TRUST*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing instrument was electronically served upon the attorneys of record of all parties to the above cause in accordance with the Texas Rules of Civil Procedure on this 2nd day of November 2023.

                */s/ Jeffrey M. Tillotson*
                Jeffrey M. Tillotson