## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.) IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, *et al.*,<br><br>    Defendants. | § § § § § § § § § § § § § | Civil Action No. 3:23-cv-01592-S |

**BRIEF IN SUPPORT OF MOTION BY DEFENDANTS GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, ARROWOOD INDEMNITY COMPANY, IN LIQUIDATION, AXIS SPECIALTY INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, EVEREST NATIONAL INSURANCE COMPANY, GENERAL STAR INDEMNITY COMPANY, SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION, AND LONDON MARKET INSURERS (WINTERTHUR SWISS AND LONDON & EDINBURGH) TO DISMISS FIRST AMENDED COMPLAINT**
<u>**PURSUANT TO FED. R. CIV. P. 12(B)(6)**</u>

Alexander E. Potente (admitted *pro hac vice*)
CLYDE & CO US LLP
150 California Street | 15th Floor
San Francisco, California 94111
T: (415) 365-9869
F: (415) 365-9801
Email: alex.potente@clydeco.us

Konrad R. Krebs (admitted *pro hac vice*)
CLYDE & CO US LLP
1515 Market Street | Suite 1200
Philadelphia, PA 19102
T: (973) 210-6705
F: (973) 210-6701
Email: konrad.krebs@clydeco.us

Mark D. Tillman
Lisa Henderson
Kimberly Steele
CLYDE & CO US LLP
5605 N. Macarthur Blvd, Ste 560
Irving, TX 75038
T: (214) 492-5720
Email: mark.tillman@clydeco.us
Email: lisa.henderson@clydeco.us
Email: kimberly.steele@clydeco.us

*Attorneys for Defendants Great American Assurance Company, Great American E & S Insurance Company, and Great American Insurance Company*

Michael T. Cooke
FRIEDMAN SUDER & COOKE
Tindall Square Warehouse #1
604 E 4th St., Suite 200
Fort Worth, TX 76102
Telephone: (817) 334-0400
Facsimile: (817)334-0401
mtc@fsclaw.com

*Attorneys for Defendant Arrowood Indemnity
Company, In Liquidation*

Kasi Gray Schuelke
PHELPS DUNBAR LLP
2102 E. State Highway 114, Suite 207
Southlake, Texas 76092
Telephone: (817) 305-0326
kasi.schuelke@phelps.com

Mark D. Plevin (*pro hac vice*)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (202) 580-6640
mplevin@plevinturner.com

Tacie H. Yoon (*pro hac vice*)
Jordan A. Hess (*pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
tyoon@plevinturner.com
jhess@plevinturner.com

*Attorneys for Defendant The Continental
Insurance Company*

Shannon M. O'Malley
somalley@zellelaw.com
ZELLE LLP
901 Main Street, Suite 4000

Kristin V. Gallagher (admitted *pro hac
vice*)
Kennedys CMK LLP
400 Connell Drive, Suite 700
Berkeley Heights, NJ 07922
T: (908) 848-6300
F: (908) 647-8390
kristin.gallagher@kennedyslaw.com

Daisy Khambatta
Kennedys CMK LLP
3821 Juniper Trace
Suite 101
Austin, TX 78738
T: (512) 687-1718
F: (512) 207-2110
daisy.khambatta@kennedyslaw.com

Jedidiah Vander Klok (admitted *pro hac
vice*)
Kennedys CMK LLP
1111 Brickell Avenue
Suite 1300
Miami, FL 33131
T: (305) 371-1111
F: (305) 374-8066
jedidiah.vanderklok@kennedyslaw.com

*Attorneys for Defendants Axis Specialty
Insurance Company and Axis Surplus
Insurance Company*

Jeremy T. Brown
KEATING BROWN PLLC
18383 Preston Rd., Ste. 300
Dallas, Texas 75252
Telephone: (214) 390-7701
jbrown@keatingbrown.com

Robert W. DiUbaldo (admitted *pro hac
vice*)
rdiubaldo@carltonfields.com
Christopher C. Ash (admitted *pro hac vice*)

Dallas, TX  75202-3975
Telephone:       214-742-3000
Facsimile:        214-760-8994

Gary P. Seligman (admitted *pro hac vice*)
Ashley L. Criss (admitted *pro hac vice*)
Wiley Rein LLP | 2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049
E-mail:  gseligman@wiley.law,
acriss@wiley.law

*Counsel for General Star Indemnity Company*

christopher.ash@carltonfields.com
Nora A. Valenza-Frost (admitted *pro hac vice*)
nvalenza-frost@carltonfields.com
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Fl.
New York, NY 10174
Telephone: (212) 785-2577

Gregory A. Gidus (admitted *pro hac vice*)
ggidus@carltonfields.com
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd. Ste. 1000
Tampa, FL 33607
Telephone: (813) 223-7000

*Attorneys for Defendant Everest National Insurance Company*

Joseph A Ziemianski
COZEN O'CONNOR
1221 McKinney
Suite 2900
Houston, TX 77010
Telephone: (832) 214-3900
Facsimile: (832) 214-3905
jziemianski@cozen.com
bvezey@cozen.com

*Attorneys for Defendants Endurance American Insurance Company and Endurance American Specialty Insurance Company*

W. Edward Carlton
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 880-1873
Facsimile: (214) 871-2111
ecarlton@qslwm.com

Catalina J. Sugayan (admitted *pro hac vice*)
Josh Halliday (admitted *pro hac vice*)
CLYDE & CO US LLP
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 635-7000

Facsimile: (312) 635-6950
catalina.sugayan@clydeco.us
josh.halliday@clydeco.us

*Counsel for Defendants Swiss Re
Corporate Solutions Capacity Insurance
Corporation (f/k/a, or otherwise
responsible for the liability of, First
Specialty Insurance Corporation),* and also
for *Defendants Tenecom Limited (f/k/a
Winterthur Swiss Ins. Co). and Catalina
Worthing Ins. Ltd (successor to London &
Edinburgh Gen. Ins. Co.)
(above counsel previously appeared for
Westport which, according to the First
Amended Complaint, is the Insurer for
policies allegedly issued by Manhattan
Fire & Marine Ins. Co. to Longhouse local
council in Cayuga County, NY from
January 1, 1959 to January 1, 1961 (the
"Manhattan Policies"). Continental Ins.
Co. assumed liability for the alleged
Manhattan Policies and counsel for
Continental is now representing the alleged
Manhattan Policies in this action)*

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ....................................................................................................... 2

II.    FACTUAL BACKGROUND .................................................................................... 3

    A.    The Great American Policies .......................................................................... 3

    B.    The Arrowood, Axis, Continental, Everest, General Star, Sompo, And Swiss Re, And London Market Insurers Policies ............................................................... 7

    C.    The BSA Bankruptcy ...................................................................................... 7

    D.    The Trustee's Deficient Allegations In The First Amended Complaint .......... 8

III.    LEGAL STANDARD ............................................................................................... 9

    A.    Legal Standard Under Fed. R. Civ. P. 12(b)(6) ............................................. 9

    B.    Legal Standard Under Fed. R. Civ. P. 12(b)(1) ............................................. 9

IV.    ARGUMENT .......................................................................................................... 10

    A.    The Trustee's Bad Faith Claims Against The Moving Excess Insurers Fail As A Matter Of Law ............................................................................................. 10

        1.    No Common Law Bad Faith Exists For Liability Insurance Claims ..............................11

        2.    No Common Law Bad Faith Exists For Excess Insurance Claims ................................ 15

        3.    No Violation Of Texas Insurance Code Chapter 541 Exists Here................................. 16

    B.    The Trustee Still Fails To State A Claim For Breach Of Contract ................ 19

        1.    The Trustee Fails To Plead Exhaustion ........................................................ 20

        2.    The Trustee Fails To Plead That Any Movant Breached Any Term Or Provision Of The Excess Policies ............................................................................................. 21

        3.    The Trustee Fails To Plead Damages Caused By Any Moving Excess Insurers' Alleged Breaches............................................................................................................. 24

        4.    The Trustee's Declaratory Judgment Cause Of Action Is Still Not Ripe ...................... 25

V.    CONCLUSION ....................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Physicians Ins. Exch. v. Garcia,*
  876 S.W.2d 842 (Tex. 1994) ............................................................................................. 11

*Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*,
  506 F.Supp.3d 425 (N.D. Tex. 2020) ................................................................................ 19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................... 9, 20, 24

*Baker v. Great Northern Energy, Inc.*,
  64 F.Supp.3d 965 (N.D. Tex. 2014) .................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 9

*Boucher v. Thacker*,
  609 S.W.3d 206 (Tex. App. 2020) ..................................................................................... 24

*In re Boy Scouts of America*,
  642 B.R. 504 (Bankr. D. Del. 2022) ......................................................................... 8, 14, 15

*In re Boy Scouts of America*,
  No. 20-10343-LSS (Bankr. D. Del. Sept. 6, 2022), Dkt. 10295-1 ..................................... 13

*In re Boy Scouts of America*,
  No. 20-10343-LSS, Dkt. 10295-1 ...................................................................................... 14

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3d Cir. 1997) .............................................................................................. 3

*City Nat'l Rochdale Fixed Income Opportunities (Ireland) Ltd. v. American*
  *General Life Ins. Co.*,
  2018 WL 4732431 (N.D. Tex. Sept. 13, 2018) ........................................................ 9, 20, 23

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................................... 3

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,
  130 S.W.3d 181 (Tex. App. 2003) ..................................................................................... 20

*Cornish v. Corr. Servs. Corp.*,
  402 F.3d 545 (5th Cir. 2005) ............................................................................................... 9

*In re Diocese of Rochester*
(Bankr. W.D.N.Y. Apr. 25, 2025), Dkt. 3079 ........................................................14

*Emp'rs Cas. Co. v. Block*,
744 S.W.2d 940 (Tex. 1988) ..........................................................................12

*Emscor Mfg., Inc. v. All. Ins. Group*,
879 S.W.2d 894 (Tex. App. 1994), *writ denied* (Feb. 2, 1995) ........................................15, 16

*In re Farmers Texas County Mut. Ins. Co.*,
621 S.W.3d 261 (Tex. 2021) ..........................................................................12

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
135 Cal.App.4th 958 (2006) ..........................................................................14

*G.A. Stowers Furniture Co. v. American Indem. Co.*,
15 S.W.2d 544 (Tex. Comm'n App. 1929).........................................2, 11, 12, 13, 15, 16, 17

*Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*,
152 S.W.3d 733 (Tex. App. 2004) ..........................................................................15

*United States ex rel. Grynberg Production Corp. v. Kinder Morgan CO2 Co., L.P.*,
491 F.Supp.3d 220 (N.D. Tex. 2020) ..........................................................................3

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011) ..........................................................................9, 21

*Hinojosa v. Livingston*,
807 F.3d 657 (5th Cir. 2015) ..........................................................................9, 20, 23

*Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*,
2019 WL 2357529 (N.D. Tex. June 4, 2019) ..........................................................22

*Innova Hospital San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*,
995 F.Supp.2d 587 (N.D. Tex. 2014) ..........................................................................21, 22, 23

*Ins. Co. v. Vasquez*,
192 S.W.3d 774 (Tex. 2006)..........................................................................18

*Jobe v. JPMorgan Chase Bank, National Association*,
2020 WL 5984369 (N.D. Tex. Sept. 18, 2020)..........................................................24

*Keck Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
20 S.W.3d 692 (Tex. 2000)..........................................................................15

*Kim v. Nationwide Mut. Ins. Co.*,
614 F.Supp.3d 475 (N.D. Tex. 2022) ..........................................................................22

iii

*MCG, Inc. v. Great Western Energy Corp.*,
    896 F.2d 170 (5th Cir. 1990) .....................................................................10

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*,
    795 F.Supp.2d 493 (N.D. Tex. 2011) ......................................................17

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
    236 S.W.3d 765 (Tex. 2007) ....................................................................11

*Miner Dederick Const., LLP v. Gulf Chemical & Metallurgical Corp.*,
    403 S.W.3d 451 (Tex App. 2013), *order withdrawn* (Jan. 30, 2015) .....................24

*Mitchell v. Money Source Inc.*,
    2020 WL 3239934 (N.D. Tex. May 21, 2020) ....................................9, 21

*Olinick v. Branch Banking and Trust Co.*,
    2017 WL 8161012 (W.D. Tex. May 30, 2017) .......................................24

*Poly-America, L.P. v. Stego Industries, L.L.C.*,
    694 F. Supp. 2d 600 (N.D. Tex. 2010) ...................................................10

*Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*,
    77 S.W.3d 253 (Tex. 2002) ......................................................................17

*Roman Catholic Diocese of Dallas v. Sebelius*,
    927 F. Supp. 2d 406 (N.D. Tex. 2013) ......................................................9

*Santander v. Salazar*,
    133 F.4th 471 (5th Cir. 2025) ....................................................................9

*Seger v. Yorkshire Ins. Co., Ltd.*,
    503 S.W.3d 388 (Tex. 2016) ...............................................................11, 12

*Snowden v. Wells Fargo Bank, N.A.*,
    2019 WL 587304 (N.D. Tex. Jan. 18, 2019) .........................................24

*State Farm Lloyds Ins. Co. v. Maldonado*,
    963 S.W.2d 38 (Tex. 1998) ......................................................................12

*Texas Farmers Ins. Co. v. Soriano*,
    881 S.W.2d 312 (Tex. 1994) ....................................................................11

*Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.*,
    620 S.W.3d 458 (Tex. App. 2021), *aff'd*, 659 S.W.3d 424 (Tex. 2023) ................19

*Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*,
    2023 WL 5945856 (N.D. Tex. Sept. 11, 2023).................................22, 23

*Transportation Management Services, Inc. v. Hiscox Ins. Co., Inc.*,
  716 F.Supp.3d 486 (W.D. Tex. 2024)......................................................................18

*In re USA Gymnastics*,
  No. 18-09108-RLM-11 (Bankr. S.D. Ind. Oct. 21, 2021), Dkt. 1641 .....................13

*USAA Texas Lloyds Company v. Menchaca*,
  545 S.W.3d 479 (Tex. 2018)..................................................................................18

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*,
  70 F.4th 285 (5th Cir. 2023) .................................................................................19

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ................................................................................10

**Statutes**

Insurance Code § 541.060(a)(2) ...............................................................................16, 17

Tex. Ins. Code Ch. 541, §§ 541.060(a)(2), (a)(3), (a)(4), (a)(7) ....................................17

Tex. Ins. Code Ch. 542 ..................................................................................................10

Tex. Ins. L. 3, 21 (2019) ...............................................................................................11

Texas Insurance Code Chapter 541 ..............................................................10, 16, 17, 19

Texas Insurance Code Section 541 ..................................................................................1

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) and 12(b)(6)..................................................................................9

Fed. R. Civ. P. 12(b)(1)..............................................................................................9, 10

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 3, 9, 24

Notice of Filing of Plan Supplement to Eighth Amended Joint Chapter 11................................13

*Texas Law and The Restatement of the Law of Liability Insurance: An Initial Comparison of Black Letter Principles*, 17................................................................11

Defendants Great American Assurance Company, Great American E&S Insurance Company and Great American Insurance Company (collectively, "Great American"), Arrowood Indemnity Company, In Liquidation, formerly known as Royal Insurance Company of America ("Arrowood"), Axis Specialty Insurance Company and Axis Surplus Insurance Company (collectively, "Axis"), The Continental Insurance Company, on its own behalf and as successor to Niagara Fire Insurance Company ("Continental"), Endurance American Specialty Company and Endurance American Insurance Company (collectively, "Sompo"), Everest National Insurance Company ("Everest"), General Star Indemnity Company ("General Star"), Swiss Re Corporate Solutions Capacity Insurance Corporation (formerly known as First Specialty Insurance Corporation or "FSIC"), and Tenecom Limited (f/k/a/ Winterthur Swiss Ins. Co.) and Catalina Worthing Ins. Ltd ("CWIL") (successor to London & Edinburgh Gen. Ins. Co.) (Tenecom Limited and CWIL are collectively "London Markert Insurers" or "LMI"), respectfully move to dismiss plaintiffs' first amended complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Great American, Arrowood, Axis, Continental, Everest, General Star, LMI, Sompo, and Swiss Re move for dismissal of the first amended complaint because the Trustee of the Boy Scouts of America Settlement Trust (the "Trustee") has failed to state a claim for breach of contract or breach of the covenant of good faith and fair dealing/bad faith.[1]

---

[1]  The first amended complaint asserts the following counts:
- Count 1 seeks Declaratory Judgment from all defendants
- Counts 2 through 33 allege Breach of Contract against, *inter alia*: Arrowood/Royal, Axis, Continental, Everest, General Star, Great American, the London Market Insurers, and Sompo (collectively the "Non-Paying Insurer Defendants").
- Count 34 asserts Bad Faith against the Non-Paying Insurer Defendants.
- Count 35 asserts Violation of Section 541 of the Texas Insurance Code against the Non-Paying Insurer Defendants.

# I.   **INTRODUCTION**

The Trustee has sued 83 insurers, including excess insurers Great American, Arrowood, Axis, Continental, Everest, General Star, LMI, Sompo, and Swiss Re (collectively the "movants" or the "moving excess insurers") for declaratory judgment, breach of contract and breach of the covenant of good faith and fair dealing/bad faith. The moving excess insurers issued excess insurance policies to the Boy Scouts of America ("BSA"). These excess policies all sit above other insurance policies issued to BSA. Coverage under the excess policies exists, if all policy terms and conditions are met, only after payment of claims or settlements exhausts the underlying insurance. Because the amended complaint contains no allegation that underlying exhaustion has occurred, the moving excess insurers have no present duty to defend, to pay defense expenses, or to pay indemnity on behalf of BSA.

Despite the fact that the moving excess insurers can have no obligation to defend or to pay claims until after the exhaustion of underlying insurance, the Trustee asserts incorrectly and without legal or factual basis that the moving excess insurers have breached their contracts and failed to defend BSA, lumping them indiscriminately together with primary insurance that may have a duty to defend BSA. The Trustee has not and cannot state claims for breach of contract against the moving excess insurers because their policies have not yet attached since the underlying insurance has not been exhausted. In addition, the Trustee has not and cannot state common law or statutory bad faith claims against the moving excess insurers because (1) the Trustee cannot establish the elements of *Stowers*, (2) the underlying insurers have not exhausted their policies, and (3) without a viable breach of contract claim, the Trustee's extracontractual claims fail. The Trustee's claim for declaratory relief is also not ripe against certain insures who have not received bills, meaning that the court lacks subject matter jurisdiction under Article III. The moving excess

insurers respectfully request that the Trustee's breach of contract, extracontractual, and declaratory judgment claims against them be dismissed under Fed. R. Civ. P. 12(b)(6).

## II.    FACTUAL BACKGROUND[2]

### A.  The Great American Policies

Great American issued policies of excess insurance to BSA in the 1990s and 2000s. The first block of Great American insurance included four policies, issued by predecessor company Agricultural Insurance Company, now Great American Assurance Company, covering annual policy periods from March 1, 1993, to March 1, 1997. [*See* Dkt. 516-2, Exh. B, p. 5 of 104.] These policies, nos. EXC794741400, EXC763634300, EXC878393200, and EXC8780969 (collectively, the "Great American 1993-97 policies"), are excess policies with aggregate limits of $12,000,000 that sit excess of $49,000,000 in underlying limits. True and correct copies of the Great American 1993-97 policies are attached hereto as Exhibit 1.[3] Each of the Great American 1993-97 policies contains substantially identical terms.

The second block of Great American insurance was one excess insurance policy issued by predecessor company Agricultural Excess and Surplus Insurance Company, now Great American E&S Insurance Company, renewed for five consecutive additional policy periods and covering annual policy periods from March 1, 2000, to March 1, 2006. [*See* Dkt. 516-2, Exh. B, p. 5 of 104.]

---

[2]  The moving excess insurers do not admit any of the Trustee's allegations by reciting them herein.

[3]  In reviewing a motion to dismiss under Rule 12(b)(6), the court may consider both the allegations of the complaint and documents upon which the claims are based. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also United States ex rel. Grynberg Production Corp. v. Kinder Morgan CO2 Co., L.P.*, 491 F.Supp.3d 220, 230 (N.D. Tex. 2020) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)) ("the Fifth Circuit allows district courts to consider documents attached to the motion to dismiss when those documents 'are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'").

This policy, no. ELD3211225, contains annual aggregate limits of $5,000,000 excess of $2,000,000 in underlying limits for the first two annual policy periods and excess of $4,000,000 for the remaining annual policy periods (the "Great American 2000-06 policy") (the Great American 1993-96 and 2000-06 policies are collectively referred to as the "Great American Policies"). A true and correct copy of the Great American 2000-06 policy is attached hereto as Exhibit 2. Each of the Great American 2000-06 policies contains substantially identical terms.

The Trustee also alleges that Great American's predecessor companies issued four insurance policies to two local councils of BSA. [*See* Dkt. 516-3, Exh. C, p. 14 of 67.] The Trustee identifies no policy number for three of the four alleged policies and pleads neither the material terms of these policies nor any grounds for concluding that these policies even exist.

The Trustee pleads no specific terms of any of the Great American Policies. The Trustee makes only general allegations regarding 3,178 insurance policies she contends were issued to BSA or local councils by many different insurers. But the Great American Policies contain several core provisions relevant to this motion to dismiss.

Each of the Great American Policies is an excess liability policy, providing coverage following form to underlying first-layer excess policies. A true and correct copy of the initial Insurance Company of North America ("INA") insurance policy to which the first Great American Policy follows form is attached as Exhibit 3.[4] Each Great American Policy provides excess liability coverage that applies only after the erosion of available underlying insurance. Each of the Great American 1993-97 policies provides:

> In consideration of the payment of premium, we agree to pay on your behalf loss excess of the Limits of Insurance shown in item 5(C) of the declarations. The coverages provided by this policy shall be the same as that provided by each policy

---

[4]   The underlying insurance to which the remaining Great American Policies follow form is substantially identical to the coverage provided under Exhibit 3 for the respective years.

4

described in Item 5 – Schedule of Underlying Policies.

*See* Exhibit 1, Appendix pp. A.4, A.21, A.40, A.57. Item 5(C) of the Great American 1993-97 policies' Declarations specifies that each of the policies is excess over $48,000,000 of underlying umbrella or excess liability insurance (that is, in turn, excess over $1,000,000 of primary insurance). Similarly, the Great American 2000-06 policy provides that it is an excess policy above certain other underlying insurance:

> The Company will pay on behalf of the Insured the ultimate net loss, in excess of the underlying limits stated in Items 3 and 5 of the Declarations, which the Insured shall be legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury caused by an occurrence during the policy period and arising out of hazards which are covered by and defined in the Underlying Insurance as stated in items 3 and 4 of the Declarations.

*See* Exhibit 2, App'x p. A.111.

Each policy provides "occurrence" based coverage, defined in the underlying insurance as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured." *See, e.g.,* Exhibit 3, App'x pp. A.122, A.128. Each policy provides coverage for "bodily injury" or "property damage" that "occurs during the policy period," subject to the other policy terms, conditions, limitations, and exclusions. *See* Exhibit 3, App'x pp. A.126 – A.127. The policies define "ultimate net loss" as "sum[s] actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of INA. . . ."[5] *Id.* at App'x p. 127.

The Trustee continues to allege that "the Great American Insurance Policies unambiguously require the Great American Group to defend or reimburse the insured for any

---

[5]    In certain years beginning in the 1996-97 policy period, the Great American Policies follow form to policies of insurance issued by Liberty Mutual, with substantially identical language to the INA policies.

defense costs incurred in connection with the Abuse Claims, and to indemnify the insured for any amounts the insured becomes legally obligated to pay for the Abuse Claims." [*See, e.g.,* Dkt. 516, pp. 74-75, ¶ 534.] But, in fact, each Great American Policy explicitly provides that it does <u>not</u> contain a duty to defend:

2.    Loss Adjustment

a.    <u>We shall not be required to assume charge of the settlement or defense of any claim, suit or proceeding against you</u>.

b.    We shall have the right and be given the opportunity to be associated with you or your underlying insurer, or both, in the handling of any claim, suit or proceeding involving an occurrence which in our opinion may create liability upon us for loss. Each party shall cooperate in all things in the handling of such claim, suit or proceeding.

*See* Exhibit 1, App'x pp. A.5, A.22, A.41, A.58 (emphasis added). Similarly, the Great American 2000-06 policy does <u>not</u> contain a duty to defend:

### III.    Investigation:, Defense:, Settlement

<u>The Company shall not be obligated to assume charge of the investigation, defense</u> or settlement of any claim or suit against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insurers, or both, in the investigation, defense or settlement of any claim or suit which, in the opinion of the Company, involves or appears reasonably likely to involve the Company. If the Company avails itself of such right and opportunity, the Insured, its insurers and the Company shall cooperate in such matters so as to effect a final determination thereof. The Insured or any underlying insurer shall not make or agree to any settlement for an amount in excess of the underlying insurance without written approval of the Company.

*See* Exhibit 2, App'x p. A.111 (emphasis added).

Each policy provides coverage only for "damages" awarded against BSA and for settlements entered into by BSA to which Great American consents. *See* Exhibit 3, App'x p. A.122; Exhibit 2, App'x p. A.111. The Great American 1993-97 policies also provide that the insurer will pay "[u]pon final determination of [its] liability":

6

Upon final determination of your liability, we shall promptly pay on your behalf the amount of any loss covered by this policy. We shall have the benefit of any recoveries applicable to losses paid under this policy. Loss expense and legal expense, including court costs and interest, incurred by you at our direction will be paid by us.

*See* Exhibit 1, App'x pp. 5, 22, 41, 58.

### B. The Arrowood, Axis, Continental, Everest, General Star, Sompo, Swiss Re, And London Market Insurers' Policies

Arrowood, Axis, Continental, Everest, General Star, Sompo, Swiss Re, and LMI similarly issued excess policies to BSA in the 1970s, 1980s, 1990s, 2000s, and 2010s. The policies issued by these insurers to BSA contain substantially similar terms as the Great American policy provisions above. An appendix with these insurers' policy provisions is attached as Exhibit 4 (App'x pp. A.150). True and correct copies of the Arrowood, Continental, Everest, General Star, Sompo, Swiss Re, and LMI policies are attached as Exhibits 5, 7, 8, 9, 10, 11, and 12, respectively (App'x pp. A.188, A.270, A.771, A.900, A.962, A.1516, and A.1773). A true and correct copy of a representative Axis policy is attached as Exhibit 6 (App'x p. A.225).

### C. The BSA Bankruptcy

In the face of lawsuits seeking damages for abuse, BSA filed for bankruptcy on February 18, 2020. [*See* Dkt. 516, p. 17, ¶ 101.] As part of the Plan confirmed by the bankruptcy court, abuse claims against BSA were "channeled" to the BSA Settlement Trust. [*See id.*, pp. 17-18, ¶ 104.] As part of this channeling injunction, the BSA Settlement Trust became the entity against which abuse claimants could bring their claims, while BSA and its local councils were protected from liability. [*Id.*, p. 18, ¶ 105.] The Plan also contains an insurance assignment, purportedly transferring to the BSA Settlement Trust rights under the BSA and local council insurance policies. [*See id.* pp. 18-19, ¶¶ 106, 107.]

7

### D.  The Trustee's Deficient Allegations In The First Amended Complaint

Without quoting any of the policy language, the Trustee alleges that "[t]he terms of the Great American Insurance Policies unambiguously require the Great American Group to defend or reimburse the insured for any defense costs incurred in connection with the Abuse Claims. . . ." [Dkt. 516, pp. 74-75, ¶ 534.] This is patently false. As set out above, the Great American Policies contain no present obligation to defend claims. The Trustee makes <u>no</u> allegation that Great American has ever failed to cover a verdict or settlement in favor of any particular claimant. There is no such allegation because it would be false. The Trustee improperly conflates Great American with 82 insurers and the moving excess insurer policies with more than 3,000 alleged insurance policies, ascribing the alleged conduct of some insurers to all of them. Likewise, the Trustee's declaratory judgment, breach of contract, and bad faith claims asserted against the remaining movants do not allege they have breached any specific policy provision with respect to any particular claim, or plead that underlying insurance is exhausted.

To address the insurers' previous arguments that the Trustee failed to allege that her claims were ripe, the Trustee now alleges that the Trust has issued bills to insurers "demanding payment of specific amounts for specifically identified individual Abuse Claims." [*Id.* at p. 31, ¶ 155.] The Trustee does not attach these bills, plead exhaustion of underlying insurance, or allege that these bills are final, not subject to revision, and have been actually paid by the Trustee. The Trustee does not address why the claims are covered or which of the thousands of alleged policies putatively apply. *Cf. In re Boy Scouts of America*, 642 B.R. 504, 561 (Bankr. D. Del. 2022). These bills are just pieces of paper the Trust has created, not judgments entered by a court or settlements entered into with insurer consent.

### III.    LEGAL STANDARD

#### A.  Legal Standard Under Fed. R. Civ. P. 12(b)(6)

In reviewing a Rule 12(b)(6) motion to dismiss, the court must determine "whether[,] in the light most favorable to the plaintiff and with every doubt resolved in [plaintiff's] behalf, the complaint states any valid claim for relief." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 548 (5th Cir. 2005). Although a court must accept the well-pled factual allegations in the pleadings as true, to state a valid claim for relief, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Santander*, 133 F.4th at 477. Nor do bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Mitchell v. Money Source Inc.*, 2020 WL 3239934, at *2 (N.D. Tex. May 21, 2020) (quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011)). Moreover, a "complaint that 'lumps together' multiple defendants' conduct fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 12(b)(6)." *City Nat'l Rochdale Fixed Income Opportunities (Ireland) Ltd. v. American General Life Ins. Co.*, 2018 WL 4732431, at *2 (N.D. Tex. Sept. 13, 2018) (citing *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015)), *report and recommendations adopted*, 2018 WL 4725249 (N.D. Tex. Sept. 30, 2018).

#### B.  Legal Standard Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) governs matters of justiciability, including the ripeness of the Trustee's declaratory judgment claims. *See Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d

406, 415 (N.D. Tex. 2013). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The court may rely on "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990); *see also Poly-America, L.P. v. Stego Industries, L.L.C.*, 694 F. Supp. 2d 600, 604 (N.D. Tex. 2010).

## IV.    ARGUMENT

### A.  The Trustee's Bad Faith Claims Against The Moving Excess Insurers Fail As A Matter Of Law

The Trustee brings two claims asserting breach of the implied covenant of good faith and fair dealing: (1) common law bad faith and (2) Texas Insurance Code Chapter 541.[6] Both counts fail.

Common law bad faith in Texas does not typically apply to liability policies or excess policies, and the Trustee cannot satisfy the sole exception. Furthermore, the Trust does not and cannot meet the requirements for claims arising under Texas Insurance Code Chapter 541, particularly as to extracontractual damages. As such, the Trustee fails to state a claim upon which relief can be granted on her common law bad faith and Insurance Code claims, and those claims should be dismissed without leave to amend.

---

[6]  The Trustee "reserves the right" to assert but brings no claim for violations of the Texas Prompt Payment of Claims Statute, Tex. Ins. Code Ch. 542. [*See* Dkt. 516, p. 102, ¶ 763.] Because the Trustee has expressly not brought claims under this statute, movants do not address this statute herein.

### 1. No Common Law Bad Faith Exists For Liability Insurance Claims

Texas recognizes no common law tort for bad faith premised on third-party liability insurance, except in the limited situation of a "*Stowers* claim." The Texas Supreme Court "has never recognized a cause of action for breach of the duty of good faith and fair dealing where the insurer fails to settle third-party claims against its insured." *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex. 1994) "*Stowers* is the only common law tort duty in the context of third party insurers responding to settlement demands." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007); *see also* Cyrus Haralson, *Texas Law and The Restatement of the Law of Liability Insurance: An Initial Comparison of Black Letter Principles*, 17 J. Tex. Ins. L. 3, 21 (2019) ("Texas does not recognize a common law tort of bad faith premised on third-party insurance, except in the limited situation in which an insurer fails to settle third-party claims against its insured (i.e., a so-called *Stowers* claim).").

The *Stowers* duty is an obligation to protect the insured by accepting a reasonable settlement offer made by a claimant within the policy limits. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929). "The *Stowers* duty is not activated by a settlement demand unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d at 776 (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)). "A demand above policy limits, even if reasonable, does not trigger the *Stowers* duty to settle." *Id.* "In a *Stowers* action, however, the burden is on the insured to prove coverage [for the claim that was subject to the demand within limits]." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 396 (Tex. 2016) (citing *State Farm Lloyds Ins. Co. v. Maldonado*,

11

963 S.W.2d 38, 41 (Tex. 1998)). "A *Stowers* plaintiff cannot recover under a *Stowers* cause of action without first satisfying the precondition of establishing each element of coverage." *Seger*, 503 S.W.3d at 401; *see also Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988) ("An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy.").

In a *Stowers* claim, the insured must also show that "the insurer's negligent failure to settle results in an <u>excess judgment against the insured</u>," making the insurer liable for the entire amount of the judgment. *In re Farmers Texas County Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021) (emphasis in the original). *In re Farmers Texas County Mut. Ins. Co.* is instructive. There, an insured was sued for allegedly causing an auto accident. *Id.* at 265. The insured had $500,000 in available policy limits. *Id.* Before trial, the plaintiff demanded $350,000. *Id.* The insurer offered $250,000, and the insured agreed to fund the $100,000 difference. *Id.* The insured then sought to bring a *Stowers* claim for the $100,000. *Id.* On review, the Texas Supreme Court affirmed the dismissal of the policyholder's *Stowers* claim, holding, "[w]e decline to extend *Stowers* to cases in which there is no liability in excess of policy limits." *Id.* at 267.

Here, the first amended complaint satisfies none of the elements of a *Stowers* claim for common law bad faith. The Trustee does not plead that any claim is within the scope of coverage of the policies issued by the moving excess insurers or has reached movants' coverage layer. The Trustee merely alleges that the thousands of alleged insurance policies cover abuse claims. But she does not allege the facts needed to plead coverage for any individual claim. [*See* Dkt. 516, p. 20, ¶ 111.]

The movants' policies are excess policies. They require exhaustion of underlying insurance and self-insured retentions before coverage can be available, and only then if all other policy terms

12

and conditions are met. The Trustee does not, and cannot, plead exhaustion of underlying insurance by payment of settlements or judgments. Similarly, the Trustee has vaguely pled that the thousands of alleged policies require an undefined event must happen during or before an applicable policy period to implicate coverage, but the Trustee still alleges no individual claim satisfying that coverage requirement.

The Trustee has also not alleged any settlement demand within policy limits from any claimant. Instead, the Trustee merely pleads that she has issued "proposed awards" under the Trust Distribution Procedures ("TDPs") for many claims. "Proposed awards" are not settlement demands, either from the perspective of the claimants or the Trust. Under the TDPs, claimants are not bound to TDP awards. Instead, after receiving a TDP proposed award from the Trust, claimants are free to seek reconsideration of TDP awards or pursue their claims in the tort system. *See repose* Fifth Amended Chapter 11 Plan of Reorganization with Technical Modifications, at Ex. A, pp. 13 (reconsideration), 25 (discussing tort system option), *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Sept. 6, 2022), Dkt. 10295-1. Further, the Trustee does not allege the proposed TDP awards are final (and in fact, the Trustee has reserved the right to amend the award information she has provided to insurers). [*See, e.g.,* Dkt. 516, p. 29, ¶¶ 144-45 (describing awards as "proposed award[s]" and award calculations as "draft calculation[s]").] None of these "proposed awards" satisfies the requirements for a *Stowers* claim for a demand within limits.[7]

---

[7]  While the TDP awards are denominated in dollars, the role of the TDP is to distribute Trust assets to compensate claimants in proportion to available assets. Thus, while this particular Trust has denominated the award ratio in "dollars," other Trusts commonly use "points" to establish this ratio to avoid confusion about what the award process is designed to do. *See, e.g.,* Third Amended Joint Chapter 11 Plan of Reorganization, at Ex. H. pp. 2-6, *In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Oct. 21, 2021), Dkt. 1641 (using a point system to establish what each claimant is entitled to receive from trust distribution); Notice of Filing of Plan Supplement to Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester, No. 2-19-20905-PRW, Ex. 1, *In re Diocese of Rochester* (Bankr.

The Trustee also does not allege that any individual TDP award involves a "settlement demand that would be accepted by a reasonably prudent insurer." The Trustee alleges no facts about any claim or award supporting its reasonableness. To the contrary, the TDP awards include non-compensable claims, such as claims in states in which the statute of limitations bars recovery. *See* Plan, Ex. A, p. 36 (allowing payment of claims in states where statute of limitations or repose is "closed"), *In re Boy Scouts of America,* No. 20-10343-LSS, Dkt. 10295-1. The Trustee does not allege how she has handled awards for thousands of non-compensable claims, such as claims barred by applicable statutes of limitation, how she has sought coverage for such claims, whether claims are already resolved by settled insurance, or how she has implemented the fraud prevention procedures required by the Bankruptcy Court to eliminate fraudulent claims. *See In re Boy Scouts of America*, 642 B.R. 504, 561, 644 (Bankr. D. Del. 2022) (discussing settled insurance funds and fraud prevention).

Finally, the Trustee has not pled that any abuse claim resulted in excess liability for the Trust above the limits of any of movants' policies or the Trust's available coverage, causing the Trust exposure above the underlying limits. For many policies and claims, the Trustee cannot plead such liability even with respect to any individual policy. For example, the Great American 1993-97 policies have limits of $12,000,000 in excess of $49,000,000. Based upon a maximum TDP

---

W.D.N.Y. Apr. 25, 2025), Dkt. 3079 (same); *see generally Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal.App.4th 958 (2006) (discussing coverage for bankruptcy trust awards). Moving Excess Insurers do not concede that any TDP award amount reflects a dollar valuation. Indeed, the Trustee's aggregate award amounts fly in the face of what BSA relied upon for confirmation of its Plan. *Compare In re Boy Scouts of America*, 642 B.R. 504, 537, 560 (Bankr. D. Del. 2022) (discussing value of claim awards being between $2.4 billion and $7.1 billion as necessary for confirmation), *and id.* at 560 (discussing valuation of allocated abuse claims to non-settled insurance of between $321,319,886 and $400,546,854, versus the value of non-settled insurance rights of over $4.2 billion), *with* Dkt. 516, p. 31, ¶ 155 (value of claims billed to insurers through quarter two of over $12 billion).

award of $2,700,000, no claim under the TDP may exceed the limits of those policies, or many other of the thousands of alleged policies at issue. *See id.* at 543 (discussing maximum TDP award of $2,700,000). Without such excess liability for any claim, the Trustee cannot maintain a *Stowers* claim against any of the moving excess insurers.

The Trustee thus fails to plead any of the elements of a *Stowers* claim. As such, the Trustee fails to state a claim for common law bad faith liability, and her claim for bad faith against movants must be dismissed without leave to amend.

### 2. No Common Law Bad Faith Exists For Excess Insurance Claims

The Trustee's claim for common law bad faith against moving excess insurers must also be dismissed because there can be no claim for bad faith against an insurer issuing an excess policy unless underlying coverage has been exhausted, which is not alleged and has not occurred. Under Texas law, when excess coverage has not been triggered, an excess insurer cannot be liable for bad faith. *See Emscor Mfg., Inc. v. All. Ins. Group*, 879 S.W.2d 894, 909-10 (Tex. App. 1994), *writ denied* (Feb. 2, 1995)) ("No Texas court has applied the duty of good faith and fair dealing to an excess insurer."); *Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 738 (Tex. App. 2004) (same). Even if an excess insurer voluntarily investigates the claim or participates in negotiations, it owes no duty to settle until the underlying carrier has tendered its limits. *Keck Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 701 (Tex. 2000) ("An excess insurer owes its insured a duty to accept reasonable settlements, but that duty is also not typically invoked until the primary insurer has tendered its policy limits.").

*Emscor* was an excess coverage dispute that arose out of an underlying crane accident lawsuit. *Emscor*, 879 S.W.2d at 896-97. The insured purchased a $500,000 primary general liability insurance policy and a $500,000 excess insurance policy over that primary policy. *Id.* Following the crane accident, the primary insurer was placed into a receivership. The insured filed

a declaratory judgment action against the excess insurer, seeking a judgment that the excess insurer was required to "drop down" and replace the primary coverage. *Id.* Following the excess insurer's refusal to drop down, the insured settled all claims for $8,000,000. *See id.* at 898. The excess insurer refused to pay anything until the primary limits had been paid. *See id.* at 899. The insured sued the excess insurer for breach of the insurance policy, bad faith, and related causes of action.

In its opinion, the Texas Court of Appeals held, "[t]here is simply no authority in this State establishing a cause of action by an insured against its <u>excess</u> insurer for negligence, bad faith, or for unfair and deceptive practices in the handling of a claim brought by a third-party." *Id.* at 909 (emphasis in original). The court held the excess insurer had no duty to defend the insured under the terms of the excess policy or at law and never undertook those responsibilities on its own. *See id.* Because the excess insurer had "no duty to 'handle' the [underlying] plaintiffs' claim for [the Insured], [the excess insurer] could not have breached a duty and [the insured] therefore had no cause of action [for bad faith] to assign to the [underlying] plaintiffs." *Id.* at 910.

Here, the Trustee has not pled – and cannot plead – a bad faith claim against the moving excess insurers. The Trustee has not pled that the policies underlying the movants' policies have been exhausted by payment of claims or tendering of underlying limits. As such, there can be no bad faith against the moving excess insurers. This Court should also dismiss the bad faith claim against movants without leave to amend.

### 3. No Violation Of Texas Insurance Code Chapter 541 Exists Here

The Trustee's claim for violation of Insurance Code § 541.060(a)(2) must be dismissed because the Supreme Court of Texas has applied the same *Stowers* standard to claims under § 541.060(a)(2). "An insurer faces [liability under § 541.060(a)(2)(A)] if it does not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear." *Mid-Continent Cas. Co. v. Eland Energy, Inc.,* 795 F.Supp.2d 493, 527

(N.D. Tex. 2011) (quoting *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260 (Tex. 2002) (citation modified). In *Rocor*, the Supreme Court of Texas stated that "[t]here is nothing to indicate that the Legislature had in mind any standard other than the familiar *Stowers* standard" in promulgating § 541.060(a)(2). *Rocor*, 77 S.W.3d at 260. The court held that "*Stowers* provides an appropriate framework for understanding and applying the statutory standard." *Id.* at 261. "*Rocor* held that, for an insurer's duty under § 541.060(a)(2)(A) to be activated, the claimant must make a settlement demand within policy limits with terms that an ordinarily prudent insurer would accept." *Eland Energy, Inc.,* 795 F.Supp.2d at 527 (citing *Rocor,* 77 S.W.3d at 262). As set forth above, the Trustee fails to plead that a settlement demand has been made within policy limits by any of the claimants. For this reason alone, her Section 541.606(a)(2)(A) claims must fail.

In addition, the Trustee's claims for violations of Section 541.606 *et seq.* must be dismissed because she pleads no extracontractual damages. Chapter 541, Section 541.060 sets forth various actions that may be found to be "unfair settlement practices." The Trustee has raised the following provisions of the code in her first amended complaint: (1) "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear;" (2) "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of claim or offer of a compromise settlement of a claim;" (3) "failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder;" and (4) "refusing to pay a claim without conducting a reasonable investigation with respect to the claim[.]" Tex. Ins. Code Ch. 541, §§ 541.060(a)(2), (a)(3), (a)(4), (a)(7).

The Texas Insurance Code "only allows an insured to recover actual damages 'caused by' an insurer's statutory violation." *Transportation Management Services, Inc. v. Hiscox Ins. Co., Inc.*, 716 F.Supp.3d 486, 492 (W.D. Tex. 2024) (citing *Min. life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006)), *rev'd on other grounds*, 2025 WL 33479, at *2 (5th Cir. Jan. 6, 2025) (requiring leave to amend); *see also* Tex. Ins. Code § 541.151. To state such a claim, damages must be a result of an "independent-injury" from the insurer's liability for benefits under the insurance policy. *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018).

Here, the Trustee has failed plead violation of the Texas Insurance Code because she pleads no independent injury or damages resulting from the alleged violation. With respect to insurers issuing thousands of alleged policies, the Trustee generally alleges that she "has presented evidence to the Non-Paying Insurer Defendants that the policies provide coverage[,]" that the Trustee "has provided notice and demanded payment for Abuse Claims that are payable under certain of the Insurance Policies[,]" and that the insurers have "failed to effectuate prompt, fair, and equitable settlements and pay claims billed to them. . . for which the Trust is legally obligated to pay." [*See* Dkt. 516, pp. 98-99, ¶¶ 745-47.] In support of these general allegations regarding thousands of claims and policies, the Trustee asserts only that she has provided the Non-Paying Insurer Defendants with "significant information about the Trust's determination and valuation of each and every Abuse Claim . . . [including] an award calculation breakdown, which identifies the Matrix Tier to which an Abuse Claim was assigned and an explanation of all aggravating and mitigating factors that were applied[.]" [*Id.* at p. 99, ¶ 749.] The Trustee fails to specify any damages "caused by" any nonpayment of claims, instead generally alleging the Trust has suffered "monetary damages" without any specificity. [*Id.* at p. 75, ¶ 540.]

The Trustee's generalized pleading as to dozens of insurers and thousands of claims and

policies fails to state a violation of the Texas Insurance Code. While the Trustee's amendments break out individual counts against movants, the Trustee continues to treat the Non-Paying Insurer Defendants as a monolith. Just as important, the Trustee fails to allege with any specificity any damages the Trust has sustained as a result of the movants' conduct (beyond general contract damages). This is insufficient.

Indeed, the Trust can never state a claim for damages beyond contract damages. The Trust is an entity established by a reorganization plan solely to pay claims. The Trust's only functions to pay channeled claims and to manage funds and policies assigned to it by BSA. It pleads no damages to the Trust independent of the failure to pay benefits due under the policy. *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F.Supp.3d 425, 433 (N.D. Tex. 2020) (dismissing claim for bad faith brought by physicians' association on behalf of patients treated because association failed to allege any independent injury from defendants' alleged failure to pay). Because bad faith claims are "personal and punitive in nature," the Trustee's claim for violation of the Texas Insurance Code Chapter 541 should be dismissed without leave to amend. *Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 620 S.W.3d 458, 469 (Tex. App. 2021), *aff'd*, 659 S.W.3d 424 (Tex. 2023) ("Several Texas intermediate courts of appeals, including this Court, have concluded Chapter 541 provides remedies that are personal and punitive in nature.")

### B.  The Trustee Still Fails To State A Claim For Breach Of Contract

The Trustee also fails to adequately plead a breach of contract cause of action under its excess insurance policies. Under Texas law, the elements of a breach of contract claim are (1) existence of a valid contract; (2) performance or tender of performance by the plaintiff; (3) breach of the contract terms by the defendants; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 294 (5th Cir. 2023). To plead a viable claim for breach of contract, "a plaintiff suing for breach of contract must point

to a specific provision in the contract that was breached by the defendant." *Baker v. Great Northern Energy, Inc.*, 64 F.Supp.3d 965, 971 (N.D. Tex. 2014). The plaintiff must also establish the amount of damages resulting from the breach. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App. 2003). The Trustee here does neither.

### 1. The Trustee Fails To Plead Exhaustion

There are several conditions precedent that must be satisfied for coverage to be available under the Great American Policies. For example, the underlying insurance must be exhausted or eroded by payment of claims to the point that the Great American Policies are triggered. *See* Exhibit 1, App'x pp. A.4, A.21, A.40, A.57; Exhibit 2, App'x p. A.111. The other movants' policies contain substantially similar requirements. *See* Exhibit 4. Coverage is unavailable under the moving excess insurer policies unless and until all available insurance underlying those policies is exhausted. *See* Exhibit 1, App'x pp. A.4, A.21, A.40, A.57; Exhibit 2, App'x p. 111; Exhibit 4 App'x p. A.150, A.179.

Nowhere in the first amended complaint does the Trustee plead that all available coverage underlying the excess policies is eroded or exhausted, or even that any claims that might someday be tendered to the movants will reach their coverage layer. She states at paragraph 130 that the Trust has paid $246,299,463 to 31,603 survivors of sexual abuse in scouting. [Dkt. 516, p. 24, ¶ 130.] There is no allegation that any of the abuse for a specific claim that has been paid occurred during the movants' policy periods, or in what amount.

The Trustee makes little effort to plead that the losses in moving excess insurers' policy periods exceed underlying limits. Instead, she alleges that the abuse claims "trigger" all 83 insurers' "policy periods, subject only to any applicable attachment points[.]" [Dkt. 516, p. 21, ¶ 115.] Such conclusory allegations fail to meet the standard for pleading in federal district courts. *See Iqbal*, 556 U.S. at 678; *City Nat'l Rochdale Fixed Income Opportunities (Ireland) Ltd.,* 2018

WL 4732431, at *2 (citing *Hinojosa*, 807 F.3d at 684) (prohibiting complaints that lump together the conduct of multiple defendants); *Money Source Inc.*, 2020 WL 3239934, at * 2 (quoting *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"). Therefore, the Trustee has failed to plead satisfaction of the exhaustion condition precedent for coverage, and the Trustee's first amended complaint fails to state a claim for breach of contract.

### 2. The Trustee Fails To Plead That Any Movant Breached Any Term Or Provision Of The Excess Policies

The Trustee's breach of contract claim also fails because she pleads no breach of any insurance policy by any of the moving excess insurers. In *Innova Hospital San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*, 995 F.Supp.2d 587 (N.D. Tex. 2014), medical services providers sued a medical insurance plan administrator, alleging underpayment or non-payment of reimbursement amounts pursuant to the terms of various health benefit plans administered by defendants. *Id.* at 596. The plaintiffs attached a claim schedule to their complaint providing information about the claims being asserted. *Id.* at 597. The plaintiffs asserted that the defendants breached certain health plans by failing to pay the reimbursement rate "required by the contracts." *Id.* at 602. The defendant insurers moved to dismiss because the complaint was conclusory, failed to identify the plan terms, and therefore failed to state a claim. *Id.*

The *Innova* court held that pleading a general breach of unspecified plan terms regarding reimbursement was insufficient to state a claim. The court held, "[p]laintiffs do not identify what provisions were breached or provide factual allegations about the terms of the plans. Plaintiffs' claim is based on their conclusion that [insurer defendants] failed to pay the reimbursement rate 'required by the contracts' or the 'contractually agreed upon amounts,' but the [p]laintiffs do not allege what rates were required or contractually agreed upon by the parties." *Id.* at 603. The court

held that a "claim schedule" attachment did not contain any factual allegations about the terms of the insurance plans or the provisions allegedly breached by the insurers. *Id.* at 604. The court further held, "[p]laintiffs' allegations that they did not receive the reimbursements owed under the plans and their general conclusion that 'the acts and omissions on part of [the insurer defendants] noted hereinabove constitute breaches of contract' are not sufficient to state a claim for relief." *Id.* The *Innova* court concluded that the complaint did not contain sufficient allegations of breach of any contract by the defendants and dismissed the complaint. *Id; see also Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc*., 2023 WL 5945856, at *6 (N.D. Tex. Sept. 11, 2023) ("plaintiff must identify a specific contractual provision that the defendant allegedly breached to survive a 12(b)(6) motion to dismiss"); *Kim v. Nationwide Mut. Ins. Co.*, 614 F.Supp.3d 475, 493 (N.D. Tex. 2022) ("the court cannot conclude from the allegations contained in Kim's original state-court petition that the contract was even breached"); *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 2019 WL 2357529, at *4 (N.D. Tex. June 4, 2019) ("Instead of citing a specific provision allegedly breached by Elta, Aroma Star levied broad and general claims of breach of contract").

The Trustee here has similarly failed to plead breach of any specific contractual provision by Great American or the other movants. She merely pleads the existence of thousands of insurance policies identified in two charts attached to the first amended complaint, which she asserts are required to provide insurance coverage for abuse. She alleges, without any specificity, that all these policies "unambiguously require the [movants] to defend or reimburse the insured for any defense costs incurred in connection with the Abuse Claims, and to indemnify the insured[.]"  [Dkt. 516, pp. 74-75, ¶ 534.] The Trustee does not allege that Great American or the other movants have breached any particular policy provision. Instead, she baldly claims that Great American "has

failed and refuses to pay money due and owing to the Trust[,]" which she asserts "is a breach of the Great American Insurance Policies to which the Trust has demanded payment." [Dkt. 516, p. 75, ¶¶ 537-38.] She makes identical allegations as to other movants. [*See id.* ¶¶ 285-86 (Arrowood), 321-22 (Axis), 357-58 (CNA), 393-94 (Endurance), 465-66 (Everest), 519-20 (General Star).] Simply stating that a defendant has breached a contract without specifying how or providing supporting facts does not establish a cause of action. "Although the court must accept well-pleaded facts as true and view them in the light most favorable to [plaintiff], these are the exact type of statements that are 'no more than conclusions' and, therefore, 'not entitled to the assumption of truth.'" *Thomas Mushroom*, 2023 WL 5945856, at *8.

Under these circumstances, the Trustee has failed to plead a breach of contract by the movants. The plain language of the moving excess insurer policies disclaims or limits any defense obligation and demonstrates excess insurers have no coverage obligations until underlying insurance exhausts, which the Trustee has not sufficiently pled as to any particular abuse claim or claims. The movants cannot breach a duty to defend that they do not have. Similarly, the movants cannot have breached the duty to indemnify given that the underlying insurance has not been exhausted. Like in *Innova Hospital*, the Trustee fails to plead any specific moving excess insurer policy provision(s) at issue, when such alleged policy obligation was triggered, how the movants were obligated to perform, and what the movants did or did not do that allegedly failed to meet their performance obligations.

The Trustee lumps the movants' contractual obligations in with the obligations of dozens of other defendants and characterizes thousands of alleged insurance policies in just a few sentences. Such pleading does not meet the standards under the Federal Rules. *See City Nat'l Rochdale Fixed Income Opportunities (Ireland) Ltd.*, 2018 WL 4732431, at *2 (citing *Hinojosa*,

23

807 F.3d 657, 684 (5th Cir. 2015)). The Trustee has pleaded no breach of contract by the movants, and her breach of contract count fails to state a claim and should be dismissed.

### 3. The Trustee Fails To Plead Damages Caused By Any Moving Excess Insurers' Alleged Breaches

The Trustee also does not plead any damages caused by any movant's alleged contract breach. Under Texas law, "[d]amages sustained because of a breach is an essential element of a breach of contract claim." *Boucher v. Thacker*, 609 S.W.3d 206, 224 (Tex. App. 2020) (citations omitted); *see also Miner Dederick Const., LLP v. Gulf Chemical & Metallurgical Corp.*, 403 S.W.3d 451, 463 (Tex App. 2013), *order withdrawn* (Jan. 30, 2015). Failure to plead damages is grounds for dismissal under Rule 12(b)(6). *Jobe v. JPMorgan Chase Bank, National Association*, 2020 WL 5984369, at *3 (N.D. Tex. Sept. 18, 2020), *report and recommendation adopted*, 2020 WL 5981999 (N.D. Tex. Oct. 7, 2020); *Snowden v. Wells Fargo Bank, N.A.*, 2019 WL 587304, at *6 (N.D. Tex. Jan. 18, 2019), *report and recommendation adopted*, 2019 WL 586005 (N.D. Tex. Feb. 12, 2019); *Olinick v. Branch Banking and Trust Co.*, 2017 WL 8161012, at *2 (W.D. Tex. May 30, 2017).

Here, the Trustee does not plead that she has sustained damage caused by any of the movants' alleged conduct. She merely pleads that "[a]s a direct and proximate result of the Great American Group's breaches of the Great American Insurance Policies, the Trust has suffered or will suffer substantial monetary damages[.]" [Dkt. 516, p. 75, ¶ 540.] The Trustee fails to specify what damages Great American allegedly caused. Likewise, the Trustee has not pled the other movants have breached any specific provision of its policies for any specific abuse claim, and failed to plead with particularity the damages caused by any such alleged breach. Such conclusory pleading, repeated as to each of the moving excess insurers, fails to satisfy the requirements to plead facts to plausibly state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678.

**4. The Trustee's Declaratory Judgment Cause Of Action Is Still Not Ripe Against Insurers Who Have Not Received Bills**

The Trustee seeks "a declaration that Defendants. . . *will* breach the Insurance Policies by refusing to provide coverage[.]" [Dkt No. 516, p. 4, ¶ 3 (emphasis added).] The Trustee's declaratory judgment cause of action is not ripe because, even by the Trustee's own account, certain movants have not yet breached any policy.[8] Some insurers have not even received bills from the Trust. Even if those movants' policies may at some point provide coverage, they do not do so now. No ripe controversy exists, and thus, Trustee's claim for declaratory relief should also be dismissed as to those movants.

## V.    CONCLUSION

The Trustee fails to state a claim for breach of contract or bad faith against all movants, and the Trustee's claims for declaratory relief are not fully ripe. Great American, Arrowood, Axis, Continental, Everest, General Star, London Market Insurers, Sompo, and Swiss Re respectfully request that her first amended complaint claims for bad faith and breach of contract be dismissed without leave to amend. Certain movants also ask that the Trustee's claims for declaratory relief be dismissed.

Dated: October 2, 2025                                        Respectfully submitted,

**CLYDE & CO US LLP**                                        **KENNEDYS CMK LLP**

By:  /s/ Mark Tillman_____          By:  /s/ Kristin V. Gallagher_____

    Mark D. Tillman                                        Kristin V. Gallagher (admitted *pro hac*
    Texas Bar No.: 794742                                *vice*)
    Lisa Henderson                                        New Jersey Bar No. 029601995
    Texas Bar No.: 24025423                        Kennedys CMK LLP
    Kimberly Steele                                        400 Connell Drive, Suite 700

---

[8] Axis, CNA, Everest, General Star, Great American, and LMI have received the Trustee's bills for proposed awards.  Those insurers do not contest the ripeness of the instant dispute as to them.

Texas Bar No.: 04127600
5605 N. Macarthur Blvd, Ste 560
Irving, TX 75038
T: (214) 540-7539
F: (214) 540-7540
Email: mark.tillman@clydeco.us
Email: lisa.henderson@clydeco.us
Email: kimberly.steele@clydeco.us

Alexander E. Potente
(admitted *pro hac vice*)
California Bar No. 208240
150 California Street | 15th Floor
San Francisco, California 94111
T: (415) 365-9869
F: (415) 365-9801
Email: alex.potente@clydeco.us

Konrad R. Krebs
(admitted *pro hac vice*)
Pennsylvania Bar No. 319253
1515 Market Street | Suite 1200
Philadelphia, PA 19102
T: (973) 210-6705
F: (973) 210-6701
Email: konrad.krebs@clydeco.us

*Attorneys for Defendants Great American
Assurance Company, Great American
E & S Insurance Company, and Great
American Insurance Company*

**PHELPS DUNBAR LLP and
PLEVIN & TURNER LLP**

By: */s/ Kasi Gray Schuelke*
    Kasi Gray Schuelke
    Texas Bar No. 24098915
    PHELPS DUNBAR LLP
    2102 E. State Highway 114, Suite 207
    Southlake, Texas 76092
    Telephone: (817) 305-0326
    kasi.schuelke@phelps.com

    Mark D. Plevin (pro hac vice)
    California Bar No. 146278

Berkeley Heights, NJ 07922
T: (908) 848-6300
F: (908) 647-8390
kristin.gallagher@kennedyslaw.com

Daisy Khambatta
Texas State Bar No. 24029654
Kennedys CMK LLP
3821 Juniper Trace
Suite 101
Austin, TX 78738
T: (512) 687-1718
F: (312) 207-2110
daisy.khambatta@kennedyslaw.com

Jedidiah Vander Klok (admitted *pro hac
vice*)
Florida Bar No. 0084766
Kennedys CMK LLP
1111 Brickell Avenue
Suite 1300
Miami, FL 33131
T: (305) 371-1111
F: (305) 374-8066
jedidiah.vanderklok@kennedyslaw.com

*Attorneys for AXIS Specialty Insurance
Company and AXIS Surplus Insurance
Company*

**KEATING BROWN PLLC**

By: */s/ Jeremy T. Brown*
    Jeremy T. Brown
    Texas Bar No. 24055221
    18383 Preston Rd., Ste. 300
    Dallas, Texas 75252
    Telephone: (214) 390-7701
    jbrown@keatingbrown.com

    -and-

    Robert W. DiUbaldo (admitted *pro hac
    vice*)
    rdiubaldo@carltonfields.com
    Christopher C. Ash (admitted pro hac vice)

26

PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (202) 580-6640
mplevin@plevinturner.com

Tacie H. Yoon (pro hac vice)
D.C. Bar No. 417100
Jordan A. Hess (pro hac vice)
D.C. Bar No. 1781895
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
tyoon@plevinturner.com
jhess@plevinturner.com

*Attorneys for Defendant The Continental Insurance Company*

**COZEN O'CONNOR**

By: ___/s/ Joseph A. Ziemianski_____
Joseph A. Ziemianski
Texas State Bar No. 00797732
Bryan P. Vezey
Texas State Bar No. 00788583
811 Main Street
Suite 2000
Houston, TX 77002
Telephone: (832) 214-3900
Facsimile: (832) 214-3905
jziemianski@cozen.com
bvezey@cozen.com

Alicia G. Curran
Texas State Bar No. 12587500
1717 Main Street, Suite 3100
Dallas, Texas 75201-7335
Telephone: (214) 462-3000
Telecopier: (214) 462-3299
acurran@cozen.com

*Attorneys for Defendants Endurance American Insurance Company and*

christopher.ash@carltonfields.com
Nora A. Valenza-Frost (admitted *pro hac vice*)
nvalenza-frost@carltonfields.com
CARLTON FIELDS, P.A.
405 Lexington Avenue, 36th Fl.
New York, NY 10174
Telephone: (212) 785-2577

Gregory A. Gidus (admitted *pro hac vice*)
Florida Bar No. 105930
ggidus@carltonfields.com
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd. Ste. 1000
Tampa, FL 33607
Telephone: (813) 223-7000

*Attorneys for Everest National Insurance Company*

**QUILLING SELANDER LOWNDS, WINSLETT & MOSER, P.C.**

By: */s/ W. Edward Carlton*
W. Edward Carlton
Texas Bar No. 03820050
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 880-1873
Facsimile: (214) 871-2111
ecarlton@qslwm.com

-and-

Catalina J. Sugayan (admitted *pro hac vice*)
Illinois Bar No. 6191764
Josh Halliday (admitted *pro hac vice*)
Illinois Bar No. 6347650
CLYDE & CO LLP
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 635-7000
Facsimile: (312) 635-6950
catalina.sugayan@clydeco.us
josh.halliday@clydeco.us

27

*Endurance American Specialty Insurance Company*

**ZELLE LLP**

By: ____/s/ Shannon M. O'Malley_____
    Shannon M. O'Malley
    Texas Bar No. 24037200
    somalley@zellelaw.com
    901 Main Street, Suite 4000
    Dallas, TX 75202-3975
    Telephone: 214-742-3000
    Facsimile: 214-760-8994

    *And*

    Gary P. Seligman (admitted *pro hac vice*)
    D.C. Bar No. 468046
    Ashley L. Criss (admitted *pro hac vice*)
    D.C. Bar No. 1048326
    Wiley Rein LLP
    2050 M Street NW
    Washington, DC 20036
    Phone: (202) 719-7000
    Fax: (202) 719-7049
    E-mail: gseligman@wiley.law,
    acriss@wiley.law

    *Counsel for General Star Indemnity Company*

**FRIEDMAN SUDER & COOKE**

By: ___/s/ Michael T. Cooke_____
    Michael T. Cooke
    Texas Bar No. 04759650
    FRIEDMAN SUDER & COOKE
    604 East 4th Street, Suite 200
    Fort Worth, Texas 76102
    Telephone: (817) 334-0400
    Facsimile: (817) 334-0401
    mtc@fsclaw.com

    Lorraine M. Armenti (pro hac vice)
    New Jersey State Bar No. 015321982

*Counsel for Defendants Swiss Re Corporate Solutions Capacity Insurance Corporation (f/k/a, or otherwise responsible for the liability of, First Specialty Insurance Corporation),* and also for *Defendants Tenecom Limited (f/k/a Winterthur Swiss Ins. Co). and Catalina Worthing Ins. Ltd (successor to London & Edinburgh Gen. Ins. Co.) (above counsel previously appeared for Westport which, according to the First Amended Complaint, is the Insurer for policies allegedly issued by Manhattan Fire & Marine Ins. Co. to Longhouse local council in Cayuga County, NY from January 1, 1959 to January 1, 1961 (the "Manhattan Policies"). Continental Ins. Co. assumed liability for the alleged Manhattan Policies and counsel for Continental is now representing the alleged Manhattan Policies in this action)*

28

Michael E. Hrinewski (pro hac vice
pending)
New Jersey Bar No. 025732008
COUGHLIN MIDLIGE & GARLAND
LLP
350 Mount Kemble Ave.
Morristown, New Jersey 07962
Telephone: (973) 631-6044
Facsimile: (973) 267-6442
mhrinewski@cmg.law
larmenti@cmg.law

Noah M. Wiesner (pro hac vice)
New York Bar No. 5836424
COUGHLIN MIDLIGE & GARLAND
LLP
88 Pine Street, 28th Floor
Wall Street Plaza
New York, New York 10005
Telephone: (212) 612-4996
Facsimile: (212) 480.3899
nwiesner@cmg.law

*Counsel for Arrowood Indemnity
Company, In Liquidation*

## CERTIFICATE OF SERVICE

I certify that on October 2, 2025, a true and correct copy of the foregoing was served electronically upon all counsel of record via the CM/ECF.

*/s/ Lisa M. Henderson*
Lisa M. Henderson

29