UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, <br><br>                         Plaintiff, <br><br> v. <br><br> ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, *et al.*, <br><br>                         Defendants. | Civ. Action No. 3:23-cv-01592-S |

## **MEMORANDUM IN SUPPORT OF UNDERSIGNED DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................7

    A.    BSA, the Local Councils, and the Chartered Organizations....................................7

    B.    Pre-Bankruptcy Abuse Claims and the Illinois Action............................................7

    C.    BSA's Chapter 11 Proceedings and Plan of Reorganization ...................................8

    D.    The Trust Distribution Procedures ........................................................................10

    E.    Challenge to the Plan's Treatment of Non-Settling Insurers ................................11

    F.    The Instant Action.................................................................................................13

    G.    The Trust's Operations and Billing Reports .........................................................13

    H.    The Amended Complaint .......................................................................................14

ARGUMENT .........................................................................................................17

I.    The Amended Complaint Fails to State Cognizable Causes of Action for Breach of Contract (Counts Two through Thirty-Three). ..............................................................17

II.    The Amended Complaint Fails to State a Claim for Common Law Bad Faith or Violation of the Texas Insurance Code...............................................................................20

    A.    The Amended Complaint Fails to State a Cause of Action for Common Law Bad Faith (Count Thirty-Four). ...................................................................21

    B.    The Amended Complaint Fails to State a Claim Under the Texas Insurance Code (Count Thirty-Five). .................................................................23

III.    The Court Lacks Personal Jurisdiction Over the PJ Moving Defendants for Claims Made Under Non-Texas Policies ........................................................................................26

    A.    The Court Lacks General Jurisdiction Over the PJ Moving Defendants..............27

    B.    The Court Lacks Specific Jurisdiction Over the PJ Moving Defendants to Adjudicate Claims Under Non-Texas Policies. ....................................................29

    C.    The Court Should Deny the Trust's Request for Jurisdictional Discovery ..........31

IV.    The Illinois Claims Should Be Dismissed in Favor of the Illinois Action. ......................32

A.    This Action and the Illinois Action Are Parallel Proceedings With Respect to the Illinois Claims. ..............................................................................33

B.    Exceptional Circumstances Warrant Abstention. ...................................................33

CONCLUSION .....................................................................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abood Grp., Inc. v. Hartford Underwriters Ins. Co.*,
   No. 3:23-CV-01838-K., 2024 WL 4378437 (N.D. Tex. June 10, 2024)..........................24, 26

*In re Base Holdings, LLC*,
   No. 3:13-CV-1584, 2014 WL 895403 (N.D. Tex. Mar. 5, 2014)..............................................7

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017).................................................................................................................28

*In re Boy Scouts of Am.*,
   137 F.4th 126 (3d Cir. 2025) ............................................................................... *passim*

*In re Boy Scouts of Am.*,
   642 B.R. 504 (Bankr. D. Del. 2022) ........................................................................3, 4, 10, 14

*In re Boy Scouts of Am.*,
   650 B.R. 87 (D. Del. 2023)......................................................................................3, 4, 10, 11

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal, S.F. Cnty.*,
   582 U.S. 255 (2017).................................................................................................................30

*Byrd Aviation, Inc. v. Glob. Aerospace, Inc.*,
   No. 3:19-CV-01661-G, 2020 WL 291583 (N.D. Tex. Jan. 17, 2020)....................................29

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*,
   615 F.3d 364 (5th Cir. 2010) .................................................................................................29

*Colony Ins. Co. v. Adsil, Inc.*,
   No. 4:16-CV-408, 2018 WL 2562555 (S.D. Tex. June 4, 2018)............................................17

*Cycles, Ltd. v. W.J. Digby, Inc.*,
   889 F.2d 612 (5th Cir. 1989) .................................................................................................27

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................................................27

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
   948 F.3d 289 (5th Cir. 2020) .................................................................................................29

*Eagle Oil & Gas Co. v. Travelers Prop. & Cas. Co. of Am.*,
   No. 7:12-cv-00133-O, 2014 WL 3406686 (N.D. Tex. July 14, 2014) ...................................22

*In re Farmers Tex. Cnty. Mut. Ins. Co.*,
    621 S.W.3d 261 (Tex. 2021)................................................................21

*Flores v. Wells Fargo Bank, N.A.*,
    No. M-09-225, 2009 WL 10693450 (S.D. Tex. Oct. 30, 2009) ............................35

*Getagadget, L.L.C. v. Jet Creations Inc.*,
    No. 19-51019, 2022 WL 964204 (5th Cir. Mar. 30, 2022).....................................31

*Howley v. Bankers Standard Ins. Co.*,
    No. 20-10940, 2022 WL 576403 (5th Cir. Feb. 25, 2022) ...........................2, 17, 18

*Howley v. Bankers Standard Ins. Co.*,
    No. 3:19-cv-2477, 2020 WL 4731968 (N.D. Tex. Aug. 14, 2020) ........................17

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*,
    995 F. Supp. 2d 587 (N.D. Tex. 2014) ...............................................................20

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ...............................................................................31

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ............................................................................2, 7

*Kim v. Nationwide Mut. Ins. Co.*,
    614 F. Supp. 3d 475 (N.D. Tex. 2022) ..........................................................18, 19

*Kucel v. Walter E. Heller & Co.*,
    813 F.2d 67 (5th Cir. 1987) ................................................................................17

*LAC Real Est. Holdings, LLC v. Biloxi Marsh Lands Corp.*,
    320 F. App'x 267 (5th Cir. 2009) .......................................................................33

*Lowe v. Connect Inv. Corp.*,
    No. 1:20-CV-174-LY, 2020 WL 10355788 (W.D. Tex. Sept. 25, 2020)...............30

*Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*,
    No. 20-40571, 2021 WL 4269565 (5th Cir. Sept. 20, 2021) ...........................22, 23

*MaxRelief USA, Inc. v. O'Maley*,
    No. 3:21-CV-00579-N, 2021 WL 5742331 (N.D. Tex. Dec. 2, 2021)..............31, 32

*Microsource, Inc. v. Superior Signs, Inc.*,
    No. CIV.A.3:97-CV-2733-G, 1998 WL 119537 (N.D. Tex. Mar. 9, 1998)...........35

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*,
    709 F.3d 515 (5th Cir. 2013) ..............................................................................21

*Mid-Continent Cas. Co. v. Eland Energy, Inc.*,
    795 F. Supp. 2d 493 (N.D. Tex. 2011) ..........................................................21, 24

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
    236 S.W.3d 765 (Tex. 2007).............................................................................21

*MidTexas Int'l Ctr., Inc. v. Myronowicz*,
    No. 3:05-CV-1957-R, 2006 WL 2285581 (N.D. Tex. Aug. 9, 2006)..................34

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) .......................................................................27, 32

*Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*,
    No. 4:17-CV-3164, 2018 WL 8755785 (S.D. Tex. Jan. 25, 2018).....................23

*Murphy Indus., Inc. v. Essex Ins. Co.*,
    No. 4:16-CV-03618, 2017 WL 5127220 (S.D. Tex. Sept. 20, 2017)..............21, 23

*My Fabric Designs, Inc. v. F+W Media, Inc.*,
    No. 3:17-CV-2112-L, 2018 WL 1138436 (N.D. Tex. Mar. 2, 2018)...................27

*Nat'l Cas. Co. v. KT2 LLC*,
    No. 3:19-cv-1926-E, 2020 WL 5544152 (N.D. Tex. Sept. 16, 2020) ..............29, 30

*Nat'l Sur. Corp. v. Houser*,
    No. 1-24-2138, 2025 WL 893485 (Ill. App. Ct. Mar. 24, 2025) .......................8, 33

*Nationstar Mortg. LLC v. Knox*,
    351 F. App'x 844 (5th Cir. 2009) ................................................................34, 35

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    911 F.2d 993 (5th Cir. 1990) ...........................................................................34

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
    No. 3:15-CV-01121-M, 2016 WL 1069675 (N.D. Tex. Mar. 16, 2016)..............27

*Pogo Res., LLC v. St. Paul Fire and Marine Ins. Co.*,
    No. 3:19-CV-2682-BH, 2021 WL 1923301 (N.D. Tex. May 13, 2021) ..............22

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...........................................................................18

*Ramirez v. Allstate Vehicle and Prop. Ins. Co.*,
    No. 7:21-cv-00149, 2021 WL 7708319 (S.D. Tex. May 26, 2021)..................23, 25

*Reddy v. Chubb Lloyds Ins. Co. of Tex.*,
    No. 4:23-CV-02818, 2024 WL 5274522 (S.D. Tex. Mar. 26, 2024) ...................18

*Reneker v. Offill*,
    No. 3:08-CV-1394-D, 2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) .....................................7

*Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ...........................................................................................28

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ....................................................................................29, 30

*Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*,
    No. 3:21-CV-1783-G, 2023 WL 5945856 (N.D. Tex. Sept. 11, 2023) ...........................17, 20

*Torson v. Hyundai Oilbank Co.*,
    No. 22-20065, 2022 WL 4103263 (5th Cir. Sept. 7, 2022) ....................................................28

*Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*,
    313 F. Supp. 2d 648 (N.D. Tex. 2004) ...................................................................................21

*Walker Centrifuge Servs. L.L.C. v. D & D Power, L.L.C.*,
    550 F. Supp. 2d 620 (N.D. Tex. 2008) ..................................................................33, 34, 35

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1351 n.30 .....................30, 31

The undersigned Defendants respectfully submit this memorandum in support of their partial motion to dismiss the Amended Complaint ("**Compl**.") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and Local Rules 7.2 and 56.5, and on the basis of *Colorado River* abstention.

## <u>PRELIMINARY STATEMENT</u>

In this action, the Trustee of a Settlement Trust ("**Trust**") established in the Chapter 11 reorganization of Boy Scouts of America ("**BSA**") seeks liability insurance coverage for tens of thousands of claims "arising from sexual or other abuse in BSA's Scouting programs" ("**Abuse Claims**") from over 80 insurers under more than 2,000 insurance policies allegedly issued over seven decades to BSA and non-debtor "Local Councils" in all 50 states and beyond.  While the undersigned Defendants will not challenge the Trust's efforts to seek the Court's assistance in declaring the rights and obligations of the parties under the Declaratory Judgment Act, the Trust's claims for breach of contract and bad faith are unsustainable and entirely misplaced, and they must be dismissed.

In its original complaint, the Trust claimed all Defendants had breached their insurance contracts and acted in bad faith—even before the Trust had made a single demand for payment to a single insurer, much less a concrete claim for coverage with a reasoned explanation.  In that original complaint, the Trust lumped all its claims together, asserting them *en masse* against all Defendants, without providing any claim-specific or Defendant-specific allegations to support them.  Many of the undersigned Defendants moved to dismiss that complaint as both unripe and fatally flawed.

At the August 28, 2025 status conference, the Court ordered the Trust to amend its complaint, exhorted it to provide its "best" amended complaint, Aug. 28, 2025 Conference Tr. 49:4-7, and denied the pending motions as moot.  Notwithstanding the Court's exhortation, the

Amended Complaint suffers from the same fatal flaws as the original complaint: the Trust cannot sustain breach of contract or bad faith claims because (i) the demands for coverage the Trust has made are, by its own admission, in flux and subject to change, and (ii) the Amended Complaint still does not contain any allegations regarding its basis for seeking coverage under any specific policy for any specific claim against any specific Defendant.

The Amended Complaint states that the Trust's breach of contract and bad faith claims now are based on "bills" the Trust has issued to some Defendants for billions of dollars of Abuse Claims that it has accepted through the claim award procedures established under BSA's plan of reorganization ("**Plan**"). It alleges without more that the bills "demand[] payment of specific amounts for specifically identified individual Abuse Claims." Compl. ¶ 155. However, the billing reports[1] contain a disclaimer reserving the Trust's "right" to alter them, and for certain defendants the Trust already has made changes to its billing reports. *See* MTD App. Ex. 2.[2] In pursuit of its efforts to "maximize" its assets, Compl. ¶ 108, the Trust has carefully guarded the flexibility to continue to alter its demands. The Trust cannot both insist that its demands for insurance recoveries are changeable at will, and at the same time assert that the Defendants have breached their contracts for each of the tens of thousands of the Trust's claims by not immediately paying them, much less assert that not paying immediately amounts to bad faith.

Nor can the Trust sustain its breach of contract and bad faith claims without setting forth the facts that support them with specific claims under specific policies. *See Howley v. Bankers Standard Ins. Co.*, No. 20-10940, 2022 WL 576403, at *3 (5th Cir. Feb. 25, 2022). The Amended

---

[1] Because the Trust's bills are referenced in the Amended Complaint and central to the Trust's claims, the Court can consider them even when deciding the Defendants' arguments for dismissal under Rule 12(b)(6). *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).
[2] Citations in the form "MTD App. Ex. [ ] at [ ]" refer to the Exhibits in the Appendix filed contemporaneously with and in support of this Motion to Dismiss (the "**MTD Appendix**").

Complaint lumps thousands of policies together, describing their purported terms in a single paragraph. It then proclaims that the Defendants collectively have no defenses to the Trust's claims for insurance coverage, and because none of the Defendants have agreed to pay the billions of dollars the Trust has "billed" them, concludes that they all have breached their insuring agreements and acted in bad faith. This mass pleading cannot sustain breach of contract or bad faith claims against scores of insurers under thousands of policies for tens of thousands of claims, and if permitted to proceed, would produce a cacophony of inchoate and un-triable claims.

Furthermore, the key premises underlying the Trust's allegations of collective liability—that the Defendants have no coverage defenses and that all the Trust need do is send them bills to create a valid coverage claim—are incorrect. It is simply wrong that the Defendants have no defenses to the Trust's claims for coverage of awards for Abuse Claims issued under BSA's Plan. To the contrary, the Plan expressly provides that Defendants may "raise any valid Insurance Coverage Defense in response to a demand by the [Trust]." Plan, Art. V.N at 202. Every court that ruled on the Plan, from the Bankruptcy Court to the District Court to the Third Circuit, affirmed that the Plan preserved the insurers' contractual rights and coverage defenses. *See In re Boy Scouts of Am.*, 137 F.4th 126, 165 (3d Cir. 2025); *In re Boy Scouts of Am.*, 650 B.R. 87, 145 (D. Del. 2023); *In re Boy Scouts of Am.*, 642 B.R. 504, 668-669 (Bankr. D. Del. 2022).

It is also incorrect that the award amounts for which the Trust has "billed" certain of the Defendants reflect by default the insurable value of those claims. During the bankruptcy, the tort claimants' lawyers who drafted the Plan asked the Bankruptcy Court to include an express finding that values set out in the Plan's Trust Distribution Procedures ("**TDPs**") represented "fair and equitable [S]ettlement of Abuse Claims." The Bankruptcy Court flatly "declin[ed] to do so." *In re Boy Scouts of Am.*, 642 B.R. at 629. Here again, each of the three courts that ruled on the Plan

-3-

made clear that the awards for Abuse Claims allowed by the Trustee do not necessarily correlate to the value of the claims for insurance purposes. *Id.* at 650; *In re Boy Scouts of Am.*, 650 B.R. 87 at 105, 180; *In re Boy Scouts of Am.*, 137 F.4th at 164-66.

This is not a theoretical concern. The Bankruptcy Court record demonstrates that the awards the Trust is issuing for Abuse Claims are grossly inflated. BSA represented to the Bankruptcy Court that the total estimated value of what were then 82,000 abuse claims filed in the bankruptcy case, if calculated under the TDPs, would most likely be $2.4 billion to $3.6 billion, with an outside maximum of $7.1 billion, and on the basis of that estimate, the Plan was confirmed. *See In re Boy Scouts of Am.*, 650 B.R. 87 at 118. Yet according to the Amended Complaint, "[t]he total value of the claims billed to the insurers to date (through Q2 2025) is $12,348,332,122." Compl. ¶ 155. Moreover, the total value of all awards for Abuse Claims as of August 10, 2025 was $20,571,754,218. *See* ECF No. 509-3 ¶ 9. These aggregate amounts are already many multiples of the values the Plan proponents told the Bankruptcy Court the TDPs would generate, with tens of thousands of claims still left to be processed.

The above failings are fatal to the breach of contract and bad faith claims, and the bad faith claims fail on additional grounds as well. In sum, except in narrow circumstances not relevant here, Texas law does not recognize a common law claim of bad faith for third-party insurance claims, and the Trust has not alleged any damages attributable to the purported bad faith that would justify a recovery sounding in tort.

The many deficiencies in the Trust's breach of contract and bad faith claims reflect the reality that those claims simply are not appropriately pled under the circumstances of this case. Depending on the resolution of many coverage disputes that the Amended Complaint fails to present in any justiciable form, the Trust's claims for coverage will necessarily change. By way

of example, the Trust seems to assert that an insurance policy issued in 1990 can provide coverage for abuse that occurred in 1965, *cf.* Compl. ¶ 163 (d), (e), and that it can "bill" the insurer who issued that 1990 policy under the assumption that its position is correct. But if the Trust's assumption is incorrect, the Trust would change the way it seeks insurance coverage for that 1965 claim, looking for coverage under a different policy likely issued by a different insurer.

By way of a second example, the Amended Complaint notes that there are disputes about the existence and terms of certain insurance policies. *See* Compl. ¶ 160. If the Trust issues a "bill" under a disputed policy for a given claim, and the Trust's assumptions about the existence or terms of that policy turn out to be incorrect, the Trust likely will change the way it seeks insurance coverage for that claim.

Multiply these two discrete examples by tens of thousands of Abuse Claims, thousands of policies, and untold different coverage questions, and the incongruity of the Trust's breach of contract claims crystalizes. Defendants submit that the way to address the coverage disputes presented by this case is not through misplaced accusations of contractual breach and bad faith, but through structured declaratory relief.

Unfortunately, the claim for declaratory relief in Court One falls flat in this regard. The Trust, in preparing its best Amended Complaint as this Court directed, could have pled its claim for declaratory relief to better identify the coverage issues in dispute and the specific claims and policies that are affected by those issues. For example, it could have attached or referred to specific insurance policies and cited to specific policy language in them that it claims supports its coverage positions. It did not do that. Instead, Paragraph 162 of the Amended Complaint in six lines demands a declaration of coverage for every single claim the Trust has made under every single policy. That is not a cognizable claim for relief, and as pled, Count One is deeply flawed and

nonjusticiable.  Nonetheless, the undersigned Defendants do not challenge Count One, and urge instead that the Trust, and all parties, be required to identify the key coverage issues in dispute as the case proceeds so that they can be addressed in a thoughtful, efficient way.

Two more discrete issues remain related to the Court's jurisdiction.  First, one collateral consequence of the Trust's group pleading approach is that the Amended Complaint reaches beyond the jurisdiction of this Court, requiring dismissal in part for lack of personal jurisdiction. This Court lacks personal jurisdiction to adjudicate insurance claims arising out of policies issued to entities outside of Texas by the 26 moving Defendants that issued such non-Texas policies ("**PJ Moving Defendants**").  No PJ Moving Defendant is incorporated or has its principal place of business in Texas, and therefore, the Court lacks general personal jurisdiction over them.  There is no specific jurisdiction over such claims either, because, by definition, the Trust's claims under non-Texas Polices against the PJ Moving Defendants arise out of policies that were issued to insureds located outside of Texas.  While the Amended Complaint asserts in sweeping, boilerplate fashion that Defendants have engaged in conduct that touches Texas—for example, by "insuring persons and property in Texas," "targeting Texas consumers," and "suing in Texas Courts"—these allegations are irrelevant to assessing specific jurisdiction, because the Trust's claims under non-Texas Policies do not "arise out of" them.

Second, a small subset of the claims the Trustee attempts to bring here is already subject to a proceeding in Illinois that has been ongoing for over five years.  That Illinois action was filed in Cook County by a Defendant insurer against BSA and a Chicago-based Local Council concerning BSA's pre-bankruptcy settlement of multiple abuse claims related to a single perpetrator.  It was stayed by BSA's bankruptcy, but now has resumed in Illinois.  Under the doctrine of *Colorado River* abstention, those Illinois claims should be dismissed from this lawsuit

and allowed to proceed in Illinois.

## BACKGROUND[3]

### A.     BSA, the Local Councils, and the Chartered Organizations

Boy Scouts of America ("**BSA**") is a nonprofit corporation founded in 1910 and chartered by an act of Congress on June 15, 1916.  Compl. ¶ 98.  The Trust alleges that "BSA's national headquarters has been located in Irving, Texas since 1978."  *Id.*  Defendants understand that from 1954 to 1978, BSA's headquarters were located in New Jersey.[4]  *See* MTD App. Ex. 3 at 029-030.  BSA carries out its Scouting programs through charters granted to local councils in areas across the United States ("**Local Councils**").  Compl. ¶ 99.  These Local Councils recruit and oversee local organizations, including faith-based institutions ("**Chartered Organizations**"), which, together with BSA and the Local Councils, administer BSA's Scouting programs.  *Id.*

### B.     Pre-Bankruptcy Abuse Claims and the Illinois Action

Leading up to its Chapter 11 bankruptcy petition in 2020, BSA, its Local Councils and Chartered Organizations were named as defendants in hundreds of lawsuits alleging Abuse Claims.  *Id.* ¶¶ 100-01.  BSA called upon certain of its insurers in connection with some of those pre-bankruptcy Abuse Claims, and as a result, its insurers sometimes funded costs associated with defense and settlement.  MTD App. Ex. 4 at 044, 046; MTD App. Ex. 5 at 059-060.

In 2017, Defendant National Surety initiated litigation against BSA and the Chicago Area

---

[3]  For purposes of this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only, and except where indicated, Defendants assume the truth of well-pleaded allegations.

[4]  Defendants reference facts outside the pleadings in support of their motion under Rule 12(b)(2) and the *Colorado River* abstention doctrine.  Even when considering the undersigned Defendants' dismissal arguments under Rule 12(b)(6), the Court may consider matters of public record, including BSA's public bankruptcy filings.  *See Reneker v. Offill*, No. 3:08-CV-1394-D, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010); *In re Base Holdings, LLC*, No. 3:13-CV-1584, 2014 WL 895403, at *1 n.5 (N.D. Tex. Mar. 5, 2014).  The Court can also consider documents that are referred to in a complaint and central to its claims.  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Local Council in Cook County Circuit Court ("**Illinois Court**"). Compl. ¶ 123; *Nat'l Sur. Corp. v. Boy Scouts of Am.*, No. 2017-CH-14975 ("**Illinois Action**"). National Surety sought a declaration that it had no obligation to provide coverage for certain Abuse Claims asserted by 18 victims against Chicago-area Scout leader Thomas Hacker. Compl. ¶ 123. In addition to BSA, National Surety named 20 of BSA's other insurers (including many Defendants in this action), whose rights and obligations under certain of their own policies would be potentially impacted by the coverage rulings concerning the Hacker claims. *See id.* The Illinois Action was automatically stayed by the filing of BSA's bankruptcy petition (*id.* ¶ 125), but was resumed in August 2023 after BSA's Plan was confirmed, with the Trust substituted as defendant in place of BSA and the Chicago-area Local Council. *See Nat'l Sur. Corp. v. Houser*, 2025 WL 893485, at *3 (Ill. App. Ct. Mar. 24, 2025).

On July 27, 2023, National Surety filed a motion for leave to file an amended complaint. *See id.* Before that motion was decided, and after this action was stayed pending a decision by the Third Circuit, the Illinois Court similarly stayed the Illinois Action. *Id.* at *1 (upholding stay). A motion to lift this stay is currently pending before the Illinois Court.

## C. BSA's Chapter 11 Proceedings and Plan of Reorganization

"In 2020, approximately 275 lawsuits asserting Abuse Claims were pending in state and federal courts across the country." Compl. ¶ 101. On February 18, 2020, to shield itself from Abuse Claims, BSA and a wholly owned subsidiary commenced a bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. *See id.* ¶¶ 100-01; MTD App. Ex. 6 at 098-114. The Local Councils and Chartered Organizations were not debtors in BSA's bankruptcy. *See id.* "During the bankruptcy, 82,209 unique and timely claims were filed alleging injury from sexual abuse in Scouting programs." Compl. ¶ 103.

On September 8, 2022, the United States Bankruptcy Court for the District of Delaware

issued an order approving BSA's Plan, which was affirmed by the United States District Court for the District of Delaware on March 28, 2023, and became effective on April 19, 2023. Compl. ¶ 102.  A core feature of the Plan is a "Channeling Injunction," which provides that the Trust assumes liability for pre-petition Abuse Claims, and that the "sole recourse" of any holder of such Abuse Claims "shall be to and against the [Trust]."  *Id.* ¶ 104; MTD App. Ex. 7 (the Plan), Art. X.F.1 at 240-48. Insurers who did not settle in the bankruptcy ("**Non-Settling Insurers**") may, subject to Article X.M, "raise any valid Insurance Coverage Defense in response to a demand by the [Trust], including any right of such Non-Settling Insurance Company to assert any defense that could [] have been raised by [BSA or a Local Council] with respect to such Claim."  Plan, Art. V.N at 202.  The Trust administers the Abuse Claims under the Settlement Trust Agreement and the TDPs.  Compl. ¶ 108.  The purpose of the TDPs is, among other things, to "hold, preserve, maximize and administer the Settlement Trust Assets," and to "obtain insurance coverage" for allowed Insured Abuse Claims.  MTD App. Ex. 8 (the TDPs), Art. I.A at 271.

The Plan also provides for an "Insurance Assignment," which purports to transfer to the Trust all rights that BSA, the Local Councils, and certain Chartered Organizations may have against Non-Settling Insurers in any of the Subject Insurance Policies.  Plan, Art. I.A.§§ 155-57 at 150-51; *see* Compl. ¶ 110.  The TDPs provide that the Trust "shall seek reimbursement for each Insured Abuse Claim . . . from the applicable Non-Settling Insurance Company(ies) pursuant to the Insurance Policies and applicable law."  TDPs, Art. X at 294.  They further provide that "[n]othing in these TDP shall modify, amend, or supplement . . . the terms of any Insurance Policy or rights and obligations under any Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order."  *Id.*, Art. V.C at 278.  As the District Court and Third Circuit made clear

in affirming the Plan's confirmation, the Plan does not abrogate the Trust's obligation, as assignee, to comply with the terms and conditions of the Subject Insurance Policies, including conditions precedent requiring that the policyholder cooperate with its insurer in maintaining its defense, and obtain its insurer's consent to any settlement. *In re Boy Scouts of Am.*, 650 B.R. at 145; *In re Boy Scouts of Am.*, 137 F.4th 126, 164-66 (3d Cir. 2025).

### D.    The Trust Distribution Procedures

The TDPs create four processes for the evaluation and liquidation of Abuse Claims: (1) an expedited alternative ("**Expedited Distribution**"); (2) evaluation under a claims matrix ("**Matrix Evaluation**"); (3) an Independent Review Option ("**IRO**"); and (4) recourse to the tort system. TDPs, Arts. VI-IX at 278-93, XII at 295-298, XIII at 298-309.  Expedited Distribution permits Abuse Claimants to obtain an expedited distribution of $3,500 after the Claimant submits a signed proof of claim attesting to the truth of its contents and signs a release. *Id.*, Art.VI. at 278-79. Matrix Evaluation permits Abuse Claimants to obtain allowed award amounts of anywhere between $3,500 and $2,700,000. *Id.*, Art. VIII.  Under the IRO, a neutral is selected by the Trust to review Abuse Claims and make a settlement recommendation, which, if accepted by the Trust, becomes the allowed award amount. *Id.*, Art. XIII.A at 298-99.  Under the tort system alternative, a Claimant may seek a de novo determination of its Abuse Claim by a court. *Id.*, Art. XII at 25-28.

Certain Plan proponents requested that the Bankruptcy Court make a finding that the criteria and award valuations set out in the TDPs represented "fair and equitable Settlement of Abuse Claims." *In re Boy Scouts of Am.*, 642 B.R. at 629.  The Bankruptcy Court "declin[ed] to do so." *Id.*  The Bankruptcy Court, District Court, and Third Circuit have all made clear that the Abuse Claim award amounts generated under the TDPs are not binding on insurers, and do not correlate to covered losses that any insurer is obligated to indemnify under its policies. *Id.* at 650;

*In re Boy Scouts of Am.*, 650 B.R. 87 at 105, 180; *In re Boy Scouts of Am.*, 137 F.4th at 164-66.

     **E.**    **Challenge to the Plan's Treatment of Non-Settling Insurers**

A number of BSA's Non-Settling Insurers—including some but not all of the Defendants here—objected to the Plan's confirmation. *See In re Boy Scouts of Am.*, 650 B.R. at 105, 180. In affirming the Bankruptcy Court's confirmation of the Plan, the District Court held that "the awards issued by the Settlement Trust . . . [would] not necessarily correlate to what an insurer is 'obligated to pay' or what 'a loss' is under [an Non-Settling Insurer's] policy[,]" and that "a coverage court will determine whether awards are covered by any particular insurance policy to the extent that there is a dispute[.]" *Id.* The District Court further clarified that "[t]he Settlement Trust's rights under any insurance policies issued by Non-Settling Insurance Companies . . . shall be determined under the law applicable *to each such policy* in subsequent litigation." *Id.*

The objecting Non-Settling Insurers then appealed the District Court's order affirming the Plan, asking the Third Circuit to amend the Plan to add language explicitly preserving their rights and defenses under the insurance policies purportedly transferred to the Trust. *In re Boy Scouts of Am.*, 137 F.4th at 142. Two groups of objecting claimants also appealed, arguing that the nonconsensual third-party releases in the Plan were impermissible under the Bankruptcy Code. *Id.*

On May 13, 2025, a Third Circuit panel affirmed confirmation of the Plan, including the third-party releases of Abuse Claim liability for Local Councils and Chartered Organizations, and the transfer to the Trust of Local Council and Chartered Organization insurance policies (and their rights in insurance policies issued to BSA), but reversed and remanded to the Bankruptcy Court to address one aspect of the Bankruptcy Court's Confirmation Order relating to certain insurer claims. *Id.* at 169; Compl. ¶ 102. The Bankruptcy Court then entered certain amendments to the

Confirmation Order consistent with the Third Circuit's decision.[5]

Although the Third Circuit denied as unnecessary the Non-Settling Insurers' request to revise the Plan, it did so based on its determination that none of the Non-Settling Insurers' applicable rights and defenses under their respective insurance policies had been, or could be, altered in any way by the Plan. The court held that the Plan "already preserve[s] all of the [insurers'] rights and defenses" in their insurance policies, so it was unnecessary to "rewrite the Plan and [thereby] fasten suspenders to this already well-secured belt." *In re Boy Scouts of Am.*, 137 F.4th at 164-66. The court agreed with the appealing Non-Settling Insurers that "[i]nsurance policies are property of the estate, and bankruptcy law—save for exceptions not relevant here—does not alter rights under those contracts." *Id.* at 164. Consequently, BSA could not transfer its insurance policies to the Trust "with greater or fewer rights or obligations than it possessed outside of bankruptcy, and a plan cannot be confirmed when it incorporates provisions that impermissibly impair counterparts' rights." *Id.* at 164-65. The court ultimately concluded that the Plan and Confirmation Order "leave the [Non-Settling Insurers'] contractual rights and defenses intact." *Id.* at 165.

The court further emphasized that the Trust's position in this litigation that insurers are liable for the full amount of Abuse Claims without regard for the terms, conditions, and exclusions in their respective policies—"is just that: a litigating position." *Id.* at 165. "[T]he Settlement Trustee's litigating positions are not evidence of the meaning of the Plan or Confirmation Order, nor does the Settlement Trustee authoritatively interpret those documents and the provisions contained in them that preserve the [Non-Settling] Insurers' rights and defenses." *Id.*

---

[5] *See In Re Boy Scouts of Am.*, No. 20-10343-LSS (Bank. D. Del., 2025), ECF No. 12966.

### F.    The Instant Action

On July 17, 2023, the Trust filed the first complaint in this action ("**Original Complaint**").

*See* ECF No. 1.  On October 6, 2023, several groups of insurers filed motions to dismiss the

Original Complaint, as well as a motion to stay pending the U.S. Supreme Court's decision in

*Purdue Pharma*.  This Court granted a stay, ECF No. 339, and subsequently denied the Trust's

motion for reconsideration, ECF No. 373.  Shortly after the Supreme Court issued its decision in

*Purdue Pharma*, this Court again issued a stay pending resolution of the Third Circuit appeals

challenging confirmation of BSA's Plan.  ECF No. 394.  Following the Third Circuit panel's

decision on those appeals, this Court lifted the stay and directed the parties to file supplemental

briefs related to the pending motions, which they did on June 2, 2025.  ECF Nos. 430-40.

 On August 28, 2025, the Court held a status conference in which it issued an order: (1)

directing the Trust to file an amended complaint; (2) terminating as moot the motions to dismiss

filed on October 6, 2023; and (3) directing Defendants to answer or otherwise respond to the

Trust's amended complaint within 21 days of its filing.  ECF No. 514.  On September 11, 2025,

the Trust filed the Amended Complaint.  ECF No. 516.

### G.    The Trust's Operations and Billing Reports

After the Court's order staying the case on December 13, 2023 (ECF No. 339), the Trust

began to process Abuse Claims.  The Trust reports that as of September 9, 2025, it has (i)

determined the allowed claim amount for 40,184 Matrix Claims, representing approximately 70%

of all submitted Matrix Claims, and (ii) accepted settlement recommendations for 89 IRO claims,

representing approximately 45% of all IRO claims.  Compl. ¶¶ 138, 141.

According to the Amended Complaint, "[b]eginning in September 2024, the Trust has

issued bills to insurers on a quarterly basis, demanding payment of specific amounts for

specifically identified individual Abuse Claims."  Compl. ¶ 155.  But the Amended Complaint

-13-

fails to disclose that the Trust's bills come subject to a broad reservation. *See, e.g.*, MTD App. Ex. 2. The Trust has reserved the right not only to seek additional amounts for additional Abuse Claims, but also to change its coverage positions altogether, fundamentally altering bills that it has already issued. *See id.* In fact, the Trust has already revised its billing reports, making significant alterations to its coverage positions (often referred to as "system updates"). *See id.*

The Amended Complaint alleges that "[t]he total value of the claims billed to the insurers to date (through Q2 2025) is $12,348,332,122." Compl. ¶ 155. This figure is well **over three times** $3.6 billion, the *high* end of the total estimated value of Abuse Claims that BSA presented to the Bankruptcy Court, and that the Bankruptcy Court relied on when it confirmed the Plan. *In re Boy Scouts of Am.*, 642 B.R. at 560. It is **over thirty times** $400,546,854, the *high* end of the total estimate by BSA of "the potential allocation to solvent Non-Settling Insurance Companies" i.e. the potential allocation to the Defendants in this proceeding. *Id.* And as set out above, the Trust is not done; tens of thousands of Abuse Claims are yet to be processed.

### H.    The Amended Complaint

The Amended Complaint names 83 insurer Defendants, as well as Doe Defendants. Compl. ¶¶ 6-88. The Amended Complaint seeks coverage determinations under 332 policies allegedly issued to BSA over nearly five decades ("**BSA Insurance Policies**"), from 1972 to 2020, and approximately 2,000 policies allegedly issued to Local Councils between 1942 and 2019 ("**Local Council Insurance Policies**" and, together with the BSA Insurance Policies, "**Subject Insurance Policies**").[6] *Id.* ¶¶ 109-10, Exs. B, C.

The Subject Insurance Policies differ from one another in a number of ways, including the

---

[6] The undersigned Defendants have been unable to confirm the existence of a large number of the alleged policies listed in Exhibits B and C to the Amended Complaint (over 800 of which do not include a policy number).

period of time they cover and the entity or entities they insure. *See id.* ¶¶ 109-10. Many Subject Insurance Policies were not issued to insureds residing in Texas ("**Non-Texas Policies**"). Some BSA Insurance Policies were issued to BSA before 1978, when BSA was not based in Texas, *see id.* ¶¶ 98, 109; MTD App. Ex. 3 at 029, and most Local Council Policies were issued to Local Councils located outside of Texas. *See id.* ¶¶ 99, 110, Ex. C.

The Amended Complaint asserts claims for declaratory judgment (Count 1), breach of contract (Counts 2-33), bad faith (Count 34), and violation of Texas Insurance Code Section 541 (Count 35). The claims are predicated on Defendants' alleged obligations to cover tens of thousands of "unique" Abuse Claims under the Subject Insurance Policies. *Id.* ¶¶ 1-2, 103, 106, 751, Exs. B, C. The Abuse Claims described in the Amended Complaint by definition have been channeled to the Trust for processing pursuant to the TDPs. *Id.* ¶¶ 104, 164.

The Amended Complaint does not identify a single Abuse Claim or specify which of the Subject Insurance Policies the Trust alleges must respond to any particular Abuse Claim. The Trust alleges that it has "issued bills to insurers on a quarterly basis, demanding payment of specific amounts for specifically identified individual Abuse Claims," (*id.* ¶ 155), but it does not provide any detail about the specific facts, allocation theories, and coverage positions that underlie the bills. Instead, the Trust asserts in broad strokes—and contrary to the rulings of the Bankruptcy Court, District Court, and Third Circuit—that all Defendants are liable for the full amount that the Trust will eventually demand in seeking coverage for the Abuse Claims, subject only to applicable attachment points and limits of liability, without regard to the circumstances underlying the unidentified claims. *Id.* ¶ 115. The Amended Complaint baldly asserts that all Defendants have waived or are estopped from raising conditions precedent as defenses to coverage. *Id.* ¶ 117.

The Amended Complaint does not identify the specific provisions of any individual Subject

Insurance Policy that purportedly provides coverage for any specific claim. Instead, it purports to provide a summary of the terms of the thousands of purported policies at issue in this case in one paragraph, alleging that all Subject Insurance Policies "promise in their affirmative grants of coverage, without limitation and with varying wording, to indemnify the insured for, or to pay on the insured's behalf, all damages and defense costs that the insured becomes legally obligated to pay (a) because of personal injury caused by an occurrence during the policy period" or "pursuant to similar wording." *Id.* ¶ 111. Nor does the Amended Complaint provide any detail about the facts underlying the individual Abuse Claims which it asserts are covered by the Subject Insurance Policies—for example, facts as basic as when or where the abuse underlying any individual claim took place. The Trust alleges that Defendants have "access to the claim file for each claim for which they are potentially responsible," (*id.* ¶ 144), but it does not include or incorporate any claims-specific information in the Amended Complaint.

Regarding bad faith and violation of the Texas Insurance Code, the Trust alleges that certain "Non-Paying Insurer Defendants" have failed to "deal with the Trust fairly in good faith," (*id.* ¶ 750), and to "effectuate[] the prompt, fair, and equitable resolution of Abuse Claims[.]" *Id.* ¶ 760. But with the exception of one footnote,[7] the Amended Complaint provides no specific facts regarding any individual Non-Paying Insurer Defendants' dealings with the Trust, even as it concedes that "[n]early all of the Defendants have issued correspondence in response to [the Trust's] demands outlining their coverage defenses and disputing the claim for insurance coverage." *Id.* ¶ 156.

---

[7] Footnote nine of the Amended Complaint briefly references correspondence received by the Trust from the Liberty Group (which the Liberty Group submits, mischaracterizes the Liberty Group's actions).

-16-

## ARGUMENT[8]

I.    **The Amended Complaint Fails to State Cognizable Causes of Action for Breach of Contract (Counts Two through Thirty-Three).**

While the undersigned Defendants acknowledge that there are disputes between them and the Trust concerning insurance coverage under the Subject Insurance Policies for the Abuse Claims, and those disputes can be addressed by the Court through declarations of the parties' rights and obligations, they do not give rise to breach of contract claims. This reality is reflected in the Amended Complaint's formulaic counts for breach of contract, which are woefully deficient and should be dismissed.

A complaint alleging breach of contract must set forth sufficient factual allegations to demonstrate: (1) the existence of a valid contract; (2) performance or tendered performance; (3) breach of the contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach. *Howley v. Bankers Standard Ins. Co.*, No. 3:19-cv-2477, 2020 WL 4731968, at *3 (N.D. Tex. Aug. 14, 2020) (applying Texas law). In particular, a plaintiff "must identify a specific contractual provision that the defendant allegedly breached[.]" *Thomas Mushroom & Specialty, IV, Inc. v. Am. Int'l Grp., Inc.*, No. 3:21-CV-1783-G, 2023 WL 5945856, at *6 (N.D. Tex. Sept. 11, 2023). With respect to alleged breach of insurance policies, a plaintiff's allegations must at least: (1) specify which underlying claims triggered the defendant's obligation to provide coverage and (2) "spell out how" the insurer's conduct with respect to that claim amounts to breach. *Howley v. Bankers Standard Ins. Co.*, No. 20-10940, 2022 WL 576403, at *2 (5th Cir. Feb. 25, 2022)

---

[8]  For the purposes of this motion, Defendants rely primarily on federal law regarding pleading standards and personal jurisdiction. In some instances, Defendants also cite Texas law, or federal cases applying Texas law. In doing so, Defendants do not concede that Texas law governs all of the Trust's claims. Defendants reserve the right to raise the applicability of other states' laws in the event that this proceeding is not dismissed in its entirety. *Cf. Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987); *Colony Ins. Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2018 WL 2562555, at *4 (S.D. Tex. June 4, 2018).

(affirming dismissal where the plaintiff's assertion of breach was too "general" and "conclusory"). It is not sufficient to allege that an underlying claim was "covered"—the plaintiff must allege enough factual detail about the underlying claim and the relevant policy provision for the court to conclude that the policy could have been breached. *See Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 493 (N.D. Tex. 2022).

The Amended Complaint represents an improper effort to litigate breach of contract for tens of thousands of Abuse Claims *en masse*, rather than on a claim-by-claim and policy-by-policy basis, as the law requires. The Trust relies on generalized, conclusory statements, which are no substitute for the well-pleaded factual allegations required to state a cause of action for breach of contract. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (while under Rule 12(b)(6), well-pleaded facts of a complaint are to be accepted as true, a court should not accept "conclusory allegations, unwarranted deductions, or legal conclusions").

The Amended Complaint does not identify which Defendant is allegedly responsible for indemnifying or defending which Abuse Claim under which Subject Insurance Policy. *See Howley*, 2022 WL 576403, at *2 (insured must specify which underlying claim the defendant is responsible for covering). Rather, it alleges in boilerplate fashion that all of the Subject Insurance Policies "unambiguously require" Defendants to "indemnify the insured for any amounts the insured becomes legally obligated to pay for the Abuse Claims." *See, e.g.*, Compl. ¶¶ 174, 192. Such non-specific allegations will not sustain a breach of contract claim. *Howley*, 2022 WL 576403, at *3; *Reddy v. Chubb Lloyds Ins. Co. of Tex.*, 2024 WL 5274522, at *2 (S.D. Tex. Mar. 26, 2024) (plaintiff's allegations were "too conclusory" to state a claim where plaintiff alleged that defendant had "refused to pay adequate coverage" without additional specificity).

The Trust alleges that it "bills insurers on a quarterly basis, demanding payment of specific

-18-

amounts for specifically identified individual Abuse Claims." *Id.* ¶ 155. Yet the Amended Complaint itself is devoid of any such detail. Critically, the Trust's "bills" contain language making clear that they are not final demands, but are subject to the Trust's self-proclaimed right to revise them. MTD App. Ex. 2. Indeed, the Trust has availed itself of this "right" on many occasions, making substantive changes to its coverage positions that have shifted hundreds of millions of dollars in alleged liability across insurers and policies. *Id.* That fact is fatal to the breach of contract claims. The Trust cannot state a claim for breach of contract while at the same time asserting the right to change its claim.[9]

Relatedly, while the Trust asserts in conclusory fashion that "Abuse Claims trigger the Defendants' coverage obligations" (Compl. ¶ 114), it does not plead any specific factual allegations from which the Court could come to that conclusion. The Amended Complaint does not identify which provisions of the Subject Insurance Policies allegedly were breached. The Trust broadly summarizes the Defendants' purported obligations under thousands of unique policies in a single paragraph of the Amended Complaint, without identifying the specific provisions on which it is relying to assert each Defendant's breach. Compl. ¶ 111. The Amended Complaint in fact affirmatively obscures that information, asserting that under "varying wording[,]" the Defendants are collectively obligated to cover "all damages and defense costs that the insured becomes legally obligated to pay . . . because of personal injury caused by an occurrence during the policy period[,]" or "pursuant to similar wording." *See id.* Then, for each insurer group named

---

[9] The fact that Defendants have received provisional billing reports, which remain subject to revision, does not absolve the Trust of its obligation to <u>plead</u> factual detail supporting its claims that Defendants breached their obligations under specific Subject Insurance Policies sufficient to make coverage plausible. *See Kim*, 614 F. Supp. 3d at 483, 493 (a claim for breach of an insurance policy has "facial plausibility" when the plaintiff pleads enough "factual content" to "allow[] the court to draw the reasonable inference" that the policy at issue provides coverage for the underlying claim) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

in Counts 2 through 33, the Trust copies and pastes the same rote conclusion: "the terms of the [group's policies] unambiguously require the [insurer group] to indemnify the insured for any amounts the insured becomes legally obligated to pay for Abuse Claims." *See, e.g.*, Compl. ¶¶ 174, 192, 210, 228. The deficiency of these kinds of conclusory assertions is particularly glaring, given that the very existence of many alleged Subject Insurance Policies is in dispute. *See* Compl. ¶ 160.

Regardless, the Trust does not "identify what provision[s] in the . . . [Subject Insurance Policies] support[]" its conclusory assertions regarding the Defendants' alleged obligations, leaving Defendants to guess at the basis for the Trust's coverage positions. *Thomas Mushroom*, 2023 WL 5945856, at *6-8 (plaintiff's generic summary of alleged contract obligations disregarded as conclusory); *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 603 (N.D. Tex. 2014) ("Plaintiffs failed to allege enough facts about the term of the plans to raise their right to relief above the speculative level.") On this fundamental requirement—that the Trust plead why it believes a given Subject Insurance Policy covers a given Abuse Claim—the Trust's "bills" are equally obscure. The Amended Complaint does not allege that the "bills" explain the Trust's basis for asserting coverage for any specific claim under any specific policy. The "bills" thus do nothing more than assert (provisionally) that an Abuse Claim is covered by an insurance policy and demand payment in a certain amount.

## II.  The Amended Complaint Fails to State a Claim for Common Law Bad Faith or Violation of the Texas Insurance Code

The Amended Complaint asserts against certain "Non-Paying Insurer Defendants" claims for (i) bad faith (Count 34) and (ii) violation of Section 541 of the Texas Insurance Code (Count 35). The undersigned Defendants who are defined in the Amended Complaint as "Non-Paying Insurer Defendants" move to dismiss those claims for failure to state a claim under Rule 12(b)(6).

### A.    The Amended Complaint Fails to State a Cause of Action for Common Law Bad Faith (Count Thirty-Four).

The Amended Complaint fails to state a claim for common law bad faith for at least four reasons. *First*, Texas does not recognize a common law cause of action for bad faith in the context of third-party claims. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 508 (N.D. Tex. 2011) (Fitzwater, J.), *aff'd*, 709 F.3d 515 (5th Cir. 2013); *Murphy Indus., Inc. v. Essex Ins. Co.*, No. 4:16-CV-03618, 2017 WL 5127220, at *5 (S.D. Tex. Sept. 20, 2017) (dismissing common law bad faith claim); *Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 651 (N.D. Tex. 2004) (recognizing Texas Supreme Court's refusal to create a duty of good faith and fair dealing in context of third-party claims). The alleged Subject Insurance Policies at issue in this case are liability insurance policies, which by definition provide coverage for third-party claims, i.e., claims involving loss by parties other than the insured. *See Mid-Continent Cas. Co*, 709 F.3d at 521 (explaining difference between first-party and third-party insurance); *Murphy Indus., Inc.*, 2017 WL 5127220, at *5 (claim for coverage under liability policy is a third-party claim).

The one exception to this rule—*Stowers* liability—does not apply here. *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007) ("*Stowers* is the only common law tort duty in the context of third party insurers[.]") Under the *Stowers* doctrine, if an insurer negligently refuses to accept a reasonable settlement offer within policy limits, and its insured is subsequently found liable for an excess judgment (a judgment that exceeds policy limits), the insurer can be held liable for the entire amount of the excess judgment. *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). A *Stowers* claim must be dismissed where the plaintiff has not alleged that it has been subject to an excess judgment. *See id*. at 267, 277 (granting mandamus and directing trial court to dismiss *Stowers* claim where excess judgment was not pled).

-21-

Because the Trust does not plead that it has been subject to any excess judgment as a result of any Defendant's refusal to settle, it fails to state a *Stowers* claim.

*Second*, the Trust cannot state a cause of action for common law bad faith because it has not stated a claim for breach of contract. *See Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *6 (5th Cir. Sept. 20, 2021).

*Third*, the Trust's assertion of bad faith is conclusory. This comes as no surprise, given that the Trust asserted bad faith claims in the Original Complaint, before a single Abuse Claim award had been determined by the Trust, and before a single Defendant had been billed. *See* Original Complaint at Count Three. In the Amended Complaint, the Trust lumps all "Non-Paying Insurer Defendants" together and asserts that they have collectively "failed to deal with the Trust fairly and in good faith." Compl. ¶ 750. But the Trust provides no factual allegations from which the Court could infer that any Non-Paying Insurer Defendant has acted in bad faith, much less that all of them have. The only purported misconduct that the Amended Complaint points to is the Non-Paying Insurer Defendants' alleged "refus[al] to pay." *Id.* ¶ 748. But the mere allegation that an insurer has refused to pay is not sufficient to state a claim for bad faith. The insured must plausibly allege that its insurer's refusal was unreasonable. *Pogo Res., LLC v. St. Paul Fire and Marine Ins. Co.*, No. 3:19-CV-2682-BH, 2021 WL 1923301, at *7 (N.D. Tex. May 13, 2021). The Trust's bare-bones assertion that all Non-Paying Insurer Defendants have, in some unspecified way, failed to deal with the Trust in good faith, is not sufficient to state a claim for bad faith.

*Finally*, the Trust does not and cannot allege that any Non-Paying Insurer Defendant's conduct "caused damages independent of the benefits the plaintiff would receive under the insurance contract." *Eagle Oil & Gas Co. v. Travelers Prop. & Cas. Co. of Am.*, No. 7:12-cv-00133-O, 2014 WL 3406686, at *18 (N.D. Tex. July 14, 2014) (independent damages are a

required element of a common law bad faith claim, which sounds in tort); *Murphy Indus., Inc.*, 2017 WL 5127220, at *6 (dismissing bad faith claims, finding that plaintiff did not and could not allege independent damages in the "third-party liability context.")  This defect, too, in and of itself requires dismissal of Count Thirty-Four.

### B.    The Amended Complaint Fails to State a Claim Under the Texas Insurance Code (Count Thirty-Five).

The Trust brings claims for violations of Section 541.060 of the Texas Insurance Code, which generally prohibits unfair insurance settlement practices.[10]  Specifically, the Trust asserts that the Non-Paying Insurer Defendants have violated four subsections of Section 541.060: subsections (a)(2), (a)(3), (a)(4), and (a)(7), Compl. ¶ 754, none of which is viable.

A plaintiff cannot state a claim for violation of Section 541.060 by relying on conclusory assertions or formulaic recitations of the statute rather than concrete and defendant-specific factual allegations that support an inference of a statutory violation.  *See Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *5 (5th Cir. Sept. 20, 2021) (affirming dismissal of Section 541.060 claims where plaintiff's allegations regarding bad faith were "conclusory and devoid of specific supporting factual allegations"); *Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*, No. 4:17-CV-3164, 2018 WL 8755785, at *5 (S.D. Tex. Jan. 25, 2018) (assertions that "merely parrot the language of the applicable sections of the Code" and do not attribute conduct to a particular defendant are "legal conclusion[s] couched as factual allegation[s]"); *Ramirez v. Allstate Vehicle and Prop. Ins. Co.*, No. 7:21-cv-00149, 2021 WL 7708319, at *4 (S.D. Tex. May 26, 2021) (dismissing Section 541.060 claims that were pled in conclusory fashion); *Abood Grp., Inc. v. Hartford Underwriters Ins. Co.*, No. 3:23-CV-01838-K.,

---

[10]  Defendants do not concede that this Texas statute is applicable to the Trust's claims.

2024 WL 4378437, at *6 (N.D. Tex. June 10, 2024) (same).  But that is precisely what the Trust does in the Amended Complaint.  Taking each of the four Subsections in turn:

**Subsection (a)(2)(A)**.  Subsection (a)(2)(A) makes it a violation for an insurer to fail to effectuate a fair settlement of a claim for which the insurer's liability has become reasonably clear. In order to state a claim under Subsection (a)(2)(A), a plaintiff must allege specific facts from which a court could conclude that an insurer (1) failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement (2) of a claim with respect to which the insurer's liability has become reasonably clear.  *Abood*, 2024 WL 4378437, at *4.  The Trust fails to do so.  Rather, it asserts in conclusory fashion that the Non-Paying Insurer Defendants have "failed to effectuate prompt, fair, and equitable settlements and pay claims billed to them for Abuse Claims[.]"  Compl. ¶ 757.  But the Amended Complaint does not plead specific facts about any individual Non-Paying Insurer Defendants' settlement practices from which the Court could infer that such practices were unfair.  Instead, the Trust lumps all the Non-Paying Insurer Defendants together, and describes their alleged misconduct by simply paraphrasing the language of Subsection (a)(2)(A).  *Id.*  Nor does the Trust allege any facts from which the Court could infer that any Non-Paying Insurer Defendant's liability has become "reasonably clear," other than the Trust's bald assertion that "coverage extends to Abuse Claims."  *Id.*  This type of boilerplate allegation is insufficient to state a claim under Subsection (a)(2).  *Abood*, 2024 WL 4378437, at *4 (dismissing claim under Subsection (a)(2) where plaintiff "alleged no facts suggesting that [insurer's] settlement efforts were inadequate or that its liability was reasonably clear").

Moreover, a violation of Subsection (a)(2)(A) in the third-party context is analyzed under the same "framework" as the *Stowers* duty.  *Mid-Continent Cas. Co.*, 795 F. Supp. 2d at 527.  As set forth above, the Trust does not have a *Stowers* claim.

-24-

**Subsections (a)(3) and (a)(4)**.  Subsections (a)(3) and (a)(4) make it a violation for an insurer to fail to deny or affirm coverage within a reasonable amount of time, or to fail to promptly explain the basis for the insurer's denial.  In order to state a claim under Subsection (a)(3), a plaintiff must allege specific facts supporting an inference that its insurer failed to promptly provide it with a reasonable explanation for the insurer's denial of a claim or offer of a compromise settlement of the claim.  *See Ramirez*, 2021 WL 7708319, at *4 (citing Section 541.060(a)(3)).  In order to state a claim under Subsection (a)(4), a plaintiff must allege specific facts supporting an inference that its insurer failed within a reasonable time to affirm or deny coverage of a claim or submit a reservation of rights to a policyholder.  *Id.* (citing Section 541.060(a)(4)).

The Amended Complaint provides no concrete factual allegations regarding the timing of any individual Non-Paying Insurer Defendant's coverage correspondence, or any other well-pled factual allegation from which the Court could infer a violation of either of these Subsections.  To the contrary, the Trust concedes that "[n]early all the Defendants have issued correspondence in response to [the Trust's] demands outlining their coverage defenses and disputing the claims for insurance coverage."  Compl. ¶ 156.  No well-pled facts in the Amended Complaint support an inference that this correspondence was untimely or unreasonable.  The Trust provides no specific allegations whatsoever regarding when any individual Non-Paying Insurer Defendant responded to any of the Trust's demands for coverage.  Again, the Trust's conclusory and formulaic assertion of statutory violations fails.  *See Ramirez*, 2021 WL 7708319, at *4 (dismissing all Section 541 claims where the plaintiff "fail[ed] to specify relevant dates" and provided "nothing beyond conclusory recitations of the elements of her claims").

**Subsection (a)(7)**.  Subsection (a)(7) makes it a violation for an insurer to fail to conduct a reasonable investigation of a claim.  In order to state a claim under Subsection (a)(7), a plaintiff

must allege concrete factual allegations from which a court could infer that its insurer refused to pay a claim without conducting a reasonable investigation with respect to the claim. *Abood*, 2024 WL 4378437, at *5 (citing Section 541.060(a)(7)). The Amended Complaint fails to do so. The Trust asserts in conclusory fashion that "not a single Non-Paying Insurer Defendant has promptly and unconditionally paid any amount for Abuse Claims it has been billed following a reasonable investigation" (Comp. ¶ 760), but the Amended Complaint is devoid of concrete allegations regarding the individual Non-Paying Defendants' claim investigation, and provides no well-pled facts that, if true, would support a conclusion that any Non-Paying Defendant's claims investigation was unreasonable. Accordingly, this claim should be dismissed. *See Abood*, 2024 WL 4378437, at *5 (dismissing Subsection (a)(7) claim where plaintiff failed to plead any specific facts that supported in characterization of the insurer's claim investigation as unreasonable).

## III.    The Court Lacks Personal Jurisdiction Over the PJ Moving Defendants for Claims Made Under Non-Texas Policies

The PJ Moving Defendants[11] move the Court to dismiss for lack of personal jurisdiction the Trust's causes of action against them to the extent that they assert coverage under Non-Texas Policies. The PJ Moving Defendants are insurers that (a) are not incorporated in Texas and do not have their principal place of business here; and (b) issued, or allegedly issued, Non-Texas Policies.

---

[11] The PJ Moving Defendants are: American Casualty Company of Reading, Pennsylvania, American Home Assurance Company, Charter Oak Fire Insurance Company, Cincinnati Insurance Company, Continental Casualty Company, The Continental Insurance Company, Erie Family Life Insurance Company, Erie Insurance Exchange, Jefferson Insurance Company, Nationwide Affinity Insurance Company of America, Nationwide Mutual Insurance Company, National Casualty Company, National Fire Insurance Company of Hartford, National Union Fire Insurance Company of Pittsburgh, Pa, New Hampshire Insurance Company, The Phoenix Insurance Company, Scottsdale Insurance Company, Security Mutual Insurance Company, SPARTA Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, The Travelers Companies, Inc., The Travelers Indemnity Company, United States Fidelity and Guaranty Company, and Wausau General Insurance Company.

A federal court may assert jurisdiction over a nonresident defendant in a diversity suit only if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). "Because [t]he Texas long-arm statute extends to the limits of the Constitution only the due process prong of the test is at issue." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:15-CV-01121-M, 2016 WL 1069675, at *2 (N.D. Tex. Mar. 16, 2016).

A nonresident defendant's contacts may support an assertion of general ("all-purpose") personal jurisdiction, or specific ("case-linked") personal jurisdiction. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). A court is said to have "general jurisdiction" when a defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 432 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). A court may exercise specific jurisdiction when a defendant has sufficient minimum contacts with the forum ***and*** plaintiff's cause of action relates to or arises out of the defendant's purposeful contacts with the forum. *Id.* at 433. The party seeking to invoke the court's jurisdiction bears the burden of establishing the requisite contacts. *Id.* at 431.

## A.    The Court Lacks General Jurisdiction Over the PJ Moving Defendants.

Absent an "exceptional case," a corporate defendant is "at home" and thus subject to general jurisdiction only in the jurisdictions where it is incorporated and has its principal place of business. *Daimler*, 571 U.S. at 139 n.19; *see also My Fabric Designs, Inc. v. F+W Media, Inc.*, No. 3:17-CV-2112-L, 2018 WL 1138436, at *4 (N.D. Tex. Mar. 2, 2018). It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *My Fabric Designs, Inc.*, 2018 WL 1138436, at *4.

No PJ Moving Defendant is headquartered or incorporated in Texas, as the Amended Complaint concedes. Compl. ¶¶ 5-87; *see* MTD App. Ex. 9. The Trust makes no allegation of

conduct by any PJ Moving Defendant that would constitute an "exceptional case" rendering that Defendant "essentially at home" in Texas. Indeed, the Amended Complaint alleges only that "each Defendant . . . is or has been licensed to do business in Texas, is transacting or has transacted business in Texas; has contracted to insurer persons, property, or risk located in Texas; has sought and received payments from Texas residents in Texas; has contractually or otherwise consented to submit to personal jurisdiction in Texas; and/or has other significant contacts with Texas." Compl. ¶ 99. Vague generalizations of this sort "are insufficient to support general jurisdiction." *See Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) ("[Plaintiff's] allegations that [defendant] 'conducted business routinely' and does 'substantial business' in Texas, without more, merely amount to 'vague and overgeneralized assertions' of contacts 'that give no indication as to the extent, duration or frequency' of [Defendant's] contacts.").

In any event, the type of contacts that the Amended Complaint generically refers to—for example, "contract[ing] to insurer persons, property, or risk located in Texas," being "licensed to do business in Texas," "selling policies in Texas," or "suing in Texas Courts" (Compl. ¶¶ 91-92)— do not support an assertion of general jurisdiction. Even in combination (as improperly mass-pled), such contacts would not make an insurer "at home in Texas." *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (no general jurisdiction despite the considerable "magnitude of the defendant's in-state contacts," which included "over 2,000 miles of railroad track and more than 2,000 employees" in the forum state); *Torson v. Hyundai Oilbank Co.*, No. 22-20065, 2022 WL 4103263, at *1, *4 (5th Cir. Sept. 7, 2022) (defendant was not "essentially at home" in Texas despite (i) registering to do business in Texas, (ii) maintaining an office and doing business in Texas, and (iii) hiring employees in Texas); *see also Byrd Aviation, Inc. v. Glob. Aerospace, Inc.*, No. 3:19-CV-01661-G, 2020 WL 291583, at *3-4 (N.D. Tex. Jan. 17, 2020). The Court therefore

-28-

does not have general personal jurisdiction over any PJ Moving Defendant.

**B.    The Court Lacks Specific Jurisdiction Over the PJ Moving Defendants to Adjudicate Claims Under Non-Texas Policies.**

A court may exercise specific jurisdiction only when: (1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; ***and*** (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely because of random, fortuitous, or attenuated contacts, or the unilateral activity of another person or third party. *Id.* Specific jurisdiction is "claim-specific," meaning "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

When an insured brings an action seeking to adjudicate its rights under an insurance policy, its claims "arises" out of the insurance policy; therefore, the relevant contacts for assessing specific jurisdiction are those contacts related to the issuance of the policy. *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020) (relevant contacts in an insurance coverage dispute are those "linked to the procurement and enforcement" of the policy); *Nat'l Cas. Co. v. KT2 LLC*, No. 3:19-cv-1926-E, 2020 WL 5544152, at *4 (N.D. Tex. Sept. 16, 2020).

The Trust alleges that all Defendants have engaged in conduct that touches Texas, including "selling policies in Texas," "insuring persons and property in Texas," "targeting Texas customers," and "suing in Texas Courts." Compl. ¶ 93. The Trust then asserts that the Court "has specific jurisdiction over Defendants to the extent Defendants' actions . . . establish minimum contacts." Compl. ¶ 93. This argument misses the key step in the jurisdictional analysis. The

-29-

"conduct" in Texas that the Trust suggests exists must give rise to the Trust's claims. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal, S.F. Cnty.*, 582 U.S. 255, 264 (2017) (where plaintiff's claims do not arise out of the defendant's alleged contacts with the state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate").

The Trust's claims seeking coverage under Non-Texas Policies do not arise out of a Defendant's issuance of other insurance policies in Texas, or its suing in Texas courts, or its engaging in business in Texas; they arise out of, for example, the alleged issuance of policies to Local Councils in California. The Trust does not—and by definition cannot—demonstrate that claims under Non-Texas Policies arise out of any PJ Moving Defendants' contacts with Texas. *See Nat'l Cas. Co.*, 2020 WL 5544152, at *4 (notwithstanding allegations an insurer had numerous Texas-based contacts, the court still lacked personal jurisdiction for claims under policy issued in Michigan, because claims under Michigan policy did not arise out of Texas-based contacts).

Moreover, the fact that a PJ Moving Defendant who allegedly issued Non-Texas Policies may have also issued separate policies to BSA while BSA was domiciled in Texas does not provide a basis for imposing specific jurisdiction on the PJ Moving Defendant with respect to any coverage claim the Trust makes under the Non-Texas Policies, because specific jurisdiction must be established separately for different coverage claims made under different Subject Insurance Policies. *See Seiferth*, 472 F.3d at 274 (personal jurisdiction must be established for each of plaintiff's claims); *Lowe v. Connect Inv. Corp.*, No. 1:20-CV-174-LY, 2020 WL 10355788, at *3 (W.D. Tex. Sept. 25, 2020) (personal jurisdiction must be established separately for claims "predicated on separate contractual agreements"); 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1351 n.30 ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for

-30-

each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."). In other words, even if this Court has personal jurisdiction over certain PJ Moving Defendants with respect to claims made under Texas policies, that is not a basis for asserting personal jurisdiction over claims that the Trust brings under Non-Texas Policies. *See id.*

The Trust has not met its burden of pleading contacts with Texas that establish specific personal jurisdiction over the PJ Moving Defendants with respect to the Trust's claims made under Non-Texas Policies.

### C.    The Court Should Deny the Trust's Request for Jurisdictional Discovery

In a footnote to the Amended Complaint, the Trust requests leave to conduct "targeted"— but unspecified—jurisdictional discovery with respect to any Defendant who might contest personal jurisdiction. This request should be denied.

When a plaintiff requests jurisdictional discovery to avoid dismissal, it bears the burden of demonstrating the necessity of the discovery, *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022), and "must show that it is 'likely to produce the facts needed to withstand' dismissal." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *MaxRelief USA, Inc. v. O'Maley*, No. 3:21-CV-00579-N, 2021 WL 5742331, at *4 (N.D. Tex. Dec. 2, 2021) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)).

Here, the lack of personal jurisdiction is clear, and the Trust's request for "targeted" (but unspecified) jurisdictional discovery would serve no purpose. Jurisdictional discovery could not establish specific jurisdiction because whatever Texas contacts the Trust might discover will not make the Trust's claims under Non-Texas Policies arise out of those contacts. *MaxRelief USA, Inc.*, WL 5742331, at *4 (denying discovery into alleged Texas contacts when plaintiff's claims

-31-

did not arise out of those contacts and where discovery "would not change the result" of the court's jurisdictional analysis.  And as to general jurisdiction, discovery would be similarly futile because the types of contacts that the Trust generically alludes to in the Amended Complaint, even if discovered, "would not be enough to show that [any PJ Moving Defendant] is at home in Texas." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014); *MaxRelief USA, Inc.*, WL 5742331, at *4 (finding it "wholly implausible" that jurisdictional discovery would establish that defendant was subject to general jurisdiction under the heightened *Daimler* standard).

## IV.   The Illinois Claims Should Be Dismissed in Favor of the Illinois Action.

A small subset of the Abuse Claims for which the Trust seeks coverage—the Illinois Claims—is already subject to coverage litigation in the Illinois Action.  Compl. ¶¶ 126-27.  As to the Illinois Claims, certain Defendants in this action that are also defendants in the Illinois Action (the "**Abstention Moving Defendants**")[12] separately move this Court to dismiss the Trust's causes of action regarding those claims in favor of the Illinois Action.

This Court's abstention with respect to coverage for the Illinois Claims is warranted under the *Colorado River* doctrine, which provides that an action should be dismissed (or in the alternative, stayed) in favor of a preexisting state court proceeding where (1) the preexisting state court proceeding is "parallel" to the instant proceeding and (2) "exceptional circumstances" exist. *LAC Real Est. Holdings, LLC v. Biloxi Marsh Lands Corp.*, 320 F. App'x 267, 270 (5th Cir. 2009).

---

[12]  The Abstention Moving Defendants are: American Casualty Company of Reading, Pennsylvania, American Home Assurance Company, CNA Financial Corporation, Consolidated National Insurance Company, Continental Casualty Company, Insurance Company of the State of Pennsylvania, Jefferson Insurance Company, Landmark Insurance Company, Lexington Insurance Company, Munich Reinsurance America Inc., National Fire Insurance Company of Hartford, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and The Continental Insurance Company.

A.    **This Action and the Illinois Action Are Parallel Proceedings With Respect to the Illinois Claims.**

For the purposes of *Colorado River* abstention, two actions are parallel when they involve "substantially the same parties" and "substantially the same issues." *Walker Centrifuge Servs. L.L.C. v. D & D Power, L.L.C.*, 550 F. Supp. 2d 620, 625 (N.D. Tex. 2008). Issues in two actions are substantially the same when they "aris[e] from or connect[] with" the same underlying transaction, even where there is not a "precise identity of parties and issues[.]" *See id.*

The Illinois Action includes as parties (i) the Trust (which recently substituted itself as a party in place of BSA) and (ii) a subset of the Defendants named in this action. *Compare* Compl. ¶¶ 4-88, *with Nat'l Sur.*, 2025 WL 893485, at *1. As to the Illinois Claims, this action involves exactly the same parties, i.e., the Trust and the Abstention Moving Defendants that also are parties to the Illinois Action. This action and the Illinois Action also involve the same core issue with respect to Illinois Claims, i.e., whether those claims are covered by insurance. *See National Surety*, 2025 WL 893485, at *1-2.

B.    **Exceptional Circumstances Warrant Abstention.**

In deciding whether "exceptional circumstances" warrant abstention, courts in this Circuit consider six factors: (1) assumption by either court of jurisdiction over a *res*; (2) relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *LAC Real Est.*, 320 F. App'x at 270. Courts do not consider these factors as a "mechanical checklist," but rather on balance with an eye towards "wise judicial administration—in particular the need to conserve judicial resources and promote comprehensive disposition of litigation." *See New Orleans Pub. Serv., Inc. v. Council of New*

-33-

*Orleans*, 911 F.2d 993, 1003 (5th Cir. 1990). Not all of the factors set out in *Colorado River* are important in every case, and abstention can be warranted even when multiple factors are neutral or weigh against abstention. *See id.* As detailed below, factors two through five strongly favor abstention, and factor six is neutral. Considered on balance, abstention is warranted. *See, e.g.*, *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) (affirming abstention where only two factors favored abstention).

**Relative Inconvenience of the Forums**. The Illinois Court is a more convenient forum for litigating insurance coverage for the Illinois Claims, favoring abstention. *See MidTexas Int'l Ctr., Inc. v. Myronowicz*, 2006 WL 2285581, at *5 (N.D. Tex. Aug. 9, 2006). The underlying Illinois Claims involve the conduct of Thomas Hacker alleged to have taken place in Illinois. *See* Compl. ¶ 123. The insurance policies at issue were issued principally to insure persons, property, or risks located in the State of Illinois. *See Nat'l Sur. Corp. v. Boy Scouts of Am.*, Docket No. 2017-CH-14975. And one of the core coverage issues in the Illinois Action is whether the alleged conduct of BSA and its Illinois-based Local Council—who oversaw Chicago-area Scout leader Thomas Hacker—was expected or intended. *See id.* Relevant evidence is located in Illinois, making the Illinois Court a more convenient forum. *See Myronowicz*, 2006 WL 2285581, at *5.

**Avoidance of Piecemeal Litigation**. Retaining jurisdiction over the Illinois Claims would result in "piecemeal litigation," i.e., concurrent lawsuits that pose a "concomitant danger of inconsistent rulings" with respect to the parties' claims and defenses. *See Walker Centrifuge*, 550 F. Supp. 2d at 626. This strongly favors abstention.

**The Order in Which Jurisdiction Was Obtained**. The Illinois Action was not only filed first, but has made substantially more progress. *See Nat'l Sur. Corp. v. Boy Scouts of Am.*, Docket No. 2017-CH-14975. This strongly favors abstention. *See Walker Centrifuge*, 550 F. Supp. 2d at

627-29; *Flores v. Wells Fargo Bank, N.A.*, No. M-09-225, 2009 WL 10693450, at *3 (S.D. Tex. Oct. 30, 2009).

*To What Extent Federal Law Provides the Rules of Decision on the Merits*. The Illinois Claims sound in contract, will be decided under state law, and involve no federal questions. This favors abstention. *See Microsource, Inc. v. Superior Signs, Inc.*, No. CIV.A.3:97-CV-2733-G, 1998 WL 119537, at *3 (N.D. Tex. Mar. 9, 1998).

*The Adequacy of the State Proceedings in Protecting the Trust's Rights*. Because there is "no reason to doubt the adequacy" of the Illinois Court's ability to resolve the Illinois Claims, this factor either favors abstention or is neutral. *See Knox*, 351 F. App'x at 852.

On balance, the *Colorado River* considerations weigh strongly in favor of abstention, especially because retaining jurisdiction over the Illinois Claims poses a serious risk of piecemeal, inconsistent rulings, and a waste of judicial resources. The Trust's causes of action regarding coverage for the Illinois Claims should be dismissed in favor of the Illinois Action.

## CONCLUSION

For the reasons outlined above, this Court should dismiss under Federal Rule of Civil Procedure 12(b)(2) the Trust's causes of action against the PJ Moving Defendants to the extent they seek damages or coverage arising out of Non-Texas Policies, as this Court lacks personal jurisdiction over such claims. The Court should also dismiss under Federal Rule of Civil Procedure 12(b)(6) Counts Two through Thirty-Five of the Amended Complaint, because the Complaint fails to state cognizable claims for breach of contract, bad faith, or violation of Section 541 of the Texas Insurance Code. Finally, this Court should also dismiss the Trust's causes of action regarding the Illinois Claims in favor of the Illinois Action under the doctrine of *Colorado River* abstention.

-35-

Dated: October 2, 2025

Respectfully submitted,

*/s/Betty X. Yang*

Christopher J. St. Jeanos (*pro hac vice*)
New York Bar No. 2805729
Justin Garbacz (*pro hac vice*)
New York Bar No. 5691910
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
cstjeanos@willkie.com
jgarbacz@willkie.com

Betty X. Yang
Texas Bar No. 24088690
Michael A. Rosenthal
Texas Bar No. 17281490
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
byang@gibsondunn.com
mrosenthal@gibsondunn.com

Joseph G. Davis (*pro hac vice*)
D.C. Bar No. 441479
Zaina Fontane (*pro hac vice*)
D.C. Bar No. 90014285
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
Telephone: (202) 303-1000
Facsimile: (202) 303-2000
jdavis@willkie.com
zfontane@willkie.com

Richard Doren (*pro hac vice*)
California Bar No. 124666
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7038
Facsimile: (213) 229-6038
rdoren@gibsondunn.com

James Hallowell (*pro hac vice*)
New York Bar No. 2688869
Laura Londoño Pardo (*pro hac vice*)
New York Bar No. 5952452
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
jhallowell@gibsondunn.com
llondonopardo@gibsondunn.com

*Counsel for American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and Consolidated National Insurance Company*

/s/ Thomas B. Alleman
Thomas B. Alleman
Texas Bar No. 01017485
DYKEMA GOSSETT PLLC
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401
talleman@dykema.com

Brent H. Olson (*pro hac vice*)
D.C. Bar No. 494383
DYKEMA GOSSETT PPLC
1301 K Street, NW, Suite 1100 West
Washington, DC 20005
Telephone: (202) 906-8604
Facsimile: (888) 799-0832
bolson@dykema.com

*Counsel for Allied World Assurance Company (U.S.) Inc.*

/s/ Christina A. Culver
Brian S. Martin
Texas Bar No. 13055350
Christina A. Culver
Texas Bar No. 24078388
THOMPSON, COE, COUSINS & IRONS, LLP
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
Facsimile: (713) 403-8299
bmartin@thompsoncoe.com
cculver@thompsoncoe.com

Rhonda Thompson
Texas Bar No. 24029862
THOMPSON, COE, COUSINS & IRONS, LLP
Plaza of the Americas
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8273
Facsimile: (214) 871-8209
rthompson@thompsoncoe.com

*Counsel for Allstate Insurance Company*

/s/ Kasi Gray Schuelke
Kasi Gray Schuelke
Texas Bar No. 24098915
PHELPS DUNBAR LLP
2102 E. State Highway 114, Suite 207
Southlake, Texas 76092
Telephone: (817) 305-0326
kasi.schuelke@phelps.com

Mark D. Plevin (*pro hac vice*)
California Bar No. 146278
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (202) 580-6640
mplevin@plevinturner.com

Tacie H. Yoon (*pro hac vice*)
D.C. Bar No. 417100
Jordan A. Hess (*pro hac vice*)
D.C. Bar No. 1781895
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
tyoon@plevinturner.com
jhess@plevinturner.com

*Counsel for American Casualty Company of Reading, Pennsylvania, Columbia Casualty Company, Continental Casualty Company, National Fire Insurance Company of Hartford, and The Continental Insurance Company (in its own right; as successor by merger to Buckeye Union Insurance Company, Fidelity and Casualty Co. of New York, Firemen's Insurance Company of Newark, New Jersey (including certain retained liabilities of Manhattan Fire & Marine Insurance Company), Niagara Fire Insurance Company, and Pacific Insurance Company; and as successor in interest to policies issued by Harbor Insurance Company at issue in this action)*

/s/ S. Jan Hueber
S. Jan Hueber
Texas Bar No. 20331150
Kaitlin Palmarozzi
Texas Bar No. 24098217
LITCHFIELD CAVO, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
Facsimile: (817) 753-3232
hueber@litchfieldcavo.com
palmarozzi@litchfieldcavo.com

*Counsel for Amerisure Insurance Company*

/s/ Stephen A. Melendi
Stephen A. Melendi
Texas Bar No. 24041468
Matthew P. Rigney
Texas Bar No. 24068636
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
stephenm@tbmmlaw.com
mattr@tbmmlaw.com

Kathleen Kerns (*pro hac vice*)
POST & SCHELL, P.C.
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 587-5932
Facsimile: (215) 587-1444
kkerns@postschell.com

*Counsel for Argonaut Insurance Company*

-38-

*/s/ John Philip Morgenstern*
John Philip Morgenstern
O'HAGAN MEYER
Three Logan Square
1717 Arch Street, Suite 3910
Philadelphia, Pennsylvania 19103
Telephone: (215) 461-3301
Facsimile: (215) 461-3311
jmorgenstern@ohaganmeyer.com

*Counsel for Ategrity Specialty Insurance Company*

*/s/ Steven T. Ramos*
Steven T. Ramos
Texas Bar No. 00784812
AYIK & ASSOCIATES
1301 E. Collins Boulevard, Suite 290
Richardson, Texas 75081
Telephone: (214) 570-6596
Facsimile: (214) 570-6262
stramos@travelers.com

Kathleen D. Monnes (*pro hac vice*)
Connecticut Bar No. 407246
Catherine A. DeLanzo (*pro hac vice*)
Connecticut Bar No. 442247
Jenna A. Pepe (*pro hac vice*)
Connecticut Bar No. 445068
DAY PITNEY LLP
225 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 275-0103
Facsimile: (860) 275-0343
kdmonnes@daypitney.com
cdelanzo@daypitney.com
jpepe@daypitney.com

*Counsel for Charter Oak Fire Insurance Company; Phoenix Insurance Company; St. Paul Fire and Marine Insurance Company; St. Paul Mercury Insurance Company; St. Paul Surplus Lines Insurance Company; The Travelers Companies, Inc.; The Travelers Indemnity Company; Travelers Casualty and Surety Company; and United States Fidelity and Guaranty Company*

-39-

*/s/ S. Jan Hueber*
S. Jan Hueber
Texas Bar No. 20331150
LITCHFIELD CAVO, LLP
100 Throckmorton Street, Suite 500
Fort Worth, Texas 76102
Telephone: (817) 945-8037
Facsimile: (817) 753-3232
hueber@litchfieldcavo.com

Daniel G. Litchfield (*pro hac vice*)
Illinois Bar No. 6185695
LITCHFIELD CAVO, LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
Telephone: (312) 781-6669
Facsimile: (312) 781-6630
litchfield@litchfieldcavo.com

*Counsel for The Cincinnati Insurance Company*

*/s/ Scott L. Davis*
Scott L. Davis
Texas Bar No. 05547030
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800 W
Dallas, Texas 75201
Telephone: (469) 391-7706
Facsimile: (214) 750-3612
sdavis@spencerfane.com

Tyler J. Scott (*pro hac vice*)
Missouri Bar No. 63231
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 292-8117
Facsimile: (816) 474-3216
tscott@spencerfane.com

*Counsel for Crum & Forster Indemnity Company, TIG Insurance Company, The North River Insurance Company, and United States Fire Insurance Company*

*/s/ David M. Hymer*
David M. Hymer
Texas Bar No. 10380250
Steven A. Wood
Texas Bar No. 24033355
QUINTAIROS, PRIETO, WOOD & BOYER, PA.
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
Telephone: (214) 754-8755
Facsimile: (214) 754-8744
david.hymer@qpwblaw.com
steven.wood@qpwblaw.com

*Counsel for Erie Family Life Insurance Company and Erie Insurance Exchange*

*/s/ Ivan M. Rodriguez*
Ivan M. Rodriguez
Texas Bar No. 24058977
Clinton J. Wolbert
Texas Bar No. 2410302
Harrison Cass
Texas Bar No. 24137553
PHELPS DUNBAR, LLP
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 877-5504
Facsimile: (713) 626-1388
ivan.rodriguez@phelps.com
clinton.wolbert@phelps.com
harrison.cass@phelps.com

William R. de los Santos
Texas Bar No. 24125762
PHELPS DUNBAR, LLP
2102 E. State Highway 114, Suite 207
Southlake, Texas 76092
Telephone: (817) 488-3134
william.delossantos@phelps.com

*Counsel for Evanston Insurance Company*

-40-

/s/ Stephen A. Melendi
Stephen A. Melendi
Texas Bar No. 24041468
Mary Reyes Hartsfield
Texas Bar No. 00788267
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Facsimile: (214) 665-0199
stephenm@tbmmlaw.com
maryh@tbmmlaw.com

*Counsel for First Insurance Company of Hawaii, LTD*

/s/ William H. White, Jr.
William H. White Jr. (*pro hac vice*)
D.C. Bar No. 461341
KIERNAN TREBACH LLP
1233 20th Street NW, 8th Floor
Washington, D.C. 20036
Telephone: (202) 712-7000
Facsimile: (202) 712-7001
wwhite@kiernantrebach.com

John E.W. Baay II
Texas Bar No. 798042
LABORDE SIEGEL L.L.C.
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
jbaay@labordesiegel.com

*Counsel for Gemini Insurance Company*

/s/ Aaron L. Mitchell
Aaron L. Mitchell
Texas Bar No. 14205590
Beth D. Bradley
Texas Bar No. 06243900
TOLLEFSON BRADLEY MITCHELL &
MELENDI, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0110
Facsimile: (214) 665-0199
aaronm@tbmmlaw.com
bethb@tbmmlaw.com

Lloyd A. Gura (*pro hac vice*)
New York Bar No. 2380277
MOUND COTTON WOLLAN &
GREENGRASS LLP
One New York Plaza, 44th Floor
New York, New York 10004
Telephone: (212) 804-4282
Facsimile: (212) 344-8066
lgura@moundcotton.com

Pamela J. Minetto
MOUND COTTON WOLLAN &
GREENGRASS LLP
30A Vreeland Road, Suite 210
Florham Park, New Jersey 07932
Telephone: (973) 494-0603
Facsimile: (973) 242-4244
pminetto@moundcotton.com

*Counsel for Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company*

-41-

/s/ Richard D. Salgado
Richard D. Salgado
Texas Bar No. 24060548
MCDERMOTT WILL & SCHULTE LLP
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 210-2797
Facsimile: (972) 232-3098
richard.salgado@mwe.com

Ryan S. Smethurst (*pro hac vice*)
D.C. Bar No. 469824
Alex M. Spisak (*pro hac vice*)
D.C. Bar No. 1028451
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8228
Facsimile: (202) 756-8087
rsmethurst@mwe.com
aspisak@mwe.com

*Counsel for Jefferson Insurance Company*

/s/ Aaron Z. Tobin
Aaron Z. Tobin
Texas Bar No. 24028045
CONDON TOBIN SLADEK SPARKS
THORNTON NERENBERG PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com

Kim V. Marrkand
Massachusetts Bar No. 543823
John C. Dougherty
Massachusetts Bar No. 569186
Mathilda S. McGee-Tubb
Massachusetts Bar No. 687434
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO PC
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 348-1807
kmarrkand@mintz.com
jdougherty@mintz.com

Douglas R. Gooding
Massachusetts Bar No. 558976
Bryana T. McGillycuddy Massachusetts
Bar No. 684990
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 248-4000
dgooding@choate.com
bmcgillycuddy@choate.com

*Counsel for Liberty Mutual Insurance
Company, Liberty Insurance Underwriters
Inc., Liberty Surplus Insurance Corporation,
The Ohio Casualty Insurance Company,
Peerless Indemnity Insurance Company,
Safeco Insurance Company of America,
American Economy Insurance Company,
American States Insurance Company, and
General Insurance Company of America*

*/s/ Gary S. Kessler*
Gary S. Kessler
Texas Bar No. 11358200
Samuel C. Kessler
Texas Bar No. 24118431
KESSLER COLLINS, PC
500 N. Akard Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 379-0722
Facsimile: (214) 373-4714
gsk@kesslercollins.com
skessler@kesslercollins.com

Thaddeus J. Weaver (*pro hac vice*)
Delaware Bar No. 2790
DILWORTH PAXSON LLP
800 N. King Street, Suite 202
Wilmington, Delaware 19801
Telephone: (302) 571-8867
Facsimile: (302) 351-8735
tweaver@dilworthlaw.com

*Counsel for Munich Reinsurance America Inc., formerly known as American Re-Insurance Company*

*/s/ Richard A. Galbo*
Richard A. Galbo (*pro hac vice*)
New York Bar No. 1970888
Ashlyn M. Capote (*pro hac vice*)
New York Bar No. 5200969
Michigan Bar No. P76342
GOLDBERG SEGALLA LLP
665 Main Street
Buffalo, New York 14203
Telephone: (716) 710-5810
rgalbo@goldbergsegalla.com
acapote@goldbergsegalla.com

Alissa K. Christopher
Texas Bar No. 11531020
COZEN O'CONNOR
1717 Main Street, Suite 3100
Dallas, Texas 75201
Telephone: (214) 462-3299
akchristopher@cozen.com

*Counsel for National Casualty Company, Nationwide Affinity Insurance Company of America, Nationwide Mutual Insurance Company, Scottsdale Insurance Company, and Wausau General Insurance Company*

-43-

/s/ Jennifer Henry
Jennifer Henry
ESTES THORNE EWING & PAYNE
PLLC
3811 Turtle Creek Blvd., Suite 2000
Dallas, Texas 75219
Telephone: (214) 599-4014
Facsimile: (214) 599-4099
jhenry@estesthorne.com

Michael J. Smith (*pro hac vice*)
Bryan W. Petrilla (*pro hac vice*)
STEWART SMITH
300 Four Falls, Suite 670
300 Conshohocken State Road
West Conshohocken, Pennsylvania 19428
Telephone: (484) 534-8300
Facsimile: (484) 534-9470
msmith@stewartsmithlaw.com
bpetrilla@stewartsmithlaw.com

*Counsel for Old Republic Insurance
Company*

/s/ J. Richard Harmon
J. Richard Harmon
Texas Bar No. 09020700
Jo Allison Stasney
Texas Bar No. 19080280
THOMPSON, COE, COUSINS & IRONS,
LLP
Plaza of the Americas
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
rharmon@thompsoncoe.com
jstasney@thompsoncoe.com

*Counsel for QBE Insurance Corporation*

/s/ Syed Omar Shah
Syed Omar Shah (*pro hac vice*)
New York Bar No. 5934237
WILLIAMSON, CLUNE & STEVENS
317 North Tioga Street
Ithaca, New York 14851
Telephone: (607) 273-3339
Facsimile: (607) 273-4164
sos@wcslaw.net

*Counsel for Security Mutual Insurance
Company*

/s/ Lance V. Clack
Lance V. Clack
Texas Bar No. 24040694
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090
lance.clack@figdav.com

Laura S. McKay (*pro hac vice* to be filed)
Illinois Bar No. 6207837
Douglas M. DeWitt (*pro hac vice* to be filed)
Illinois Bar No. 6274805
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 784-5415
Facsimile: (312) 784-5499
lmckay@hww-law.com
ddewitt@hww-law.com

*Counsel for Sparta Insurance Company, as
successor for certain limited purposes to
American Employers' Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing has been served upon

counsel of record for all parties via ECF on this 2nd day of October 2025.

*/s/ Betty X. Yang*
Betty X. Yang
