## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

THE HONORABLE BARBARA J. HOUSER
(RET.), IN HER CAPACITY AS TRUSTEE OF
THE BSA SETTLEMENT TRUST,

                                        Plaintiff,

v.                                                                    Case No. 3:23-cv-01592-S

ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY; *et al.*,

                                        Defendants.

## PLAINTIFF'S OPPOSITION TO NATIONAL SURETY INSURERS' AND ALLIANZ'S MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS OR TO DISMISS OR STAY ON ABSTENTION GROUNDS, AND PLAINTIFF'S OPPOSITION TO THE ABSTENTION ARGUMENTS RAISED IN THE UNDERSIGNED DEFENDANTS' <u>PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Jeffrey M. Tillotson
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3041

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone: (202) 772-2200
Facsimile: (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser
(Ret.), in her capacity as Trustee of the BSA
Settlement Trust*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    INTRODUCTION ....................................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................ 2

    A.    National Surety Files a Limited Coverage Action in Illinois State Court, and BSA Files a Separate Action in Texas Federal Court. ................................................ 2

    B.    BSA Files for Bankruptcy, Staying All Coverage Litigation. .................................. 4

    C.    The Trustee Files This Action, the Only Comprehensive Action Seeking to Resolve Coverage Obligations for All Abuse Claims Under All BSA and Local Council Policies. ............................................................................................ 4

    D.    National Surety and Allianz Attempt to Force the Trust to Litigate in Illinois. ......... 4

    E.    The Insurers Respond to the Original Complaint and the Competing Actions Are Stayed Pending the Supreme Court's Decision in *Purdue*. ................................ 5

    F.    This Court Again Stays This Action Following the Ruling in *Purdue*. ..................... 6

    G.    The Appellate Court for the First District of Illinois Rejects National Surety's and Allianz's Appeal of the Stay Order. ................................................................. 7

    H.    The Third Circuit Upholds Confirmation of the BSA Plan. ...................................... 7

    I.    This Court Lifts the Stay. .......................................................................................... 7

II.   ARGUMENT ............................................................................................................... 8

    A.    The Court Should Deny National Surety's Motion to Dismiss on *Forum Non Conveniens* Grounds. .............................................................................................. 8

        1.    *Forum Non Conveniens* Is Not an Appropriate Remedy. ......................................... 8

        2.    Even If *Forum Non Conveniens* Could Be Appropriate, the FNC Defendants Fail to Meet Their High Burden. ........................................................................... 10

            a)    The FNC Defendants Do Not Establish That the Illinois State Court Is an Adequate Forum. ........................................................................................ 11

            b)    Even If Illinois State Court Is an Available and Adequate Forum, the Public and Private Factors Do Not Favor Dismissal. ....................................... 12

i

(1)    The Private Factors Do Not Favor Dismissal. ............................................... 12

    a)    Private Factor 1:  Sources of Proof Are Located Within Texas. ............... 13

    b)    Private Factor 2:  Witnesses Are Also Located in Texas. ......................... 13

    c)    Private Factors 3 and 4:  It Is Unlikely That Any Viewing of Premises Will Be Required, and No Practical Problems Exist in Trying This Case in This Court. .................................................................................... 14

(2)    The Public Factors Likewise Do Not Support Dismissal. ........................... 15

    a)    Public Factor 1:  The Court Is Not Busier than Illinois State Court. ......... 16

    b)    Public Factor 2:  The Dispute Is Not More Connected to Illinois. ............. 17

    c)    Public Factors 3 and 4:  Texas Law Is Likely to Apply. ............................ 18

    d)    Public Factor 5:  This Case Does Not Represent an Unfair Burden on Texas Jurors. ............................................................................................. 19

B.    This Court Should Not Abstain from Exercising Jurisdiction over This Action on Abstention Principles. ................................................................................ 19

1.    Legal Standard. ................................................................................................ 20

2.    The "Exceptional Circumstances" Test of *Colorado River* Is Not Met. ................ 20

    a)    The Cases Are Not "Parallel." ............................................................... 21

    b)    Factor 2 Does Not Favor Abstention. ...................................................... 22

    c)    Factor 3 Does Not Favor Abstention. ...................................................... 22

    d)    Factor 4 Does Not Favor Abstention. ...................................................... 23

    e)    Factor 5 Counsels Against Abstention. .................................................... 24

    f)    Factor 6 Does Not Favor Abstention. ...................................................... 25

III.    CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All Heavy Movers De Mexico, S.A., De C.V. v. Armamex Int'l, Inc.*,
No. 1:20-cv-058, 2020 WL 8083672 (S.D. Tex. Nov. 17, 2020) ............................................12

*Am. Dredging Co. v. Miller*,
510 U.S. 443 (1994) ....................................................................................................................8

*Am. Family Life Assur. Co. of Columbus v. Biles*,
714 F.3d 887 (5th Cir. 2013) ....................................................................................................21

*Black Sea Inv., Ltd. v. United Heritage Corp.*,
204 F.3d 647 (5th Cir. 2000) ..............................................................................................23, 24

*In re Boy Scouts of Am.*,
137 F.4th 126 (3d Cir. 2025) ......................................................................................................7

*Boy Scouts of Am. v. Hartford Acc. & Indem. Co.*,
No. 3:19-CV-1318-B, 2020 WL 4530370 (N.D. Tex. Aug. 6, 2020).......................................15

*In re BP p.l.c. Secs. Litig.*,
109 F. Supp. 3d 946 (S.D. Tex. 2014) ......................................................................................18

*Brice v. C.R. England, Inc.*,
278 F. Supp. 2d 487, 489 (E.D. Pa. 2003) ............................................................................9, 10

*Brown v. Pac. Life Ins. Co.*,
462 F.3d 384 (5th Cir. 2006) ...............................................................................................19, 21

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ....................................................................................................15

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)...................................................................................................................20

*DDC Tech., LLC v. Google LLC*,
No. 3:22-CV-1263-B, 2023 WL 2518846 (N.D. Tex. Mar. 14, 2023)......................................16

*Dirtt Env't Sols., Inc. v. Falkbuilt, Inc.*,
No. 22-10329, 2024 WL 1634070 (5th Cir. Apr. 16, 2024)........................................................9

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ..............................................................................................10, 12

*DTEX, LLC, v. BBVA Bancomer, S.A.*,
    508 F.3d 785 (5th Cir. 2007) ...........................................................................9, 11

*Evanston Ins. Co. v. Jimco, Inc*.,
    844 F.2d 1185 (5th Cir. 1988) ...............................................................22, 24, 25

*Harrington v. Purdue Pharma, L.P*,
    603 U.S. 204 (2024)...............................................................................................6

*Igloo Products Corp. v. The Mounties, Inc.*,
    735 F. Supp. 214, 215 (S.D. Tex. 1990) ...........................................................15

*Indusoft, Inc. v. Taccolini*,
    No. A-12-CV-052-LY, 2012 WL 12883135 (W.D. Tex. Dec. 17, 2012) ...............8

*Insurance Safety Consultants LLC v. Nugent*,
    No. 3:15-CV-2183-B, 2017 WL 735460 (N.D. Tex. Feb. 24, 2017) ....................10

*Kellerman v. MCI Telecommunications Corp.*,
    112 Ill.2d 428 (1986) .............................................................................................6

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
    315 F.3d 494 (5th Cir. 2002) ..............................................................................24

*Leal v. Singh*,
    No. 4:17-CV-049-DC-DF, 2018 WL 5733186 (W.D. Tex. July 26, 2018)............9

*Mann Mf'g Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ..............................................................................15

*McClellan v. Carland*,
    217 U.S. 268 (1910)............................................................................................15

*McLellan v. Am. Eurocopter, Inc.*,
    26 F. Supp. 2d 947 (S.D. Tex. 1998) .......................................................11, 12, 16

*McLennan v. Am. Eurocopter Corp.*,
    245 F.3d 403 (5th Cir. 2001) ................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..................................................................................20, 23, 24

*Murphy's v. Uncle Ben's, Inc.*,
    168 F.3d 734 (5th Cir. 1999) .........................................................................22, 25

*Nationstar Mortgage LLC v. Knox*,
    351 F. App'x 844 (5th Cir. 2009) ..................................................................23, 24

*New England Ins. Co. v. Barnett*,
   561 F.3d 392 (5th Cir. 2009) ............................................................20

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)................................................................8, 9

*Pulse Supply Chain Sols., Inc. v. Tagliamonte*,
   No. 3:21-CV-2706-B, 2022 WL 1457972 (N.D. Tex. May 9, 2022) ....................21

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996)..................................................................8

*Rochon v. Hyatt Hotels Corp.*,
   No. 3:25-cv-00029-N, 2025 WL 2163765 (N.D. Tex. July 29, 2025) ....................9

*Schexnider v. McDermott Int'l, Inc.*,
   817 F.2d 1159 (5th Cir. 1987) ........................................................12

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)...............................................................9, 12

*SnyderGeneral Corp. v. Great Am. Ins. Co.*,
   928 F. Supp. 674 (N.D. Tex. 1996), *aff'd* 133 F.3d 373 (5th Cir. 1998)..............18

*St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*,
   78 F.3d 202 (5th Cir. 1996) ..........................................................18

*Stewart v. W. Heritage Ins. Co.*,
   438 F.3d 488 (5th Cir. 2006) ........................................................21

*Sydow v. Acheson & Co.*,
   81 F. Supp. 2d 758 (S.D. Tex. 2000) .................................................14

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*,
   796 F.2d 821 (5th Cir. 1986) ..........................................................9

*Tellez v. Madrigal*,
   223 F. Supp. 3d 626 (W.D. Tex. 2016)............................................11, 13

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
   758 F. Supp. 2d 366 (N.D. Tex. 2010) ...............................................11

*Vasquez v. Bridgestone/Firestone, Inc.*,
   325 F.3d 665 (5th Cir. 2003) ....................................................*passim*

*Walker Centrifuge Services LLC v. D&D Power, LLC*,
   550 F. Supp. 2d 620 (N.D. Tex. 2008) ...........................................23, 24

v

*West Gulf Maritime Association v. ILA Deep Sea Local 24*,
    751 F.2d 721, 728 (5th Cir. 1985) ........................................................................15

*Zurich Ins. Co. v. Baxter Int'l, Inc.*,
    173 Ill.2d 235 (1996) ...........................................................................................17

**Rules & Regulations**

Fed. R. Civ. P. 1 ...............................................................................................................1

**Other Authorities**

https://www.uscourts.gov/data-news/data-tables/2023/12/31/statistical-tables-
    federal-judiciary/c-3...........................................................................................17

Illinois Courts, *2023 Statistical Summary*
    https://ilcourtsaudio.blob.core.windows.net/antilles-
    resources/resources/2e8fe39f-d040-47ee-a2b5-
    d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf.......................16

Plaintiff, the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee ("Trustee") of the BSA Settlement Trust ("Trust"), by and through her undersigned counsel, hereby opposes the National Surety Insurers' and Allianz's Motion to Dismiss[1] on *Forum Non Conveniens* Grounds or Dismiss or Stay on Abstention Grounds (the "FNC Motion") (Dkt. No. 538)[2]; and the abstention arguments raised in the Undersigned Defendants' Motion to Dismiss the Amended Complaint in Part (the "Undersigned Defendants' Motion") (Dkt. No. 542).[3]

## I.    INTRODUCTION

The present insurance coverage action is the only coverage action that involves all of the insurance policies that were issued to the Boy Scouts of America ("BSA") and its Local Councils and all of the liabilities at issue under those policies. This comprehensive action presents the most "just, speedy, and inexpensive" avenue for determining liability. *See* Fed. R. Civ. P. 1. Moreover, the decision to retain jurisdiction over the entirety of this action is *entirely* within the Court's discretion, both in relation to *forum non conveniens,* as well as abstention, as one of the FNC Defendants' counsel has seemingly acknowledged. TrustApp0318. The Court should exercise that discretion to keep all Defendants in this case and permit the Trustee to litigate her insurance coverage claim in a single comprehensive action in her chosen forum.

Defendants' present attempt to dismiss or stay this action is not only inefficient, but also legally unfounded. First, it is black-letter law that *forum non conveniens* does not apply here—a

---

[1] National Surety and Allianz also join the Undersigned Defendants' Partial Motion to Dismiss the Amended Complaint, except for as to lack of personal jurisdiction. National Surety Insurers' and Allianz's Motion to Dismiss on *Forum Non Conveniens* Grounds or Dismiss or Stay on Abstention Grounds at 1. The Trustee incorporates her responses to the Undersigned Defendants' brief in this brief.

[2] The National Surety Insurers and Allianz are referred to herein as the "FNC Defendants." Any citations to the brief submitted in support of the FNC Motion shall be referred to as the "FNC Brief."

[3] The abstention arguments in the Undersigned Defendants' Motion are raised in Section IV of the Memorandum in Support of Undersigned Defendants' Partial Motion to Dismiss the Amended Complaint (the "UD Brief") by a subset of the Undersigned Defendants calling themselves the "Abstention Moving Defendants." The Trustee refers to those insurers as the "Undersigned Defendants" herein.

1

case that does not involve an alternative forum in an international jurisdiction, and where the state proceedings that the Defendants prefer to pursue in Illinois are far more limited than this case in federal court. Even if applicable, the Defendants do not come close to meeting their high burden to dismiss this case based upon the relevant *forum non conveniens* considerations. The fact that a minority of the insurer parties in this case allegedly have some tie to Illinois is simply not enough.

Second, Defendants' contention that the Court should abstain from hearing this case is incorrect. Abstaining from hearing this case in deference to an Illinois state court action that, when commenced and currently constituted, involves only a fraction of the insurer parties, insurance policies, and underlying Abuse Claims that are at issue in this case would result in precisely the sort of piecemeal litigation the abstention doctrine seeks to avoid. As discussed below, Defendants' motions are unsupported by the facts and the law, and should be denied.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    National Surety Files a Limited Coverage Action in Illinois State Court, and BSA Files a Separate Action in Texas Federal Court.

In 2017, National Surety filed a lawsuit in Illinois state court (the "Illinois Action"), in which it seeks a determination that it was not obligated to provide coverage under insurance policies that it issued to BSA for eighteen claims against BSA involving sexual abuse by former scout leader Thomas Hacker in the 1980's (the "Hacker Claims"). *See* A002-017.[4]

The Illinois Action is limited in scope, relating to the eighteen Hacker Claims (plus a single claim for contribution asserted by Allianz), and to a few insurance policies that could potentially provide coverage for those claims. Although National Surety named other insurers as defendants,

---

[4] Citations to "A__" refer to the Appendix in Support of National Surety Insurers' and Allianz's Motion to Dismiss on *Forum Non Conveniens* Grounds or Dismiss or Stay on Abstention Grounds, Dkt. No. 538-2; and citations to "TrustApp__" refer to Plaintiff's Consolidated Appendix filed contemporaneously herewith.

the Illinois Action only encompasses insurers that issued coverage during the years of the Hacker Claims. National Surety did not name all BSA insurers as defendants in the Illinois Action.

All of the other abuse claims against BSA (tens of thousands of them)—and the potential for insurance coverage for these claims under thousands of insurance policies—are not at issue in this Illinois Action. In the over two years following the filing of the complaint in Illinois that preceded the stay arising from BSA's bankruptcy filing, not once did National Surety or Allianz attempt to add to the Illinois Action any of the dozens of other insurers or hundreds of other policies that may respond to BSA sexual abuse liabilities. Not once in the years the Illinois Action was pending prior to BSA's bankruptcy filing did National Surety or Allianz seek to broaden the scope of the Illinois Action to determine coverage for the hundreds of other abuse claims asserted against BSA and pending prior to BSA's bankruptcy filing.

Although Defendants' motions assert that much had been done in the Illinois Action prior to BSA's bankruptcy filing, the reality is that there had been relatively little progress. Although that action had been pending for over two years prior to BSA's bankruptcy, not a single deposition had been taken and the Illinois state court had not issued a substantive ruling on any issue. Indeed, prior to the bankruptcy filing, BSA, National Surety, and Allianz appear to have devoted most of their litigation efforts towards squabbling over a forum dispute, without teeing up, much less resolving, any motions to address substantive coverage issues that might advance that action.

On August 24, 2018, BSA and several Local Councils filed a separate coverage action in Texas state court. This Texas state court litigation sought a broader scope of relief than the limited Illinois Action. Over the next several years, National Surety and BSA engaged in jurisdictional fights before the Illinois state court and the Texas state court as to where to litigate the two coverage actions. These fights were unresolved when BSA filed for bankruptcy.

### B.    BSA Files for Bankruptcy, Staying All Coverage Litigation.

BSA filed a voluntary petition under chapter 11 of the Bankruptcy Code on February 18, 2020 in the United States Bankruptcy Court for the District of Delaware.  BSA's bankruptcy filing stayed the Illinois Action, as well as all other claims against BSA.

BSA's Plan (TrustApp0158–309) (the "Plan") was confirmed by the Bankruptcy Court on September 8, 2022.  Under the Plan, the Trust was created to assume responsibility for determining and paying Abuse Claims as well as pursuing assets to pay such claims.  These assets included the rights under several thousand insurance policies issued to BSA and Local Councils—the subject of the Complaint, as well as the operative First Amended Complaint (the "Amended Complaint").

### C.    The Trustee Files This Action, the Only Comprehensive Action Seeking to Resolve Coverage Obligations for All Abuse Claims Under All BSA and Local Council Policies.

The Bankruptcy Court's order confirming the Plan was affirmed by the United States District Court for the District of Delaware on March 28, 2023 and the Plan became effective on April 19, 2023.  Am. Compl. ¶ 102, Dkt. No. 516.  On July 18, 2023, the Trustee filed this comprehensive action—seeking a global determination of coverage rights under all insurance policies issued by ninety-one Defendant insurers, and as to all sexual abuse claims against BSA. The Trustee also filed a motion to dismiss the Illinois Action.  Unlike prior actions, the original complaint, and the operative Amended Complaint in this case, is truly comprehensive—it involves more than 80 years of insurance coverage for BSA and Local Councils and over 3,000 policies (and 82 insurers), and seeks to resolve all insurance coverage for sexual abuse claims against BSA and the Local Councils.

### D.    National Surety and Allianz Attempt to Force the Trust to Litigate in Illinois.

After the Trustee filed this comprehensive action, on July 27, 2023, National Surety filed a motion seeking leave to amend its complaint in the Illinois Action.  More than a month later,

Allianz filed a motion seeking leave to amend its answer and counterclaims in the Illinois Action. Those proposed amended pleadings sought to add into the Illinois Action the dozens of additional insurers and thousands of policies that the Trustee already included in this comprehensive action.

In addition to seeking leave to amend their pleadings in the Illinois Action, National Surety and Allianz opposed the Trustee's motion to dismiss the Illinois Action. None of the other insurer parties in the Illinois Action opposed the Trustee's motion to dismiss. Nor have any of the other insurer Defendants in this comprehensive action intervened in the Illinois Action to advocate that their insurance coverage disputes with the Trust be litigated in that court.

### E.    The Insurers Respond to the Original Complaint and the Competing Actions Are Stayed Pending the Supreme Court's Decision in *Purdue*.

Meanwhile, this comprehensive action moved forward, as the Trustee served her complaint on the insurer Defendants, and those defendants largely filed their responses in the fall of 2023.

In December 2023, both the Illinois Court and this Court held hearings on the motions pending before them. On December 7, 2023, the Illinois Court heard oral argument on the motions filed by the Trustee, National Surety, and Allianz. The Illinois Court did not issue a ruling at that time, but instead scheduled a status conference for January 2024, and asked to hear about this Court's treatment of the motions pending before it.

On December 13, 2023, in response to a motion to stay filed by certain insurers, this Court decided to stay the action pending the United States Supreme Court's decision in *Harrington v. Purdue Pharma, L.P.* Recognizing that if this action were to be stayed, the reasons for such a stay applied equally to the Illinois Action, the Trustee sought a stay of the Illinois Action in January 2024. National Surety and Allianz opposed the Trustee's efforts to stay the Illinois Action, but, on May 8, 2024, the Illinois Court agreed with the Trustee and entered an order staying the Illinois Action until the Supreme Court issued a ruling in *Purdue*.

5

**F.      This Court Again Stays This Action Following the Ruling in *Purdue*.**

The Supreme Court issued a ruling in *Purdue* on June 28, 2024, holding that the third-party releases at issue specifically in that case were not permissible.  *Harrington v. Purdue Pharma, L.P*, 603 U.S. 204, 204 (2024).  The parties notified both this Court and the Illinois court of this development.  This Court, on request from the insurers, continued the stay of this case until the Third Circuit issued its ruling on confirmation of the BSA Plan (as the Third Circuit had waited to issue its ruling pending the *Purdue* decision).  Order, Dkt. No. 394.

In the Illinois Action, the Court issued a ruling staying the action, while granting in part, the Trustee's motion to dismiss on September 26, 2024 (the "Stay Order").  In the Stay Order, the Illinois Court correctly concluded that the Trustee had established by clear and convincing evidence that the comprehensive action in Texas included the "same parties" and the "same cause" as the Illinois Action, thus satisfying these requirements for dismissing the Illinois Action.  A0995–0996.  The Illinois Court went on to evaluate each of the four factors under *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428 (1986) and determined that those factors likewise warranted dismissal.  A0996–0998.  The Illinois Court further concluded that "the Illinois connection has diminished post-Plan," and that "as for the claimants, as set forth above, it appears that most Hacker claimants settled their claims.  For anyone who did not, their claims are channeled to the Trust and are now the responsibility of the Trustee, who is not in Illinois."  A0998.

The Illinois Court further noted that there are "two significant unknowns" that informed the Court's management of the Illinois Action:  (1) the pendency of the Third Circuit appeal (which has now been resolved in BSA's favor); and (2) "whether the Texas Federal Action will survive the pending motions to dismiss and proceed to a point where National Surety, Allianz, and other insurers will have the opportunity to assert inter-insurer claims."  A0998.  Given these uncertainties, the Illinois Court exercised its discretion to stay the Illinois Action.  The Illinois

Court has never granted the motions filed by National Surety and Allianz to amend their pleadings to expand the limited scope of that case to encompass all claims and insurance policies at issue here. National Surety and Allianz have filed a motion in the Illinois Action to lift the stay in that case and proceed with litigation there. This motion has not been ruled upon and is pending.

### G.    The Appellate Court for the First District of Illinois Rejects National Surety's and Allianz's Appeal of the Stay Order.

National Surety and Allianz appealed the Illinois Court's Stay Order, arguing that the Illinois Court abused its discretion in: (1) not granting the insurers leave to amend their pleadings; and (2) finding the Trustee met the threshold requirements for a stay. A1004. The appellate court subsequently affirmed the Stay Order. A1003.

### H.    The Third Circuit Upholds Confirmation of the BSA Plan.

On May 13, 2025, the Third Circuit issued its ruling upholding confirmation of the BSA Plan. *In re Boy Scouts of Am.*, 137 F.4th 126 (3d Cir. 2025). In its ruling, the Third Circuit confirmed that the BSA Plan was valid and effective. Accordingly, the insurance rights of BSA and its Local Councils that were transferred to the Trust on the Effective Date of the BSA Plan remain vested in the Trustee to pursue in this first-filed comprehensive action.

### I.    This Court Lifts the Stay.

Following the Third Circuit's ruling, this Court lifted the stay (*see* Order, Dkt. No. 430) and subsequently scheduled a status conference for August 28, 2025. *See* Order, Dkt. No. 451.

At that status conference, the Court directed the Trustee to file an amended complaint that incorporated the factual developments since the Trustee's original complaint.

On September 11, 2025, the Trustee filed the Amended Complaint. Dkt. No. 516. On October 2, 2025, the Defendants filed six motions to dismiss, including this motion seeking dismissal based on *forum non conveniens* and abstention grounds.

## II.    ARGUMENT

### A.    The Court Should Deny the Motion to Dismiss on *Forum Non Conveniens* Grounds.

The FNC Defendants argue that this Court should dismiss the Trustee's entire coverage action on grounds of *forum non conveniens.*  The FNC Defendants are wrong.  First, *forum non conveniens* is a remedy typically used when the alternative forum is a *foreign* court, not one within the United States, and any possible exception is rare and inapplicable here.  Second, even if *forum non conveniens* did apply, the FNC Defendants do not meet their high burden to dismiss this action on that basis.  "The *forum non conveniens* determination is committed to the sound discretion of the trial court[,]" and this Court should exercise its discretion here to reject the FNC Defendants' *forum non conveniens* argument.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

### 1.    *Forum Non Conveniens* Is Not an Appropriate Remedy.

*Forum non conveniens* is a remedy almost exclusively used when a forum in *another country* is more appropriate.  As the Supreme Court has said on multiple occasions, "to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in 'cases where the alternative forum is abroad.'"  *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 722 (1996) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449, n.2 (1994)); *see also Indusoft, Inc. v. Taccolini*, No. A-12-CV-052-LY, 2012 WL 12883135 at *2 (W.D. Tex. Dec. 17, 2012) ("The doctrine has continuing application in federal courts 'only in cases where the alternative forum is abroad.'") (citation omitted).

Indeed, all but one of the cases[5] that the FNC Defendants cite involves a motion to dismiss in favor of a forum in another country. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) (requesting a dismissal in favor of a forum in Mexico); *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986) (same, London); *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403 (5th Cir. 2001) (same, Canada); *Piper Aircraft Co.*, 454 U.S. at 255 (same, Scotland); *DTEX, LLC, v. BBVA Bancomer, S.A.*, 508 F.3d 785 (5th Cir. 2007) (same, Mexico); *Rochon v. Hyatt Hotels Corp.*, No. 3:25-cv-00029-N, 2025 WL 2163765 at *5 (N.D. Tex. July 29, 2025) (same, Saint Lucia).

Only in "rare instances" have courts previously held that the *forum non conveniens* doctrine might be applied to require transfer to a domestic state court. The Supreme Court has—at best— "left the door open, albeit by the slenderest of margins," for use of the *forum non conveniens* doctrine in this extreme circumstance. *Leal v. Singh*, No. 4:17-CV-049-DC-DF, 2018 WL 5733186 at *1–2 (W.D. Tex. July 26, 2018) (declining to dismiss and thus cause such an "extreme result"); *see generally Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (*forum non conveniens* applies "only in cases where the alternative forum is abroad," and "*perhaps in rare instances* where a state or territorial court serves litigational convenience best" (citation omitted) (emphasis added)).

The FNC Motion identifies only a single case that applied the *forum non conveniens* doctrine in the manner the FNC Defendants advocate here. In *Brice v. C.R. England, Inc.*, a federal

---

[5] FNC Defendants cite *Dirtt Env't Sols., Inc. v. Falkbuilt, Inc.*, No. 22-10329, 2024 WL 1634070 at *2 (5th Cir. Apr. 16, 2024), stating that the Fifth Circuit in that case affirmed "dismissal based on *forum non conveniens* grounds, based on the first-to-file rule." FNC Motion at 11. While the court affirmed, it clearly stated, "We express no opinion on the propriety of the district court's *forum non conveniens* analysis. We also express no opinion on which jurisdiction will be the appropriate forum for these claims." As such, this case supplies no support for the FNC Defendants' *forum non conveniens* argument. Moreover, the first-filed comprehensive insurance coverage action involving all BSA Abuse Claims, potentially applicable insurance policies; and insurer parties is this action brought by the Trustee.

court in Pennsylvania examined a situation where a car accident occurred in Ohio, the "central facts" regarding the accident were located in Ohio, all "witnesses, evidence, and investigations" were located in Ohio, and Ohio tort law governed.  278 F. Supp. 2d 487, 489 (E.D. Pa. 2003).  Two actions were filed—one in Pennsylvania and one in Ohio—whereby the "Defendants, allegations, and relief sought" were "identical."  *Id.* at 488–90.  The court agreed that Ohio was the proper forum under those circumstances.  *Id.* at 490–91.  *Brice* is completely inapposite to the facts here, a case where the evidence and parties are located around the country, and where the two cases were filed by different parties and involve a broader scope of policies, insurers, and issues than those at issue in the Illinois Action.

The FNC Defendants make no attempt to argue that rare circumstances warranting dismissal exist here.  In *Insurance Safety Consultants LLC v. Nugent*, this Court rejected the argument that a case fell within the possible "rare circumstances" to employ *forum non conveniens*, noting that defendants merely offered a "bald statement" that it did—a conclusory statement not sufficient to fall within a "doubly-rare" exception.  No. 3:15-CV-2183-B, 2017 WL 735460 at *5 n.4 (N.D. Tex. Feb. 24, 2017).  Here, the FNC Defendants do not even go that far, but still ask this Court to dismiss based on *forum non conveniens* when it does not apply.

### 2.    Even If *Forum Non Conveniens* Could Be Appropriate, the FNC Defendants Fail to Meet Their High Burden.

Even if dismissal for *forum non conveniens* could be an appropriate remedy, which it is not, the FNC Defendants do not meet their high burden to obtain that relief.  "Forum non conveniens is 'an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim.'"  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation omitted).  "Dismissal for forum non conveniens is appropriate only in 'exceptional circumstances,' where the defendant makes a strong showing that the alternative

forum would be significantly more convenient." *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 634 (W.D. Tex. 2016) (citation omitted). The burden is on the defendant as to "all elements" of the analysis. *DTEX*, 508 F.3d at 794.

In analyzing whether a claim should be dismissed on the basis of *forum non conveniens*, courts conduct a two-part test—first, whether an adequate alternative forum exists, and second, whether private and public factors favor dismissal in favor of this forum. *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 379 (N.D. Tex. 2010). In this case, the relevant considerations do not favor dismissal.

> **a)      The FNC Defendants Do Not Establish That the Illinois State Court Is an Adequate Forum.**

The FNC Defendants have not satisfied their burden to establish that the proffered Illinois state court is an available and adequate forum to litigate the full dispute. "An alternative forum is available when the entire case and all of the parties can come within the jurisdiction of that forum, and is adequate if the parties will be treated fairly and will not be deprived of all remedies." *McLellan v. Am. Eurocopter, Inc.*, 26 F. Supp. 2d 947, 950 (S.D. Tex. 1998). The FNC Defendants do not demonstrate that the majority of the insurers in the present case can or will come within the jurisdiction of the Illinois state court. Indeed, according to the FNC Defendants, only 18 of the 82 insurers named as parties in this case have ever been involved in the Illinois action. FNC Brief at 12. And there are certainly no indications that all insurer parties have consented or will consent to jurisdiction in Illinois. Indeed, during the two years that have passed since the Trustee first filed this action, no other insurer in the Illinois proceeding has joined the FNC Defendants in asking the Illinois state court to move forward and adjudicate their claims. Nor has any other insurer from this case intervened in Illinois and sought to litigate their coverage disputes with the Trustee there. It is thus, at best, uncertain that Illinois state court will constitute an available and adequate forum

for addressing all of the insurers and policies at issue here.  Thus, dismissal based on *forum non conveniens* is not warranted.  *See McLellan,* 26 F. Supp. 2d. at 952 (denying a *forum non conveniens* motion, finding the availability and adequacy of an alternative forum "questionable").

    **b)**    **Even If the Illinois State Court Is an Available and Adequate Forum, the Public and Private Factors Do Not Favor Dismissal.**

Even if the Court determines that *forum non conveniens* is applicable here *and* the Illinois state court provides an adequate alternative forum, the FNC Defendants still need to meet a high burden to evade the Trustee's chosen forum based upon the relevant "public" and "private" factors outlined by the Supreme Court.  "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem*, 549 U.S. at 430.  "Federal courts should provide great weight to a plaintiff's choice of forum when balancing the forum non conveniens factors.  The plaintiff's choice should be honored unless the balance of factors strongly weighs in favor of dismissal."  *All Heavy Movers De Mexico, S.A., De C.V. v. Armamex Int'l, Inc.*, No. 1:20-cv-058, 2020 WL 8083672 at *3 (S.D. Tex. Nov. 17, 2020) (the only exception to the standard is if the plaintiff is foreign).  "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial" in another forum.  *Dole Food Co.*, 303 F.3d at 1118; *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987).

Given the high standard, even close calls—unlike the call here—go to the Trustee as the non-movant.  The relevant factors do not come close to warranting dismissal here.

    **(1)**    **The Private Factors Do Not Favor Dismissal.**

In determining whether defendants meet this high burden, courts first look to four private factors, none of which support dismissal.  *Vasquez*, 325 F.3d at 672 (citation omitted).

### a) Private Factor 1: Sources of Proof Are Located Within Texas.

The first private factor looks at the "relative ease of access to sources of proof." *Id.* (citation omitted). Many—and perhaps the majority—of the sources of proof regarding BSA's comprehensive insurance program are located within Texas. BSA was headquartered in Texas for decades (since 1978), and records and information concerning its insurance policies and BSA's historic claims under the policies will be concentrated within Texas. Furthermore, to the extent further proof is required, individuals within the BSA organization are primarily located within Texas. The FNC Defendants' assertion that because "over 20%" of the insurers in this action are located in Illinois, somehow witnesses are "more likely to be in Illinois than anywhere else" is unavailing.[6] Indeed, a presence in Illinois for some insurers does not mean that they maintain their pertinent records or other sources of proof related to BSA claims and policies in Illinois, and the FNC Defendants do not say otherwise. In *Tellez*, the Texas district court agreed that when "some inconvenience would result to either party" regardless of trial location, the factor "does not favor dismissal." 223 F. Supp. 3d at 637. This factor does not warrant dismissal here.

### b) Private Factor 2: Witnesses Are Also Located in Texas.

The second private factor looks to "the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Vasquez*, 325 F.3d at 672 (citation omitted). For the same reason as Factor 1, although insurer witnesses will be in various locations, BSA witnesses are likely located within Texas. Moreover, the FNC Defendants' contentions rest on a false premise. The fact that over 20% of insurers allegedly have some

---

[6] FNC Brief at 13. Defendants also argue that because BSA will provide documents maintained in an "electronic format," these documents should not be considered located in Texas; this argument can be equally applied to the documents maintained by the "over 20%" of insurers allegedly located within Illinois. *See id.*

13

corporate nexus to Illinois—already a spurious reason to dismiss a case when nearly 80% of the carriers are located elsewhere—does not mean that their witnesses will be located there. By way of example, the signatory on relevant Allianz communications works in California. *See* TrustApp0311–313. Even if some of the insurer witnesses were in fact in Illinois, it would not change the analysis. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 769 (S.D. Tex. 2000) (where witnesses are in several places, "*forum non conveniens* should not be invoked simply to shift the inconvenience from one party to another"). This factor does not warrant dismissal.

**c)  Private Factors 3 and 4:  It Is Unlikely That Any Viewing of Premises Will Be Required, and No Practical Problems Exist in Trying This Case in This Court.**

The third private factor looks at "the possibility of view of premises, if view would be appropriate to the action." *Vasquez*, 325 F.3d at 672 (citation omitted). Both parties appear to agree that any viewing of premises is unlikely in this case, and is thus not a basis for dismissing this action. The fourth private factor also looks to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation omitted). No practical problems exist in trying this case in this Court, and the FNC Defendants do not cite to any that carry legal weight.

The overlap between the small-scale Illinois Action and the Trustee's comprehensive insurance coverage case set forth in her Amended Complaint in this action is certainly not a sufficiently compelling reason to dismiss the case. The FNC Defendants rely incorrectly upon the "first-filed rule," a rule that usually involves transfer or abstention, but generally is irrelevant under the *forum non conveniens* analysis and otherwise unavailing. *See* FNC Brief at 14–15.[7] This first-

---

[7] To the extent it has any application at all, the "first-filed" comprehensive insurance coverage action involving *all* BSA Abuse Claims and potentially responsive insurance policies is the case at bar, not the Illinois Action involving a small minority of insurers also party to this suit.

filed rule is considered when competing actions are filed in two different *federal* district courts—not one in state and the other in federal court. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."). Every case that the FNC Defendants cite on this issue involves competing federal court cases. For example, in *West Gulf Maritime Association v. ILA Deep Sea Local 24*, the court discussed how "the principle of comity requires federal district courts—*courts of coordinate jurisdiction and equal rank*—to exercise care to avoid interference with each other's affairs." 751 F.2d 721, 728 (5th Cir. 1985) (emphasis added); *see also Mann Mf'g Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (federal district courts in both New York and Texas); *Boy Scouts of Am. v. Hartford Acc. & Indem. Co.*, No. 3:19-CV-1318-B, 2020 WL 4530370 (N.D. Tex. Aug. 6, 2020) (Texas and Delaware). Though the FNC Defendants characterize *Igloo Products Corp. v. The Mounties, Inc.*, as involving a case that was "filed earlier [] in Oregon state court," FNC Brief at 14–15, they neglect to mention that, in that case, the plaintiff "subsequently removed the Oregon state court proceeding to Oregon federal court," a determinative fact. 735 F. Supp. 214, 215 (S.D. Tex. 1990).

It is black-letter law that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *McClellan v. Carland*, 217 U.S. 268, 282 (1910). Although there are certain rare instances where federal abstention may be appropriate, discussed in Section III.B, *infra*, these instances do not apply here.

The fourth factor does not warrant dismissal.

### (2)    The Public Factors Likewise Do Not Support Dismissal.

Just as with the private interest factors, the five relevant public interest factors also do not support dismissal under the extraordinarily high standard for *forum non conveniens*.

15

### a) **Public Factor 1: The Court Is Not Busier than Illinois State Court.**

The first public factor looks at "administrative difficulties flowing from court congestion[.]" *Vasquez*, 325 F.3d at 673 (citation omitted). The FNC Defendants purport to compare the number of cases filed in the Northern District of Texas between April 2022 and March 2023 with the number of cases filed in the Chancery Division of the Circuit Court of Cook County, Illinois in a different time period (all of 2023)[8], and argue that because more cases were filed in Texas, this case should proceed in Illinois state court. In support of their contention, the FNC Defendants cite to a single case comparing two federal district court dockets that did not involve a *forum non conveniens* motion, but rather a venue change motion under a statute. *See DDC Tech., LLC v. Google LLC*, No. 3:22-CV-1263-B, 2023 WL 2518846, at *8 (N.D. Tex. Mar. 14, 2023). The FNC Defendants misrepresent both the standard and the relevant data.

A comparison of federal vs. state court dockets should take into account differences in terms of disposition. *See McLellan*, 26 F. Supp. 2d at 952 ("[T]he Court rejects [the] implication that this Court's heavy caseload weighs in favor of dismissal," noting that, "the court is current on all docket obligations"). The question is not simply one of counting and comparing numbers of cases. This is even more true given that federal and state courts operate under different rules, and have different disposition timelines. Indeed, large-scale and complex insurance coverage litigation in the Chancery Court of Cook County, Illinois can move slowly given the competing obligations of that court. *See* TrustApp0320–328 (docket excerpt for *Cont'l Ins. Co. v. BorgWarner, Inc.*, No. 2004 CH 1708, a comprehensive insurance coverage action involving decades of insurance

---

[8] The FNC Brief cites to the figures for 2021. FNC Brief at 17 n.6. The figures for 2023 can be found at Administrative Office of the Illinois Courts, *2023 Statistical Summary* https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/2e8fe39f-d040-47ee-a2b5-d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf ("*2023 Summary*").

policies and tens of thousands of underlying asbestos bodily injury claims filed in the Cook County, Illinois Chancery Court in 2004 and still an active litigation docket).  Congestion in the Illinois Court can lead to a complex insurance coverage litigation languishing for two decades, a result that would be inconceivable in this Court, and one that would be extraordinarily unfair to the thousands of Abuse Claimants whose claims the Trustee is responsible for evaluating and, if appropriate, paying.[9]

> ### b) Public Factor 2: The Dispute Is Not More Connected to Illinois.

The second public factor looks to "the local interest in having localized controversies decided at home." *Vasquez*, 325 F.3d at 673 (citation omitted).  The Trustee brought this action on behalf of the Trust.  As discussed, BSA was and is based in Texas; most or all of the BSA insurance policies were issued to BSA in Texas, and (as noted immediately below) Texas law is likely to apply.  The FNC Defendants' continued insistence that this factor favors a forum in Illinois because about 20% of the insurers allegedly have a corporate tie to Illinois is unavailing given that nearly 80% do not.  Most of the Abuse Claims and policies at issue here have no connection to Illinois whatsoever.[10]  Indeed, the Illinois Court has previously acknowledged that the nexus between these insurance coverage disputes regarding Abuse Claims had diminished materially since the confirmation of BSA's bankruptcy plan and the establishment of the Trust.

---

[9] Moreover, simply looking at the numbers of cases filed in a respective court does not provide any indication on the type of or complexity of the case.  For instance, although over 5,300 cases were filed in the Northern District of Texas in the time period cited by the FNC Defendants, over a third of those cases (1,884) were prisoner petitions (many of which undoubtedly brought by pro se inmates).  *See* https://www.uscourts.gov/data-news/data-tables/2023/12/31/statistical-tables-federal-judiciary/c-3.

[10] The FNC Defendants cite to language from *Zurich Ins. Co. v. Baxter Int'l, Inc.*, 173 Ill.2d 235, 246 (1996) to support their position that, as a matter of Illinois public policy, Illinois abuse claimants have a right to participate in the coverage dispute given their substantial interest.  It is unclear how this is relevant, as the case at bar concerns the ability of *all* claimants to recover monetarily.

Furthermore, the FNC Defendants' discussion of Illinois "policy against compelling Illinois parties to litigate their claims as responsive counterclaims in an otherwise duplicative, out-of-state litigation" is irrelevant to the analysis under public factor two, and should be disregarded. FNC Brief at 18. This factor does not warrant dismissal.

### c) Public Factors 3 and 4: Texas Law Is Likely to Apply.

The third public factor looks to "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action[.]" *Vasquez*, 325 F.3d at 673 (citation omitted). The fourth public factor strives for "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law." *Id.* Defendants claim that these factors are "a wash" given the many parties involved, and thus that it is "too early to determine which states' laws will govern the issues in this dispute." FNC Brief at 19. If so, given the strong burden that the FNC Defendants must meet regarding both private and public factors, "a wash" counsels against dismissal. *See generally In re BP p.l.c. Secs. Litig.*, 109 F. Supp. 3d 946, 965 (S.D. Tex. 2014) (finding that, even if factors "tip the scale slightly" towards the other jurisdiction, this is not enough as "the private and public interest factors must weigh heavily in favor of England to disrupt the foreign plaintiffs' choice of forum"). Moreover, while other laws may indeed apply depending on policy language, the insurers know that, as a starting point, Texas law is at least a possibility here— more so than any other jurisdiction. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996) (finding that, even though two states both have connections to the lawsuit, Texas law should apply for reasons including that three of four policies were issued and delivered in Texas); *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 678 (N.D. Tex. 1996), *aff'd* 133 F.3d 373 (5th Cir. 1998). Insurance policies issued to a Texas insured, such as BSA,

have a strong possibility of having Texas law applied to the contractual obligations set forth therein. Accordingly, these two factors weigh against dismissal for *forum non conveniens*.

### d)  Public Factor 5:  This Case Does Not Represent an Unfair Burden on Texas Jurors.

The fifth public factor looks to "the unfairness of burdening citizens in an unrelated forum with jury duty." *Vasquez*, 325 F.3d at 673 (citation omitted).  FNC Defendants yet again repeat their prior arguments—that somehow Illinois has a "substantial connection" to this dispute while Texas has "little to no relationship," apparently for the same reasons previously discussed (over 20% of the defendant insurers are purportedly from Illinois).  FNC Brief at 19.  This argument— again—does not carry the day.  As noted, although the Defendants located around the world, most of the BSA policies were issued in Texas, and BSA was headquartered in Texas when these policies were issued and delivered.  Thousands of the Abuse Claims (more than every state but one) are being asserted by Texas residents.  Surely a Texas jury would not be more unfairly burdened than one in Illinois.  Accordingly, dismissal is now warranted on these grounds.

### B.    This Court Should Not Abstain from Exercising Jurisdiction over This Action on Abstention Principles.

The FNC Defendants argue in the alternative that this Court should abstain from exercising jurisdiction over this action given the pending action in Illinois.  The Undersigned Defendants also make a similar abstention argument (collectively, "Defendants," when arguments overlap).  As noted, this case involves thousands of insurance policies with 82 insurers; the original Illinois Action, as initially commenced and currently constituted, involves only two years of insurance policies and far fewer parties.  The Court's decision to apply abstention is entirely discretionary. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) (district court's abstention ruling reviewed for abuse of discretion).  Abstention in deference to the smaller-scale state court litigation

in Illinois is not warranted, and the Court should choose to exercise its discretion in denying dismissal or a stay based on abstention grounds.

### 1.    Legal Standard.

A federal court generally has a duty to adjudicate a case before it.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted).  Exceptions to this duty are rarely applied.  The applicable standard in this case is the rigorous *Colorado River* abstention doctrine.  UD Brief Motion at 32; FNC Brief at 20; *see also New England Ins. Co. v. Barnett*, 561 F.3d 392, 396 (5th Cir. 2009) ("[I]t is well settled in this circuit that a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard.").

### 2.    The "Exceptional Circumstances" Test of *Colorado River* Is Not Met.

*Colorado River* provides an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," whereby "abstention . . . is the exception, not the rule."  *Colorado River*, 424 U.S. at 813.  This is because federal courts have a "virtually unflagging obligation" to exercise jurisdiction conferred upon them by Congress or the Constitution.  *Id.* at 817.  Thus, Defendants must meet an extraordinarily high burden to show "exceptional circumstances" that abstention should be applied.  FNC Brief at 21 n.7.  Defendants do not seriously try to demonstrate "exceptional circumstances," and instead make vague conclusory statements that this high burden is met.  *Id.*; *see also* UD Brief at 33.

The Supreme Court has outlined certain factors that can be considered in determining whether a case is sufficiently "exceptional," noting that, the "balance [is] heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  An application of the relevant *Colorado River* factors demonstrates that this case is not one that merits *Colorado River* abstention.

a)        **The Cases Are Not "Parallel."**

The first step of the analysis involves determining whether competing proceedings in federal and state court are "parallel." Suits are parallel if they have "the same parties and the same issues." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006). Although Defendants claim that the two actions are the same, this is not true. The Illinois Action, as presently constituted, involves only the Hacker claims (plus Allianz's contribution claim and other intra-insurer claims) and the subset of insurance policies and insurers that may respond to those claims. This action involves *all* BSA Abuse Claims and *all* insurers. The issues and parties are simply not identical, and the two suits are not parallel under *Colorado River. See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013) (finding actions not parallel under *Colorado River* when one action "undisputedly involves additional defendants and issues not involved" in the other action). As the Undersigned Defendants acknowledge, the Illinois Action only concerns a "subset of the Defendants named in this action" and whether "*Illinois* Claims . . . are covered by insurance." UD Brief at 33. A subset of a much larger group of insurers is not parallel, nor is a legal issue related only to Illinois claims and their coverage by insurance parallel to the issues here. Because the proceedings are not parallel, abstention under *Colorado River* cannot occur. *Pulse Supply Chain Sols., Inc. v. Tagliamonte*, No. 3:21-CV-2706-B, 2022 WL 1457972, at *3 (N.D. Tex. May 9, 2022) ("The Court finds that *Colorado River* abstention is not warranted because the cases are not parallel," as "at this point the state action will not necessarily resolve all claims against Defendants, individually.").

Even if the Court finds that the proceeding in Illinois is "parallel" to this comprehensive action, the six *Colorado River* factors employed in this Circuit, *see Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006), demonstrate that abstention is not warranted. As an initial matter, the Trustee agrees with the FNC Defendants that Factor 1 ("assumption by either state or

federal court over a res") is inapplicable here.  *Id.*; National Surety Motion at 21.  The balance of the remaining factors do not support abstention.

### b)    Factor 2 Does Not Favor Abstention.

In analyzing the second factor, the "relative inconvenience of the fora," courts are not instructed to conduct a side-by-side analysis so much as to determine whether "the inconvenience of the federal forum is so great that this factor points toward[s] abstention."  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988).  If two fora are equally convenient or inconvenient, the factor is inapplicable, weighing against abstention.  *See Murphy's v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999).  The FNC Defendants do not attempt to make this requisite substantial showing and instead offer the conclusory statement that, "Illinois is the more convenient forum."  FNC Brief at 21.

The Undersigned Defendants argue that Illinois is a more convenient forum because the Illinois Action's claims, policies, and coverage issues relate to Illinois.  UD Brief at 34.  But, as discussed above, Texas is a more convenient forum than Illinois given BSA's historic connection to Texas, the number of Abuse Claims brought by Texans (more than any state but one), and the availability of pertinent documents and witnesses.  *See* § II.A, *supra*.

### c)    Factor 3 Does Not Favor Abstention.

The third factor looks at the risk of piecemeal litigation.  As the FNC Defendants acknowledge in a footnote, this factor does not look at whether litigation may be "duplicative," but rather only "piecemeal."  FNC Brief at 22 n.8 (citation omitted); *Evanston Ins. Co.*, 844 F.2d at 1192 ("The prevention of duplicative litigation is not a factor to be considered in an abstention determination.").  The Undersigned Defendants simply state, without any legal analysis, that "retaining jurisdiction over the Illinois Claims would result in "piecemeal litigation[.]"  UD Brief at 34.  In determining whether an action runs the risk of piecemeal litigation, courts apply a similar

test to the first *Colorado River* factor–whether the case involves jurisdiction of a res or property.

*See Evanston Ins. Co.*, 844 F.2d at 1192 ("Because this case does not involve jurisdiction over a res or property . . . there is no danger of inconsistent rulings affecting property ownership. Therefore, the avoidance of piecemeal litigation does not weigh in favor of abstention."). The Fifth Circuit has elaborated further:

> *Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of the third *Colorado River* factor is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property. When, as here, no court has assumed jurisdiction over a disputed res, there is no such danger. This factor therefore weighs against abstention.

*Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000) (emphasis in original). The FNC Defendants' quote of *Walker Centrifuge Services LLC v. D&D Power, LLC*, 550 F. Supp. 2d 620, 626 (N.D. Tex. 2008) (citation omitted) (emphasis added), for the proposition regarding the "concomitant danger of inconsistent rulings" conveniently leaves out the rest of the sentence—"*with respect to a piece of property*." This dynamic does not exist here, and thus this factor counsels against abstention.

### d)    Factor 4 Does Not Favor Abstention.

Factor four looks to the order in which jurisdiction was obtained by each forum. This factor should be "applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21. If the progress of the two suits is "much the same," including the fact that "no progress has been made on the merits of the case," the factor will weigh against abstention. *Black Sea*, 204 F.3d at 651. The Undersigned Defendants simply state that the Illinois Action was "filed first" and has made "substantially more progress," without further argument. UD Brief at 34–35. The FNC Defendants cite *Nationstar Mortgage LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) to support abstention because this case "has yet to progress beyond initial

23

pleadings motions." FNC Brief at 22. But the FNC Defendants leave out an important caveat—

*Nationstar* very clearly states that that this factor "*only*" favors abstention when a federal case has

not proceeded past filing the complaint. *Nationstar*, 351 F. App'x at 852 (citation omitted)

(emphasis added). This case has clearly progressed beyond the filing of the complaint. In this

case, the insurers have been properly served, and filed responses. Briefing is ongoing on various

issues, including this one, and discovery and mediation are underway as directed by the Court.

This is in stark contrast to Illinois, where the vast majority of the insurer parties in this case

are not a part of the Illinois Action (and thus no comprehensive briefings on any issues can occur).

Jurisdiction over most of the parties was obtained here first, and this is also the first forum to be

presented with a coverage dispute that addresses BSA's entire insurance coverage program. This

factor thus weighs against abstention. *See Kelly Inv., Inc. v. Cont'l Common Corp*., 315 F.3d 494,

499 (5th Cir. 2002) (analyzing this factor, finding that, even though the state action was technically

filed first, a party was added much later to that action, and certain issues arose in the federal forum

first); *Moses H. Cone*, 460 U.S. at 22 (noting, "no substantial proceedings" had occurred in the

state suit, so thus, "[i]n realistic terms, the federal suit was running well ahead of the state suit at

the very time that the District Court [had] decided to refuse to adjudicate the case"). *Walker

Centrifuge* is inapposite, because the parties in that case "agree[d] that more progress ha[d] been

made in the state court action[,]" which is not the case here. 550 F. Supp. 2d at 627–28.

### e)    Factor 5 Counsels Against Abstention.

"The absence of a federal-law issue does not counsel in favor of abstention[.]" *Evanston

Ins. Co.*, 844 F.2d at 1193. This is because the strong default presumption is in favor of a federal

court exercising jurisdiction and, thus, "the presence of state law issues weighs in favor of

surrender only in rare circumstances." *Id.* In *Black Sea*, the Fifth Circuit again reiterated this,

finding that a district court "improvidently accorded great weight to this factor[,]" as "the task is

to ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,'" to justify loss of federal jurisdiction." 204 F.3d at 651 (citation omitted). The FNC Defendants do not even attempt to claim that any of these rare circumstances exist. Nor do the Undersigned Defendants, simply resting their argument that the Illinois claims sound in contract, under state law. UD Brief at 35. Contract claims involving multiple parties and insurance contracts made under state law are certainly not a "rare circumstance." This factor is, at best, neutral.

### f) Factor 6 Does Not Favor Abstention.

The sixth factor looks to the "adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Murphy*, 168 F.3d at 738 (5th Cir. 1999). Contrary to Defendants' claims, "[t]his final consideration can only be a 'neutral factor or one that weighs against, not for, abstention." *Id*. at 739 (citation omitted); FNC Brief at 23; UD Brief at 35 (acknowledging the option of the factor being neutral, but also stating that it may "favor[] abstention"). This is because "there is no ban on parallel proceedings," so "[a] party who could find adequate protection in state court is not thereby deprived of its right to the federal forum[.]" *Evanston Ins. Co.*, 844 F.2d at 1193.

At best for Defendants, then, this is a neutral factor. But given that the scope of the Illinois Action is so narrow, it is unlikely the state court there can adequately protect the Trustee's rights against all insurers under all of their insurance policies. If there is "any substantial doubt as to this [factor], it would be a serious abuse of discretion to grant the stay or dismissal at all." *Murphy*, 168 F.3d at 739 (citation omitted). This factor thus also counsels against abstention.

## III. CONCLUSION

For the foregoing reasons, the Court should exercise its discretion in favor of resolving this case comprehensively and deny the FNC Motion and the abstention arguments raised by the Undersigned Defendants in their separate motion.

25

Dated:  October 23, 2025

Respectfully submitted,

/s/ _____

Jeffrey M. Tillotson
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone:  (214) 382-3041

- AND -

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:   (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser*
*(Ret.), in her capacity as Trustee of the BSA*
*Settlement Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was e-filed with the Clerk of the Court and will be served via email upon all counsel of record on this 23rd day of October, 2025.

/s/ *Jeffrey M. Tillotson* _____
Jeffrey M. Tillotson

26