## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, <br><br> Plaintiff, <br><br> v. <br><br> ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; *et al.*, <br><br> Defendants. | Case No. 3:23-cv-01592-S |

**PLAINTIFF'S OPPOSITION TO 1) BRIEF IN SUPPORT OF MOTION BY DEFENDANTS GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, ARROWOOD INDEMNITY COMPANY, IN LIQUIDATION, AXIS SPECIALTY INSURANCE COMPANY, AXIS SURPLUS INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, EVEREST NATIONAL INSURANCE COMPANY, GENERAL STAR INDEMNITY COMPANY, SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION, AND LONDON MARKET INSURERS (WINTERTHUR SWISS AND LONDON & EDINBURGH) TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); AND 2) MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS ARCH INSURANCE COMPANY, ASPEN SPECIALTY INSURANCE COMPANY, AND COLONY INSURANCE COMPANY TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Jeffrey M. Tillotson
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3041

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)

**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser
(Ret.), in her capacity as Trustee of the BSA
Settlement Trust*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

RELEVANT FACTUAL BACKGROUND............................................................. 3

ARGUMENT ........................................................................................................... 5

I.    THE TRUSTEE'S CLAIM FOR DECLARATORY JUDGMENT IS RIPE FOR REVIEW AND THEREFORE JUSTICIABLE .............................................. 5

    A.    Ripeness and the Declaratory Judgment Standard............................... 5

    B.    The Practical Likelihood of Finding Defendants Liable Is High........................ 7

    C.    The Requested Relief Is Not Speculative. ......................................... 10

II.    FOR PURPOSES OF JUDICIAL ECONOMY, DEFENDANTS SHOULD ONLY BE DISMISSED IF THEY ARE BOUND BY THE REMAINING DEFENDANTS' RESOLUTION OF THE CASE....................................................... 12

III.    ARROWOOD'S RIPENESS ARGUMENTS ARE ENTIRELY WITHOUT MERIT ..................................................................................... 13

IV.    CONCLUSION.......................................................................................... 14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
    961 F.2d 32 (2d Cir. 1992) ..................................................................................6

*AXA Re Prop. & Cas. Ins. Co. v. Day*,
    162 F. App'x 316 (5th Cir. 2006) .......................................................................10

*Benefytt Techs., Inc. v. Capitol Specialty Ins. Corp.*,
    No. CV N21C-02-143 PRW CCLD, 2022 WL 16504 (Del. Super. Ct. Jan. 3,
    2022) ...................................................................................................................12

*Browning–Ferris Indus. of Ala., Inc. v. Alabama Dep't of Envtl. Mgmt.*,
    799 F.2d 1473 (11th Cir. 1986) ............................................................................6

*Carolina Cas. Ins. Co. v. Tutle & Tutle Trucking, Inc.*,
    No. CIV.A.3:09-CV-2377-D, 2010 WL 1459207 (N.D. Tex. Apr. 12, 2010) .......11

*Century Indem. Co. v. Marine Group, LLC*,
    848 F. Supp. 2d 1229 (D. Or. 2012) .....................................................................6

*Danaher Corp. v. Travelers Indemnity. Co.*,
    414 F. Supp. 3d 436 (S.D.N.Y. 2019) ...............................................................9, 10

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
    241 F.3d 154 (2nd Cir. 2001) ............................................................................6, 9

*Falls Lake Nat'l Ins. Co. v. Rodriguez*,
    No. EP-18-CV-66-PRM, 2018 WL 9877954 (W.D. Tex. Aug. 14, 2018) .............11

*Fed. Ins. Co. v. CompUSA, Inc.*,
    2001 WL 1149109 (N. D. Tex. Sept. 26, 2001) ...................................................11

*Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
    623 A.2d 1133 (Del. Super. Ct. 1992) .....................................................10, 12, 13

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*,
    290 Conn. 767 (2009) .........................................................................................10

*Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*,
    35 A.D.3d 253, 826 N.Y.S.2d 55 (1st Dep't 2006) ...............................................10

*Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*,
    858 F.3d 916 (5th Cir. 2017) ................................................................................5

*Mine Safety Appliances Co. v. AIU Ins. Co.*,
No. CVN10C07241MMJCCLD, 2014 WL 605753 (Del. Super. Ct. Jan. 21,
2014) ...................................................................................................................................12

*Orix Credit All., Inc. v. Wolfe*,
212 F.3d 891 (5th Cir. 2000) ...........................................................................................5

*Raytheon Co. v. Cont'l Cas. Co.*,
123 F. Supp. 2d 22 (D. Mass. 2000) ..............................................................................10

*RLI Ins. Co. v. 2 G Energy Sys., LLC*,
581 F. Supp. 3d 817 (W.D. Tex. 2020)............................................................................5

*Ross Dev. Corp. v. Fireman's Fund Ins. Co.*,
809 F. Supp. 2d 449 (D.S.C. 2011)..................................................................................6

*RSUI Indem. Co. v. Enbridge (U.S.) Inc.*,
No. CIV.A. H-08-1807, 2008 WL 5158179 (S.D. Tex. Dec. 9, 2008)....................................7

*Seattle Times Co. v. Nat'l Sur. Corp.*,
No. C13-1463RSL, 2016 WL 3033498 (W.D. Wash. May 27, 2016) ................................6, 7

*Shields v. Norton*,
289 F.3d 832 (5th Cir. 2002) ...........................................................................................5

*Stoncor Group., Inc. v. Peerless Ins. Co.*,
322 F. Supp. 3d 505 (S.D.N.Y. 2018) ...............................................................................6

*Texas v. West Publ'g. Co.*,
882 F.2d 171 (5th Cir. 1989) ...........................................................................................5

*Tocci Bldg. Corp. of N.J. v. Va. Sur. Co.*,
750 F. Supp. 2d 316 (D. Mass. 2010) ..............................................................................6

*Triyar Companies, LLC v. Lexington Ins. Co.*,
No. 3:12-CV-294, 2013 WL 3280033 (S.D. Tex. June 27, 2013)................................5, 11, 12

*Warren v. Am. Bankers Ins.*,
507 F.3d 1239 (10th Cir. 2007) .......................................................................................6

*Wild Flavors, Inc., v. Wausau Underwriters Ins. Co.*,
No. CV 2:24-006-DCR, 2025 WL 2966261 (E.D. Ky. Oct. 21, 2025) ...............................10

**Statutes**

28 U.S.C. § 2201(a) ...........................................................................................................5

**Rules & Regulations**

Fed. R. Civ. P. 1 ...................................................................................................................12

**Other Authorities**

Boy Scouts of America to Pay $7m in Sexual Abuse Case, The Guardian
    (Dec. 15, 2014, 8:53 PM),https://www.theguardian.com/us-
    news/2014/dec/16/boy-scouts-of-america-to-pay-us7m-in-sexual-abuse-case. .......................9

10A Charles Alan Wright, Arther R. Miller & Mary Kay Kane, Federal Practice
    and Procedure, § 2757 (2d ed. 1983) ........................................................................6

*Sexual Assault Charges*, Morris County Prosecutor's Office (Jan. 18, 2019),
    https://www.morriscountynj.gov/Departments/Prosecutor/Prosecutor-Press-
    Releases/Former-Boy-Scout-Assistant-Scoutmaster-Sentenced-on-Sexual-
    Assault-Charges ...............................................................................................................9

Tom Nobile, *Boy Scouts Sexual Abuse Case:  Former Scout Settles Lawsuit
    Before Trial*, NorthJersey.com (June 7, 2018, 1:50 PM),
    https://www.northjersey.com/story/news/new-jersey/2018/06/07/boy-scouts-
    sexual-abuse-trial-civil-case-involves-former-scout-leader/675038002/ ...................................8

Plaintiff, the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee ("Trustee") of the BSA Settlement Trust ("Trust"), by and through her undersigned counsel, hereby opposes the Motions of the so-called "No-Demand Insurers," Dkt. No. 531, and the "Excess Insurers," Dkt. No. 535[1], and states the following:

## INTRODUCTION

These motions are brought by insurers that issued excess insurance policies to BSA and/or its Local Councils and argue that their excess insurance policies have not yet been impacted by Abuse Claims, so they should be dismissed from this action, including the Trustee's claims for declaratory relief that the Undersigned Defendants agreed in their motion should proceed.  In doing so, certain Excess Insurers and the No-Demand Insurers (collectively the "Moving Defendants") contend that the Trustee's claims against them seeking declaratory relief are not yet ripe, and, accordingly, that the Trustee's claims as to these particular insurers are non-justiciable. Specifically, the Moving Defendants argue that (1) their policies have not yet been billed for Abuse Claims or otherwise impacted by Abuse Claims; (2) there is no practical likelihood that the excess policies issued by these insurers will be reached; and (3) the Trustee's requested declaratory relief as to these particular excess insurers and their policies would be speculative.  Moving Defendants' arguments fail as a matter of law and common sense.[2]

---

[1] The Moving Defendants' Motions also reiterate largely the exact same arguments and authorities regarding their contentions that the Trustee's First Amended Complaint failed to state claims for (1) common law bad faith; (2) violations of Chapter 541 of the Texas Insurance Code; and (3) breach of contract, all of which are addressed in the Trustee's Opposition to Undersigned Defendants' Motion to Dismiss.  The Trustee's arguments and contentions in her Opposition to Undersigned Defendants' Motion to Dismiss are incorporated by reference herein.  This brief solely addresses the additional argument advanced by the No-Demand Insurers, and also asserted by several insurers in a paragraph in the Excess Insurers' motion, namely that the Trustee's claim for declaratory judgment is not ripe and therefore fails to present a justiciable claim.

[2] Although the Excess Insurers' Motion (Dkt. No. 531) is joined by a larger number of insurers, only two insurers, Arrowood and Swiss Re, assert a ripeness argument.

1

Courts throughout the country, including courts in the Fifth Circuit, have recognized that an insurance coverage dispute with excess insurers is justiciable, even where an excess insurer's obligations to pay claims have not yet been triggered by an underlying liability, but there is a practical likelihood they will be.

In this case, the Trust has already allowed over $12 billion in Abuse Claims applying the criteria and values set forth in BSA's Plan and the Trust Distribution Procedures ("TDPs"), an amount that far exceeds the total face limits of the policies issued to BSA. Beginning in September 2024, the Trustee issued bills to the insurers that issued policies to BSA and its Local Councils demanding that such insurers pay for the Abuse Claims that the Trustee has determined and allowed. With each passing quarter, the Trustee evaluates and determines additional Abuse Claims and tenders those claims to the Defendants, all of whom have refused to unconditionally pay such claims. The Trust's evaluation and determination of Abuse Claims is ongoing, and additional insured losses continue to accrue.

The aggregate amount of the Trust's liability is staggering and growing daily. It is not a question of whether the insurance policies issued by the Moving Insurers will be implicated, but rather when and by how much. Dismissing these insurers from this litigation until their policies have been billed and once they have refused to pay would be both inefficient and unwarranted, because the Moving Insurers would inevitably seek to re-litigate issues decided in their absence before their policies were billed. The Moving Defendants have made clear in their motions and otherwise that they have no intention of paying any Abuse Claims that will inevitably be tendered to them by the Trustee for payment. Accordingly, the Trustee's dispute with these insurers is ripe, and their motions to dismiss fail.

## RELEVANT FACTUAL BACKGROUND

The First Amended Complaint ("FAC") (Dkt. No. 516) and the various oppositions filed by the Trustee to the other insurers' motions to dismiss set forth in detail the history of BSA's insurance program; the Abuse Claims; the BSA bankruptcy case and confirmed Plan, including the TDPs; the establishment of the Trust; the Trust's processing and determination of Abuse Claims to date; the Trust's tendering of Abuse Claims to insurers with demands for payment; the Defendant insurers' refusals to pay; and the Trust's ongoing processing and determination of Abuse Claims. Those allegations are extensive and will not be restated in full here for brevity's sake, but are incorporated by reference. However, as relevant to the contentions of the Moving Defendants, the Trustee reiterates the following:

On the Effective Date of the BSA Plan, the more than 82,000 childhood sexual abuse claims (the "Abuse Claims") filed in BSA's Chapter 11 cases were channeled to the Settlement Trust. The Settlement Trust assumed liability for such claims and is required to evaluate and process the Abuse Claims under the TDPs and the Trust Agreement. FAC ¶¶ 108, 130.

Beginning in September 2024, the Trust has billed insurers on a quarterly basis, demanding payment of specific amounts for specifically identified individual Abuse Claims. *Id*. ¶ 155. "The total value of the claims billed to the insurers to date (through Q2 2025) is $12,348,332,122." *Id.* "As of September 9, 2025, the Trust has not received any unconditional payment for any Abuse Claim." *Id*. "No insurer has affirmed that it will unconditionally pay any amount for any Abuse Claim for which it has received a demand for payment in compliance with its policies." *Id*.

In response to these demands the Defendants have refused to pay the claims and have instead disputed the Trustee's claims for insurance coverage. *Id*. ¶ 156. The Defendants, including the Excess and No-Demand Insurers, have issued correspondence in which they have set forth

coverage defenses, disputed the Abuse Claims, and contested the Trustee's claims for insurance coverage. *Id*.

Although the various policies and provisions set forth in the Moving Defendants' Motions speak for themselves and the Trustee disputes any characterization of the policy language cited by the Moving Defendants, the Trustee agrees that the Moving Defendants issued certain insurance policies that attach at excess levels, above other insurance, and respond to liabilities, such as Abuse Claims, that exceed the limits provided by underlying insurance policies. The No-Demand Insurers, by way of example, acknowledge in their brief that they each issued multiple excess general liability insurance policies to BSA, and that the lowest attachment point for any Arch insurance policy is $37.5 million; for any Aspen insurance policy is $27.5 million; and for any Colony policy is $47.5 million. No-Demand Insurers' Memorandum of Law in Support of Mot. of Defs. at 4–6, Dkt. No. 533, (the "No-Demand Insurers' Brief"). This means that once the practical likelihood comes to pass that liabilities for Abuse Claims exceed these thresholds in the years in which these Defendants issued the policies attaching at these points, the Trust will tender Abuse Claims to these insurers with demands for payment. Indeed, this is precisely what has happened with certain Excess Insurers (who are not asserting a ripeness argument), who have been billed for Abuse Claims that exceed the attachment points of their policies and trigger their obligations. To date, these Excess Insurers have refused to pay anything for any Abuse Claim. Accordingly, the Trustee has asserted breach of contract counts against these Excess Insurers in her Amended Complaint. And based on the coverage defenses the Defendants, including the No-Demand Insurers, have asserted in their correspondence and, indeed, acknowledged in their motion, it is inevitable that the No-Demand Insurers will also refuse to pay.

## ARGUMENT

**I.    THE TRUSTEE'S CLAIM FOR DECLARATORY JUDGMENT IS RIPE FOR REVIEW AND THEREFORE JUSTICIABLE**

### A.    Ripeness and the Declaratory Judgment Standard.

A declaratory judgment action is ripe for adjudication when there is an "actual controversy" between the parties.   28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"); *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).   The "actual controversy" standard of the Declaratory Judgment Act is identical to the "case or controversy" standard of Article III of the United States Constitution, which requires the existence of a case or controversy for a court to have jurisdiction over an action. *Orix*, 212 F.3d at 896 (citing *Texas v. West Publ'g. Co.*, 882 F.2d 171, 175 (5th Cir. 1989)).   To determine whether an actual controversy exists, courts look at the "practical likelihood that a controversy will become real."   *RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 824 (W.D. Tex. 2020) (citing *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)).   A "'specific and concrete' threat of litigation can establish a justiciable controversy."   *RLI*, 581 F. Supp. at 824 (citing *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2017)). An action is unripe only when it is "premature or speculative."   *Shields*, 289 F.3d at 835. "Declaratory judgment actions are *often* used to determine whether insurance coverage exists for damage caused by a past event, even in cases in which the plaintiff's damages have not yet been determined."   *Triyar Companies, LLC v. Lexington Ins. Co.*, No. 3:12-CV-294, 2013 WL 3280033, at *3 (S.D. Tex. June 27, 2013).

Like courts in the Fifth Circuit, courts elsewhere hold that an actual controversy exists when there is a practical likelihood that the controversy will become real.   For example, the

Eleventh Circuit requires courts to analyze "the practical likelihood that the contingencies will occur[.]" *Browning–Ferris Indus. of Ala., Inc. v. Alabama Dep't of Envtl. Mgmt.*, 799 F.2d 1473, 1478 (11th Cir. 1986) (citing 10A Charles Alan Wright, Arther R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2757 at 587 (2d ed. 1983)).  As articulated by the Second Circuit, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citation omitted). Applying this law in *Stoncor Group., Inc. v. Peerless Ins. Co.*, the court found an insured plaintiff's declaratory judgment action on the duty to indemnify to be ripe despite the fact that the insured plaintiff had not yet been found liable for damages in the underlying action.  322 F. Supp. 3d 505, 511 (S.D.N.Y. 2018) (quoting *Associated Indem. Corp.*, 961 F.2d at 35).  The court reasoned that liability was a "sufficiently 'practical likelihood'" because the insured party was a defendant in a negligence suit that sought to determine its liability.  *Stoncor*, 322 F. Supp. at 405 (quotations omitted).

For the same reason, courts throughout the country "generally find that a claim against an excess insurer is ripe for adjudication if there is a substantial, reasonable, and/or practical likelihood that the dispute will trigger the excess policies." *Seattle Times Co. v. Nat'l Sur. Corp.*, No. C13-1463RSL, 2016 WL 3033498, at *3 (W.D. Wash. May 27, 2016) (*citing Warren v. Am. Bankers Ins.*, 507 F.3d 1239, 1241 (10th Cir. 2007); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177–78 (2nd Cir. 2001); *Century Indem. Co. v. Marine Group, LLC*, 848 F. Supp. 2d 1229, 1237 (D. Or. 2012); *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 461–62 (D.S.C. 2011); *Tocci Bldg. Corp. of N.J. v. Va. Sur. Co.*, 750 F. Supp. 2d 316, 321–22 (D. Mass. 2010)).  The court in *Seattle Times* stated that, even though it was undisputed that the

underlying primary insurance policies had not exhausted, a claim for declaratory relief surrounding excess policies was ripe because there was a substantial likelihood of the excess policies attaching. *Id*. at *4.

**B.    The Practical Likelihood of Finding Defendants Liable Is High.**

Texas federal courts have permitted declaratory judgments to proceed against excess insurers even when underlying insurance has not been exhausted, when the chance of the policies attaching is "sufficiently likely."  In *RSUI Indem. Co. v. Enbridge (U.S.) Inc.*, No. CIV.A. H-08-1807, 2008 WL 5158179, at *1 (S.D. Tex. Dec. 9, 2008), an umbrella insurer filed a declaratory judgment claim for the determination that its policy with the insured did not cover a personal injury claim following a jobsite accident.  The insured party was in active litigation with the injured employee, liability had not been established, and the insured had not exhausted its primary insurance. *Id.*  Nonetheless, the district court ruled that the chance the umbrella insurer policy attaching was "sufficiently likely to justify judicial intervention." *Id.* at 2.  The court stated further that, "[t]he fact that a different and unrelated condition of coverage, i.e., exceeding the primary policy limits, has yet to be determined makes this coverage dispute no less real." *Id.*

It is sufficiently likely that the Moving Defendants will face liability related to their excess insurance policies' coverage of Abuse Claims.  Indeed, certain Excess Insurers have already been billed for Abuse Claims that the Trustee asserts exceed the underlying insurance and trigger their policies.  Moreover, tens of thousands of Abuse Claims *still* awaiting processing.  FAC § D (¶¶ 130–42).  The Excess Insurers devote a single paragraph of their Brief in Support of Motion by Defendants (the "Excess Insurers' Brief") to argue ripeness, stating that, "[n]o ripe controversy exists" because, at present, some Defendants "have not yet breached any policy" or have not

7

"received bills from the Trust." Excess Insurers' Br. at 25.[3]  The No-Demand Insurers contend the same, stating that it is "not likely" that the No-Demand Insurers' policies will ever attach, and that the Court would be issuing a "purely advisory opinion" with respect to these policies.  No-Demand Insurers' Br. at 1–2.  But a realistic review of the facts asserted by the Trustee in her First Amended Complaint reveals there is more than a practical likelihood that the Moving Defendants' policies will be reached and, in some cases, already have been triggered and billed for Abuse Claims by the Trustee.  The allowed amount of Abuse Claims the Trust has already determined exceeds $12 billion.  There can be little doubt that the Trust's liability for the tens of thousands of additional Abuse Claims the Trust has not yet determined will exceed the attachment points for the Moving Defendants' excess policies and trigger the obligations for those policies to pay.

The Trustee and the Moving Defendants are in a position like the parties in *RSUI*.  Here, the total value of the Abuse Claims against the Trust has not been fully determined, but the volume of Abuse Claims and the magnitude of their liability, given the horrific nature of the claims, is "sufficiently likely to justify judicial intervention."  *Id.*  For example, before the bankruptcy proceedings, the Boy Scouts settled for an undisclosed amount with three former Scouts in 2018, where the plaintiffs were allegedly subjected to repeated abuse during the 1990s.[4]  One of the three former Scouts described the alleged abuse encompassed by the settlement as including "hundreds" of incidents of oral sex, incidents where the perpetrators operated a webcam while the Scout was naked on the floor, and an incident involving a situation where the abuser abused multiple Scouts at the same time.  *Id.*  The perpetrator was later sentenced to ten years in prison on sexual assault

---

[3] Those Defendants that are a part of the Excess Insurers' Motion which have received bills do not contest ripeness. Excess Insurers' Br. at 25 n.8.
[4] Tom Nobile, *Boy Scouts Sexual Abuse Case:  Former Scout Settles Lawsuit Before Trial*, NorthJersey.com (June 7, 2018, 1:50 PM), https://www.northjersey.com/story/news/new-jersey/2018/06/07/boy-scouts-sexual-abuse-trial-civil-case-involves-former-scout-leader/675038002/.

charges for acts of sexual penetration committed against the same three Scouts.[5]  In another case, a jury found the Boy Scouts liable for $7 million in damages for sexual abuse by a Scout leader of a Scout in the 1970s.[6]  These are just a few illustrative examples of the sorts of abuse at issue in the Abuse Claims for which the Trust now holds liability.[7]  For Claimants who elect the Matrix claims process, FAC § D (¶ 133), individual claim values can be in the millions of dollars based on the values in the TDPs.  And under the IRO process, individual awards are meant to replicate a what jury award would be to a Claimant outside of the Trust's process, with potential values for single claims in the millions of dollars.  Given the number of Abuse Claims presented to the Trust and their values, the notion that Abuse Claims will not ultimately implicate the Moving Defendants' policies, in whole or in part, is fanciful.

Similar to Texas, other jurisdictions have held, in insurance coverage cases in the mass tort context, that declaratory judgments are proper against excess insurers whose policies have not attached, so long as there was a practical likelihood of the excess policies attaching.  Courts have looked to the number of outstanding claims against an insured party as well as the magnitude of the claims' potential value.  *See Danaher Corp. v. Travelers Indemnity. Co*., 414 F. Supp. 3d 436, 467 (S.D.N.Y. 2019) (stating that the "ever-growing number of [] [c]laims" and the "extent of [the insured]'s exposure" supported a practical likelihood of attachment surrounding asbestos litigation); *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177–78 (2d Cir. 2001) (stating that, for an insured which had an estimated 900 diethylstilbestrol (DES) claims still

---

[5] *Former Boy Scout Assistant Scoutmaster Sentenced on Sexual Assault Charges*, Morris County Prosecutor's Office (Jan. 18, 2019), https://www.morriscountynj.gov/Departments/Prosecutor/Prosecutor-Press-Releases/Former-Boy-Scout-Assistant-Scoutmaster-Sentenced-on-Sexual-Assault-Charges.

[6] *Boy Scouts of America to Pay $7m in Sexual Abuse Case*, The Guardian (Dec. 15, 2014, 8:53 PM), https://www.theguardian.com/us-news/2014/dec/16/boy-scouts-of-america-to-pay-us7m-in-sexual-abuse-case.

[7] Due to confidentiality concerns, the Trustee is not disclosing information in this filing about any of the specific Abuse Claims that it has processed.  But the foregoing examples are illustrative of the nature of the liabilities that arise in Abuse Claims, including those that have been presented to the Trust.

pending, there was a practical likelihood of incurring $100 million or more in additional damages, causing the excess policies to attach); *Danaher*, 414 F. Supp. at 466–67 (quoting *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 35 A.D.3d 253, 826 N.Y.S.2d 55, 56 (1st Dep't 2006)); *see also Wild Flavors, Inc., v. Wausau Underwriters Ins. Co.*, No. CV 2:24-006-DCR, 2025 WL 2966261, at *11 (E.D. Ky. Oct. 21, 2025) (holding that a declaratory judgment claim was justiciable against an excess insurer in a mass tort case, even though the excess policy had not been triggered); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 814 (2009) (remanding to the trial court to determine whether it was "reasonably likely" that the excess policy coverage would be triggered in a mass tort case); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30–31 (D. Mass. 2000) (stating in a pollution damages case that there is no need for 'absolute proof' that an excess policy will be reached, and that a plaintiff need only show a 'reasonable likelihood') (quoting *Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. Ct. 1992)).

When these tens of thousands of Abuse Claims have been processed by the Trust, there is more than a "practical likelihood" that the Moving Defendants' policies will have attached and they will refuse to pay. The Moving Defendants' wishful speculation to the contrary is unfounded and does not afford them an out from this litigation.

### C. The Requested Relief Is Not Speculative.

With potentially billions of dollars of additional liabilities for Abuse Claims to accrue, in addition to the $12 billion in allowed amounts for Abuse Claims that have already been determined, whether or not the Defendants' policies cover Abuse Claims, and how liabilities for those claims are assigned to and among Defendants, presents a specific and concrete dispute that is far from speculative. And the question of whether an insurance policy "provides coverage" presents a live controversy for this Court to decide. *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F.

10

App'x 316, 319 (5th Cir. 2006); *see also Falls Lake Nat'l Ins. Co. v. Rodriguez*, No. EP-18-CV-66-PRM, 2018 WL 9877954, at *3 (W.D. Tex. Aug. 14, 2018) (stating, "[t]he Fifth Circuit has held that whether an insurance policy provides coverage is a live controversy and is therefore justiciable"). "Relevant Supreme Court and Fifth Circuit decisions make clear that a 'case of actual controversy' may be found to exist regarding an insurer's duty to indemnify at a time before the final determination of the insured's liability." *Carolina Cas. Ins. Co. v. Tutle & Tutle Trucking, Inc.*, No. CIV.A.3:09-CV-2377-D, 2010 WL 1459207 at *1 (N.D. Tex. Apr. 12, 2010) (citing *Fed. Ins. Co. v. CompUSA, Inc.*, 2001 WL 1149109, at *1 (N. D. Tex. Sept. 26, 2001)). Nonetheless, the No-Demand Insurers argue that the Trustee's declaratory judgment claims are not ripe because coverage relies on a future determination of liability by the Trust, which would rely on speculative questions of fact, rather than law. *See* No-Demand Insurers' Br. at 9–11. The No-Demand Insurers are wrong.

The Trustee's claims do not rely on speculative questions of fact, but rather the ultimate quantum of liability for Abuse Claims the Trust determines and how those claims are assigned to available insurance, as determined by this Court. For example, in *Triyar*, despite insurers' arguments to the contrary, the court found that a declaratory judgment was ripe for adjudication because it did not depend on "some speculative future event." *See Triyar* 2013 WL 3290033, at *3. The insured in *Triyar* sued the insurer for a declaratory judgment following extensive property damage due to a large storm, and the insurer moved to dismiss on the grounds that the claim was not ripe because the plaintiff's claim relied on "speculative" events. *Id.* at *1–2. Specifically, the sum of damages had not been calculated fully, the plaintiff had not submitted a sworn proof of claim, and the defendant had not yet denied the claim. *Id.* at *2. But the court found the fact that the storm took place in the past was sufficiently concrete, and all that remained to frame the dispute

11

with the insurer was a calculation of the damages. *Id.* at *3. Like the suit in *Triyar*, the Trustee's

suit is not based on speculation. The sexual abuse that is at the heart of the Abuse Claims at issue

has already taken place and is not contingent upon future events. All that remains is for the Trustee

to continue determining Abuse Claims and their allowed claim values by applying the terms of the

Plan and the TDP and to bill those claims to the Moving Insurers consistent with the terms of their

excess policies.

## II.    FOR PURPOSES OF JUDICIAL ECONOMY, DEFENDANTS SHOULD ONLY BE DISMISSED IF THEY ARE BOUND BY THE REMAINING DEFENDANTS' RESOLUTION OF THE CASE

It is in the best interest of the Court, for the sake of judicial economy, to establish in this

litigation whether all of the insurers' policies, including those issued by the Moving Defendants,

cover the underlying Abuse Claims. *See* Fed. R. Civ. P. 1 (emphasizing the need for "the just,

speedy, and inexpensive determination of every action and proceeding"). The practical effect of

the relief sought by the Moving Defendants would be to require the Trust to bring multiple lawsuits

against each separate layer of coverage and each insurer as additional insurance policies are

implicated by additional allowed amounts for Abuse Claims. Dismissing the Moving Defendants

from this suit and then having to litigate the same exact case later (or having to disrupt these

proceedings at a future juncture to bring those insurers back in) to determine the scope of the

Defendants' policy coverage would be highly inefficient for both the Court and the Trustee.

In *Hoechst*, an insured sued its excess insurers for declaratory relief concerning the

insurers' coverage obligations, prior to the excess policies attaching. 623 A.2d at 1135 (cited

favorably by *Benefytt Techs., Inc. v. Capitol Specialty Ins. Corp.*, No. CV N21C-02-143 PRW

CCLD, 2022 WL 16504 at *11 (Del. Super. Ct. Jan. 3, 2022); and *Mine Safety Appliances Co. v.

AIU Ins. Co.*, No. CVN10C07241MMJCCLD, 2014 WL 605753 at *5 (Del. Super. Ct. Jan. 21,

2014)). The court suggested that it would be possible for the parties to agree to dismiss the excess

insurers pending the attachment of their policies, but on the condition that the insurers agree to be bound by the ongoing litigation in their absence. *Hoechst*, 623 A.2d at 1140.

> An excess insurer who seeks dismissal has an alternative, albeit a severe one, with which it might satisfy the Court's concern for judicial economy. The excess insurers could agree to be bound by the conduct of the case by the remaining defendants and to abide by the law of the case in every respect as it is composed. In this fashion, an excess insurer could be dismissed and avoid the legal expenses associated with the defense of this action. In the event that an excess insurer was later brought back into this action, there would be no need to relitigate matters resolved in its absence. If the excess insurers are truly as certain as they claim to be that their levels of coverage will never be implicated, this prospect should not be unattractive, as they would have nothing to lose.

*Id*. The court continued that, absent such an agreement, the need for judicial economy and the likelihood that the defendants' policies would attach was of "sufficient magnitude and immediacy to warrant their continued presence in this declaratory judgment action." *Id*. If Defendants are so certain that their policies will not be implicated by the ongoing litigation and the administration of Abuse Claims by the Trustee, then the Moving Defendants should agree to be bound "by the conduct of the case by the remaining defendants and to abide by the law of the case in every respect as it is composed" as a condition of their dismissal. *Id*. Absent such agreement, Defendants' Motions should be denied.

## III.    ARROWOOD'S RIPENESS ARGUMENTS ARE ENTIRELY WITHOUT MERIT

In addition to the reasons stated above, Arrowood's ripeness argument should be rejected because the Trustee has billed Arrowood and has asserted a breach of contract claim against it. The Moving Defendants' entire ripeness argument centers on their contention that they have not been billed yet, so the Trustee's claims are not ripe. Even if those arguments had any merit, which as shown above they do not, such arguments do not apply to Arrowood, which has been billed and for which the Trustee asserts a breach of contract claim. *See* FAC Count Eight, ¶¶ 276–293. While billings and the assertion of a contractual breach claim are not necessary to demonstrate ripeness

for a declaratory judgment action, the fact that Trustee has billed and asserted a breach claim against Arrowood unquestionably demonstrates that there is a live controversy with Arrowood.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions.

Dated:  October 23, 2025

Respectfully submitted,

/s/ _____

Jeffrey M. Tillotson
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3041

- AND -

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone: (202) 772-2200
Facsimile:  (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was e-filed with the Clerk of the Court and will be served via email upon all counsel of record on this 23rd day of October, 2025.

/s/ Jeffrey M. Tillotson _____

Jeffrey M. Tillotson

14