## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST,

                  Plaintiff,

v.

ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; *et al.*,

                  Defendants.

Case No. 3:23-cv-01592-S

## PLAINTIFF'S BRIEF REGARDING THE EFFECT OF THE SETTLEMENT TRUSTEE'S ALLOWED CLAIM AMOUNT ON INSURED ABUSE CLAIMS ON THE NON-SETTLING INSURANCE COMPANIES' CONTRACTUAL OBLIGATIONS

Jeffrey M. Tillotson
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone:  (214) 382-3041

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:   (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*

**TABLE OF CONTENTS**

<b>Page</b>

TABLE OF AUTHORITIES........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.     The Insurance Policies Issued to BSA and Local Councils. ............................................ 3

    II.    The Determination of Abuse Claims Under the TDP. ....................................................... 5

    III.   The TDP Establish the Allowed Claim Amounts for Abuse Claims and Those Values Are Not Subject to Further Challenge by the Insurers. ............................................................. 9

    IV.   The Plan Preserves the Insurers' Ability to Participate in Determining Allowed Claim Amounts and Assert Coverage Defenses Under Their Policies. ..................................... 10

    V.    The Insurers' Objections to the Allowed Claim Values Have Been Rejected. ................. 14

CONCLUSION ..................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Boy Scouts of Am.*,
  137 F.4th 126 (3d. Cir. 2025) ........................................................................................9

*In re Boy Scouts of Am.*,
  772 F. Supp. 3d 496 (D. Del. 2025)................................................................................8

*In re Boy Scouts of Am. and Del. BSA*,
  642 B.R. 504 (Bankr. D. Del. 2022) .....................................................................8, 13, 14

*In re Boy Scouts of America, et al.*,
  No. 20-10343, 650 B.R. 87, 178 (D. Del. Mar. 28, 2023) ........................................15

*Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*,
  590 B.R. 643 (Bankr. D. Del. 2018) ..............................................................................8

*In re Vencor, Inc.*,
  284 B.R. 79 (Bankr. D. Del. 2002) ................................................................................8

**Statutes**

11 U.S.C. § 1127(b) ........................................................................................................8

11 U.S.C. § 1141(a) ....................................................................................................8, 13

ii

**INTRODUCTION**

The Court's December 19, 2025 Order, Dkt. No. 593 (the "Order") directed the parties to file briefing addressing the following question:

> What effect(s), if any, does the Settlement Trustee's Allowed Claim Amount on Insured Abuse Claims have on the Non-Settling Insurance Companies' contractual obligation to pay under insurance policies issued to the Boy Scouts of America or Local Councils?

In short, an Allowed Claim Amount determined by the Trust in accordance with the Trust Distribution Procedures ("TDP")[1] establishes the liability owed to an Abuse Claimant by the Trust. These amounts are binding on the Trust, as well as the Non-Settling Insurers. As a result, while the Non-Settling Insurers may contest coverage based on the terms of their policies or other legal grounds, they cannot challenge the value of the Allowed Claim Amounts. That issue is resolved by the TDP because, under BSA's confirmed plan of reorganization (the "Plan"),[2] the TDP is the sole way by which Abuse Claims are determined and valued.

As set out below, the Non-Settling Insurance Companies[3] issued general liability insurance policies, that, with some variation in policy language, require the insurers to pay for losses that the insured is "legally obligated to pay," including judgments and settlements, that arise from claims alleging an "occurrence" that results in "bodily injury" or "personal injury" during the relevant policy period. *See* Ex. 3, 1977-1978 National Union Fire Ins. Co. Policy No. BE 121 82 55 at 8. Settling Insurers and certain of the Non-Settling Insurers who are parties in this litigation paid, collectively, hundreds of millions of dollars to defend and settle claims alleging sexual abuse asserted against the Boy Scouts of America, Inc. ("BSA") and/or its Local Councils prior to the

---

[1] Trust Distribution Procedures ("TDP"), *In re Boy Scouts of Am. And Del. BSA*, No. 20-10343 (Bankr. D. Del. 2022) [Dkt. No. 10296, Exhibit A]. A copy of the TDP is attached as Ex. 1.
[2] Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of Am. and Del. BSA, LLC ("Plan"), *In re Boy Scouts of Am. And Del. BSA*, No. 20-10343 (Bankr. D. Del. 2022) [Dkt. No. 10296]. A copy of the Plan is attached as Ex. 2.
[3] Capitalized terms not otherwise defined herein have their meanings set forth in the Plan.

filing of the BSA bankruptcy case.[4]  The terms of the Non-Settling Insurers' general liability insurance policies remain the same as they were when these claims were paid, and they continue to cover these same liabilities arising from Abuse Claims.

The only difference between the pre-BSA bankruptcy regime whereby BSA and Local Council insurers paid for Abuse Claims and the current post-BSA bankruptcy posture is the procedural mechanisms whereby the values of Abuse Claims are established.  The Settlement Trustee is implementing processes, including the Claims Matrix and the Independent Review Option, established by the Plan to determine the values of Abuse Claims.  The Bankruptcy Court found, and relied on the fact in confirming the Plan, that these procedures were designed to take into account and apply the same values and factors that BSA and its insurers took into account in settling claims pre-petition.

Despite the Non-Settling Insurers' opposition to BSA's Plan at every turn, the Plan— including the TDP, pursuant to which BSA Abuse Claims are determined under the Claims Matrix and the Independent Review Option—was confirmed by the United States Bankruptcy Court for the District of Delaware.  The Plan was then affirmed on appeal, despite continued opposition from the Non-Settling Insurers, first by the United States District Court for the District of Delaware and subsequently by the United States Court of Appeals for the Third Circuit.  Finally, on January 12, 2026, the United States Supreme Court denied a Petition for Writ of Certiorari filed by a small group of dissenting sexual abuse Survivors.

The Plan, including the TDP, is binding on the Trust and all holders of Abuse Claims and provides the only means by which Abuse Claims, which have been channeled to the Trust, can be determined and valued.  The Allowed Claim Amounts determined by the Trust  establish the

---

[4] In addition, the Settling Insurers committed to pay over $1.6 billion for Abuse Claims through settlements reached during BSA's bankruptcy case.

amount the Trust is "legally obligated to pay" for Abuse Claims, just as a judgment or settlement in the tort system did prior to BSA's bankruptcy filing. The Trust then tenders Allowed Claim Amounts to the Non-Settling Insurers for payment in accordance with the terms of their respective insurance policies. Pursuant to the terms of the Plan, the insurers retain the ability to challenge coverage for Abuse Claims based on the terms of their policies and applicable law. The Plan also provides avenues whereby Non-Settling Insurers can participate in the determination of Allowed Claim Amounts, which the insurers have actively exercised. However, the Plan, does not permit the Non-Settling Insurers to challenge Allowed Claims Amounts that the Settlement Trustee determines in accordance with the TDP. Those Allowed Claim Amounts fully and finally establish the amount of the liability for each Abuse Claim.

## ARGUMENT

### I.    The Insurance Policies Issued to BSA and Local Councils.

The insurance policies purchased by BSA and its Local Councils whose rights have been assigned to the Trust are commercial general liability policies that provide coverage for claims asserted against the insureds by third parties. Though the wording varies from policy to policy, an illustrative example can be found in the policy issued by Allianz Insurance Company for the period January 1, 1980 to January 1, 1981 (Allianz Policy No. UMB 599346). This policy's insuring agreement states:

> COVERAGE. The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by the reason of the liability
>
> A. imposed upon the Insured by law, or
>
> B. assumed under contract or agreement by the Named Insured,
>
> for damages on account of
>
> A. Personal Injuries

3

B. Property Damage

C. Advertising Liability,

caused by or arising out of each occurrence anywhere.

*See* Ex. 4, Allianz Policy No. UMB 599346, Insuring Agreements at Page 1.

This Allianz policy includes the following definitions:

- V. BODILY INJURY. Means bodily injury, sickness or disease, including death and care and loss of services resulting therefrom sustained by any person.

- VII. DAMAGES. The term "Damages" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

- IX. OCCURRENCE. The term "Occurrence" means an accident, including injurious exposure to conditions, which results during the policy period, in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured.

- X. PERSONAL INJURY. (1) Means bodily injury, shock, mental injury or mental anguish; (2) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the Insured ….

*Id.*, Definitions at Page 5.

Under this particular policy, Allianz paid $1.75 million to settle one sexual abuse claims asserted against BSA and/or its Local Councils prior to its bankruptcy filing. *See* Ex. 5, Allianz Global Risks US Insurance Company's Motion to Lift Stay, *National Surety Corporation v. The Honorable Barbara J. Houser (Ret.) in her Capacity as Trustee of the BSA Settlement Trust, et al.*, No. 17 CH 14975 (July 22, 2025).

In sum, the Insurance Policies assigned to the Trust under the Plan promise in their affirmative grants of coverage to indemnify the insured for, or to pay on the insured's behalf, all damages and defense costs that the insured becomes legally obligated to pay:

a.   because of personal injury caused by an occurrence during the policy period;

b.   on account of personal injuries caused by or arising out of an occurrence;

c.   by reason of bodily injury which occurs after the retroactive date and before the end of the policy period and is caused by an occurrence; or

d.   pursuant to similar wording.

The risk undertaken and insured by the Non-Settling Insurers under the general liability insurance policies purchased by BSA and its Local Councils remains the same following the assignment of BSA's insurance rights to the Trust under the Plan. The liabilities that implicate the insurers' policies likewise remain the same, having been incurred based on pre-petition incidents; *i.e.*, the sexual abuse of tens thousands of individuals who participated in Scouting with BSA going back decades. The grant of coverage afforded by the insurers' policies remains unchanged, and the Non-Settling Insurers remain obligated to pay for liabilities arising out of Abuse Claims under those policies. *See* Plan at Art. X.M.

## II.    The Determination of Abuse Claims Under the TDP.

The procedures by which Abuse Claims are determined and valued, however, have been changed by the confirmed Plan, consistent with the Debtors' obligations under the Bankruptcy Code. Under the Plan, all Direct Abuse Claims that historically could have been pursued through litigation against BSA and/or its Local Councils in state and federal courts throughout the country are enjoined and channeled to the Settlement Trust. *See* Ex. 1, TDP at Art. IV.B.; *see also* TDP at Art. X.F.

The TDP and Trust Agreement both state unequivocally that the TDP provides the sole and exclusive mechanism for valuing and resolving Abuse Claims. *See* Ex. 6, BSA Settlement Trust

5

Agreement Section 1.2 ("For the avoidance of doubt, all Abuse Claims asserted against the Debtors in the Chapter 11 Cases shall be resolved exclusively in accordance with the TDP.")[5]; TDP at Art. I.D ("These TDP and any procedures designated in these TDP, including the Individual Review Option, shall be the sole and exclusive methods by which an Abuse Claimant may seek allowance and distribution on an Abuse Claim that is subject to the Channeling Injunction with respect to the Protected Parties.").

Claimants who did not elect to receive an Expedited Distribution[6] may choose between two other claims processing options. One of those options is the "Matrix" claims process. Under the Matrix process, Abuse Claims are evaluated and placed in one of six possible tiers—depending on the severity of the Abuse. Each level in turn has separate base values and maximum values. The criteria for evaluating Matrix claims and their valuation ranges are set forth in the TDP. *See* TDP at Art. VIII.

The other claims processing alternative is the Independent Review Option (the "IRO"). The IRO allows holders of Abuse Claims to have a "Neutral"—designated in the TDP as a retired judge with tort experience—evaluate their claims through a process that is designed to replicate what a jury might award outside the Settlement Trust process. *See* TDP at Art. XIII.

In order to pursue the "Matrix" option, holders of Direct Abuse Claims may submit a Trust Claim Submission to the Settlement Trust for evaluation. This submission includes (1) submitting a completed questionnaire signed under oath; (2) producing all documents related to the Abuse Claim and a signed agreement to produce further documents or information upon request of the

---

[5] Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of Am. and Del. BSA, LLC ("BSA Settlement Trust Agreement"), *In re Boy Scouts of Am. And Del. BSA*, No. 20-10343 (Bankr. D. Del. 2022) [Dkt. No. 10296, Exhibit B]. A copy of the BSA Settlement Trust Agreement is attached as Ex. 6.

[6] Under the terms of the Plan, Expedited Distributions are not recoverable from Insurers.

Settlement Trustee; and (3) consenting to a Trustee Interview and a written or oral examination, if needed.  The Settlement Trustee then considers all information received and evaluates, pursuant to the factors set forth in the TDP, the credibility and validity of each Abuse Claim and makes an approval or allowance determination.  For each Allowed Abuse Claim, the Settlement Trustee assigns a base value dependent on the tier of abuse and which is established by the TDP.  The Trust then analyzes the individual Claim to determine whether specific aggravating factors (that increase the Base Matrix Value of the claim) or mitigating factors (that decrease the Base Matrix Value of the claim) in the TDP apply.  This process is consistent with BSA's pre-petition settlement practices.  *See* TDP at Art. VIII ("The Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values that are set forth in the Claims Matrix have all been selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and or/judgments that Abuse Claimants would receive in the tort system against the Protected Parties absent the bankruptcy.").[7]

To the extent the holder of an Abuse Claim disagrees with the Allowed Claim Amount determined by the Trust, they may seek reconsideration under Article VII.G of the TDP.  To the extent the holder of an Abuse Claim disagrees with the Settlement Trustee's decision on reconsideration, they may litigate their Abuse Claim *de novo* in any court of competent jurisdiction, subject to the procedures set forth in Article XII of the TDP, and their Allowed Claim Amount shall be equal to the settlement or final judgment amount obtained in the tort system, less any payments actually received and retained by the Abuse Claimant.

---

[7] One example of an aggravating factor is referred to as the "Abuser Profile" under which the Trust will assign an upward scaling factor in circumstances where the abuser was accused by other alleged victims of abuse. *See* TDP at Art. VIII.C.ii.  One example of a mitigating factor is referred to as "Familial Relationship" under which the Trust will reduce the Allowed Claim Amount in situations where the perpetrator also had a familial relationship with the Claimant. *See* TDP at Art. VIII.D.i.a.

Article XIII of the TDP sets forth the process for resolving IRO claims. It provides that "an independent, neutral third party . . . [will] make a settlement recommendation (the "Settlement Recommendation") to the Settlement Trustee seeking to replicate to the extent possible the amount a reasonable jury might award[.]" TDP at Art. XIII.A. If the Settlement Trustee accepts the Settlement Recommendation, the recommendation becomes the Allowed Claim Amount. Article XIII further provides that,

> "[i]f the Settlement Trustee declines to follow the Neutral's recommendation as to the Allowed Claim Amount for an Independent Review Claim (a "Recommendation Rejection"), within forty-five (45) days after the holder being served notice of the Recommendation Rejection, the holder of such Direct Abuse Claim may commence a lawsuit in any court of competent jurisdiction against the Settlement Trust to obtain the Allowed Claim Amount of the Direct Abuse Claim."

*Id.* Under the TDP, all neutrals are to be selected from a panel of retired judges with tort experience maintained by the Settlement Trust. *See* TDP at Art. XIII.A.

The TDP were designed to emulate BSA's pre-bankruptcy claims handling practices and historical claim resolution process. Prior to the commencement of their bankruptcy cases, in resolving claims, BSA and their defense counsel weighed many factors, including the severity of the alleged Abuse, the negative publicity from the claim, BSA's negligence, the likelihood of prevailing on applicable defenses (including those based on statute of limitations), the likelihood of success on the overall claim under the applicable law, and the potential cost in litigating the claim, among other factors. It was established in the bankruptcy proceedings that BSA and its Local Councils often settled Abuse Claims, albeit for reduced compensation, even where they believed they had strong defenses or were otherwise likely to succeed in litigation. *See, e.g.*, *In re Boy Scouts of Am. and Del. BSA*, 642 B.R. 504, 658 (Bankr. D. Del. 2022) ("[T]he uncontroverted testimony of Mr. Griggs [BSA's defense counsel] is that prepetition BSA was not often successful in asserting statute of limitations defenses even in states where the defense was viable, and that

8

even when BSA prevailed on a statute of limitations defense it still might subsequently settle the claim.").

**III.    The TDP Establish the Allowed Claim Amounts for Abuse Claims and Those Values Are Not Subject to Further Challenge by the Insurers.**

A confirmed plan of reorganization binds all parties in interest. *In re Boy Scouts of Am.*, 772 F. Supp. 3d 496, 512 (D. Del. 2025) (citing 11 U.S.C. §§ 1127(b), 1141(a); *Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*, 590 B.R. 643, 649 (Bankr. D. Del. 2018); *In re Vencor, Inc.*, 284 B.R. 79, 85 (Bankr. D. Del. 2002)).  The TDP and Trust Agreement pursuant to which Allowed Claim Amounts are determined and established for Abuse Claims are both integral components of the Plan. *In re Boy Scouts of Am.*, 137 F.4th 126, 144 (3d. Cir. 2025) ("In addition to establishing the Settlement Trust, the Plan sets forth the Trust Distribution Procedures that govern distribution of trust assets to individual claimants.").

The TDP and Trust Agreement both state unequivocally that the TDP provides the sole and exclusive mechanism for valuing and resolving Abuse Claims.  *See* BSA Settlement Trust Agreement Section 1.2 ("For the avoidance of doubt, all Abuse Claims asserted against the Debtors in the Chapter 11 Cases shall be resolved exclusively in accordance with the TDP."); TDP at Art. I.D ("These TDP and any procedures designated in these TDP, including the Individual Review Option, shall be the sole and exclusive methods by which an Abuse Claimant may seek allowance and distribution on an Abuse Claim that is subject to the Channeling Injunction with respect to the Protected Parties.").  The Settlement Trustee, as a named party to the Trust Agreement, is bound to follow the claim valuation procedures set forth in the TDP, and is liable in her capacity as Settlement Trustee to pay the amounts awarded thereunder.  *See* BSA Settlement Trust Agreement Section 2.1(d)(ii) (stating that the Settlement Trustee shall have the power to "adopt procedures to allow valid Abuse Claims ("Allowed Abuse Claims"), and determine an

allowed liability amount for each Allowed Abuse Claim…in accordance with the TDP"); *id*. at Section 4.1 ("The Trust shall fairly and reasonably compensate Allowed Abuse Claims and shall pay up to the full value of such claims, solely in accordance with the Trust Documents, including the TDP…").

The Plan and Confirmation Order provide expressly that "[t]he allowed amount of any Direct Abuse Claim shall be the amount therefor as determined under the Trust Distribution Procedures.  Such allowed amount shall be legally enforceable against the Settlement Trust."  Dkt. No. 10316 ("Confirmation Order")[8], at Art. II.I.4.

Neither the Settlement Trustee, nor the insurers, are permitted by the Plan to value Allowed Claim Amounts in a manner other than those provided for by the TDP and Trust Agreement.  Under the terms of the TDP and the Trust Agreement, once the Allowed Claim Amount is established for an Abuse Claim, it becomes binding and not subject to further adjustment.

**IV.     The Plan Preserves the Insurers' Ability to Participate in Determining Allowed Claim Amounts and Assert Coverage Defenses Under Their Policies.**

Although the Plan and Trust Documents do not afford the insurers a right to challenge the Allowed Claim Amounts established for Abuse Claims in accordance with the TDP, these documents, and the processes the Trust has implemented to administer the Abuse Claims, do permit the insurers to participate in the determination of Allowed Claim Amounts.  Furthermore, the insurers retain their ability to assert coverage defenses that may be available under their policies and applicable law.  Confirmation Order, Article at II.I.4 ("[N]othing herein determines whether

---

[8] Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC ("Confirmation Order"), *In re Boy Scouts of Am. And Del. BSA*, No. 20-10343 (Bankr. D. Del. 2022) [Dkt. No. 10316], Ex. 7.

or not any insurer is obligated to pay the amount determined under the Trust Distribution Procedures for an allowed Direct Abuse Claim.").

The Settlement Trust provides notice to the insurers at three significant stages of the evaluation of a Matrix claim pursuant to the TDP. "Responsible Insurer Notice #1" notifies insurers of new Matrix claims as they are submitted to the Settlement Trust.[9] "Responsible Insurer Notice #2" is issued once the Settlement Trust determines that certain claims are potentially covered by an insurer's policy(ies). *Id.* Here, the Settlement Trust sends a notice of all such claims to all potentially "Responsible Insurers," which triggers a 21-day period for insurers to provide input on the Settlement Trust's calculation of a proposed award for those claims. Responsible Insurers that have executed a confidentiality agreement with the Settlement Trust have access to the claim file for each claim for which they are potentially responsible. The claim files are maintained electronically in a virtual portal to which the Insurers can access relevant claim information.

Lastly, once the Settlement Trust has prepared a proposed award letter for a claim determined to be potentially covered by an insurer's policy(ies), the Settlement Trust provides the insurer with "Responsible Insurer Notice #3." *Id.* This notice includes a draft calculation for the proposed award, including a breakdown of the applicable mitigating and aggravating factors and the corresponding values assigned by the Trust. The Responsible Insurers have 7 days to object to this proposed award.

Insurers likewise are afforded an opportunity to participate in the determination of Allowed Claim Amounts for IRO Claims. Claimants electing the IRO must pay an initial $10,000 administrative fee to the Settlement Trust or request a fee waiver. Within seven (7) days of paying

---

[9] Plaintiff's Supplemental Brief Addressing the Third Circuit's Opinion in *In re Boy Scouts of America*, Declaration of the Honorable Barbara J. Houser (Ret.) No. 23-01592 (N.D. Tex. June, 2 2025) [Dkt. No. 438].

this fee or receiving a waiver, the Claimant must file a complaint (the "IRO Complaint").  Within twenty-eight (28) days of the filing of the IRO Complaint, the Settlement Trust, acting through its Claims Administrator, provides written notice to the applicable "Responsible Insurers" that issued policies to BSA or Local Councils based upon the allegations set forth in the IRO Complaint.  The Claims Administrator for the IRO (Hon. Michael J. Reagan (Ret.)) then selects a Neutral to preside over the IRO process, who must be a retired judge with tort experience and who is then retained by the Trust pursuant to a written agreement signed by the Settlement Trustee and the Neutral.  Responsible Insurers are provided notice of the Neutral's name and, along with other participating parties, afforded an opportunity to challenge the appointment of the Neutral.

Responsible Insurers may elect to participate in the IRO process by filing notice of an intent to participate, an answer to the IRO Complaint, or some other responsive pleading to the IRO Complaint.  To date, insurers have elected to participate in all IRO proceedings. Responsible Insurers and other parties are afforded the opportunity to participate in discovery in connection with an IRO Claim and have the right to request a sworn interview of the Claimant (up to six hours), a mental health examination, or supplemental signed and dated interrogatory responses from the Claimant.

After the close of discovery in the IRO process, an IRO Claimant has the option of proceeding with a hearing or may submit his Claim for consideration by the Neutral based solely on the written record.  The Claimant may, alternatively, elect to switch to the Matrix claims determination process.  If the IRO Claimant elects to proceed to have his claim determined through the IRO process, he then pays a second $10,000 administrative fee or may request a fee waiver.  Whether a Claimant proceeds with an IRO Hearing or submits his Claim to the Neutral for consideration based on the written record, the Responsible Insurers may file a brief responding to

issues raised in a brief submitted by the Claimant.  Defenses asserted by Responsible Insurers are considered in the Neutral's ultimate recommendation regarding settlement (the "Settlement Recommendation").  The Claimant bears the burden of proof to establish his claims.  Responsible Insurers bear the burden of proof to establish their defenses.

For Claims that proceed to an IRO hearing, Responsible Insurers may call witnesses, designate deposition transcript excerpts, introduce exhibits, make evidentiary objections, cross-examine witnesses, and make arguments.  For Claims that proceed based on the written record, Responsible Insurers are afforded the opportunity to make evidentiary objections and submit written arguments.

To date, Responsible Insurers have participated in the resolution of all IRO Claims, irrespective of whether the Claim was evaluated by the Neutral based on the written record or the Neutral held an IRO hearing.[10]

In addition, the TDP afford other protections to insurers who purport to have rights to mitigate their obligations by setting off or recouping payments either from other insurers or from the Trust.  For example, under the Plan any alleged insurers' rights of setoff and recoupment (to the extent permitted under applicable law) are preserved to allow the insurers to assert any deductible obligation against the Trust, subject to defenses.

The Plan also preserves the ability of the insurers to contest their obligations to pay Abuse Claims based on a coverage defense.  *See* (Plan at Art. IX.A.3.j., X.M).  If the facts of a particular Abuse Claim asserted against BSA and/or the Trust trigger an exclusion or other policy defense, the defense is preserved.  If such defense succeeds, the insurer(s) are not required to pay that particular Abuse Claim.  *Id.*

---

[10] While not all Settlement Recommendations have been received to date, hearings have been held and concluded or cases have been submitted on the written record for all but one IRO claim.

The insurers are not permitted under the Plan to attack the Allowed Claim Amount for an Abuse Claim determined in accordance with the terms of the TDP and the Trust Agreement. Nor are the insurers entitled to re-litigate their objections to the TDP themselves, which were already adjudicated during the bankruptcy proceedings. *See* TDP at Art. X.C.; *see also* 642 B.R. 504, 630–631 (Bankr. D. Del. 2022) ("Section 1141 of the Code provides for the effect of confirmation of a plan. With exceptions not relevant here, § 1141(a) provides: ' . . . the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.' And as the Coalition notes, there is abundant common law on the doctrine of *res judicata* and collateral estoppel as it applies to orders confirming plans. Any order entered in these cases will be final when it is entered. It will have the effect it has.").

**V.    The Insurers' Objections to the Allowed Claim Values Have Been Rejected.**

Most of the insurer parties in this case objected to the TDP criteria for valuing Direct Abuse Claims during BSA's Plan confirmation process and subsequent appeals, arguing, among other things, that the TDP would lead to inflated claim values.[11] Among other arguments, the objecting insurers contended that the Base Matrix Values of the TDP did not reflect tort system settlement values based on their preferred interpretation of the expert testimony offered by BSA's expert on claims valuation.[12] The insurers have already begun to recycle these failed arguments in this case, as evidenced by certain of their unfounded allegations regarding inflated Abuse Claim values

---

[11] *See* Certain Insurers' Objection to Confirmation of Debtors' Chapter 11 Plan, *In re Boy Scouts of Am. and Del. BSA*, No. 20-10343 (LSS) (Bankr. D. Del. Feb. 4, 2022), [Dkt. No. 8695] at ¶¶ 176–79.
[12] *Id.* at ¶¶ 37–38; 65–69.

included in their pending motions to dismiss.  *See* Memorandum in Support of Undersigned Defendants' Partial Motion to Dismiss the Amended Complaint, ECF 543 at 11.

The Bankruptcy Court overruled the insurers' objections, finding that nothing in the record suggested the TDP were not proposed in good faith or would increase the insurers' quantum of liability.[13]  In so doing, the Court concluded that BSA's claim valuation expert did not testify to the expected value of any individual claim, and that the actual liquidated value of the Abuse Claims would be determined by the Settlement Trustee "on a claim-by-claim basis" under the TDP.  *Id.* at 651.  The District Court affirmed.[14]  The insurers did not appeal this issue to the Third Circuit. The notion that any aggregate quantum of liability for Abuse Claims has been fixed for the Trust by any expert opinion offered in the Bankruptcy Case is simply not true.

On the contrary, the Bankruptcy Court recognized expressly that (1) the reports of experts offered by BSA were only their "best estimates" of the aggregate value of the Direct Abuse Claims and the coverage available to pay those Direct Abuse Claims, and (2) the Court was accepting them "for purposes of confirmation" only.  *Id.* at 558–60.  The Court further emphasized, "Notwithstanding [BSA's expert's] valuation . . . only a claim-by-claim analysis performed by the Settlement Trustee as contemplated by the TDP will establish the actual amount of any individual Direct Abuse Claim or the aggregate amount of Direct Abuse Claims."  *Id.* at 557.

The Confirmation Order reiterated that the aggregate value of the Direct Abuse Claims would be decided by the Trust.  Art. II.J.1 of the Confirmation Order states that, "[t]he Court's determination of the likely aggregate valuation of Direct Abuse Claims for purposes of Confirmation does not establish:  (a) the actual amount of any individual Direct Abuse Claim; or

---

[13] 642 B.R at 658 ("In the abstract, I cannot find based on the record before the court that this result means the Plan was not proposed in good faith.  Nor can I conclude based on the record before the court, that the payment, or even existence of this claim, increases the quantum of liability for any primary insurer much less any excess insurer.").
[14] *In re Boy Scouts of America, et al.*, No. 20-10343, 650 B.R. 87, 178 (D. Del. Mar. 28, 2023); *see id.* at 118.

(b) the actual aggregate amount of Direct Abuse Claims." The Confirmation Order further provides at Art. II.J.2 that, "[t]he allowed amount of Direct Abuse Claims, either individually or in the aggregate, will be determined pursuant to the Trust Distribution Procedures."

The allowed amount of Direct Abuse Claims, either individually or in the aggregate, is required to be determined pursuant to the TDP. Confirmation Order, Article II.J. An adjudication in the tort system of BSA's liabilities for Abuse Claims is not only impermissible under the Plan, but also under the Bankruptcy Code, which requires that the BSA's assets, including proceeds from its insurance policies, be distributed equitably to similarly situated classes of creditors, such as Abuse Claimants, and not on an *ad hoc* basis as thousands of claims are resolved through civil litigation. The insurers' attempts to revive their bankruptcy case objections to the Plan and TDP, which were rejected, in this action in an effort to minimize their exposure for Abuse Claims are unfounded.

## CONCLUSION

For the reasons discussed above, the Allowed Claim Amounts for Abuse Claims determined by the Trust pursuant to either the Matrix or Independent Review Option establish the liability owed to an Abuse Claimant by the Trust. These liquidated values for Abuse Claims are binding on the Trust as well as the Non-Settling Insurers, who are foreclosed by the terms of the Plan from contesting their coverage obligations for Abuse Claims based upon the value of Allowed Claim Amounts determined in accordance with the TDP. The insurers remain free to participate in the determination of the Abuse Claims through the procedures set forth in the TDP, as they have to date. The insurers also remain able to assert defenses to coverage for Abuse Claims under the terms of their policies. But they are not permitted under the Plan to refuse to pay Abuse Claims because they disagree with the Allowed Claim Value for a particular Abuse Claim determined in accordance with the TDP.

16

There will be many issues to address in this case, and the Trust is eager to proceed with doing so. But re-litigating, claim-by-claim, the individual Allowed Claim Amounts for tens of thousands of Abuse Claims determined by the Trust in accordance with the Plan and TDP is neither required nor permitted by BSA's confirmed Plan.

Dated:  January 16, 2026

Respectfully submitted,

*/s/Jeffrey M. Tillotson*

Jeffrey M. Tillotson
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone:  (214) 382-3041

- AND -

Kami E. Quinn (admitted *pro hac vice*)
W. Hunter Winstead (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Michael B. Rush (admitted *pro hac vice*)
Brittney M. Welch (admitted *pro hac vice*)
**GILBERT LLP**
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333

*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*

17

## **CERTIFICATE OF SERVICE**

This is to certify that on this 16th day of January 2026, a true and correct copy of the foregoing document was served on Plaintiff's counsel of record by electronic transmission, pursuant to the Texas Rules of Civil Procedure.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson