# EXHIBIT 1

# EXHIBIT A

## TRUST DISTRIBUTION PROCEDURES

## BOY SCOUTS OF AMERICA

## TRUST DISTRIBUTION PROCEDURES FOR ABUSE CLAIMS

### ARTICLE I
### PURPOSE AND GENERAL GUIDELINES

**A.     Purpose**.  The purpose of the Settlement Trust is to, among other things, assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets, and to employ procedures to allow valid Abuse Claims as further set forth herein in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed Abuse Claim**"), determine an allowed liability amount for each Allowed Abuse Claim (the "**Allowed Claim Amount**"), determine payment methodology and direct payment of all Allowed Abuse Claims, and obtain insurance coverage for the Allowed Claim Amount of such Allowed Abuse Claims that are Insured Abuse Claims (as defined below).  These Trust Distribution Procedures (the "**TDP**") are adopted pursuant to the Settlement Trust Agreement by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").   These TDP are intended to provide substantially similar treatment for Allowed Abuse Claims, including Future Abuse Claims.  These TDP, inclusive of the various options and elections set forth herein, including the Expedited Distribution Election, the Tort System Alternative and the Independent Review Option, provide the means for resolving all Abuse Claims for which the Protected Parties have or are alleged to have legal responsibility as provided in and required by the Plan, the Confirmation Order, and the Settlement Trust Agreement.  The Settlement Trustee shall implement and administer these TDP in consultation with the Claims Administrators, Future Claimants' Representative, and Trust Professionals with the goals of securing the just, speedy, and cost-efficient determination of every Abuse Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Abuse Claims in accordance with the procedures set forth herein, and obtaining and maximizing the benefits of the Settlement Trust Assets.

**B.     General Principles**.  To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Abuse Claims, these TDP are founded on the following principles:

1.     objective Claim eligibility criteria;

2.     clear and reliable proof requirements;

3.     administrative transparency;

4.     a rigorous review and evidentiary process that requires the Settlement Trustee to determine Allowed Claim Amounts in accordance with applicable law;

5.     prevention and detection of any fraud; and

6.     independence of the Settlement Trust and Settlement Trustee.

**C.     Payment of Allowed Abuse Claims and Insurance Recoveries**.  Pursuant to the terms of the Plan, the Settlement Trust has assumed the Debtors' legal liability for, and obligation

1

to pay, Allowed Abuse Claims.  The Settlement Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Abuse Claimants under these TDP. The amounts that Abuse Claimants will ultimately be paid on account of their Allowed Abuse Claims will depend on, among other things, the Settlement Trust's ability to liquidate and recover the proceeds of the assigned insurance rights and other causes of action.  The amount of any installment payments, initial payments, or payment percentages established under these TDP or the Settlement Trust Agreement are not the equivalent of (i) any Abuse Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of an Allowed Abuse Claim has against the Debtors and/or Protected Parties, as assumed by the Settlement Trust.

**D.    Sole and Exclusive Method**.  These TDP and any procedures designated in these TDP, including the Individual Review Option, shall be the sole and exclusive methods by which an Abuse Claimant may seek allowance and distribution on an Abuse Claim that is subject to the Channeling Injunction with respect to the Protected Parties.

**E.    Interpretation**.  The terms of the Plan and Confirmation Order shall prevail if there is any discrepancy between the terms of the Plan or Confirmation Order and the terms of these TDP.

**F.    Confidentiality**.  All submissions to the Settlement Trust by an Abuse Claimant shall be treated as confidential and shall be protected by all applicable state and federal privileges, including those directly applicable to settlement discussions.  The Settlement Trust will preserve the confidentiality of such submissions, and shall disclose the contents thereof only to such persons as authorized by the Abuse Claimant, or in response to a valid subpoena of such materials issued by the Bankruptcy Court, a Delaware state court, the United States District Court for the District of Delaware or any other court of competent jurisdiction.  Notwithstanding anything in the foregoing to the contrary, the Settlement Trust may disclose information, documents, or other materials (i) reasonably necessary in the Settlement Trust's judgment to preserve, obtain, litigate, resolve, or settle insurance coverage, or to comply with an applicable obligation under an Insurance Policy, indemnity, or settlement agreement, or to pursue any other claims transferred or assigned to the Settlement Trust by the holder of the Abuse Claim or operation of the Plan and (ii) subject to the consent of a Direct Abuse Claimant or with redactions or other mechanism to preserve the confidentiality of a Direct Abuse Claimant, where the submission contains non-privileged information that is relevant to the Allowed Amount of another Direct Abuse Claimant's Claim. Nothing in these TDP shall be construed to authorize the Settlement Trustee to waive privilege or disseminate documents or other information to any Abuse Claimants or their respective counsel, except as provided for in the Document Appendix.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**A.    Incorporation of Plan Definitions**.  Capitalized terms used but not defined in these TDP have the meanings ascribed to them in the Plan or the Settlement Trust Agreement and such definitions are incorporated in these TDP by reference. To the extent that a term is defined in these TDP and the Plan and/or the Settlement Trust Agreement, the definition contained in these TDP controls.

2

B.      **Definitions**.  The following terms have the respective meanings set forth below:

1.      "**Abuse Claim**" shall have the meaning ascribed to it in the Plan, which definition includes Direct Abuse Claims, Indirect Abuse Claims, and Future Abuse Claims.

2.      "**Abuse Claimants**" shall mean the holder of a Direct Abuse Claim, an Indirect Abuse Claim, or a Future Abuse Claim.

3.      "**Base Matrix Value**" shall mean the base case value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.C) to be used to value Abuse Claims and that may be identified in connection with the description of the Scaling Factors in Article VIII.C.

4.      "**Claims Matrix**" shall mean (as specifically defined and described in Article VIII.B) a table scheduling the six tiers of Abuse Types, and identifying the Base Matrix Value, and Maximum Matrix Value for each tier.

5.      "**CPI-U**" shall mean the Consumer Price Index For All Urban Consumers: All Items Less Food & Energy, published by the United States Department of Labor, Bureau of Labor Statistics.

6.      "**Direct Abuse Claimant**" or "**Survivor**" shall mean the holder of a Direct Abuse Claim or a Future Abuse Claim.

7.      "**Indirect Abuse Claimant**" shall mean the holder of an Indirect Abuse Claim.

8.      "**Exigent Health Claim**" shall mean a Direct Abuse Claim for which the Direct Abuse Claimant has provided a declaration under penalty of perjury from a physician who has examined the Direct Abuse Claimant within one hundred and twenty (120) days of the declaration in which the physician states that there is substantial medical doubt that the Direct Abuse Claimant will survive beyond six (6) months from the date of the declaration.

9.      "**FIFO**" shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which Abuse Claims shall be determined and paid by the Settlement Trust.

10.      "**FIFO Processing Queue**" shall mean the FIFO line-up on which the Settlement Trust reviews Trust Claims Submissions.

11.      "**Maximum Matrix Value**" shall mean the value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.B) that represents the maximum Allowed Claim Amount achievable through the matrix calculation for an Allowed Abuse Claim assigned to a given tier after application of the Scaling Factors described in Article VIII.C.

12.      "**Mixed Claim**" shall have the meaning ascribed to it in the Plan.

3

13.     **"Non-BSA Sourced Assets"** shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Settlement Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand.  For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Companies.

14.     "**Scaling Factors**" shall mean (as specifically defined and described in Article VIII.C) the factors identified to consider with respect to each Abuse Claim and to apply to the Base Matrix Value for the applicable tier of Abuse Type for such Abuse Claim to arrive at its Proposed Allowed Claim Amount.

**C.     Interpretation; Application of Definitions and Rules of Construction**.  For purposes of these TDP, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's successors and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to these TDP as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) any effectuating provisions of these TDP may be reasonably interpreted by the Settlement Trustee in such a manner that is consistent with the overall purpose and intent of these TDP without further notice to or action, order, or approval of the Bankruptcy Court; (6) the headings in these TDP are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) in computing any period of time prescribed or allowed by these TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; (8) "or" is not exclusive; and (9) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

## ARTICLE III
## TDP ADMINISTRATION

**A.     Administration**.  Pursuant to the Plan and the Settlement Trust Agreement, the Settlement Trust and these TDP shall be administered by the Settlement Trustee in consultation with the STAC, which represents the interests of holders of present Abuse Claims in the administration of the Settlement Trust, and the Future Claimants' Representative, who represents the interests of holders of Future Abuse Claims.  The Claims Administrators shall assist the Settlement Trustee in the resolution of Abuse Claims in accordance with these TDP and provide information necessary for the Settlement Trustee to implement these TDP.

**B.     Powers and Obligations**.  The powers and obligations of the Settlement Trustee, the STAC, the Future Claimants' Representative, and the Claims Administrators are set forth in the Settlement Trust Agreement.  The STAC and the Future Claimants' Representative shall have no authority or ability to modify, reject, or influence any claim allowance or Allowed Claim Amount determination under these TDP.

C.      **Consent Procedures**.  The Settlement Trustee shall obtain the consent of the STAC and the Future Claimants' Representative on any amendments to these TDP pursuant to Article XIV.B below, and on such matters as are otherwise required below and in Article 1.6 of the Settlement Trust Agreement.  Such consent shall not be unreasonably withheld.

## ARTICLE IV
## CLAIMANT ELIGIBILITY

A.      **Direct Abuse Claims**.  To be eligible to potentially receive compensation from the Settlement Trust on account of a Direct Abuse Claim, a Direct Abuse Claimant, other than holders of Future Abuse Claims must:

> (1)      have a Direct Abuse Claim;
>
> (2)      have timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust as provided below; and
>
> (3)      submit supporting documentation and evidence to the Settlement Trust as provided below.

Direct Abuse Claims can only be timely submitted as follows:

(i)      a Direct Abuse Claim for which a Proof of Claim was filed in the Chapter 11 Cases before the Bar Date or if determined timely by the Bankruptcy Court (each a "**Chapter 11 POC**") shall, without any further action by the Abuse Claimant, be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust;

(ii)      a Direct Abuse Claim alleging abuse against a Local Council (a) for which, as of the time the Claim is submitted to the Settlement Trust in accordance with the Settlement Trustee's designated procedures, a pending state court action had been timely filed under state law naming the Local Council as a defendant or (b) which is submitted to the Settlement Trust at a time when the Claim would be timely under applicable state law if a state court action were filed against the Local Council on the date on which the Direct Abuse Claim is submitted to the Settlement Trust, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust; or

(iii)      a Direct Abuse Claim alleging abuse against any Protected Party other than a Local Council (a) for which, as of the time the Claim is submitted to the Settlement Trust in accordance with the Settlement Trustee's designated procedures, a pending state court action had been timely filed under state law naming the Protected Party as a defendant or (b) which is submitted to the Settlement Trust at a time when the Claim and would be (x) timely under applicable state law if a state court action were filed against the Protected Party on the date on which the Direct Abuse Claim is submitted to the Settlement Trust and (y) meets any applicable deadline that may be set by the Bankruptcy Court in connection with such Protected Party becoming a Protected Party in accordance with the Plan and Confirmation Order, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust.

Any Direct Abuse Claim that is not timely submitted based on the foregoing shall be deemed untimely and Disallowed.

5

**B.** __Indirect Abuse Claims__.[1]    To be eligible to receive compensation from the Settlement Trust, an Indirect Abuse Claimant:

(1)    must have an Indirect Abuse Claim that satisfies the requirements of the Bar Date Order (to the extent applicable);

(2)    must have an Indirect Abuse Claim that is not subject to (a) disallowance under section 502 of the Bankruptcy Code, including subsection (e) thereof, (subject to the right of the holder of the Indirect Abuse Claim to seek reconsideration by the Settlement Trustee under section 502(j) of the Bankruptcy Code), or is not otherwise legally invalid, or (b) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law; and

(3)    must establish to the satisfaction of the Settlement Trustee or, to the extent applicable, by a final determination in an Insurance Action that:

(a)    such Indirect Abuse Claimant has paid in full all or the Claim holder's total share of the liability and/obligation of the Settlement Trust to a Direct Abuse Claimant to whom the Settlement Trust would otherwise have had a liability or obligation under these TDP (as to which the holder of the Allowed Indirect Abuse Claim seeks payment);

(b)    the Indirect Abuse Claimant has forever and fully released the Settlement Trust and the Protected Parties from all liability for or related to the subject Direct Abuse Claim (other than the Indirect Abuse Claimant's assertion of its Indirect Abuse Claim); and

(c)    the Indirect Abuse Claim is not otherwise subject to a valid defense, including, without limitation, that such Indirect Abuse Claim is barred by a statute of limitations or repose or by other applicable law.

In no event shall any Indirect Abuse Claimant have any rights against the Settlement Trust superior to the rights that the Direct Abuse Claimant to whose claim the Indirect Abuse Claim relates,

---

[1]    Indirect Abuse Claims may include claims for the payment of defense costs, deductibles or indemnification obligations; provided that the Plan's Discharge Injunction, Channeling Injunction, Insurance Entity Injunction and Plan Documents shall not be deemed to preclude a Non-Settling Insurance Company from exercising its rights of setoff and recoupment (to the extent setoff and recoupment are permitted under applicable law) against the Settlement Trust as to any deductible obligation on account of an Abuse Claim that has been or could have been asserted against any Protected Party but for the Discharge Injunction, Channeling Injunction or the Insurance Entity Injunction; provided that, the Settlement Trust and Protected Parties reserve all rights to dispute the ability for a Non-Settling Insurance Company to exercise such rights pursuant to the applicable Insurance Policy, related deductible agreement, the Plan Documents as amended by this section, and any applicable law.

6

would have against the Settlement Trust, including any rights with respect to timing, amount, percentage, priority, or manner of payment. No Indirect Abuse Claim may be liquidated and paid in an amount that exceeds what the Indirect Abuse Claimant has paid to the related Direct Abuse Claimant or to the Settlement Trust in respect of such claim for which the Settlement Trust would have liability, and in no event shall any Indirect Abuse Claim exceed the Allowed Claim Amount of the related Direct Abuse Claim, *provided that* an Indirect Abuse Claimant may assert against the Settlement Trust an Indirect Abuse Claim for the recovery of defense costs solely to the extent permitted under applicable law.

**C.** **Future Abuse Claims**. To be eligible to potentially receive compensation from the Settlement Trust on account of a Future Abuse Claim, a Future Abuse Claimant must:

(1)     have a Direct Abuse Claim that arises from Abuse that occurred prior to the Petition Date;

(2)     as of the date immediately preceding the Petition Date, had not attained eighteen (18) years of age or was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose;

(3)     submit the Future Abuse Claim to the Settlement Trust in accordance with these TDP, (i) at a time when the Claim would be timely under applicable state law if a state court action were filed on the date on which the Future Abuse Claim is submitted to the Settlement Trust, or (ii), if the Future Abuse Claim is not timely under (i) above, it will be eliminated or decreased in accordance with Article VIII.E(iii) below; and

(4)     have not filed a Chapter 11 POC.

Future Abuse Claims that meet the foregoing eligibility criteria shall be treated as Direct Abuse Claims hereunder.

**ARTICLE V**
**GENERAL TRUST PROCEDURES**

**A.** **Document Appendix**. As more fully described in the Document Appendix, the Settlement Trustee may require other parties to the Document Appendix and third parties to provide the Settlement Trust with documents, witnesses, or other information as provided therein (the "**Document Obligations**").

**B.** **Document Access**. The Settlement Trust shall afford access for Direct Abuse Claimants to relevant, otherwise discoverable non-privileged information and documents obtained by the Settlement Trust pursuant to the Document Appendix to facilitate their submissions with respect to their Direct Abuse Claims. Such access shall include IV files (the Volunteer Screening Database), Troop Rosters, and non-privileged information and documents provided to the Settlement Trust by Direct Abuse Claimants that are not confidential and are relevant to the Allowed Amount of other Direct Abuse Claimants' Claims. A court of competent jurisdiction

7

shall be able to determine whether allegedly privileged documents should be required to be produced by the Settlement Trust. The Settlement Trust also may perform any and all obligations necessary to recover assigned proceeds under the assigned insurance rights in connection with the administration of these TDP.

C.     **Assignment of Insurance Rights**.   The Bankruptcy Court has authorized the Insurance Assignment pursuant to the Plan and the Confirmation Order, and the Settlement Trust has received the assignment and transfer of the Insurance Actions, the Insurance Action Recoveries, the Insurance Settlement Agreements (if applicable), the Insurance Coverage, and all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves) in accordance with the Bankruptcy Code. Nothing in these TDP shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights and obligations under any Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order. The rights and obligations, if any, of any Non-Settling Insurance Company relating to these TDP, or any provision hereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law. Notwithstanding the foregoing, the Settlement Trust, rather than any Protected Party, shall satisfy, to the extent required under the relevant policies and applicable law, any retrospective premiums, deductibles, and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies. In the event that a Non-Settling Insurance Company pays such self-insured retention and is entitled to reimbursement from the Settlement Trust under applicable law, such Non-Settling Insurance Company shall receive that reimbursement in the form of a set-off against any claim for coverage by the Settlement Trust against that Non-Settling Insurance Company with respect to the relevant Abuse Claim. Nothing herein shall obligate any Non-Settling Insurance Company to advance any deductible or self-insured retention, unless otherwise required by applicable law.

D.     **Deceased Abuse Survivor**.   The Settlement Trustee shall consider, and if an Allowed Claim Amount is determined, pay under these TDP, the claim of a deceased Direct Abuse Claimant without regard to the Direct Abuse Claimant's death, except that the Settlement Trustee may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.

E.     **Statute of Limitations or Repose**.   The statute of limitations, statute of repose, and the choice of law determination applicable to an Abuse Claim against the Settlement Trust shall be determined by reference to the jurisdiction where such Abuse Claim was pending on the Petition Date (so long as the Protected Party was subject to personal jurisdiction in that location), or where such Abuse Claim could have been timely and properly filed as asserted by the Abuse Claimant under applicable law.

### ARTICLE VI
### EXPEDITED DISTRIBUTIONS

A.     **Minimum Payment Criteria**.   A Direct Abuse Claimant who meets the following criteria may elect to resolve his or her Direct Abuse Claim for an expedited distribution of $3,500 (the "**Expedited Distribution**"): (i) the Direct Abuse Claimant elects to resolve his or her Direct Abuse Claim for the Expedited Distribution in accordance with the Plan and Confirmation Order

8

(the "**Expedited Distribution Election**"); (ii) in connection with the Expedited Distribution Election, the Direct Abuse Claimant has timely submitted to the Settlement Trust a properly and substantially completed, non-duplicative Chapter 11 POC or Future Abuse Claim; and (iii) the Direct Abuse Claimant (or an executor) has personally signed his or her Proof of Claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Abuse Claim Proof of Claim to so provide such verification. Direct Abuse Claimants that make the Expedited Distribution Election will not have to submit any additional information to the Settlement Trust to receive payment of the Expedited Distribution from the Settlement Trust.

        **B.**      **Process and Payment of Expedited Distributions**. Direct Abuse Claimants who have properly made the Expedited Distribution Election and who met the criteria set forth in Article VI.A(ii) and (iii) above, shall be entitled to receive their Expedited Payment upon executing an appropriate release, which shall include a release of the Settlement Trust, the Protected Parties, and all Chartered Organizations. The form of release agreement that a Direct Abuse Claimant who makes the Expedited Distribution Election must execute is attached as **Exhibit A**. A Direct Abuse Claimant who does not make the Expedited Distribution Election and a Future Abuse Claimant who does not elect to receive the Expedited Distribution in accordance with the deadlines and procedures established by the Settlement Trust may not later elect to receive the Expedited Distribution. A Direct Abuse Claimant who makes the Expedited Distribution Election (or Future Abuse Claimant who elects to receive the Expedited Distribution) shall have no other remedies with respect to any Direct Abuse Claim he or she has against the Settlement Trust, Protected Parties, Chartered Organizations, or any Non-Settling Insurance Company. Direct Abuse Claimants that make the Expedited Distribution Election (or Future Abuse Claimant who elects to receive the Expedited Distribution) will not be eligible to receive any further distribution on account of their Direct Abuse Claim pursuant to these TDP. The Settlement Trustee shall not seek reimbursement for any Expedited Distribution from any Non-Settling Insurance Company. An Abuse Claim resolved via Expedited Distribution shall not be considered an Insured Abuse Claim (as defined below).

**ARTICLE VII**
**CLAIMS ALLOWANCE PROCESS**

        **A.**      **Trust Claim Submissions**. Each Abuse Claimant that does not make the Expedited Distribution Election may instead elect (1) to pursue recovery from the Settlement Trust pursuant to these TDP must submit his or her Abuse Claim for allowance and potential valuation and determination of insurance status by the Settlement Trustee pursuant to the requirements set forth herein (each, a "**Trust Claim Submission**") or (2) to pursue the Independent Review Option, as set forth therein. In order to properly make a Trust Claim Submission, each submitting Abuse Claimant must (i) complete under oath a questionnaire to be developed by the Settlement Trustee and such signature and oath must be of the Abuse Claimant individually (or of an executor); (ii) produce all records and documents in his or her possession, custody or control related to the Abuse Claim, including all documents pertaining to all settlements, awards, or contributions already received or that are expected to be received from a Protected Party or other sources; and (iii) execute an agreement to be provided or made available by the Settlement Trust with the questionnaire (1) to produce any further records and documents in his or her possession, custody or control related to the Abuse Claim reasonably requested by the Settlement Trustee, (2) consent to and agree to cooperate in any examinations requested by the Settlement Trustee (including by

9

healthcare professionals selected by the Settlement Trustee) (a "**Trustee Interview**"); and (3) consent to and agree to cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee.  The questionnaire shall be approved by the STAC and the Future Claims Representative but, at a minimum, will require Direct Abuse Claimants to confirm his/her name, date of birth, home address, dates of abuse, frequency of abuse, and level of abuse.  The date on which an Abuse Claimant submits (i), (ii) and (iii) above to the Settlement Trust shall be the "**Trust Claim Submission Date**".  No recovery will be provided to an Abuse Claimant that does not timely submit a questionnaire.  The Abuse Claimant's breach or failure to comply with the terms of his or her agreement made in connection with his or her Trust Claim Submission shall be grounds for disallowance or significant reduction of his or her Abuse Claim.  To complete the evaluation of each Abuse Claim submitted through a Trust Claim Submission (each a "**Submitted Abuse Claim**"), the Settlement Trustee also may, but is not required to, obtain additional evidence from the Abuse Claimant or from other parties pursuant to the Document Obligations and shall consider supplemental information timely provided by the Abuse Claimant, including information obtained pursuant to the Document Obligations.  Non-material changes to the claims questionnaire may be made by the Settlement Trustee without the consent of the STAC and the Future Claimants' Representative.

B.     **Claims Evaluation**.  The Settlement Trustee shall evaluate each Trust Claim Submission individually and will follow the uniform procedures and guidelines set forth below to determine, based on the evidence obtained by the Settlement Trust, whether or not a Submitted Abuse Claim should be allowed.  After a review of the documentation provided by the Abuse Claimant in his or her Proof of Claim, Trust Claim Submission, materials received pursuant to the Document Obligations, and any follow-up materials or examinations (including, without limitation, any Settlement Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid and an Allowed Abuse Claim, or legally invalid and a Disallowed Claim.

C.     **Settlement Trustee Review Procedures**.  The Settlement Trustee must evaluate each Submitted Abuse Claim, including the underlying Proof of Claim, the Trust Claim Submission and/or the Settlement Trustee Interview or any other follow-up, and documents obtained through the Document Obligations, and determine whether such Claim is a legally valid Allowed Abuse Claim, based on the following criteria:

1.     **Initial Evaluation Criteria**.  The Settlement Trustee shall perform an initial evaluation (the "**Initial Evaluation**") of a Submitted Abuse Claim to determine whether:

(a)     the Abuse Claimant's Proof of Claim or Trust Claim Submission is substantially and substantively completed and signed under penalty of perjury;

(b)     the Direct Abuse Claim was timely submitted to the Settlement Trust under Article IV.A; and

(c)     the Submitted Abuse Claim had not previously been resolved by litigation and/or settlement involving all Protected Parties.

10

If any of these criteria are not met after such notice and opportunity as the Settlement Trustee deems appropriate to permit any defects in the Submitted Abuse Claim to be corrected, then the Submitted Abuse Claim shall be a Disallowed Claim.

2.  **General Criteria for Evaluating Submitted Abuse Claims**.  To the extent a Submitted Abuse Claim is not disallowed based on the Initial Evaluation, then the Settlement Trustee will evaluate the following factors to determine if the evidence related to the Submitted Abuse Claim is credible and demonstrates, by a preponderance of the evidence, that the Submitted Abuse Claim is entitled to a recovery and should be allowed (the "**General Criteria**"):

(a)  Alleged Abuse.  The Abuse Claimant has identified alleged acts of Abuse that he or she suffered;

(b)  Alleged Abuser Identification.  The Abuse Claimant has either (i) identified an alleged abuser (*e.g.*, by the full name or last name) or (ii) provided specific information (*e.g.*, a physical description of an alleged abuser combined with the name or location of the Abuse Claimant's troop) about the alleged abuser such that the Settlement Trustee can make a reasonable determination that the alleged abuser was an employee, agent or volunteer of a Protected Party, the alleged abuser was a registered Scout, or the alleged abuser participated in Scouting or a Scouting activity and the Abuse was directly related to Scouting activities;

(c)  Connection to Scouting.  The Abuse Claimant has provided information showing (or the Settlement Trustee otherwise determines) (i) that the Abuse Claimant was abused during a Scouting activity or that the Abuse resulted from involvement in Scouting activities, and (ii) that a Protected Party may be negligent or may otherwise bear legal responsibility.

(d)  Date and Age.  The Abuse Claimant has either:  (i) identified the date of the alleged abuse and/or his or her age at the time of the alleged Abuse, or (ii) provided additional facts (*e.g.*, the approximate date and/or age at the time of alleged Abuse coupled with the names of additional scouts or leaders in the troop) sufficient for the Settlement Trustee to determine the date of the alleged Abuse and age of the Abuse Claimant at the time of such alleged Abuse; and

(e)  Location of Abuse.  The Abuse Claimant has identified the venue or location of the alleged Abuse.

11

3. **Submitted Abuse Claims That Satisfy the General Criteria**.  To the extent that a Submitted Abuse Claim meets the evidentiary standard set forth in the General Criteria and the Settlement Trustee has verified such information and determined that no materials submitted or information received in connection with the Submitted Abuse Claim are deceptive or fraudulent, the Submitted Abuse Claim will be, and will be deemed to be, an Allowed Abuse Claim.

4. **Submitted Abuse Claims That Do Not Satisfy the General Criteria**.  If the Settlement Trustee determines that any Submitted Abuse Claim materials provided by an Abuse Claimant include fraudulent and/or deceptive information, the Submitted Abuse Claim will be, and will be deemed to be, a Disallowed Claim.  To the extent that a Submitted Abuse Claim – after an opportunity for the Abuse Claimant to discover information from the Settlement Trust as provided in these TDP – does not meet the evidentiary standard set forth in the General Criteria, the Settlement Trustee can disallow such Claim, or request further information from the Abuse Claimant in question necessary to satisfy the General Criteria requirements. If the Settlement Trustee finds that any of the factors set forth in Article VII.C.2(a)-(c) with respect to any Submitted Abuse Claim are not satisfied, the Claim will be *per se* disallowed and will be, and will be deemed to be, a Disallowed Claim.

D. **Disallowed Claims**.  If the Settlement Trustee finds that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee shall provide written notice of its determination to the relevant Abuse Claimant (a "**Disallowed Claim Notice**").  If the Settlement Trustee finds that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee will not perform the Allowed Abuse Claim valuation analysis described below in Article VIII.  Abuse Claimants shall have the ability to seek reconsideration of the Settlement Trustee's determination set forth in the Disallowed Claim Notice as described in Article VII.G below.

E. **Allowed Abuse Claims**.  If the Settlement Trustee finds that a Submitted Abuse Claim is an Allowed Abuse Claim, the Settlement Trustee shall utilize the procedures described below in Article VIII to determine the proposed Claims Matrix tier and Scaling Factors for such Abuse Claim (the "**Proposed Allowed Claim Amount**"), and provide written notice of allowance and the Proposed Allowed Claim Amount to the Abuse Claimant (an "**Allowed Claim Notice**" and together with the Disallowed Claim Notice, a "**Claim Notice**") as set forth in Article VII.F below.

F. **Claims Determination**.  If the Abuse Claimant accepts the Proposed Allowed Claim Amount in the Allowed Claim Notice or the reconsideration process set forth below in Article VII.G has been exhausted (and no further action has been taken by the Abuse Claimant in the tort system pursuant to Article XII below), the Proposed Allowed Claim Amount shall become the Allowed Claim Amount for such Claim (a "**Final Determination**"), and the holder of such Allowed Abuse Claim shall receive payment in accordance with Article IX, subject to the Abuse Claimant executing the form of release set forth in Article IX.D, and subject to any further adjustment if the Direct Abuse Claimant exercises the Independent Review Option.

**G.**     **Reconsideration of Settlement Trustee's Determination**.  An Abuse Claimant may make a request for reconsideration of (i) the disallowance of his or her Submitted Abuse Claim, or (ii) the Proposed Allowed Claim Amount (a "**Reconsideration Request**") within thirty (30) days of receiving a Disallowed Claim Notice or an Allowed Claim Notice (the "**Reconsideration Deadline**").  Any Abuse Claimant who fails to submit a Reconsideration Request to the Settlement Trust by the Reconsideration Deadline shall be deemed to accept the disallowance of the Abuse Claim or the Proposed Allowed Claim Amount.  Each Reconsideration Request must be accompanied by payment of $1,000 as an administrative fee for reconsideration. The Settlement Trustee shall have the authority to waive the administrative fee in appropriate cases, based on the circumstances of the Abuse Claimant.  The Abuse Claimant may submit further evidence in support of the Submitted Abuse Claim with the Reconsideration Request.  The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request.  The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the Abuse Claimant within thirty (30) days of receiving the request that it will not reconsider the Abuse Claimant's Submitted Abuse Claim.  The Abuse Claimant shall retain the ability to pursue the Settlement Trust in the tort system as described in Article XII below.

If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within thirty (30) days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim.  The Settlement Trustee will then reconsider the Submitted Abuse Claim—including all new information provided by the Abuse Claimant in the Reconsideration Request and any additional Settlement Trustee Interview—and will have the discretion to maintain the prior determination or find that the Submitted Abuse Claim in question is an Allowed Abuse Claim or should receive a new Proposed Allowed Claim Amount.

If the Settlement Trustee determines upon reconsideration that a Submitted Abuse Claim is an Allowed Abuse Claim and/or should receive a new Proposed Allowed Claim Amount, the Settlement Trustee will deliver an Allowed Claim Notice and return the administrative fee to the relevant Abuse Claimant.  If the Settlement Trustee determines upon reconsideration that the totality of the evidence submitted by the Abuse Claimant does not support changing the earlier finding that the Submitted Abuse Claim is a Disallowed Claim, or that the Claim in question is not deserving of a new Proposed Allowed Claim Amount, the Settlement Trustee's earlier allowance determination and/or Proposed Allowed Claim Amount shall stand and the Settlement Trustee will provide a Claim Notice to the Abuse Claimant of either result within ninety (90) days of the Settlement Trust having sent notice that it was reconsidering the Abuse Claimant's Submitted Abuse Claim.  Thereafter, the Abuse Claimant shall retain the ability to pursue the Settlement Trust in the tort system as described below in Article XII.

**H.**     **Claim Determination Deferral**.  For a period of up to twelve (12) months from the Effective Date, and by an election exercised at the time of the Trust Claim Submission, Direct Abuse Claimants whose Direct Abuse Claims may be substantially reduced by the Scaling Factor described below in Article VIII.E.(iii) (statute of limitations defense) may elect to defer the determination of their Proposed Allowed Claim Amounts to see if statute of limitations revival

13

legislation occurs, *provided*, *however*, that this claim determination deferral window shall close for all Direct Abuse Claims twelve (12) months from the Effective Date at which time such Submitted Abuse Claims shall be determined based on then applicable Scaling Factors.

**I.** **Prevention and Detection of Fraud**. The Settlement Trustee shall propose procedures to identify fraudulent claims, taking into account factors the Settlement Trustee deems appropriate (and which may include a cost/benefit analysis) to the Bankruptcy Court for approval. The Settlement Trustee shall work with the Claims Administrators to institute auditing and other procedures to detect and prevent the allowance of Abuse Claims based on fraudulent Trust Claim Submissions. Among other things, such procedures will permit the Settlement Trustee or Claims Administrators to conduct random audits to verify supporting documentation submitted in randomly selected Trust Claim Submissions, as well as targeted audits of individual Trust Claim Submissions or groups of Trust Claim Submissions, any of which may include Settlement Trustee Interviews. Trust Claim Submissions must be signed under the pains and penalties of perjury and to the extent of applicable law, the submission of a fraudulent Trust Claim Submission may violate the criminal laws of the United States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and may subject those responsible to criminal prosecution in the Federal Courts.

**ARTICLE VIII**
**CLAIMS MATRIX AND SCALING FACTORS**

**Claims Matrix and Scaling Factors**. These TDP establish certain criteria for unliquidated claims seeking compensation from the Settlement Trust, a claims matrix below (the "**Claims Matrix**") that schedules six types of Abuse (the "**Abuse Types**") and designates for each Abuse Type a Base Matrix Value, and Maximum Matrix Value, and certain scaling factors (the "**Scaling Factors**") identified below to apply to the Base Matrix Values to determine the liquidated values for certain unliquidated Abuse Claims. The Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values that are set forth in the Claims Matrix have all been selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants would receive in the tort system against the Protected Parties absent the bankruptcy. The Settlement Trustee shall utilize the Claims Matrix and Scaling Factors as the basis to determine a Proposed Allowed Claim Amount for each Allowed Abuse Claim that does not receive an Expedited Distribution or become a STAC Tort Election Claim. The Proposed Allowed Claim Amount agreed to by the Direct Abuse Claimant as the Allowed Claim Amount for an Allowed Abuse Claim shall be deemed to be the Protected Parties' liability for such Direct Abuse Claim (*i.e.*, the claimant's right to payment for his or her Direct Abuse Claim), irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in Article IX. In no circumstance shall the amount of a Protected Party's legal obligation to pay any Direct Abuse Claim be determined to be any payment percentages hereunder or under the Settlement Trust Agreement (rather than the liquidated value of such Direct Abuse Claim as determined under the TDP).

**A.** **Claims Matrix**. The Claims Matrix establishes six tiers of Abuse Types, and provides the range of potential Allowed Claim Amounts assignable to an Allowed Abuse Claim

14

in each tier.  The first two columns of the Claims Matrix delineate the six possible tiers to which an Allowed Abuse Claim can be assigned based on the nature of the abuse.  The Base Matrix value column for each tier represents the default Allowed Claim Amount for an Allowed Abuse Claim assigned to a given tier prior to application of the Scaling Factors described in Article VIII.D (the "**Base Matrix Value**").  The maximum Claims Matrix value column for each tier represents the maximum Allowed Claim Amount for an Allowed Abuse Claim assigned to a given tier after Claims Matrix review and application of the Scaling Factors described in Article VIII.C (the "**Maximum Matrix Value**").  The ultimate distribution(s) to the holder of an Allowed Abuse Claim that has received a Final Determination may vary upward (in the case of a larger-than-expected Settlement Trust corpus) or downward (in the case of a smaller-than-expected Settlement Trust corpus) from the holder's Allowed Claim Amount based on the payment percentages determined by the Settlement Trustee.  If an Allowed Abuse Claim would fall into more than one tier, it will be placed in the highest applicable tier.  An Abuse Claimant cannot have multiple Allowed Abuse Claims assigned to different tiers.  Commencing on the second anniversary of the Effective Date, the Settlement Trust shall adjust the valuation amounts for yearly inflation based on the CPI-U.  The CPI-U adjustment may not exceed 3% annually, and the first adjustment shall not be cumulative.

| Tier | Type of Abuse | Base Matrix Value | Maximum Matrix Value |
|---|---|---|---|
| 1 | Anal or Vaginal Penetration by Adult Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, or anal or vaginal penetration with a foreign, inanimate object. | $600,000 | $2,700,000 |
| 2 | Oral Contact by Adult Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina.<br><br>Anal or Vaginal Penetration by a Youth Perpetrator—includes anal or vaginal sexual intercourse, anal or vaginal digital penetration, or anal or vaginal penetration with a foreign, inanimate object. | $450,000 | $2,025,000 |
| 3 | Masturbation by Adult Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant.<br><br>Oral Contact by a Youth Perpetrator—includes oral sexual intercourse, which means contact between the mouth and penis, the mouth and anus, or the mouth and vulva or vagina. | $300,000 | $1,350,000 |

15

| 4 | Masturbation by Youth Perpetrator—includes touching of the male or female genitals that involves masturbation of the abuser or claimant.<br><br>Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator. | $150,000 | $675,000 |
|---|---|---|---|
| 5 | Touching of the Sexual or Other Intimate Parts (unclothed) by a Youth Perpetrator.<br><br>Touching of the Sexual or Other Intimate Parts (clothed), regardless of who is touching whom and not including masturbation.<br><br>Exploitation for child pornography. | $75,000 | $337,500 |
| 6 | Sexual Abuse-No Touching.<br><br>Adult Abuse Claims. | $3,500 | $8,500 |

B.  **Scaling Factors**.  After the Settlement Trustee has assigned an Allowed Abuse Claim to one of the six tiers in the Claims Matrix, the Settlement Trustee will utilize the Scaling Factors described below to determine the Proposed Allowed Claim Amount for each Allowed Abuse Claim.   Each Allowed Abuse Claim will be evaluated for each factor by the Settlement Trustee through his or her review of the evidence obtained through the relevant Proof of Claim, Trust Claim Submission and any related or follow-up materials, interviews or examinations, as well as materials obtained by the Settlement Trust or the Direct Abuse Claimant through the Document Obligations.  These scaling factors can increase or decrease the Proposed Allowed Claim Amount for an Allowed Abuse Claim depending on the severity of the facts underlying the Claim.  By default, the value of each scaling factor is one (1), meaning that in the absence of the application of the scaling factor, the Base Matrix Value assigned to a Claim is not affected by that factor.  In contrast, if the Settlement Trustee determines that a particular scaling factor as applied to a given Allowed Abuse Claim is 1.5, the Proposed Allowed Claim Amount for the Allowed Abuse Claim will be increased by 50%, the result of multiplying the Base Matrix Value of the Allowed Abuse Claim by 1.5.  The combined effect of all scaling factors is determined by multiplying the scaling factors together then multiplying the result by the Base Matrix Value of the Allowed Abuse Claim.  *See* Article VIII.F for illustrative example.

C.  **Aggravating Scaling Factors**.  The Settlement Trustee may assign upward Scaling Factors to each Allowed Abuse Claim based on the following categories:

(i)  **Nature of Abuse and Circumstances**.  To account for particularly severe Abuse or aggravating circumstances, the Settlement Trustee may assign an upward Scaling Factor of up to 1.5 to each Allowed Abuse Claim.  The hypothetical base case scenario for this scaling factor would involve a single incident of Abuse with a single perpetrator with such perpetrator having accessed the victim as an employee or volunteer within BSA-sponsored scouting.  The hypothetical base case is incorporated into the Base Matrix Value in the Claims Matrix' tiers and would

16

not receive an increase on account of this factor. By way of example, aggravating factors that can give rise to a higher scaling factor include the following factors:

a.  Extended duration and/or frequency of the Abuse;

b.  Exploitation of the Abuse Claimant for child pornography;

c.  Coercion or threat or use of force or violence, stalking; and

d.  Multiple perpetrators involved in sexual misconduct.

(ii)  **Abuser Profile**. To account for the alleged abuser's profile, the Settlement Trustee may assign an upward Scaling Factor of up to 2.0 to an Allowed Abuse Claim. This factor is to be evaluated relative to a hypothetical base case scenario involving a perpetrator as to whom there is no other known allegations of Abuse. The hypothetical base case is incorporated into the Base Matrix Value in the Claims Matrix' tiers and would not receive an increase on account of this factor. An upward Scaling Factor may be applied for this category as follows (the Settlement Trustee may only apply the scaling factor of the single highest applicable category listed below):

a.  1.25 if the abuser was accused by at least one (1) other alleged victim of Abuse;

b.  1.5 if the abuser was accused by five (5) or more other alleged victims of Abuse;

c.  2.0 if the abuser was accused by ten (10) or more other alleged victims of Abuse; and

d.  1.25 to 2.0 if there is evidence that the Protected Party knew or should have known (i) the abuser had previously committed or may commit Abuse and failed to take reasonable steps to protect the survivor from that danger, or (ii) of the prior Abuse or the foreseeability of the risk of Abuse and failed to take reasonable steps to protect the survivor from that danger.

(iii)  **Impact of the Abuse**. To account for the impact of the alleged Abuse on the Abuse Claimant's mental health, physical health, inter-personal relationships, vocational capacity or success, academic capacity or success, and whether the alleged Abuse at issue resulted in legal difficulties for the Abuse Claimant, the Settlement Trustee may assign an upward Scaling Factor of up to 1.5. This factor is to be evaluated relative to a hypothetical base case scenario of a victim of Abuse who suffered the typical level of Abuse-related distress within the tier to which the Allowed Abuse Claim was assigned. The hypothetical base case is incorporated into the Base Matrix Values in the Claims Matrix' tiers and would not receive an increase on account of this factor. The Settlement Trustee will consider, along with any and all other relevant factors, whether the Abuse at issue manifested or otherwise led the Abuse Claimant to experience or engage in behaviors resulting from:

17

a.   Mental Health Issues:  This includes anxiety, depression, post-traumatic stress disorder, substance abuse, addiction, embarrassment, fear, flashbacks, nightmares, sleep issues, sleep disturbances, exaggerated startle response, boundary issues, self-destructive behaviors, guilt, grief, homophobia, hostility, humiliation, anger, isolation, hollowness, regret, shame, isolation, sexual addiction, sexual problems, sexual identity confusion, low self-esteem or self-image, bitterness, suicidal ideation, suicide attempts, and hospitalization or receipt of treatment for any of the foregoing.

b.   Physical Health Issues:  This includes physical manifestations of emotional distress, gastrointestinal issues, headaches, high blood pressure, physical manifestations of anxiety, erectile dysfunction, heart palpitations, sexually-transmitted diseases, physical damage caused by acts of Abuse, reproductive damage, self-cutting, other self-injurious behavior, and hospitalization or receipt of treatment for any of the foregoing.

c.   Interpersonal Relationships:  This includes problems with authority figures, hypervigilance, sexual problems, marital difficulties, problems with intimacy, lack of trust, isolation, betrayal, impaired relations, secrecy, social discreditation and isolation, damage to family relationships, and fear of children or parenting.

d.   Vocational Capacity:  This includes under- and un-employment, difficulty with authority figures, difficulty changing and maintaining employment, feelings of unworthiness, or guilt related to financial success.

e.   Academic Capacity:  This includes school behavior problems.

f.   Legal Difficulties:  This includes criminal difficulties, bankruptcy, and fraud.

**D.**   **Mitigating Scaling Factors**.  The Settlement Trustee may assign a mitigating Scaling Factor in the range of 0 to 1.0 except as specifically provided below to each Allowed Abuse Claim to eliminate or decrease the Proposed Allowed Claim Amount for such Claim.  Each mitigating factor is to be evaluated relative to a hypothetical base case scenario of a timely asserted Abuse Claim with supporting evidence that demonstrates, by a preponderance of the evidence, Abuse by a perpetrator that accessed the victim as an employee, agent or volunteer of a Protected Party, as a registered Scout or as a participant in Scouting within BSA-sponsored Scouting.  If statute of limitations revival legislation occurs in a particular jurisdiction, the Settlement Trustee may modify the applicable Scaling Factor (as described below) relevant thereto on a go-forward basis and determine Proposed Allowed Claim Amounts for Abuse Claims in such jurisdiction thereafter based on such modified Scaling Factor.  Included in the hypothetical base case scenario is that the applicable period under a statute of limitations or repose for timely asserting such Abuse Claim against any potentially responsible party will not have passed.  The hypothetical base case is incorporated into the Base Matrix Values in the Claims Matrix tiers and would not receive a decrease on account of these factors.  Such factors may include the following:

18

(i) **Absence of Protected Party Relationship or Presence of a Responsible Party that Is Not a Protected Party**.

    a.    <u>Familial Relationship</u>. A Protected Party's responsibility for a perpetrator may be factually or legally attenuated or mitigated where the perpetrator also had a familial relationship with the Abuse Claimant. Familial Abuse—even if the perpetrator was an employee, agent or volunteer of a Protected Party, and the Abuse occurred in connection with BSA-related Scouting—should result in a significant reduction of the Proposed Allowed Claim Amount.

    b.    <u>Other Non-Scouting Relationship</u>. A Protected Party's responsibility for a perpetrator may be factually or legally attenuated or mitigated where the perpetrator also maintained a non-familial relationship with the Abuse Claimant through a separate affiliation, such as a school, or a religious organization, even if the perpetrator was an employee, agent or volunteer of a Protected Party, or the Abuse occurred in settings where a Protected Party did not have the ability or responsibility to exercise control. Factors to consider include how close the relationship was between the perpetrator and the victim outside of their Scouting-related relationship, whether Abuse occurred and the extent of such Abuse outside of their Scouting relationship, and applicable law related to apportionment of liability. In such event, the Settlement Trustee shall determine and apply a mitigating Scaling Factor that accounts for such other relationship and the related Abuse. By way of example, if the Settlement Trustee determines after evaluation of an Allowed Abuse Claim and application of all of the other Scaling Factors that the perpetrator, who was an employee, agent or volunteer of a Protected Party for BSA-related Scouting, also was the primary teacher (at a non-Protected Party entity or institution) of the Abuse Claimant outside of BSA-related Scouting, and if numerous incidents of Abuse occurred outside of Scouting before one incident of BSA-related Scouting Abuse occurred, the Settlement Trustee shall apply a mitigating Scaling Factor as a material reduction of the Proposed Allowed Claim Amount.

    c.    <u>Other Responsible Non-Protected Party</u>. The Abuse Claimant may have a cause of action under applicable law for a portion of his or her Direct Abuse Claim against a responsible entity, such as a Chartered Organization, that is not a Protected Party. By way of example, if the Settlement Trustee determines after evaluation of a Submitted Abuse Claim that (i) a Chartered Organization that is not a Protected Party is responsible under applicable law for a portion of the liability and (ii) a Protected Party(ies) are not also liable for the same portion of the liability) (taking into account the relevant jurisdiction's prevailing law on apportionment of damages), the Settlement Trustee shall apply a final Scaling Factor to account for such non-Protected Party's portion of the liability.

19

(ii)     **Other Settlements, Awards, Contributions, or Limitations**.  The Settlement Trustee may consider any further limitations on the Abuse Claimant's recovery in the tort system.  The Settlement Trustee also should consider the amounts of any settlements or awards already received by the Abuse Claimant from other, non-Protected Party sources as well as agreed and reasonably likely to be received contributions from other, non-Protected Party sources that are related to the Abuse. By way of example, the Settlement Trustee should assign an appropriate Scaling Factor to Allowed Abuse Claims capped by charitable immunity under the laws of the jurisdiction where the Abuse occurred.  Notwithstanding the foregoing, where an Abuse Claimant has obtained a recovery based on the independent liability of a third party for separate instances of Abuse that occurred without connection to Scouting activities, or on the Non-Scouting portion of a Mixed Claim, no mitigating factor or reduction in value will be applied based on that recovery.

(iii)     **Statute of Limitations or Repose**.  If the evidence provided by the Abuse Claimant or otherwise obtained by the Settlement Trustee results in the Settlement Trustee concluding that the subject Direct Abuse Claim could be dismissed or denied in the tort system as to all Protected Parties against whom the Direct Abuse Claim was timely submitted (as set forth in Articles IV.A) due to the passage of a statute of limitations or a statute of repose, the Settlement Trustee shall apply an appropriate Scaling Factor based on the ranges set forth in Schedule 1 hereof and giving due consideration to any changes in the applicable law; *provided*, *however,* the Settlement Trustee will weigh the strength of any relevant evidence submitted by the Abuse Claimant to determine whether the statute of limitations could be tolled or deemed timely under applicable law, and may apply a higher Scaling Factor if such evidence demonstrates to the Settlement Trustee that tolling or a finding of timeliness would be appropriate under applicable state law.

(iv)     **Absence of a Putative Defendant.**  If the Direct Abuse Claim could be diminished because such claim was not timely submitted against BSA or another Protected Party (as set forth in Articles IV.A) (a "**Missing Party**"), such that in a suit in the tort system, such Direct Abuse Claim would be burdened by an "empty chair" defense due to the absence of a Missing Party(ies), the Settlement Trustee shall apply a mitigating Scaling Factor to account for a Missing Party's absence. By way of example, where a timely submitted Direct Abuse Claim was not timely submitted against BSA (*i.e.*, the Abuse Claimant failed to timely file a Chapter 11 POC) but was only timely submitted against the Local Council and/or another Protected Party (as set forth in Articles IV.A(ii) and (iii)), such absence of the BSA due to BSA's discharge would be the basis for such a substantial reduction.  Any Direct Abuse Claim that is reduced due to the absence of the BSA under this mitigating Scaling Factor shall only be payable, as reduced, from Settlement Trust Assets contributed by the applicable Local Council or Chartered Organization, pro rata with all other Direct Abuse entitled to share in the Settlement Trust Assets contributed by such Local Council or Chartered Organization.

**E.     Allowed Abuse Claim Calculus**.  After the Settlement Trustee assigns an Allowed Abuse Claim to a Claims Matrix tier and determines the appropriate Scaling Factors that apply to

20

the Claim, the Proposed Allowed Claim Amount for the Allowed Abuse Claim is the product of the Base Matrix Value of the Claim and the Scaling Factors applied to the Claim. In no event can an Allowed Abuse Claim's Proposed Allowed Claim Amount (or Allowed Claim Amount) exceed the Maximum Matrix Value for the Claim's assigned Claims Matrix tier. By way of example, if an Allowed Abuse Claim is determined by the Settlement Trustee to be a tier 1 claim (Base Matrix Value of $600,000) with a Scaling Factor of 1.5 for the nature and circumstances of the abuse, and a mitigating Scaling Factor of 0.75, and no other Scaling Factors, the Proposed Allowed Claim Amount for the Allowed Abuse Claim would be $675,000, calculated as $600,000 x 1.5 x 0.75 = $675,000. As a further example, if, in addition to the above Scaling Factors, the same Allowed Abuse Claim had an additional aggravating Scaling Factor of 2.0 on account of the abuser's profile, the Proposed Allowed Claim Amount for the Allowed Abuse Claim would be $1,350,000 (calculated as $600,000 x 1.5 x .75 x 2.0).

**F.** **Optional Chartered Organization Release**. To have the opportunity to exclusively share in any settlement proceeds received from a Chartered Organization that becomes a Protected Party as provided below in Article IX.F, a Direct Abuse Claimant must execute either (i) the conditional release of the Chartered Organization(s) against whom the Abuse Claimant has an Abuse Claim, that will become effective as to that Abuse Claimant if the Chartered Organization(s) against whom the Abuse Claimant conditionally released becomes a Protected Party(ies), in the form attached as **Exhibit B** (the "**Settling Chartered Organizations Release**"), or (ii) the non-conditional release of all Chartered Organizations in the form attached as **Exhibit C** (the "**Voluntary Chartered Organization Release**").

**ARTICLE IX**
**PAYMENT OF FINAL DETERMINATION ALLOWED ABUSE CLAIM**

**A.** **Payment Upon Final Determination**. Only after the Settlement Trustee has established an Initial Payment Percentage in accordance with Section 4.1 of the Settlement Trust Agreement, then once there is a Final Determination of an Abuse Claim pursuant to Article VII.F, the Claimant will receive a payment of such Final Determination based on the Payment Percentage then in effect as described in Article IX.B and IX.C (unless such Claimant has exercised the Independent Review Option, in which case payment will be withheld until that determination is complete). For the purpose of payment by the Settlement Trust, a Final Judicial Determination (as defined in Article XII.H hereof) shall constitute a Final Determination.

**B.** **Initial Payment Percentage**. After the Claimant accepts the Proposed Allowed Claim Amount and there is a Final Determination of the Abuse Claim, the Settlement Trust shall pay an initial distribution ("**Initial Distribution**") based on the Initial Payment Percentage established by the Settlement Trustee in accordance with the Settlement Trust Agreement.

**C.** **Supplemental Payment Percentage**. When the Settlement Trustee determines that the then-current estimates of the Settlement Trust's assets and its liabilities, as well as then-estimated value of then-pending Abuse Claims (including estimated Future Abuse Claims), warrant additional distributions on account of the Final Determinations, the Settlement Trustee shall set a Supplemental Payment Percentage in accordance with the Settlement Trust Agreement. Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage. Claimants whose

21

Abuse Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the then existing payment percentage.  For the avoidance of doubt, the Allowed Claim Amount of each Allowed Abuse Claim after Final Determination shall be deemed to be the Protected Parties' liability for such Allowed Abuse Claim irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in this Article IX.  For example if the Allowed Claim Amount for an Allowed Abuse Claim that has received a Final Determination is $1,350,000, even if the Settlement Trust distributes less than $1,350,000 to the Abuse Claimant on account of such Allowed Abuse Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the Abuse Claim is still $1,350,000.

**D.**     **Release**.  In order for an Allowed Abuse Claim to receive a Final Determination and for the relevant Abuse Claimant to receive any payment from the Settlement Trust, the Abuse Claimant must submit, as a precondition to receiving any payment from the Settlement Trust, an executed release in the form attached hereto.  The form of release agreement that a Direct Abuse Claimant who makes the Expedited Distribution Election must execute is attached as **Exhibit A** hereto.  The form of the Settling Chartered Organization Release applicable to an Abuse Claimant who has elected to provide a conditional release to certain Chartered Organizations shall be substantially in the form of **Exhibit B** hereto.  The form of the Voluntary Chartered Organization Release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Allowed Claim Amount shall be substantially in the form of **Exhibit C** hereto.  The form of the release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Allowed Claim Amount but who does not elect to execute the Voluntary Chartered Organization Release shall be substantially in the form of **Exhibit D** hereto.

**E.**     **FIFO Claims Process Queuing and Exigent Health Claims**.  The Settlement Trust shall review all Trust Claim Submissions for processing purposes on a FIFO basis as set forth below, except as otherwise provided herein with respect to Expedited Distributions, Exigent Health Claims, or Submitted Abuse Claims electing to defer determination of their Allowed Claim Amounts for up to twelve (12) months from the Effective Date pursuant to Article VII.H above.  An Abuse Claimant's position in the FIFO Processing Queue shall be determined as of the Abuse Claimant's Trust Claim Submission Date.  If any Trust Claim Submissions are filed on the same date, an Abuse Claimant's position in the applicable FIFO Processing Queue vis-à-vis such other same-day claims shall be determined by the claimant's date of birth, with older Abuse Claimants given priority over younger Abuse Claimants.  An Abuse Claimant that seeks recovery on account of an Exigent Health Claim based on an Allowed Claim Amount determined through the matrix shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under these TDP.  Following receipt of a Final Determination on account of an Exigent Health Claim, the holder of an Exigent Health Claim shall receive an Initial Distribution from the Settlement Trust (subject to the payment percentages then in effect), within thirty (30) days of executing the release as set forth in Article IX.D above.

**F.**     **Source Affected Weighting**.

1.     Notwithstanding the Initial Payment Percentage and the Supplemental Payment Percentages applied hereunder, Non-BSA Sourced Assets shall be allocated (after deducting an estimated pro rata share of Settlement Trust expenses and direct expenses related to

22

the collection of such Non-BSA Sourced Assets) all or in part (the "Source Allocated Portion") only among the holders of Allowed Abuse Claims that (1) could have been satisfied from the source of such Non-BSA Assets absent the Plan's Discharge and Channeling Injunction and (2) are held by Direct Abuse Claimants that execute a conditional release, the form of which is attached as **Exhibit B**, releasing all claims against all Chartered Organizations if the Settlement Trust enters into a global settlement making such Chartered Organization a Protected Party. The Settlement Trustee shall establish separate payment percentages (each, a "Source Allocated Payment Percentage") in accordance with the Settlement Trust Agreement to effectuate the distribution of the Source Allocated Portions of any Non-BSA Sourced Assets.

2.      Solely for purposes of allocating Non-BSA Sourced Assets, if a Direct Abuse Claimant exercises the Independent Review Option, then the claim amount for such Claimant for purposes of allocating the Source Allocated Portion of the United Methodist Settlement shall be based on the lesser of (i) the Allowed Claim Amount determined through the matrix calculation for the applicable tier and after application of the Scaling Factors under Article VIII or (ii) the amount of the Accepted Settlement Recommendation (the **"UMS ASR Source Allocated Portion Claim"**). For all other Direct Abuse Claims with Allowed Abuse Claims against the United Methodist Entities, the claim amount for such Claimant for purposes of allocating the Source Allocated Portion of the United Methodist Settlement shall be based on the amount of Final Determination.

3.      Solely for purposes of allocating Non-BSA Sourced Assets, if an Accepted Settlement Recommendation (as defined in Article XIII.A) results in a Direct Abuse Claimant having an Excess Award Share claim under Article XIII.E that identifies a Chartered Organization (or an affiliate that becomes a Protected Party by virtue of such settlement, together an **"Applicable Chartered Organization"**, but in any case excluding the United Methodists Entities) that provides Non-BSA Sourced Funds, the portion of such Claim to be satisfied from the Source Allocated Portion funded by such settlement shall be based on the lesser of (i) $2,700,000 or (ii) the amount of the Accepted Settlement Recommendation (the **"ASR Source Allocated Portion Claim"**). For all other Direct Abuse Claims with Allowed Abuse Claims against the Applicable Chartered Organization, the claim amount for such Claimant for purposes of allocating the Source Allocated Portion shall be based on the amount of Final Determination.

4.      Once the Settlement Trust has paid in full all (i) Final Determination Allowed Abuse Claim Amounts of Direct Abuse Claimants with a claim against the Applicable Chartered Organization, and (ii) ASR Source Allocated Portion Claims, and UMS ASR Source Allocated Portion Claims, as applicable, then the remainder, if any, of the Source Allocated Portion shall be used to pay Excess Award Shares that identify the Applicable Chartered Organization until all such Accepted Settlement Recommendations are paid in full. If there is a remainder of a Source Allocated Portion after payment of the foregoing amounts, then that remainder shall be distributed to all holders of Allowed Abuse Claims pursuant to the applicable payment percentage. Amounts received by Direct Abuse Claimants on account of the and UMS ASR Source Allocated Portion Claims or the ASR Source Allocated Portion Claims, as applicable, shall not reduce the Excess Award Share; provided, however, that in no event shall a Direct Abuse Claimant receive greater than payment in full of the Excess Award Share.

23

## ARTICLE X
## RIGHTS OF SETTLEMENT TRUST
## AGAINST NON-SETTLING INSURANCE COMPANIES

Pursuant to the Plan, the Settlement Trust has taken an assignment of BSA's and any other Protected Party's (to the extent provided for in the Plan) rights and obligations under the Insurance Policies. For any Abuse Claim that the Settlement Trustee determines is an Allowed Abuse Claim pursuant to Article VII above, the Settlement Trustee will determine, based on the relevant Trust Claim Submission and any other information submitted in connection with that submission and in the materials obtained through the Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to such Claim (an "**Insured Abuse Claim**"). The Settlement Trustee may determine that multiple Non-Settling Insurance Companies have responsibility for an Insured Abuse Claim. The Settlement Trustee shall seek reimbursement for each Insured Abuse Claim that is an Insured Abuse Claim, including the Proposed Allowed Claim Amount, from the applicable Non-Settling Insurance Company(ies) pursuant to the Insurance Policies and applicable law. The Settlement Trustee shall have the ability to exercise all of the rights and interests in the Insurance Policies assigned to the Settlement Trust as set forth in the Plan, including the right to resolve any disputes with a Non-Settling Insurance Company regarding their obligation to pay some or all of an Insured Abuse Claim, and any all rights with respect to a Responsible Insurer in connection with the Independent Review Option, and to enter into agreements with any Non-Settling Insurance Company to become a Settling Insurance Company, subject to the terms and limitations set forth in the Trust Agreement and Article XIII herein. The Settlement Trustee will exercise those rights consistent with their duty to preserve and maximize the assets of the Settlement Trust. The Settlement Trustee will have the ability to request further information from Abuse Claimants in connection with seeking reimbursement for Insured Abuse Claims.

## ARTICLE XI
## INDIRECT ABUSE CLAIMS

**A.** **Indirect Abuse Claims**. To be eligible to receive compensation from the Settlement Trust, the holder of an Indirect Abuse Claim must satisfy Article IV.B hereof. Indirect Abuse Claims that become Allowed Indirect Abuse Claims shall receive distributions in accordance with Article IX hereof and shall be subject to the same liquidation and payment procedures as the Settlement Trust would have afforded the holders of the underlying valid Direct Abuse Claims pursuant to Articles VIII and IX hereof.

**B.** **Offset**. The liquidated value of any Indirect Abuse Claim paid by the Settlement Trust shall be treated as an offset to or reduction of the full liquidated value of any related Direct Abuse Claim that might be subsequently asserted against the Settlement Trust as being against any Protected Party(ies) whose liability was paid by the Indirect Abuse Claimant.

**C.** **Court Review**. Within thirty (30) days after an Indirect Abuse Claimant receives written notice from the Settlement Trust of the proposed allowed amount of its Indirect Abuse Claim or denial thereof (the "**Judicial Review Election Deadline**"), an Indirect Abuse Claimant may notify the Settlement Trust of its intention to seek a *de novo* review of the Trustee's determination of its Indirect Abuse Claim in accordance with this TDP (including Article IV.B

hereof) by a court of competent jurisdiction (a "**Judicial Review Election**"). Such notification shall be made by submitting a written notice to the Settlement Trustee (a "**Judicial Review Election Notice**") by the Judicial Review Election Deadline. Unless the Settlement Trustee agrees to extend the Judicial Review Election Deadline, an Indirect Abuse Claimant who fails to so submit a Judicial Review Election Notice by the Judicial Review Election Deadline shall be deemed to accept the disallowance of its Indirect Abuse Claim or the Proposed Allowed Claim Amount (as applicable) and shall have no right to seek any further review of its Indirect Abuse Claim. An Indirect Abuse Claimant that makes a Judicial Review Election may not seek costs or expenses against the Settlement Trust in any judicial proceeding commenced on account of its Judicial Review Election and the Settlement Trust may not seek costs or expenses against the Indirect Abuse Claimant. In no event shall the submission and/or filing of a Judicial Review Election Notice entitle the holder of an Indirect Abuse Claim to request or receive treatment different than the treatment provided for under this TDP (including Article IV.B hereof). The *de novo* review provided for herein shall be to determine the allowed amount of the Indirect Abuse Claim under and in accordance with this TDP. All defenses (including, with respect to the Settlement Trust, all defenses that could have been asserted by the Debtors or Protected Parties, except as otherwise provided in the Plan) shall be available to both sides (which may include any Non-Settling Insurance Company) at any judicial proceeding commenced on account of the Indirect Abuse Claimant's Judicial Review Election. Upon entry of final non-appealable order of a court competent jurisdiction fixing the allowed amount of the Indirect Abuse Claim, if any, such Indirect Abuse Claim shall be deemed an "Allowed Indirect Abuse Claim" and paid in accordance with Article IX hereof.

## ARTICLE XII
## TORT SYSTEM ALTERNATIVE

**A.** **Remedies after Disallowance or Exhaustion of Claims Allowance Procedures**. Within thirty (30) days after a Direct Abuse Claimant receives an Allowed Claim Notice or Claim Notice on its Proof of Claim following a Reconsideration Request in accordance with Article VII.G (the "**Tort Election Deadline**"), an Abuse Claimant may notify the Settlement Trust of its intention to seek a *de novo* determination of its Abuse Claim by a court of competent jurisdiction (a "**TDP Tort Election Claim**"), subject to the limitations set forth in this Article XII. Such notification shall be made by submitting a written notice to the Settlement Trustee (a "**Judicial Election Notice**") by the Tort Election Deadline. Unless the Settlement Trustee agrees to extend the Tort Election Deadline, Claimants who fail to so submit and/or file a Judicial Election Notice by the Tort Election Deadline shall be deemed to accept the disallowance of their Abuse Claims or the Proposed Abuse Claim Amounts (as applicable) and shall have no right to seek any further review of their Abuse Claims. An Abuse Claimant that asserts a TDP Tort Election Claim may not seek costs or expenses against the Settlement Trust in the lawsuit filed and the Settlement Trust may not seek costs or expenses against the Abuse Claimant. Any recoveries for a TDP Tort Election Claim from outside the Settlement Trust in respect of a Protected Party's liability are payable to the Settlement Trust and the Abuse Claimant shall be paid in accordance with Articles XII.G and IX hereof.

**B.** **Supporting Evidence for TDP Tort Election Claims**. TDP Tort Election Claims in the federal courts shall be governed by the rights and obligations imposed upon parties to a contested matter under the Federal Rules of Bankruptcy Procedure, *provided*, *however*, that an

25

Abuse Claimant that prosecutes in any court a TDP Tort Election Claim after seeking reconsideration from the Settlement Trust shall not have the right to introduce into evidence to the applicable court any information or documents that (i) were requested by the Settlement Trustee and (ii) were in the possession, custody or control of the Abuse Claimant at the time of a request by the Settlement Trust, but which the Abuse Claimant failed to or refused to provide to the Settlement Trust in connection with the claims evaluation process in these TDP. The Abuse Claimant's responses to requests by the Settlement Trustee for documents or information shall be subject to Rule 37 of the Federal Rules of Civil Procedure, as applicable under the Federal Rules of Bankruptcy Procedure, and/or any comparable State Rule of Civil Procedure. An Abuse Claimant shall not have the right to disclose any Proposed Abuse Claim Amount received from the Settlement Trust to any court in connection with a Tort Election Claim. Subject to the terms of any protective order entered by a court, the Settlement Trustee shall be permitted to introduce as evidence before a court all information and documents submitted to the Settlement Trust under these TDP, and the Abuse Claimant may introduce any and all information and documents that he or she submitted to the Settlement Trust under these TDP.

C. **Authorization of Settlement Trustee and Settlement Trust Advisory Committee**. The Settlement Trustee may authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant in any court of competent jurisdiction against the Settlement Trust to obtain the Allowed Claim Amount of a Direct Abuse Claim (a "**STAC Tort Election Claim**" and together with a TDP Tort Election Claim, "**Tort Election Claims**"). STAC Tort Election Claims shall not be required to exhaust any remedies under these TDP before commencing or continuing such lawsuit. No Abuse Claimant may pursue a STAC Tort Election Claim without the prior written approval of the Settlement Trustee in accordance with the Settlement Trust Agreement. Fifty percent (50%) (or less if determined by the Settlement Trustee) of any amounts paid with respect to a judgment for, or a settlement of, a STAC Tort Election Claim by a Non-Settling Insurance Company, as to a policy as to which a Protected Party has assigned relevant insurance rights to the Settlement Trust, shall be paid over to the Settlement Trust.

D. **Tender to Non-Settling Insurance Company**. If an Abuse Claimant is authorized to file suit against the Settlement Trust as provided in Article XII.A and XII.C herein, the Settlement Trustee shall determine, based on the Trust Claim Submission and any other information obtained in connection with that submission and materials received in connection with the Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to the lawsuit (an "**Insured Lawsuit**"). The Settlement Trustee may determine that there are multiple Non-Settling Insurance Companies that have responsibility to defend an Insured Lawsuit. The Settlement Trustee shall provide notice, and if applicable, seek defense, of any Insured Lawsuit to each Non-Settling Insurance Company from whom the Settlement Trustee determines insurance coverage may be available in accordance with the terms of each applicable Insurance Policy.

E. **Parties to Lawsuit**. Any lawsuit commenced under Article XII of these TDP must be filed by the Abuse Claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. The Abuse Claimant may assert its Abuse Claim against the Settlement Trust as if the Abuse Claimant were asserting such claim against either the Debtors or another Protected Party and the discharge and injunctions in the Plan had not been issued. The Abuse Claimant may name any person or

26

entity that is not a Protected Party, including Non-Settling Insurance Companies to the extent permitted by applicable law. Abuse Claimants may pursue in any manner or take any action otherwise permitted by law against persons or entities that are not Protected Parties so long as they are not an additional insured or an Insurance Company as to an Insurance Policy issues to the BSA.

F.   **Defenses**. All defenses (including, with respect to the Settlement Trust, all defenses that could have been asserted by the Debtors or Protected Parties, except as otherwise provided in the Plan) shall be available to both sides (which may include any Non-Settling Insurance Company) at trial.

G.   **Settlement Trust Liability for Tort Election Claims**. An Abuse Claimant who pursues a Tort Election Claim shall have an Allowed Claim Amount equal to zero if the litigation is dismissed or claim denied. If the matter is litigated, the Allowed Claim Amount shall be equal to the settlement or final judgment amount obtained in the tort system less any payments actually received and retained by the Abuse Claimant, *provided that*, exclusive of amounts payable pursuant to Article XII.C (in the event such amounts exceed the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix), any amount of such Allowed Claim Amount for a Tort Election Claim in excess of the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix shall be subordinate and junior in right for distribution from the Settlement Trust to the prior payment by the Settlement Trust in full of all Abuse Claims that are Allowed Abuse Claims as liquidated under these TDP (excluding this Article XII). By way of example, presume (1) there is an Abuse Claimant asserting tier one abuse that achieves a $5 million verdict for his or her STAC Tort Election Claim against the Settlement Trust, and (2) a Non-Settling Insurance Company pays $750,000 in coverage under a policy providing primary coverage, $375,000 of which is paid directly to the Abuse Claimant and $375,000 of which is paid over to the Settlement Trust pursuant to Article XII.C. Although the unpaid amount of such Allowed Abuse Claim would be $4,625,000, the maximum total payment that the Abuse Claimant can recover from the Settlement Trust (before the non-subordinated portion of all other Abuse Claims that are Allowed Abuse Claims are paid in full) is $2,700,000 (the Maximum Matrix Value in tier one), or an additional $2,325,000, paid pursuant to the terms of Article IX hereof. For the avoidance of doubt, the limit on the Settlement Trust liability under this Article XII.G shall not apply or inure to the benefit of any Non-Settling Insurance Company, and the Settlement Trust shall be able to obtain coverage, subject to Article X hereof, for the full Allowed Claim Amount obtained by the Abuse Claimant through a Tort Election Claim.

H.   **Settlement or Final Judgment**. If the Settlement Trust reaches a global settlement making a Protected Party of a Non-Settling Insurance Company or other person or entity involved in a Tort Election Claim or obtains a final judgment in a suit against such person or entity terminating liability for such person or entity to the Abuse Claimant, the Abuse Claimant shall be entitled to proceed with the Tort Election Claim for any reason (*e.g.*, if there are persons or entities that are not Protected Parties to collect from). Alternatively, the Abuse Claimant can elect to terminate the Tort Election Claim without prejudice and have its Abuse Claim determined through these TDP (*i.e.*, as if no STAC Tort Election Claim had been made), in which event the Abuse Claimant may submit relevant evidence from the Tort Election Claim that the Settlement Trustee shall take into account in evaluating the Abuse Claim under these TDP. Such Abuse Claimant may be provided other alternatives by the Settlement Trust if it had been pursuing a STAC Tort Election Claim.

27

**I.**     **Payment of Judgments by the Settlement Trust**.  Subject to Article XII.G hereof, if and when an Abuse Claimant obtains a final judgment or settlement against the Settlement Trust in the tort system (a "**Final Judicial Determination**"), such judgment or settlement amount shall be treated for purposes of distribution under these TDP as the Abuse Claimant's Final Determination, and such Allowed Claim Amount shall also constitute the applicable Protected Parties' liability for such Abuse Claim.  Within thirty (30) days of executing the release as set forth in Article IX.D above, the Abuse Claimant shall receive an Initial Distribution from the Settlement Trust (assuming an Initial Payment Percentage has been established by the Settlement Trust at that time).  Thereafter, the Abuse Claimant shall receive any subsequent distributions based on any applicable Payment Percentage as determined by the Settlement Trust.

**J.**     **Litigation Results and Other Abuse Claims**.  To the extent that a Final Judicial Determination of an Abuse Claim or changes in applicable law implicate the appropriateness of the Scaling Factors or General Criteria, the Settlement Trustee, subject to the terms of these TDP and the Settlement Trust Agreement and the approval of the Bankruptcy Court or District Court, after appropriate notice and opportunity to object, may appropriately modify the Scaling Factors or General Criteria on a go-forward basis for use in evaluation of Future Abuse Claims and other Abuse Claims as to which no Allowed Claim Amount Final Determination had previously been made.

**K.**     **Tolling of Limitations Period**.  The running of the relevant statute of limitation shall be tolled as to each Abuse Claimant's Abuse Claim from the earliest of (A) as to a Protected Party, the actual filing of the claim against the Protected Party, whether in the tort system or by submission of the claim to the Protected Party pursuant to an administrative settlement agreement; or (B) as to the Debtor, the Petition Date or prior to the Petition Date by an agreement or otherwise.

**ARTICLE XIII**
**INDEPENDENT REVIEW OPTION**

**A.**     **Direct Abuse Claimant's Independent Review Option**.  Direct Abuse Claimants shall have the opportunity for a Direct Abuse Claimant to have an independent, neutral third party (selected from a panel of retired judges with tort experience maintained by the Settlement Trust) (a **"Neutral"**) make a settlement recommendation (the **"Settlement Recommendation"**) to the Settlement Trustee seeking to replicate to the extent possible the amount a reasonable jury might award for the Direct Abuse Claim, taking into account the relative shares of fault that may be attributed to any parties potentially responsible for the Direct Abuse Claim under applicable law and applying the same standard of proof that would apply under applicable law (the **"Independent Review Option"**).  The Settlement Recommendation determined by the Neutral, if accepted by the Settlement Trustee (an "**Accepted Settlement Recommendation**"), shall be the allowed amount of the Direct Abuse Claim in accordance with the Plan against (i) the Debtors, (ii) other Protected Parties, and (iii) Chartered Organizations.  The Direct Abuse Claimant must assign its Direct Abuse Claim against any Chartered Organization and all other rights and claims arising out of its Direct Abuse Claim to the Settlement Trust as a condition to receiving the Accepted Settlement Recommendation, and the Settlement Trust shall have the right and power to assert and/or resolve any such claims assigned to it consistent with the Plan.  If the Settlement Trustee declines to follow the Neutral's recommendation as to the Allowed Claim Amount for an Independent Review Claim (a "**Recommendation Rejection**"), within forty-five (45) days after

28

the holder being served notice of the Recommendation Rejection, the holder of such Direct Abuse Claim may commence a lawsuit in any court of competent jurisdiction against the Settlement Trust to obtain the Allowed Claim Amount of the Direct Abuse Claim.  Such Direct Abuse Claimant shall have an Allowed Claim Amount equal to zero if the litigation is dismissed or claim denied. If the matter is litigated, the Allowed Claim Amount shall be equal to the settlement or final judgment amount obtained in the tort system less any payments actually received and retained by the Direct Abuse Claimant.  Notwithstanding the foregoing, any amount of an Accepted Settlement Recommendation or Allowed Claim Amount for an Abuse Claim that proceeds under this Independent Review Option in excess of a multiple of five (5) times the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix shall be subordinate and junior in right for distribution from the Settlement Trust to the prior payment by the Settlement Trust in full of all Direct Abuse Claims that are Allowed Abuse Claims as liquidated under the TDP (excluding Claims liquidated under this provision or under Article XII (regarding Tort Election Claims).

B.      **Time to Select Independent Review Option**.  Direct Abuse Claimants, other than Future Abuse Claimants, shall initially have until six (6) months after the Effective Date, to elect to participate in the Independent Review Option.  In addition, in order to participate in the Independent Review Option, the Direct Abuse Claimant must complete and submit the Trust Claim Submission by six (6) months after the Effective Date to enable the Settlement Trust to establish reserves.  If a Direct Abuse Claimant pursues a non-channeled Chartered Organization and the Settlement Trust settles with the Chartered Organization in question such that claims against it become channeled (a) the Settlement Trust shall provide notice of such settlement to any Direct Abuse Claimants that are pursuing any non-channeled Chartered Organizations and (b) such Direct Abuse Claimants shall have thirty (30) days from notice of the effectiveness of the Settlement Trust's settlement to select the Independent Review Option at that time.

C.      **Excess Award Fund**.  The Settlement Trust shall maintain a fund for the sole purpose of funding the portion of Accepted Settlement Recommendations that are in excess of $1 million (the "**Excess Award Fund**").  The Excess Award Fund shall be funded with certain proceeds from the Trust's collection of insurance policy proceeds from non-settling insurers as set forth below.[2]

D.      **Accepted Settlement Recommendation of Less Than $1 Million**.  If the Neutral makes an Accepted Settlement Recommendation of $0 due to the statute of limitations or a finding of no liability, the Direct Abuse Claimant shall receive nothing from the Trust and shall remain barred from proceeding against any Protected Party on account of their claim.  The Accepted Settlement Recommendation shall supersede the determination of the amount of the claim under the TDP, whether higher or lower, subject to limitations set forth in Article XIII.E below.  If the Neutral makes an Accepted Settlement Recommendation of $1 million or less but greater than zero, then the Settlement Recommendation shall be paid by the Settlement Trust in accordance with Article IX, including any applicable payment percentage, and the Direct Abuse Claimant shall receive nothing from the Excess Award Fund.

---

[2] The sources of recovery for the fund or Direct Abuse Claimants are (i) the Debtors' or Local Counsels' non-settled shared insurance policies excess of the primary layer of coverage, and (ii) in the absence of a global settlement making a Chartered Organization a Protected Party, certain Chartered Organizations' separate non-settled insurance rights, collectively referred as Responsible Insurers, as defined below.

29

**E.**      **Accepted Settlement Recommendation of $1 Million or More**.  If the Neutral makes an Accepted Settlement Recommendation of $1 million or more, then the Direct Abuse Claimant shall receive (i) an allowed claim against the Settlement Trust equal to $1 million (the **"Trust Share"**), to be paid pursuant to Article IX and subject to any applicable payment percentage from Settlement Trust Assets other than the Excess Award Fund (the **"General Trust"**), and (ii) an allowed claim against the Settlement Trust equal to the amount of the Settlement Recommendation in excess of the Trust Share (the "**Excess Award Share**") which shall be paid solely and exclusively from the Excess Award Fund as set forth below.

**F.**      **Costs Paid By Direct Abuse Claimants**.   The costs associated with the independent review shall be paid by the Direct Abuse Claimant and not the Settlement Trust, including the cost of any deposition and mental health exam and the valuation by the Neutral. Such obligation shall be offset by the administrative fee paid by the Direct Abuse Claimant. Recovery of such costs may be sought from any insurer subject to the applicable terms and conditions of any insurer's policy, to the extent such costs constitute reasonable and necessary costs payable under an applicable non-settled insurance policy, and the Settlement Trust may reimburse the Direct Abuse Claimant for such costs to the extent that the non-settled insurance policy reimburses the Settlement Trust.  Any recoveries by the Settlement Trust on account of its own costs will be distributed to Direct Abuse Claimants as set forth below.  If the cost to the Settlement Trustee of processing the Independent Review Option is less than the administrative fees charged, the Settlement Trustee shall reimburse the unused balance to the Direct Abuse Claimant.

**G.**      **Requirements for Obtaining a Settlement Recommendation**.   To obtain a Settlement Recommendation, each Direct Abuse Claimant who proceeds through the Independent Review shall provide the following:

(i)      Sexual Abuse Survivor Proof of Claim signed and dated by the Direct Abuse Claimant, with completion of all applicable fields, including the substantive narrative of the Abuse and damages (to be completed at the time of submission to the Neutral or after the completion of discovery);

(ii)      Payment to the Settlement Trust of an administrative fee in the amount of $10,000 at the time of the election for Independent Review Option and a further additional administrative fee in the amount of $10,000 immediately prior to the Neutral's review.  The Settlement Trustee shall have the authority to waive administrative fees in appropriate cases, based on the circumstances of the Direct Abuse Claimant. To the extent a Direct Abuse Claimant is dissatisfied with the Settlement Trustee's decision on waiver of fees, such decision will be reviewable by the Bankruptcy Court.  Any Direct Abuse Claimant that elects not to proceed with the Neutral's review after the opportunity to pursue discovery shall not be required to pay the second $10,000 and shall not be precluded from pursuing their claim under the TDP (as if no election to pursue an Independent Review Option had been made);

(iii)      Confirmation that the Direct Abuse Claimant was in a Scouting unit or attended a Scouting related event where the Abuse occurred by:

30

a)   Direct Abuse Claimant's name on a roster;

b)   evidence that the Direct Abuse Claimant was in a Scouting unit or attended a Scouting-related event where the Abuse occurred (a non-exclusive list of ways of satisfying the showing are: a photograph, a membership card, or document that reflects the Direct Abuse Claimant's rank in a Scouting unit); or

c)   a sworn statement by a third-party witness (who will agree to a deposition by the Neutral, if requested) that the Direct Abuse Claimant was in a Scouting unit or attended a Scouting-related event where the Abuse occurred.

(iv)   Direct Abuse Claimant must provide evidence that the perpetrator was in a Scouting unit, worked or volunteered with a Scouting unit, worked or volunteered with a Local Council, Chartered Organization or the BSA, or worked or volunteered at a Scouting-related event where the Abuse occurred (a non-exclusive list of ways of satisfying the showing are: the perpetrator's name being on a Scouting roster, a photograph of the perpetrator, or a sworn statement by a third party witness who will agree to a deposition if requested by the Neutral);

(v)   Direct Abuse Claimants must provide evidence that the claim is timely under the applicable statute of limitations, including satisfying any recognized exception to the relevant statute of limitation under the applicable state law;

(vi)   Direct Abuse Claimant provides evidence that one or more of the BSA, Local Council or Chartered Organization was negligent or is otherwise liable on account of a Direct Abuse Claim, and evidence regarding the Direct Abuse Claimant's damages (such as medical and counseling records and/or a sworn statement from a family member, significant other, or relative who, in each case, will agree to a deposition by the Neutral) or benchmark judgments or settlements relevant to the damages claimed.  Damages must be supported by an expert report (the cost of which shall be paid by the Direct Abuse Claimant); and

(vii)   Direct Abuse Claimant shall be subject to up to a single sworn six-hour interview, mental health examination or supplemental signed and dated interrogatory responses at the discretion of the Neutral or upon the reasonable request of a Responsible Insurer.

**I.**   **Discovery.** The Direct Abuse Claimant shall be entitled to discovery from the Settlement Trust (as successor to the BSA and Local Councils) and from third parties in accordance with the Document Appendix.

**J.**   **Other Defenses.**  In making her determination, the Neutral will consider and apply any defense that would otherwise be available in the tort system.

**K.**   **Insurer Participation**.

31

(i)    The Settlement Trust will provide prompt notice to any potentially responsible non-settling insurer(s) ("Responsible Insurers") of any claim for which the Direct Abuse Claimant has elected the Independent Review Option.

(ii)    Any Responsible Insurer shall be given a reasonable opportunity to participate in the Independent Review.  Any Responsible Insurer who chooses to participate may review and comment on the Neutral's evaluation, including attending any interview or deposition.  Any Responsible Insurer may raise and present any potentially applicable defenses to the Abuse Claim to the Neutral, at their own expense.  Such defenses must be considered and evaluated, as reasonably appropriate, by the Neutral.

(iii)    Upon the Settlement Trustee's receipt of the Settlement Recommendation from the Neutral, the Settlement Trustee shall provide notice and seek consent from any applicable Responsible Insurer.

(iv)    If the Settlement Trustee determines that the Settlement Recommendation is reasonable and the Responsible Insurer refuses to pay all or a portion of the Accepted Settlement Recommendation for which it is responsible, then the Settlement Trustee may exercise any and all rights available to it under applicable law, and the Settlement Trustee expressly reserves any and all rights against the Responsible Insurer, including but not limited to agreeing to the Settlement Recommendation and pursuing the Responsible Insurer for any available remedy including, but not limited to breach of contract and bad-faith.

(v)    The Settlement Trust shall have the right to pursue the Accepted Settlement Recommendation through any appropriate legal mechanisms.

**L.    Collection of the Independent Award**.  The Trust (as assignee) shall be free to collect on the basis of the Accepted Settlement Recommendation, and associated costs of the Independent Review Option, from any Responsible Insurer that refuses to pay all or a portion of the Accepted Settlement Recommendation for which it is responsible in such a manner as it sees fit, including by seeking coverage for one or more Accepted Settlement Recommendations on a consolidated basis and to enter into comprehensive settlements with any Responsible Insurer.  To the extent allowed under applicable state law, the BSA and Local Councils shall reasonably cooperate with the Settlement Trustee in the foregoing (it being understood that the foregoing cooperation shall not require the expenditure of funds), including consenting to entry of a non-recourse judgment limited solely to the recovery of insurance proceeds from any Responsible Insurer to the extent doing so would not violate the terms of the applicable policy or applicable law.  In addition, the Settlement Trustee may seek the cooperation of the applicable Chartered Organization.  Funds collected from the Responsible Insurer shall be allocated to the survivor and the Excess Award Fund as follows:

(i)    **Collections Applicable to Identified Excess Award Shares**:

(1) Amounts awarded that are applicable to the expenses incurred by Direct Abuse Claimants in pursuing the Independent Review Option, or that are

awarded for any bad faith claim will be allocated 100% to the Direct Abuse Claimant.

(2)   Amounts awarded from any policy of a Responsible Insurer that does not have applicable aggregate limits will be allocated 100% to the Direct Abuse Claimant.

(3)   Amounts collected in satisfaction of the Accepted Settlement Recommendation from any policy that has applicable aggregate limits shall be awarded 80% to the Direct Abuse Claimant, with the balance contributed to the General Trust until the Direct Abuse Claimant has collected 80% of the Excess Award Share. Thereafter policy proceeds shall be divided 70% to the Direct Abuse Claimant and 30% to the General Trust until the Direct Abuse Claimant has received the full amount of the Excess Award Share.

(ii)   **Settlement with Potentially Responsible Insurers that Fully Release a Policy or Policies**:

(a)   80% of the proceeds derived from a comprehensive settlement with a Responsible Insurer shall be contributed to the Excess Award Fund and 20% of the proceeds derived from a comprehensive settlement with an Responsible Insurer shall be General Trust funds available to pay all Direct Abuse Claimants; provided that once all holders of Excess Award Shares (other than holders of Late Claims (as defined below)) have received (or been reserved for an amount equal to) 80% on account of their Excess Award Shares, 70% shall be contributed to the Excess Award Fund and 30% shall be General Trust funds available to pay all Direct Abuse Claimants.

For the avoidance of doubt, collections from separate insurance of a Chartered Organization received as part of a comprehensive Chartered Organization settlement shall go to the General Trust, for distribution to Direct Abuse Claimants with Direct Abuse Claims pursuant to Article IX.F.

**M.**   **Payment of Excess Independent Awards**. The Excess Award Fund shall be used to pay the Excess Award Shares. The Excess Award Fund will be allocated and paid on account of such Excess Award Shares subject to a payment percentage calculated specifically for the Excess Award Fund. Once the Excess Award Shares are paid in full, the remaining funds in the Excess Award Fund shall become General Trust funds available to pay all Allowed Direct Abuse Claims.

**N.**   **Administrative Guidelines**.

(i)   Direct Abuse Claimants (other than holders of Future Abuse Claims and except as provided immediately below) will have until January 1, 2023, to pay the initial administrative fee and elect to submit their claim for the Independent Review Option.

33

(ii)    After January 1, 2023, a Direct Abuse Claimant (other than a Future Abuse Claimant) may still elect the Independent Review Option (other than with respect to a Direct Abuse Claimant that was pursuing a Chartered Organization with respect to a Direct Abuse Claim that was not subject to the Channeling Injunction) but shall only be entitled to recover (a) against a Responsible Insurer to the same degree as the Direct Abuse Claimants that filed claims prior to January 1, 2023, (b) from any Excess Award Fund reserved from any settled insurance applicable to their Direct Abuse Claims, or (c) share in a pro rata basis to the same degree as any Direct Abuse Claim submitted prior to January 1, 2023 in any recovery from an insurer that is not settled at the time a determination is made by the Neutral on the Direct Abuse Claim. The Settlement Trustee shall establish a reserve in the Excess Award Fund for Future Abuse Claims that may elect the Independent Review Option and for possible Claims against the Settlement Trust that may arise as a result of a Claimant being enjoined from continuing to seek recovery from a Chartered Organization with respect to a Claim that was not subject to the Channeling Injunction as a result of a comprehensive settlement between the Settlement Trust and the Chartered Organization. Other than reserving for and paying Future Abuse Claims and Direct Abuse Claims that become subject to the Channeling Injunction as a result of a comprehensive settlement between the Settlement Trust and a Chartered Organization on the basis described above, the Settlement Trust will have no duty to reserve or make distributions to any Direct Abuse Claimants who file claims after January 1, 2023 (**"Late Claims"**) except that should the Late Claim be timely pursuant to Section IV.A.ii or iii and exercise the Independent Review Option, the Excess Award Share attributable to such Late Claim may share on a pro rata basis to the same degree as any Direct Abuse Claim submitted prior to January 1, 2023 in any recovery from an insurer that is not settled at the time a Settlement Recommendation is made by the Neutral on the Late Claim. The last date to file a Late Claim for the Independent Review Option shall be January 1, 2026.

(iii)   If a Neutral's Settlement Recommendation determines that a Chartered Organization not protected by the Channeling Injunction is responsible for all or a portion of liability for a Direct Abuse Claim assigned to the Settlement Trust, at the request of the claimant, the Settlement Trustee may in its discretion, assign back to the claimant all rights to pursue the Chartered Organization and its insurers for the allocated portion of liability established through the Independent Review Option. The Direct Abuse Claimant in his discretion may then bring an action in any Court of competent jurisdiction against the Chartered Organization and its insurers to recover the allocated portion of liability and any additional damages, including punitive damages against the Chartered Organization and extracontractual damages against the affected insurers that may be assessed by the Court. Any recovery by way of judgment or settlement will be first applied to reimburse the Direct Abuse Claimant for his fees and expenses in prosecuting the Direct Abuse Claims and the remainder will be allocated in accordance with the Independent Review Option, provided that any punitive or extra-contractual damages shall be awarded solely to the Direct Abuse Claimant.

34

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**A.** **Non-Binding Effect of Settlement Trust and/or Litigation Outcome**. Notwithstanding any other provision of these TDP, the outcome of litigation against the Debtors by the holder of an Indirect Abuse Claim shall not be used in, be admissible as evidence in, binding in or have any other preclusive effect in connection with the Settlement Trust's resolution or valuation of an Indirect Abuse Claim.

**B.** **Amendments**. Except as otherwise provided herein, the Settlement Trustee may not amend, modify, delete, or add to any provisions of these TDP without the written consent of the STAC and the Future Claimants' Representative, as provided in the Settlement Trust Agreement, including amendments to modify the system for Tort Election Claims. Nothing herein is intended to preclude the STAC and/or the Future Claimants' Representative from proposing to the Settlement Trustee, in writing, amendments to these TDP. Notwithstanding the foregoing, absent Bankruptcy Court or District Court approval after appropriate notice and opportunity to object, neither the Settlement Trustee nor the STAC or Future Claimants' Representative may amend these TDP in a material manner, including (i) to provide for materially different treatment for Abuse Claims, (ii) to materially change the system for Tort Election Claimants, (iii) to add an opportunity to make an Expedited Distribution Election for a claim represented by a Chapter 11 POC after the Voting Deadline, (iv) to materially alter the Independent Review Option, or (v) in a manner that is otherwise inconsistent with the Confirmation Order or Plan. Notwithstanding the foregoing, neither the Settlement Trustee nor the STAC or the Future Claimants' Representative may amend any of the forms of release set forth in Article IX.D without the consent of Reorganized BSA, or remove the requirement of a release in connection with an Expedited Distribution.

**C.** **Severability**. Should any provision contained in these TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of these TDP.

**D.** **Offsets**. The Settlement Trust shall have the right to offset or reduce the Allowed Claim Amount of any Allowed Abuse Claim, without duplication as to the mitigating factors (*e.g.*, as to other responsible parties) on a dollar for dollar basis based on any amounts paid, agreed, or reasonably likely to be paid to the holder of such Claim on account of such Claim as against a Protected Party (or that reduces the liability thereof under applicable law) from any source other than the Settlement Trust.

**E.** **Governing Law**. These TDP shall be interpreted in accordance with the laws of the State of Delaware. Notwithstanding the foregoing, the evaluation of Abuse Claims under these TDP and the law governing litigation in the tort system shall be the law of the jurisdiction in which the Abuse Claimant files the lawsuit as described in Article XII or the jurisdiction where such Abuse Claim could have been filed under applicable law.

**Schedule 1**

**Mitigating Scaling Factor Ranges for Statutes of Limitation or Repose by State**

| Legend | |
|---|---|
| **Tier** | **Scaling Factor** |
| Open | 1.0 |
| Gray 1 | .50-.70 |
| Gray 2 | .30-.45 |
| Gray 3 | .10-.25 |
| Closed | .01-.10 |

| State | Tier |
|---|---|
| Alabama | Closed |
| Kansas | Closed |
| Oklahoma | Closed |
| Puerto Rico | Closed |
| South Dakota | Closed |
| Utah | Closed |
| Wyoming | Closed |
| ZZ / Federal | Closed |
| Connecticut | Gray 1 |
| DC | Gray 1 |
| Delaware | Gray 1 |
| Georgia | Gray 1 |
| Illinois | Gray 1 |
| Massachusetts | Gray 1 |
| New Mexico | Gray 1 |
| Oregon | Gray 1 |
| Washington | Gray 1 |
| Iowa | Gray 2 |
| Minnesota | Gray 2 |
| New Hampshire | Gray 2 |
| North Dakota | Gray 2 |
| Ohio | Gray 2 |
| Pennsylvania | Gray 2 |

1

| | |
|---|---|
| South Carolina | Gray 2 |
| Tennessee | Gray 2 |
| West Virginia | Gray 2 |
| Alaska | Gray 3 |
| Florida | Gray 3 |
| Idaho | Gray 3 |
| Indiana | Gray 3 |
| Kentucky | Gray 3 |
| Maryland | Gray 3 |
| Michigan | Gray 3 |
| Mississippi | Gray 3 |
| Missouri | Gray 3 |
| Nebraska | Gray 3 |
| Nevada | Gray 3 |
| Rhode Island | Gray 3 |
| Texas | Gray 3 |
| Virgin Islands | Gray 3 |
| Virginia | Gray 3 |
| Wisconsin | Gray 3 |
| Arizona | Open |
| Arkansas | Open |
| California | Open |
| Colorado | Open |
| Guam | Open |
| Hawaii | Open |
| Louisiana | Open |
| Maine | Open |
| Montana | Open |
| New Jersey | Open |
| New York | Open |
| North Carolina | Open |
| Vermont | Open |

2

## EXHIBIT A

### EXPEDITED DISTRIBUTION

### CLAIMANT RELEASE AND INDEMNIFICATION
### IN CONNECTION WITH EXPEDITED DISTRIBUTION
### FROM THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST

To receive payment of an Expedited Award (as defined below) from the Boy Scouts Settlement Trust (the "**Trust**"), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**"). This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below). A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.

If you need assistance, please contact the Claims Administrator by email at [●] or by phone toll-free at [●]. You may also visit the BSA Abuse Survivor Website for additional information.

### DEFINITIONS

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**Abuse**" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct,

1

or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such) or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. For the avoidance of doubt, (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" means, collectively, the BSA Insurance Policies and the Local Council Insurance Policies. Abuse Insurance Policies do not include Non-Abuse Insurance Policies or Postpetition Insurance Policies.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**BSA Insurance Policies**" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2 to the Chapter 11 Plan. Notwithstanding the foregoing, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any Local Council Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Channeling Injunction**" means the permanent injunction provided for in Article X.F of the Chapter 11 Plan with respect to (a) Abuse Claims against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, (c) Abuse Claims against the Limited Protected Parties that are covered under any insurance policy issued by the

2

Settling Insurance Companies (as determined pursuant to <u>Section X.F.3</u> of the Chapter 11 Plan), and (d) Opt-Out Chartered Organization Abuse Claims against the Opt-Out Chartered Organizations, to be issued pursuant to the Confirmation Order.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re Boy Scouts of America and Delaware BSA, LLC*, Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered).

"**Chapter 11 Plan**" or "**Plan**" means the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, filed in the Chapter 11 Cases (as the same may be amended or modified), and confirmed by the Bankruptcy Court.

"**Chartered Organizations**" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

"**Claimant**" means the holder of an Abuse Claim who (i) elected to resolve his or her Abuse Claim for the Expedited Distribution in accordance with the Chapter 11 Plan and Confirmation Order, (ii) timely submitted to the Trust a properly and substantially completed, non-duplicative proof of claim or Future Abuse Claim, and (iii) personally signed his or her proof of claim or Future Abuse Claim attesting to the truth of its contents under penalty of perjury, or supplemented his or her proof of claim to so provide such verification.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, Tort Claimants' Committee, the Future Claimants' Representative, the Settling Insurance Companies (in accordance with their respective Insurance Settlement Agreement), and the Contributing Chartered Organizations, and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D of the Chapter 11 Plan.

"**Contributing Chartered Organizations**" means the current or former Chartered Organizations listed on Exhibit D to the Plan and any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I in the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the United Methodist Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), the United Methodist Entities are Contributing Chartered Organizations and shall be designated as such in the Confirmation Order and the Affirmation Order.  No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases as set forth in Sections 9 and 10 of the Century and Chubb Companies Insurance Settlement Agreement.

"**Debtors**" means Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

"**Direct Abuse Claim**" means an Abuse Claim that is not an Indirect Abuse Claim—*i.e.*, is not a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract; *provided*, *however*, that any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies shall not constitute an Indirect Abuse Claim.

"**District Court**" means the United States District Court for the District of Delaware, having jurisdiction in the Chapter 11 Cases.

"**Expedited Award**" means the compensation a Claimant receives on behalf of the Claimant's Abuse Claim as a result of the election to receive the Expedited Distribution in accordance with the Plan and Confirmation Order.

"**Insurance Settlement Agreement**" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors' and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released.  All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to file a proof of claim and/or an Abuse Claim and execute this Release on behalf of the Claimant.

**"Limited Protected Parties"** means the Participating Chartered Organizations and all of such Persons' Representatives when acting in such representative capacity; provided, however, that no Perpetrator is or shall be a Limited Protected Party.

**"Local Councils"** means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G to the Plan, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, Scouting units (including "troops," "dens," "packs," "posts," "clubs," "crews," "ships," "tribes," "labs," "lodges," "councils," "districts," "areas," "regions," and "territories") associated with any Local Council, and all Entities that hold, own, or operate any camp or other property that is operated in the name of or for the benefit of any of the foregoing.

"**Local Council Insurance Policies**" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3 to the Chapter 11 Plan.  Notwithstanding the foregoing, Local Council Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any BSA Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

**"Participating Chartered Organization"** means a Chartered Organization (other than a Contributing Chartered Organization, including the United Methodist Entities) that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are debtors in bankruptcy and may not be Participating Chartered Organizations is attached as Exhibit K to the Plan.  For the avoidance of doubt, any Chartered Organization that is a member of an ad hoc group or committee that objects to the confirmation of the Plan shall not be a Participating Chartered Organization.

"**Perpetrator**" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim; provided for the avoidance of

5

doubt that the term "Perpetrator" shall only include natural persons and not The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole.  The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

"**Protected Parties**" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

"**Released Parties**" means the Trust, the Trustee, the STAC, the Claims Administrator, the Protected Parties, the Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, the STAC, the Claims Administrator, the Protected Parties, or the Chartered Organizations.

"**Scouting-related**" means anything that is attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting.

"**Settling Insurance Company**" means any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the applicable Insurance Settlement Agreement by an order or orders of the Bankruptcy Court (including in the Confirmation Order), Century, the Chubb Companies, Clarendon, the Hartford Protected Parties, the Zurich Affiliated Insurers and the Zurich Insurers are each Settling Insurance Companies and shall be designated as such in the Confirmation Order and the Affirmation Order.

"**STAC**" means the Settlement Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

 "**TDP**" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached as Exhibit A to the Chapter 11 Plan and filed in the Chapter 11 Cases on August ___, 2022, as may be amended and supplemented thereafter from time to time.

6

 "**Trust Agreement**" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached to the Chapter 11 Plan as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RELEASE AND INDEMNIFICATION

A.        In consideration of the benefit of an Expedited Award from the Trust, and without limiting any of the Releases or Injunctions in the Plan, which remain in full force and effect in favor of the Protected Parties, the Limited Protected Parties, and Opt-Out Chartered Organizations (as set forth in the Plan), I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Released Parties, or any of them, from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment or performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, my Abuse Claim (solely to the extent asserted against any of the Protected Parties and the Chartered Organizations) and the discharge of the Released Parties' duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Chapter 11 Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP and the Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release.  I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) knowingly institute or continue prosecution of a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

B.        Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, the release set forth herein shall not apply in favor of the Trust as to my right to payment of my Award due from the Trust.

7

C.        Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, in consideration of the benefit of the contribution made by each Settling Insurance Company to the Trust pursuant to an Insurance Settlement Agreement and the payment by the Trust to me of the Expedited Award, I do hereby voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against (i) each Settling Insurance Company and (ii) any insured, co-insured or other third party (including any Local Council, any other Protected Party, any Limited Protected Party, and any other Chartered Organization) under any Abuse Insurance Policy issued by any Settling Insurance Company or any other insurance policy issued by any Settling Insurance Company, including a policy issued to a Chartered Organization (any such third party, an "**Insured Party Releasee**"), in the case of (i) or (ii) from and with respect to any Abuse Claim.

D.        I, as assignor, hereby transfer and assign to the Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to my Abuse Claim that are not released herein, (i) and that are against Non-Settling Insurance Companies or (ii) to the extent my Abuse Claim is resolved pursuant to the Independent Review Option under the TDP.

E.        I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the Debtors have been fully and completely discharged and released, including their respective property and successors and assigns, from any and all liability arising from or related to my Abuse Claim, which liability shall be assumed by the Trust pursuant to the Plan.

F.        I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the sole recourse of any holder of an Abuse Claim against a Protected Party (or any holder of a Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim against a Limited Protected Party, or any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization) on account of such Abuse Claim (or Post-1975 Chartered Organization Abuse Claim, Pre-1976 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim) on account of such Abuse Claim (or Post-1975 Chartered Organization Abuse Claim, Pre-1976 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim) shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party (or to assert any Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim against a Limited Protected Party or any property or interest in property of any Limited Protected Party, or to assert any Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization).

G.        I hereby acknowledge that, pursuant to this Release, I am voluntarily providing a release to all Insured Party Releasees and Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and I shall have no remedies with respect to my Abuse Claim against any Insured Party Releasees and Chartered

8

Organizations, including those that are not Protected Parties and Limited Protected Parties.  This Release does not release claims that have been assigned to the Trust and I acknowledge I will have no personal rights in such assigned claims.

H.        In further consideration of the benefit of an Expedited Award, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust, the Trustee, the STAC, and the Claims Administrator arising from my failure to comply with the terms of this Release.

I. I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Expedited Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Expedited Award, to the extent applicable.

Claimant or Legal Representative Printed Name:  _____

Claimant or Legal Representative Signature:  _____

Date:  _____

9

## EXHIBIT B

### CONDITIONAL RELEASE OF CHARTERED ORGANIZATIONS

### CLAIMANT RELEASE AND INDEMNIFICATION IN CONNECTION WITH DISTRIBUTION FROM THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST

To receive payment of an Award (as defined below) from the Boy Scouts Settlement Trust (the "**Trust**") and have the opportunity to share in any settlement proceeds received from a Chartered Organization (as defined below) that is or becomes a Protected Party (as defined below), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**").  This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.

If you need assistance, please contact the Claims Administrators by email at [●] or by phone toll-free at [●].  You may also visit the BSA Abuse Survivor Website for additional information.

### DEFINITIONS

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**Abuse**" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair

1

practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such)  or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon.  Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations.  For the avoidance of doubt,  (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" means, collectively, the BSA Insurance Policies and the Local Council Insurance Policies.  Abuse Insurance Policies do not include Non-Abuse Insurance Policies or Postpetition Insurance Policies.

"**Award**" means the compensation a Claimant receives on behalf of the Claimant's Abuse Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**BSA Insurance Policies**" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2 to the Chapter 11 Plan.  Notwithstanding the foregoing, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any Local Council Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Channeling Injunction**" means the permanent injunction provided for in Article X.F of the Plan with respect to (a) Abuse Claims against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, (c) Abuse Claims against the Limited Protected Parties that are covered under any insurance policy issued by the Settling Insurance Companies (as determined pursuant to Section X.F.3 of the Plan), and (d) Opt-Out Chartered Organization Abuse Claims against the Opt-Out Chartered Organizations, to be issued pursuant to the Confirmation Order.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re Boy Scouts of America and Delaware BSA, LLC*, Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered).

"**Chapter 11 Plan**" or "**Plan**" means the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, filed in the Chapter 11 Cases (as the same may be amended or modified), and confirmed by the Bankruptcy Court.

"**Chartered Organizations**" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

"**Claimant**" means the holder of a Abuse Claim who (i) timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust, (ii) has had his or her Abuse Claim channeled to the Trust for evaluation, resolution, and payment pursuant to the Plan and the Channeling Injunction, and (iii) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, Tort Claimants' Committee, the Future Claimants' Representative, the Settling Insurance Companies (in accordance with their respective Insurance Settlement Agreement), and the Contributing Chartered Organizations, and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D of the Chapter 11 Plan.

"**Contributing Chartered Organizations**" means the current or former Chartered Organizations listed on Exhibit D to the Plan and any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Plan. No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the United Methodist Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), the United Methodist Entities are Contributing Chartered Organizations and shall be designated as such in the Confirmation Order and the Affirmation Order. No Chartered Organization shall be a Contributing Chartered

3

Organization unless it agrees to provide the assignments and releases as set forth in Sections 9 and 10 of the Century and Chubb Companies Insurance Settlement Agreement .

 "**Debtors**" means Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

"**Direct Abuse Claim**" means an Abuse Claim that is not an Indirect Abuse Claim—*i.e.*, is not a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract; *provided*, *however*, that any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies shall not constitute an Indirect Abuse Claim.

"**District Court**" means the United States District Court for the District of Delaware, having jurisdiction in the Chapter 11 Cases.

"**Insurance Settlement Agreement**" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors' and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released.  All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to file a proof of claim and/or an Abuse Claim and execute this Release on behalf of the Claimant.

**"Limited Protected Parties"** means the Participating Chartered Organizations and all of such Persons' Representatives when acting in such representative capacity; provided, however, that no Perpetrator is or shall be a Limited Protected Party.

**"Local Councils"** means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G to the Plan, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, Scouting units (including "troops," "dens," "packs," "posts," "clubs," "crews," "ships," "tribes," "labs," "lodges," "councils," "districts," "areas," "regions," and "territories") associated with any Local Council, and all Entities that hold, own, or operate any camp or other property that is operated in the name of or for the benefit of any of the foregoing.

"**Local Council Insurance Policies**" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3 to the Chapter 11 Plan.  Notwithstanding the foregoing, Local Council Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any BSA Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

"**Non-BSA Sourced Assets**" shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand, and the proceeds of such assets.  For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Company.

"**Participating Chartered Organization**" means a Chartered Organization (other than a Contributing Chartered Organization, including the United Methodist Entities) that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are debtors

5

in bankruptcy and may not be Participating Chartered Organizations is attached as Exhibit K to the Plan.  For the avoidance of doubt, any Chartered Organization that is a member of an ad hoc group or committee that objects to the confirmation of the Plan shall not be a Participating Chartered Organization.

 "**Perpetrator**" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim; provided for the avoidance of doubt that the term "Perpetrator" shall only include natural persons and not The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole.  The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

"**Protected Parties**" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

**"Release Date"** means the later of (1) the date of execution hereof or (2) the date of (i) a "Final Determination" of my Abuse Claim under the TDP or (ii) the fixing of the liability amount for my Abuse Claim under the TDP, provided, however, the Release Date as to Contributing Chartered Organizations and their related Released Parties shall be the later of the date of execution or the date they become a Contributing Chartered Organization.

"**Released Parties**" means the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, the Contributing Chartered Organizations (including any Chartered Organization that becomes a Contributing Chartered Organization as of such date after the execution of this Release), Participating Chartered Organizations with respect to Post-1975 Chartered Organization Claims and Abuse Claims covered under insurance policies issued by Settling Insurance Companies, Opt-Out Chartered Organizations with respect to Abuse Claims covered under insurance policies issued by Settling Insurance Companies, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, or the Contributing Chartered Organizations.

"**Scouting-related**" means anything that is attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting.

"**Settling Insurance Company**" means any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance

Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the applicable Insurance Settlement Agreement by an order or orders of the Bankruptcy Court (including in the Confirmation Order), Century, the Chubb Companies, Clarendon, the Hartford Protected Parties, the Zurich Affiliated Insurers and the Zurich Insurers are each Settling Insurance Companies and shall be designated as such in the Confirmation Order and the Affirmation Order.

"**STAC**" means the Settlement Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**TDP**" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached as Exhibit A to the Chapter 11 Plan and filed in the Chapter 11 Cases on August ___, 2022, as may be amended and supplemented thereafter from time to time.

"**Trust Agreement**" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached to the Chapter 11 Plan as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RELEASE AND INDEMNIFICATION

A.        In consideration of the benefit of an Award from the Trust, and without limiting any of the Releases or Injunctions in the Plan, which remain in full force and effect in favor of the Protected Parties, the Limited Protected Parties, and Opt-Out Chartered Organizations (as set forth in the Plan), I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Released Parties, or any of them, from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment or performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, my Abuse Claim (solely to the extent asserted against any of the Protected

7

Parties or any Chartered Organizations that become a Protected Party after the execution of this Release) and the discharge of the Released Parties' duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Chapter 11 Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP and the Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release. I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not (i) knowingly institute or continue prosecution of a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

B.      Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, the release set forth herein shall not apply in favor of the Trust as to my right to full payment of my allowed Direct Abuse Claim, provided means for such payment by the Trust are available under the Plan and the Trust Distribution Procedures.

C.      Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, in consideration of the benefit of the contribution made by each Settling Insurance Company to the Trust pursuant to an Insurance Settlement Agreement and the payment by the Trust to me of the Award, I do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against (i) each Settling Insurance Company and (ii) any insured, co-insured or other third party (including any Local Council, any other Protected Party, any Limited Protected Party, and any other Chartered Organization) under any Abuse Insurance Policy issued by any Settling Insurance Company or any other insurance policy issued by any Settling Insurance Company, including a policy issued to a Chartered Organization (any such third party, an "**Insured Party Releasee**"), in the case of (i) or (ii) from and with respect to any Abuse Claim.

D.      I, as assignor, hereby transfer and assign to the Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to my Abuse Claim that are not released herein, (i) and that are against Non-Settling Insurance Companies or (ii) to the extent my Abuse Claim is resolved pursuant to the Independent Review Option under the TDP.

E.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the Debtors have been fully and completely discharged and released, including their respective property and successors and assigns, from any and all liability arising from or related to my Abuse Claim, which liability shall be assumed by the Trust pursuant to the Plan.

F.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and Confirmation Order, the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party.

8

G.        I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the sole recourse of (i) any holder of a Post-1975 Chartered Organization Abuse Claim or pre-1976 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim or pre-1976 Chartered Organization Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim or pre-1976 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, and (ii) any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization.

H.        I hereby acknowledge that, pursuant to this Release, I am voluntarily providing a release as of the Release Date to any Chartered Organization that is currently a Protected Party or becomes a Protected Party after the execution of this Release (or that is an Insured Party Releasee as provided in paragraph C above) and that this Release will not become effective against any Chartered Organization that is not a Contributing Chartered Organization (or Insured Party Releasee) as of the Release Date unless and until such Chartered Organization becomes a Protected Party.

I. I hereby acknowledge that by executing this Release, I will have the opportunity to share in any settlement proceeds received from a Chartered Organization that is or becomes a Protected Party, provided, however, that under the Trust Distribution Procedures, Non-BSA Sourced Assets (which include proceeds received from Chartered Organizations) shall be allocated (after deducting an estimated pro rata share of Trust expenses and direct expenses related to the collection of such Non-BSA Sourced Assets) all or in part only among the holders of Allowed Abuse Claims that (1) could have been satisfied from the source of such Non-BSA Sourced Assets absent the Plan's discharge and Channeling Injunction and (2) are held by Claimants that execute this or a similar Release. This Release does not release claims that have been assigned to the Trust and I acknowledge I will have no personal rights in such assigned claims.

J.        In further consideration of the benefit of an Award, as of the Release Date, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust, the Trustee, the STAC, and the Claims Administrators arising from my failure to comply with the terms of this Release.

K.        I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

9

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

## EXHIBIT C

### NON-CONDITIONAL RELEASE OF CHARTERED ORGANIZATIONS

### CLAIMANT RELEASE AND INDEMNIFICATION IN CONNECTION WITH DISTRIBUTION FROM THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST

To receive payment of an Award (as defined below) from the Boy Scouts Settlement Trust (the "**Trust**") and have the opportunity to share in any settlement proceeds received from a Chartered Organization (as defined below) that is or becomes a Protected Party (as defined below), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**").  This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below).  A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.

If you need assistance, please contact the Claims Administrators by email at [●] or by phone toll-free at [●].  You may also visit the BSA Abuse Survivor Website for additional information.

### DEFINITIONS

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**Abuse**" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from,  directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair

1

practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such)  or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon.  Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations.  For the avoidance of doubt,  (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

 "**Abuse Insurance Policies**" means, collectively, the BSA Insurance Policies and the Local Council Insurance Policies.  Abuse Insurance Policies do not include Non-Abuse Insurance Policies or Postpetition Insurance Policies.

"**Award**" means the compensation a Claimant receives on behalf of the Claimant's Abuse Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**BSA Insurance Policies**" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2 to the Chapter 11 Plan.  Notwithstanding the foregoing, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any Local Council Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Channeling Injunction**" means the permanent injunction provided for in Article X.F of the Chapter 11 Plan with respect to (a) Abuse Claims against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, (c) Abuse Claims against the Limited Protected Parties that are covered under any insurance policy issued by the Settling Insurance Companies (as determined pursuant to Section X.F.3 of the Chapter 11 Plan), and (d) Opt-Out Chartered Organization Abuse Claims against the Opt-Out Chartered Organizations, to be issued pursuant to the Confirmation Order.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re Boy Scouts of America and Delaware BSA, LLC*, Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered).

"**Chapter 11 Plan**" or "**Plan**" means the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, filed in the Chapter 11 Cases (as the same may be amended or modified), and confirmed by the Bankruptcy Court.

"**Chartered Organizations**" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

"**Claimant**" means the holder of an Abuse Claim who (i) timely submitted an Abuse Claim Proof of Claim or Trust Claim Submission to the Settlement Trust, (ii) has had his or her Abuse Claim channeled to the Trust for evaluation, resolution, and payment pursuant to the Plan and the Channeling Injunction, and (iii) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, Tort Claimants' Committee, the Future Claimants' Representative, the Settling Insurance Companies (in accordance with their respective Insurance Settlement Agreement), and the Contributing Chartered Organizations, and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D of the Chapter 11 Plan.

"**Contributing Chartered Organizations**" means the current or former Chartered Organizations listed on Exhibit D to the Plan and any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I in the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the United Methodist Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), the United Methodist Entities are Contributing Chartered Organizations and shall be designated as such in the Confirmation Order and the Affirmation Order.  No Chartered Organization shall be a Contributing Chartered

3

Organization unless it agrees to provide the assignments and releases as set forth in Sections 9 and 10 of the Century and Chubb Companies Insurance Settlement Agreement.

"**Debtors**" means Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

"**Direct Abuse Claim**" means an Abuse Claim that is not an Indirect Abuse Claim—*i.e.*, is not a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract; *provided*, *however*, that any retrospective premiums and self-insured retentions arising out of any Abuse Claims under the Abuse Insurance Policies shall not constitute an Indirect Abuse Claim.

"**District Court**" means the United States District Court for the District of Delaware, having jurisdiction in the Chapter 11 Cases.

"**Insurance Settlement Agreement**" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors' and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released.  All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to file a proof of claim and/or an Abuse Claim and execute this Release on behalf of the Claimant.

4

**"Limited Protected Parties"** means the Participating Chartered Organizations and all of such Persons' Representatives when acting in such representative capacity; provided, however, that no Perpetrator is or shall be a Limited Protected Party.

**"Local Councils"** means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G to the Plan, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, Scouting units (including "troops," "dens," "packs," "posts," "clubs," "crews," "ships," "tribes," "labs," "lodges," "councils," "districts," "areas," "regions," and "territories") associated with any Local Council, and all Entities that hold, own, or operate any camp or other property that is operated in the name of or for the benefit of any of the foregoing.

"**Local Council Insurance Policies**" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3 to the Chapter 11 Plan.  Notwithstanding the foregoing, Local Council Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any BSA Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

 "**Non-BSA Sourced Assets**" shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand, and the proceeds of such assets.  For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Company.

**"Participating Chartered Organization"** means a Chartered Organization (other than a Contributing Chartered Organization, including the United Methodist Entities) that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are debtors

5

in bankruptcy and may not be Participating Chartered Organizations is attached as Exhibit K to the Plan.  For the avoidance of doubt, any Chartered Organization that is a member of an ad hoc group or committee that objects to the confirmation of the Plan shall not be a Participating Chartered Organization.

"**Perpetrator**" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim; provided for the avoidance of doubt that the term "Perpetrator" shall only include natural persons and not The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole.  The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

"**Protected Parties**" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

"**Release Date**" means the later of (1) the date of execution hereof or (2) the date of (i) a "Final Determination" of my Abuse Claim under the TDP or (ii) the fixing of the liability amount for my Abuse Claim under the TDP, provided, however, the Release Date as to Contributing Chartered Organizations and their related Released Parties shall be the later of the date of execution or the date they become a Contributing Chartered Organization.

"**Released Parties**" means the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, the Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, or the Contributing Chartered Organizations.

"**Scouting-related**" means anything that is attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting.

"**Settling Insurance Company**" means any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the applicable Insurance Settlement Agreement by an

6

order or orders of the Bankruptcy Court (including in the Confirmation Order), Century, the Chubb Companies, Clarendon, the Hartford Protected Parties, the Zurich Affiliated Insurers and the Zurich Insurers are each Settling Insurance Companies and shall be designated as such in the Confirmation Order and the Affirmation Order.

"**STAC**" means the Settlement Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

"**TDP**" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached as Exhibit A to the Chapter 11 Plan and filed in the Chapter 11 Cases on August \_\_\_, 2022, as may be amended and supplemented thereafter from time to time.

"**Trust Agreement**" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached to the Chapter 11 Plan as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

**RELEASE AND INDEMNIFICATION**

A.       In consideration of the benefit of an Award from the Trust, and without limiting any of the Releases or Injunctions in the Plan, which remain in full force and effect in favor of the Protected Parties, the Limited Protected Parties, and Opt-Out Chartered Organizations (as set forth in the Plan), I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Released Parties, or any of them, from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment or performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, my Abuse Claim (solely to the extent asserted against any of the Protected Parties or any Chartered Organizations) and the discharge of the Released Parties' duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Chapter 11 Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP and the

7

Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release.  I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not knowingly (i) institute or continue prosecution of a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

B.        Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, the release set forth herein shall not apply in favor of the Trust as to my right to full payment of my allowed Direct Abuse Claim, provided means for such payment by the Trust are available under the Plan and the Trust Distribution Procedures.

C.        Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, in consideration of the benefit of the contribution made by each Settling Insurance Company to the Trust pursuant to an Insurance Settlement Agreement and the payment by the Trust to me of the Award, I do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against (i) each Settling Insurance Company and (ii) any insured, co-insured or other third party (including any Local Council, any other Protected Party, any Limited Protected Party, and any other Chartered Organization) under any Abuse Insurance Policy issued by any Settling Insurance Company or any other insurance policy issued by any Settling Insurance Company, including a policy issued to a Chartered Organization (any such third party, an "**Insured Party Releasee**"), in the case of (i) or (ii) from and with respect to any Abuse Claim.

D.        I, as assignor, hereby transfer and assign to the Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to my Abuse Claim that are not released herein, (i) and that are against Non-Settling Insurance Companies or (ii) to the extent my Abuse Claim is resolved pursuant to the Independent Review Option under the TDP.

E.        I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the Debtors have been fully and completely discharged and released, including their respective property and successors and assigns, from any and all liability arising from or related to my Abuse Claim, which liability shall be assumed by the Trust pursuant to the Plan.

F.        I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction, and the Confirmation Order, the sole recourse of any holder of an Abuse Claim against a Protected Party (or any holder of a Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim against a Limited Protected Party, or any holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization) on account of such Abuse Claim (or Post-1975 Chartered Organization Abuse Claim, Pre-1976 Chartered Organization Abuse Claim, or Opt-Out Chartered Organization Abuse Claim) shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party (or to assert any Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered

8

Organization Abuse Claim against a Limited Protected Party or any property or interest in property of any Limited Protected Party, or to assert any Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization).

G.      I hereby acknowledge that, pursuant to this Release, I am voluntarily providing a release as of the Release Date to all Insured Party Releasees and Chartered Organizations, including all Chartered Organizations that are not Protected Parties or Limited Protected Parties, and as of the Release Date I shall have no remedies with respect to my Abuse Claim against any Insured Party Releasees or Chartered Organizations, including those that are not Protected Parties and Limited Protected Parties. This Release does not release claims that have been assigned to the Trust and I acknowledge I will have no personal rights in such assigned claims.

H.      I hereby acknowledge that by executing this Release, I will have the opportunity to share in any settlement proceeds received from a Chartered Organization that is or becomes a Protected Party (and to any Chartered Organization that is an Insured Party Releasee), provided, however, that under the Trust Distribution Procedures Non-BSA Sourced Assets (which include proceeds received from Chartered Organizations) shall be allocated (after deducting an estimated pro rata share of Trust expenses and direct expenses related to the collection of such Non-BSA Sourced Assets) all or in part only among the holders of Allowed Abuse Claims that (1) could have been satisfied from the source of such Non-BSA Sourced Assets absent the Plan's discharge and Channeling Injunction and (2) execute this or a similar Release.  For the avoidance of doubt, nothing in this Release shall limit or impair my rights to share in any settlement proceeds received by the Trust from a Chartered Organization.

I. In further consideration of the benefit of an Award, as of the Release Date, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust, the Trustee, the STAC, and the Claims Administrators arising from my failure to comply with the terms of this Release.

J.      I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____

9

## EXHIBIT D

## FINAL DETERMINATION

## CLAIMANT RELEASE AND INDEMNIFICATION IN CONNECTION WITH DISTRIBUTION FROM THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST

To receive payment of an Award (as defined below) from the Boy Scouts Settlement Trust (the "**Trust**"), an eligible Claimant must execute and submit to the Trustee (as defined below) this Release and Indemnification (the "**Release**"). This Release must be signed by the Claimant or the Claimant's Legal Representative (as defined below). A signature by an attorney for the Claimant or by an attorney for the Claimant's Legal Representative is not sufficient.

If you need assistance, please contact the Claims Administrators by email at [●] or by phone toll-free at [●]. You may also visit the BSA Abuse Survivor Website for additional information.

## DEFINITIONS

The definitions set forth above for the terms "**Trust**" and "**Release**" are specifically incorporated herein by reference as if fully set forth in this section.

All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Chapter 11 Plan (as defined below).

"**Abuse**" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

"**Abuse Claim**" means a liquidated or unliquidated Claim against a Protected Party (including the Settling Insurance Companies), a Limited Protected Party, or an Opt-Out Chartered Organization or any of their respective Representatives (in their capacities as such) that is attributable to, arises from, is based upon, relates to, or results from, directly, indirectly, or derivatively, alleged Scouting-related Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, alter ego, respondeat superior, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based upon, or directly or indirectly related to any insurance relationship, the provision of insurance or the provision of insurance services to or by any Protected Parties, or misrepresentation, concealment, or unfair practice, breach of fiduciary duty, public or private nuisance, gross negligence, willful misconduct, or any other theory, including any theory based on or related to public policy or any act or failure

1

to act, or failure to warn by a Protected Party, a Limited Protected Party, an Opt-Out Chartered Organization, any of their respective Representatives (in their capacities as such)  or any other Person for whom any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization is alleged to be responsible (including any such Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases, or any such Claim that has been asserted against the Settlement Trust), including any proportionate or allocable share of liability based thereon.  Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, any Opt-Out Chartered Organization Abuse Claim and any other Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Scouting-related Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations.  For the avoidance of doubt,  (i) a Claim alleging Abuse shall not be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives if such Claim is unrelated to Scouting (except as provided in (iii) below, including the portion of any Mixed Claim that is unrelated to Scouting); (ii) a Claim alleging Abuse shall be an "Abuse Claim" against a Protected Party, Limited Protected Party, or Opt-Out Chartered Organization or any of their respective Representatives (in their capacity as such) if such Claim is related to Scouting (including the portion of any Mixed Claim that is related to Scouting); (iii) any portion of a Mixed Claim alleging Abuse involving the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) is necessarily Scouting-related and shall be considered an Abuse Claim; and (iv) any Claim against the Debtors, Reorganized BSA, Non-Debtor Entities, Local Councils, or their respective Representatives (in their capacities as such) alleging Abuse is necessarily Scouting-related and shall be considered an Abuse Claim.

"**Abuse Insurance Policies**" means, collectively, the BSA Insurance Policies, and the Local Council Insurance Policies.  Abuse Insurance Policies do not include Non-Abuse Insurance Policies or Postpetition Insurance Policies.

"**Award**" means the compensation a Claimant receives on behalf of the Claimant's Abuse Claim.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court.

"**BSA Insurance Policies**" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2 to the Chapter 11 Plan.  Notwithstanding the foregoing, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any Local Council Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Channeling Injunction**" means the permanent injunction provided for in Article X.F of the Chapter 11 Plan with respect to (a) Abuse Claims against the Protected Parties, (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, (c) Abuse Claims

2

against the Limited Protected Parties that are covered under any insurance policy issued by the Settling Insurance Companies (as determined pursuant to Section X.F.3 of the Chapter 11 Plan), and (d) Opt-Out Chartered Organization Abuse Claims against the Opt-Out Chartered Organizations, to be issued pursuant to the Confirmation Order.

"**Chapter 11 Cases**" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and currently styled *In re Boy Scouts of America and Delaware BSA, LLC*, Bankruptcy Case No. 20-10343 (LSS) (Jointly Administered).

"**Chapter 11 Plan**" or "**Plan**" means the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, filed in the Chapter 11 Cases (as the same may be amended or modified), and confirmed by the Bankruptcy Court.

"**Chartered Organizations**" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

"**Claimant**" means the holder of an Abuse Claim who (i) has satisfied the eligibility criteria section forth in Articles IV and XIII of the Trust Distribution Procedures, (ii) has had his or her Abuse Claim channeled to the Trust for evaluation, resolution, and payment pursuant to the Plan and the Channeling Injunction, and (iii) is signing and executing this Release (or on whose behalf this Release is being signed and executed by a Legal Representative).

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to (a) the Debtors, the Ad Hoc Committee, the Coalition, Tort Claimants' Committee, the Future Claimants' Representative, the Settling Insurance Companies (in accordance with their respective Insurance Settlement Agreement), and the Contributing Chartered Organizations, and (b) the Creditors' Committee and JPM in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D of the Plan.

"**Contributing Chartered Organizations**" means the current or former Chartered Organizations listed on Exhibit D to the Plan and any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I in the Plan. No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the United Methodist Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), the United Methodist Entities are Contributing Chartered Organizations and shall be designated as such in the Confirmation Order and the Affirmation Order. No Chartered Organization shall be a Contributing Chartered Organization unless it agrees to provide the assignments and releases as set forth in Sections 9 and 10 of the Century and Chubb Companies Insurance Settlement Agreement.

3

"**Debtors**" means Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors-in-possession in the Chapter 11 Cases.

"**District Court**" means the United States District Court for the District of Delaware, having jurisdiction in the Chapter 11 Cases.

"**Insurance Settlement Agreement**" means (a) any settlement agreement entered into after the Petition Date and before the Effective Date by and among (i) any Insurance Company, on the one hand, and (ii) one or more of the Debtors and/or any other Protected Party or Limited Protected Party, on the other hand, under which an Insurance Policy and/or the Debtors and/or other Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan and the entry of a Final Order approving such settlement agreement (which order may be the Confirmation Order), released; and (b) any Post-Effective Date Insurance Settlement entered into during the Insurance Settlement Period by and between (i) any Insurance Company, on the one hand, and (ii) the Settlement Trustee (or the Settlement Trustee and any other Protected Party), on the other hand, under which an Insurance Policy that is subject to the Insurance Assignment and/or the Settlement Trustee's and/or Protected Parties' or Limited Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are released.  All Insurance Settlement Agreements entered into before the Effective Date related to Specified Primary Insurance Policies that release the applicable Insurance Company from liability arising from Non-Abuse Litigation Claims must be acceptable to the Creditors' Committee in accordance with the terms of the JPM / Creditors' Committee Term Sheet; provided, however, that with respect to proposed settlements of any Specified Excess Insurance Policy entered into before the Effective Date, the Creditors' Committee shall have consultation rights.

"**Legal Representative**" means a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to file a proof of claim and/or an Abuse Claim and execute this Release on behalf of the Claimant.

"**Limited Protected Parties**" means the Participating Chartered Organizations and all of such Persons' Representatives when acting in such representative capacity; provided, however, that no Perpetrator is or shall be a Limited Protected Party.

"**Local Councils**" means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G to the Plan, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, Scouting units (including "troops," "dens," "packs," "posts," "clubs," "crews," "ships," "tribes," "labs," "lodges," "councils," "districts," "areas," "regions," and "territories") associated with any Local Council, and all Entities that hold, own, or operate any camp or other property that is operated in the name of or for the benefit of any of the foregoing.

"**Local Council Insurance Policies**" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Petition Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional

4

insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim could have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3 to the Chapter 11 Plan. Notwithstanding the foregoing, Local Council Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any Non-Abuse Insurance Policy; (c) any BSA Insurance Policy; or (d) any Postpetition Insurance Policy.

"**Mixed Claim**" means a claim that makes allegations of Abuse related to or arising from Scouting as well as Abuse that occurred prior to the Petition Date unrelated to or not arising from Scouting. A claim shall not be treated as a Mixed Claim unless and until Scouting-related Abuse allegations have been asserted through a Proof of Claim, the complaint, sworn discovery or testimony (including by affidavit).

"**Non-BSA Sourced Assets**" shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand, and the proceeds of such assets. For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Company.

"**Participating Chartered Organization**" means a Chartered Organization (other than a Contributing Chartered Organization, including the United Methodist Entities) that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are debtors in bankruptcy and may not be Participating Chartered Organizations is attached as Exhibit K to the Plan. For the avoidance of doubt, any Chartered Organization that is a member of an ad hoc group or committee that objects to the confirmation of the Plan shall not be a Participating Chartered Organization.

"**Perpetrator**" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim. The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted or may be asserted, including by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

"**Protected Parties**" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered

5

Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

**"Release Date"** means the later of (1) the date of execution hereof or (2) the date of (i) a "Final Determination" of my Abuse Claim under the TDP or (ii) the fixing of the liability amount for my Abuse Claim under the TDP, provided, however, the Release Date as to Contributing Chartered Organizations and their related Released Parties shall be the later of the date of execution or the date they become a Contributing Chartered Organization.

"**Released Parties**" means the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, the Contributing Chartered Organizations (including any Chartered Organization that becomes a Contributing Chartered Organization as of such date after the execution of this Release), Participating Chartered Organizations with respect to Post-1975 Chartered Organization Claims and Abuse Claims covered under insurance policies issued by Settling Insurance Companies, Opt-Out Chartered Organizations with respect to Abuse Claims covered under insurance policies issued by Settling Insurance Companies, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the Trust, the Trustee, the STAC, the Claims Administrators, the Protected Parties, or the Contributing Chartered Organizations.

"**Scouting-related**" means anything that is attributable to, arises from, is based upon, results from, or relates to, in whole or in part, directly, indirectly, or derivatively, Scouting.

"**Settling Insurance Company**" means any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by (a) an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order or (b) the Settlement Trust.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the applicable Insurance Settlement Agreement by an order or orders of the Bankruptcy Court (including in the Confirmation Order), Century, the Chubb Companies, Clarendon, the Hartford Protected Parties, the Zurich Affiliated Insurers and the Zurich Insurers are each Settling Insurance Companies and shall be designated as such in the Confirmation Order and the Affirmation Order.

"**STAC**" means the Settlement Trust Advisory Committee appointed to oversee the Trust in accordance with the Chapter 11 Plan and the Trust Agreement.

 "**TDP**" means the Boy Scouts of America Trust Distribution Procedures for Abuse Claims, substantially in the form attached as Exhibit A to the Chapter 11 Plan and filed in the Chapter 11 Cases on August ___, 2022, as may be amended and supplemented thereafter from time to time.

"**Trust Agreement**" means the Settlement Trust Agreement dated as of the Effective Date, substantially in the form attached to the Chapter 11 Plan as Exhibit B, as the same may be amended or modified from time to time in accordance with the terms thereof.

"**Trustee**" means [●] or any other person appointed to serve as trustee under and in accordance with the Trust Agreement.

## RELEASE AND INDEMNIFICATION

A.      In consideration of the benefit of an Award from the Trust, and without limiting any of the Releases or Injunctions in the Plan, which remain in full force and effect in favor of the Protected Parties, the Limited Protected Parties, and Opt-Out Chartered Organizations (as set forth in the Plan), I, on my own behalf and on behalf of my respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on my behalf, including, but not limited to, a Legal Representative, (hereafter "**I**", "**my**" or "**me**"), do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Released Parties, or any of them, from and with respect to any and all claims, including, but not limited to, all claims as defined in section 101(5) of the Bankruptcy Code, charges, complaints, demands, obligations, causes of action, losses, expenses, suits, awards, promises, agreements, rights to payment, right to any equitable remedy, rights of any contribution, indemnification, reimbursement, subrogation or similar rights, demands, debts, liabilities, express or implied contracts, obligations of payment or performances, rights of offset or recoupment, costs, expenses, attorneys' and other professional fees and expenses, compensation or other relief, and liabilities of any nature whatsoever whether present or future, known or unknown, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, absolute or contingent, direct or derivative and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery (collectively, "**Released Claims**") arising from, relating to, resulting from or in any way connected to, in whole or in part, my Abuse Claim (solely to the extent asserted against any of the Protected Parties) and the discharge of the Released Parties' duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Chapter 11 Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP and the Chapter 11 Plan, and any and all other orders of the District Court or Bankruptcy Court relating to the Released Parties and/or their duties and responsibilities, from the beginning of time through the execution date of this Release.  I covenant and agree that I will honor the release as set forth in the preceding sentence and, further, that I will not knowingly (i) institute or continue prosecution of a lawsuit or other action against any Released Party based upon, arising out of, or relating to any Released Claims released hereby, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

B.      Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, the release set forth herein shall not apply in favor of the Trust as to my right to full payment of my allowed Direct Abuse Claim, provided means for such payment by the Trust are available under the Plan and the Trust Distribution Procedures.

7

C.      Without limiting the foregoing, and notwithstanding anything to the contrary in this Release, in consideration of the benefit of the contribution made by each Settling Insurance Company to the Trust pursuant to an Insurance Settlement Agreement and the payment by the Trust to me of the Award, I do hereby as of the Release Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against (i) each Settling Insurance Company and (ii) any insured, co-insured or other third party (including any Local Council, any other Protected Party, any Limited Protected Party, and any other Chartered Organization) under any Abuse Insurance Policy issued by any Settling Insurance Company or any other insurance policy issued by any Settling Insurance Company, including a policy issued to a Chartered Organization (any such third party, an "**Insured Party Releasee**"), in the case of (i) or (ii) from and with respect to any Abuse Claim.

D.      I, as assignor, hereby transfer and assign to the Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to my Abuse Claim that are not released herein, (i) and that are against Non-Settling Insurance Companies or (ii) to the extent my Abuse Claim is resolved pursuant to the Independent Review Option under the TDP.

E.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction and the Confirmation Order, the Debtors have been fully and completely discharged and released, including their respective property and successors and assigns, from any and all liability arising from or related to my Abuse Claim, which liability shall be assumed by the Trust pursuant to the Plan.

F.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction and the Confirmation Order, the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party.

G.      I hereby acknowledge that, pursuant to the Chapter 11 Plan, the Channeling Injunction and the Confirmation Order, the sole recourse of any (i) holder of a Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim or Pre-1976 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party, and (ii) holder of an Opt-Out Chartered Organization Abuse Claim against an Opt-Out Chartered Organization on account of such Opt-Out Chartered Organization Abuse Claim shall be to and against the Trust and such holder shall have no right whatsoever at any time to assert such Opt-Out Chartered Organization Abuse Claim against any Opt-Out Chartered Organization or any property or interest in property of any Opt-Out Chartered Organization.

H.      In further consideration of the benefit of an Award, as of the Release Date, I shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and

8

attorneys' fees of, the Trust, the Trustee, the STAC, and the Claims Administrators arising from my failure to comply with the terms of this Release.

I. I acknowledge that the Trust is not providing any tax advice with respect to the receipt of the Award or any component thereof, and I understand and agree that I shall be solely responsible for compliance with all tax laws with respect to the Award, to the extent applicable.

Claimant or Legal Representative Printed Name: _____

Claimant or Legal Representative Signature: _____

Date: _____