# EXHIBIT 3



Umbrella Liability - National Union
Fire Ins. Co. - 1/1/77 to 1/1/78
Policy No. BE 121 82 55

# Local Councils

# Umbrella Liability

**Policy No:** BE1218255

**Insurance Co:** National Union Fire Insurance Company

**Policy Period:** 1-1-1977 to 1-1-1978

Subject to Protective Order – Confidential

DECLARATION
UMBRELLA LIABILITY

POLICY NO.
BE 121 82 55
R/N BE 115 15 59

## NATIONAL UNION
## FIRE INSURANCE COMPANY
### OF PITTSBURGH, PA.
A CAPITAL STOCK COMPANY
102 MAIDEN LANE, NEW YORK, N.Y. 10008

**ITEM 1.**
**Name of Insured**

Boy Scouts of America, National, Etal.

**Address (Street, Town State)**

Route #1
North Brunswick, New Jersey 08902

This Declaration page, with policy provisions and endorsements, if any, issued to form a part thereof, completes the above numbered Umbrella Liability Policy.

---

**ITEM 2. Policy Period**

From: **January 1, 1977**   To: **January 1, 1978**

(12:01) A.M. Standard Time at the address of the Insured stated above)

---

The limit of the Company's liability shall be as stated herein subject to all the terms of this policy having reference thereto

(A) $ 10,000,000   Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof.

in excess of
(1) the amount recoverable under the underlying insurance as set out in the attached Schedule A.

or

(2) $ 25,000   ultimate net loss in respect of each occurrence not covered by said underlying insurance.

**ITEM 3. Limit of Liability**

(B) $ 10,000,000   in the aggregate for each annual period in accordance with Insuring Agreement III.

---

| Rating Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| | | | $85,000 |

**ITEM 4. Premium Computation**

| Deposit Premium | Minimum Premium | Audit Period |
|---|---|---|
| $ 85,000 | $ 85,000 | Flat |

---

Date of Issue APRIL 4, 1977:CM:NYC   Countersigned by _Robert B. Linden_
(Licensed Resident Agent)

Form 8718

Subject to Protective Order - Confidential

DECLARATIONS

**POLICY NO.**
BE 121 82 55
R/N BE 115 15 59

**NATIONAL UNION
FIRE INSURANCE COMPANY
OF PITTSBURGH. PA.**

A CAPITAL STOCK COMPANY

102 MAIDEN LANE, NEW YORK, N. Y. 10008

**ITEM 1.**
Name of
Insured

Boy Scouts of America, National, Etal.

Address
(Street, Town
State)

Route #1
North Brunswick, New Jersey 08902

This Declaration page, with policy provisions and endorsements, if any, issued to form a part thereof, completes the above numbered Umbrella Liability Policy.

**ITEM 2.**
Policy
Period

From: January 1, 1977          To: January 1, 1978

(12:01) A.M. Standard Time at the address of the Insured stated above)

The limit of the Company's liability shall be as stated herein subject to all the terms of this policy having reference thereto

(A) $ 10,000,000          Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof.

in excess of

(1) the amount recoverable under the underlying insurance as set out in the attached Schedule A.

or

(2) $ 25,000          ultimate net loss in respect of each occurrence not covered by said underlying insurance.

**ITEM 3.**
Limit
of
Liability

(B) $ 10,000,000          in the aggregate for each annual period in accordance with Insuring Agreement III.

**ITEM 4.**
Premium
Computation

| Rating Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| | | | $85,000 |

| Deposit Premium | Minimum Premium | Audit Period |
|---|---|---|
| $ 85,000 | $ 85,000 | Flat |

Date of Issue April 4, 1977:CM:NYC          Countersigned by _Robert B. Chula_
(Licensed Resident Agent)

Form 8715

Subject to Protective Order Confidential

SCHEDULE OF UNDERLYING INSURANCE

Issued To ............ Boy Scouts of America, National, Etal.

| Type of Policy or Coverage | Insurer | Limits |
|---|---|---|
| Comprehensive General Liability including Products Blanket Contractual, Personal Injury Liability, Watercraft Liability. | Domestic-Hartford A&I<br><br>Foreign-Aetna Ins. Co. | Bodily Injury Liability<br>$ Nil    each person<br>$ Nil    each occurrence<br>$ Nil    aggregate<br><br>Property Damage Liability<br>$ Nil    each occurrence<br>$ Nil    aggregate<br><br>Combined Single Limit<br>$ 1,000,000 |
| Comprehensive Automobile Liability Including Hired and Non-Ownership Automobile Liability | Domestic-Hartford A&I<br><br>Foreign-Aetna Ins. Co. | Bodily Injury Liability<br>$ Nil    each person<br>$ Nil    each occurrence<br><br>Property Damage Liability<br>$ Nil    each occurrence<br><br>Combined Single Limit<br>$ 1,000,000 |
| Standard Workmen's Compensation and Employers Liability | Hartford A&I (California)<br>Twin City Fire Ins. Co. (All States Except Calif) | Coverage B Employers Liability<br>$ 500,000    each accident. |
| Miscellaneous Liability<br><br>Garage Keepers Legal Liability | Hartford A&I | $750,000 each occurrence |
| Advertisers and Publishers Liability | Seaboard Surety | $1,000,000 each occurrence |
| Incidental Malpractice Liability | Hartford A&I | $1,000,000 each occurrence |
| Airport Liability Excluding Hangerkeeper | USAIG | $5,000,000 each occurrence |
| Watercraft Liability For craft less than 50 feet (owned & Non-owned) | Hartford A&I | $1,000,000 CSL each occurrence |
| Non-owned Aviation Liability | USAIG | $5,000,000 CSL (including passenger liability) |

Authorized Representative _Robert B. Chesley_

4/4/77:CM:NYC

FORM 2210 (6-70)

The scheduled underlying limits of liability required under the above policy are as follows:

| Coverage | Limit |
|---|---|
| Comprehensive General Liability | $1,000,000 Combined Single Limit (INA $500,000 plus National Union $500,000) |
| Comprehensive Automobile Liability | $1,000,000 Combined Single Limit (Hartford Insurance Company $500,000 for Lincoln-Mercury leased vehicles; council's $500,000 for owned or other leased vehicles; plus National Union $500,000) |
| Employer's Liability | $500,000 each accident (Provided by council's worker's compensation carrier) |
| Watercraft Liability | $500,000 Combined Single Limit (Under INA Program) |
| Non-Owned Aircraft | $5,000,000 Combined Single Limit (Utica Mutual policy through National at a rate of $800 per council with flying posts) |

The following are exclusions applicable under the above policy:

    A.  Excludes punitive damages.
    B.  Excludes Jones Act and United States Longshoreman's and Harbor Worker's Act.
    C.  Excludes care, custody and control.
    D.  Excludes watercraft excess of 50 feet in length.

3.  A.  Lloyd's of London
     B.  Utica Mutual Insurance Co.

Coverage - Excess watercraft liability. (For vessels excess of 50 feet)

Limit -  A)  $500,000 excess of $500,000
         B)  $1,500,000 excess of $1,000,000

Policy Number -  A)  HA01545A770000
               B)  MN053775

This coverage was placed due to the fact that the umbrella liability carrier (First State), because of their own treaty agreements, must exclude vessels excess of 50 feet. Councils with vessels falling into this area will receive a copy of these policies directly from Alexander & Alexander, Inc.

Councils requiring certificates of insurance evidencing limits excess of the INA $500,000 limit should refer these requests to Mr. Ken Lennon Alexander & Alexander, Inc., 1185 Avenue of the Americas, New York, N. Y. 10036  (212) 575-8000.

Sincerely,

Kenneth F. Lennon

SCHEDULE OF UNDERLYING INSURANCE

Issued To _____ Boy Scouts of America, National, Etal.

| Type of Policy or Coverage | Insurer | Limits |
|---|---|---|
| Comprehensive General Liability including Products Blanket Contractual, Personal Injury Liability, Watercraft Liability. | Domestic-Hartford A&I<br><br>Foreign-Aetna Ins. Co. | Bodily Injury Liability<br>$ Nil each person<br>$ Nil each occurrence<br>$ Nil aggregate<br><br>Property Damage Liability<br>$ Nil each occurrence<br>$ Nil aggregate<br><br>Combined Single Limit<br>$ 1,000,000 |
| Comprehensive Automobile Liability Including Hired and Non-Ownership Automobile Liability | Domestic-Hartford A&I<br><br>Foreign-Aetna Ins. Co. | Bodily Injury Liability<br>$ Nil each person<br>$ Nil each occurrence<br><br>Property Damage Liability<br>$ Nil each occurrence<br><br>Combined Single Limit<br>$ 1,000,000 |
| Standard Workmen's Compensation and Employers Liability | Hartford A&I (California)<br><br>Twin City Fire Ins. Co. (All States Except Calif) | Coverage B Employers Liability<br>$ 500,000 each accident |
| Miscellaneous Liability<br><br>Garage Keepers Legal Liability | Hartford A&I | $750,000 each occurrence |
| Advertisers and Publishers Liability | Seaboard Surety | $1,000,000 each occurrence |
| Incidental Malpractice Liability | Hartford A&I | $1,000,000 each occurrence |
| Airport Liability Excluding Hangerkeeper | USAIG | $5,000,000 each occurrence |
| Watercraft Liability For craft less than 50 feet (owned & Non-owned) | Hartford A&I | $1,000,000 CSL each occurrence |
| Non-owned Aviation Liability | USAIG | $5,000,000 CSL (including passenger liability) |

4/4/77:CM:NYC

Authorized Representative _Robert B. Chester_

FORM 2210 (6-70)

Member Companies
of
American International Group

☐ AMERICAN HOME ASSURANCE COMPANY
☐ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

102 Maiden Lane, New York, N.Y. 10005

COMMERCIAL LIABILITY
UMBRELLA POLICY

In consideration of the payment of the premium, and in reliance upon the statements in the Declarations made a part hereof, and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company agrees with the insured named in the Declarations as follows:

## INSURING AGREEMENTS

**I. Coverage**—To pay on behalf of the Insured the ultimate net loss excess of the retained limit as hereinafter defined, which the Insured shall become legally obligated to pay as damages by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract because of—

(a) Personal Injury, including death at any time resulting therefrom,
(b) Property Damage,
(c) Advertising Liability,

as defined herein and caused by or arising out of an occurrence.

**II. Defense, Settlement, Supplementary Payments**—Solely as respects occurrences covered under this policy but not covered by Underlying Policies listed in the Schedule herein or any other underlying insurance providing coverage to the Insured, whether collectible or not, the Company shall—

(a) defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the Company—

(b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the Company and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the Company's liability thereon;

(c) reimburse the Insured for all reasonable expenses incurred at the Company's request, (including actual loss of wages or salary, but not loss of other income, not to exceed $75 per day) because of his attendance at hearings or trials at such request:

The Company agrees to pay the amounts incurred under this Insurance Agreement II, except in settlement of claims and suits, in addition to the limit of liability stated in the Declarations, and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in this policy.

The Insured shall promptly reimburse the Company (excepting Defense Costs) for any amount of ultimate net loss paid on behalf of the Insured within the retained limit specified in Item 3A2 of the Declarations.

**III. Limit of Liability—Retained Limit**

(a) The Company shall be liable only for the ultimate net loss excess of the Insured's retained limit defined at either:

(1) the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Coverages hereof, and the applicable limits of any other underlying insurance providing coverage to the Insured; or

(2) the amount stated in Item 3A2 of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance;

and then up to an amount not exceeding the amount as stated in Item 3A of the Declarations as the result of any one occurrence.

(b) In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid or payable thereunder during this policy period, this policy shall, subject to the Company's limit of liability stated in Item 3A of the Declarations and to the terms and conditions of the underlying insurance,

(1) in the event of reductions, pay excess of the reduced underlying insurance, or

(2) in the event of exhaustion, continue in force as underlying insurance;

(c) There is no limit to the number of occurrences during the policy period for which claims may be made, except that the Company's total limit of liability arising out of the Products Hazard or the Completed Operations Hazard or both combined shall not exceed the amount stated in Item 3A of the Declarations as respects all occurrences during each annual period commencing with the effective or anniversary date of this policy.

In those cases where the underlying insurance listed in the Schedule of Underlying Insurance Policies contains coverage(s) which are subject to an Aggregate Limit of Liability for all insured damages, the Company's liability shall likewise be limited to the amount stated as the aggregate limit in the Declarations with respect to all ultimate net loss caused by one or more occurrences during each annual period while this policy is in force commencing from its effective date. The umbrella policy aggregate limit, so amended, shall apply separately to each underlying insurance coverage which carries an aggregate limit in the policy of underlying insurance.

**IV. Territory—Policy Period**—This policy applies to occurrences happening anywhere during the policy period.

## DEFINITIONS

**1. Named Insured and Insured**

(a) The term "Named Insured" wherever used in this policy includes the Insured named in Item 1 of the Declarations and,

(1) any subsidiary company (including subsidiaries thereof) of the Insured so named and,

(2) any other entity coming under its control and over which it assumes active management,

(b) the unqualified word "Insured", wherever used in this policy includes not only the Named Insured but also:

(1) if the Named Insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such, however, if the Named Insured is a partnership, this policy does not apply to an automobile owned by or registered in the name of a partner thereof. This policy does not apply to Personal Injury, Property Damage or Advertising Liability arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured. If the Named Insured is designated in the Declarations as an individual, the person so designated, but only with respect to the conduct of a business of which he is the sole proprietor,

(2) except with respect to ownership maintenance or use including loading or unloading of automobiles or of aircraft, any partner, executive officer, director, stockholder or employee of the Named Insured, while acting in his capacity as such and any organization or proprietor with respect to real estate management for the Named Insured,

(3) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to the facilities of or used by the Named Insured,

(4) subject to the terms and conditions of this policy, any additional Insured included in the underlying insurance, but only to the extent that insurance is available to such additional Insured under such underlying insurance,

(5) any person while using an automobile or aircraft owned by or loaned to the Named Insured or hired for use in behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is by the Named Insured or with the Named Insured's permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured

Form 21409

Member Companies
of
American International Group

☐ AMERICAN HOME ASSURANCE COMPANY
☒ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

102 Maiden Lane, New York, N.Y. 10005

## COMMERCIAL LIABILITY UMBRELLA POLICY

Subject to Attorney/Client Privileged Confidential

In consideration of the payment of the premium, and in reliance upon the statements in the Declarations made a part hereof and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company agrees with the insured named in the Declarations as follows:

## INSURING AGREEMENTS

**I. Coverage**—To pay on behalf of the Insured the ultimate net loss excess of the retained limit as hereinafter defined, which the Insured shall become legally obligated to pay as damages by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract because of—

(a) Personal Injury, including death at any time resulting therefrom,
(b) Property Damage,
(c) Advertising Liability,

as defined herein and caused by or arising out of an occurrence.

**II. Defense, Settlement, Supplementary Payments**—Solely as respects occurrences covered under this policy but not covered by Underlying Policies listed in the Schedule herein or any other underlying insurance providing coverage to the Insured, whether collectible or not, the Company shall—

(a) defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the Company—

(b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the Company and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the Company's liability thereon;

(c) reimburse the Insured for all reasonable expenses incurred at the Company's request, (including actual loss of wages or salary, but not loss of other income, not to exceed $75 per day) because of his attendance at hearings or trials at such request:

The Company agrees to pay the amounts incurred under this Insurance Agreement II, except in settlement of claims and suits, in addition to the limit of liability stated in the Declarations, and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in this policy.

The Insured shall promptly reimburse the Company (excepting Defense Costs) for any amount of ultimate net loss paid on behalf of the Insured within the retained limit specified in Item 3A2 of the Declarations.

**III. Limit of Liability—Retained Limit**

(a) The Company shall be liable only for the ultimate net loss excess of the Insured's retained limit defined at either:

(1) the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Coverages hereof, and the applicable limits of any other underlying insurance providing coverage to the Insured; or

(2) the amount stated in Item 3A2 of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance;

and then up to an amount not exceeding the amount as stated in Item 3A of the Declarations as the result of any one occurrence.

(b) In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid or payable thereunder during this policy period, this policy shall, subject to the Company's limit of liability stated in Item 3A of the Declarations and to the terms and conditions of the underlying insurance,

(1) in the event of reductions, pay excess of the reduced underlying insurance, or

(2) in the event of exhaustion, continue in force as underlying insurance;

(c) There is no limit to the number of occurrences during the policy period for which claims may be made, except that the Company's total limit of liability arising out of the Products Hazard or the Completed Operations Hazard or both combined shall not exceed the amount stated in Item 3A of the Declarations as respects all occurrences during each annual period commencing with the effective or anniversary date of this policy.

In those cases where the underlying insurance listed in the Schedule of Underlying Insurance Policies contains coverage(s) which are subject to an Aggregate Limit of Liability for all insured damages, the Company's liability shall likewise be limited to the amount stated as the aggregate limit in the Declarations with respect to all ultimate net loss caused by one or more occurrences during each annual period while this policy is in force commencing from its effective date. The umbrella policy aggregate limit, so amended, shall apply separately to each underlying insurance coverage which carries an aggregate limit in the policy of underlying insurance.

**IV. Territory—Policy Period**—This policy applies to occurrences happening anywhere during the policy period.

## DEFINITIONS

**1. Named Insured and Insured**

(a) The term "Named Insured" wherever used in this policy includes the Insured named in Item 1 of the Declarations and,

(1) any subsidiary company (including subsidiaries thereof) of the Insured so named and,

(2) any other entity coming under its control and over which it assumes active management.

(b) the unqualified word "Insured", wherever used in this policy includes not only the Named Insured but also:

(1) if the Named Insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such, however, if the Named Insured is a partnership, this policy does not apply to an automobile owned by or registered in the name of a partner thereof. This policy does not apply to Personal Injury, Property Damage or Advertising Liability arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured. If the Named Insured is designated in the Declarations as an individual, the person so designated, but only with respect to the conduct of a business of which he is the sole proprietor.

(2) except with respect to ownership maintenance or use including loading or unloading of automobiles or of aircraft, any partner, executive officer, director, stockholder or employee of the Named Insured, while acting in his capacity as such and any organization or proprietor with respect to real estate management for the Named Insured,

(3) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to the facilities of or used by the Named Insured,

(4) subject to the terms and conditions of this policy, any additional Insured included in the underlying insurance, but only to the extent that insurance is available to such additional Insured under such underlying insurance,

(5) any person while using an automobile or aircraft owned by or loaned to the Named Insured or hired for use in behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is by the Named Insured or with the Named Insured's permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured

Form 21409

Member Companies
of
American International Group

☐ AMERICAN HOME ASSURANCE COMPANY

☒ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

102 Maiden Lane, New York, N.Y. 10005

## COMMERCIAL LIABILITY
## UMBRELLA POLICY

In consideration of the payment of the premium, and in reliance upon the statements in the Declarations made a part hereof and subject to the limits of liability, exclusions, conditions and other terms of this policy, the Company agrees with the Insured named in the Declarations as follows:

## INSURING AGREEMENTS

**I. Coverage**—To pay on behalf of the Insured the ultimate net loss excess of the retained limit as hereinafter defined, which the Insured shall become legally obligated to pay as damages by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract because of—
(a) Personal Injury, including death at any time resulting therefrom,
(b) Property Damage,
(c) Advertising Liability,

as defined herein and caused by or arising out of an occurrence.

**II. Defense, Settlement, Supplementary Payments**—Solely as respects occurrences covered under this policy but not covered by Underlying Policies listed in the Schedule herein or any other underlying insurance providing coverage to the Insured, whether collectible or not, the Company shall—
(a) defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the Company—
(b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the Company and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the Company's liability thereon;
(c) reimburse the Insured for all reasonable expenses incurred at the Company's request, (including actual loss of wages or salary, but not loss of other income, not to exceed $75 per day) because of his attendance at hearings or trials at such request:

The Company agrees to pay the amounts incurred under this Insurance Agreement II, except in settlement of claims and suits, in addition to the limit of liability stated in the Declarations, and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in the policy.

The Insured shall promptly reimburse the Company (excepting Defense Costs) for any amount of ultimate net loss paid on behalf of the Insured within the retained limit specified in Item 3A2 of the Declarations.

**III. Limit of Liability—Retained Limit**
(a) The Company shall be liable only for the ultimate net loss excess of the Insured's retained limit defined at either:
(1) the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Coverages hereof, and the applicable limits of any other underlying insurance providing coverage to the Insured; or
(2) the amount stated in Item 3A2 of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance;
and then up to an amount not exceeding the amount as stated in Item 3A of the Declarations as the result of any one occurrence.
(b) In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid or payable thereunder during this policy period, this policy shall, subject to the Company's limit of liability stated in Item 3A of the Declarations and to the terms and conditions of the underlying insurance,
(1) in the event of reductions, pay excess of the reduced underlying insurance, or
(2) in the event of exhaustion, continue in force as underlying insurance;
(c) There is no limit to the number of occurrences during the policy period for which claims may be made, except that the Company's total limit of liability arising out of the Products Hazard or the Completed Operations Hazard or both combined shall not exceed the amount stated in Item 3A of the Declarations as respects all occurrences during each annual period commencing with the effective or anniversary date of this policy.
In those cases where the underlying insurance listed in the Schedule of Underlying Insurance Policies contains coverage (s) which are subject to an Aggregate Limit of Liability for all insured damages, the Company's liability shall likewise be limited to the amount stated as the aggregate limit in the Declarations with respect to all ultimate net loss caused by one or more occurrences during each annual period while this policy is in force commencing from its effective date. The umbrella policy aggregate limit, so amended, shall apply separately to each underlying insurance coverage which carries an aggregate limit in the policy of underlying insurance.

**IV. Territory—Policy Period**—This policy applies to occurrences happening anywhere during the policy period.

## DEFINITIONS

**1. Named Insured and Insured**
(a) The term "Named Insured" wherever used in this policy includes the Insured named in Item 1, of the Declarations and,
(1) any subsidiary company (including subsidiaries thereof) of the Insured so named and,
(2) any other entity coming under its control and over which it assumes active management.
(b) the unqualified word "Insured", wherever used in this policy includes not only the Named Insured but also;
(1) if the Named Insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such, however, if the Named Insured is a partnership, this policy does not apply to an automobile owned by or registered in the name of a partner thereof. This policy does not apply to Personal Injury, Property Damage or Advertising Liability arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured. If the Named Insured is designated in the Declarations as an individual, the person so designated, but only with respect to the conduct of a business of which he is the sole proprietor,

(2) except with respect to ownership maintenance or use including loading or unloading of automobiles or of aircraft, any partner, executive officer, director, stockholder or employee of the Named Insured, while acting in his capacity as such and any organization or proprietor with respect to real estate management for the Named Insured,
(3) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to the facilities of or used by the Named Insured,
(4) subject to the terms and conditions of this policy, any additional Insured included in the underlying insurance, but only to the extent that insurance is available to such additional Insured under such underlying insurance,
(5) any person while using an automobile or aircraft owned by or loaned to the Named Insured or hired for use in behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual use of the automobile or aircraft is by the Named Insured or with the Named Insured's permission, and any executive officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured

Form 21409

in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this division (5):

i. to any person or organization, to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof;

ii. with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

iii. to any manufacturer of aircraft, aircraft engines or aviation accessories, or to any aviation sales or service or repair organization or airport or hangar operation or their respective employees or agents, with respect to any occurrence arising out of the operation thereof.

The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's limit of liability.

2. **Personal Injury**—The term "Personal Injury" shall mean:
(a) bodily injury, sickness, disease, disability, shock, fright, mental anguish and mental injury;
(b) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution and humiliation;
(c) libel, slander, defamation of character or invasion of right of privacy unless arising out of Advertising Liability; and
(d) assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing or eliminating danger to persons or property.

3. **Property Damage**—The term "Property Damage" shall mean (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

4. **Advertising Liability**—The term "Advertising Liability" shall mean liability for damage because of:
(a) unintentional Libel, Slander or Defamation;
(b) infringement of copyright or title or of slogan;
(c) piracy or unfair competition or idea misappropriation under an implied contract;
(d) invasion of the rights of privacy,
Committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

5. **Products Hazard**—The term "Products Hazard" includes Personal Injury and Property Damage arising out of the Named Insured's products or reliance upon a representation or warranty with respect thereto, but only if the Personal Injury or Property Damage occurs away from premises owned by or rented to the Named Insured and after physical possession has been relinquished to others.

6. **Named Insured's Products**—The term "Named Insured's Products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof

(other than a vehicle), but Named Insured's products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

7. **Completed Operations Hazard**—The term "Completed Operations Hazard" includes Personal Injury and Property Damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the Personal Injury or Property Damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith.
Operations shall be deemed completed at the earliest of the following times:
(a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
(b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The Completed Operations Hazard does not include Personal Injury or Property Damage arising out of
(a) operations in connection with the transportation of property, unless the Personal Injury or Property Damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

8. **Occurrence**—With respect to Personal Injury and Property Damage the term "Occurrence" means an event, including continuous or repeated exposure to conditions, which results in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one occurrence. With respect to Advertising Liability all damages involving the same injurious material or act, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants shall be deemed to arise out of one occurrence.

9. **Ultimate Net Loss**—Except as provided in Insuring Agreement II, "Defense", the term "Ultimate Net Loss" shall mean the total sum which the Insured, or any company as its insurer, or both become obligated to pay by reason of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims and excluding only the salaries of the Insured or any of the underlying Insurer's permanent employees.

The Company shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not.

10. **Aircraft**—The term "Aircraft" includes any heavier than air or lighter than air aircraft designed to transport persons or property.

## EXCLUSIONS

This policy shall not apply:
(a) to any obligation for which the Insured or any company as its insurer may be held liable under any Workmen's Compensation or Disability Benefits law provided, however, that this exclusion shall not apply to liability of others assumed by the Named Insured under contract or agreement.
(b) under Coverage I (b) to liability for:
(1) The loss of use of tangible property which has not been physically injured or destroyed, resulting from
(i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
(ii) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;
(2) Property Damage to the Named Insured's products arising out of such products or any part of such products;
(3) Property Damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of material, parts or equipment furnished in connection therewith;
(4) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such product, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(5) to property owned by the Insured,
(6) to aircraft or watercraft rented to, used by or in the care, custody or control of the Insured;
(c) under Coverages I (a) and I (b) to liability for Personal Injury or Property Damage arising out of the ownership, maintenance, operations, use, loading or unloading of aircraft or watercraft unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages. However, the provisions of this exclusion (c) shall not apply to any aircraft when rented, leased or chartered to the Named Insured with a pilot and crew furnished;
(d) under Coverage I (a) to liability of any employee with respect to Personal Injury to another employee of the same employer injured in the course of such employment unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages and then not for broader coverage than is afforded to such employee by that policy;
(e) under Coverage I (c) to claims made against the Insured,
(1) for failure of performance of contract;
(2) for infringement of trade-mark or trade name;
(3) for incorrect description of any article or commodity;
(4) for mistake in advertised prices;
(f) (1) under Coverages I (a) and I (b) to injury, sickness, disease, death or destruction
(i) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

Not to Photocopy or Reproduce

in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this division (5):

i. to any person or organization, to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof;

ii. with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

iii. to any manufacturer of aircraft, aircraft engines or aviation accessories, or to any aviation sales or service or repair organization or airport or hangar operation or their respective employees or agents, with respect to any occurrence arising out of the operation thereof.

The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's limit of liability.

2. **Personal Injury**—The term "Personal Injury" shall mean:
   (a) bodily injury, sickness, disease, disability, shock, fright, mental anguish and mental injury;
   (b) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution and humiliation;
   (c) libel, slander, defamation of character or invasion of right of privacy unless arising out of Advertising Liability; and
   (d) assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing or eliminating danger to persons or property.

3. **Property Damage**—The term "Property Damage" shall mean (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

4. **Advertising Liability**—The term "Advertising Liability" shall mean liability for damage because of:
   (a) unintentional Libel, Slander or Defamation;
   (b) infringement of copyright or title or of slogan;
   (c) piracy or unfair competition or idea misappropriation under an implied contract;
   (d) invasion of the rights of privacy,
   Committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

5. **Products Hazard**—The term "Products Hazard" includes Personal Injury and Property Damage arising out of the Named Insured's products or reliance upon a representation or warranty with respect thereto, but only if the Personal Injury or Property Damage occurs away from premises owned by or rented to the Named Insured and after physical possession has been relinquished to others.

6. **Named Insured's Products**—The term "Named Insured's Products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but Named Insured's products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

7. **Completed Operations Hazard**—The term "Completed Operations Hazard" includes Personal Injury and Property Damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the Personal Injury or Property Damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith.
   Operations shall be deemed completed at the earliest of the following times:
   (a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
   (b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
   (c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
   Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
   The Completed Operations Hazard does not include Personal Injury or Property Damage arising out of
   (a) operations in connection with the transportation of property, unless the Personal Injury or Property Damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
   (b) the existence of tools, uninstalled equipment or abandoned or unused materials.

8. **Occurrence**—With respect to Personal Injury and Property Damage the term "Occurrence" means an event, including continuous or repeated exposure to conditions, which results in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one occurrence. With respect to Advertising Liability all damages involving the same injurious material or act, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants shall be deemed to arise out of one occurrence.

9. **Ultimate Net Loss**—Except as provided in Insuring Agreement II, "Defense", the term "Ultimate Net Loss" shall mean the total sum which the Insured, or any company as its insurer, or both become obligated to pay by reason of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims and excluding only the salaries of the Insured or any of the underlying insurer's permanent employees.
   The Company shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not.

10. **Aircraft**—The term "Aircraft" includes any heavier than air or lighter than air aircraft designed to transport persons or property.

## EXCLUSIONS

This policy shall not apply:

(a) to any obligation for which the Insured or any company as its insurer may be held liable under any Workmen's Compensation or Disability Benefits law provided, however, that this exclusion shall not apply to liability of others assumed by the Named Insured under contract or agreement.

(b) under Coverage I (b) to liability for:
   (1) The loss of use of tangible property which has not been physically injured or destroyed, resulting from:
      (i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
      (ii) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;
   (2) Property Damage to the Named Insured's products arising out of such products or any part of such products;
   (3) Property Damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of material, parts or equipment furnished in connection therewith;
   (4) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such product, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

   (5) to property owned by the Insured,
   (6) to aircraft or watercraft rented to, used by or in the care, custody or control of the Insured;

(c) under Coverages I (a) and I (b) to liability for Personal Injury or Property Damage arising out of the ownership, maintenance, operations, use, loading or unloading of aircraft or watercraft unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages. However, the provisions of this exclusion (c) shall not apply to any aircraft when rented, leased or chartered to the Named Insured with a pilot and crew furnished;

(d) under Coverage I (a) to liability of any employee with respect to Personal Injury to another employee of the same employer injured in the course of such employment unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages and then not for broader coverage than is afforded to such employee by that policy;

(e) under Coverage I (c) to claims made against the Insured,
   (1) for failure of performance of contract;
   (2) for infringement of trade-mark or trade name;
   (3) for incorrect description of any article or commodity;
   (4) for mistake in advertised prices;

(f) (1) under Coverages I (a) and I (b) to injury, sickness, disease, death or destruction
      (i) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this division (5):

  i.  to any person or organization, to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof;

  ii.  with respect to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or lessee thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

  iii.  to any manufacturer of aircraft, aircraft engines or aviation accessories, or to any aviation sales or service or repair organization or airport or hangar operation or their respective employees or agents, with respect to any occurrence arising out of the operation thereof.

The inclusion or addition hereunder of more than one Insured shall not operate to increase the Company's limit of liability.

2.  **Personal Injury**—The term "Personal Injury" shall mean:
(a) bodily injury, sickness, disease, disability, shock, fright, mental anguish and mental injury;
(b) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution and humiliation;
(c) libel, slander, defamation of character or invasion of right of privacy unless arising out of Advertising Liability; and
(d) assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing or eliminating danger to persons or property.

3.  **Property Damage**—The term "Property Damage" shall mean (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

4.  **Advertising Liability**—The term "Advertising Liability" shall mean liability for damage because of:
(a) unintentional Libel, Slander or Defamation;
(b) infringement of copyright or title or of slogan;
(c) piracy or unfair competition or idea misappropriation under an implied contract;
(d) invasion of the rights of privacy,
Committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.

5.  **Products Hazard**—The term "Products Hazard" includes Personal Injury and Property Damage arising out of the Named Insured's products or reliance upon a representation or warranty with respect thereto, but only if the Personal Injury or Property Damage occurs away from premises owned by or rented to the Named Insured and after physical possession has been relinquished to others.

6.  **Named Insured's Products**—The term "Named Insured's Products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but Named Insured's products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

7.  **Completed Operations Hazard**—The term "Completed Operations Hazard" includes Personal Injury and Property Damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the Personal Injury or Property Damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith.
Operations shall be deemed completed at the earliest of the following times:
(a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
(b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The Completed Operations Hazard does not include Personal Injury or Property Damage arising out of
(a) operations in connection with the transportation of property, unless the Personal Injury or Property Damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

8.  **Occurrence**—With respect to Personal Injury and Property Damage the term "Occurrence" means an event, including continuous or repeated exposure to conditions, which results in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one occurrence. With respect to Advertising Liability all damages involving the same injurious material or act, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants shall be deemed to arise out of one occurrence.

9.  **Ultimate Net Loss**—Except as provided in Insuring Agreement II, "Defense", the term "Ultimate Net Loss" shall mean the total sum which the Insured, or any company as its insurer, or both become obligated to pay by reason of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, expenses for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of claims and excluding only the salaries of the Insured or any of the underlying Insurer's permanent employees.
The Company shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance whether collectible or not.

10.  **Aircraft**—The term "Aircraft" includes any heavier than air or lighter than air aircraft designed to transport persons or property.

## EXCLUSIONS

This policy shall not apply:
(a) to any obligation for which the Insured or any company as its insurer may be held liable under any Workmen's Compensation or Disability Benefits law provided, however, that this exclusion shall not apply to liability of others assumed by the Named Insured under any contract or agreement.
(b) under Coverage I (b) to liability for
  (1) The loss of use of tangible property which has not been physically injured or destroyed, resulting from:
    (i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or
    (ii) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;
  (2) Property Damage to the Named Insured's products arising out of such products or any part of such products;
  (3) Property Damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of material, parts or equipment furnished in connection therewith;
  (4) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any portion of which such products or work form a part, if such product, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

  (5) to property owned by the Insured,
  (6) to aircraft or watercraft rented to, used by or in the care, custody or control of the Insured;
(c) under Coverages I (a) and I (b) to liability for Personal Injury or Property Damage arising out of the ownership, maintenance, operations, use, loading or unloading of aircraft or watercraft unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages. However, the provisions of this exclusion (c) shall not apply to any aircraft when rented, leased or chartered to the Named Insured with a pilot and crew furnished;
(d) under Coverage I (a) to liability of any employee with respect to Personal Injury to another employee of the same employer injured in the course of such employment unless insurance therefore is provided by a policy listed in the Schedule of Underlying Coverages and then not for broader coverage than is afforded to such employee by that policy;
(e) under Coverage I (c) to claims made against the Insured,
  (1) for failure of performance of contract;
  (2) for infringement of trade-mark or trade name;
  (3) for incorrect description of any article or commodity;
  (4) for mistake in advertised prices;
(f) (1) under Coverages I (a) and I (b) to injury, sickness, disease, death or destruction
    (i) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

Not to Photocopy or Reproduce — CONFIDENTIAL

(iii) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

(2) under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

(3) under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if—

  (i) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispensed therefrom;

  (ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

  (iii) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operating or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions of Canada, this exclusion (iii) applies only to injury to or destruction of property at such nuclear facility;

(4) As used in this policy:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "by-product material" have meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (i) or (ii) thereof;

"Nuclear Facility" means:

  (i) any nuclear reactor,

  (ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

  (iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

  (iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property;

(g) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(h) to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## CONDITIONS

1. **Premium.** Unless otherwise provided the premium for this policy is a flat premium and is not subject to adjustment except as provided in Condition 15 Cancellation. If this policy is subject to audit adjustment, the premium may be based upon the rating basis as set forth in the Declarations during the policy period. Upon expiration of this policy or its termination during the policy period, or at the end of each policy year, the earned premium shall be computed as specified herein. If the earned premium is more than the advance premium paid, the Named Insured shall promptly pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

2. **Additional Named Insureds.** In the event that additional Named Insureds as defined in Definition 1 (a) are added, prompt notice shall be given to the Company.

3. **Prior Insurance and Non-Cumulation of Liability.** It is agreed, that if any loss is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the Company's limit of liability as stated in Item 3 of the Declarations shall be reduced by any amounts due the Insured on account of any such loss under such prior insurance.

4. **Severability of Interest.** In the event of claims being made by reason of Personal Injuries, Property Damage or Advertising Liability suffered by one Insured herein for which another Insured herein is or may be liable, this policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement III.

5. **Notice of Occurrence.** Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that the Insured should be held liable is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided however, that failure to notify the Company of any occurrence which at the time of its happening did not appear to involve this policy, but which at a later date did give rise to claims hereunder, shall not prejudice such claims.

6. **Inspection and Audit.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

7. **Maintenance of Underlying Insurance.** The policy or policies referred to in the attached "Schedule of Underlying Insurances", and renewal or replacement thereof not more restrictive, shall be maintained by the Named Insured in full effect during the currency of this policy without alteration of terms or conditions except for any reduction of the aggregate limit or limits contained therein solely by payment of claims. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such policy or policies.

8. **Assistance and Co-operation.** Except as provided by Insuring Agreement II, Defense, the Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Insured, but the company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying Insurer, or both, in the defense and control of any claim, suit or proceeding relative to any occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Insured, the underlying Insurers and the Company shall cooperate in all things in the defense of such claim, suit, or proceeding.

9. **Appeals.** In the event the Insured or the Insured's underlying Insurer(s) elects not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its own cost and expense and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company, for the ultimate net loss, exceed the amount set forth in Item 3(a) of the Declarations for any one occurrence plus the cost and expense of such appeal.

10. **Loss Payable.** Liability of the Company under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying Insurer, shall have paid the amount of underlying limits on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Insured shall have paid an amount of ultimate net loss in excess of the amount borne by the Insured or that Insured's underlying Insurer(s) or after the Insured's Liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. If any subsequent payments shall be made similarly from time to time, such losses shall be due and payable within thirty (30) days after proof of loss has been furnished to the Company in a satisfactory form.

(iii) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

(2) under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

(3) under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if—

(i) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispensed therefrom;

(ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(iii) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operating or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions of Canada, this exclusion (iii) applies only to injury to or destruction of property at such nuclear facility;

(4) As used in this policy:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "by-product material" have meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (i) or (ii) thereof;

"Nuclear Facility" means:

(i) any nuclear reactor,

(ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property;

(g) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(h) to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## CONDITIONS

1. **Premium.** Unless otherwise provided the premium for this policy is a flat premium and is not subject to adjustment except as provided in Condition 15 Cancellation. If this policy is subject to audit adjustment, the premium may be based upon the rating basis as set forth in the Declarations during the policy period. Upon expiration of this policy or its termination during the policy period, or at the end of each policy year, the earned premium shall be computed as specified herein. If the earned premium is more than the advance premium paid, the Named Insured shall promptly pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

2. **Additional Named Insureds.** In the event that additional Named Insureds as defined in Definition 1 (a) are added, prompt notice shall be given to the Company.

3. **Prior Insurance and Non-Cumulation of Liability.** It is agreed, that if any loss is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the Company's limit of liability as stated in Item 3 of the Declarations shall be reduced by any amounts due the Insured on account of any such loss under such prior insurance.

4. **Severability of Interest.** In the event of claims being made by reason of Personal Injuries, Property Damage or Advertising Liability suffered by one Insured herein for which another Insured herein is or may be liable, this policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement III.

5. **Notice of Occurrence.** Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that the Insured should be held liable is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided however, that failure to notify the Company of any occurrence which at the time of its happening did not appear to involve this policy, but which at a later date did give rise to claims hereunder, shall not prejudice such claims.

6. **Inspection and Audit.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe.

The Company may examine and audit the Named Insured's books and records at any time during the policy and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

7. **Maintenance of Underlying Insurance.** The policy or policies referred to in the attached "Schedule of Underlying Insurances", and renewal or replacement thereof not more restrictive, shall be maintained by the Named Insured in full effect during the currency of this policy without alteration of terms or conditions except for any reduction of the aggregate limit or limits contained therein solely by payment of claims. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such policy or policies.

8. **Assistance and Co-operation.** Except as provided by Insuring Agreement II, Defense, the Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Insured, but the company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying Insurer, or both, in the defense and control of any claim, suit or proceeding relative to any occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Insured, the underlying Insurers and the Company shall cooperate in all things in the defense of such claim, suit, or proceeding.

9. **Appeals.** In the event the Insured or the Insured's underlying Insurer(s) elects not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its own cost and expense and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company, for the ultimate net loss, exceed the amount set forth in Item 3(a) of the Declarations for any one occurrence plus the cost and expense of such appeal.

10. **Loss Payable.** Liability of the Company under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying Insurer, shall have paid the amount of underlying limits on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Insured shall have paid an amount of ultimate net loss in excess of the amount borne by the Insured or the Insured's underlying Insurer(s) or after the Insured's Liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. If any subsequent payments shall be made similarly from time to time, such losses shall be due and payable within thirty (30) days after proof of loss has been furnished to the Company in a satisfactory form.

(ii) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

(2) under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

(3) under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if—

(i) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an Insured or (2) has been discharged or dispensed therefrom;

(ii) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(iii) the injury, sickness, disease, death, or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operating or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions of Canada, this exclusion (iii) applies only to injury to or destruction of property at such nuclear facility;

(4) As used in this policy:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material" and "by-product material" have meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-Product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (i) or (ii) thereof;

"Nuclear Facility" means:

(i) any nuclear reactor,

(ii) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(iv) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property;

(g) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(h) to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

## CONDITIONS

1. **Premium.** Unless otherwise provided the premium for this policy is a flat premium and is not subject to adjustment except as provided in Condition 15 Cancellation. If this policy is subject to audit adjustment, the premium may be based upon the rating basis as set forth in the Declarations during the policy period. Upon expiration of this policy or its termination during the policy period, or at the end of each policy year, the earned premium shall be computed as specified herein. If the earned premium is more than the advance premium paid, the Named Insured shall promptly pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

2. **Additional Named Insureds.** In the event that additional Named Insureds as defined in Definition 1 (a) are added, prompt notice shall be given to the Company.

3. **Prior Insurance and Non-Cumulation of Liability.** It is agreed, that if any loss is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof, the Company's limit of liability as stated in Item 3 of the Declarations shall be reduced by any amounts due the Insured on account of any such loss under such prior insurance.

4. **Severability of Interest.** In the event of claims being made by reason of Personal Injuries, Property Damage or Advertising Liability suffered by one Insured herein for which another Insured herein is or may be liable, this policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured herein. Nothing contained herein shall operate to increase the Company's limit of liability as set forth in Insuring Agreement III.

5. **Notice of Occurrence.** Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that the Insured should be held liable is likely to involve this policy, notice shall be sent to the Company as soon as practicable, provided however, that failure to notify the Company of any occurrence which at the time of its happening did not appear to involve this policy, but which at a later date did give rise to claims hereunder, shall not prejudice such claims.

6. **Inspection and Audit.** The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe. The Company may examine and audit the Named Insured's books and records at any time during the policy and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

7. **Maintenance of Underlying Insurance.** The policy or policies referred to in the attached "Schedule of Underlying Insurances", and renewal or replacement thereof not more restrictive, shall be maintained by the Named Insured in full effect during the currency of this policy without alteration of terms or conditions except for any reduction of the aggregate limit or limits contained therein solely by payment of claims. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured so maintained such policy or policies.

8. **Assistance and Co-operation.** Except as provided by Insuring Agreement II, Defense, the Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Insured, but the company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying Insurer, or both, in the defense and control of any claim, suit or proceeding relative to any occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Insured, the underlying Insurers and the Company shall cooperate in all things in the defense of such claim, suit, or proceeding.

9. **Appeals.** In the event the Insured or the Insured's underlying Insurer(s) elects not to appeal a judgment in excess of the underlying limits, the Company may elect to make such appeal at its own cost and expense and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company, for the ultimate net loss, exceed the amount set forth in Item 3(a) of the Declarations for any one occurrence plus the cost and expense of such appeal.

10. **Loss Payable.** Liability of the Company under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying Insurer, shall have paid the amount of underlying limits on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the Insured shall have paid an amount of ultimate net loss in excess of the amount borne by the Insured or the Insured's underlying Insurer(s) or after the Insured's Liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company. If any subsequent payments shall be made similarly from time to time, such losses shall be due and payable within thirty (30) days after proof of loss has been furnished to the Company in a satisfactory form.

11. **Other Insurance.** If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy.

12. **Application of Salvage—Subrogation.** All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed or mean that losses under this insurance are not recoverable until the Insured's ultimate net loss has been finally ascertained. Inasmuch as this policy is "Excess Coverage", the Insured's right of recovery against any person or other entity cannot always be exclusively subrogated to the Company. It is, therefore understood and agreed that in case of any payment hereunder, the Company shall act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company shall then be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is excess are entitled to claim the residue, if any. Expense necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

13. **Changes.** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

14. **Assignment.** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

15. **Cancellation.** This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company or any of its authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table procedure. If the Company cancels, earned premium shall be computed pro rata. In the event of such cancellation, the earned premium shall in no case be less than the annual minimum premium stated in the Declarations, subject to the policy minimum premium also stated in the Declarations.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

If this policy insures more than one Named Insured, cancellation may be effected by the first of such Named Insureds for the account of all Insureds; the notice of cancellation by the Company to such first Named Insured shall be notice to all Insureds. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

16. **Bankruptcy and Insolvency.** In the event of the Bankruptcy or Insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**In Witness Whereof,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_Marion E. Fajen_

Secretary

_E. Dickinson Jr._

President

11. **Other Insurance.** If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy.

12. **Application of Salvages—Subrogation.** All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed or mean that losses under this insurance are not recoverable until the Insured's ultimate net loss has been finally ascertained. Inasmuch as this policy is "Excess Coverage", the Insured's right of recovery against any person or other entity cannot always be exclusively subrogated to the Company. It is, therefore understood and agreed that in case of any payment hereunder, the Company shall act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company shall then be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is excess are entitled to claim the residue, if any. Expense necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

13. **Changes.** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

14. **Assignment.** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

15. **Cancellation.** This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company or any of its authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short-rate table procedure. If the Company cancels, earned premium shall be computed pro rata. In the event of such cancellation, the earned premium shall in no case be less than the annual minimum premium stated in the Declarations, subject to the policy minimum premium also stated in the Declarations.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative mailed or delivered, shall be sufficient tender of any refund due the Named Insured.

If this policy insures more than one Named Insured, cancellation may be effected by the first of such Named Insureds for the account of all Insureds; the notice of cancellation by the Company to such first Named Insured shall be notice to all Insureds. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

16. **Bankruptcy and Insolvency.** In the event of the Bankruptcy or Insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**In Witness Whereof**, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Secretary

President

Subject to Protective Order

11. **Other Insurance.** If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy.

12. **Application of Salvages—Subrogation.** All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed or mean that losses under this insurance are not recoverable until the Insured's ultimate net loss has been finally ascertained. Inasmuch as this policy is "Excess Coverage", the Insured's right of recovery against any person or other entity cannot always be exclusively subrogated to the Company. It is, therefore understood and agreed that in case of any payment hereunder, the Company shall act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company shall then be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is excess are entitled to claim the residue, if any. Expense necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

13. **Changes.** Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the Company.

14. **Assignment.** Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

15. **Cancellation.** This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company or any of its authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing. If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table procedure. If the Company cancels, earned premium shall be computed pro rata. In the event of such cancellation, the earned premium shall in no case be less than the annual minimum premium stated in the Declarations, subject to the policy minimum premium also stated in the Declarations.
Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative mailed or delivered, shall be sufficient tender of any refund due the Named Insured.
If this policy insures more than one Named Insured, cancellation may be effected by the first of such Named Insureds for the account of all Insureds; the notice of cancellation by the Company to such first Named Insured shall be notice to all Insureds. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

16. **Bankruptcy and Insolvency.** In the event of the Bankruptcy or Insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

**In Witness Whereof,** the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Secretary

President



## ENDORSEMENT #1

This endorsement, effective 12:01 A.M. M. January 1, 1977 forms a part of policy No. BE 121 82 55 Issued to Boy Scouts of America, National, Etal.

by National Union Fire Insurance Company of Pittsburgh, Pa.

It is understood and agreed that the following are added as additional named insureds:

A) South Cincinnati Parking Garage Corporation

B) Lincoln-Mercury and/or any other leasing dealer only as respects automobiles leased by Boy Scouts of America and insured under the leased Automobile Fleet Insurance Program

C) Boy Scouts of America Local Council, but only as respects leased car program above.

4/4/77:CM:NYC

Robert B. _____
Authorized Representative

Form 1803

Subject to Protective Order Confidential

## ENDORSEMENT #1



This endorsement, effective 12:01 A.M.    M. January 1, 1977    forms a part of policy No. BE 121 82 55    issued to Boy Scouts of America, National, Etal.

by National Union Fire Insurance Company of Pittsburgh, Pa.

It is understood and agreed that the following are added as additional named insureds:

A) South Cincinnati Parking Garage Corporation

B) Lincoln-Mercury and/or any other leasing dealer only as respects automobiles leased by Boy Scouts of America and insured under the leased Automobile Fleet Insurance Program

C) Boy Scouts of America Local Council, but only as respects leased car program above.

4/4/77:CM:NYC

Form 1803

_Robert B. Charles_
Authorized Representative

Subject to Protective Order - Confidential



## ENDORSEMENT #2

This endorsement, effective 12:01 A.M.    M. January 1, 1977    forms a part of

policy No.    BE 121 82 55    issued to Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is agreed that with respect to the Insured's Broadcasting, Telecasting, Advertising, Re-Broadcasting or Re-Televising activities or activities incidental thereto, such coverage as is afforded by the policy does not apply to any claim or claims arising out of libel, slander, humiliation, defamation of character, invasion of rights of privacy plagiarism, infringement of copyright or of title or slogan, piracy or unfair competition or idea missappropriation under an implied contract, except inso far as coverage is available to the Insured in the Underlying Insurances and then only in excess of the limits set forth therein.

4/4/77:CM:NYC

Form 1803

_Robert B. Chesley_
Authorized Representative



## ENDORSEMENT #2

This endorsement, effective 12:01 A.M.    M. January 1, 1977    forms a part of policy No.   BE 121 82 55    issued to  Boy Scouts of America, National, Etal.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

It is agreed that with respect to the Insured's Broadcasting, Telecasting, Advertising, Re-Broadcasting or Re-Televising activities or activities incidental thereto, such coverage as is afforded by the policy does not apply to any claim or claims arising out of libel, slander, humiliation, defamation of character, invasion of rights of privacy plagiarism, infringement of copyright or of title or slogan, piracy or unfair competition or idea misappropriation under an implied contract, except inso far as coverage is available to the Insured in the Underlying Insurances and then only in excess of the limits set forth therein.

4/4/77:CM:NYC

Form 1803

_____Robert B. Cheeley_____
Authorized Representative

## ENDORSEMENT #3

This endorsement, effective 12:01 A.M.   M.   January 1, 1977   forms a part of

policy No.  BE 121 82 55   Issued to  Boy Scouts of America, National, Etal.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

It is hereby understood and agreed that notwithstanding anything contained herein to the contrary, this policy shall follow the terms, conditions and settlements of the scheduled primary policies in every respect insofar as coverage is afforded by the said Scheduled Primary Policies for Garage Keepers Legal Liability, Excess of the limits set forth hereunder.

4/4/77:CM:NYC

Form 1803

_____
Authorized Representative

Subject to Protective Order – Confidential




## ENDORSEMENT #3

This endorsement, effective 12:01 A.M.    M    January 1, 1977    forms a part of

policy No. BE 121 82 55    issued to Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is hereby understood and agreed that notwithstanding anything contained herein to the contrary, this policy shall follow the terms, conditions and settlements of the scheduled primary policies in every respect insofar as coverage is afforded by the said Scheduled Primary Policies for Garage Keepers Legal Liability, Excess of the limits set forth hereunder.

4/4/77:CM:NYC

Form 1803

Authorized Representative



## ENDORSEMENT #4

This endorsement, effective 12:01 A.M.    M.  January 1, 1977          forms a part of

policy No.   BE 121 82 55          issued to Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is agreed that this policy shall not apply to any liability arising out
of false arrest, false imprisonment, wrongful eviction, wrongful detention,
malicious prosecution, humiliation, libel, slander, defamation of character,
or invasion of right of privacy unless such liability be covered by valid or
collectible underlying insurance as set out in the Schedule of Underlying
Policies and then only for such hazards for which coverage is afforded under
said underlying insurance.

4/4/77:CM:NYC

Form 1803

Robert B. Chasley
Authorized Representative

Subject to Protective Order -- Confidential



## ENDORSEMENT #4

This endorsement, effective 12:01 A.M.    M.  January 1, 1977        forms a part of

policy No.   BE 121 82 55        issued to Boy Scouts of America, National, Etal.

by   National Union Fire Insurance Company of Pittsburgh, Pa.


It is agreed that this policy shall not apply to any liability arising out
of false arrest, false imprisonment, wrongful eviction, wrongful detention,
malicious prosecution, humiliation, libel, slander, defamation of character,
or invasion of right of privacy unless such liability be covered by valid or
collectible underlying insurance as set out in the Schedule of Underlying
Policies and then only for such hazards for which coverage is afforded under
said underlying insurance.

4/4/77:CM:NYC

Form 1803

_Robert B. Chasseur_
Authorized Representative

Subject to Protective Order — Confidential



## ENDORSEMENT #5

This endorsement, effective 12:01 A.M.    M. January 1, 1977    forms a part of
policy No.    BE 121 82 55    issued to    Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.


### NOTICE OF OCCURRENCE

It is agreed that notice of claim or suit to the Insured, is to be deemed effective only when given to an executive officer or the insurance manager at B.S.A. National Headquarters North Brunswick, N.J.

4/4/77:CM:NYC

Form 1803

Authorized Representative

## ENDORSEMENT #5

This endorsement, effective 12;01 A.M.     M. January 1, 1977     forms a part of

policy No.     BE 121 82 55     Issued to     Boy Scouts of America, National, Etal.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### NOTICE OF OCCURRENCE

It is agreed that notice of claim or suit to the Insured, is to be deemed effective only when given to an executive officer or the insurance manager at B.S.A. National Headquarters North Brunswick, N.J.

4/4/77:CM:NYC

_____
Authorized Representative

Form 1803

Subject to Protective Order - Confidential

 

## ENDORSEMENT #6

This endorsement, effective 12:01 A.M.      M. January 1, 1977                forms a part of
policy No.  BE 121 82 55        issued to  Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### PENSION TRUST-EMPLOYEE BENEFITS

It is specifically understood and agreed that this policy does not
cover Fiduciary liability however styled in respect of any Pension
Trust Fund or Employee Benefits Account irrespective of whether or
not any of the underlying policies scheduled herein provide such
coverage by endorsement or otherwise.

4/4/77:CM:NYC

Form 1803

_Robert B. Chesler_
Authorized Representative



## ENDORSEMENT #6

This endorsement, effective 12:01 A.M.    M January 1, 1977    forms a part of
policy No.  BE 121 82 55    issued to  Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### PENSION TRUST-EMPLOYEE BENEFITS

It is specifically understood and agreed that this policy does not
cover Fiduciary liability however styled in respect of any Pension
Trust Fund or Employee Benefits Account irrespective of whether or
not any of the underlying policies scheduled herein provide such
coverage by endorsement or otherwise.

4/4/77:CM:NYC

Form 1803

Robert B. Charles
Authorized Representative

## ENDORSEMENT #7

This endorsement, effective 12:01 A.M.   M. January 1, 1977     forms a part of
policy No.   BE 121 82 55     issued to   Boy Scouts of America, National, Etal.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

### Punitive Damage Endorsement

In consideration of the premium charged, it is hereby understood
and agreed that the following additional exclusion (g) is added
to the policy:

(g) Under coverages 1 (a), (b), (c) to fines, penalties, punitive
    or exemplary damages.

Subject to Protective Order—Confidential

4/4/77:CM:NYC

Form 1803

_Robert B. Chesley_
Authorized Representative

## ENDORSEMENT #7

This endorsement, effective 12:01 A.M.      M. January 1, 1977      forms a part of

policy No.    BE 121 82 55      issued to  Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### Punitive Damage Endorsement

In consideration of the premium charged, it is hereby understood
and agreed that the following additional exclusion (g) is added
to the policy:

(g) Under coverages 1 (a), (b), (c) to fines, penalties, punitive
    or exemplary damages.

4/4/77:CM:NYC

_Robert B. Chessler_
Authorized Representative

Form 1803

Subject to Protective Order of Confidential

Subject to Protective Order - Confidential

# NATIONAL UNION
# FIRE INSURANCE COMPANY
## OF PITTSBURGH. PA.
A CAPITAL STOCK COMPANY

102 MAIDEN LANE, NEW YORK, N. Y. 10008

*[handwritten: SAMPLE COPY SENT Trial/CS]*

Excess Third Party Liability Policy

LOCAL COUNCIL:
ADDRESS:

PRODUCER: Alexander & Alexander, Inc.
1185 Avenue of the Americas
New York, N.Y. 10036

NAMED INSURED — BOY SCOUTS OF AMERICA, NATIONAL COUNCIL AND LOCAL COUNCIL
NAMED HEREIN.

POLICY NUMBER: CE 1157777

POLICY PERIOD: From 1/1/78 until 1/1/79
12:01 AM, Standard time at North Brunswick,
New Jersey

This is a certified copy of the Master Policy issued to the Boy Scouts of America
which neither affirmatively nor negatively amends, extends, or alters the coverage,
limits, terms of conditions of the Master Policy.

The insurance provides the following coverages and limits of liability, subject
to all terms, conditions and exclusions of the policy, for all scouting activities
of the named local council. Inclusion of more than one named insured does not in-
crease the company's total limit of liability.

Description of Coverage: Excess Comprehensive General Liability &
Automobile Liability
Limits of Liability: The limit of the Company's liability shall be as stated
herein, subject to all the terms of this policy
having reference thereto.

| COVERAGE | COMPANY LIMITS | UNDERLYING LIMITS | TOTAL LIMITS |
|---|---|---|---|
| D. Combined Single Limit Bodily and/or Property Damage | $500,000 Each Accident or Occurrence | $500,000 | $1,000,000 |
| | $500,000 Aggregate | $500,000 | $1,000,000 |

This Declarations and Coverage Part(s), with Policy Standard Provisions and
Endorsements, if any issued to form a part thereof, completes the above numbered
policy.

*Robert B. Chandler*
Authorized Representative

Subject to Protective Order - Confidential/CS

# NATIONAL UNION FIRE INSURANCE COMPANY
## OF PITTSBURGH, PA.
(A stock insurance company herein called the company)

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the Company agrees to indemnify the insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 6, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 6, Section III of the Declarations. This policy shall apply only to coverages for which an amount is indicated in Item 6, Section I, and then only in excess of the corresponding amount as indicated in Item 6, Section II of the Declarations.

## DEFINITIONS

1. **Loss.** The word "loss" shall be understood to mean the sums paid in settlements of losses for which the insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.** The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the insured).

3. **Primary Insurance.** The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this policy or of any endorsement used herewith does not apply:

(a) to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the occurrence resulting in such injury, sickness, disease, death or destruction; provided, such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such occurrence notwithstanding such contract has terminated upon exhaustion of its limit of liability;

(b) to the ownership, maintenance, operation or use of a nuclear facility by or on behalf of an insured, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard; provided that except for byproduct material, this paragraph (b) shall not apply to goods or products manufactured or handled by a nuclear facility owned, maintained, operated or used by or on behalf of an insured while such goods or products are away from such facility after sale or distribution to others;

(c) to the furnishing of services, materials, parts or equipment by an insured in connection with the planning, construction, maintenance, operation or use of any nuclear facility, (1) with respect to injury to or destruction of any nuclear facility or property thereat resulting from the nuclear energy hazard or (2) if the nuclear facility is located outside the United States of America, its territories or possessions, or Canada, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard;

(d) to the transportation, handling, use, sale, distribution or disposal of byproduct material, with respect to injury, sickness, disease, death or destruction resulting from the nuclear energy hazard.

As used in this exclusion:

1. The term "nuclear energy hazard" means the radioactive, toxic, explosive or other hazardous properties of source material, special nuclear material or byproduct material.

2. The terms "source material," "special nuclear material" and "byproduct material" shall have the meanings given them in the Atomic Energy Act of 1954 or by any law amendatory thereof; provided, except for byproduct material (a) contained in or combined with special nuclear material or (b) held, stored, transported or disposed of as waste by or on behalf of a nuclear facility, "byproduct material" shall not include any radioactive isotope away from a nuclear facility.

3. The term "nuclear facility" means:

   (a) any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   (b) any equipment or device (i) designed or used for the separation of the isotopes of uranium or plutonium, (ii) designed or used for the processing, fabricating or alloying of special nuclear material or of irradiated materials containing special nuclear material, (iii) incorporating or making use of such irradiated materials, or (iv) designed or used for processing waste byproduct material;

   (c) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste source material or waste consisting of or containing special nuclear material or byproduct material;

   and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

   Subdivision (ii) of paragraph (b) foregoing is not applicable to the occasional mechanical processing or fabricating of special nuclear material by any person or organization of a location which contains no equipment, device or apparatus otherwise defined herein as a nuclear facility, where special nuclear or byproduct material is not regularly handled, stored, or disposed of as waste, and which is principally used for other operations not related to the handling, fabricating or use of special nuclear material.

4. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

## CONDITIONS

1. It is agreed that this policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 6, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 6, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this policy) except as provided by aggregate limits which, with respect to Item 6, Section I, when inserted therein apply to all accidents happening during each twelve month's term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled at any time at the written notice of the Insured or may be cancelled by or on behalf of the Company provided ten (10) days written notice is given to the Insured at the address shown in the Declarations. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. In the event of the cancellation or termination of the Primary Insurance or of a renewal thereof, this policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the insured. If the named Insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata.

IN WITNESS WHEREOF, the NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. has caused this policy to be signed by its President and Secretary of New York, New York and countersigned on the Declarations page by a duly authorized agent of the Company.

_Secretary_

_President_

## ENDORSEMENT #1

This endorsement, effective **12:01** A. M. **January 1, 1978**   forms a part of policy No. **CE 115 77 77**   issued to **Boy Scouts of America, Local Councils**

by **National Union Fire Insurance Company of Pittsburgh, Pa.**

### WATERCRAFT EXCLUSION

In consideration of the premium charged, it is understood and agreed that such coverage as is afforded by this policy shall not apply to PERSONAL INJURY or PROPERTY DAMAGE arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft.

## ENDORSEMENT #2

This endorsement, effective **12:01** A.M. **January 1, 1978**   forms a part of policy No. **CE 115 77 77**   issued to **Boy Scouts of America, Local Councils**

by **National Union Fire Insurance Company of Pittsburgh, Pa.**

### ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that the following are added as additional insured:

1) Any leasing dealer as respects automobiles leased by the Named Insured, including the Lincoln - Mercury Auto Fleet Leasing Program.

2) Any unit, leader, sponser and volunteer for any and all functions in connection with B.S.A. activities.  (See endorsement #3)


Authorized Representative

Form 1803


## ENDORSEMENT #3

This endorsement, effective **12:01** A. M. **January 1, 1977** forms a part of
policy No. **CE 115 77 77** Issued to **Boy Scouts of America, Local Councils**

by **National Union Fire Insurance Company of Pittsburgh, Pa.**

In consideration of the premium charged, it is understood and agreed that such insurance as is afforded under this policy shall be excess of a $ 500,000. CSL (BI and PD) which in turn shall be excess of any valid and collectible insurances for any individual insured hereunder with respect to his Personal Liability, Homeowners Liability, or Family/Personal Automobile Liability Insurances.

It is further agreed that this policy does not provide coverage for an individual Named Insured except in connection with the conduct of a B.S.A. function or activity, and then only for such coverage as is afforded by Underlying Insurances.

## ENDORSEMENT #4

This endorsement, effective **12:01** A. M. **January 1, 1978** forms a part of
policy No. **CE 115 77 77** issued to **Boy Scouts of America, Local Councils**

by **National Union Fire Insurance Company of Pittsburgh, Pa.**

### PENSION TRUST - EMPLOYEE BENEFITS

It is specifically understood and agreed that this policy does not cover Fiduciary Liability however styled in respect of any Pension Trust Fund or Employee Benefits Account irrespective of whether or not any of the underlying policies scheduled herein provide such coverage by endorsement or otherwise.

Robert B. Chandler
Authorized Representative

Form 1803

ENDORSEMENT #1

This endorsement, effective                    M.              forms
a part of policy No.                      issued to

by

## ADDITIONAL INSURED ENDORSEMENT

It is hereby understood and agreed that the following are added
as additional insureds:

1)   Any leasing dealer as respects automobiles leased by the
     Named Insured, but not a part of the Lincoln - Mercury
     Auto Fleet Leasing Program.

2)   Any unit, leader, sponsor and volunteer for any and all
     functions in connection with B.S.A. activities. (see endorsement
     # 3).

Subject to Protective Order – Confidential

_____
AUTHORIZED REPRESENTATIVE

Form 1008

SCHEDULE OF UNDERLYING INSURANCE

Endorsement # 2

Issued To

| Type of Policy or Coverage | Insurer | Limits |
|---|---|---|
| Comprehensive General Liability including Products Completed Operations, Personal Injury A, B & C with Exclusion C deleted, Blanket Contractual and liability for property of others in the insured's Care, Custody & Control | To be advised | Bodily Injury Liability $    ---    each person $    ---    each occurrence $    ---    aggregate<br><br>Property Damage Liability $    ---    each occurrence $    ---    aggregate<br><br>Combined Single Limit $    500,000 |
| * Automobile Liability Includes Hired & non ownership automobile Liability | To be advised | Bodily Injury Liability $    ---    each person $    ---    each occurrence<br><br>Property Damage Liability $    ---    each occurrence<br><br>Combined Single Limit $    500,000 |
| Standard Workmen's Compensation and Employers Liability | To be advised | Coverage B Employers Liability $    100,000  each accident. |
| Miscellaneous Liability<br><br>Aircraft non ownership Liability | To be advised | $500,000 CSL (BI & PD) including passenger liability |
| Watercraft Liability (for craft less than 26 feet) | To be advised | $500,000 CSL (BI & PD) |

Subject to Protective Order – Confidential

Authorized Representative

FORM 2218 (8-79)

## ENDORSEMENT #3

This endorsement, effective       M.                forms a part of

policy No.                issued to

by

In consideration of the premium charged, it is understood and agreed that the Schedule of Underlying Insurance with respect to Products/Completed Operations, Personal Injury Coverages AB&C with exclusion "C" deleted, Blanket Contractual, and liability for property in the Insured's Care, Custody or Control, the Company's limit of liability shall only apply in excess of $500,000 Combined Single Limit (BI & PD) whether insured or not insured.

It is further understood and agreed that such insurance as is afforded under this policy shall be excess of a $500,000.00 CSL (BI & PD) which in turn shall be excess of any valid and collectible insurances for any individual insured hereunder with respect to his Personal Liability, Homeowners Liability, or Family/Personal Automobile Liability Insurances.

It is further agreed that this policy does not provide coverage for an individual Named Insured except in connection with the conduct of a B.S.A. function or activity, and then only for such coverage as is afforded by policies referred to in the Schedule of Underlying Insurances attached to this policy.

_____
Authorized Representative

Form 1803

Subject to Protective Order - Confidential

## ENDORSEMENT #4

This endorsement, effective                           M.                                    forms a part of
policy No.                          issued to

by

### PENSION TRUST - EMPLOYEE BENEFITS

It is specifically understood and agreed that this policy does not cover Fiduciary Liability however styled in respect of any Pension Trust Fund or Employee Benefits Account irrespective of whether or not any of the underlying policies scheduled herein provide such coverage by endorsement or otherwise.

_____
Authorized Representative

Form 1803

ENDORSEMENT    #5

This endorsement, effective                          M.              forms
a part of policy No.                        issued to

by

Premium Computation

It is understood and agreed that Item #4, Premium Computation,
shall be determined and payable under National Union (Master)
Policy Number BE 115-15-54.

Subject to Protective Order – Confidential

AUTHORIZED REPRESENTATIVE

Form 1808

ENDORSEMENT #6

This endorsement, effective                    12:01  A. M.   1/1/76   forms
a part of policy No.                                    issued to

by   National Union Fire Insurance Company

It is understood and agreed that Endorsement #2, Schedule of Underlying Insurances,
is amended in part as follows:

| Type of Policy or Coverage | Insurer | Limits |
|---|---|---|
| Watercraft Liability (for craft 50 feet or less) | To be Advised | $500,000.00 |
| Watercraft Liability (for craft excess of 50 feet) | To be Advised | $1,000,000 minimum (specific vessel limits must be shown on a schedule of vessels) |

_____
AUTHORIZED REPRESENTATIVE

Form 1809

Subject to Protective Order – Confidential

Boy Scouts of America
Choccolocco Council #1
4110 McClellan Blvd.
P.O. Box 2067
Anniston, Ala. 36201

Boy Scouts of America
Midnight Sun Council #696
1400 Gilliam Way
Fairbanks, Alaska 99701

Boy Scouts of America
Westark Area Council #16
Box 3156, Station A
1401 S. 31
Fort Smith, Ark. 72901

Boy Scouts of America
Mt. Lassen Area Council#3
1420 Mangrove
Chico, Ca.   95926

Boy Scouts of America
Birmingham Area Council#2
3600 8th Ave, S.Box 30010
Birmingham, Ala.35222

Boy Scouts of America
Southeast Alaska Council
 P.O. Box 510          #608
Juneau, Alaska  99801

Boy Scouts of America
Ouachita Area Council #14
Box 1235,120 Oakwood Apt2
Hot Spirngs, Ark.71901

Boy Scouts of America
Old Baldy Council #43
120 West San Jose
Claremont, Ca. 91711

Boy Scouts of America
Alabama-Florida Council#3
P.O. Box 2028
Dothan, Ala. 36301

Boy Scouts of America
Grand Canyon Council #12
P.O. Box 8
Flagstaff, Arizona 86002

Boy Scouts of America
Eastern Arkansas Council
Box 146,           #15
Southgate Place
Jonesboro, Ark. 72402

Boy Scouts of America
Desert Trails Council #29
114 S. 5th St.P.O. Box 157
El Centro, Ca. 92243

Boy Scouts of America
Tennessee Valley Council
2211 Drake Ave SW     #659
Huntsville, Ala.35805

Boy Scout of America
Theodore Roosevelt Council
Box 7278,202 E.EarllDr.#10
hoenix, Arizona  85011

Boy Scouts of America
Quapaw Area Council #18
P.O. Box 3663
Cantrell * Cedar Hill
Little Rock, Ark.72203

Boy Scouts of America
Redwood Area Council #44
P.O. Box 6546
Eureka, Ca. 95501

Boy Scouts of America
Mobile Area Council #4
2587 Governement Blvd.
Mobile, Ala. 36606

Boy Scouts of America
Copper Council #9
P.O. Box 329
Safford, Arizona 85546

Boy Scouts of America
Alameda Council #22
1724 Santa Clara Avenue
Alameda, Ca.  94501

Boy Scouts of America
Sequoia Council #27
1095 North Van Ness
Fresno, Ca. 93728

Boy Scouts of America
Tukabatchee Area Council#5
830 Coliseum Bldg,Box 3115
Montgomery,ALA.36109

Boy Scouts of America
Catalina Council #11
250 North Campbell Avenue
Tucson, Arizona  85719

Boy Scouts of America
Southern Sierra Council
2416 M. Street       #30
Bakersfield, Ca.93301

Boy Scouts of America
Verdugo Hills Council #58
1325 Grandview Avenue
Glendale, Ca. 91201

Boy Scouts of America
Black Warrior Council #6
1014 15th Street
Tuscaloosa, Ala. 35401

Boy  Scouts of America
De Soto Area Council #13
801 East 6th Street
El Dorado, Ark. 71730

Boy Scouts of America
Ventura County Council
509 E. Daily Dr.     #57
Camarillo, Ca. 93010

Boy Scouts of America
Long Beach Area Council#32
401 E.37thSt.Box 7338
Long Beach, Ca. 90807

Boy Scouts  of America
Western Alaska Council#610
1227 9th Avenue
Anchorage, Alaska 99501

Boy Scouts of America
Los Angeles Area Council
2333 Scout Way         #33
Los Angeles, Ca. 90026

Boy Scouts of America
Piedmont Council #42
10 Highland Way
Piedmont, Ca. 94611

Boy Scouts of America
San Mateo County Council
1300 S. Amphlett Blvd(#20)
P.O. Box 5005
San Mateo, Ca. 94402

Boy Scouts of America
Mt. Whitney Area Council
221 N.Encina         #54
Visalia, Ca. 93277

Boy Scouts of America
Buttes Area Council #647
P.O. Box 1351,14th & H Sts
Marysville, Ca. 95901

Boy Scouts of America
California Inland Empire
Council #45
300 E. Highland Avenue
Redlands,Ca.  92373

Boy Scouts of America
Marin COuncil   #35
225 West End Avenue
San Rafael, Ca. 94901

Boy Scoutsof America
Mount Diablo Council #23
1343 Locust Street
Walnut Creek,Ca. 94596

Boy Scouts of America
Yosmite Area Council #59
1324 Celeste Drive
Modesto, Ca. 95353

Boy Scouts of America
Golden Empire Council #47
P.O. Box 4946
Sacramento, Ca. 95825

Boy Scouts of America
Orange County Council #39
3811 South Bear Street
P.O. Box 5315
Santa Ana, Ca. 92704

Boy Scouts of America
Canal Zone Council# 801
Drawer D
Balboa

Boy Scouts of America
San Francisco Bay Area
Council #28
8480 Enterprise Way
Oakland, Ca. 94621

Boy Scouts of America
Monterey Bay Area Council
55 San Joaquin,     #25
Box 1967
Salinas, Ca. 93901

Boy Scouts of America
Mission Council #53
Box 3156,4000 Mocod Road
Santa Barbara,Ca.93105

Boy Scouts of America
Pikes Peak Council #60
525 E. Uintah
Colorado Springs,Co.80903

Boy Scouts of America
Stanford Area Council #31
1305 Middlefield Road
Palo Alto,Ca. 94301

Boy Scoutsof America
San Diego County Council
1207 Upas Street       #49
Box 33366
San Diego, Ca. 92103

Boy Scouts of America
Forty-Niner Council #52
548 E. Park St, Box 1017
Stockton,Ca . 95201

Boy Scouts of America
Denver Area Council #61
2901 W. 19th Street
Denver, Co.   80204

Boy Scouts of America
San Gabriel Valley Council
540.N.Rosemead Blvd  #40
Pasadena, Ca. 91107

Boy Scouts of America
Santa Clara County Council
2095 Park Avenue,    #55
San Jose, Ca. 95126

Boy Scouts of America
Silverado Area Council#38
400 Contra Costa,Box 392
Vallejo, Ca. 94590

Boy Scouts of America
Western Colorado COuncil
628 Rood Avenue       #64
Grand Junction,Co. 81501

Boy Scouts of America
Sonoma-Mendocino Council
840 Western Ave.    #41
Petaluma, Ca. 94952

Boy Scouts of America
Santa Lucia Area Council
1123 Mill Street     #56
San Luis Obispo,Ca.
                93401

Boy Scouts of America
Great Western Council #51
14955 Saticoy,Box 3198
Van Nuys, Ca. 91407

BOy Scouts of America
Longs Peak Council #62
Box 1166, 2215 23rd Ave
Greeley, Co.  80631

Subject to Protective Order - Confidential

Boy Scouts of America
Rocky Mountain Council
411 S. Pueblo Blvd., #63
PO Box 3292
Pueblo, Co. 81005

Boy Scouts of America
Fairfield County Council
362 Main Ave.        #68
Norwalk, Ct. 06851

Boy Scouts of America
Central Florida Council
P.O.Box6084-C        #83
1215 Nebraska Avenue
Orlando Fla. 32803

Boy Scouts of America
Chehaw Council #97
930 W. Oglethorpe Blvd.
Albany, Ga. 31701

Boy Scouts of America
Housatonic Council #69
166 Hawkins Street
Derby, Ct. 06418

Boy Scouts of America
Del-Mar-Va Council #81
8th &Washington Sts.
Wilmington, De. 19801

Boy Scouts of America
Gulf Coast Council #773
P.O. Box 2548
Pensacola, Fla  32503

Boy Scouts of America
Northeast Georgia Council
Box 5078        #101
Beechwood Shp.Ctr.
Athens, Ga.    30604

Boy Scouts of America
Greenwich Council #67
157 Mason Street
Greenwich, Ct. 06830

Boy Scouts of America
National Capital Area
Council #82
9190 Wisconsin Avenue
Washington, D.C. 20014

Boy Scouts of America
Sunny Land Council #724
P.O. Box 3858
Sarasota, Fla  33578

Boy Scouts of America
Atlanta Area Council #92
194 Luckie St, N.W.
Atlanta, Ga. 30303

Boy Scouts of America
Quinnipiac COuncil #74
1861 Whitney Avenue
Hamden, Ct.   06517

Boy Scouts of America
Far East Council #803
APO San Francisco 96323

Boy Scouts of America
Pinnellas Area Council#89
11046 Johnson Blvd.
Seminole, Fla. 33540

Boy Scouts of America
Georgia-Carolina Council
1252 Gordon Park Rd. (#93)
Augusta, Ga.   30901

Boy Scouts of America
Long Rivers Council #66
70 Forest Street
Hartford, Ct. 06105

Boy Scouts of America
Southwest Florida Council
Box 7318,        #88
8600 S. Tamiami Tr.
Fort Myers,Fla. 33901

Boy Scouts of America
Suwannee River Area
Council #664
2729 W. Pensacola,Box 306
Tallhassee, Fla.  32304

Boy Scouts of America
Chattahoochee Council #91
P.O. Box 5425
Columbus, Ga. 31906

Boy Scouts of America
Central Connecticut Council
0 Colony Street,    #71
Meriden, Ct. 06450

Boy Scouts of America
North Florida Council #87
521 S. Edgewood Avenue
Jacksonville, Fla.32205

Boy Scouts of America
Gulf Ridge Council #86
4410 Boy Scout Blvd.
P.O. Box 24077
Tampa, Fla.  33622

Boy Scouts of America
Flint River Council #95
P.O. Box 173;115 N.6th St
Griffin, Ga.  30223

Boy Scouts of America
Indian Trails Council #73
0 Brainard Street
New London, Ct. 06320

Boy Scouts of America
South Florida Council #84
2960 Coral Way
Miami, Fla. 33145

Boy Scouts of America
Gulf Stream Council #85
2936 Austrailian Ave,N.
W. Palm Beach,Fla. 33407

Boy Scouts of America
Central Georgia Council#96
2465 Hillcrest Avenue
Macon, Ga.   31204

B

Subject to Protective Order - Confidential

Boy Scouts of America
Northwest Georgia
Council #100;P.O.Box 1422
U.S. Highway 27, North
Rome, Ga.    30161

Boy Scouts of America
Ore-Ida Council #106
110 Scout Lane
Boise, Id.    83702

Boy Scouts of America
Okaw Valley Council #116
7623 W. Main Street
Belleville, Ill. 62223

Boy Scouts of America
Cahokia Mound Council#128
2016 Delmar
Granite City, Ill.62040

Boy Scouts of America
Coastal Empire Council#99
7804 Abercorn Expressway
Savannah, Ga.    31406

Boy Scouts of America
Idaho Panhandle Council#110
601 Sherman Avenue
Coeur D'Alene, Id.83814

Boy Scouts of America
Arrowhead Council #117
44 Main Street
Champaign, Ill. 61820

Boy Scouts of America
Egyptian Council #120
803 East Herrin Street
Herrin, Ill. 61948

Boy Scouts of America
Alapaha Area Council #98
2200 North Patterson St.
Valdosta,Ga. 31602

Boy Scouts of America
Teton Peaks Council #107
574 4th Street
Idaho Falls, Id. 83401

Boy Scouts of America
Chicago Area Council #118
300 West Adams Street
Chicago, Ill. 60606

Boy Scouts of America
West Suburban Council#147
811 W. Hillgrove Avenue
La Grange, Ill. 60525

Boy Scouts of America
Okefenokee Area Council
P.O. Box 718          #758
Lyric Bldg.
Waycross, Ga. 31501

Boy Scouts of America
Lewis-Clark Council #108
1442 IdahoSt,P.O.Box 655
Lewiston, Id.  83501

Boy Scouts of America
Piankeshaw Council #739
214 North Vermilion St.
Danville, Ill. 61832

Boy Scouts of America
Thatcher Woods Area
Council #136
855 Madison Street
Oak Park, Ill. 60302

Boy Scouts of America
George H. Lanier Council
P.O. Box 392          #94
802 Third Avenue
West Point, Ga. 38133

Boy Scouts of America
Tendoy Area Council #109
851 N.Main-1st Level
Pocatello,Id. 83201

Boy Scouts of America
Lincoln Trails Council
205 S. Edward St.   #121
Decatur , Ill. 62525

Boy Scouts of America
Rainbow Council #702
R.F.D.1-Box 96
Morris, Ill. 60450

Boy Scouts of America
Aloha Council #104
Box 1100,42 Puiwa Road
Honolulu, Hi. 96817

Boy Scouts of America
Snake River Area Council
164 Main Ave, N.    (#111)
Twin Falls, Id.  83301

Boy Scouts of America
Prairie Trails Council
520 Bank of            #125
Galesburg Building
Galesburg, Ill. 61401

Boy Scouts of America
W.D. Boyce Council #138
614 N.E. Madison
Peoria, Ill. 61602

Boy Scouts of America
Maui County Council #102
200 Liholihi
Wailuku Maui, Hi. 96793

Boy Scouts of America
Northwest Suburban Council
1300 E. Rand Road     #751
ArlingtonHts.,Ill. 60004

Boy Scouts of America
Northeast Illinois Council
24 Vernon Avenue
Glencoe, Ill. 60022

Boy Scouts of America
Saukee Area Council #141
2336 Oak Street
Quincy, Ill. 62301

Subject to Protective Order - Confidential

Boy Scouts of America
Blackhawk Area 660
PO Box 4085-1800 7th Ave.
Rockford, IL 61110

Boy Scouts of America
Two Rivers 127
415 N 2nd Street
St. Charles, IL 60174

Boy Scouts of America
Abraham Lincoln   144
Fairhills Mall, Monroe at
  Chatham Road
Springfield, IL 62703

Boy Scouts of America
DuPage Area  148
ON 712 Gary Ave.
Wheaton, IL 60187

Boy Scouts of America
Piasa Bird 112
1055 Harrison Street
Wood River, IL 62095

Boy Scouts of America
Hoosier Trails 145
2307 E Second
Bloomington, IN 47401

Boy Scouts of America
Buffalo Trace 156
1050 Bayard Park Drive
PO Box 3245
Evansville, IN 47731

Boy Scouts of America
Anthony Wayne Area 157
3635 Portage Road
Fort Wayne, IN 46804

Boy Scouts of America
Crossroads of America 160
615 N Alabama St., Rm.134
Indianapolis, IN 46204

Boy Scouts of America
Sagamore 162
211 S 3rd St.
Loganport, IN 46947

Boy Scouts of America
Calumet 152
8751 Calumet Ave., Box 3230
Munster, IN 46321

Boy Scouts of America
Geo. Rogers Clark Area 143
2030 E Spring St.
New Albany, IN 47150

Boy Scouts of America
Northern Indiana 165
1433 North Side Blvd.
South Bend, IN 46615

Boy Scouts of America
Wabash Valley  166
501 South 25th Street
Terre Haute, IN 47803

Boy Scouts of America
Illowa 173
2435 Kimberly Road
Bettendorf, IA 52722

Boy Scouts of America
Southeast Iowa 171
307 S Main Street
Burlington, IA 52601

Boy Scouts of America
Hawkeye Area 172
320 Collins Road, NE
Cedar Rapids, IA 52402

Boy Scouts of America
Mid-Iowa 177
4127 University Ave. Box 1040
Des Moines, IA 50311

Boy Scouts of America
Northeast Iowa 178
2300 John F. Kennedy Blvd.
Dubuque, IA 52001

Boy Scouts of America
Prairie Gold Area 179
103 Pearl Street
Sioux City, IA 51101

Boy Scouts of America
Winnebago 173
2530 University Ave., Box 690
Waterloo, IA 50704

Boy Scouts of America
Sante Fe Trail 194
304 Main St.
Garden City, KS 67846

Boy Scouts of America
Kanza 190
PO Box 1766
Hutchinson, KS 67501

Boy Scouts of America
Heart of America 307
2 Gateway Ctr. Ste.1017
Kansas City, KS 66101

Boy Scouts of America
Coronado Area 192
Box 912, 129A S. 7th
Salina, KS 67402

Boy Scouts of America
Jayhawk Area 197
215 E 8th St., Room 222
Topeka, KS 66603

Boy Scouts of America
Quivira 198
111 West Douglas
Wichita, KS 67202

Boy Scouts of America
Blue Grass 204
975 Liberty Rd.
Lexington, KY 40505

Subject to Protective Order Confidential

Boy Scouts of America
Old Kentucky Home 205
Box 21068, Standiford Sta.
Louisville, KY 40221

Boy Scouts of America
Audubon 200
PO Box 280, 330 Allen St.
Owensboro, KY 42302

Boy Scouts of America
Four Rivers 207
532 North 32 - Box 1313
Paducah, KY 42001

Boy Scouts of America
Lonesome Pine 203
Main St., Box 110
Pikeville, KY 41501

Boy Scouts of America
Attakapas 208
1304 Murray Street
Alexandria, LA 71303

Boy Scouts of America
Istrouma Area 211
1000 Scenic Highway
Baton Rouge, LA 70802

Boy Scouts of America
Evangeline Area 212
PO Box 52153 -OCS
Lafayette, LA 70501

Boy Scouts of America
Calcasieu Area 209
304 South Ryan St.
Lake Charles, LA 70601

Boy Scouts of America
New Orleans Area 214
2047 Airline Hwy. Box 1146
Metairie, LA 70004

Boy Scouts of America
Ouachita Valley 213
1011 N 11th St. Box 2405
Monroe, LA 71201

Boy Scouts of America
Norwela Area 215
3500 Beverly Place, Box 4341
Shreveport, LA 71104

Boy Scouts of America
Katahdin Area 216
619 Hammond Street
Bangor, ME 04401

Boy Scouts of America
Pine Tree 218
125 Auburn Street
Portland, ME 04103

Boy Scouts of America
Baltimore Area 220
701 Wyman Park Dr.
Baltimore, MD 21211

Boy Scouts of America
Potomac 757
PO Box 212, Rt. 220, South
Cumberland, MD 21502

Boy Scouts of America
Mason-Dixon 221
Box 2133
Hagerstown, MD 21740

Boy Scouts of America
Boston 227
891 Centre Street
Boston, MA 02130

Boy Scouts of America
Old Colony 249
54 Main Street
Brockton, MA 02401

Boy Scouts of America
Cambridge 229
140 Mount Auburn St.
Cambridge, MA 02138

Boy Scouts of America
Great Trails 243
574 Main Street
Dalton, MA 01226

Boy Scouts of America
Algonquin 241
34 De Loss Street
Framingham, MA 01701

Boy Scouts of America
Monadnock 232
70 Marquette Street
Gardner, MA 01440

Boy Scouts of America
Lone Tree 749
36 Amesbury Road
Haverhill, MA 01830

Boy Scouts of America
Cape Cod 224
892 Iyanough Road
Hyannis, MA 01523

Boy Scouts of America
Nashua Valley 230
Rt. 2, Box 128, Lunenberg Rd
Lancaster, MA 01523

Boy Scouts of America
North Essex 712
430 N Canal Street
Lawrence, MA 01840

Boy Scouts of America
Greater Lowell 238
49 Kirk Street
Lowell, MA 01850

Boy Scouts of America
Moby Dick 245
39 Grove Street
New Bedford, MA 02740

Boy Scouts of America
North Bay 236
Scouting Way
Peabody, MA 01960

Boy Scouts of America
Minuteman 240
245 North Street
Stoneham, MA 02180

Boy Scouts of America
Annawon 225
219 Wintrop Street
Taunton, MA 02780

Boy Scouts of America
Norumbega 246
2044 Beacon Street,
Waban, MA 02168

Subject to Protective Order — Confidential

Boy Scouts of America
Pioneer Valley 234
1639 Riverdale Road
W. Springfield, MA 01089

Boy Scouts of America
Mohegan 254
75A Grove Street
Worcester, MA 01605

Boy Scouts of America
Wolverine 255
2163 West Stadium Road
Ann Arbor, MI 48103

Boy Scouts of America
Lake Huron Area 265
5001 S Eleven Mile Road
Auburn, MI 48611

Boy Scouts of America
Detroit Area 262
1776 West Warren Avenue
Detroit, MI 48208

Boy Scouts of America
Tall Pine 264
202 East Boulevard Dr.
Flint, MI 48502

Boy Scouts of America
West Michigan Shores 266
1935 Monroe Avenue, NW
Grand Rapids, MI 49505

Boy Scouts of America
Land O' Lakes 269
729 W Michigan Avenue
Jackson, MI 49201

Boy Scouts of America
Southwest Michigan 270
1919 Stearns
Kalamazoo, MI 49001

Boy Scouts of America
Chief Okemos 271
232 N Verlinden
Lansing, MI 48914

Boy Scouts of America
Hiawathaland 261
5036 US 41 South
Marquette, MI 49855

Boy Scouts of America
Clinton Valley 276
4479 Pontiac Lake Road
Pontiac, MI 48054

Boy Scouts of America
Blue Water 277
1428 Military Street, Bx. 37
Port Huron, MI 48060

Boy Scouts of America
Scenic Trails 274
2308 US 31 North
Traverse City, MI 49684

Boy Scouts of America
Lake Superior 286
Ste. 01-Ordean Bldg.
424 West Superior St.
Duluth, MN 55802

Boy Scouts of America
Headwater Area 290
2031-2nd Ave., E, Box 570
Hibbing, MN

Boy Scouts of America
Twin Valley 283
422 Park Lane, PO Box 22
Mankato, MN 56001

Boy Scouts of America
Viking 289
5300 Glenwood Avenue
Minneapolis, MN 55422

Boy Scouts of America
Gamehaven 299
1124 11-1/2 St., SE
Rochester, MN 55902

Boy Scouts of America
Central Minnesota 296
1701 North 9th Avenue
St. Cloud, MN 56301

Boy Scouts of America
Indianhead 295
393 Marshall Avenue
St. Paul, MN 55102

Boy Scouts of America
Delta Area 300

Boy Scouts of America
Delta Area 300
Rt. 3, Box 1, 1010 Lee Drive
Clarksdale, MS 38614

Boy Scouts of America
Pushmataha Area 691
420 31st Ave., N, PO Box 174
Columbus, MS 39701

Boy Scouts of America
Pine Burr Area 304
801 North 26th Avenue
Hattiesburg, MS 39401

Boy Scouts of America
Andrew Jackson 303
855 Riverside Drive
Jackson, MS 39202

Boy Scouts of America
Choctaw Area 302
214 Shields Bldg., Box 573
Meridian, MS 39301

Boy Scouts of America
Yocona 748
Box 701, 411 S Spring St.
Tupelo, MS 38801

Subject to Protective Order - Confidential

Boy Scouts of America
Southeast Missouri
Council #305
400 Broadway
Cape Giradeau, Mo. 63701

Boy Scouts of America
Cornhusker Council #324
215 S. 15th Rm.412
Lincoln, Neb. 68508

Boy Scouts of America
Bayonne Council #332
41 East 25th Street
BaYonne, N.J. 07002

~~Boy Scouts~~

Boy Scouts of America
Great Rivers Council #653
7 Hitt St, P.O. Box 736
Columbia, Mo. 65201

Boy Scouts of America
Tri Trails Council #323
235 N. Jeffers,P.O.Box 615
North Platts,Neb.69101

Boy Scouts of America
Morris-Sussex Area Council
RT 10,RD#L,Box 648 (#343)
Dover, N.J. 07801

Boy Scouts of America
Watchung Area Council #35
905 Watchung Avenue
Plainfield, N.J. 07060

Boy Scouts of America
Mo-Kan Area Council #306
Box 118
Joplin, Mo. 64801

Boy Scouts of America
Mid-America Council #326
519 South 15th St.
Omaha, Neb. 68102

Boy Scouts of America
Thomas A. Edison Council
2757 Woodbridge, #352
P.O. Box L
Edison, N.J. 08817

BOy Scouts of America
Ridgewood & Glen Rock
Council #359
17 W. Ridgewood Avenue
Ridgewood, N.J.07450

Boy Scouts of America
Pony Express Council #311
City Hall
St. Joseph, Mo. 64501

Boy Scouts of America
Boulder Dam Area Council
1135 University Rd. #328
Las Vegas, Nev. 89101

Boy Scouts of America
Union Council #338
601 Union Avenue
Elizabeth, N.J. 07208

Boy Scouts of America
Bergen Council #350
1060 Main Street
River Edge, N.J. 07661

Boy Scouts of America
Ozarks Council #308
404 E. Walnut Street
Box 1458
Springfield, Mo.65805

Boy Scouts of America
Nevada Area Council #329
P.O. Box 2310
240 Court Street
Reno, Nevada 89505

~~Boy Scouts of America~~
~~Eagle Rock Council #346~~
~~60 S. Fullerton Avenue~~
~~Montclair, N.J. 07042~~

Boy Scouts of America
Tamarack Council #333
18 Donaldson Avenue
Rutherford, N.J.07070

Boy Scouts of AMerica
Montana Council #315
820 17th Ave, S.
Great Falls, Mt. 59403

Boy Scouts of America
Daniel Webster Council#330
913 Elm Street
Manchester, New Hampshire
03101

Boy Scouts of America
Ocean County Council #341
1171 Indian Hill Road
Toms River,N.J. 08753

Boy Scouts of America
Overland Trails Council
807 N. Boggs, #322
Box 1361
Grand Island, Neb. 68801

Boy Scouts of America
Atlantic Area Council #331
1495 Albany Avenue
Atlantic City,NJ 08401

Boy Scouts of America
Monmouth Council #347
Deal & Monmouth Rds.
Oakhurst,N.J. 07755

Boy Scouts of America
George Washington Council
2620 Brunswick Pike #362
Trenton, N.J. 08638

Boy Scout

Boy

Subject to Protective Order of Confidentiality

Boy Scouts of America
Hudson-Hamilton Council
503 23rd St.    #348
Union City, N.J. 07087

Boy Scouts of America
Cayuga County Council #366
Memorial City Hall Rm 3
Auburn, N.Y. 13021

Boy Scouts of America
Sullivan Trail Council
Timber Lane    #375
Elmira, N.Y. 14904

Boy Scouts of America
Rip Van Winkle Council
110 Prince St.    #405
Kingston, N.Y.12401

Boy Scouts of America
Southern New Jersey
Council #334
1043 S. East Avenue
Vineland, N.J. 08360

Boy Scouts of America
Saratoga County Council 684
204 Malta Avenue
Ballston Spa, N.Y.12020

BOy Scouts of America
Allegheny Highlands
Council #382
50 Hough Hill Road
Falconer,N.Y.14733

BOy Scouts of America
Lewiston Trail Council
7124 Rochester Rd.    #385
Lockport, N.Y. 14094

Boy Scouts of America
Passaic Valley Council
611 Hamburg Tpke.    #353
Wayne, N.J. 07470

Boy Scouts of America
Genesee Council #367
17 Massee Place
Batavia, N.Y. 14020

Boy Scouts of America
Finger Lakes Council #391
388 South Main St.
Geneva, N.Y. 14456

Boy Scouts of America
Governor Clinton Council
257 Osborn Rd,    #364
Loundonville, N.Y.12211

Boy Scouts  of America
Camden County Council
175 Richey Ave.,    #335
W. Collingswood,N.J.
                08107

Boy Scouts of America
Steuben Area Council #402
49 Liberty St, Box 807
Bath, N.Y. 14810

Boy Scouts of America
Mohican Council #378
15 Pearl Street
Glens Falls, N.Y. 12801

Boy Scouts of America
Suffolk County Council
7 Scouting Blvd.    #404
Medford, N.Y. 11763

Boy Scouts of America
Burlington County
Council #690
34 Pinafore Lane
Willingboro,N.J.08046

Boy Scouts of America
Susquenango Council #368
Box 66,Southview Station
Binghampton,N.Y. 13903

BOy Scouts of America
Sir William Johnson
Council, #377
38 Grand Street
Gloversville,N.Y. 12079

Boy Scouts of America
Hudson-Delaware Council
21 Orchard St.    #392
Middletown,N.Y. 10940

Boy Scouts of America
Kit Carson Council #412
110 Richmond,S.E.
Albuquerque,N.M.87106

Boy Scouts of America
Greater Niagara Frontier
Council,380
334 Delaware Ave.
Buffalo, N.Y. 14202

Boy Scouts of America
General Herkimer
427 N. Main St.
Herkimer, N.Y. 13350

Boy Scouts of America
Greater N.Y. Council 640
25 West 43rd Street
New York, N.Y. 10036

Boy Scouts of America
Conquistador COuncil #413
2603 N.Aspen,PO Box 1534
Roswell, N.M. 88201

Boy Scouts of America
St. Lawrence Council #403
8 Buck St., PO Box 425
Canton, N.Y. 13617

Boy Scouts of America
Dutchess County Council
East Park Rd,    #374
P.O. Box 1374
Hyde Park, N.Y. 12538

Boy Scouts of America
Otschoedela Council #393
RD#3, Southside Box 507
Oneonta, N.Y. 13820

Subject to Protective Order - Confidential

Boy Scouts of America
Adironack Council #394
155 Boynton Ave.
Plattsburgh, N.Y.12901

Boy Scouts of America
Upper Mohawk Council #406
1401 Genesee St.
Utica, N.Y.13501

Boy Scouts of America
Mecklenburg County
Council #415
1410 East 7th St.
Charlotte, N.C. 28204

Boy Scouts of America
East Carolina Council 426
112 South Goldsboro Street
Kinston,N.C. 28901

Boy Scouts of America
Otetiana Council #397
474 East Avenue
Rochester, N.Y.14607

Boy Scouts of America
Jefferson-Lewis Council
R4-6842 Leray St,    #408
Watertown, N.Y. 13601

Boy Scouts of America
Piedmont Council #420
P.O. Box 1059
Gastonia, N.C. 28053

Boy Scouts of America
Old Hickory Council 427
610 Coliseum Dr
Winston-Salem,NC 27106

Boy Scouts of America
Iroquois Council #395
6703 Golf Course Rd.
Rome, N.Y. 13440

Boy Scouts of America
Westchester-Putnam
Council #388
1111 Westchester Avenue
White Plains, N.Y. 10604

Boy Scouts of America
Tuscarora Council #424
Box 1436 Community Bdg.
Goldsboro, N.C. 27530

Boy Scouts of America
Northern Lights COuncil
301 S. 7th St.    #429
Fargo, N.D.    58102

Boy Scouts of America
Nassau County Council
Shelter Rock Rd.   #386
Roslyn, N.Y. 11576

Boy Scouts of America
Baden-Powell Council #381
170 North St.
Dryden, N.Y. 130532

Boy Scouts of America
General Green Council
P.O. Box 449    $418
Greensboro, N.C. 27402

Boy Scouts of America
Great Trail Council #433
153 Fir Hill
Akron, Ohio 44304

Boy Scouts of America
Schenectady County
Council #399
2 Union Street
Schenectady, N.Y.12305

Boy Scouts of America
Central North Carolina
Council #416 ,
2500 Charlotte Hwy,
Albemarle, N.C. 28001

Boy Scouts of America
Uwharrie Council E419
1908 S. Main St,Box 1134
High POint, N.C.27261

Boy Scouts of America
Buckeye Council #436
5136 Tuscarawas St. W.
Canton, Ohio 44708

Boy Scouts of America
Rockland County Council
Frank Road    #683
Stony Point, N.Y.10980

Boy Scouts of America
Daniel Boone Council #414
P.O. Box 8125,
64 W.T.Weaver Blvd.
Asheville, N.C. 28804

Boy Scouts of America
Occoneechee Council #421
1005 Wade Ave,Box 12377
Raleigh, N.C. 27605

Boy Scouts of America
Chief Logan Council #464
178 E. Main
Chillicothe , Oh. 45601

Boy Scouts of America
Hiawatha  Council #373
600 West Genesee St.
Syracuse, N.Y. 13204

Boy Scouts of America
Cherokee Council  #417
869 S. Main St,Box 620
Burlington,N.C.27215

Boy Scouts of America
Cape Fear Area Council425
Box 1626,102 Orange St.
Wilmington, N.C. 28403

Boy Scouts of America
Dan Beard Council #438
3007 Vernon Place
Cincinnati,Ohio 45219

Boy Scouts of America
Greater Cleveland Council
Woodland & 22nd Sts. 440
Cleveland, Ohio 44115

Boy Scouts of America
Harding Area Council #443
217 W. Church Street
Marion, Ohio 43302

Boy Scouts of America
Fort Steuben Area Council
516 Sinclair Bldg. #459
Steubenville, Ohio 43952

Boy Scouts of America
Great Salt Plains Council
315 W. Cherokee    #474
Box 3146
Enid, Ok.   73701

Boy Scouts of America
Central Ohio Council #441
1428 E. Broad St.
Columbus, Ohio 43205

Boy Scouts of America
Mound Builders Area
Council #454
101 N. Broad St.Drawer C
Middletown, Ohio 45042

Boy Scouts of America
Toledo Area Council #460
Box 337,1 Stranahan Sq.
Toledo, Ohio  43601

Boy Scouts of America
Black Beaver Council 471
P.O. Box 165,620 Cache Rd
Lawton, Ok.  73502

Boy Scouts of America
Miami Valley Council 444
Rm 230,184 Salem Avenue
Dayton, Ohio 45406

Boy Scouts of America
Licking County Council 451
21 S. Fist St. Room 300
Newark, Ohio 43055

Boy Scouts of America
Western Reserve Council
1662 Mahoning Ave.N.W.
Warren, Ohio 44(8)

Boy Scouts of America
Eastern Oklahoma Council
309 North K St.  E478
Muskogee, Ok. 74401

Boy Scouts of America
Put-Han-Sen Area Council
2100 Broad Avenue   #449
Findlay, Ohio 45840

Boy Scouts of America
Northeast Ohio Council 463
126 East Erie Street
Painesville, Ohio 44077

Boy Scouts of America
Mahoning Valley Council
3691 LeHarps Rd.  #466
Youngstown, Ohio 44515

Boy Scouts of America
Last Frontier Council 48
Box 75339,3000 NW 10th
Okla.City,Ok.  73107

Boy Scouts of America
Shawnee Council #452
2375 Allentown Rd.
Lima, Ohio 45805

Boy Scouts of America
Scioto Area Council 457
741 Sixth St,2nd Fl.
P.O. Box 1305
Portsmouth, Ohio 45662

Boy Scouts of America
Muskingum Valley Council
734 Moorehead    #467
Box 2036
Zanesville, Ohio 43701

Boy Scouts of America
Will Rogers Council 473
Box 1297,210 E.Chestnut
Ponca City,Ok.74601

Boy Scouts of America
Columbiana Council #455
24 North Park Avenue
Lisbon, Ohio 44432

Boy Scouts of America
Firelands Area Council
Box 414,416 Columbus (458)
2nd Floor
Sandusky, Ohio 44870

Boy Scouts of America
Arbuckle Area Council
Box 816,27 BSt,S.W. #468
Ardmore, Ok.  73401

Boy Scouts of America
Indian Nations Council
P.O. Box 7130     #488
Tulsa, Ok.   74105

Boy Scouts of America
Johnny Appleseed Area
Council #453
445 W. Longview Ave
Mansfield, Ohio 44905

Boy Scouts of America
Tecumseh Council #439
326 S. Thompson Avenue
Springfield,Ohio 45506

Boy Scouts of America
Cherokee Area Council
P.O. Drawer U    #469
Bartlesville, Ok. 74003

Boy Scouts of America
Oregon Trail Council 697
2525 Centennial Blvd.
Eugene,Ore.97401

Subject to Protective Order - Confidential

Boy Scouts of America
Modoc Area COuncil #494
1819 Manzanita St.
Klamath Falls, Ore.97601

Boy Scouts of America
Bucktail Council #509
209 First St.
DuBois, Pa. 15801

Boy Scouts of America
East Valley Area Council
510 Tenth Avenue      #510
Munhall, Pa. 15120

Boy Scouts of America
Valley Forge council 507
P.O. Box 806
Valley Forge, Pa. 19482

Boy Scouts of America
Crater Lake Council 491
3039 Hanley Rd.
Central Point, Ore.97501

Boy Scouts of America
French Creek Council #532
110 West 10th Street
Erie, Pa. 16501

Boy Scouts of America
Philadelphia Council #525
Pkwy.22nd & Winter Sts.
Philadelphia,Pa.19103

Boy Scouts of America
Chief Cornplanter
318 Fourth Avenue
Warren, Pa. 16365

Boy Scouts of America
Columbia Pacific Council
2145 S.E. Front Ave. #492
Portland, Ore. 97201

Boy Scouts of America
Westmoreland-Fayette
Council #512
331 S. Main Street
Greensburg, Pa. 15601

Boy Scouts of America
Allegheny Trails Council
Flag Plaza          #527
Pittsburgh, Pa. 15219

Boy Scouts of America
Chester County Council
504 S. Concord Rd.    #539
West Chester, Pa. 19380

Boy Scouts of America
Cascade Area Council #493
710 Bellevie St. S.E.
Salem, Ore.    97301

Boy Scouts of America
Keystone Area Council 515
219 A, S. Front St.
Harrisburg, Pa. 17104

Boy Scouts of America
Penn Mountains Council
32 W. Main Street    #522
Plymouth, Pa. 18651

Boy Scouts of America
Susquehanna Council #533
815 Northway Rd.
Williamsport, Pa. 17701

Boy Scouts of America
Columbia-Montour Council
212 West. 5thSt.    #504
Bloomsburg,Pa. 17815

Boy Scouts of America
Lancaster-Lebanon Council
630 Janet Avenue    #524
Lancaster, Pa. 17601

Boy Scouts of America
Hawk Mountain Council 528
4903 Pottsville Pike
Reading, Pa. 19605

Boy Scouts of America
Penn's Woods Council #508
501 15th St.
Windber, Pa. 15963

Boy Scouts of America
Moraine Trails Council
830 Morton Ave,      #500
Butler, Pa.  16001

Boy Scouts of America
Minsi Trails Council #502
Box 2424
Lehigh Valley,Pa.18001

Boy Scouts of America
Forest Lakes Council 501
615 Jefferson Avenue
Scranton, Pa. 18510

Boy Scouts of America
York Adams Area Council
800 East King St.    #544
York, Pa. 17403

Boy Scouts of America
Bucks County Council 777
225 Green St.
Doylestown, Pa. 18901

Boy Scouts of America
Juniata Valley Council 497
Bratton Ave,& W 5th St.
Lewiston, Pa. 17044

Boy Scouts of America
General Sullivan COuncil
RD1,P.O.Box 110    (#779)
Towanda, Pa. 18848

Boy Scouts of America
Puerto Rico Council #661
Box 20894-65 Inf.Shop Ctr
Rio Piedras,P.R. 00928

Subject to Protective Order - Confidential

Boy Scouts of America
Narragansett Council 546
175 Broad Street
Providence,RI 02903

Boy Scouts of America
Black Hills Area Council
919 Main St.        #695
P.O. Box 407
Rapid City,S.D.57701

Boy Scouts of America
Middle Tennesee Council
#560
318 Murfreesboro Rd.
Nashville, Tn. 37210

Boy Scouts of America
St.Louis Area COuncil
4568 W.Pine St.    312
St. Louis, Mo. 63108

Boy Scouts of America
Coastal Carolina Council
207 East Bay St,    #550
Charleston, S.C. 29401

Boy Scouts of America
Sioux Council #733
Box 837,305 W.14th St
Sioux Falls, S.D. 57101

Boy Scouts of America
Central S.Carolina Council
1825 Gadsen St.Box 144
Columbia, S.C. 29202

Boy Scouts of America
Cherokee Area Council 556
P.O. Box 21226
6321 E. Brainerd Rd.
Chattanooga, Tn. 37421

Boy Scouts of America
Pee Dee Area Council 552
P.O. Box 268,251 Lawson
Florence, S.C. 29501

Boy Scouts of America
West Tenn. Area Council
1995 Hollywood Dr.    #559
Jackson, Tn. 38301

Boy Scouts of America
Blue Ridge Council #551
P.O. Box 6628
Greenville, S.C. 29606

Boy Scouts of America
Sequoyah Council #713
2107 Bartlett St.
P.O. Box 3010
Johnson City, Tn. 37601

Boy Scouts of America
Palmetto Area Council 549
P.O. Box 6249
Spartanburg,S.C. 29301

Boy Scouts of America
Great Smoky Mtn.Council
6440 Papermill Rd.   #557
Knoxville, Tn. 37919

Boy Scouts of America
Pheasant Council #693
317 Iowa Ave,S.E.
P.O. Box 117
Huron, S.D. 57350

Boy Scouts of America
Chickasaw Council #558
171 South Hollywood St.
Memphis, Tn. 38112

Subject to Protective Order – Confidential

Boy Scouts of America
Chisholm Trail 561
3233 S Willis
Abilene, TX 79605

Boy Scouts of America
Llano Estacado 562
2808 Canyon Dr. Box 7606
Amarillo, TX 79109

Boy Scouts of America
Capitol Area 564
7540 Ed Bluestein Blvd.
Austin, TX 78723

Boy Scouts of America
Three Rivers 578
PO Box 631
Beaumont, TX 77704

Boy Scouts of America
Comanche Trail 479
Box 1086, 507 B Center Ave.
Brownwood, TX 76801

Boy Scouts of America
Gulf Coast 577
Box 3158 - 1444 Baldwin
Corpus Christi, TX 78404

Boy Scouts of America
Circle Ten 571
1922 Anson Road
Dallas, TX 75235

Boy Scouts of America
Yucca 573
1326 East Yandell Street
El Paso, TX 79902

Boy Scouts of America
Longhorn 582
4917 Briarhaven Road
Fort Worth, TX 76109

Boy Scouts of America
Bay Area 574
3020-53rd St. P.O. Drawer M
Galveston, TX 77552

Boy Scouts of America
Rio Grande 775
Box 2424
Harlingen, TX 78551

Boy Scouts of America
Sam Houston Area 576
1911 Bagby St.
Houston, TX 77002

Boy Scouts of America
South Rains Area 694
30 Briercroft, Box 3055
Lubbock, TX 79410

Boy Scouts of America
Buffalo Trail 567
Box 1508 - 111 North D Street
Midland, TX 79701

Boy Scouts of America
Adobe Walls 569
P. O. Box 2479
Pampa, TX 79066

Boy Scouts of America
NeTseO 580
PO Box 995
Paris, TX 75460

Boy Scouts of America
Concho Valley 741
104 Park Drive, Box 1584
San Angelo, TX 76901

Boy Scouts of America
Alamo Area 583
2226 NW Military Drive
San Antonio, TX 78213

Boy Scouts of America
Texoma Valley 566
202 S Sam Rayburn Exp.
Box 1203
Sherman, TX 75091

Boy Scouts of America
Caddo Area 584
Box 5807 - 24 Lynwood Drive
Texarkana, TX 75501

Boy Scouts of America
East Texas Area 585
1331 E Fifth Street
Tyler, TX 75701

Boy Scouts of America
Heart O'Texas 662
300 Lake Air Drive
Waco, TX 76710

Boy Scouts of America
Northwest Texas 587
1901 Tenth Street, Box 234
Wichita Falls, TX 76301

Boy Scouts of America
Transatlantic Council 802
APO New York 09102

Boy Scouts of America
Cache Valley 588
199 Pioneer Ave, Box 500
Logan, UT 84321

Boy Scouts of America
Lake Bonneville 589
1200 E 5400 So.
Ogden, UT 84403

Boy Scouts of America
Utah Nat'l Parks 591
PO Box 106, 250 W 5 N
Provo, UT 84601

Boy Scouts of America
Great Salt Lake 590
525 Foothill Drive
Salt Lake City, UT 84113

Boy Scouts of America
Green Mountain 592
50 Pearl Street
Essex Junction, VT 05452

Subject to Protective Order    Confidential

Boy Scouts of America
Virgin Islands 410
Box 2175, Charlotte Amali
St. Thomas, VI 00801

Boy Scouts of America
Peninsula 595
PO Box 6340
Newport News, VA 23606

Boy Scouts of America
Tidewater 596
1810 Monticello Avenue
Norfolk, VA 23517

Boy Scouts of America
Robert E. Lee 602
900 Westover Road
Richmond, VA 23220

Boy Scouts of America
Blue Ridge Mountains 599
116 B West Kirk Avenue
Roanoke, VA 24011

Boy Scouts of America
Stonewall Jackson Area 763
633 Greenville Avenue
Staunton, VA 24401

Boy Scouts of America
Old Dominion Area 601
1216 Holland Road
Suffolk, VA 23434

Boy Scouts of America
Shenandoah Area 598
PO Box 892, 231 Wolfe St.
Winchester, VA 22601

Boy Scouts of America
Mt. Baker Area 603
3313 Meridian
Bellingham, WA 98225

Boy Scouts of America
Evergreen Area 606
1615 1/2 Hewitt
Everett, WA 98201

Boy Scouts of America
Twin Harbors Area 607
3133 Sumner Avenue
Hoquiam, WA 98507

Boy Scouts of America
Tumwater Area 737
PO Box 1308, 5737 Linderson
    Way
Olympia, WA 98507

Boy Scouts of America
Chief Seattle 609
3120 Rainier Avenue
Seattle, WA 98144

Boy Scouts of America
Inland Empire 611
North 1017 Washington St.
Spokane, WA 99201

Boy Scouts of America
Mt. Rainier 612
1722 South Union Avenue
Tacoma, WA 98405

Boy Scouts of America
Blue Mountain 604
33 S Palouse, PO Box 1553
Walla Walla, WA 99362

Boy Scouts of America
N. Central Washington 613
County Annex Building
Wenatchee, WA 98801

Boy Scouts of America
Ft. Simcoe Area 614
4 North 16th Avenue
Yakima, WA 98901

Subject to Protective Order / Confidential

Boy Scouts of America
Appalachian Council 707
Box 1498,131 Monroe St.
Bluefield, W.Va.24701

Boy Scouts of America
National Trail Council 619
P.O. Box 6186
Wheeling, W. Va. 26003

Boy Scouts of America
Southeast Wisconsin
Council #634
2319 Northwestern Avenue
Racine, Wis.  53404

Boy Scouts of America
Buckskin Council #617
1319 Quarrier St.
Charleston,W.Va.25301

Boy Scouts of America
Sinnissippi Council 626
1104 White Avenue
Beloit, Wis. 53511

Boy Scouts of America
Potawatomi Area Council
24498 Bluemond Rd.   #651
Waukesha, Wis. 63186

Boy Scouts of America
Central W. Virginia
Council #616
227 S. 3rd Street
Clarksburg, W.VA.26301

Boy Scouts of America
Chippewa Valley Council637
710 S. Hastings Way
Eau Claire,Wis. 54701

Boy Scouts of America
Samoset Council #627
210 Washington St.
Wausau, Wi. 54401

Boy Scouts of America
Mountaineer Area Council
406 Fairmont Ave.    #615
Box 388
Fairmont, West Va 26555

Boy Scouts of America
Gateway Area Council  624
2600 Quarry Road
La Crosse, Wis. 54601

Boy Scouts of America
Central Wyoming Council
3939 Mtn. Road      #638
Casper, Wy.  82601

Boy Scouts of America
Tri-State Area Council
1122 3rd Avenue    #672
Huntington, W.VA. 25701

Boy Scouts of America
Four Lakes Council 628
1930 Winnebago St.
Madison, Wis. 53704

Boy Scouts of America
Jim Bridger Council #639
114 Bank Court
Rock Springs, Wy. 82901

Boy Scouts of America
Chief Cornstalk Council
615 Stratton St.      #756
Box 1710
Logan, W. Va. 25601

Boy Scouts of America
Bay Lakes Council 635
Box 516,1650 Midway Road
Menasha, Wis. 54952



Boy Scouts of America
Kootaga Area Council 618
1340 Juliana St.
Parkersburg,W.Va. 26101

Boy Scouts of America
Milwaukee County
3716 W. Wisconsin Avenue
Milwaukee, Wis.53208

Boy Scouts of America
Essex Council #336
36 Park Place
Newark, N.J. 07102

Subject to Protective Order - Confidential

**Alexander & Alexander Inc.**
1185 Avenue of the Americas
New York, N.Y. 10036
Telephone 212 575-8000



March 31, 1978

TO:        SCOUT EXECUTIVES

THROUGH:   National Office
           Boy Scouts of America
           North Brunswick, N. J. 08902

SUBJECT:   Excess Liability Insurance

As promised, we are enclosing certified copies of the $2,000,000 Excess Liability policies which are provided by National at no cost to local councils.   The policies have been specially printed to cover the Boy Scouts of America.   The following should help clarify how the excess liability program works:

   1.   National Union Fire Insurance Company

      Coverage - Excess General and Automobile Liability (Buffer).

      Limit - $500,000 Combined Single Limit Excess of $500,000 Combined
               Single Limit.

      Policy Number - GE1157777

Due to the requirement of the umbrella carrier, this year as in the past, to maintain a $1,000,000 primary limit, we have obtained the above mentioned policy. This policy is excess of the $500,000 limit provided under the INA program for general liability and excess of council $500,000 limit for owned or leased (including Lincoln-Mercury program) automobile coverage.

   2.   First State Insurance Company

      Coverage - Umbrella Liability

      Limit - $1,500,000 each occurrence, subject to a $10,000 self-insured
               retention on each occurrence not covered by underlying
               insurance.

      Policy Number - 908954

Telex 420580 (International only)
TWX 710-581-2018
Cable ALEXALEX

Subject to Protective Order - Confidential

# UMBRELLA LIABILITY INSURANCE

Ins. Co.: National Union Fire Insurance Company
Policy No. BE 115 15 59                                          EXPIRED
Period: 1/1/76 to 1/1/77

Ins. Co.: National Union Fire Insurance Company
Policy No. BE 121 82 55
Period: 1/1/77 to 1/1/78

Subject to Protective Order, Confidential



**Alexander & Alexander Inc.**
1185 Avenue of the Americas
New York, N.Y. 10036
Telephone 212 575-8000

Rec'd COMPTROLLER

APR 13 1977

April 11, 1977


Mr. Wilson King
Manager Insurance
  and Investments
Boy Scouts of America
Route 1,
No. Brunswick, N.J. 08902

Re: Umbrella Liability - National
    Policy No. BE 121 82 55
    January 1, 1977 to January 1, 1978


Dear Wilson:

As promised, enclosed is the National Umbrella Policy for
January 1, 1977 to 1978.  Please examine policy carefully
and contact me if you have any questions.

Sincerely,

Kenneth F. Lennon

KFL/pz

Enclosure

Telex 420580 (International only)
TWX 710-581-2018
Cable ALEXALEX

## Wilson and Allen, Inc.

Rec'd COMPTROLLER

FEB 14 1977

200 PARK AVENUE    •    NEW YORK CITY, NEW YORK 10017    •    (212) 661-5524

February 10, 1977

Mr. Wilson King
Manager, Insurance
    and Investments
Boy Scouts of America
North Brunswick, New Jersey    08902

Re:  B.S.A.
     Umbrella Liability - National
     BE 121 82 55
     1/1/77 - 1/1/78

Dear Wilson,

Enclosed is our invoice for $85,000., which is the total annual
premium payable under the above policy.

We shall forward policy to your attention as soon as received.

Sincerely,

Kenneth F. Lennon
Account Executive

KFL/lg
Enclosure:



Subject to Protective Order - Confidential

## Wilson and Allen, Inc.

200 PARK AVENUE            NEW YORK CITY, NEW YORK 10017            (212) 682-8334

April 6, 1976

Mr. Wilson King
Administrative Assistant
     to Comptroller
Boy Scouts of America
North Brunswick, New Jersey    08902

Re:    Boy Scouts of America
       Umbrella Liability
       Policy No. BE 115 15 59

Dear Wilson,

Enclosed please find the above mentioned policy underwritten
by National Union Fire Insurance Company for a one year period
effective January 1, 1976.  The total annual premium is $22,500
for which we enclose our invoice.

Please review carefully and advise me of any questions that
should arise.

Sincerely,

Kenneth F. Lennon
Account Executive

KFL/lp
Enclosure:

Subject to Protective Order – Confidential

**DECLARATION**

UMBRELLA LIABILITY

Wilson & Allen, Inc.
200 P    Avenue

**POLICY NO.**
BE 115 15 59

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY

102 MAIDEN LANE, NEW YORK, N. Y. 10008

**ITEM 1.**
**Name of Insured**

Boy Scouts of America, National, Etal.

Route #1
North Brunswick, New Jersey    08902

**Address**
**(Street, Town State)**

This Declaration page, with policy provisions and endorsements, if any, issued to form a part thereof, completes the above numbered Umbrella Liability Policy.

---

**ITEM 2.**
**Policy Period**

From:    January 1, 1976          To:    January 1, 1977

(12:01) A.M. Standard Time at the address of the Insured stated above)

---

The limit of the Company's liability shall be as stated herein subject to all the terms of this policy having reference thereto

(A) $ 10,000,000          Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof.

in excess of

(1) the amount recoverable under the underlying insurance as set out in the attached Schedule A.

or

(2) $ 10,000          ultimate net loss in respect of each occurrence not covered by said underlying insurance.

**ITEM 3.**
**Limit of Liability**

(B) $ 10,000,000          in the aggregate for each annual period in accordance with Insuring Agreement III.

---

**ITEM 4.**
**Premium Computation**

| Rating Basis | Estimated Exposure | Rate | Estimated Premium |
|---|---|---|---|
| | | | $22,500.00 |

| Deposit Premium | Minimum Premium | Audit Period |
|---|---|---|
| $ 22,500.00 | $ 22,500.00 | Flat |

---

Date of Issue   March 29, 1976:sh:nyc          Countersigned by   _Robert B. Chester_
(Licensed Resident Agent)

Form 8718

Subject to Protective Order - Confidential

EDULE OF UNDERLYING INSUR,      E

Issued To ___ Boy Scouts of America, National, Etal.

| Type of Policy or Coverage | Insurer | Limits |
|---|---|---|
| Comprehensive General Liability including Products Blanket Contractual, Personal Injury Liability, Watercraft Liability. | Domestic-Hartford A&I<br><br>Foreign-Aetna Ins. Co. | **Bodily Injury Liability**<br>$ Nil   each person<br>$ Nil   each occurrence<br>$ Nil   aggregate<br><br>**Property Damage Liability**<br>$ Nil   each occurrence<br>$ Nil   aggregate<br><br>**Combined Single Limit**<br>$   500,000 |
| Comprehensive Automobile Liability Including Hired and Non-Ownership Automobile Liability | Domestic-Hartford A&I<br>Foreign-Aetna Ins. Co. | **Bodily Injury Liability**<br>$ Nil   each person<br>$ Nil   each occurrence<br><br>**Property Damage Liability**<br>$ Nil   each occurrence<br><br>**Combined Single Limit**<br>$ 500,000 |
| Standard Workmen's Compensation and Employers Liability | Hartford A&I (California)<br>Twin City Fire Ins. Co. (All States Except Calif) | Coverage B Employers Liability<br>$ 100,000   each accident. |
| Miscellaneous Liability<br><br>Garage Keepers Legal Liability<br><br>Advertisers Liability<br><br>Incidental Malpractice Liability<br><br>Airport Liability | <br><br>Hartford A&I<br><br>Seaboard Surety<br><br>Hartford A&I<br><br>USAIG | <br><br>$750,000  each occurrence<br><br>$500,000  each occurrence<br><br>$500,000  each occurrence<br><br>$1,000,000 CSL each occurrence |

Authorized Representative _Robert B. Charles_

FORM 2210 (6-70)

Subject to Protective Order - Confidential

#1

## ENDORSEMENT

This endorsement, effective   12:01    A.M.   January 1, 1976          forms a part of

policy No.   BE 115 15 59        issued to    Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is understood and agreed that the following are added as additional named insureds:

A) South Cincinnati Parking Garage Corporation

B) Lincoln-Mercury and/or any other leasing dealer
   only as respects automobiles leased by Boy Scouts
   of America and insured under the leased
   Automobile Fleet Insurance Program

C) Boy Scouts of America Local Council, but only
   as respects leased car program above

Subject to Protective Order -- Confidential

Robert B. Chearley
Authorized Representative

Form 1803

Subject to Protective Order – Confidential

## ENDORSEMENT #3

This endorsement, effective    12:01    A.M.    January 1, 1976    forms a part of

policy No.    BE 115 15 59    issued to    Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is hereby understood and agreed that notwithstanding anything
contained herein to the contrary, this Policy shall follow the
terms, conditions and settlements of the scheduled primary policies
in every respect insofar as coverage is afforded by the said
Scheduled Primary Policies for Garage Keepers Legal Liability, Excess
of the limits set forth hereunder.

Subject to Protective Order – Confidential

_Robert B. Charles_
Authorized Representative

Form 1803

#2

## ENDORSEMENT

This endorsement, effective    12:01    A.M.    January 1, 1976    forms a part of

policy No.   HE 115 15 59    issued to    Boy Scouts of America, National, Etal.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

It is agreed that with respect to the Insured's Broadcasting, Telecasting, Advertising, Re-Broadcasting or Re-Televising activities or activities incidental thereto, such coverage as is afforded by the policy does not apply to any claim or claims arising out of libel, slander, humiliation, defamation of character, invasion of rights of privacy plagiarism, infringement of copyright or of title or slogan, piracy or unfair competition or idea misappropriation under an implied contract, except insofar as coverage is available to the Insured in the Underlying Insurances and then only in excess of the limits set forth therein.

_____
Authorized Representative

Form 1803

## ENDORSEMENT

This endorsement, effective   12:01      A.M. January 1, 1976              forms a part of

policy No.  RE 115 15 59           issued to      Boy Scouts of America,National,Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

It is agreed that this policy shall not apply to any liability arising out
of false arrest, false imprisonment, wrongful eviction, wrongful detention,
malicious prosecution, humiliation, libel, slander, defamation of character,
or invasion of right of privacy unless such liability be covered by valid or
collectible underlying insurance as set out in the Schedule of Underlying
Policies and then only for such hazards for which coverage is afforded under
said underlying insurance.

Robert B. Churchey
_____
Authorized Representative

Form 1803

## ENDORSEMENT #5

This endorsement, effective    12:01    A. M.    January 1, 1976    forms a part of
policy No.    BE 115 15 59    issued to    Boy Scouts of America, National, Etal.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### NOTICE OF OCCURRENCE

It is agreed that notice of claim or suit to the Insured, is to be
deemed effective only when given to an executive officer or the
insurance manager at B.S.A. National Headquarters North Brunswick,
N.J.

Subject to Protective Order – Confidential

_Robert B. Charles_
Authorized Representative

Form 1803

Subject to Protective Order – Confidential

#6

## ENDORSEMENT

This endorsement, effective    12:01    A.M.    January 1, 1976    forms a part of

policy No.    BE 115 15 59    issued to  Boy Scouts of America, National, Etal.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

### Pension Trust-Employee Benefits

It is specifically understood and agreed that this policy does not cover Fiduciary liability however styled in respect of any Pension Trust Fund or Employee Benefits Account irrespective of whether or not any of the underlying policies scheduled herein provide such coverage by endorsement or otherwise.

Robert B. Chancellor
Authorized Representative

Form 1803

Subject to Protective Order – Confidential

Subject to Protective Order – Confidential

Subject to Protective Order – Confidential