# EXHIBIT 5

FILED
7/23/2025 1:59 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2017CH14975
Calendar, 4
33697112

FILED DATE: 7/23/2025 1:59 PM  2017CH14975

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |
|---|---|
| National Surety Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>The Honorable Barbara J. Houser (Ret.) in her capacity as Trustee of the BSA Settlement Trust, *et al.*,<br><br>    Defendants. | No. 2017–CH–014975<br><br>Judge Alison C. Conlon |

**PLAINTIFF NATIONAL SURETY CORPORATION'S
MOTION TO LIFT THE STAY**

Todd C. Jacobs
John E. Bucheit
Parker, Hudson, Rainer & Dobbs LLP
Two N. Riverside Plaza, Suite 1850
Chicago, IL 60606
Ph: (312) 477-3306
Email: tjacobs@phrd.com
Email: jbucheit@phrd.com
Firm No. 100822

Drew Stevens (*Pro Hac Vice*)
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree St. NE, Suite 3600
Atlanta, GA 30308
Ph: (404) 523-5300
Email: dstevens@phrd.com

*Attorneys for Plaintiff National
Surety Corporation*

In accordance with the Court's July 9, 2025 Order, Plaintiff National Surety Corporation ("National Surety") moves the Court to lift the stay previously entered by the Court in its Order dated September 26, 2024 and to proceed to rule on National Surety's Motion for Leave to File an Amended Complaint, Allianz's Motion to Amend, and the Trust's Motion to Dismiss.

## JOINDER TO ALLIANZ'S LIFT-STAY MOTION

National Surety hereby joins Defendant and Counterclaimant Allianz Global Risks US Insurance Company f/k/a Allianz Insurance Company's ("Allianz") motion to lift stay, filed contemporaneously.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its September 26, 2024 Order staying this litigation ("Stay Order"), the Court observed that there were "two significant unknowns … playing out in other courts" that warranted a stay of further proceedings. Stay Order ¶ 29. The first was the outcome of certain of the BSA insurers' appeal of the bankruptcy court's plan confirmation order. *Id*. ¶ 30. The second was whether the Texas Federal Action "will survive the pending motions to dismiss and proceed to a point where Allianz and other insurers will have the opportunity assert interinsurer claims." *Id.* ¶ 31.

In its March 24, 2025 Opinion, the Appellate Court's First District endorsed the first "unknown" as the basis for affirming the Stay Order, ruling that the Court "acted well within its discretion by holding the motions until the Third Circuit rules." (*See* Ex. A to June 4, 2025 Status Report ¶ 40 [the "First District Opinion"]; *see also id.* ¶ 39: "Moreover, while the court discussed the Illinois and Texas federal actions, the reason for the stay related to the pending appeal of the bankruptcy court's order confirming the plan. The circuit court's order says as much by requiring the parties to obtain a status date within 14 days of the Third Circuit's decision.")

1

FILED DATE: 7/23/2025 1:59 PM    2017CH14975

Accordingly, the affirmed basis for the stay no longer exists. The U.S. Court of Appeals for the Third Circuit issued its decision on May 13, 2025, affirming the confirmation order on all issues except one: National Surety's and Allianz's appeal of the bankruptcy plan's judgment reduction provisions. Therefore, as the Trust's counsel acknowledged during the July 8, 2025 status conference, that uncertainty has been resolved and is no longer a basis for staying the litigation. (*See* **Ex. A** hereto at 13:12-22.) And although the First District acknowledged this Court's second basis for the Stay Order, it did not endorse it. (*See* First District Opinion ¶ 40: "To repeat, the circuit court acted well within its discretion by holding the motions until the Third Circuit rules.")

While the Court ordered National Surety and Allianz to file a lift stay motion, the party seeking a stay of proceedings bears the burden of proving by clear and convincing evidence "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage" to the non-movant. (*See infra* Arg. § II). That party here is the Trust. As plaintiff, National Surety, and, as a party that has long asserted counterclaims, Allianz, have a substantial right to proceed with their claims in their forum of choice absent a compelling reason outweighing this right. *See*, *e.g.*, *Fennell v. Illinois Cent. R. Co.*, 2012 IL 113812, ¶¶ 18-20 ("A plaintiff's right to select the forum is substantial. Unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed."). With the bankruptcy appeal now decided, the burden of establishing that the case should remain stayed must therefore continue to reside with the Trust.

For the reasons discussed below, however, that is a burden the Trust cannot meet given the current posture of the case and the limited nature of what National Surety and Allianz are asking the Court to do: namely, to lift the stay for purposes of deciding the parties' pending motions.

2

Doing so does not implicate any of the purported concerns raised by the Trust, or any which Illinois courts have found to support a stay of litigation. (*See infra* Arg. § II.) To the contrary, the motions have been fully briefed and argued since December 2023, and they will not require any further time or expense by the parties for the Court to decide. The Trust's objection to the contrary during the July 8 status conference not only gets ahead of itself, it simply acknowledges the reality of litigation. (*See* **Ex. A** hereto at 19:4-21.) That is, National Surety and Allianz are not asking the Court for leave to begin discovery or decide any issue on the merits. And no matter where the case eventually proceeds, the Trust will at some point be required to respond to National Surety's claims and allegations, either here, in the form of its proposed Amended Complaint, or as counterclaims filed in the Texas action if it survives the pending motions to dismiss. As Judge Flynn previously observed when permitting limited discovery to proceed pending the outcome of National Surety's mandamus petition in Texas, any duplication of effort or additional expense will be minimal given that any work done here can be used there and vice versa. (*See* Report of Proceedings (April 16, 2019) [Ex. 3 to January 29, 2024 Jacobs Decl.] at 23:23-24:23.)

Indeed, the Trust's complaints about the potential for duplicative litigation, unnecessary expense, and the possibility of inconsistent rulings ring particularly hollow given that such risks, if any, are entirely of its own making. During BSA's bankruptcy, the Bankruptcy Court specifically ruled that National Surety could "proceed with its prepetition insurance coverage litigation" here in Illinois. *See In re BSA*, 642 B.R. 504, 672 (Bankr. D. Del. 2022). The Trust was also fully aware that this action has been pending since 2017, that it had already survived two motions by its predecessor BSA to dismiss the case in favor of a Texas forum,[1] and that discovery had already

---

[1] As previously summarized, the Trust's actions follow a line of attempts by its predecessor BSA to likewise avoid litigating in Illinois. After first attempting to dismiss National Surety's Complaint as unripe, BSA filed its own duplicative action in Texas state court before moving to

3

commenced before the BSA bankruptcy stay halted further proceedings. Yet the Trust chose to assume the very risks about which it now complains by filing multiplicative litigation in Texas. In fact, in its rush to do so, the Trust violated the bankruptcy stay by filing the Texas Federal Action a day before it was lifted. (*See* First District Opinion ¶ 17: noting that the Trust filed the Texas Federal Action "[t]he day before the automatic stay on state court coverage cases was lifted.") And now, having moved to dismiss National Surety's Complaint for what constitutes a fourth time in this case, the Trust yet again seeks to further delay a ruling on its own motion. If unnecessary cost were its principal concern, a far more efficient and cost-effective approach from the start would have been for the Trust to allow a ruling on National Surety's and Allianz's motions for leave to amend and, assuming they had been granted, refile its motion to dismiss based on the actual state of play as it exists today. But rather than take this more efficient approach, the Trust has opposed it every step of the way.

Having unnecessarily created a parallel action in a separate forum, the Trust cannot be heard to complain that its actions could result in additional litigation expense, particularly given that the limited step National Surety and Allianz are asking the Court to take presents no such risk. The Court should grant National Surety's and Allianz's motions to lift the stay and proceed to rule on the pending motions before it.

---

dismiss National Surety's Complaint here on *forum non conveniens* grounds. This Court (the Honorable Judge Flynn) denied BSA's motion in January 2019. (*See* Report of Proceedings (Jan. 14, 2019) at 169:2-170:22 [attached as Ex. B to Pl.'s Mot. Leave Amend].) After doing so, Judge Flynn ordered the parties to file responsive pleadings and granted the parties leave to begin discovery. (*See id.*) Months later, in April 2019, BSA filed a third motion to dismiss in this Court – its first under 735 ILCS 5/2-619(a)(3) – based on its then-pending Texas state court action (attached as Ex. B to National Surety and Allianz's Opposition to Trust's Mot. Dismiss). Eight days later, the Court held a status conference, continued its consideration of BSA's motion, and ordered the parties to move forward with written discovery. (*See* Report of Proceedings (April 16, 2019) at 23:23-24:23 [attached as Ex. C to Trust's Mot. Dismiss].) In February 2020, BSA's bankruptcy filing stayed this litigation.

4

## **PROCEDURAL HISTORY**

Since moving to dismiss and opposing National Surety's and Allianz's motions for leave to amend, the Trust's *modus operandi* has been to delay a ruling on the motions for as long as possible, in some cases by taking inconsistent positions in the two competing forums aimed at ensuring that this action would not proceed while the Texas action was stayed.

For example, the Trust diligently sought a ruling on the parties' pending motions throughout the latter half of 2023, which became decisional following oral argument on December 7, 2023. One week later on December 16, the Texas federal court granted certain insurers' motion to stay the Texas action pending a decision from the U.S. Supreme Court in *Harrington v. Purdue Pharm.*, *L.P.*, 603 U.S. 204 (2024). In opposing the certain insurers' motion to stay in Texas, the Trust made several arguments that were diametrically opposed to arguments it would later make to the Court here. Among other things, the Trust argued that a stay of the Texas action would greatly prejudice the abuse claimants by impeding the Trust's operations, increasing its administrative costs, and delaying and ultimately reducing the amounts payable to claimants. (*See* Trust's November 2, 2023 Opposition [Ex. 1 to January 29, 2024 Jacobs Decl.] at pp. 1, 2-3, 14.) Certain insurers' motion to stay, the Trust claimed, was akin to asking the Texas federal court to "sit on its hands, delaying the adjudication of insurance issues that must inevitably be resolved," and the prejudice it would suffer from any such delay was "real and material." (*See id.* at p. 1.)

Three weeks after the Texas court stayed the case there, the Trust reversed its position opposing a stay of the parties' coverage litigation and asked this Court to do exactly that by likewise staying this case pending the decision in *Purdue Pharma*. (*See* Trust's January 2, 2024 Motion to Stay the Litigation.) Despite arguing in Texas that it would be materially prejudiced by any delay in resolving the parties' coverage issues, the Trust claimed in this case that it "made[]

5

no logical sense" for the same issues to proceed towards resolution in Illinois while the Texas action was closed. (*See id*. at p. 7.) National Surety and Allianz asked the Court to deny the motion and proceed with rulings on their pending motions for leave to amend and the Trust's motion to dismiss. (*See* January 29, 2024 Joint Opposition to Trust's Motion to Stay.)

Having moved to stay the Illinois action, the Trust took another run at convincing the Texas court to move the case there forward, before this Court ruled on its motion to stay. (*See* Trust's January 31, 2024 Motion for Reconsideration [Ex. E to Trust's February 13, 2024 Reply Brief].) In doing so, the Trust asked the Texas court to reconsider and vacate the stay of the Texas action, claiming (falsely) that National Surety and Allianz were attempting to use the stay in Texas "to advance their own coverage case in Illinois." (*See id*. at p. 1.) In opposition to that motion, National Surety and Allianz provided the Texas court with a detailed summary of the two litigations' procedural history showing that the only new development in Illinois had been the Trust's own change of position. (See February 8, 2024 Joint Opposition [Ex. G to Trust's February 13, 2024 Reply Brief].) The next week, the Texas court denied the Trust's motion. (*See* February 16, 2024 Order [Ex. B to National Surety and Allianz's April 26, 2024 Joint Status Report].)

This Court then conducted oral argument on the Trust's motion to stay the Illinois action on May 7, 2024, and, on May 8, the Court entered an order staying the case pending the decision in *Purdue Pharma.* After the Supreme Court's *Purdue Pharma* decision on June 27, 2024, National Surety and Allianz again asked this Court to rule on the pending pleadings motions and, following its rulings, schedule a case management conference. (*See* National Surety and Allianz's July 9, 2024 Joint Position Statement.) Despite the prejudice it previously claimed it would suffer if resolution of the coverage issues were delayed, the Trust took the position that if the Texas court

FILED DATE: 7/23/2025 1:59 PM   2017CH14975

"were to impose a further stay" pending the BSA bankruptcy appeal in the Third Circuit, then "this lawsuit should likewise remain stayed." (*See* Trust's July 9, 2024 Position Statement at p. 6.)

On July 11, 2024, this Court held a status conference to hear arguments on the parties' positions. At the conclusion, the Court ruled that it would lift the stay and proceed to decide the three pending motions before it, stating that it had "carefully considered the issue and decided to lift the stay in our case" given that "[t]he stay, as has been articulated, was based specifically on the pendency of the *Purdue* case before the United States Supreme Court" and, according to the Trust, "the Supreme Court's decision will not impact the [bankruptcy] plan." (*See* **Ex. B** hereto at 22:23-23:17.)  The Court further observed that the motions had been fully briefed and "deserve a ruling." (*See id*.) To that end, the Court entered an order lifting the stay of the case and stating that it would rule on the motions for leave to amend and the Trust's motion to dismiss. (*See* July 12, 2024 Order Lifting Stay and Setting Rule Date on Pending Motions for August 30, 2024.) Then, as now, the Trust's Texas action was pending but this Court did not consider it a basis to stay rulings on the pending motions.

On July 26, 2024, however, the Texas court entered an order further staying and administratively closing the case, this time pending resolution of the BSA bankruptcy appeal before the Third Circuit. (*See* July 26, 2024 Order [Ex. E to Trustee's July 31, 2024 Supplemental Brief].) On July 31, 2024, the Trust then notified this Court that the Texas court had extended its stay of that case. A status conference was then held on August 30, which had originally been scheduled for the Court to issue rulings on the pending motions. (See September 9, 2024 Order.) The Court informed the parties that it was not yet ready to issue its rulings and instead held further argument on the motions and set the case for further status on September 27, 2024. (*See id*.)

7

FILED DATE: 7/23/2025 1:59 PM    2017CH14975

On September 26, 2024, the Court issued the Stay Order. National Surety and Allianz appealed, and on March 24, 2025, the Appellate Court affirmed, observing that "[w]hile the court discussed the Illinois and Texas federal actions, the reason or the stay related to the pending appeal of the bankruptcy court's order confirming the plan. The circuit court's order says as much by requiring the parties to obtain a status date within 14 days of the Third Circuit's decision." (First District Opinion at ¶ 39.) The Court affirmed the Stay Order on this basis, holding that this Court "acted well within its discretion by holding the options until the Third Circuit rules." (*Id.* ¶ 40.)

Now, more than 19 months after the parties' motions first became decisional in December 2023, the Trust continues to oppose any ruling on either National Surety's and Allianz's motions for leave to amend, in addition to (inexplicably) its *own* motion to dismiss the case. As this Court observed over a year ago, these motions "deserve a ruling." (*See* **Ex. B** hereto at 22:23-23:17.)

## ARGUMENT

### I.    Because the Third Circuit has Ruled, the Court Should Proceed to Rule on the Three Pending Motions.

As the Court observed during the July 8 status conference, "a fair reading" of the First District's decision was that the Stay Order "was affirmed based on the pendency of the Third Circuit decision." (*See* **Ex. A** hereto at 15:9-12.) Because the Appellate Court did not endorse this Court's second ground for the Stay Order (the Texas Federal Action), the Appellate Court's holding that the stay was permissible based solely on the pendency of the Third Circuit's decision constitutes the "law of the case." *See*, *e.g.*, *In re Christopher K.*, 217 Ill. 2d 348, 365 (2005) ("In general, the law-of-the-case doctrine prohibits reconsideration of issues which have been decided in a prior appeal." (internal citation and quotation marks omitted)). With the only affirmed basis for it no longer applicable, the Court should lift the stay and rule on the parties' motions. *Cf. In re*

*Est. of Mueller*, 2021 IL App. (1st) 190724-U, ¶ 21 (recognizing that basis for stay order "no longer exists" given resolution of appeal).

## II. The Trust Cannot Satisfy its Burden of Proving That a Further Stay of the Litigation is Appropriate.

The party seeking a stay of proceedings "must prove by clear and convincing evidence that a stay of the proceedings outweighs the potential harm to the party against whom it is operative." *See Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 36 (1st Dist. 2008) (citing *Zurich Ins. Co. v. Raymark Indus., Inc.*, 213 Ill. App. 3d 591, 595 (1st Dist. 1991)); *Kapoor v. Fujisawa Pharm. Co.*, 298 Ill. App. 3d 780, 785–86 (1st Dist. 1998) (citing *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785 (1st Dist. 1995) (A court "must weigh the prejudice to the nonmovant if the motion is granted against the policy of avoiding duplicative litigation.")). Thus, as the party requesting that the stay remain in place, the Trust "must 'make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *See id.* (quoting *Zurich Ins. Co.*, 213 Ill. App. 3d at 595 and *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *CHB Uptown Properties, LLC v. Financial Place Apartments, LLC,* 378 Ill. App. 3d 105, 109 (1st Dist. 2007) (citing *Zurich Ins. Co.*, 213 Ill. App. 3d at 595).

This is a burden the Trust cannot meet for the following reasons.

*No Prejudice to the Trust*. The Trust cannot establish that it will be in any way prejudiced by the Court deciding its *own* motion to dismiss this action, a curious argument for any defendant to make that the Trust has espoused for the past nineteen months. Nor will it be at all prejudiced if the Court rules on National Surety's and Allianz's pending motions for leave to amend. *See, e.g., County of Peoria v. Couture*, 2022 IL App. (3d) 210091, ¶ 46 ("'Prejudice' to the defendant has to mean more than being sued by the plaintiff on a legally cognizable theory."). Doing either would

9

not implicate any of the *Kellerman* considerations that would support a stay. Ruling on the motions does not create the risk of duplicative litigation or inconsistent rulings, present comity concerns, raise *res judicata* issues, or have any discernable effect on the Trust's assets, particularly given that all of the work on the motions is done. Indeed, as of six months ago, the Trust held assets of $500 million and, once the bankruptcy court's confirmation order is no longer appealable, will be funded with an additional $1.4 billion in settlement proceeds currently held in escrow.[2]

If the Court grants National Surety's and Allianz's motions to amend their pleadings, as they believe it should, the parties can then work with the Court to determine out how best to proceed from there. Any resulting cost to the Trust would be negligible, and no doubt far less than the cost it has incurred over the past nineteen months repeatedly seeking to keep the case stayed.

*Substantial Prejudice to National Surety and Allianz*. A stay is essentially an injunction. *See Aventine Renewable Energy, Inc. v. JP Morgan Sec., Inc.*, 406 Ill. App. 3d 757, 759 (3rd Dist. 2010) ("A stay is considered injunctive in nature . . . ."). As a result, in contrast to the lack of prejudice to the Trust, the prejudice to National Surety and Allianz is substantial.

Indeed, in *A.E. Stately Mfg. Co. v. Swift & Co.*, 84 Ill. 2d 245 (1990), the Illinois Supreme Court concluded in a similar case involving parallel litigations that not only was it "inappropriate" to stay the Illinois proceedings, the very relief the Trust ostensibly hopes to orchestrate by continuing the stay here (*i.e.*, allowing the Texas action to move ahead, the eventual dismissal of this case, and forcing National Surety and Allianz to then pursue their complaints here as counterclaims in another jurisdiction) was itself prejudicial. See *id.* at 253 (reversing trial court's

---

[2] As indicated in the Trust's Annual Report for FY 2024 (attached hereto as **Ex. C**), the Trust at that point owned assets worth more than $550 million (in cash or cash equivalents). When BSA's confirmation order becomes final following final appeal, the Trust will receive the remaining contributions from certain settling insurers currently held in escrow in the amount of an additional $1.4 billion. (*See* **Ex.'s D** and **E** hereto.)

10

FILED DATE: 7/23/2025 1:59 PM   2017CH14975

dismissal of action in favor of action pending in other state because, *inter alia*, "dismissal of [plaintiff's] action would force it to seek the relief it desires by way of counterclaim in [defendant's] Iowa action."); *see also Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's London,* 356 Ill. App. 3d 749, 757 (1st Dist. 2005) ("[I]f we were to affirm [Defendant's] section 2-619(a)(3) motion to dismiss…in order for [Plaintiff] to receive complete relief in that foreign jurisdiction, it would be required to file a counterclaim seeking damages … This court will not force an Illinois resident with a case pending in Illinois to seek a counterclaim in a foreign jurisdiction in order to gain complete relief."); *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 855 (1st Dist. 2010) ("[T]he dismissal of the instant action forces [Plaintiff] to assert its claims against [Defendant] by way of a counterclaim in New York.").

As the Trust's predecessor BSA did here, the defendant in *A.E. Stately* first moved to dismiss the Illinois action on *forum non conveniens* grounds. After that motion failed, it next sought dismissal of the case under Sec. 2-619(a)(3) predecessor provision, an approach the Court expressly disapproved of given the interrelated nature of the two grounds for dismissal. *See id.* at 251 ("[W]e wish to express our disapproval of the manner in which Swift has sought dismissal of Stately's action … we find it somewhat inconsistent for Swift to speak of the virtues of avoiding multiplicity of litigation and then to assert its bases for dismissal one at a time … Such a piecemeal approach does little to streamline litigation.").

After concluding that the trial court had erred by dismissing the case, the Court then considered whether the case should be stayed, which the Court likewise found to be "inappropriate" given the prejudice to the plaintiff that would result. As the Court observed, "[a] stay would, again, require Stately to seek relief by way of counterclaim in the Iowa action, or, alternatively, to await the expiration or termination of the stay before proceeding upon its

11

complaint in Illinois. We have already expressed our belief that the first of these alternatives is inadequate, and we find that the latter course is likewise unacceptable." *Id.* 254. Notably, the Court concluded: "[w]e do not believe that a resident corporation's right to its day in court should await resolution of sister-State litigation where, as here, plaintiff's filing of its complaint does not evidence an intent to harass or gain undue influence over defendant and where, as here, the possibility of completely resolving this controversy in Illinois is greater." *Id.*

A number of Illinois courts have followed suit, reversing orders that stayed or dismissed Illinois actions under similar circumstances. In *Zurich Ins. Co. v. Baxter Intern, Inc.*, 173 Ill. 2d 235 (1996), for example, the Court held that "there was no valid reason for the circuit court to have stayed Zurich's action under section 2-619(a)(3) pending outcome of [the Defendants] action in California," even though "the issues presented by the two cases [were], for all practical purposes, identical" and "a judgment in the Illinois action would be no less conclusive … than a judgment in the California proceeding." *Id.* at 669.

In *Whittmanhart*, the Appellate Court reversed the trial court's dismissal of the case given, *inter alia*, its legitimate and substantial relationship to Illinois and, as in *A.E. Stately*, it would force the plaintiff to assert their claims as counterclaims in a foreign jurisdiction. *See Wittenmanhart*, 402 Ill. App. 3d at 855. The Appellate Court in *Hapag-Lloyd (America), Inc. v. Home Ins. Co.*, 312 Ill. App. 3d 1087 similarly reversed a dismissal on the grounds, *inter alia*, that "principles of comity do not justify staying a matter when the competing case has only been pending for several months," and the Illinois action was not "intended to vex or harass the appellees." *Id.* at 1096.

And in *May v. SmithKline Beecham Clinical Labs, Inc.*, 304 Ill. App. 3d 242 (5th Dist. 1999), the court reversed a stay of the Illinois action, observing that it was not required to "defer to the Connecticut District Court simply because it had acquired jurisdiction over other similar

12

class actions and has devoted judicial resources to the management of those cases." *Id.* at 248. The court further concluded that "the duplication [of] effort should not be significant" given that discovery in the parallel actions "will most probably mirror that of this cause." *Id.*

In this case, continuing to hold in abeyance a ruling on National Surety's and Allianz's motions for leave to amend does not square with the Illinois Supreme Court's edict that a corporate resident's "right to its day in court" should not have to "await resolution of sister-State litigation." *See A.E. Stately Co.*, 84 Ill. 2d at 254. An Illinois company, National Surety filed this action almost eight-years ago. Its every attempt to move forward with its case has been delayed by BSA's and its successor's repeated attempts at forum-shopping, a practice long disfavored by Illinois courts. *See Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 174 (2003). Meanwhile, the Trust has sent multiple and substantial demands for payment to both National Surety and Allianz, each of which demands prompt payment pursuant to a Texas statute (which National Surety and Allianz maintain does not apply) that the Trust claims to impose 18% interest on wrongfully denied payments. (*See* **Ex. F** hereto.)

In short, it is time to move this case forward, beginning with the incremental first step of ruling on the parties' pending motions. Doing so poses no risk of harm to the Trust and, indeed, is a necessary first step to resolving the uncertainty the Trust's decision to file multiplicative litigation in Texas and repeatedly delay this case has engendered, all of which the Illinois Supreme Court has found to be "unacceptable." *See A.E. Stately Mfg. Co.*, 84 Ill. 2d at 254 (requiring plaintiff to await for termination of a stay before proceeding with complaint was "unacceptable").

Accordingly, this Court should lift the stay of this matter and proceed to rule on the pending motions.

FILED DATE: 7/23/2025 1:59 PM   2017CH14975

FILED DATE: 7/23/2025 1:59 PM    2017CH14975

Dated: July 22, 2025                                        Respectfully Submitted,


/s/ Todd C. Jacobs
Todd C. Jacobs
John E. Bucheit
**Parker, Hudson, Rainer & Dobbs LLP**
Two N. Riverside Plaza, Suite 1850
Chicago, IL 60606
Ph: (312) 477-3306
Email: tjacobs@phrd.com
Email: jbucheit@phrd.com
Firm No. 100822

Drew Stevens (*Pro Hac Vice*)
**Parker, Hudson, Rainer & Dobbs LLP**
303 Peachtree St. NE, Suite 3600
Atlanta, GA 30308
Ph: (404) 523-5300
Email: dstevens@phrd.com

***Attorneys for Plaintiff National Surety***
***Corporation***

14

FILED DATE: 7/23/2025 1:59 PM    2017CH14975

## CERTIFICATE OF SERVICE

I, Todd C. Jacobs, hereby certify that on the 22nd day of July, 2025, I caused the foregoing **Motion to Lift the Stay** to be served electronically through the Court's ECF noticing system on all ECF participants in this case, at their respective email addresses registered with the Court.

*/s/ Todd C. Jacobs*