# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

THE HONORABLE BARBARA J.
HOUSER (RET.), in Her Capacity as
Trustee of the BSA Settlement Trust

v.

ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY, et al.

§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 3:23-CV-1592-S

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses the Undersigned Defendants' Motion to Dismiss the Amended Complaint in Part[1] ("Motion") [ECF No. 542]. The Court has reviewed the Motion, the Memorandum in Support of the Motion ("Undersigned Defendants' Brief") [ECF No. 543], Plaintiff's Opposition to the Motion ("Response") [ECF No. 556], Plaintiff's Opposition to the Abstention Arguments Raised in the Motion [ECF No. 558], Plaintiff's Opposition to the Arrowood Joinder [ECF No. 561], Undersigned Defendants' Reply in Support of the Motion ("Reply") [ECF No. 578], the Liberty Group's Joinder to the Reply [ECF No. 579], the supplemental jurisdictional briefing, *see* ECF Nos. 628-29, 631, the relevant supporting evidence, and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

---

[1] "Undersigned Defendants" refers to the Defendants listed in the Motion that have not announced settlement or been dismissed, along with Arrowood Indemnity Company, In Liquidation, which joined certain parts of the Motion after its filing. *See* Mot. 3-11; Arrowood's Limited Joinder in the Motion and Supporting Memorandum ("Arrowood Joinder") [ECF No. 544].

# I. BACKGROUND

## A. The Federal Court Case

This case is an insurance coverage dispute, wherein Plaintiff, the Honorable Barbara J. Houser (Ret.) in her capacity as Trustee of the Boy Scouts of America ("BSA") Settlement Trust, brought this civil action against over eighty insurance companies that allegedly issued liability policies covering BSA and/or BSA's Local Councils.[2] First Am. Compl. ("Amended Complaint") [ECF No. 516] ¶ 1. In 2020, BSA was faced with mounting lawsuits seeking to hold it liable for alleged sexual abuse. *Id.* ¶ 101. BSA filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. *Id.* The bankruptcy court entered an order confirming a plan of reorganization ("Plan"), and the Delaware district court affirmed that order. *Id.* ¶ 102. To resolve the abuse claims filed against BSA, the Plan created the Settlement Trust, which assumed liability for claims asserted against BSA and the Local Councils. *Id.* ¶ 104. To resolve the claims, the Settlement Trust received certain assets, including the rights under BSA's and the Local Councils' insurance policies. *Id.* ¶ 106.

When the Plan became effective in 2023, more than 82,000 abuse claims were channeled to the Settlement Trust. *Id.* ¶ 130. Since that time, the Settlement Trust has been determining the allowed claim amounts for each claimant. *See id.* ¶¶ 138, 141. In connection with this process, the Settlement Trust analyzes whether the claim is potentially covered by an insurance policy and notifies the relevant insurer. *Id.* ¶¶ 145, 154. Since September 2024, the Settlement Trust allegedly "has issued bills to insurers on a quarterly basis, demanding payment of specific amounts for specifically identified individual [a]buse [c]laims." *Id.* ¶ 155. According to Plaintiff, as of September 9, 2025, the Settlement Trust had "not received any unconditional payment for any"

---

[2] BSA's Local Councils are assigned to specific geographic areas and "recruit and oversee the local organizations that administer BSA's Scouting programs." Am. Compl. ¶ 99.

claim. *Id.* Instead, most of the insurers that are parties to this case allegedly have "issued correspondence . . . outlining their coverage defenses and disputing the claims." *Id.* ¶ 156.

As a result, Plaintiff sued 83 insurers. Plaintiff seeks declaratory judgments and brings claims for breach of contract, bad faith, and violations of the Texas Insurance Code. *Id.* ¶¶ 157-762. The Undersigned Defendants move to dismiss Plaintiff's claims on various grounds.

### B. The Illinois State Court Case

In 2017, Defendant National Surety Corporation filed suit against BSA, one Local Council, and other insurers, among others, in Illinois state court.[3] Am. Compl. ¶ 123. National Surety sought declaratory relief regarding its obligation to provide coverage for abuse claims under two insurance policies. *Id.* Plaintiff moved to dismiss the Illinois case. *Id.* ¶ 126. The Illinois state court granted that motion and dismissed the case in its entirety. Pl.'s Notice of Decision [ECF No. 646] 1.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citation omitted).

---

[3] The Settlement Trust was later substituted as a defendant in place of BSA and the Local Council. Undersigned Defs.' Br. 8.

### B. Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

The Undersigned Defendants move to dismiss Plaintiff's claims on three grounds. One subgroup moves to dismiss for lack of personal jurisdiction. Mot. 1-2. Another subgroup asks the Court to abstain from ruling on certain claims in favor of the Illinois state court litigation. *Id.* at 2. A third subgroup moves to dismiss Plaintiff's breach of contract, bad faith, and Texas Insurance Code claims for failure to state a claim. *Id.* at 1. The Court analyzes each basis for dismissal below.

4

### A. Personal Jurisdiction

The Personal Jurisdiction Moving Defendants[4] move to dismiss for lack of personal jurisdiction.[5] Undersigned Defs.' Br. 26-31. Personal jurisdiction exists "if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citation omitted). Texas's long-arm statute extends to the limits of federal due process, so the Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See id.* ("[T]he two-step inquiry collapses into one federal due process analysis." (citation omitted)). Personal jurisdiction can be general or specific. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

### i. Waiver

As an initial matter, Plaintiff argues that United States Fidelity and Guaranty Company ("USF&G") waived its personal jurisdiction challenge. Resp. 27-28. A party waives a Rule 12(b)(2) defense by omitting it from an earlier-filed motion to dismiss, if the defense was available when the motion was filed. *See* FED. R. CIV. P. 12(g), (h)(1); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 (5th Cir. 2020) ("[L]ack of personal jurisdiction is waived if a

---

[4] Arrowood, Charter Oak Fire Insurance Company, Drivers Edge Insurance Company f/k/a Consolidated National Insurance Company, Erie Family Life Insurance Company, Erie Insurance Exchange, Jefferson Insurance Company, The Phoenix Insurance Company, Security Mutual Insurance Company, St. Paul Fire & Marine Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, The Travelers Companies, Inc., The Travelers Indemnity Company, and United States Fidelity and Guaranty Company. Undersigned Defs.' Br. 26 n.11; Arrowood Joinder 1; Reply 11 n.5. All other non-settling Defendants named in the Motion have withdrawn their personal jurisdiction defenses. *See* Notice of CNA Defs.' Withdrawal of Personal Jurisdiction Args. [ECF No. 570]; Notice by Nationwide Entities of Withdrawal as Personal Jurisdiction Defs. in Regard to Mot. [ECF No. 619]; Notice of Withdrawal by American Home Assurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and New Hampshire Insurance Company as Personal Jurisdiction Defs. in Regard to Mot. [ECF No. 642].

[5] The Personal Jurisdiction Moving Defendants also ask the Court to deny Plaintiff's request for jurisdictional discovery. *See* Undersigned Defs.' Br. 31-32. The Court has already resolved this dispute, *see* Order [ECF No. 590], so this portion of the Motion is moot.

party omits the defense from a Rule 12 motion and the defense was available." (citation and internal quotation marks omitted)).

On October 6, 2023, USF&G, along with other Defendants, filed its initial motion to dismiss this case. *See* Undersigned Defs.' Mot. to Dismiss the Compl. ("First Motion to Dismiss") [ECF No. 225]. The Memorandum in Support of the First Motion to Dismiss ("First Brief") [ECF No. 226] listed the "[Personal Jurisdiction] Moving Defendants." *See* First Br. 25 n.15. This list did not include USF&G.

According to USF&G, it "was inadvertently omitted from the footnote listing the [Personal Jurisdiction] Moving Defendants in the [First Motion to Dismiss]." Reply 11 n.6. Moreover, "the declaration that Travelers submitted in support of that motion clearly lists USF&G as among the defendants moving to dismiss . . . for lack of personal jurisdiction." *Id.* (citation and internal quotation marks omitted). The Court concludes that, despite a typographical error, USF&G adequately preserved its personal jurisdiction defense, and the Court will consider the merits of such defense below.

### ii. General Jurisdiction

Plaintiff contends that the Court has general jurisdiction over all of the Personal Jurisdiction Moving Defendants because they "have extensive, continuous, and systematic contacts with Texas rendering them essentially at home here" and because most "have already invoked and/or consented to Texas courts' jurisdiction themselves." Resp. 29.

A court has general jurisdiction over nonresident defendants "to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotation marks omitted). This test is "a difficult

6

one to meet, requiring extensive contacts between a defendant and a forum." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citation omitted). General jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because a corporation doing business in many states "can scarcely be deemed at home in all of them." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014). For corporations, the "paradigm bases for general jurisdiction" are its place of incorporation and principal place of business. *Id.* at 137 (cleaned up).

### a. Erie Family Life Insurance Company, Erie Insurance Exchange, and Security Mutual Insurance Company

In support of the argument that general jurisdiction exists, Plaintiff submitted a chart listing the Personal Jurisdiction Moving Defendants' "[k]ey [k]nown [c]ontacts" with Texas. *See* Pl.'s Consolidated App. in Supp. of Resps. [ECF No. 559] 973-75. For three Defendants—Erie Family Life Insurance Company, Erie Insurance Exchange, and Security Mutual Insurance Company— the chart lists no contacts. *Id.* at 973-74. And these three Defendants are not incorporated and do not have their principal places of business in Texas. *See* Am. Compl. ¶¶ 35-36 (alleging that Erie Family and Erie Insurance are Pennsylvania corporations with their principal places of business in Pennsylvania); *id.* ¶ 72 (alleging that Security Mutual is a New York corporation with its principal place of business in New York). The Court permitted Plaintiff to conduct jurisdictional discovery and file supplemental briefing, *see* ECF Nos. 590, 615, and Plaintiff did not add any additional facts regarding these three insurers. *See* Pl.'s Suppl. Br. on Personal Jurisdiction ("Plaintiff's Supplemental Brief") [ECF No. 631] 8 (noting Plaintiff's intent to rest on prior briefing with respect to these Defendants). Because these insurers do not have any demonstrated contacts with Texas, the Court does not have general personal jurisdiction over Erie Family, Erie Insurance, or Security Mutual.

7

*b. Drivers Edge Insurance Company f/k/a Consolidated National Insurance Company*

Drivers Edge Insurance Company f/k/a Consolidated National Insurance Company is a Colorado corporation with its principal place of business in either New York or Michigan. Am. Compl. ¶ 28; Addendum to the App. in Supp. of Mot. [ECF No. 577] 370 ¶ 4. Drivers Edge "has been licensed to transact insurance in Texas since 2023" and "paid taxes in Texas in 2023." Pl.'s Suppl. Br. 12. These contacts alone do not render Drivers Edge essentially at home in Texas. Although Drivers Edge is licensed to do business in Texas, Plaintiff has pointed to minimal evidence that it does business in Texas. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another." (quoting *Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)); *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 605 (S.D. Tex. 2023) ("[T]he courts do not treat registering or qualifying to do business as equivalent to actually doing business in the forum state." (citation omitted)). In fact, Drivers Edge "derived 0% of its premiums from Texas between 2020 and 2023." AIG PJ Moving Defs.' Suppl. Br. in Supp. of Mot. [ECF No. 629] 5.

Further, paying taxes in Texas alone does not rise to the level of continuous and systematic contacts with the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-18 (5th Cir. 1999) (finding no general jurisdiction even though the defendant paid taxes to Texas one year). And the evidence submitted by Plaintiff shows that Drivers Edge paid taxes in multiple states, not just Texas. *See* Pl.'s Suppl. Br., Ex. 34 [ECF No. 643-20] 3-53.[6] Considering the two contacts that Drivers Edge has with Texas together, the Court determines that there is an insufficient basis for general jurisdiction. *See Morris v. Kan. City Ry.*, No. 2:24-CV-00018-JRG,

---

[6] With respect to the exhibits to Plaintiff's Supplemental Brief, page number citations refer to the ECF page numbers at the top of the page.

2024 WL 3347379, at *2 (E.D. Tex. July 8, 2024) (concluding that general jurisdiction did not exist where the defendant paid taxes in Texas and had registered to do business in Texas); *Long v. Patton Hosp. Mgmt., LLC*, No. 15-2213, 2016 WL 760780, at *2, *4-6 (E.D. La. Feb. 26, 2016) (finding no general jurisdiction where the defendant paid taxes and was registered to do business in Louisiana, among other contacts).

### c. St. Paul Mercury Insurance Company

St. Paul Mercury Insurance Company is a Connecticut corporation with its principal place of business in Connecticut. Am. Compl. ¶ 75. St. Paul Mercury "has been licensed to transact insurance in Texas since 2011," Pl.'s Suppl. Br. 14, and filed at least one lawsuit in the state in 2010, Pl.'s Suppl. Br., Ex. 1 ("Exhibit 1") [ECF No. 631-1] 2, 4 n.ii. These two contacts are insufficient to establish general jurisdiction in Texas. As stated above, being licensed in Texas, without more, does not make a company at home here. And the filing of lawsuits in Texas does not alter the analysis. "The initiation of a lawsuit in Texas does not imply consent to be sued for all purposes in Texas nor does it constitute continuous and systematic contacts sufficient to render [the defendant] at home in Texas." *Bellow v. New Fortress Energy, Inc.*, No. H-24-3341, 2025 WL 2404392, at *3 (S.D. Tex. Aug. 4, 2025) (citation omitted), *report and recommendation adopted by* 2025 WL 2402593 (S.D. Tex. Aug. 19, 2025); *see also Am. Bank., F.S.B. ex. rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-CV-331-A, 2010 WL 3784282, at *6 (N.D. Tex. Sept. 27, 2010) ("That defendant has engaged in other litigation is not indicative of minimum contacts as to this case." (citing *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 n.4 (5th Cir. 1990)).

#### d. United States Fidelity and Guaranty Company

USF&G, a Connecticut corporation with its principal place of business in Connecticut, Am. Compl. ¶ 83, has largely the same contacts as St. Paul Mercury. *See* Ex. 1 at 3. However, USF&G has also written and earned direct premiums in Texas and paid direct losses in Texas. Pl.'s Suppl. Br. 14-15; Ex. 1 at 3. This additional contact is not enough to cross the general jurisdiction threshold. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler*, 571 U.S. at 139 n.20 (cleaned up). Instead, the Court must engage in an "appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.*

Here, Plaintiff made no effort to compare USF&G's activities in Texas to its activities in the other states in which it transacts business. And Plaintiff's evidence shows that USF&G earned premiums and/or paid losses in all fifty states and that its business in Texas represents only a small fraction of its business nationwide. *See, e.g.*, Pl.'s Suppl. Br., Ex. 107 [ECF No. 643-68] 125. As such, the Court cannot conclude that USF&G is at home in Texas. *See, e.g., McGinnis v. Nationwide Life & Annuity Ins., Co.*, No. 3:21-CV-1988-E, 2023 WL 4274990, at *5 (N.D. Tex. June 29, 2023) (finding no general jurisdiction where insurer wrote premiums in Texas and had offices and agents throughout Texas); *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 397 (E.D. Tex. 2022) (finding no general jurisdiction where the plaintiff "did not present evidence sufficient to enable [the court] to conduct a qualitative analysis of [the defendant's] nationwide business operations"); *Klein v. Novotny*, No. 3:15-CV-2885-K-BF, 2017 WL 4083559, at *3-4 (N.D. Tex. Aug. 22, 2017) (determining that the court lacked general jurisdiction where the defendant was licensed to sell insurance in Texas and received over $51 million in life insurance premiums from Texas in a single year), *report and recommendation adopted by* 2017 WL 4083166

10

(N.D. Tex. Sept. 13, 2017); *Nathan v. Nationwide Life Ins. Co.*, No. 3:16-CV-2844-L, 2016 WL 11954079, at *4 (N.D. Tex. Dec. 20, 2016) (determining that the plaintiffs did not establish a prima facie case of general jurisdiction because they did not "attempt to establish how [the defendant's] contacts in Texas are sufficient in comparison to its contacts either in any other state . . . or in the broad scheme of its operations"), *report and recommendation adopted by* 2017 WL 11902595 (N.D. Tex. Jan. 17, 2017).

### e. Charter Oak Fire Insurance Company and The Phoenix Insurance Company

Charter Oak Fire Insurance Company and The Phoenix Insurance Company are Connecticut corporations with principal places of business in Connecticut. Am. Compl. ¶¶ 23, 68. According to Plaintiff, Charter Oak and Phoenix have the same three contacts with Texas: (1) each is a registered Texas insurer; (2) each has been a part of other lawsuits in Texas (eight for Charter Oak and six for Phoenix); and (3) each has entered into four consent orders with Texas. *See* Ex. 1 at 1-2; Pl.'s Suppl. Br. 13. For the reasons set forth above, being licensed in Texas and suing or being sued in Texas does not suffice, without more, to establish general jurisdiction. Thus, the only question remaining is whether entering into consent orders with the State of Texas, when considered together with the other two contacts, renders Charter Oak and Phoenix at home in the state.

All of the consent orders with Charter Oak and Phoenix were issued by the Texas Commissioner of Workers' Compensation and resolved allegations of late payments of medical bills and other workers' compensation benefits by the insurers. *See* Pl.'s Suppl. Br., Exs. 59-62, 65-68 [ECF Nos. 631-59 through 62, 631-65 through 68]. As with the earning of premiums in Texas discussed above, the Court concludes that providing workers' compensation insurance to an unknown number of subscribers in Texas (or entering into consent orders to resolve disciplinary

11

matters relating to the provision of such insurance) is insufficient to subject Charter Oak and Phoenix to this Court's general jurisdiction, especially in the absence of information about the insurers' nationwide activities. *See Daimler*, 571 U.S. at 138 (stating that it would be "unacceptably grasping" to approve the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business); *Brifen USA, Inc. v. Briggs Bros. Enters. Corp.*, No. 22-200-G, 2024 WL 1363520, at *2-3 (W.D. Okla. Mar. 29, 2024) (declining to exercise general jurisdiction where a defendant selling workers' compensation lines of insurance in Oklahoma was "licensed to do business in Oklahoma and conduct[ed] some undetermined level of business in Oklahoma" (citation omitted)).

### *f. Jefferson Insurance Company of New York*

Jefferson Insurance Company of New York is a New York corporation with its principal place of business in Virginia. Jefferson's Suppl. Br. in Supp. of Mot. ("Jefferson's Supplemental Brief") [ECF No. 628] 1. Jefferson is a registered Texas insurer, paid taxes to the state of Texas, entered into two consent orders with Texas,[7] and collected premiums and paid direct losses in Texas. Ex. 1 at 1; Pl.'s Suppl. Br. 12-13. Jefferson responded to Plaintiff's Supplemental Brief, noting, among other things, that it does not own or lease property in Texas and does not employ insurance or sales agents in Texas. Jefferson's Suppl. Br. 2-3. Further, the taxes Jefferson paid to Texas were premium tax payments "relate[d] to internet-based sales of travel and other insurance policies" that "originate[d] from Jefferson's principal place of business in Richmond, Virginia." *Id.* at 3. Finally, Plaintiff's evidence of Jefferson's premiums and losses in Texas, along with its

---

[7] One consent order, issued by the Texas Commissioner of Insurance, pertains to a Regulatory Settlement Agreement resulting from "multistate . . . examination of the travel insurance market." Pl.'s Suppl. Br., Ex. 36 [ECF No. 643-21] 2. Jefferson also entered into a Compromise and Settlement Agreement with the Texas Comptroller regarding an insurance maintenance tax/assessment. Pl.'s Suppl. Br., Ex. 37 [ECF No. 643-22] 2.

total premiums and losses nationwide, shows that Jefferson's business in Texas represents only a portion of its business throughout the country. *See, e.g.*, Pl.'s Suppl. Br., Ex. 49 [ECF No. 643-34] 2. For the reasons set forth above, while Plaintiff's allegations and evidence show that Jefferson does some level of business in Texas, Plaintiff has not provided the Court with sufficient information to conclude that Jefferson is at home in Texas.

### g. *Arrowood Indemnity Company*

Arrowood is a Delaware corporation with its principal place of business in North Carolina. Arrowood Joinder, Ex. A ¶ 4. Arrowood combines many of the contacts listed above. Arrowood: (1) is registered in Texas; (2) was involved in two Texas state court cases; (3) entered into three consent orders with Texas; and (4) collected premiums and paid direct losses in Texas. Pl.'s Suppl. Br. 12; Ex. 1 at 1. Additionally, Arrowood "was a part of a structured settlement in Texas." Pl.'s Suppl. Br. 12. Finally, Arrowood has paid taxes "on property in Winkler County, Texas." *Id.*

The evidence submitted by Plaintiff shows that the premiums and losses attributable to Arrowood's Texas activities are only a fraction of Arrowood's nationwide business. *See* Pl.'s Suppl. Br., Ex. 32 [ECF No. 643-19] 67, 140, 215. Similarly, Arrowood was part of structured settlements in 14 other states and the District of Columbia, many of which were larger than the one in Texas. *See id.* at 49. And as with Charter Oak and Phoenix, the three consent orders prove nothing more than that Arrowood provided workers' compensation insurance in Texas. Pl.'s Suppl. Br., Exs. 27-29 [ECF Nos. 643-14 through 16]. Arrowood is not subject to general jurisdiction in Texas merely because it is licensed in Texas and conducts a relatively small part of its nationwide business in the state. *See Daimler*, 571 U.S. at 139 n.20; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 406, 414 (2017) (concluding that a company was not subject to general personal jurisdiction in Montana where about 6% of its railroad track mileage was in Montana and less than 10% of its

total revenue was generated in the state); *Lillie v. Stanford Tr. Co.*, No. 3:13-CV-3127-N, 2015 WL 13741930, at *3 (N.D. Tex. Apr. 7, 2015) ("[U]nder the law of general jurisdiction . . ., [the defendant] would not be subject to general jurisdiction in Louisiana even if it systematically and routinely insured clients based in Louisiana."). And for the reasons set forth above, combining two prior state court lawsuits with these contacts does not change this analysis.

Thus, the only remaining question is whether the taxes Arrowood has paid on a property in Texas alter the outcome. Plaintiff attaches proof of the property tax but provides no details or argument about the property and how it supports the Court's exercise of general personal jurisdiction.[8] Pl.'s Suppl. Br., Ex. 31 [ECF No. 643-18] 2-16. Without more, the fact that Arrowood pays taxes on a single unidentified property in Texas does not subject it to general personal jurisdiction in the state. *See, e.g.*, *Sarafin v. Bridgestone HosePower, LLC*, No. 2:23-CV-203-Z-BR, 2024 WL 899982, at *2 (N.D. Tex. Mar. 1, 2024) (declining to exercise general jurisdiction where the defendant had leases in multiple Texas counties, paid Texas state taxes, and had taxable property in Texas because the defendant "ha[d] 46 locations across 21 states . . ., and the foregoing could likely be said of each of them").

### h. The Travelers Companies, Inc.

The Travelers Companies, Inc., is a Minnesota corporation with its principal place of business in New York. Am. Compl. ¶ 81. The Travelers Companies is registered in Texas, has seven offices in Texas, invoked and/or consented to jurisdiction in other Texas cases, and collected

---

[8] According to public records from the Winkler County Appraisal District, the property in question appears to be mineral rights. *See* WINKLER CNTY. APPRAISAL DIST., https://www.winklercad.org/Home/Details?TaxYear=2023&parcelId=121487&ownershipId=14933&noticeYear= (last visited June 2, 2026) (listing the property description as "Minerals" and the total acres as "0.0000"). This information further weakens the argument that the property renders Arrowood at home in Texas. *See Access Telecom*, 197 F.3d at 717 ("The mere renting or ownership of property in a forum is not enough when that property is not used to conduct business in the forum." (citation omitted)).

14

premiums and paid losses in Texas. Pl.'s Suppl. Br. 14; Ex. 1 at 3. Further, the Travelers Companies "conduct[ed] multiple Texas-based ad campaigns targeting Texas consumers." Pl.'s Suppl. Br. 14.

The Travelers Companies earned premiums and paid direct losses in all fifty states, and its activities in Texas represent only a part of its business. *See, e.g.*, Pl.'s Suppl. Br., Ex. 88 [ECF No. 643-57] 88. Thus, for the reasons stated above, the fact that The Travelers Companies conducted some of its business in Texas does not make it at home in Texas. And for the reasons previously discussed, being registered in Texas and participating in other Texas cases also does not alter this calculus.

With respect to the seven offices in Texas, Plaintiff's evidence shows that The Travelers Companies has offices throughout the United States and in other countries, including nineteen in California, fifteen in New York, and eight in Illinois. Pl.'s Suppl. Br., Ex. 89 [ECF No. 643-58]. This additional contact does not subject The Travelers Companies to general jurisdiction in Texas. *See, e.g.*, *McGinnis*, 2023 WL 4274990, at *5 (finding no general jurisdiction where insurer had "hundreds of offices . . . throughout Texas"); *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts., LLC*, 466 F. Supp. 3d 692, 701 (S.D. Tex. 2020) (concluding that a company with four offices in Texas was not at home in the state when it had physical locations in twenty-two other states); *Aziz v. MMR Grp., Inc.*, No. H-17-3907, 2018 WL 3439637, at *3-4 (S.D. Tex. July 17, 2018) (declining to exercise general jurisdiction over companies with "four permanent facilities in Texas" because Texas was not the "center of their operations" and the companies had not "temporarily relocate[d] to Texas").

Turning to the advertisements, the Court notes that three of the advertising campaigns appear targeted to customers in all states, not just Texas. *See* Pl.'s Suppl. Br., Exs. 90-91, 93 [ECF

Nos. 643-59, 643-60, 643-62]. These advertisements do not appear to have specifically targeted Texas; rather, "Texas"—along with other states' names—only appears in fine print in the advertisements. *See Glazier Grp., Inc. v. Mandalay Corp.*, No. H-06-2752, 2007 WL 2021762, at *10 (S.D. Tex. July 11, 2007) ("National advertising, not targeted to the forum state, has been found insufficient as a basis for general personal jurisdiction." (citing, among other sources, *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987)).

The remaining evidence consists of: (1) an undated document titled "Open more doors and close more sales, Texas!"; and (2) a document that appears to be a presentation on advertising activities in Texas from 2020 to 2023. Pl.'s Suppl. Br., Exs. 92, 94 [ECF Nos. 643-61, 643-63]. With no context for these documents and no details about the extent of The Travelers Companies' advertising activities in Texas, the Court cannot conclude that these contacts support general jurisdiction. *See, e.g., Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020) (concluding that company whose advertising activities were "purely aimed at Texans" was not at home in Texas because these contacts did not "approximate physical presence" (citation omitted)); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999) (finding no basis for general jurisdiction with respect to a company that advertised in Texas newspapers and magazines where there was no evidence of how frequently the advertisements ran or how much business they generated); *Simply Delivered, LLC v. Bazaar, Inc.*, No. H-23-2894, 2024 WL 2701635, at *3 (S.D. Tex. May 24, 2024) ("Texas sales, Texas customers, and Texas targeted marketing do not establish physical presence in Texas." (citation omitted)).

Considering all of The Travelers Companies' contacts with Texas together, the Court finds that the insurer is not essentially at home in Texas. Therefore, Plaintiff has not established a prima facie case of general jurisdiction over The Travelers Companies.

*i. St. Paul Fire & Marine Insurance Company, Travelers Casualty and Surety Company, and Travelers Indemnity Company*

For the reasons set forth below, the Court determines that it can exercise jurisdiction over St. Paul Fire & Marine Insurance Company, Travelers Casualty and Surety Company, and Travelers Indemnity Company pursuant to principles of pendent personal jurisdiction. Thus, it is unnecessary to also determine whether these insurers are subject to general personal jurisdiction.

### iii. Specific Jurisdiction

Plaintiff argues that the Court can exercise specific jurisdiction over St. Paul Fire, Travelers Casualty, and Travelers Indemnity under a theory of pendent personal jurisdiction.[9] Resp. 31-33. According to Plaintiff, because these three insurers issued policies to BSA when it was headquartered in Texas and/or to Local Councils located in Texas, the Court can exercise personal jurisdiction over them with respect to all policies they issued to BSA or its Local Councils. *Id.* at 31.

### a. Pendent Jurisdiction

Although the Fifth Circuit has not recognized pendent personal jurisdiction, other circuit courts have done so. *See Team Healthcare/Diagnostic Corp. v. Aetna Life Ins. Co.*, No. 3:07-CV-0214-O, 2008 WL 483366, at *3 (N.D. Tex. Feb. 22, 2008) (collecting cases). And this Court has previously applied the doctrine. *See Energium Health v. Gabali*, No. 3:21-CV-2951-S, 2022 WL 16842660, at *10 (N.D. Tex. Nov. 9, 2022). Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim" but "lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008)

---

[9] Plaintiff also argues that the Court can exercise specific jurisdiction over Travelers Indemnity because it issued a policy naming BSA as an additional insured. Resp. 30. The Court determines that Travelers Indemnity is subject to specific jurisdiction on other grounds, so the Court does not reach this argument.

17

(quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)). Since the court possesses personal jurisdiction over the first claim, the court then asserts pendent personal jurisdiction over the second claim. *Id.* "Concerns of fairness are significantly diminished when the defendant will already be in the forum defending against causes of action raising the same factual issues." *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 700 (E.D. Tex. 2020) (citation omitted).

The decision to exercise pendent personal jurisdiction is discretionary. *Rolls-Royce*, 576 F. Supp. 2d at 784 (citation omitted). In making this determination, the Court first identifies an "anchor claim" giving rise to personal jurisdiction. *Power Funding, Ltd. v. Chabad Lubavitch of Sunrise Inc.*, No. 6:23-CV-00398, 2024 WL 2022289, at *4 (E.D. Tex. May 7, 2024). The Court then determines whether the pendent claims "arise from the same operative facts as the anchor" and, if so, "whether entertaining the pendent claims . . . promotes judicial economy, avoidance of piecemeal litigation, and the overall convenience of the parties." *Id.* (cleaned up).

The Court concludes that all of Plaintiff's claims against St. Paul Fire, Travelers Casualty, and Travelers Indemnity arise under the same circumstances: these Defendants insured BSA and/or its Local Councils and have disputed their obligation to provide coverage for personal injuries arising from alleged abuse in BSA's programs. Although there are factual variations in a case as large and complex as this one, the Court concludes that trying all claims against these Defendants together promotes judicial economy, avoids piecemeal litigation, and is the most convenient for the parties. Thus, the Court exercises specific personal jurisdiction over all claims against St. Paul Fire, Travelers Casualty, and Travelers Indemnity.

### b. Fairness

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102 (citation omitted). In determining whether a defendant has made this showing, the Court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id.* (citation omitted).

St. Paul Fire, Travelers Casualty, and Travelers Indemnity do not address the fairness prong of the inquiry and therefore have not carried their burden to show that the Court should not assert jurisdiction. But even if they did address this prong, the Court concludes that asserting jurisdiction is fair and reasonable for the reasons set forth above. In short, St. Paul Fire, Travelers Casualty, and Travelers Indemnity will already be before the Court with respect to the anchor claims, so trying the remaining claims against them in this Court promotes judicial economy, avoids piecemeal litigation, and is overall the most convenient for the parties. *See ESPOT, Inc.*, 492 F. Supp. 3d at 700 (citation omitted); *Power Funding, Ltd.*, 2024 WL 2022289, at *4 (citation omitted).

\*        \*        \*

Plaintiff does not argue that any other Personal Jurisdiction Moving Defendants are subject to specific or pendent personal jurisdiction. Accordingly, it appears that the Personal Jurisdiction Moving Defendants that are not subject to general personal jurisdiction must be dismissed. However, the Court notes that the Personal Jurisdiction Moving Defendants only moved to dismiss

19

claims "that seek damages or coverage arising out of Non-Texas Policies," implying that there may be claims against some of them arising out of Texas policies. Mot. 1. For this reason, before dismissing any Personal Jurisdiction Moving Defendants from this case, the Court will require the parties to submit supplemental briefing confirming whether any insurers otherwise subject to dismissal should remain in the case either because they issued Texas insurance policies or under the principles of pendent jurisdiction set forth above.

### B. Abstention

The Abstention Moving Defendants[10] ask the Court to dismiss the claims that are subject to coverage litigation in Illinois state court ("Illinois Claims") under the *Colorado River* abstention doctrine.[11] Undersigned Defs.' Br. 32. This portion of the Motion appears to be moot, as the Illinois state court case has since been dismissed in its entirety. *See* Pl.'s Notice of Decision 1. But even if it was not moot, the Court would deny the request for the following reasons.

Under the doctrine established by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), a federal court "may abstain from a case that is part of parallel, duplicative litigation . . . only under 'exceptional' circumstances." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citation omitted). Two suits are parallel when they have "the same parties and the same issues." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006) (citation omitted). If there are parallel suits, the federal court considers six

---

[10] American Casualty Company of Reading, Pennsylvania, American Home Assurance Company, Arrowood, CNA Financial Corporation, Drivers Edge, Continental Casualty Company, Insurance Company of the State of Pennsylvania, Jefferson, Landmark Insurance Company, Lexington Insurance Company, Munich Reinsurance America Inc., National Fire Insurance Company of Hartford, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and The Continental Insurance Company. Undersigned Defs.' Br. 32 n.12; Arrowood Joinder 1.

[11] The Court previously denied a similar motion asking the Court to abstain from this case as a whole. *See* Mem. Op. and Order [ECF No. 613]. The Defendants who filed the motion filed a petition for writ of mandamus, *see* ECF No. 624, which the Fifth Circuit denied, *see* ECF No. 648.

factors to determine whether "exceptional circumstances" warranting abstention exist: (1) the assumption by either the state or federal court of jurisdiction over a res; (2) the relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent fora; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Id.* (citation omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The Court assumes without deciding that the Illinois Claims in this case and the Illinois state court case are parallel. Nevertheless, exceptional circumstances do not exist such that abstention is warranted. As to the first factor, there is no res, or property, over which either the state or federal court has taken control. This factor supports exercising federal jurisdiction. *Stewart*, 438 F.3d at 492 (citation omitted). As there is no res at issue, the third factor also supports exercising federal jurisdiction. "The pendency of an action in state court does not bar a federal court from considering the same matter." *Id.* (citation omitted). Instead, the *Colorado River* doctrine is concerned with the danger of inconsistent rulings with respect to a piece of property. *See id.* (citation omitted). "When, as here, no court has assumed jurisdiction over a disputed res, there is no such danger." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2000).

As to the second factor, many of the Abstention Moving Defendants would be required to continue litigating in this forum even if the Court abstained from the Illinois Claims, rendering

any inconvenience argument moot. *See* Am. Compl., Ex. B [ECF No. 516-2] (listing several Abstention Moving Defendants as having insured BSA); Am. Compl., Ex. C [ECF No. 516-3] (listing several Abstention Moving Defendants as having insured Local Councils outside of Illinois). Thus, the inconvenience of federal court is not "so great" that abstention is warranted. *Kelly Inv., Inc.*, 315 F.3d at 498 (citation omitted). The Court disregards the fourth factor due to the dismissal of the Illinois action.[12] Turning to the fifth factor, the Court notes that Illinois law may apply to at least some determinations regarding the Illinois Claims. But "the presence of state law issues weighs in favor of surrender only in rare circumstances," so this factor is at most neutral. *Black Sea Inv.*, 204 F.3d at 651 (citation omitted). And the sixth factor, whether Plaintiff's interests would be adequately protected in Illinois state court, "can only be a neutral factor or one that weighs against, not for, abstention." *Id.* (citation omitted). This factor is also, at best, neutral.

Having carefully balanced the factors as they apply in this case, with the balance heavily weighted in favor of the exercise of jurisdiction, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, the Court declines to abstain from this case even if this issue is not moot.

### C. Failure to State a Claim

#### i. Breach of Contract

Under Texas law,[13] a breach of contract claim has four elements: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages

---

[12] However, even if the Court assumed that this consideration weighed in favor of abstention, it would not change the outcome.

[13] Both parties rely on Texas law, and the Court finds that doing so is proper at this stage. *See Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) ("A federal court sitting in diversity applies the substantive law of the forum state[.]" (citation omitted)); *Neukranz v. Conestoga Settlement Servs., LLC*, No. 3:19-CV-1681-L, 2022 WL 19518462, at *11 n.10 (N.D. Tex. Nov. 23, 2022) ("Absent notice by the parties that another state's law should apply and that the other state's law differs from Texas law, the court will apply Texas law to the dispute and presume the sister state's laws are the same." (citation omitted)), *report and recommendation adopted by* 2023 WL 2555551 (N.D. Tex. Mar. 16, 2023).

22

sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citation omitted). The Undersigned Defendants argue that Plaintiff has not plausibly stated a breach of contract claim because she "relies on generalized, conclusory statements" and "does not identify which Defendant is allegedly responsible for indemnifying or defending which [claim] under which [insurance policy]." Undersigned Defs.' Br. 18. Additionally, the Undersigned Defendants challenge Plaintiff's reservation of the right to revise the bills she sends to insurers, contending that Plaintiff "cannot state a claim for breach of contract while at the same time asserting the right to change [the] claim." *Id.* at 19. Finally, the Undersigned Defendants contend that Plaintiff fails to identify specific provisions of the insurance policies at issue that were breached. *Id.* at 19-20.

Applying the facial plausibility jurisprudence of *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Plaintiff, the Court concludes that the Amended Complaint contains sufficient facts to state a breach of contract claim that is plausible on its face. Accordingly, the Court denies the Motion with respect to the breach of contract claim.

### ii. Bad Faith

The Undersigned Defendants move to dismiss Plaintiff's claim for common law bad faith on four grounds: (1) Texas does not recognize such a claim in the context of third-party claims, and the only exception—*Stowers* liability[14]—does not apply; (2) Plaintiff has not stated a claim for breach of contract; (3) the claim is conclusory; and (4) Plaintiff has not alleged independent

---

[14] "A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 395 (Tex. 2016) (*citing G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929)).

23

damages. Undersigned Defs.' Br. 21-23. The Court cannot proceed with its analysis of the first argument, which is potentially dispositive of the claim, until the parties brief the applicable law.

"Absent notice by the parties that another state's law should apply and that the other state's law differs from Texas law, the court will apply Texas law to the dispute and presume the sister state's laws are the same." *Neukranz*, 2022 WL 19518462, at *11 n.10 (citation omitted). Here, the Undersigned Defendants "do not concede that Texas law governs all of [Plaintiff's] claims." Undersigned Defs.' Br. 17 n.8. And Plaintiff notes that other states' laws materially differ from Texas law in that "the common law of many other jurisdictions . . . allows [Plaintiff] to assert bad faith claims." Resp. 17 n.8. Accordingly, the Court will deny the Motion with respect to Plaintiff's bad faith claim, without prejudice to refiling a motion that contains focused briefing on the applicable law.

### iii. Texas Insurance Code

The Undersigned Defendants next move to dismiss Plaintiff's claims that they violated Texas Insurance Code Section 541.060(a)(2)(A), (a)(3), (a)(4), and (a)(7). Undersigned Defs.' Br. 23-26.

The Texas Supreme Court has interpreted Section 541.060(a)(2)(A) as the statutory equivalent of a *Stowers* claim. *Millsap Waterproofing, Inc. v. U.S. Fire Ins. Co.*, No. 3:20-CV-00240, 2021 WL 6063620, at *3 (S.D. Tex. Dec. 21, 2021) (citing *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262-64 (Tex. 2002)); *see also Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 527 (N.D. Tex. 2011) ("*Stowers* provides an appropriate framework for understanding and applying the [Section 541.060(a)(2)] standard." (quoting *Rocor*, 77 S.W.3d at 261)). Among other things, the *Stowers* framework requires "actual[] . . . liability in excess of policy limits." *BPX Prod. Co. v. Certain Underwriters at Lloyd's London*, No. 23-20034,

24

2025 WL 2952911, at *9 (5th Cir. Oct. 20, 2025) (quoting *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021)). The Texas Supreme Court has "consistently" required liability in excess of policy limits, whether as a result of judgment or settlement, and has "decline[d] to extend *Stowers* to cases in which there is no liability in excess of policy limits." *In re Farmers*, 621 S.W.3d at 267 (citation omitted).

Plaintiff does not address the *Stowers* issue in the Response in connection with her Texas Insurance Code claim. And Plaintiff does not allege in the Amended Complaint liability in excess of policy limits. Therefore, the Court concludes that Plaintiff's claim under subsection (a)(2)(A) is inadequately pleaded at this time; however, the Court will afford Plaintiff an opportunity to amend to provide greater detail on the facts supporting such claim.

As to Plaintiff's claims under subsections (a)(3), (a)(4), and (a)(7), applying the facial plausibility jurisprudence of *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Plaintiff, the Court concludes that the Amended Complaint pleads sufficient facts to state a claim that is plausible on its face. Accordingly, the Court will deny the request to dismiss Count Thirty-Five to the extent it alleges violations of subsections (a)(3), (a)(4), and (a)(7).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Undersigned Defendants' Motion to Dismiss the Amended Complaint in Part [ECF No. 542].

The Court **GRANTS** the Motion on the ground that it does not have personal jurisdiction over the following Defendants: Arrowood Indemnity Company, Charter Oak Fire Insurance Company, Drivers Edge Insurance Company f/k/a Consolidated National Insurance Company, Erie Family Life Insurance Company, Erie Insurance Exchange, Jefferson Insurance Company of New York, The Phoenix Insurance Company, Security Mutual Insurance Company, St. Paul

25

Mercury Insurance Company, The Travelers Companies, Inc., and United States Fidelity and Guaranty Company. The Court **ORDERS** the parties to submit supplemental briefing on whether Plaintiff's claims against any of these Defendants are based on Texas insurance policies by no later than **July 1, 2026**; otherwise, the Court will dismiss all claims against these Defendants without further notice.

The Court **DENIES** the Motion with respect to the personal jurisdiction arguments asserted by St. Paul Fire & Marine Insurance Company, Travelers Casualty and Surety Company, and Travelers Indemnity Company. The Court **TERMINATES AS MOOT** the Motion to the extent that it asks the Court to deny Plaintiff's request for jurisdictional discovery.

The Court **DENIES** the Motion to the extent that it asks the Court to abstain from the Illinois Claims.

The Court **DENIES** the Motion as to Plaintiff's breach of contract claims (Counts Two through Thirty-Three) and Texas Insurance Code § 541.060(a)(3), (a)(4), and (a)(7) claims (Count Thirty-Five).

The Court **DENIES** the Motion as to Plaintiff's bad faith claim (Count Thirty-Four), without prejudice to the Undersigned Defendants filing a renewed motion to dismiss that briefs the applicable state law.

The Court **GRANTS** the Motion as to Plaintiff's Texas Insurance Code § 541.060(a)(2) claim (Count Thirty-Five). Given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court **GRANTS** Plaintiff leave to amend her Amended Complaint

with respect to this claim. The Court will set a deadline for an amended pleading after ruling on the remaining motions to dismiss in this case.

**SO ORDERED.**

SIGNED June 17, 2026.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

27